<pre>
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,      )
                                    )
 4            Plaintiff,            )
                                    )
 5        vs.                       ) CASE NO. 1:24-cr-00239-CKK
                                    )
 6   DOUGLAS EDELMAN,               )
                                    )
 7            Defendant.            )
     _____)
 8

 9        TRANSCRIPT OF RETURN ON ARREST WARRANT/INITIAL
                   APPEARANCE/ARRAIGNMENT
10   BEFORE THE HONORABLE MOXILA A. UPADHYAYA, U.S. MAGISTRATE JUDGE
                       September 3, 2024
11                   2:12 p.m. - 2:47 p.m.
                        Washington, DC
12

13   FOR THE GOVERNMENT:
          Department of Justice, Tax Division
14        BY:  SARAH RANNEY, EZRA SPIRO, NANETTE DAVIS and
               JOSHUA GOLD
15        601 D Street, NW
          Washington, DC 20001
16        (202) 514-5616

17   FOR THE DEFENDANT:
          Baker McKenzie
18        BY:  GEORGE CLARKE, III, SONYA BISHOP and
               MARION ROCKER TUOHY
19        452 Fifth Avenue
          New York, New York 10018
20        (332) 215-5812

21   Pretrial Officer:  Da'Shanta Valentine-Lewis

22   _____
                        SONJA L. REEVES
23                Registered Diplomate Reporter
                  Certified Realtime Reporter
24                Federal Official Court Reporter
                   333 Constitution Avenue, NW
25                    Washington, DC 20001
          Transcript Produced from the Digital Record
</pre>

 1              (Call to Order of the Court at 2:12 p.m.)

 2              DEPUTY CLERK:  All rise.  This Honorable Court is now

 3    in session, Magistrate Judge Moxila A. Upadhyaya.

 4              Please be seated and come to order.

 5              Your Honor, we have 24-cr-239, the *United States of*

 6    *America versus Defendant Number One, Douglas Edelman*.  This

 7    matter is set for a return on arrest warrant, initial

 8    appearance and arraignment.

 9              Parties, please introduce yourselves for the record,

10    starting with the government.

11              MR. SPIRO:  Good afternoon, Your Honor.  Ezra Spiro

12    from the Department of Justice Tax Division on behalf of the

13    United States.  I'm joined by Nanette Davis and Sarah Ranney,

14    also of the Tax Division, as well as AUSA Josh Gold.

15              THE COURT:  Good afternoon, Counsel.

16              MR. CLARKE:  Good afternoon, Your Honor.  George

17    Clarke and Sonya Bishop for Mr. Edelman.

18              THE COURT:  Good afternoon, Mr. Clarke and Ms. Bishop.

19              Good afternoon, Mr. Edelman.  Am I pronouncing your

20    name correctly, sir?

21              THE DEFENDANT:  Edelman.

22              THE COURT:  Edelman.  Good afternoon, sir.

23              PROBATION OFFICER:  Good afternoon, Your Honor.

24    Da'Shanta Lewis, Pretrial Services Agency.

25              THE COURT:  Good afternoon, Ms. Lewis.

1         Can we please swear in Mr. Edelman.

2     (Oath administered to defendant)

3         THE COURT:  Okay.  We're here for Mr. Edelman's

4  initial appearance, return on arrest warrant.

5         Are we doing an arraignment today as well, Mr. Clarke?

6         MR. CLARKE:  I believe so, Your Honor.

7         THE COURT:  So you have had a chance to go over the

8  indictment with Mr. --

9         MR. CLARKE:  Yes, Your Honor.

10        THE COURT:  All right.  Mr. Edelman, I'm going to give

11 you a brief roadmap of what we're going to be doing today.  If

12 you have any questions at any time, just raise your hand and

13 I'd be happy to give you a moment to confer with your counsel.

14 Okay?

15        It's my obligation, sir, to read to you the charges

16 that have been brought against you and advise you of the

17 maximum penalties associated with those charges.

