UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 24-CR-239 (CKK) |
| v. : | |
| : | |
| DOUGLAS EDELMAN, : | |
| : | |
| Defendant. : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S NOTICE AS TO PROPOSED FOREIGN EXPERT**

The Government files this response regarding Defendant Douglas Edelman's proposed expert on foreign law. Whether the Defendant earned income from 2013 to 2020 – and whether the tax due on this income is relevant conduct tax loss under the U.S. Sentencing Guidelines– are questions of American law that the Court is able to determine without an expert on foreign law. Moreover, the facts about which the foreign expert would testify may be undisputed. The Government respectfully opposes the necessity for the proposed expert and regardless does not intend to call its own.

I.  **Background**

In May 2025, the Defendant pleaded guilty to several counts in the Indictment: tax evasion relating to the 2006 to 2012 tax years, making false statements in a 2016 disclosure to the IRS and also a 2018 meeting with the Department of Justice, and conspiring to defraud the United States – a count charged as beginning in 2008 and ending in 2020. The Defendant did not plead guilty to tax evasion counts for the 2013 through 2020 tax years nor the counts charging him with violating the foreign bank account reporting requirements.

As the parties will brief more extensively in upcoming filings, in 2012 and 2013 Edelman

restructured his admitted ownership of Mina/Red Star: instead of owning the Gibraltar-based Mina/Red Star entities he had set up in the early 2000s, Edelman directed the transfer of Mina/Red Star to new entities in Hong Kong and the United Arab Emirates, and he directed his advisors to set up a structure whereby those entities were owned by a series of corporations, eventually reporting up to an entity named the Galactea Trust in the British Virgin Islands. On paper, Edelman's wife and children were the beneficiaries of this trust. In reality, Edelman still controlled everything. The Government's contention is that under U.S. tax law, these trusts should be treated as shams or nominees, or alternatively as grantor trusts that would have been taxable to Edelman regardless. As such, the Government will ask the Court to find that the hundreds of millions earned through Mina/Red Star was Edelman's income, and that the full relevant conduct tax loss exceeds $128 million.

An evidentiary hearing to determine the scope of relevant conduct is set for March 23, 2026. The Defendant notified the Court of his intent to raise issues of the laws of the British Virgin Islands as well as the laws of England and Wales. ECF 111. The Defendant argues that the laws of these foreign jurisdictions are relevant to determinations the Court must make about the Galactea Trust, and about whether the Defendant possessed an interest in Galactea or any of the other related trusts. *Id.*

    **II.**    **Argument**

For several reasons, a foreign law expert would not assist the Court in making its findings on relevant conduct. First, any discussion of foreign law is merely an attempt to distract from the facts showing that the foreign trusts were merely artifices of Edelman's fraud. Indeed, the manner and means of the conspiracy count include "[u]sing nominees . . . [including] business associates, entities, and trusts, to hold and conceal assets and foreign bank accounts" and

"[l]ayering entities and trusts into complex holding structures to conceal the ownership of assets and foreign bank accounts" in order to conceal Edelman's income. Edelman's use of nominees is also charged as part of the acts of evasion in the tax evasion counts.

Second, the question of when a court should disregard a trust for federal tax purposes is a question of American law. A trust is disregarded for tax purposes if in substance it lacks any valid purpose but is simply a tax-avoidance device. *See Zmuda v. Comm'r*, 79 T.C. 714, 719-20 (1982). Courts consider four factors relating to the trust to determine whether the trust lacks economic substance for federal income tax purposes: (1) whether the taxpayer's relationship to the property transferred to the trust materially changed after the trust's creation; (2) whether the trust has an independent trustee; (3) whether an economic interest passed to other trust beneficiaries; and (4) whether the taxpayer feels bound by the restrictions imposed by the trust agreement or the law of trusts. *See Markosian v. Comm'r*, 73 T.C. 1235, 1243-44 (1980).

These are factual questions based on the substance – not form – of the entity, and do not depend on a trust's validity. The Sixth Circuit explained this succinctly in *Richardson v. Comm'r*:

> "That the trusts were valid under Ohio law, does not make them legitimate for federal income tax purposes. By adhering to state law in forming a trust, an individual does not necessarily give it economic substance as a matter of federal law. Just as the world can see through a Potemkin village, so the Tax Code sees through sham entities in assessing taxes, even though the trusts are other 'valid under state laws'."

509 F.3d 736, 742 (6th Cir. 2007) (citing *Comm'r v. Tower*, 327 U.S. 280, 291 (1946); *Zmuda v. Comm'r*, 79 T.C. 714, 720 (1980)).

Third, it is unclear that any facts these foreign experts would testify about are even in dispute. The Government agrees that on paper, the Defendant did not possess an interest in the Galactea Trust. Aside from the fact that misrepresentations were made about the source of the

3

funds going into the trust, the Government does not dispute that the Galactea Trust was set up under BVI law. Indeed, in the Government's view this was the gravamen of the Defendant's crimes: he established a series of legal foreign entities that on paper made it appear he was not the owner. However, in reality these entities were shams the Defendant ignored as he continued to own the business and control the funds. But that these facts are potentially not in dispute is not dispositive because, as explained above, whether the Defendant had no paper ownership over a valid trust in the BVI is simply not relevant to the question of whether the trusts were shams and the income his for federal tax purposes.

### III.     Conclusion

In sum, American law determines whether the trusts are shams and to whom the income is attributed. Further, the facts potentially proffered by the proposed foreign expert as to the validity of the trust and the Defendant's on-paper interest in it are potentially not even in dispute. The expert's opinion about foreign law matters as to whether these trusts existed, and what operation of law they had in other countries has no relevance to these proceedings. His or her testimony would waste time and cause further distraction from the issues at hand. For these reasons, the Government does not intend to call its own foreign law expert and does not believe that the Defendant's proposed expert would be helpful to the Court.

       Respectfully submitted,

       JEANINE FERRIS PIRRO
       UNITED STATES ATTORNEY

By:    _____/s/_____
    Sarah Ranney (NY Bar No. 5050919)
    Assistant United States Attorney
    U.S. Attorney's Office for the District of Columbia
    601 D Street NW
    Washington, DC 20579
    Sarah.Ranney@usdoj.gov
    (202) 252-7051

    Ezra Spiro (NY Bar No. 5921838)
    Trial Attorney
    Department of Justice Criminal Division
    950 Pennsylvania Ave NW
    Washington, DC 20530
    Ezra.K.Spiro@usdoj.gov
    (202) 718-7308