18        I'm also going to ensure that you have been read your

19 rights and that you understand them.

20        And I would appoint an attorney to represent you,

21 although I believe that you have retained counsel, but we'll

22 get to that as well.

23        And I will also make sure that the government is

24 ordered to comply with its obligations to you.

25        After we do all of that, I will take up next matters,

1  including whether or not the government is seeking your

2  detention or is agreeable to your release on certain

3  conditions.

4           As I mentioned, at any time, just raise your hand if

5  you have any questions.  I'd be happy to give you a minute.

6           Could you please state your full name for the record,

7  sir.

8           THE DEFENDANT:  Douglas Phillip Edelman.

9           THE COURT:  And I'll just ask you to speak into the

10  mic.

11           How old are you, sir?

12           THE DEFENDANT:  Douglas Phillip Edelman.

13           THE COURT:  And how old are you, sir?

14           THE DEFENDANT:  72.

15           THE COURT:  How far did you get in school?

16           THE DEFENDANT:  I went to two years at the university.

17           THE COURT:  And have you had any medication, alcohol,

18  drugs or substance of any kind in the last 24 hours that would

19  make it difficult for you to understand today's hearing?

20           THE DEFENDANT:  No.

21           THE COURT:  All right.  As I mentioned, sir, it's my

22  job to read to you the charges that have been brought against

23  you, and there has been a 30-count indictment returned.

24           Count 1 is for conspiracy to commit an offense or to

25  defraud the United States in violation of 18 United States Code

371.  If convicted, this carries with it a maximum term of imprisonment of not more than five years, a fine of not more than $250,000, or both.  The Court may impose a term of supervised release of not more than three years.

Counts 2 and 3 are making a false statement in violation of 18 U.S.C. 1001(a)(2).  This carries with it a term of imprisonment of not more than five years, a fine of not more than $250,000, or both.  The Court may impose a term of supervised release of not more than three years.

Counts 4 through 18 in the indictment are for tax evasion in violation of 26 United States Code 7201.  If convicted, this carries with it a maximum term of imprisonment of up to five years, a fine of up to $100,000, or both.  In addition, the Court may impose a term of supervised release of up to one year.

Counts 19 through 30 of the indictment are willful violation of foreign bank account reporting.  This is in violation of 31 United States Code Section 5314.  If convicted, this carries with it a maximum term of imprisonment of up to ten years, a fine of up to $500,000, or both.  In addition, the Court may impose a term of supervised release of up to three years.

As I mentioned, sir, you do have certain rights in connection with this case.  I'm going to read those to you now.

First, you have the right to remain silent.  That

1    means you're not required to give any statement or make any
2    statement to law enforcement while these charges are pending
3    against you.  If you have already made a statement to law
4    enforcement, you don't need to say anything more to them.
5    Anything you do say to law enforcement can be used against you
6    in this case or in a future case.
7            Do you understand?
8            THE DEFENDANT:  Yes.
9            THE COURT:  You're also entitled to the assistance of
10   an attorney to represent you in this matter, and you have two
11   options.  You can either hire your own lawyer, or, if you
12   cannot afford to hire your own lawyer, you can ask the Court to
13   appoint an attorney to represent you at the government's
14   expense.
15           Do you understand?
16           THE DEFENDANT:  Yes.
17           THE COURT:  My understanding is that you have retained
18   your own attorney; is that correct?
19           THE DEFENDANT:  Correct.
20           THE COURT:  Okay.
21           MR. SPIRO:  I'm sorry, Your Honor.
22           THE COURT:  Can you approach the lectern?
23           MR. SPIRO:  On the maximum penalties, Your Honor, just
24   for the record, the maximum fine for tax evasion is $250,000,
25   or twice the pecuniary gain.  The statute says $100,000, but

1    the general fine, the statute takes precedence.  And for

2    conspiracy and false statements, the fine is also $250,000, or

3    twice the pecuniary gain.

4         I just also wanted to note for the record, for tax

5    evasion, since it's a Class D felony, the maximum possible term

6    of supervised release is three years.

7         THE COURT:  Okay.  All right.  Thank you for that.  I

8    appreciate that.

9         Okay.  I'll just stand corrected as to the maximum

10   penalties.  If you have any questions, sir, just let me know.

11        Okay.  Mr. Spiro, I'll just remind you and the

12   government counsel that pursuant to Federal Rule of Criminal

13   Procedure 5(f), the United States is ordered to produce all

14   exculpatory evidence to the defendant and his counsel pursuant

15   to *Brady versus Maryland* and its progeny.

16        Not doing so in a timely manner may result in

17   sanctions against the government, including exclusion of

18   evidence, adverse jury instructions, dismissal of charges and

19   contempt proceedings against government counsel.

20        Do you understand, sir?

21        MR. SPIRO:  Yes, Your Honor.

22        THE COURT:  This is not a consular case, is it,

23   Mr. Spiro?  Mr. Edelman is a national of the United States?

24        MR. SPIRO:  Correct, Your Honor.

25        THE COURT:  That's correct, sir, Mr. Clarke?

1          MR. CLARKE:  Yes.

2          THE COURT:  All right.  Mr. Edelman, I'll just ask you

3  to approach the lectern with your counsel and I'll arraign you

4  now, sir.

5      (Pause)

6          THE COURT:  So Mr. Edelman, I'm going to conduct your

7  arraignment now.  This is a really short part of the hearing,

8  but it's an important part because it's the time that you have

9  the opportunity to give -- to tell the Court how you plead in

10  connection with the charges against you.

11          So first I'll ask Mr. Clarke:  Have you had the

12  opportunity to go over the indictment with Mr. Edelman?

13          MR. CLARKE:  Yes, I have, Your Honor.

14          THE COURT:  And does he waive formal reading?

15          MR. CLARKE:  Yes, he does.

16          THE COURT:  Okay.  And in connection with the counts

17  in the indictment, how does Mr. Edelman plead?

18          MR. CLARKE:  Not guilty.

19          THE COURT:  Thank you very much, sir.  I will enter a

20  plea of not guilty on your behalf.  You may be seated.

21      (Pause)

22          THE COURT:  Mr. Spiro, what is the government's

23  position with respect to detention or release of Mr. Edelman?

24          MR. SPIRO:  Your Honor, the parties have agreed to

25  certain conditions of release and have spoken to pretrial

1    services about them, with the exception of one issue.  In

2    essence, the agreement includes home confinement for the

3    defendant at an apartment that he procured in Alexandria.

4        The government agreed that he could leave his

5    residence from 9:00 to 11:00 every day at their request.  We

6    understand this is a bit unusual for home confinement.

7        THE COURT:  9:00 a.m. to 11:00 p.m.?

8        MR. SPIRO:  Yes, Your Honor.  Or sorry, 9:00 a.m. to

9    11:00 a.m., just the two hours.

10        THE COURT:  All right.

11        MR. SPIRO:  I understand the defendant is asking for a

12    longer period of time.  The government is asking just for those

13    two hours, understanding that it's already unusual for home

14    confinement and conditions of release for somebody with those

15    ties to the United States with such a serious crime who has

16    access to significant means.

17        THE COURT:  Okay.  Well, why don't -- so everything

18    else has been agreed to other than that one point?

19        MR. SPIRO:  Yes, Your Honor.

20        THE COURT:  Okay.  Why don't you go ahead and read

21    into the record the agreed upon conditions of release, and then

22    we'll come back to the issue of home confinement.

23        MR. SPIRO:  The conditions include the defendant will

24    sign an unsecured appearance bond of $12.9 million,

25    representing 10 percent of the Internal Revenue Services

1    computation of tax loss caused by the defendant's alleged

2    criminal conduct.

3            The defendant will not commit any federal, state or

4    local crimes during the period of release.

5            The defendant will surrender any and all passports to

6    pretrial services, and shall not apply for or possess any

7    passports.

8            The defendant will sign a sworn declaration confirming

9    that he has no passports, other than the passport surrendered

10   to pretrial services.

11           The defendant will participate in the home detention

12   program under the supervision of the United States Pretrial

13   Services for the District of Columbia.

14           He'll be detained at his residence, and the residence

15   is specified.

16           Apart from the hours which he may leave, which I noted

17   are an item of disagreement at this point, he will not go

18   further than one mile from his house during those hours.

19           And apart from that, the defendant would only leave

20   his apartment for medical or legal appointments and appearances

21   in this district, all of which must be pre-approved by pretrial

22   services.

23           Even for pre-approved and allowed reasons to leave his

24   residence, the defendant shall not leave the DC area.  The DC

25   area is defined to include the federal districts of the

District of Columbia, the District of Maryland and the Eastern District of Virginia, without prior approval by pretrial services and an order from the Court.

The defendant is expressly prohibited from entering or being within a thousand feet of any airport, marina, embassy or consulate.

The defendant shall not leave the United States.

The defendant is required to submit to both electronic location monitoring and global positioning system monitoring. If pretrial services cannot maintain active monitoring and requests that a vendor be used for location monitoring and/or GPS monitoring, the defendant will be responsible for the cost of such monitoring.

The defendant will keep the location monitoring and GPS equipment properly charged and maintain it in accordance with the directions he's given.

The defendant will wear the location monitoring, ankle bracelet at all times and carry the GPS monitor with him to enable appropriate monitoring by pretrial services or its vendor.  And he agrees not to tamper with or remove either of them for any reason without authorization.

If pretrial services is using a vendor for monitoring, it shall arrange for the vendor to directly notify IRS Special Agent Rebekah Bott and Special Agent Thomas Browning, as well as Supervisory Deputy U.S. Marshal Leotis Brown of any

1    infraction or possible infraction.

2        And except for his wife, Delphine Le Dain, the

3    defendant shall have no direct contact, other than contact

4    through legal counsel, with the co-conspirators named or

5    identified in the indictment.

6        Finally, upon a showing of probable cause that there

7    has been a violation of the Court's order setting the condition

8    of release, any federal law enforcement officer is authorized

9    to take the defendant into immediate custody and seek his

10    immediate removal to this court and detention without bond

11    pending that removal.

12        THE COURT:  Okay.  So then with respect to -- and did

13    I hear you state a condition of release that he's to surrender

14    his passport and not obtain any international travel documents?

15        MR. SPIRO:  Correct, Your Honor.

16        THE COURT:  So the question is whether or not

17    Mr. Edelman, in serving out time under home detention, whether

18    he can leave his apartment for a period of time.

19        The government is agreeable to allowing him to leave

20    from 9:00 a.m. to 11:00 a.m., still on location monitoring with

21    an ankle bracelet with a location monitoring device.  And that

22    even from 9:00 a.m. to 11:00 a.m., he cannot go further than

23    one mile radius from his apartment.  That's correct?

24        MR. SPIRO:  Correct, Your Honor.

25        THE COURT:  Well, let me hear if there is an objection

1  to any of these conditions of release.  I'll hear from the

2  defense.

3          MR. CLARKE:  Thank you, Your Honor.  I think it's

4  fairly stated there is only one condition that we're

5  questioning, and that is this two hours versus more time.

6          And just for background, this man hasn't lived in the

7  United States since the 1980s, okay.  We have rented an

8  apartment for him, a two-bedroom, small apartment in a bigger

9  apartment complex.

10          Because he's 72 years old, he doesn't have a job.

11  Okay.  He doesn't have friends or family in this area.  From a

12  mental health perspective, for him to be sitting in that

13  apartment for maybe 12 months, maybe 18 months without any

14  other contact besides me, essentially, and Ms. Bishop, doesn't

15  seem very wise to me.

16          I mean, literally he needs to be able to exercise, he

17  needs to be able to see other people, just normal people, have

18  a cup of coffee or something like that.  Okay.

19          And so I had suggested four hours originally.  The

20  government had come back with two hours.  What I was hoping is

21  that he was able to go within the apartment complex, because

22  it's a complex, not just his apartment himself, and if he was

23  allowed to be in the apartment complex itself, that two-hour

24  window outside of that apartment complex would be reasonable to

25  me.  But apparently there is some issue with that from a

1    pretrial services technical perspective, so that's why I'm

2    asking for four hours instead of two, Your Honor.

3          Again, if he had a job, he would be able to go out for

4    the job and see other people.  It's just the fact that he's

5    72 years old and he doesn't have a job that we're having a

6    discussion like this.

7          THE COURT:  What does he need to do?  Usually when we

8    make exceptions or set a certain schedule under home detention,

9    we have actual appointments, or, like you said, a job or

10    something that needs to be -- that the defendant needs to do

11    within those hours.

12          What hours are you proposing and what is he proposing

13    to do during that time outside of his apartment?

14          MR. CLARKE:  I would propose 9:00 to 1:00, Your Honor.

15    He literally has nobody here even to buy groceries for him.

16    He's going to have to go buy groceries.  He's going to have to

17    go get food from time to time, unless he's going to cook

18    everything for himself.

19          I mean, I'm literally with a -- he doesn't even have a

20    credit card right now.  Not your problem, my problem, but there

21    is a lot of complication.  He has no clothes.  He has no one

22    here.  I mean, he's just rented an apartment.

23          So practically, I think -- the practical day-to-day

24    living things, getting a walk -- again, he's 72 years old, he

25    needs to exercise at some point.

```
 1              THE COURT:  Where was he living prior to this period
 2    of time?
 3              MR. CLARKE:  He was arrested in Spain, Your Honor.
 4              THE COURT:  Okay.  And extradited here?
 5              MR. CLARKE:  Correct.
 6              THE COURT:  Does his wife live with him?
 7              MR. CLARKE:  His wife is in Spain, Your Honor.
 8              THE COURT:  Okay.  All right.  Go ahead.
 9              MR. CLARKE:  And I think that's the only issue that we
10    have.  Everything else is agreed.  We agree to all the other
11    terms.
12              THE COURT:  Thank you.  Let me hear from Mr. Spiro.
13    What's the difference, material difference between 9:00 to
14    11:00 and 11:00 to 1:00?  And keep in mind that the --
15              MR. CLARKE:  Sorry, Your Honor.  Not 9:00 to 11:00 and
16    11:00 to 1:00.  9:00 to 1:00 is what I said.
17              THE COURT:  I understand.  I'm asking Mr. Spiro what
18    the material difference between 9:00 to 11:00 and 9:00 to 1:00
19    would be.
20              What is the two extra hours really, you know?  This is
21    not a punitive standard.  The standard is whether or not the
22    conditions are necessary to prevent or to mitigate potential
23    flight risk or danger to the community.
24              So what's the basis for the government's position?
25              MR. SPIRO:  Well, Your Honor, we think there is a lot
```

of facts which do point to a flight risk here.  The defendant
is accused of a very serious crime.  He, the government
alleges, has significant means.  He has very few ties to the
United States.  He was arrested in his large home in Ibiza,
Spain, and he had previously been living in multiple residences
throughout Europe.

So, Your Honor, the government agreed that home
detention would be the least restrictive condition that would
still ensure his appearance, despite all these risks of his
flight.  And normally, Your Honor, home detention, my
understanding, does not involve just a block of time where
you're allowed to wander around and leave the home.

It means you stay confined at home, which is
essentially what confinement would be for most people who came
in from abroad accused of such a serious crime.  And so the
government felt, you know, given all the factors that the
defendant mentioned, two hours may be a reasonable period of
time, and, more than that, we don't really see what the need
for that is.

Confinement is needed, and short of two hours to go
and get groceries and stuff, we don't see why the defendant
needs four hours.

THE COURT:  Is it two hours outside the door of his
apartment?  Can he go work out or walk around the complex?
Does that count against the two hours?

1          MR. SPIRO:  Our understanding from pretrial is that

2    they would want him to remain within his unit for the other

3    hours, and we defer to pretrial on what the conditions that

4    they would require for that is.

5          THE COURT:  Ms. Lewis, if Mr. Edelman leaves the

6    apartment, is that considered technically violating the terms

7    of home detention?  Can he go, for example, if there's a gym in

8    his building?

9          PROBATION OFFICER:  Technically, Your Honor, that

10   would be considered a violation as it pertains to our home

11   detention.

12         THE COURT:  That's what is agreed upon, yeah, home

13   detention.

14         PROBATION OFFICER:  So he would be need to be inside

15   the four walls of his actual dwelling unit.  Now, we would

16   defer to the Court if the Court would allow him to make any

17   movements throughout the building or on the premises at the

18   apartment complex.

19         THE COURT:  Well, can his location monitoring be set

20   up so that if there is a particular time of day that he wants

21   to go to the gym, that he can do that, and can we set the

22   parameters of the location monitoring so that if he leaves that

23   particular area during a particular time, then that would be a

24   violation, but to at least give him the opportunity to be in

25   the building, but not necessarily outside of the building?

1          PROBATION OFFICER:  It could be, but, like I said, we

2   would defer to the Court.  In the event -- you said for him to

3   have -- could you repeat that?

4          THE COURT:  I'm just trying to come up with a

5   reasonable solution.  I haven't really heard a reason why he

6   needs to be outside his apartment four hours a day, to be

7   honest with you.  Two hours does seem reasonable to the Court,

8   but I'm trying to see if there's a way that if he wants to go

9   get some exercise, if there is a gym -- is there a gym in the

10  building, Mr. Clarke?

11         MR. CLARKE:  There is, Your Honor.

12         THE COURT:  If there is a gym in the building, that

13  would necessarily cut against his two hours that he could go to

14  run an errand or get some fresh air, et cetera.

15         PROBATION OFFICER:  Yes.

16         THE COURT:  We can arrange that?

17         PROBATION OFFICER:  Yeah.

18         THE COURT:  Okay.  All right.  Okay.  Thank you.

19         I'm going to overrule the objection requesting four

20  hours each day for Mr. Edelman to be outside the apartment.  I

21  note that he has no ties to the area.  And he was arrested

22  abroad.  And these are significant charges.  So I don't think

23  that four hours is necessary.

24         However, what I'm going to do is I will allow him to

25  leave the apartment from 9:00 to 11:00 -- or leave the

1    apartment complex between 9:00 and 11:00, and then I would like

2    you all to discuss and come up with a particular time each day

3    that he can go downstairs to, if there is a common room, if he

4    wants to just kind of get out of his apartment, and if there is

5    a gym, I will allow him to do that.  That will not cut against

6    his two hours.

7            MR. CLARKE:  Thank you, Your Honor.

8            THE COURT:  So Mr. Spiro, I'll ask you to speak with

9    Mr. Clarke and come up with a time each day.  So in other

10   words, what I just want to make sure, and Ms. Lewis, I want to

11   make sure that the conditions of release are clear that I'm not

12   setting his parameters for home detention as outside his

13   apartment anywhere in the apartment building.  He's allowed to

14   go outside his apartment building at a given time -- or

15   apartment -- sorry.

16           The parameters of his home detention are his

17   apartment.  I would like you all to discuss a time each day

18   that he could go to the gym or just to walk around inside the

19   building and the complex, but that won't cut against the two

20   hours.

21           So otherwise, it's from 9:00 a.m. to 11:00 a.m. each

22   day that he's allowed outside, and no further than one mile

23   from the apartment.

24           MR. CLARKE:  Understood, Your Honor.

25           THE COURT:  And then you all can discuss that and come

1    up with agreed upon conditions of release.

2              PROBATION OFFICER:  Your Honor, just on one condition

3    that was omitted from the pretrial services report.  We

4    actually need Mr. Edelman to report to 633 Indiana Avenue

5    tomorrow morning at 9:45 to be installed on the GPS device.

6              MR. CLARKE:  633 Indiana?

7              PROBATION OFFICER:  Ninth floor.

8              MR. CLARKE:  What time was that?

9              PROBATION OFFICER:  9:45.

10             THE COURT:  Thank you.  Okay.  So I'll trust you all

11   to get those conditions of release drafted and into the Court

12   for approval.

13             Mr. Edelman, I'm going to read to you now the

14   consequences of failing to follow your conditions of release.

15   And then I'll make sure you have resolved -- if you don't have

16   any questions, then we'll swear you into compliance.  Okay?

17             You have heard your conditions of release, sir.  It's

18   important --

19             I would ask Mr. Clarke first.

20        (Pause)

21             THE DEFENDANT:  My only question was I have family,

22   you know.  I have a niece here and her husband who works for

23   the government.  I have children in Chicago, so on and so

24   forth.  Can they visit me and can they spend the night with me,

25   spend time from time to time, because it wasn't clear to me.

1  It sounded like only when my wife, who's in Europe with the

2  other kids, when she comes, or if the other kids come.  That's

3  what I'm not clear about.

4       THE COURT:  I think you all need to discuss that in

5  the first instance.  I'm going to stay on the bench.

6  Mr. Clarke, why don't you talk to government counsel about

7  that.

8     (Pause)

9       THE COURT:  Have you all figured this out?  Have you

10  discussed --

11       MR. SPIRO:  I think so, Your Honor.

12       THE COURT:  Is there an agreement?

13       MR. SPIRO:  So on the question of Mr. Edelman's three

14  children with the co-defendant Delphine Le Dain -- wife and

15  co-defendant Delphine Le Dain, the government's position is

16  that it's okay as long as he notifies pretrial beforehand.

17  That would be our request.

18       THE COURT:  My understanding is that wasn't his

19  question.  I think his question was whether his niece, nephew,

20  any family members could visit.  I mean, is that -- basically

21  the question is can a family member visit him.

22       PROBATION OFFICER:  I'm sorry, Your Honor.  Is that a

23  question for pretrial?

24       THE COURT:  No, I'm asking the government and defense

25  counsel.  The reason I --

1          MR. SPIRO:  Not without notification of pretrial, Your

2     Honor.

3          THE COURT:  So there is your answer, Mr. Edelman.  If

4     you wish to have someone visit, you need to let pretrial know

5     in advance.

6          Okay.  Is it prior approval or prior notification?

7          PROBATION OFFICER:  Just notification.

8          THE COURT:  All right.  Thank you.

9          MR. SPIRO:  Your Honor, the government has one

10    additional issue to bring up.  So talking with pretrial, our

11    understanding is that if he were released right now and had to

12    report tomorrow morning to get his monitoring on, he would

13    essentially be unmonitored for the remainder of tonight.  And

14    so the government's position is requesting that Your Honor

15    essentially hold the release order until tomorrow morning.

16         Talking with pretrial, we understand he could be

17    released from Alexandria tomorrow morning, brought here,

18    released from the cell block and then walk over with his

19    attorneys tomorrow morning next door to 333 to get the

20    monitoring installed.

21         THE COURT:  Can you not get his monitoring installed

22    this afternoon if I order it?

23         PROBATION OFFICER:  I don't believe he's allowed to go

24    back to the jail with the device affixed to him.

25         THE COURT:  Can he go from here in the custody of his

1    attorneys to go get it installed now?

2            PROBATION OFFICER:  That's not a problem.

3            THE COURT:  Great.  Thank you.  Problem solved.

4            Anything else?

5            MR. CLARKE:  Thank you, Your Honor.

6            THE COURT:  Mr. Edelman, you have heard your

7    conditions of release.  It's important that you comply with

8    each of your conditions.  If you fail to comply with any of

9    your conditions of release, a warrant may be issued for your

10   arrest, your conditions of release may be revoked and you may

11   be held pending trial in your case.  You may also be charged

12   with contempt of court for having violated court-ordered

13   conditions of release.

14           Your most important condition of release is that you

15   not commit a state, federal or local crime while on release.

16   If you were to do so, again, a warrant may be issued for your

17   arrest, your conditions of release may be revoked and you may

18   be held pending trial in your case.  You may also face a longer

19   sentence for having committed a crime while on release in your

20   case.

21           In a moment I will set the next court date in your

22   case.  It's important that you appear for that court date and

23   all future court dates in your case.  Failure to do so may

24   result in a warrant being issued for your arrest, your

25   conditions of release being revoked, and you being held pending

1  trial in your case.  You may also face an additional criminal

2  charge for failure to appear for court.

3         Finally, I would like to remind you, sir, that it is a

4  crime to try to influence a juror or to threaten or attempt to

5  bribe a witness or other person who may have information about

6  your case, or to retaliate against anyone for providing

7  information about your case to the prosecution or to otherwise

8  obstruct the administration of justice.

9         Do you understand?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Having heard all of your conditions of

12  release and the consequences for failing to follow your

13  conditions of release, are you prepared to comply with them?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Okay.  I will swear you in now to

16  compliance with your conditions.

17         DEPUTY CLERK:  Will you stand and raise your right

18  hand, Mr. Edelman.

19         Do you solemnly swear to abide by the conditions of

20  your release as set forth by this Court, so help you God?

21         THE DEFENDANT:  I do.

22         DEPUTY CLERK:  Thank you.  Please be seated.

23         THE COURT:  Okay.  Ms. Pierre-Louis, do we have a next

24  court date in this case?

25         DEPUTY CLERK:  Yes, before Judge Kollar-Kotelly.  It

1    will be September 13th at 11:00 a.m.

2              THE COURT:  Okay.  Mr. Spiro, does the government have

3    a position under the Speedy Trial Act?

4              MR. SPIRO:  Your Honor, the government's request is

5    that we exclude until that date in order to provide discovery

6    and to negotiate a protection order for that discovery.

7              THE COURT:  Any objection to the tolling of the time

8    between now and that hearing date, Mr. Clarke?

9              MR. CLARKE:  None, Your Honor.

10             THE COURT:  In light of the fact that there is no

11   objection and in the interest of justice, I will toll the time

12   between now and the next hearing date under the Speedy Trial

13   Act.

14             And again, Ms. Pierre-Louis, that date before Judge

15   Kollar-Kotelly?

16             DEPUTY CLERK:  Yes, September 13th at 11:00 a.m.

17             THE COURT:  Mr. Edelman, so the next hearing that you

18   will have will be your first status hearing with the district

19   judge who will be handling your matter going forward.  What I

20   would like the parties to do is to get those conditions of

21   release in to me.  I will be waiting back in chambers so that I

22   can sign those and so that Mr. Edelman can get processed today.

23             Is there anything further at this time?

24             All right.  Thank you very much.

25             DEPUTY CLERK:  All rise.  Court is now adjourned.

1    Thank you.

2         (Proceedings concluded at 2:57 p.m.)

3

4                         CERTIFICATE

5         I, Sonja L. Reeves, Federal Official Court Reporter in and
     for the United States District Court of the District of
6    Columbia, do hereby certify that the foregoing transcript is a
     true and accurate transcript from the original stenographic
7    record in the above-entitled matter and that the transcript
     page format is in conformance with the regulations of the
8    Judicial Conference of the United States.

9         Dated this 19th day of September, 2024.

10

11                         /s/ Sonja L. Reeves
                          SONJA L. REEVES, RDR-CRR
12                        FEDERAL OFFICIAL COURT REPORTER

13

14

15

16

17

18

19

20

21

22

23

24

25