```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
        *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,           )  Criminal Action
                 Plaintiff,         )  No. 24-239
vs.                                 )
                                    )  May 21, 2025
DOUGLAS EDELMAN,                    )  2:35 p.m.
                 Defendant.         )  Washington, D.C.
        *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF PLEA COLLOQUY**
**BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY,**
**UNITED STATES DISTRICT COURT SENIOR JUDGE**

<u>**APPEARANCES:**</u>

FOR THE UNITED STATES:
        SARAH CAITLYN WHITE RANNEY
        EZRA SPIRO
        Assistant United States Attorneys
        DEPARTMENT OF JUSTICE, Tax Division
        601 D Street NW, Room 7814
        Washington, DC 20579
        (202) 514-5616
        sarah.c.ranney@usdoj.gov
        ezra.k.spiro@usdoj.gov

FOR THE DEFENDANT:
        GEORGE M. CLARKE, III
        SONYA C. BISHOP (New York Office)
        Baker & Mckenzie LLP
        815 Connecticut Avenue NW
        Washington, DC 20006-4078
        (202) 835-6184
        george.clarke@bakermckenzie.com
        sonya.bishop@bakermckenzie.com

Court Reporter: Elizabeth Davila, RPR, FCRR
        Official Court Reporter

*This transcript is <u>work product</u>.  This transcript shall be considered null and void if the transcript is edited, printed, disassembled, screenshot, and/or distributed in any manner by any party without authorization of the signatory.*

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

1          **P R O C E E D I N G S**

2          THE COURTROOM DEPUTY:  Criminal Case 24-239-1, the

3    United States versus Douglas Edelman.

4          Counsel, would you please identify yourselves for

5    the record, starting with the government.

6          MS. RANNEY:  Good afternoon, Your Honor.

7    Sarah Ranney and Ezra Spiro for the United States.

8          THE COURT:  All right.  Good afternoon.

9          MR. CLARKE:  Good afternoon, Your Honor.

10   George Clarke and Sonya Bishop for Mr. Edelman, and

11   Mr. Edelman is here.

12         THE COURT:  All right.  Good afternoon.

13         Good afternoon, Mr. Edelman.

14         THE DEFENDANT:  Good afternoon.

15         THE COURT:  All right.  I think I have it worked

16   out, in terms of how we're going to do this.  So I am going

17   to go through -- there is no agreement.  There are certain

18   questions that I would be asking, in terms of accepting the

19   plea.  We have the statement of offense; I have the

20   unredacted version, which will be filed under seal.  I have

21   the elements.

22         I am going to discuss what I call "the plan,"

23   which is related to how the base offense loss or

24   considerations will be involved in that eventually.  I will

25   set those out just to make sure we are all in agreement

 1     about how that is going to be proceeding.  And then I have

 2     the guidelines discussion as well.

 3            So if it's not as I stated, then make sure we

 4     get -- you bring it up.

 5            Let me have Mr. Edelman sworn in.  You can just

 6     stand.

 7            (The defendant, DOUGLAS EDELMAN, was sworn.)

 8            THE COURT:  Okay.  Mr. Edelman, you can take your

 9     mask -- go ahead and sit down.

10            You can take your mask off because you are going

11     to be answering questions, and it's just more comfortable.

12            THE DEFENDANT:  Okay.

13            THE COURT:  And we'll get a record.

14            I am going to leave you seated next to your lawyer

15     so you can, at any time, consult with him if you wish,

16     instead of doing it at the podium.

17            The microphone -- with the green light on, we can

18     hear you.  If you push the button below that, it mutes it so

19     you can have a discussion that we can't hear anything about.

20            THE DEFENDANT:  Okay.

21            THE COURT:  So as I have indicated, I have the

22     unredacted version, which will not be what I will be

23     discussing in open court, but it does set out identifying

24     certain companies, individuals, et cetera.  So that is just

25     going to be for the record, to make sure that we are all in

1    agreement just who these people or what companies we're

2    talking about.

3         So I take it, Mr. Edelman, that, in signing this,

4    you agree that who they have identified are the correct

5    people; is that correct? -- or companies?

6         MR. CLARKE:  Your Honor, it isn't signed, the

7    document.

8         THE COURT:  Okay.

9         MR. CLARKE:  But it is something that he is

10   familiar with, we have walked through with him.  He

11   understands.  To the extent that you want to ask him

12   questions about it, he will --

13        THE COURT:  We do need to have him sign it.

14        MR. CLARKE:  Okay.

15        THE COURT:  Okay?  I mean, there is no rush on it;

16   but I prefer that it be signed.

17        MR. CLARKE:  That's fine, Your Honor.

18        THE COURT:  So he's actually agreed that who we

19   have put in here or companies we have identified are the

20   correct ones, since they're going to be with pseudonyms, in

21   terms of what's going to be put actually on the record.

22        It doesn't have to be done this instant, but I

23   would appreciate it.

24        He should have the statement of offense available

25   to him because we will be going over that, and any other

1    documents that may be useful.

2              As I said, there is no agreement, so we are not

3    looking at an agreement itself.

4              All right.  Let me read this over.

5              So in order to accept, Mr. Edelman, your guilty

6    plea, I need to make a finding that you are entering it

7    knowingly and that you are doing it voluntarily.

8              So my questions are going to be to set out what

9    you have been charged with in the indictment, which counts

10   you have decided you are going to be pleading guilty to, and

11   which counts you are not going to be pleading guilty to.

12             My questions -- I have a few background questions

13   to ask you.

14             THE DEFENDANT:  Okay.

15             THE COURT:  I will then go over your

16   constitutional rights that you are giving up by pleading

17   guilty.  We'll go over the statement of offense which,

18   evidently, the -- both the government and defense have

19   agreed to.

20             I need to find that you have admitted to conduct

21   that meets the elements of what you are pleading guilty to,

22   those particular counts.

23             The government can weigh in on that as well.

24             I will then discuss, basically, the consequences

25   of pleading guilty, which include -- there is, obviously,

1    the statutory penalties -- to have you aware of that.  But

2    the bigger thing is the advisory sentencing guidelines,

3    which -- one of the key features is going to be the loss

4    amount; and that's what I am calling "the plan" in terms of

5    how that's going to proceed.  I will go through that and

6    make sure that we all agree that that's what the

7    considerations are going to be.

8        I will then also go over the rest of the

9    guidelines, in terms of what the government is saying, what

10   you would be saying -- in other words, what the different

11   options are so that you are aware of all of that, as well as

12   just discussing -- for the presentence report that would be

13   prepared.  Ultimately, there are a couple of other

14   consequences that need to be brought up with you and, then,

15   the voluntariness of your plea.  Okay?

16       So if you need clarification of anything that I am

17   asking you -- most of it is going to be whether you

18   understand it, so it will be:  "Do you understand and agree

19   to it?"

20       I may ask it or explain it differently than what

21   you understood or understood with your lawyer, so you can

22   talk to him or you can ask more questions.  Don't just give

23   me the answer you think I want to hear.  I want to make sure

24   that you actually understand it.

25            THE DEFENDANT:  Okay.

```
1              THE COURT:  And in terms of at least what you are

2     pleading guilty to, I want to make sure this is what you

3     want to do.  You can't come back in two months and say:

4     Well, Judge, I changed my mind.

5              So I want to make sure this is actually what you

6     have decided.  All right?

7              THE DEFENDANT:  Okay.  Thanks, Your Honor.

8              THE COURT:  So I have had you sworn in.

9              Do you understand that you are now under oath and

10    if you don't answer my questions truthfully you could be

11    prosecuted for perjury or for making a false statement?

12             Do you understand that?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  All right.  The charges in the

15    indictment or -- I am going to go through all of them.

16             Count 1, conspiracy to defraud the

17    United States -- I will indicate, in this first discussion,

18    and then I am going to drop what the statutory provisions

19    are -- the first one is in violation of 18 U.S.C.

20    Section 371; Count 2 is making materially false statements

21    to the IRS in 2016, in violation of 18 U.S.C. 1001; Count 3,

22    making materially false statements to the Department of

23    Justice in 2018, in violation, again, of 18 U.S.C. Section

24    1001; Counts 4 through 10 are tax evasion for tax years 2006

25    to 2012, in violation of 26 U.S.C. Section 7201; Counts 11
```

1    through 18, again, tax evasion for tax years 2013 to 2020,

2    again, in violation of 26 U.S.C. Section 7201; and Counts 19

3    to 30 are willful violation of foreign bank account

4    reporting, in violation of 31 U.S.C. Sections 5314, 5322(b);

5    31 C.F.R. Sections 1010.350 and 1010.306(c) through (d); and

6    1010.840(b).

7            You are pleading guilty to Count 1, a conspiracy

8    to defraud the United States; Count 2, making materially

9    false statements to the IRS in 2016; Count 3, making

10   materially false statements to the Department of Justice in

11   2018; and Counts 4 through 10, the tax evasion for tax years

12   2006 to 2012.

13           You will not be pleading guilty to Counts 11

14   through 30.

15           Is that accurate?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  Okay.

18           At present, you are detained.  And I understand

19   that your counsel will be filing a motion to have that

20   reconsidered, but at this point you are detained.

21           The terms of allocutions or recommendations at the

22   time of sentencing, both parties are free to recommend

23   whatever they think is appropriate.

24           Let me ask just a couple of background questions.

25           How old are you?

```
 1              THE DEFENDANT:  73.

 2              THE COURT:  I'm sorry 70-?

 3              THE DEFENDANT:  73.

 4              THE COURT:  73.

 5              What's your date of birth?

 6              THE DEFENDANT:  ███████████████.

 7              THE COURT:  Okay.  And what is the highest level

 8      of education that you have?

 9              THE DEFENDANT:  Two years of college.

10              THE COURT:  What did you study?

11              THE DEFENDANT:  In those days, all the basic

12      requirements you had to to continue studying and, then, with

13      an idea towards international trade and relations.

14              THE COURT:  Okay.  Where were you born?

15              THE DEFENDANT:  Stockton, California.

16              THE COURT:  All right.  In the last 48 hours have

17      you taken any kind of medication?

18              THE DEFENDANT:  Baby aspirin, that's it.

19              THE COURT:  Okay.  I ask that question to make

20      sure your mind is clear and that --

21              THE DEFENDANT:  I understand.

22              THE COURT:  -- there is no issue with it.  So

23      aspirin isn't going to affect that.

24              Have you ever received any treatment for any type

25      of mental illness or emotional disturbance?
```

```
 1              THE DEFENDANT:  No.  Except for a few weeks ago I
 2    was -- we had an interview, and I talked; but other than
 3    that, never.
 4              THE COURT:  Okay.  Now, I am assuming that you
 5    have a copy of the indictment which sets out all of the
 6    charges?
 7              THE DEFENDANT:  Yes, Your Honor.
 8              THE COURT:  And have you had an opportunity to
 9    fully discuss those charges with your counsel?
10              THE DEFENDANT:  Yes, Your Honor.
11              THE COURT:  Okay.  And are you completely
12    satisfied with the services of your attorneys in this case?
13              THE DEFENDANT:  Yes.
14              THE COURT:  And have you had enough time to talk
15    with your attorney, discuss the case, and whether or not you
16    have chosen, as I said, to plead guilty to certain counts
17    and not plead guilty to the other counts?
18              THE DEFENDANT:  Yes, Your Honor.
19              THE COURT:  All right.  In terms of your basic
20    constitutional rights, you have a right to plead not guilty,
21    have a jury trial in this case.  We do have, actually, a
22    trial date at this point tentatively set, which includes a
23    series of -- like a trial template, dates when you would
24    file motions, and various other things.
25              So as to the counts that you are pleading guilty
```

```
1    to -- which is 1, 2, 3, and 4 through 10 -- are you willing
2    to give up your trial date as to those?
3                THE DEFENDANT:  Yes, Your Honor.
4                THE COURT:  And are you willing to not have
5    resolved if, potentially, there would have been motions
6    filed as related to those -- which could be discovery
7    motions, could be other kind of motions, to suppress, or
8    something else?
9                THE DEFENDANT:  Okay.  Yes, Your Honor.  Fine.
10               THE COURT:  Okay.  I don't know that there would
11   have been, but there was certainly an opportunity to do so.
12               THE DEFENDANT:  Right.  Okay.
13               THE COURT:  All right.  In terms of a very basic
14   way:  For the jury trial, citizens from the District of
15   Columbia would be summoned to the courtroom.  You, through
16   counsel, the government, the Court would be asking them
17   questions to find out if they know anything about the case,
18   any of the participants in the case, and to explore if they
19   had any views or biases that would affect the unfairness --
20   or the fairness of the jury for both sides.  We would select
21   12 out of those who would be -- determine your guilt or
22   innocence, and it would be based on the evidence that would
23   be presented in the courtroom and the jury instructions that
24   the Court would give, which they would apply to the
25   evidence; and they would decide whether or not the
```

1    government had proved the case beyond a reasonable doubt.

2              Do you understand your right to a jury trial?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Do you understand if you went forward

5    to trial you would have a right to be represented by a

6    lawyer at the trial; if you couldn't afford one, one could

7    be appointed?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Do you understand that at a trial you

10   would have the right, through your attorney, to confront and

11   cross-examine any witnesses against you?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand that you would have

14   the right to present your own witnesses and have the right

15   to subpoena them; in other words, to require them to come

16   and testify in your defense?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Do you understand that if there was a

19   trial -- and we're talking about the counts that you are

20   considering pleading to -- you would have the right to

21   testify, present evidence on your own behalf if you wanted

22   to?  But you wouldn't have to testify or present any

23   evidence if you didn't want to, and that's because you can't

24   be forced to incriminate yourself to present evidence of

25   your own guilt.  And in terms of the jury, they would be

1    told that they could not hold it against you, nor infer any

2    guilt based on your asserting your constitutional right.

3          Do you understand that?

4          THE DEFENDANT: Yes, Your Honor.

5          THE COURT: Do you understand that unless and

6    until I accept your guilty plea as to the counts at issue,

7    you are presumed by the law to be innocent because it's the

8    government's burden to prove your guilt beyond a reasonable

9    doubt; and until it does that, you cannot be convicted at

10   trial?

11         THE DEFENDANT: I understand, yes.

12         THE COURT: Okay. And do you understand if you

13   went forward to trial and were convicted, you would have a

14   right to appeal your conviction to the Court of Appeals, a

15   higher court, and have a lawyer, again, help you prepare

16   your appeal?

17         THE DEFENDANT: Yes, sir.

18         THE COURT: All right. And so you can appeal your

19   conviction if you -- in general terms, if your guilty plea

20   was somehow unlawful, involuntary, some other fundamental

21   defect in the proceedings that was not given to you; and you

22   also have a statutory right to appeal under certain

23   circumstances if, for instance, you thought the sentence was

24   contrary to the law or illegal?

25         The notice would need to be filed, generally,

```
 1    within 14 days of judgment.

 2              Do you understand you do have a right to appeal?

 3              THE DEFENDANT:  Yes, Your Honor.

 4              THE COURT:  And if you are unable to pay the cost

 5    of an appeal, you can request that you file it without cost

 6    to you.

 7              Do you understand?

 8              THE DEFENDANT:  Yes.  Yes, Your Honor.

 9              THE COURT:  Now, do you understand if you plead

10    guilty as to those counts that are at issue, and I accept

11    your guilty plea, you are giving up the rights I have

12    explained to you as those counts because there isn't going

13    to be a trial?

14              THE DEFENDANT:  I understand, yes.

15              THE COURT:  And do you want to plead guilty in

16    this case, give up your rights to a trial as to those

17    counts, and all of the other rights that I have explained

18    you would have if your case went to trial?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  All right.  At this point, we can go

21    over the statement of offense.  I don't know whether the

22    government wants to go through it, since it would be what

23    the evidence would be.

24              As I understand it, both sides have agreed to this

25    statement; am I accurate?  Yes?
```

1      You have stipulated; is that correct, or not?

2      If you haven't, let me know.

3      MS. RANNEY:  The government has not signed the

4   statement of offense.  We have worked on it together with

5   the defense and agreed that, if he uses this statement of

6   offense, it's a fulsome enough admission that we would agree

7   to his acceptance of responsibility --

8      THE COURT:  Okay.

9      MS. RANNEY:  -- for the purposes of getting a

10  two-point reduction under the guidelines.  So in that

11  sense -- in the spirit of your question, the answer is yes.

12     THE COURT:  Okay.  I can go ahead and read it.

13  But as I understand it -- I just want to make sure that, as

14  I understand it, the government has agreed that this is

15  enough on those particular counts -- that there is evidence

16  that you would agree that you have that relates to the

17  elements of the counts that he is pleading guilty to.

18     MS. RANNEY:  That's correct, Your Honor.

19     We agree that this statement of offense meets the

20  elements of the counts.  Yes.

21     THE COURT:  All right.  And the defense has -- I

22  will inquire, but agrees that this -- to these particular

23  facts Mr. Edelman will; and that these also meet the

24  elements of the offense, just on the ones that he is

25  pleading guilty to.

```
 1              Am I correct about that?
 2              MR. CLARKE:  Yes, Your Honor.  He agrees that this
 3    is correct.  Again, it's sort of odd because we don't
 4    actually have a "plea agreement."
 5              THE COURT:  Right.
 6              MR. CLARKE:  So it's not like there is a signed
 7    copy of this.  But he agrees -- he's been through these.  He
 8    agrees that these are factually correct and support the
 9    basis.
10              THE COURT:  All right.  I can go ahead and read
11    it.  It sound like the government is uncomfortable with
12    this.
13              MS. RANNEY:  I would be happy to read it, Your
14    Honor.  Whose ever voice you would like to hear more.
15              THE COURT:  Okay.  So what I will do is -- after
16    each paragraph if you would stop, and I will ask Mr. Edelman
17    if he agrees.
18              You indicate you agree.  If you don't agree, you
19    indicate you don't agree.  Or if it's evidence that you are
20    not aware of at the time -- not something you have learned
21    later -- you can indicate that you don't dispute it if you
22    don't have information to refute what they are saying.  I
23    don't know whether that is in there or not, but those are
24    the options.
25              MS. RANNEY:  Certainly, Your Honor.  So I am going
```

1    to read the redacted version into the record.

2           THE COURT:  Right.  Yes.  We will do the redacted

3    version that doesn't identify anybody.

4           MS. RANNEY:  All right.

5           THE COURT:  And you can just start with paragraph

6    1, "At all relevant times..."

7           MS. RANNEY:  Okay.  At all relevant times,

8    Edelman, the defendant, was a United States citizen who

9    lived outside the United States.  From at least the

10   mid-1980s to 2015, Edelman did not file individual U.S.

11   income tax returns or pay U.S. income taxes despite his

12   knowledge that U.S. citizens living abroad had an obligation

13   to report worldwide income to the Internal Revenue Service,

14   IRS, and pay any resulting income taxes.

15          THE COURT:  Would you agree with that,

16   Mr. Edelman?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay.

19          MS. RANNEY:  In the early 2000s, Edelman was

20   living in Bishkek, Kyrgyzstan.  Following the attacks on

21   September 11, 2001, the United States increased its military

22   engagement in Afghanistan and the Middle East, making Manas

23   Air Base, in Kyrgyzstan, a strategic location for supplying

24   U.S. troops in the region.  As a result, the U.S. military

25   greatly increased its purchase of jet fuel.

```
 1                THE COURT:  Would you agree with that?
 2                THE DEFENDANT:  Yes.  I was partially in -- in
 3      Kyrgyzstan in those days.  I was there, and I was also in
 4      England.
 5                THE COURT:  Okay.
 6                THE DEFENDANT:  I was not there all the time.
 7                THE COURT:  So that's why I said -- I mean, if
 8      it's something that you know and agree with, fine.  If it's
 9      something --
10                THE DEFENDANT:  Yeah.
11                THE COURT:  -- you would not have known at the
12      time but you are not disputing, you can also indicate that.
13                THE DEFENDANT:  Okay.
14                THE COURT:  All right.  Let's move to 3.
15                MS. RANNEY:  Drawing on connections Edelman had in
16      the region, Edelman and a Kyrgyz national, Individual A,
17      formed a business to bid on a contract with the combat
18      support agency of the U.S Department of Defense, the Defense
19      Energy Support Center, "DESC," later known as the Defense
20      Logistics Agency, "DLA," to provide fuel for U.S. troops.
21                Edelman and Individual A won the contract in the
22      name of Red Star Enterprises Limited, a Canadian company
23      owned by Individual A.
24                THE COURT:  Would you agree with that?
25                THE DEFENDANT:  Yes.
```

1          THE COURT:  Okay.  And you need to slow down a

2     little bit for the court reporter.

3          MS. RANNEY:  Starting as early as 2003, Edelman

4     used hundreds of thousands of dollars from entities he

5     owned -- Aspen Wind Corporation and Bartol Limited -- along

6     with trade financing secured by Edelman and Individual A to

7     finance much of Red Star's start-up costs and early

8     operations.  Red Star grew quickly and continued to win

9     contracts to service U.S. fuel needs in the region,

10    including at Bagram Air Base in Afghanistan.

11         THE COURT:  Would you agree with that?

12         THE DEFENDANT:  Yes.  These are were -- this --

13    this -- the money that they referred to were loans into the

14    Canadian company that were, then, paid back; but yes, I

15    agree otherwise.  Yes.

16         THE COURT:  You may want to talk to your lawyer

17    about adding additional information, but it's fine if you

18    want to.

19         THE DEFENDANT:  Okay.  So it's fine.  All clear.

20    Thank you.

21         THE COURT:  Okay.  Go ahead.

22         MS. RANNEY:  In 2003, Edelman created Mina Corp

23    Limited, a sister company to Red Star, in Gibraltar.

24    Edelman also incorporated a new Red Star entity in Gibraltar

25    in 2004.  These entities collectively, known as Mina/Red

1     Star, were owned in a 50/50 partnership between Edelman and

2     Individual A.

3               THE COURT:  Would you agree with that?

4               THE DEFENDANT:  Yes.

5               MS. RANNEY:  From the founding of Mina/Red Star

6     through 2008, Edelman routinely executed bank documents

7     showing that he was the ultimate beneficial owner, or "UBO,"

8     of his half of Mina/Red Star; and when Mina/Red Star became

9     profitable, in 2005, Edelman took profit distributions from

10    Mina/Red Star.  During this period, Edelman used Aspen Wind

11    and Bartol bank accounts at Swiss banks, primarily Credit

12    Suisse, to receive with his distributions.

13              THE COURT:  Would you agree with that?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Edelman used his profits from Mina/Red

16    Star to, among other things, send money to his U.S. family

17    members, invest in other businesses, and purchase property

18    around Europe, including a home in Ibiza, Spain.

19              THE DEFENDANT:  One second.

20              THE COURT:  Would you agree with that?

21              THE DEFENDANT:  Okay.  Yes.  Yes, Your Honor.

22              MS. RANNEY:  In November 2008, Credit Suisse

23    notified Edelman's accountant, Co-Conspirator 1, that due to

24    U.S. law enforcement activity regarding the use of Swiss

25    banks for tax evasion, Edelman had to either:  One, close

```
 1   his Credit Suisse account and transfer the account balance;
 2   or two, disclose to U.S. authorities that the accounts
 3   belonged to a U.S. person.  These accounts were not in
 4   Edelman's name, but he was the ultimate beneficial owner of
 5   the accounts.
 6              THE COURT:  Would you agree with that?
 7              THE DEFENDANT:  Yes, Your Honor.
 8              MS. RANNEY:  With the assistance of
 9   Co-Conspirator 1, Edelman closed his Credit Suisse accounts
10   in December 2008 and January 2009 and moved the funds to an
11   account he recently opened at Bank Julius Baer, Singapore,
12   for the Sunage Foundation, known as "Sunage," a Panamanian
13   entity Edelman created in April 2008 with his French wife,
14   Delphine Le Dain, and his daughters named as the entity's
15   beneficiaries.
16              Following the closure of the Credit Suisse
17   accounts, Edelman directed his Mina/Red Star distributions
18   to the Sunage account at Julius Baer.  Although his wife and
19   children were nominally the beneficiaries of Sunage, Edelman
20   controlled the funds in the Sunage account and used them to
21   fund his lifestyle and investments.
22              That account was not in Edelman's name, but he was
23   the ultimate beneficial owner of the accounts.
24              THE COURT:  Would you agree with that?
25              THE DEFENDANT:  Sure.
```

1              Okay.  Yes.  Yes, Your Honor.  Thank you.

2              MS. RANNEY:  In 2010 --

3              THE DEFENDANT:  Go ahead.

4              MS. RANNEY:  In 2010, the House of Representatives

5    Committee on Oversight and Government Reform, Subcommittee

6    on National Security and Foreign Affairs, known as the

7    "Subcommittee," began investigating allegations of

8    corruption in connection with Mina/Red Star's contracts with

9    the Department of Defense.  As part of this inquiry, the

10    Subcommittee became interested in the identity of Mina/Red

11    Star's owners.

12              THE COURT:  Would you agree with that?

13              THE DEFENDANT:  Yes, Your Honor.

14              MS. RANNEY:  At this point, Edelman had not filed

15    U.S. tax returns to report the millions of dollars he had

16    earned from Mina/Red Star and had not paid U.S. taxes on his

17    income.  Rather than disclose his ownership, Edelman caused

18    attorneys to tell the Subcommittee in Washington, D.C., a

19    false story that:  One, his wife, Le Dain, founded Mina/Red

20    Star with Individual A; two, she owned 50 percent of

21    Mina/Red Star; and three, she held her interests through

22    Sunage.

23              As a French citizen, Le Dain had no U.S. tax

24    obligations for her income earned outside the United States.

25              THE COURT:  Would you agree with that?

1          THE DEFENDANT:  Yes, Your Honor.

2          MS. RANNEY:  In 2010, at the same time as he

3     caused this false representation to the Subcommittee,

4     Edelman, with the assistance of Co-Conspirator 1, caused the

5     creation of false and backdated paperwork to corroborate Le

6     Dain's purported ownership and remove his name from the

7     Sunage Foundation bank account at Bank Julius Baer.

8          THE COURT:  Would you agree with that?

9          THE DEFENDANT:  Yes, Your Honor.

10         MS. RANNEY:  In late 2010 and, again, in 2011,

11    during the solicitation of two contracts with the U.S

12    Department of Defense worth hundreds of millions of dollars

13    each, the DLA also asked Mina/Red Star the identity of the

14    company's owners.

15         Edelman caused Mina/Red Star to falsely certify

16    that the business was owned by Le Dain and Individual A.

17         THE COURT:  Would you agree with that?

18         THE DEFENDANT:  One second, Your Honor.

19         THE COURT:  Certainly.

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Okay.

22         MS. RANNEY:  From the period of the congressional

23    investigation through late 2012, Edelman continued to direct

24    his profit distributions from Mina/Red Star into Sunage and

25    spend them as he saw fit, including investing in a music

1     television franchise in Eastern Europe, a land venture in

2     Tulum, Mexico, and a farm in Kenya, and purchasing a luxury

3     town home in London.

4          THE COURT:  Would you agree with that?

5          THE DEFENDANT:  Yes, Your Honor.

6          MS. RANNEY:  In July 2015, Edelman sent

7     Co-Conspirator 2, a Dutch national, to the United States to

8     meet with tax attorneys and tax preparers on Edelman's

9     behalf.  At that point, Edelman still had not filed any U.S.

10    tax returns to report his income from Mina/Red Star or any

11    other source.  Thereafter, Co-Conspirator 1 and

12    Co-Conspirator 2 told the attorneys and tax preparers the

13    same false story:  That Le Dain was the creator and 50

14    percent owner of Mina/Red Star and that the assets, put in a

15    trust, had been hers.

16         Over the next few months, Edelman's advisors,

17    including Co-Conspirator 1 and Co-Conspirator 2, provided a

18    series of false and misleading documents to support the

19    false story that Mina/Red Star was and always had been owned

20    by Le Dain.

21         THE COURT:  Would you agree with that?

22         THE DEFENDANT:  Yes, Your Honor.

23         MS. RANNEY:  At this time, Edelman was convinced

24    to participate in an amnesty program for taxpayers who

25    willfully failed to report foreign financial assets and pay

1      taxes due, known as the Offshore Volunteer Disclosure

2      Program, or "OVDP."  Based on the information provided by

3      Edelman and his advisors to the attorneys and tax preparers,

4      Edelman was advised to report only "gifts" from Le Dain and

5      "consulting fees" from Mina/Red Star.

6              THE COURT:  Would you agree with that?

7              THE DEFENDANT:  Yes.

8              MS. RANNEY:  In March 2016, Edelman caused his

9      attorneys to submit an OVDP letter to the IRS on his behalf,

10     signed by Edelman and Le Dain, at his direction, under

11     penalty of perjury, falsely stating, among other things:

12              In years 2007 to 2014, Douglas Edelman was a

13     consultant for foreign entities in which he never had an

14     ownership interest; and in tax years 2007 to 2014, Douglas

15     Edelman had received between 100,000 and 1 million U.S.

16     dollars in unreported income in each year.

17              THE COURT:  Would you agree with that?

18              THE DEFENDANT:  Yes, Your Honor.

19              MS. RANNEY:  In October 2016, Edelman caused his

20     attorneys to make a full submission to the OVDP on Edelman's

21     behalf, including Forms 1040 U.S. Individual Income Tax

22     Returns, or "Forms 1040," for Douglas Edelman for years 2007

23     to 2014, and the false March 2016 letter Douglas Edelman

24     cosigned with Le Dain.  The forms 1040 were false in that

25     they, among other things:  Reported significantly less

1    income than the amount Edelman had received as the 50

2    percent owner of Mina/Red Star.  Specifically, Edelman

3    falsely reported the following total amounts per year he

4    received as gifts and consulting payments:

5            In year 2007, income reported in U.S. dollars is

6    473,447; for the year 2008, 777,468; for the year 2009,

7    661,400; for the year 2010, 693,536; for the year 2011,

8    584,715; for 2012, 764,144.

9            The tax returns did not report, and Douglas

10   Edelman did not pay taxes on the tens of millions of dollars

11   each year that Douglas Edelman made from his 50 percent

12   ownership of Mina/Red Star.

13           THE COURT:  Would you agree with that?

14           THE DEFENDANT:  Yes, Your Honor.

15           MS. RANNEY:  Edelman's OVDP submission did not

16   include a 2006 tax return; meaning, Edelman did not report

17   or pay any taxes on -- in U.S. dollars -- 6,486,356 in

18   profit distributions from Mina/Red Star he earned during

19   that year.

20           THE COURT:  Would you agree with that?

21           THE DEFENDANT:  Yes, Your Honor.

22           MS. RANNEY:  The tax returns filed for Edelman for

23   years 2013 to 2020 reported income from gifts and consulting

24   payments each year in the following amounts, all in U.S.

25   dollars:

```
 1                     For year 2013, income reported of 752,443;

 2                     For 2014, 611,287;

 3                     For 2015, 296,475;

 4                     For 2016, 298,734;

 5                     For 2017, 277,411;

 6                     For 2018, 298,306;

 7                     For 2019, 247,345;

 8                     And for 2020, 455,508.

 9                     The tax returns did not report, and Douglas

10       Edelman did not pay taxes on, any income from Mina/Red Star

11       or any other business.

12                     THE COURT:  Would you agree with that?

13                     THE DEFENDANT:  Yes, Your Honor.

14                     MR. CLARKE:  Your Honor, just to make it clear,

15       those numbers are, obviously, in there based on one of the

16       requests that you made about what income he did report on

17       those years.

18                     THE COURT:  Right.

19                     MR. CLARKE:  He is not pleading guilty to those

20       years, but that's in the factual --

21                     THE COURT:  We're including all of this so that we

22       can move to the --

23                     MR. CLARKE:  Correct.

24                     THE COURT:  -- part about the sentencing.

25                     MR. CLARKE:  Exactly.
```

```
1              THE COURT:  Go ahead.  And it covers the
2    conspiracy.
3              MS. RANNEY:  The tax returns from 2006 to 2012
4    also concealed Edelman's ownership interest in Ifone-Neda, a
5    joint venture that sold internet services to military
6    service members and contractors at Kandahar Air Base in
7    Afghanistan, as well as Edelman's share of the profits from
8    the business.  At Edelman's direction, Co-Conspirator 1 and
9    Co-Conspirator 4 requested dividends from Ifone-Neda to be
10   issued in proportion to Edelman's ownership share.
11             THE COURT:  Would you agree with that?
12             THE DEFENDANT:  Yes, Your Honor.
13             MS. RANNEY:  In 2018, after contact from the
14   Department of Justice, Edelman caused his attorneys to make
15   a presentation to a federal agent and prosecutors, claiming
16   the false story that his wife had cofounded Mina/Red Star
17   and that Edelman had received less than $1 million of income
18   in each year from 2007 to 2014 as a consultant.
19             THE COURT:  Would you agree with that?
20             THE DEFENDANT:  Yes, Your Honor.
21             MS. RANNEY:  In 2020, one of Edelman's
22   co-conspirators, on Edelman's direction, attempted to change
23   the Gibraltar public registration database to falsely
24   reflect that Edelman was not the owner of Mina/Red Star
25   during the period of time those entities were incorporated
```

```
 1    in that jurisdiction.

 2              THE COURT:  Would you agree with that?

 3              THE DEFENDANT:  Yes.  Yes, Your Honor.

 4              MS. RANNEY:  From 2006 to 2012, Edelman earned

 5    tens of millions of dollars each year in dividends from

 6    Mina/Red Star.

 7              THE COURT:  Would you agree with that?

 8              THE DEFENDANT:  Yes, Your Honor.

 9              MS. RANNEY:  Edelman knowingly and willfully

10    engaged in a scheme with others to conceal his true income

11    from the IRS and impede and obstruct the IRS's

12    ascertainment, evaluation, assessment, and collection of

13    income taxes.  Edelman knowingly caused materially false

14    statements and representations to be made to the

15    Subcommittee, the IRS, and the Department of Justice.

16              THE COURT:  Would you agree with that?

17              THE DEFENDANT:  Yes, Your Honor.

18              MS. RANNEY:  Edelman willfully evaded taxes by:

19    One, making false statements to U.S. authorities; two, using

20    nominees to conceal income and assets; three, creating false

21    documents; four, closing accounts and moving funds to avoid

22    his name being disclosed to U.S. authorities; five,

23    providing false information to banks, attorneys, and tax

24    return preparers regarding his income, assets, financial

25    accounts, and the historical ownership of Mina/Red Star; and
```

1    six, filing false tax returns for the years 2007 through 2012.

2            THE COURT:  Would you agree with that?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  All right.  Since this is, basically,

5    the government's evidence in terms of -- and you would have

6    to agree that what he has agreed to as facts meets those

7    elements in order for him to be found guilty of the ones

8    that are at issue, can you -- obviously, paragraphs 25 and

9    26, in summary form, set out what the elements are.

10           But what I would ask is:  Going through the

11   elements for the three categories, the tax evasion, the

12   materially false statements and the conspiracy, if you would

13   go through the elements, in very summary form, either

14   indicate the paragraphs that show it or just, in summary

15   form, the evidence that is there.

16           MS. RANNEY:  Certainly, Your Honor.

17           Before I begin, I would just like to flag

18   something we flagged for defense before we got started.

19           We would like to just add an additional element to

20   the 371 elements that were emailed over to the Court the

21   other day.

22           THE COURT:  Okay.

23           MS. RANNEY:  We were looking at some D.C. case law

24   and want to make sure that we have an accurate recounting of

25   the elements, and I can read that in.

```
 1                THE COURT:  So you have three.  And what's the

 2      fourth?

 3                MS. RANNEY:  So we have -- our additional element

 4      is:  By deceitful or dishonest means.

 5                THE COURT:  Deceitful, or what?

 6                MS. RANNEY:  Dishonest means.  So the first

 7      element is:  Defendant entered into an agreement; the second

 8      is --

 9                THE COURT:  -- knowing and voluntary

10      participation.

11                MS. RANNEY:  Right.

12                So I think the "entering into an agreement" and

13      "obstructing the lawful function of the government" are

14      sometimes combined and sometimes not.  But we wanted to

15      highlight that the addition of "by deceitful or dishonest

16      means" comes before the finding of one overt act in a couple

17      of D.C. Circuit cases -- I'm sorry, district cases.

18                THE COURT:  Okay.

19                All right.  Mr. Edelman, do you agree with that,

20      after consulting with your counsel?

21                THE DEFENDANT:  Yes, Your Honor.

22                THE COURT:  Okay.

23                MS. RANNEY:  And to be clear --

24                THE COURT:  So if you'd set it out, from the

25      government's perspective, in terms of -- and I am talking
```

1    about, really, various summary forms, or you can do the

2    paragraphs.  I mean, I think, they start around

3    paragraph 11, that we begin to get into some of the -- you

4    know, hiding of the assets, and not reporting certain

5    things.

6          But if you would set out from your perspective,

7    the government's perspective, since the Court needs to find

8    that the government actually has evidence to meet these

9    elements in order to accept the plea as to the counts and,

10   also, that he would have to agree that his conduct -- to the

11   conduct that would meet the elements of these offenses for

12   me to accept the plea.

13          MS. RANNEY:  Yes, Your Honor.

14          THE COURT:  I am asking the government, since I

15   need to have them indicate that the government has this

16   evidence that meets those.

17          MS. RANNEY:  Yes, Your Honor.

18          Specifically, as to the first element that the

19   defendant --

20          THE COURT:  Which count are we talking about?

21          MS. RANNEY:  Starting with Count 1, Your Honor.

22          THE COURT:  Okay.  The conspiracy, under 371.

23   Okay.

24          MS. RANNEY:  As to the first element, that there

25   was an agreement by two or more persons and that the

1    defendant entered into the agreement, I would point the

2    Court to Mr. Edelman's acknowledgment that he directed the

3    actions of several co-conspirators; they were named in this

4    statement of offense as Co-Conspirator 1, 2, 3, and 4, as

5    well as Delphine Le Dain, who was also involved in actions

6    at his direction.

7             THE COURT:  All right.  Do you agree with that?

8             THE DEFENDANT:  Yes.

9           MS. RANNEY:  And to the notion that the agreement

10    was to obstruct a lawful function of the government or an

11    agency of the government, I would point to the statement by

12    Mr. Edelman and the government's evidence that would show

13    that Mr. Edelman took steps to conceal his income from the

14    Internal Revenue Service by a number of means, including

15    putting bank accounts in the name of nominee entities;

16    moving funds when the ownership of the accounts was going to

17    be disclosed to the United States in Swiss bank accounts;

18    and placing -- or purporting to place assets into the name

19    of a nominee, his wife, Delphine Le Dain; and causing false

20    statements to be made about the ownership of Mina/Red Star

21    to third parties who would have passed that information

22    along to the IRS, or directly to the IRS itself.

23           THE COURT:  Okay.  Would you agree with that?

24           THE DEFENDANT:  Yes, Your Honor.

25           MS. RANNEY:  For the third element, that this was

 1  done by deceitful or dishonest means, Mr. Edelman has

 2  acknowledged, and the government would have been prepared to

 3  prove at trial, that:  In multiple circumstances,

 4  Mr. Edelman directed the creation of false or backdated

 5  documents, including false tax returns that were eventually

 6  submitted to the Internal Revenue Service, and false

 7  documents to corroborate a false story told to a

 8  subcommittee of the U.S. Congress.

 9              THE COURT:  Would you agree with that?

10              THE DEFENDANT:  Yes, Your Honor.

11              MS. RANNEY:  To the last element, that at least

12  one overt act was taken in furtherance of the conspiracy,

13  Mr. Edelman has acknowledged, and the government would have

14  been prepared to prove at trial, that:  In 2020, Mr. Edelman

15  directed the actions of Co-Conspirator 4 to make changes to

16  a public registration database in Gibraltar, which reflected

17  Mr. Edelman as the owner of Mina/Red Star entities in

18  Gibraltar.

19              THE COURT:  Would you agree with that?

20              THE DEFENDANT:  Yes.

21              THE COURT:  And presumably, the knowing and

22  voluntary participation.

23              MS. RANNEY:  Your Honor, Mr. Edelman has

24  acknowledged, and the government would have been prepared to

25  show at trial -- prove at trial -- that:  Mr. Edelman, in

1    fact, employed multiple attorneys and tax preparers and

2    provided them false information, showing that he not only

3    knew what his duty was, but intentionally shirked it in

4    order to conceal his income from the IRS.

5             THE COURT:  Would you agree with that?

6             THE DEFENDANT:  Yes, Your Honor.

7             THE COURT:  All right.  So that takes care of

8    Count 1.

9             MS. RANNEY:  As to Count 2, Your Honor, which is

10   1001, false statements made to the IRS in March 2016, the

11   elements are:  First, that defendant made or caused to be

12   made through others a false, fictitious, or fraudulent

13   statement or representation; second, that the statement was

14   material; third, that the statement was made within the

15   jurisdiction of a department or agency of the United States;

16   and fourth, that the making or causing of the statement or

17   representation was willful.

18            THE COURT:  What's the definition of "willful" in

19   this context?

20            MS. RANNEY:  Your Honor, I understand it to be the

21   same as willfulness in other contexts, which is:  An

22   intentional violation of a known legal duty.

23            THE COURT:  In other words, he knows that he was

24   doing something unlawful?

25            MS. RANNEY:  That is correct, Your Honor.

```
 1              THE COURT:  Okay.

 2              MS. RANNEY:  He knows that he is violating a legal

 3    duty --

 4              THE COURT:  Right.  Okay.

 5              MS. RANNEY:  -- to be truthful.

 6              THE COURT:  All right.  And then if you would go

 7    through -- again, as you did with the first one, first

 8    count, let's move to this one.

 9              MS. RANNEY:  Pardon me.

10              THE COURT:  No problem.

11              MS. RANNEY:  As to the first element, that

12    defendant made or caused to be made through others a false

13    statement, Mr. Edelman has acknowledged, and the government

14    would have been prepared to prove at trial, that:

15    Mr. Edelman sent co-conspirators to the United States to

16    provide false information to tax preparers and attorneys

17    amounting to the false story that Mina/Red Star was and

18    always has been owned by Le Dain, and that caused the

19    submission of a false Offshore Voluntary Disclosure Program

20    filing to the IRS in March 2016.

21              THE COURT:  Would you agree with that?

22              THE DEFENDANT:  Yes, Your Honor.

23              MS. RANNEY:  My apologies.  I said "March 2016."

24    It is, in fact, October 2016.

25              THE COURT:  Okay.
```

```
 1            MS. RANNEY:  We may need to ask that Mr. Edelman
 2     agree to that because I believe --
 3            THE COURT:  Do you agree with the date, which
 4     is -- it's October 2016, not March 2016, what she said; is
 5     that correct?
 6            THE DEFENDANT:  Yes.
 7            THE COURT:  Do you want to take a moment to
 8     actually drink enough --
 9            MS. RANNEY:  I may see if someone has a cough drop
10     really quick, Your Honor.
11            (Whereupon, the proceeding pauses.)
12            MR. CLARKE:  There may be a question about that
13     March versus October date.  It might be that -- there is,
14     like, a preclear document that goes in.  That may be the
15     March 2016; and then, the final returns came in October 16th
16     [sic].  So I am not sure if we need to clarify that or not.
17            MS. RANNEY:  Should we take a minute to clarify?
18            MR. CLARKE:  Yeah.
19            MS. RANNEY:  Okay.  Your Honor, if we could take a
20     minute to make sure we're on the same page about this.
21            THE COURT:  Okay.  I will let you talk.
22            (Whereupon, counsel confer.)
23            MS. RANNEY:  My apologies, Your Honor.
24            THE COURT:  No.  That's okay.
25            You want to take enough of the water to actually
```

```
 1    lubricate your throat.
 2              MS. RANNEY:  Thank you.
 3              If I can't make it through, I may ask Mr. Spiro to
 4    sub in.
 5              THE COURT:  So how do we want to deal with the
 6    March versus October?
 7              MS. RANNEY:  Your Honor, we've agreed with the
 8    defense that:  For the purposes of the 1001, the October
 9    2016 submission was the false statement made to the IRS.
10              THE COURT:  You need to -- I realize you are
11    having trouble speaking, but we're having trouble hearing
12    you -- for the court reporter.
13              MS. RANNEY:  We have agreed with defense, Your
14    Honor, that, for purposes of the 1001, the October 2016
15    submission was the false statement to the IRS.
16              THE COURT:  All right.
17              Would you agree with that?
18              THE DEFENDANT:  Yes, Your Honor.
19              THE COURT:  Okay.  Let's proceed.
20              MS. RANNEY:  The second element is that such
21    statement or representation was material.
22              Mr. Edelman acknowledged, and the government would
23    have been prepared to prove, that:  The false statement
24    related to Mr. Edelman's income in each year for the OVDP
25    submission, which related to the IRS's ability to compute
```

1   his tax due and owing for each year.

2            THE COURT:  Would you agree with that?

3            THE DEFENDANT:  Yes, Your Honor.

4            MS. RANNEY:  Third, that such statement was made

5   within the jurisdiction of a department or agency of the

6   United States, Mr. Edelman has acknowledged that the

7   statement was made to the IRS, and the government would have

8   been prepared to prove that.

9            THE COURT:  Would you agree with that?

10           THE DEFENDANT:  Yes, Your Honor.

11           MS. RANNEY:  Fourth, that the making or causing of

12  the statement or representation was willful, Mr. Edelman has

13  acknowledged, and the government would have been prepared to

14  prove, that:  Mr. Edelman knew that he was the owner of

15  Mina/Red Star and had income in those years but

16  intentionally caused misrepresentations to be made to the

17  attorneys and tax preparers who were preparing the statement

18  to the IRS.

19           THE COURT:  Would you agree with that?

20           THE DEFENDANT:  Yes, Your Honor.

21           MS. RANNEY:  As to the second false statement

22  count, which has the same elements but relates to a

23  representation made to the Department of Justice in 2018:

24  First, that the defendant caused or made through others a

25  false statement.  Mr. Edelman provided false information to

1    attorneys who then made a presentation to the Department of

2    Justice which claimed falsely that Delphine Le Dain had been

3    the creator and founder of Mina/Red Star.

4          Mr. Edelman acknowledged, and the government would

5    have been prepared to prove that it was Mr. Edelman who was

6    the creator and founder of Mina/Red Star, and that he

7    deliberately caused his attorneys to tell the Department of

8    Justice the false story about his wife.

9          THE COURT:  Would you agree with that?

10         THE DEFENDANT:  Yes, Your Honor.

11         MS. RANNEY:  As to the second element, that the

12   statement or representation was material, the statement or

13   representation went directly to the question of ownership of

14   Mina/Red Star, and the recipient of tens of millions of

15   dollars of income which was, at that juncture, under

16   investigation by multiple federal agencies, including the

17   Internal Revenue Service.

18         THE COURT:  Would you agree?

19         MS. RANNEY:  Mr. Edelman has acknowledged --

20         THE COURT:  Oh, sorry.

21         MS. RANNEY:  -- that the government --

22         THE COURT:  Go ahead.  I'm sorry.

23         MS. RANNEY:  I'm sorry.

24         THE COURT:  I thought you were done.  Go ahead.

25         MS. RANNEY:  And the government would have been

1   prepared to prove that the statement or representations went

2   directly to a matter that was under investigation.

3            THE COURT:  Would you agree with that?

4            THE DEFENDANT:  Yes, Your Honor.

5            MS. RANNEY:  To the third element, that the

6   statement was made within the jurisdiction of a department

7   or agency of the United States, Mr. Edelman acknowledged

8   that the statement was made to a law enforcement agent and

9   to prosecutors from the Department of Justice; and the

10  government would have been prepared to prove at trial that

11  the statement was made to law enforcement agents from the

12  Internal Revenue Service and from SIGAR, the Special

13  Inspector General for Afghan Reconstruction.

14           THE COURT:  All right.  Would you agree with that?

15           THE DEFENDANT:  Yes, Your Honor.

16           MS. RANNEY:  The fourth element, that the making

17  or causing of the statement or representation was willful,

18  Mr. Edelman has acknowledged that he was the creator of

19  Mina/Red Star and that he intentionally provided false

20  information so that his attorneys would represent that it

21  was his wife, not him, who was the creator of Mina/Red Star.

22           THE COURT:  Would you agree with that?

23           THE DEFENDANT:  Yes, Your Honor.

24           MS. RANNEY:  As to the next counts, Your Honor,

25  tax evasion, in violation of 26 U.S.C. 7201, there are three

1    elements.  The first is that there is a substantial tax due

2    and owing; second, that defendant made an affirmative

3    attempt to evade or defeat that tax; and third, that the

4    attempt was willful.

5         For the seven counts of tax evasion, Mr. Edelman

6    has acknowledged and the government would have been prepared

7    to prove at trial, that:  For 2006, Mr. Edelman did not file

8    a tax return and did not report or pay any taxes on more

9    than $6 million in profit distributions from Mina/Red Star

10   that he earned during that year.

11        As to the first element, he has acknowledged that

12   he did not pay taxes on that amount, so there would be a tax

13   due and owing; and the government would have been prepared

14   to prove that amount at trial.

15             THE COURT:  Would you agree to that?

16             THE DEFENDANT:  Yes, Your Honor.

17        MS. RANNEY:  As to the second element, that the

18   defendant made an affirmative act to evade, 2006 was among

19   the years Mr. Edelman acknowledged that he made false

20   statements about who was the owner of Mina/Red Star,

21   including statements to the IRS, to Congress, and to the

22   Department of Justice to conceal the fact that he was the

23   owner of Mina/Red Star in 2006.

24             THE COURT:  Would you agree with that?

25             THE DEFENDANT:  Yes, Your Honor.

1          MS. RANNEY:  And third, that this was willful,

2     Mr. Edelman has acknowledged, and the government would have

3     been prepared to prove, that he was the creator and owner of

4     Mina/Red Star from the beginning and in the year 2006, and

5     that he intentionally caused misrepresentations to be made

6     to conceal the fact that he was the owner.

7          THE COURT:  Would you agree with that?

8          THE DEFENDANT:  Yes, Your Honor.

9          MS. RANNEY:  For each of the years 2007 to 2012,

10    each of which is its own count of tax evasion, which we

11    understand Mr. Edelman to be pleading guilty to, there was a

12    tax return filed for each of those years reporting a

13    specific amount of income which Mr. Edelman has agreed to,

14    was reported based on false information that he provided

15    through co-conspirators to attorneys and tax preparers who

16    put together the tax returns for each of those years.

17          He agreed that in each of those years he did not

18    report or pay taxes on tens of millions of dollars each year

19    that he had made from his 50 percent ownership in Mina/Red

20    Star.

21          If this case had proceeded to trial, the

22    government would have been able to show, and Mr. Edelman has

23    acknowledged, that there was tax due and owing on those

24    unreported tens of millions of dollars each year from

25    Mr. Edelman's 50 percent ownership, satisfying the first

1     element for each of those counts.

2                    THE COURT:  Would you agree with that?

3                    THE DEFENDANT:  Yes, Your Honor.

4                    MS. RANNEY:  As to the second element, an

5     affirmative act of evasion, the false tax return that

6     Mr. Edelman acknowledged was filed for each of those years

7     constitutes an affirmative act of evasion for each of those

8     years.  There are additional acts of evasion Mr. Edelman

9     acknowledged, and the government would have been prepared to

10    prove at trial, including using nominee entities and bank

11    accounts, making false statements to various arms of the

12    U.S. government, and creating false documents, among others.

13                   THE COURT:  Would you agree with that?

14                   THE DEFENDANT:  Yes, Your Honor.

15                   MS. RANNEY:  Third, as to the element of

16    willfulness for all of the counts, Mr. Edelman acknowledged,

17    and the government would have been prepared to prove at

18    trial, that Mr. Edelman knew he was the owner and creator of

19    Mina/Red Star from the beginning and in these early years,

20    and that he intentionally sent co-conspirators and attorneys

21    and tax preparers to make false representations to various

22    arms of the U.S. government to conceal his ownership, which

23    would satisfy the element for each of those tax evasion

24    counts.

25                   THE COURT:  Would you agree with that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  I think that covers it.

3          So I will find that the government has evidence

4     that meets the elements of each of the counts that he is

5     pleading guilty to beyond a reasonable doubt, and

6     Mr. Edelman has agreed to conduct that meets those elements

7     as to the counts that he is pleading guilty to.

8          All right.  So you can go ahead and sit down, let

9     me move on.

10         So the next thing I am going to move to is

11    consequences, which has to do with sentencing issues.

12         Let me start with statutory penalties.

13         Congress has set out for crimes maximum penalties

14    that the Court can impose.  If you impose a penalty above

15    the statutory maximum, that's an unlawful sentence.

16         Count 1, which is their conspiracy to defraud, the

17    maximum period of imprisonment is five years, the maximum

18    fine is $250,000, the maximum period of supervised release

19    is three years, and there is a special assessment of $100.

20         The supervised release would be added if the Court

21    sentenced you to jail time.  I can sentence you to be

22    supervised in the community with certain conditions.  You

23    should be aware that:  If you violate those conditions

24    and/or commit a new crime, the Court can revoke the

25    supervised release and impose a new sentence.  It's a

1    combination of statute and the advisory sentencing

2    guidelines.  And the important part is:  You would not get

3    credit for periods of time that you had already spent in

4    jail with your sentences.

5         For instance, the period that you are locked up

6    during this period will, obviously, be credited against

7    any -- if I gave you a jail sentence, would be reduced by

8    the time that you have been locked up.  That would not be

9    happening with -- if I revoked your supervised release.  In

10   other words, whatever time you'd served would not be used to

11   reduce the time you would serve on a sentence under

12   supervised release.

13        Counts 2 and 3, which is making material false

14   statements, maximum time in jail is five years; maximum fine

15   is 250,000; again, the maximum supervised release is three

16   years; again, $100 special assessment.

17        Then Counts 4 through 10, the tax evasion, again,

18   the maximum imprisonment would be five years; maximum fine

19   would be 100,000; maximum supervised release is the three

20   years; and another special assessment of $100.

21             MS. RANNEY:  Your Honor.

22             THE COURT:  Yes.

23             MS. RANNEY:  I apologize.  If we could just point

24   out that the max fine for tax evasion is under a different

25   statute, it's $250,000, or twice --

```
1                THE COURT:  Two times the pecuniary --

2                MS. RANNEY:  Yes, Your Honor.

3                THE COURT:  Okay.

4                MS. RANNEY:  My apologies for interrupting.

5                THE COURT:  -- two times the pecuniary gain or

6      loss.

7                All right.  So have you discussed those statutory

8      penalties, or are you aware of what's involved with that?

9                THE DEFENDANT:  Okay.

10               THE COURT:  You have to say something orally or I

11     can't -- nods don't show up on the record.

12               THE DEFENDANT:  Yes.  I understand.  I'm -- yes.

13               THE COURT:  All right.  So the next thing that I

14     want to talk to you about is -- in terms of sentencing,

15     there is a statute, 3553(a), which sets out very broad

16     factors that the Court has to consider at the time of

17     sentencing.  There are things like the seriousness of your

18     offense, any rehabilitation needs that you may have,

19     considerations of parity with other defendants who might

20     have been sentenced in the same kind of things, a just and

21     reasonable sentence, deterrence to you, deterrence to

22     others, those kinds of very broad concepts.

23               The probation department will prepare a

24     presentence report which will set out, again, the offense

25     level, will give personal information of your background,
```

1    will discuss any criminal history, your financial condition,

2    education, job history, any physical condition, substance

3    abuse, mental health issues -- those kinds of things -- so

4    that the Court will have a full picture to consider if there

5    is any particular mitigation, or not, or rehabilitation

6    needs that you may have.

7             Importantly, they will prepare and provide what

8    would be considered the official advisory sentencing

9    guidelines.

10            Now, the guidelines were developed by a sentencing

11   commission, which Congress has established, with the goal of

12   having judges sentence more uniformly for the same types of

13   offenses; obviously, each offense is different, but for the

14   same types.  It's all a matter of numbers, frankly.  The

15   higher the number, the higher the sentence; the lower the

16   number, the lesser the sentence.

17            You will receive a copy of the presentence report.

18   You and the government can review it before I get it.  You

19   can object to, either, inaccuracies in the report or if you

20   challenge how they have done the calculations.  They may

21   change the report based on the objections, or they may not.

22   If they don't change them and there are still exigent

23   objections at the time that I receive it, I will then

24   resolve those objections before we go forward to sentencing.

25            THE DEFENDANT:  Okay.

```
 1              THE COURT:  In terms of the sentencing guidelines,

 2    which are somewhat complicated in your case -- and the

 3    biggest issue is, really, the loss or the base offense,

 4    which considers how much is at issue, which at this point

 5    has not been determined -- I will put it that way.

 6              As I understand it -- I will call it "the plan."

 7              As I understand it, this is the way we're going to

 8    be proceeding:  I have set out the counts that you have

 9    entered a plea to -- are entering a plea.  I will be

10    proceeding, as I understand it, to sentencing on the 1 to 10.

11              The parties agree that, at sentencing, all ten

12    counts would be grouped and treated functionally as one

13    count; and that's a particular guideline.  If there is a

14    dispute about that, I will set out which one it is.

15              The parties further agree that certain guidelines,

16    specifically, Section 2T1.1, which is applicable to tax

17    evasion, would govern that grouping.  Guideline 2T1.1

18    provides that:  The base offense level is determined by the

19    tax loss, which is defined as the total amount of loss that

20    was the object of the offense.

21              Now, in calculating that loss -- this is a quote:

22    All conduct violating the tax laws should be considered as

23    part of the same course of conduct or common scheme or plan.

24    That relates to Note 2 to those guidelines.

25              In other words, the Court considers all relevant
```

1    conduct, and the specific guidelines set that out.

2            So I will be resolving any sentencing disputes.

3            At this point, the parties dispute whether

4    Mr. Edelman's conduct in tax years 2013 and 2020 is relevant

5    conduct -- those are the counts that you are not entering a

6    plea of guilty to -- for determining your base offense level

7    for Counts 1 through 10 under this guideline of 2T1.1.

8            During the sentencing phase, I will be determining

9    by a preponderance of the evidence several issues:  Whether

10   the income derived from Mina/Red Star in 2013 through 2020

11   was Mr. Edelman's income; what law -- foreign, U.S., or

12   both -- governs that determination; whether assets were

13   contributed to the trust, and when; whether such

14   contribution was a completed gift by Mr. Edelman to his wife

15   and/or the trust; if there was a contribution, the value of

16   the contributed assets.

17           Those determinations will result, as I understand

18   it, in a calculation of the tax loss, which will, in turn,

19   dictate the base offense level under the guidelines.  And

20   this is Section 2T4.1, which is the tax table.

21           So does everybody agree with that so far, as I

22   understand the approach that is being taken?

23           If you disagree, let me know.

24           Otherwise, I will assume, roughly, that's the

25   first part of proceeding along.  There is obviously more to

1    this.  But I want to make sure that, up to this point, we

2    all agree what's at issue and what decisions I need to make.

3                THE DEFENDANT:  Yes.

4                THE COURT:  Okay.

5                MS. RANNEY:  Yes, Your Honor.

6                THE COURT:  Okay.  So the Court, then, will apply

7    relevant enhancements, and there may be a dispute of that,

8    in terms of -- and impose a sentence.

9                So that sets out sort of the plan, as I understand

10   it, for the base offense, which includes the loss.

11               Now, in terms of the guidelines themselves, which

12   the base offense sets out the loss, so that we would start

13   with that.  And then, there are other points that would need

14   to be considered.

15               So I am going to go over, as I understand it,

16   people's positions.  And just tell me again, as I asked you,

17   whether this is correct.

18               At the last hearing, we reviewed on the record

19   your decision to decline the government's most recent plea

20   offer.  And under that offer -- I am going over it because

21   it sets out, basically, what their position is.

22               Under that offer, you would have pled guilty to

23   one count of a conspiracy; one count of willful tax evasion

24   encompassing the full tax, that loss the government alleges

25   is at issue in the indictment; and one count of making false

1    statements.

2         You would also have stipulated to a range of tax

3    loss corresponding to a base offense level of either 28 or

4    30 under the sentencing guidelines; and you would have

5    agreed to make restitution in the total amount of the tax

6    loss, according to the government, which the government

7    would argue is $128 million.

8         You would also have agreed to certain sentencing

9    enhancements:  Sophisticated means, adding two points;

10   obstruction of justice, two points; leadership role, which

11   would be four points.  You start out with the base offense,

12   and then you can add these things to it.  And you would have

13   agreed that you are entitled to a deduction of two points

14   for acceptance of responsibility rather than the three-point

15   deduction the government had offered before the Rule 15

16   deposition.

17        They generally control the third point to the

18   extent of how much extra work has gone -- in terms of the

19   timing of the plea versus preparing for trial.  And so in

20   terms of the plea, they would have argued that they were

21   moving into preparing for trial with a deposition and,

22   therefore, you would only get the two points.

23        Under the government's proposed agreement, your

24   total adjusted offense level would have been, either, 34, a

25   base offense level of 28, the 2 points for sophisticated

1  means, 2 for obstruction, 4 for leadership, minus 2 points

2  for acceptance of responsibility; or 36, a base offense

3  level of 30, again, plus these additional points.  And it

4  would depend to some degree, as I understand it, on the base

5  offense and what would be included in the loss.

6        The Criminal History Category is I.  You have no

7  convictions, so there are no points.  So it would have been

8  an adjusted level 34, which is 151 to 188 months; or for 36,

9  188 to 235 months.

10        The statutory maximum term of imprisonment would

11  be 180 months, that is 15 years.

12        You would have been required to pay restitution in

13  the total amount of what the government viewed as the

14  relevant tax loss which, as I indicated, was 128 million.

15        So am I accurately setting out what the

16  government's position was?

17        MS. RANNEY:  Yes, Your Honor.

18        THE COURT:  Which covers, to some degree, what

19  they would be requesting in this particular case.

20        Is that your understanding of what they had

21  expected or what their argument would be?

22        You are not agreeing to it, I just want you to --

23  if this is what they had set out and what you were looking at.

24        THE DEFENDANT:  Yes, Your Honor.  Yes.

25        THE COURT:  Okay.  So in terms of -- if you

1    proceed to trial on all counts in the indictment, then the

2    government would argue for a tax loss corresponding to a

3    base offense level of 30, the same restitution amount, and

4    sentencing enhancements that we just went over.  And you

5    would not be entitled to a two-point deduction for

6    acceptance of responsibility.

7         So if you were convicted on all counts at trial,

8    they would have argued the offense level is 38 -- again,

9    this is the 30, plus the various 2 points, but there would

10   have been 4 points for a leadership role; a Criminal History

11   Category of I, which would have given you an offense level

12   of 38, 235 to 293 months.

13        Again, it's five years, so it can't be more

14   than -- these guidelines are above the statutory maximum, so

15   you would have to do it below the statutory maximum.

16        You also could have been required to pay a fine.

17        The fines are 250,000 or the pecuniary loss or

18   gain, up to 500,000, on 2 counts of making a false

19   statement; up to 1.5 on the 15 counts of tax evasion, or 3

20   million for 6 counts of filing for the false statements.  So

21   it would have come to a potential total maximum fine of 8.25

22   million.

23        They would still have also sought restitution in

24   the 128 million.

25        Sir, do you understand that?

```
1                  THE DEFENDANT:  Yes, Your Honor.

2                  THE COURT:  Okay.  Let's now move to today's

3     hearing.

4                  Looking at what you have -- are pleading guilty

5     to, because you are not intending to plead guilty under an

6     agreement with the government -- obviously, neither I nor

7     anyone else can give you any guarantees about what arguments

8     the government, frankly, will present at sentencing -- what

9     sentence the government will recommend or what I will

10    ultimately impose.

11                 But I want to make sure that you understand your

12    maximum likely exposure if you plead guilty, okay, as I

13    understand it.

14                 Based on the government's arguments, as I

15    currently understand them, they will argue that the total

16    tax loss associated with the crimes to which you intend to

17    plead guilty is 128 million, which corresponds to a base

18    offense level of 30.  Again, we're expecting the government

19    to argue with the same enhancements that they would have

20    done if you had gone to trial, which is the sophisticated

21    means, obstruction of justice, and the leadership role.

22                 I don't know what their position would be on the

23    acceptance of responsibility.  At one point they would have

24    agreed to a two-point reduction.  The third point is sort of

25    up in the air and will probably be something that will be
```

1    argued, in terms of whether it's appropriate or not.  But

2    you are likely to receive the two-point deduction for

3    acceptance of responsibility based on the plea today, unless

4    some other information comes forward.

5           Based on all those facts and circumstances, your

6    maximum total exposure under the guilty plea is a total

7    adjusted offense level of 38, starting with the 30, adding,

8    basically, 8 points.  If that is no deduction for acceptance

9    of responsibility, it's -- with a Criminal History

10   Category I -- 235 to 293 months.  If you get the 2 points,

11   it's 188 to 235 months.

12          Because each of the ten counts to which you are

13   pleading guilty is punishable for a term up to 5 years, the

14   statutory maximum sentence would be 600 months, which would

15   far exceed the guideline range.  So you are not going to

16   have a problem with the statutory maximums.

17          There is also a possibility of imposing a fine.

18          Each of the seven tax fraud counts for which you

19   are proposing to plead guilty carry maximums of $100,000.

20   Each of the other three felony counts carries 250,000.

21   There is that two times the pecuniary gain or loss, which is

22   the other way of calculating.

23          My understanding of your proposed plea is, you

24   would be subject to a fine up to $1,450,000, which would be

25   in addition to any award of restitution.  I am expecting

1    that the government would probably ask for restitution in

2    the total amount of what they view is the relevant tax law.

3            Is that something that you understand and have

4    talked to your lawyer about so far?

5            I am trying to give you all of the permutations

6    that could come up since we don't have an agreement.

7            THE DEFENDANT:  Yes, I understand.  It's clear.

8            THE COURT:  All right.

9            Government, I think I have tried to cover any

10   possible permutations of what would happen, since we don't

11   have an agreement as to what the different possibilities

12   are.

13           Am I wrong about any of those?

14           MR. SPIRO:  Your Honor, it's just -- because the

15   maximum fine for the tax evasion count is 250,000 or twice

16   the pecuniary gain or loss, for the ten counts the defendant

17   is proposing to plea to today, the maximum fine would be two

18   and a half million dollars, or twice the pecuniary gain or

19   loss.

20           THE COURT:  Okay.  So instead of 1 million 450; is

21   that what you are saying?

22           MR. SPIRO:  Yes, Your Honor.

23           THE COURT:  Would you agree with that, or not?

24           Or is that -- presumably, that's an argument that

25   they would make.  But...

```
 1                MR. CLARKE:  You understand --

 2                THE DEFENDANT:  Yeah.  Yeah, I understand.

 3                THE COURT:  Okay.  Now, let me talk about likely

 4     exposure if I accept certain arguments, Mr. Edelman, that

 5     your lawyer is going to be making.  And this scenario -- I

 6     am trying to give you the maximum, in terms of what --

 7     depending on what arguments are made and what decisions I

 8     make -- that's sort of the maximum, what I have been talking

 9     about, that you could be facing.

10                Let me discuss what is likely to be at the bottom

11     half, in terms of the lower.

12                This represents the lower end of the sentencing

13     range that you are likely to face.

14                I understand that your lawyers plan to argue that

15     the total tax loss associated with the offenses to which you

16     are pleading guilty is less than 128 million that the

17     government is seeking.

18                I don't know exactly what arguments your lawyer is

19     going to make.  The statement of offense that the parties

20     have proposed states that you failed to pay taxes on -- and

21     this is a quote:  Tens of millions of dollars each year in

22     tax years 2007 through 2012.

23                So I will hear whatever argument is going to be

24     made about that.  But for purposes of our discussion, I will

25     assume, without deciding, that the tax loss associated with
```

1    your proposed plea is at least 25 million.

2              Am I correct, as I understand the arguments?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  So if it's a tax loss of

5    25 million, that would correspond to a base offense level

6    of 28.

7              Let's assume that the government argues for these

8    enhancements and the Court goes along with it; so it would

9    be the 2 points for sophisticated means, 2 points for

10   obstruction of justice, 4 points for a leadership role.

11             Let's assume I decide you are entitled to the full

12   3-point reduction for acceptance of responsibility.  Each of

13   those adjustments -- the adjusted level would be 33; that's

14   the base offense of 28, plus the various points, minus the

15   acceptance of responsibility; in Criminal History

16   Category I, it would be 135 to 168 months.

17             And assuming, for the sake of this discussion,

18   that I decide that none of the government's proposed

19   enhancements apply, then the total adjusted offense level

20   would be 25, in Criminal History Category I, then the

21   guideline would be 57 to 71 months.  That is, I understand,

22   the best-case scenario for you.

23             THE DEFENDANT:  I understand.

24             THE COURT:  Because each of the ten counts that

25   you are proposing with this is punishable by imprisonment

1   for a term of up to five years; the statutory penalty is

2   higher, so it would far exceed the guideline range.  So we

3   don't have to worry about --

4           THE DEFENDANT:  Right.

5           THE COURT:  -- having a problem with it exceeding

6   that.

7           You would also be subject to the fine, which the

8   government has indicated is the 2 million-plus, which could

9   be in addition to any award of restitution.

10          Finally, I am also -- I may also order you to pay

11  restitution in the total amount of the relevant tax law,

12  whatever I decide that amount is.

13          So is that your understanding and discussion you

14  had with your counsel --

15          THE DEFENDANT:  Yes.

16          THE COURT:  -- these various options?

17          THE DEFENDANT:  Yes.  I understand.

18          THE COURT:  And these are the discussions you have

19  had?

20          These, obviously, are various options I have put

21  out there.

22          THE DEFENDANT:  Yes.

23          THE COURT:  Okay.  At the sentencing we would

24  start to come through with the figures.

25          So in summary, if I accept your plea, the total

1     adjusted offense level would be a minimum of 25, which is 57

2     to 71; it's likely to be 33, which would be 135 to 168; at

3     most 38, which would be 235 to 293.  And none of this would

4     be above the statutory maximum.

5              If I imposed a fine, then the government would

6     argue it's a two point plus -- 2 million plus, which could

7     be added in addition to any restitution.

8              At this point, the government would be arguing for

9     a restitution as the relevant amount is 128 million.

10              Is that your understanding, sort of in summary

11     form, of what all of the options are?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  Okay.  Now, at this point I can't

14     guarantee you exactly how this is all going to work.  I can

15     tell you what appears to be at the top end, based on the

16     arguments as I understand them; what's at the bottom end,

17     based on the arguments as I understand them.

18              We will be having -- and the big thing will be the

19     relevant conduct in terms of, frankly, the base offense to

20     start with; and then moving on to any enhancements or not,

21     and the acceptance of responsibility as categories of doing

22     this.

23              We would need to have a hearing as part of the

24     sentencing.

25              But is that your understanding?

```
 1          I realize it's fairly complicated.  I have gone

 2    through all of these possibilities to make sure you have

 3    some understanding of what the options are that the Court

 4    will be making.  It may turn out to be different.  But at

 5    this point, based on what I have been told by the government

 6    and your counsel, these appear to be the options at the top

 7    end and at the bottom end.

 8          THE DEFENDANT:  Yeah.  You have made it very

 9    clear, and I understand.

10          THE COURT:  Okay.  All right.

11          There are two other things in terms -- that I want

12    to mention about the advisory sentencing guidelines that

13    have not been discussed by either of the parties, but I want

14    to bring them up.

15          Under the rubric of the sentencing guidelines,

16    there can be departures, and these are very narrow

17    exceptions to the usual calculations that are made.  Nobody

18    has discussed them particularly, so I don't know whether any

19    of them apply -- where the Court could depart up or down

20    from whatever the guideline range is.

21          Also, there could be what we call a "variance."

22    The guidelines are advisory, they are not mandatory.  So the

23    Court could vary the sentence, obviously, not above the

24    statutory maximum.

25          In order to do a variance, according to the Court
```

1       of Appeals, I need to do the calculation under the

2       guidelines, consider whether there are any departures that

3       would apply.  Then, if I am going to do a variance, I have

4       to give very specific -- and it would definitely emphasize

5       "specific" -- reasons why I am not doing it within -- the

6       sentence within the guidelines or a departure, but doing

7       something different.  So it's rare, frankly, that courts

8       vary.  But it does occur.

9               Sir, do you understand that?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  Now, there are some other, I'll say,

12      "consequences" that I want to make sure that you understand.

13      And that is in terms of -- if you are given a period of jail

14      time, you actually serve the jail time.  There is no parole

15      or some other way of reducing it.

16              Now, the Bureau of Prisons has their own system.

17      They have what we call "good time credits," which are:  If

18      you don't have any violations, they reduce the sentence

19      roughly 54 days a year during this period.  I don't know

20      whether they would do that, but I just want to make sure

21      that you understand that.

22              There is also one other ramification or

23      consequence to your pleading guilty.  These are felony

24      offenses.  If I accept your plea and find you guilty, that

25      may deprive you of valuable civil rights; and this is the

1    right to vote, the right to hold public office, the right to

2    serve on a jury, the right to possess any kind of firearm or

3    ammunition.  That's a federal statute, in terms of the

4    firearm and ammunition.  States may have their own licensing

5    requirements, and sometimes they need to be considered

6    together.  But in general, you would not be able to have a

7    firearm or ammunition.

8         Now, in terms of the rest of rights, it depends on

9    where you live.  Some don't deprive you at all, some do it

10   for a time period, and some you never get the rights back.

11   It depends very much on where you live.

12        Do you understand that?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  All right.  And the last set of

15   questions relate to the voluntariness of your plea as to the

16   counts you are pleading guilty to.

17        Has anyone, including any of the attorneys, the

18   prosecutor, or anybody else that you have come in contact

19   with since your arrest, promised or suggested to you that by

20   pleading guilty that you are guaranteed a specific sentence?

21        THE DEFENDANT:  No, Your Honor.

22        THE COURT:  Has anyone forced, threatened, or

23   coerced you in any way into entering this plea of guilty?

24        THE DEFENDANT:  No.

25        THE COURT:  Has anyone made any promises to you as

1    to what sentence I will impose if I accept your guilty plea

2    to these counts?

3                THE DEFENDANT:  No, Your Honor.

4                THE COURT:  Do you understand that at this time I

5    don't know what sentence I will impose since I haven't heard

6    from probation or the lawyers, or made some of the decisions

7    that I need to make?  Do you --

8                THE DEFENDANT:  I understand.

9                THE COURT:  All right.  Are you entering this plea

10   of guilty to these counts voluntarily of your own free will?

11               THE DEFENDANT:  Yes.

12               THE COURT:  And are you entering your plea of

13   guilty to these counts at issue because you are guilty of

14   those counts?

15               THE DEFENDANT:  Yes, Your Honor.

16               THE COURT:  Anything you don't understand?

17   Anything you want to ask me or your lawyer?

18               THE DEFENDANT:  No.  I'm pretty -- it's pretty

19   clear.  Thank you.

20               THE COURT:  All right.

21               Douglas Edelman, how do you plead to Count 1,

22   conspiracy to defraud the United States, guilty or not

23   guilty?

24               THE DEFENDANT:  Guilty.

25               THE COURT:  Count 2, making materially false

1     statements to the IRS in 2016, guilty or not guilty?

2              THE DEFENDANT:  Guilty.

3              THE COURT:  Count 3, making materially false

4     statements to the Department of Justice in 2018, guilty or

5     not guilty?

6              THE DEFENDANT:  Guilty.

7              THE COURT:  Counts 4 through 10, as to each of

8     those, which is a tax evasion that cover tax years 2006 to

9     2012 -- to each of those counts, do you plead guilty or not

10    guilty?

11             THE DEFENDANT:  Guilty, Your Honor.

12             THE COURT:  All right.

13             I am satisfied that Mr. Edelman is fully

14    competent, capable of making a decision today.

15             We have discussed this issue, in terms of:  He did

16    have an examination and I found that he was competent;

17    provided some insight but it does not in any way, I think,

18    affect the Court's determination that he is competent.

19             I am assuming counsel does not, in any way, feel

20    that there is an issue or you would have brought it up.

21             Am I correct?

22             MR. CLARKE:  That is correct, Your Honor.

23             THE COURT:  Okay.  He understands the nature and

24    consequences of what he is doing, acting voluntarily of his

25    own free will; and there is an adequate factual basis for

1    his plea as to the specific counts at issue.

2           Therefore, I accept the plea and find Douglas

3    Edelman guilty of Count 1, conspiracy to defraud the

4    United States; Count 2, making materially false statements

5    to the IRS in 2016; guilty as to Count 3, making materially

6    false statements to the Department of Justice in 2018; and

7    guilty as to each count from 4 to 10 as to tax evasion for

8    the tax years 2006 to 2012.

9           All right.  At this point, we need to set other

10   dates.  So how do we wish to proceed at this point?

11          I will go ahead and order a presentence report.

12          I don't believe we have set another date

13   because we have got the rest -- I believe what the idea was

14   that -- the other counts that he is not pleading guilty to

15   will be held in abeyance, we'll put it that way, until we

16   proceed with the sentencing.

17          Is that the plan?

18          MR. CLARKE:  I think that's the plan, Your Honor.

19          THE COURT:  Government?

20          MS. RANNEY:  Yes, Your Honor.

21          THE COURT:  All right.  So we'll hold in abeyance

22   the dates that we have at the present time; and we can deal

23   with those at a later point, depending on how all this

24   works.

25          What I would be doing is getting the presentence

1    report date, and then we can set -- I tentatively would set

2    a hearing date so that I can work it in with my trials.

3              So what's the presentence date?

4              THE COURTROOM DEPUTY:  August 19th.

5              MR. CLARKE:  I thought it was 120 days for PSRs

6    now.

7              THE COURT:  Is it 120, Dorothy?

8              MR. CLARKE:  It's only 90.

9              THE COURTROOM DEPUTY:  That's 90 days.

10              THE COURT:  No.  Do 120.  This is going to be

11    complicated enough, and I believe that they're backed up.

12              THE COURTROOM DEPUTY:  September 19.

13              THE COURT:  I'm sorry?  September?

14              THE COURTROOM DEPUTY:  September 19.

15              THE COURT:  Okay.

16              MS. RANNEY:  Your Honor, if I may.

17              We agree to holding the dates for the pretrial

18    scheduling order in abeyance.

19              But we discussed before setting a second trial

20    date for the remaining counts so that the government and the

21    witnesses, who would potentially be called at the second

22    trial, can at least hold the time on their calendar.  I

23    believe we had thrown out early 2026, and there were some

24    questions about Your Honor's availability in that period of

25    time.

1          THE COURT:  I think that's correct.

2          I will put out language in terms of how we're

3   going to be viewing the dates that we have -- that's we've

4   already set.  I need to go back and look at them and see how

5   we're going to set them out.  But the presentence report

6   will be September 19th.

7          Let me set a hearing date for the sentencing and,

8   then, we can do dates for memos and various other things.  I

9   think we need to have the hearing so that we can actually

10  figure out -- I would have them do the presentence report so

11  we at least get everything up to date.

12          The base offense, which would have the tax loss --

13  they may have some issues coming up with that until I have

14  the hearing.  But I still think we should -- instead of

15  waiting for that, and then doing 120 days -- which doesn't

16  make sense.  We'll proceed -- I will indicate that

17  the offense -- and they can do a combination of things --

18  like I have, or not -- once we have the hearing, which would

19  establish, presumably, the loss, which would inform the base

20  offense.  The rest of it can be done fairly simply.  But

21  they can get the rest of it done.  So that's why I'd go

22  ahead and order the presentence report.

23          Let me look at the hearing date after that.

24          But, obviously, we're not going to trial on

25  October 20th, I will put it that way, on the rest of the

```
1    counts.
2              Let me check with my law clerk about that.
3              (Whereupon, the Court and staff confer.)
4              THE COURT:  My law clerk is reminding me that
5    January, at this point, is fully booked.  Although, I have
6    to say my trial calendar is moving around.  I have gotten --
7    been assigned a couple of codefendant cases that will
8    either take -- will take time to whittle down, or not.
9              I want to put a date for the hearing at least.
10   And then I will take a look at the rest of the calendar and
11   tentatively come up with a date, so we at least hold
12   something just in case we wind up going to trial on the last
13   counts.  Okay?  But at this point I can't tell you what it
14   is.  I need to take a better look at where all of my other
15   trials are.  But it's not going to be any earlier than in
16   2026; that's obvious.
17             Okay.  So let me get a date for the hearing.
18             Can I get some sense from you -- witnesses or, you
19   know, what is this going to consist of, generally, so I can
20   figure out on my calendar how much to block out, how much
21   time I need?
22             I will try and pick something between trials.
23             MS. RANNEY:  Yes, Your Honor.  So since we already
24   have a block held in your calendar in October at the moment,
25   we were thinking --
```

1          THE COURT:  Do you want to do it then?

2          We can do it in October, if you want, what we have

3    blocked out as the trial date.  That's October 20th, though.

4          MR. CLARKE:  I guess -- my question would just be:

5    Is that enough time?

6          If we get the PSR on the 19th of September and

7    then we -- presumably, you are going to want briefs on our

8    relative positions on the related conduct and tax loss, and

9    that; and then you are going to want to absorb that.

10          I am just thinking, practically, is that enough

11    time?

12          THE COURT:  Okay.  I haven't had to do this

13    before, in terms of --

14          MS. RANNEY:  I think we had a five-week block

15    held.  Maybe we can do further in -- yeah, farther in --

16          THE COURT:  So you are doing it during the -- you

17    are talking about when I've -- your trial was October 20th

18    to, roughly, November 21st; so you want to do it during that

19    period?

20          MR. CLARKE:  Towards the end -- maybe at the end

21    of that would make --

22          THE COURT:  Okay.  So the end of October or the

23    end of November?

24          MR. CLARKE:  At the end of that trial period would

25    seem to make a little bit more sense for everybody.

```
 1                MS. RANNEY:  Second week of November.

 2                THE COURT:  Okay.  That's fine with me.

 3                We can set -- what I would ask -- I won't set them

 4      today.  But what I would ask is that you give some

 5      consideration and discuss when you want to file -- when you

 6      will know enough to tell me what you want to file, and set

 7      dates for the relevant conduct.

 8                In other words, I want you to think about when you

 9      want to do that before the hearing.  Okay?

10                I won't ask for dates now.  But once I put out my

11      order, I would expect that -- I will ask for you to confer

12      and figure out -- part of it is to figure out what arguments

13      you want to make.  I know generally what they are but, also,

14      what evidence, et cetera, is going to be put out.

15                But let's look at -- how about if we did it the

16      last weekend -- October, or we can go into November.

17                What do you want to do?

18                MR. CLARKE:  I think if we take it into November

19      it would be better, if that's fine.  I just -- these things

20      always take more time than anybody thinks it might take.

21                THE COURT:  Okay.  How about if we did it the week

22      of November 17th, picking a day there?

23                The week after that gets into Thanksgiving, so --

24                MR. CLARKE:  That sounds perfect to me.

25                THE COURT:  Let me just look at something.
```

1          Why don't we set it on Monday, November 17th, and

2    I will put all day -- I will block it off all day, so I

3    don't have to put something else in there.

4          Then, once you let me know if there are witnesses,

5    or however we're going to do it -- if I need more time, I

6    will block it in.  I will leave the trial date open for

7    about another week or two before I start filling in.  Okay?

8          Does that work?

9          MR. CLARKE:  Sounds good.

10         THE COURT:  Okay.  The hearing itself will be

11   November 17th, all day.  And then what we need is whatever

12   memos are going to need to be filed, legal things, plus some

13   idea of what you are going to be presenting as evidence so

14   that I have -- I know, factually, how much time to really

15   block out, and whether there are any legal decisions the

16   Court has to make before the hearing, if there is something

17   we need to resolve before we start.  Off the top of my head,

18   I can't think of anything, but just in case.

19         Does that work?

20         So the presentence report is September 19th.  The

21   hearing on what I will call "the relevant conduct," which

22   gets to the loss, basically; and once we get that, the rest

23   will fall into place fairly easily.  November 17th, all day.

24         We'll talk to the presentence report writer about

25   the fact that when I put out -- request the presentence

1    report, that we're having a hearing about the loss; so that

2    they'll be aware that there may be some finding that will

3    make a difference for them in terms of their decision.  But

4    they can do everything else, and get it ready.

5              Anything else, then, we need to address?

6              Government?

7         MS. RANNEY:  I don't think so.  But I will flag

8    for you that one of the witnesses, in the government's mind,

9    that would be key to some of these determinations -- his

10   deposition has already been taken and is available by video

11   and also on transcript.  So that might make it a little bit

12   easier, you know, for the Court to view it ahead of time --

13        THE COURT:  Sure.

14        MS. RANNEY:  -- or request certain portions or

15   rely on a transcript where, otherwise, we might be talking

16   about the testimony.

17        THE COURT:  Anything that can be done to make the

18   hearing shorter, sure.  That's not a problem.

19        MS. RANNEY:  So I think we might be able to do

20   things outside of court a little more easily given those

21   circumstances.

22        THE COURT:  Okay.  So my suggestion will be -- I

23   will give you a couple of weeks, after today, to come back

24   and tell me generally what your briefing schedule is; if

25   there is material that can be provided earlier for the

1  hearing, in advance of the hearing; what material it is and

2  when it is going to be provided; maybe do some sort of a

3  joint status report; for the two of you to come up with some

4  dates, and what -- if there are depositions, or whatever,

5  that in advance we would need -- and that's fine -- in order

6  to prepare for the hearing.

7           MR. CLARKE:  Sounds good.

8           THE COURT:  All right.  Anything else?

9           I don't think so.

10          MS. RANNEY:  Court's indulgence, Your Honor.

11          THE COURT:  Maybe there is.

12          MR. CLARKE:  We have one other thing on our side,

13  Your Honor.

14          THE COURT:  Okay.

15          MR. CLARKE:  And that's just timing for this

16  motion for release.  We are planning on filing it Friday,

17  this Friday.  I will wait until the government finishes

18  speaking.

19          My understanding is that the government needed a

20  week -- or asked for a week for that, to respond to the

21  motion to release.  So if we file it on Friday, they respond

22  the next Friday.  And so the question is:  How much time

23  Your Honor would need to look at that?

24          June 4th, we had previously a status report that,

25  I think, I asked us to move; but we could do that June 4th.

```
 1                THE COURT:  Okay.  So hold on.

 2                You are going to file on the 23rd?

 3                MR. CLARKE:  That's -- yes.

 4                THE COURT:  Okay.  You are filing on May 30th?

 5                MR. CLARKE:  Yes.

 6                THE COURT:  Okay.  And then if you want to

 7      respond --

 8                MR. CLARKE:  We'll respond, like, on that Monday

 9      or over the weekend.  We will flip a response super fast.

10                THE COURT:  All right.  So, say, June 2nd.

11                I am trying to remember whether we set a date to

12      come back.

13                MR. CLARKE:  Well, we had a status report date of

14      June 4th.  And somebody wanted --

15                THE COURT:  Okay.

16                MR. CLARKE:  -- and I had asked to move that

17      because somebody wanted me, and now they don't want me on

18      that date.  June 4th would still work for me, but if there's

19      a different date --

20                THE COURT:  Well, that may cut it short.

21                MR. CLARKE:  I understand.  So --

22                THE COURT:  My suggestion is that I take a look at

23      it once you file it, and then I can either set a hearing or

24      not.

25                MR. CLARKE:  Sounds great.
```

```
 1                   THE COURT:  Okay?

 2                   MR. CLARKE:  Sounds good.

 3                   THE COURT:  Okay.  Anything else?

 4                   MS. RANNEY:  One last thing, Your Honor.

 5                   We would just like to ask to -- move to exclude

 6     the time on the remaining counts.  I believe they had

 7     already been excluded up through the first day of trial.

 8     We'd just ask to exclude them, on the same basis, through

 9     November 17th.

10                   THE COURT:  In other words, to the November 17th

11     date you are, basically, talking about?

12                   MS. RANNEY:  Correct.  On the remaining counts in

13     the indictment.

14                   THE COURT:  Okay.

15                   So on the remaining counts -- Mr. Edelman, do you

16     remember your speedy trial rights?

17                   THE DEFENDANT:  Yes, Your Honor.

18                   THE COURT:  So are you willing not to count from

19     today's date, which is May 21st, until we come back for this

20     hearing on the sentencing November 17th, in order to

21     prepare -- to move to the -- resolve some issues for the

22     sentencing?

23                   THE DEFENDANT:  That's fine, yes.

24                   THE COURT:  All right.  Then I'll find it's in the

25     interest of justice and the community to continue
```

1     Mr. Edelman's speedy trial rights between May 21st and

2     November 17th.

3               All right.  I think that's it.

4               All right.  The parties are excused.  Everybody

5     take care.  Be well.

6               MR. CLARKE:  Thank you.

7               THE COURT:  I will take a look and see if there is

8     anything else that needs to be addressed that we have not,

9     in terms of the minute entry relating to the proceedings.

10              The parties are excused.

11              (Whereupon, the proceeding concludes, 4:33 p.m.)

12                        * * * * *

13                        <u>**CERTIFICATE**</u>

14              I, ELIZABETH DAVILA, RPR, FCRR, do hereby certify
      that the foregoing constitutes a true and accurate
15    transcript of my stenographic notes, and is a full, true,
      and complete transcript of the proceedings to the best of my
16    ability.

17              This certificate shall be considered null and void
      if the transcript is disassembled and/or photocopied in any
18    manner by any party without authorization of the signatory
      below.

19

20              Dated this 22nd day of May, 2025.

21              <u>/s/ Elizabeth Davila, RPR, FCRR</u>
                Official Court Reporter
22

23

24

25

## $

**$1,450,000** [1] - 56:24
**$100** [3] - 45:19, 46:16, 46:20
**$100,000** [1] - 56:19
**$128** [1] - 52:7
**$250,000** [2] - 45:18, 46:25

## /

**/s** [1] - 78:21

## 1

**1** [21] - 7:16, 8:7, 11:1, 17:6, 20:23, 21:9, 23:4, 24:11, 24:17, 25:15, 28:8, 28:17, 32:21, 33:4, 35:8, 45:16, 49:10, 50:7, 57:20, 65:21, 67:3
**1.5** [1] - 54:19
**10** [8] - 7:24, 8:11, 11:1, 46:17, 49:10, 50:7, 66:7, 67:7
**100,000** [2] - 25:15, 46:19
**1001** [5] - 7:21, 7:24, 35:10, 38:8, 38:14
**1010.306(c** [1] - 8:5
**1010.350** [1] - 8:5
**1010.840(b)** [1] - 8:6
**1040** [3] - 25:21, 25:22, 25:24
**11** [4] - 7:25, 8:13, 17:21, 32:3
**12** [1] - 11:21
**120** [4] - 68:5, 68:7, 68:10, 69:15
**128** [5] - 53:14, 54:24, 55:17, 58:16, 61:9
**135** [2] - 59:16, 61:2
**14** [1] - 14:1
**15** [3] - 52:15, 53:11, 54:19
**151** [1] - 53:8
**168** [2] - 59:16, 61:2
**16th** [1] - 37:15
**17th** [8] - 72:22, 73:1, 73:11, 73:23, 77:9, 77:10, 77:20, 78:2
**18** [4] - 7:19, 7:21, 7:23, 8:1
**180** [1] - 53:11
**188** [3] - 53:8, 53:9, 56:11
**19** [3] - 8:2, 68:12, 68:14

**19th** [4] - 68:4, 69:6, 71:6, 73:20

## 2

**2** [22] - 7:20, 8:8, 11:1, 24:7, 24:12, 24:17, 33:4, 35:9, 46:13, 49:24, 52:25, 53:1, 54:9, 54:18, 56:10, 59:9, 60:8, 61:6, 65:25, 67:4
**20006-4078** [1] - 1:17
**2000s** [1] - 17:19
**2001** [1] - 17:21
**2003** [2] - 19:3, 19:22
**2004** [1] - 19:25
**2005** [1] - 20:9
**2006** [11] - 7:24, 8:12, 26:16, 28:3, 29:4, 42:7, 42:18, 42:23, 43:4, 66:8, 67:8
**2007** [8] - 25:12, 25:14, 25:22, 26:5, 28:18, 30:1, 43:9, 58:22
**2008** [5] - 20:6, 20:22, 21:10, 21:13, 26:6
**2009** [2] - 21:10, 26:6
**2010** [5] - 22:2, 22:4, 23:2, 23:10, 26:7
**2011** [2] - 23:10, 26:7
**2012** [11] - 7:25, 8:12, 22:23, 26:8, 28:3, 29:4, 30:1, 43:9, 58:22, 66:9, 67:8
**2013** [5] - 8:1, 26:23, 27:1, 50:4, 50:10
**2014** [5] - 25:12, 25:14, 25:23, 27:2, 28:18
**2015** [3] - 17:10, 24:6, 27:3
**2016** [17] - 7:21, 8:9, 25:8, 25:19, 25:23, 27:4, 35:10, 36:20, 36:23, 36:24, 37:4, 37:15, 38:9, 38:14, 66:1, 67:5
**2017** [1] - 27:5
**2018** [7] - 7:23, 8:11, 27:6, 28:13, 39:23, 66:4, 67:6
**2019** [1] - 27:7
**202** [2] - 1:13, 1:18
**2020** [7] - 8:1, 26:23, 27:8, 28:21, 34:14, 50:4, 50:10
**2025** [2] - 1:4, 78:20
**2026** [2] - 68:23, 70:16

## 3

**3** [9] - 7:21, 8:9, 11:1, 18:14, 33:4, 46:13, 54:19, 66:3, 67:5
**3-point** [1] - 59:12
**30** [8] - 8:3, 8:14, 52:4, 53:3, 54:3, 54:9, 55:18, 56:7
**30th** [1] - 76:4
**31** [2] - 8:4, 8:5
**33** [2] - 59:13, 61:2
**34** [2] - 52:24, 53:8
**3553(a** [1] - 47:15
**36** [2] - 53:2, 53:8
**371** [3] - 7:20, 30:20, 32:22
**38** [4] - 54:8, 54:12, 56:7, 61:3

## 4

**4** [12] - 7:24, 8:11, 11:1, 28:9, 33:4, 34:15, 46:17, 53:1, 54:10, 59:10, 66:7, 67:7

**20579** [1] - 1:12
**20th** [3] - 69:25, 71:3, 71:17
**21** [1] - 1:4
**21st** [3] - 71:18, 77:19, 78:1
**22nd** [1] - 78:20
**235** [5] - 53:9, 54:12, 56:10, 56:11, 61:3
**23rd** [1] - 76:2
**24-239** [1] - 1:3
**24-239-1** [1] - 2:2
**247,345** [1] - 27:7
**25** [5] - 30:8, 59:1, 59:5, 59:20, 61:1
**250,000** [4] - 46:15, 54:17, 56:20, 57:15
**26** [4] - 7:25, 8:2, 30:9, 41:25
**277,411** [1] - 27:5
**28** [4] - 52:3, 52:25, 59:6, 59:14
**293** [3] - 54:12, 56:10, 61:3
**296,475** [1] - 27:3
**298,306** [1] - 27:6
**298,734** [1] - 27:4
**2:35** [1] - 1:4
**2nd** [1] - 76:10
**2T1.1** [3] - 49:16, 49:17, 50:7
**2T4.1** [1] - 50:20

**450** [1] - 57:20
**455,508** [1] - 27:8
**473,447** [1] - 26:6
**48** [1] - 9:16
**4:33** [1] - 78:11
**4th** [4] - 75:24, 75:25, 76:14, 76:18

## 5

**5** [1] - 56:13
**50** [6] - 22:20, 24:13, 26:1, 26:11, 43:19, 43:25
**50/50** [1] - 20:1
**500,000** [1] - 54:18
**514-5616** [1] - 1:13
**5314** [1] - 8:4
**5322(b** [1] - 8:4
**54** [1] - 63:19
**57** [2] - 59:21, 61:1
**584,715** [1] - 26:8

## 6

**6** [2] - 42:9, 54:20
**6,486,356** [1] - 26:17
**600** [1] - 56:14
**601** [1] - 1:12
**611,287** [1] - 27:2
**661,400** [1] - 26:7
**693,536** [1] - 26:7

## 7

**70** [1] - 9:2
**71** [2] - 59:21, 61:2
**7201** [3] - 7:25, 8:2, 41:25
**73** [3] - 9:1, 9:3, 9:4
**752,443** [1] - 27:1
**764,144** [1] - 26:8
**777,468** [1] - 26:4
**7814** [1] - 1:12

## 8

**8** [1] - 56:8
**8.25** [1] - 54:21
**815** [1] - 1:17
**835-6184** [1] - 1:18

## 9

**90** [2] - 68:8, 68:9

## A

**abeyance** [3] - 67:15, 67:21, 68:18

**ability** [2] - 38:25, 78:16
**able** [3] - 43:22, 64:6, 74:19
**abroad** [1] - 17:12
**absorb** [1] - 71:9
**abuse** [1] - 48:3
**accept** [10] - 5:5, 13:6, 14:10, 32:9, 32:12, 58:4, 60:25, 63:24, 65:1, 67:2
**acceptance** [10] - 15:7, 52:14, 53:2, 54:6, 55:23, 56:3, 56:8, 59:12, 59:15, 61:21
**accepting** [1] - 2:18
**according** [2] - 52:6, 62:25
**account** [8] - 8:3, 21:1, 21:11, 21:18, 21:20, 21:22, 23:7
**accountant** [1] - 20:23
**accounts** [13] - 20:11, 21:2, 21:3, 21:5, 21:9, 21:17, 21:23, 29:21, 29:25, 33:15, 33:16, 33:17, 44:11
**accurate** [4] - 8:15, 14:25, 30:24, 78:14
**accurately** [1] - 53:15
**acknowledged** [19] - 34:2, 34:13, 34:24, 36:13, 38:22, 39:6, 39:13, 40:4, 40:19, 41:7, 41:18, 42:6, 42:11, 42:19, 43:2, 42:23, 44:6, 44:9, 44:16
**acknowledgment** [1] - 33:2
**act** [5] - 31:16, 34:12, 42:18, 44:5, 44:7
**acting** [1] - 66:24
**Action** [1] - 1:2
**actions** [3] - 33:3, 33:5, 34:15
**activity** [1] - 20:24
**acts** [1] - 44:8
**add** [2] - 30:19, 52:12
**added** [2] - 45:20, 61:7
**adding** [3] - 19:17, 52:9, 56:7
**addition** [4] - 31:15, 56:25, 60:9, 61:7
**additional** [5] - 19:17, 30:19, 31:3, 44:8, 53:3
**address** [1] - 74:5

**addressed** [1] - 78:8
**adequate** [1] - 66:25
**adjusted** [6] - 52:24, 53:8, 56:7, 59:13, 59:19, 61:1
**adjustments** [1] - 59:13
**admission** [1] - 15:6
**admitted** [1] - 5:20
**advance** [2] - 75:1, 75:5
**advised** [1] - 25:4
**advisors** [2] - 24:16, 25:3
**advisory** [5] - 6:2, 46:1, 48:8, 62:12, 62:22
**Affairs** [1] - 22:6
**affect** [3] - 9:23, 11:19, 66:18
**afford** [1] - 12:6
**Afghan** [1] - 41:13
**Afghanistan** [3] - 17:22, 19:10, 28:7
**afternoon** [6] - 2:6, 2:8, 2:9, 2:12, 2:13, 2:14
**agencies** [1] - 40:16
**agency** [5] - 18:18, 33:11, 35:15, 39:5, 41:7
**Agency** [1] - 18:20
**agent** [2] - 28:15, 41:8
**agents** [1] - 41:11
**ago** [1] - 10:1
**agree** [69] - 4:4, 6:6, 6:18, 15:6, 15:16, 15:19, 16:18, 16:19, 17:15, 18:1, 18:8, 18:24, 19:11, 19:15, 20:3, 20:13, 20:20, 21:6, 21:24, 22:12, 22:25, 23:8, 23:17, 24:4, 24:21, 25:6, 25:17, 26:13, 26:20, 27:12, 28:11, 28:19, 29:2, 29:7, 29:16, 30:2, 30:6, 31:19, 32:10, 33:7, 33:23, 34:9, 34:19, 35:5, 36:21, 37:2, 37:3, 38:17, 39:2, 39:9, 39:19, 40:9, 40:18, 41:3, 41:14, 41:22, 42:15, 42:24, 43:7, 44:2, 44:13, 44:25, 49:11, 49:15, 50:21, 51:2, 57:23, 68:17
**agreed** [15] - 4:18, 5:19, 14:24, 15:5,

15:14, 30:6, 38:7, 38:13, 43:13, 43:17, 45:6, 52:5, 52:8, 52:13, 55:24
**agreeing** [1] - 53:22
**agreement** [15] - 2:17, 2:25, 4:1, 5:2, 5:3, 16:4, 31:7, 31:12, 32:25, 33:1, 33:9, 52:23, 55:6, 57:6, 57:11
**agrees** [5] - 15:22, 16:2, 16:7, 16:8, 16:17
**ahead** [12] - 3:9, 15:12, 16:10, 19:21, 22:3, 28:1, 40:22, 40:24, 45:8, 67:11, 69:22, 74:12
**aided** [1] - 1:25
**Air** [3] - 17:23, 19:10, 28:6
**air** [1] - 55:25
**allegations** [1] - 22:7
**alleges** [1] - 51:24
**allocutions** [1] - 8:21
**AMERICA** [1] - 1:2
**ammunition** [3] - 64:3, 64:4, 64:7
**amnesty** [1] - 24:24
**amount** [13] - 6:4, 26:1, 42:12, 42:14, 43:13, 49:19, 52:5, 53:13, 54:3, 57:2, 60:11, 60:12, 61:9
**amounting** [1] - 36:17
**amounts** [2] - 26:3, 26:24
**answer** [3] - 6:23, 7:10, 15:11
**answering** [1] - 3:11
**apologies** [3] - 36:23, 37:23, 47:4
**apologize** [1] - 46:23
**appeal** [6] - 13:14, 13:16, 13:18, 13:22, 14:2, 14:5
**Appeals** [2] - 13:14, 63:1
**appear** [1] - 62:6
**APPEARANCES** [1] - 1:8
**applicable** [1] - 49:16
**apply** [5] - 11:24, 51:6, 59:19, 62:19, 63:3
**appointed** [1] - 12:7
**appreciate** [1] - 4:23
**approach** [1] - 50:22
**appropriate** [2] - 8:23, 56:1

**April** [1] - 21:13
**argue** [6] - 52:7, 54:2, 55:15, 55:19, 58:14, 61:6
**argued** [3] - 52:20, 54:8, 56:1
**argues** [1] - 59:7
**arguing** [1] - 61:8
**argument** [3] - 53:21, 57:24, 58:23
**arguments** [9] - 55:7, 55:14, 58:4, 58:7, 58:18, 59:2, 61:16, 61:17, 72:12
**arms** [2] - 44:11, 44:22
**arrest** [1] - 64:19
**ascertainment** [1] - 29:12
**Aspen** [2] - 19:5, 20:10
**aspirin** [2] - 9:18, 9:23
**asserting** [1] - 13:2
**assessment** [5] - 29:12, 45:19, 46:16, 46:20
**assets** [8] - 24:14, 24:25, 29:20, 29:24, 32:4, 33:18, 50:12, 50:16
**assigned** [1] - 70:7
**assistance** [2] - 21:8, 23:4
**Assistant** [1] - 1:11
**associated** [3] - 55:16, 58:15, 58:25
**assume** [4] - 50:24, 58:25, 59:7, 59:11
**assuming** [1] - 10:4, 59:17, 66:19
**attacks** [1] - 17:20
**attempt** [2] - 42:3, 42:4
**attempted** [1] - 28:22
**attorney** [2] - 10:15, 12:10
**Attorneys** [1] - 1:11
**attorneys** [18] - 10:12, 22:18, 24:8, 24:12, 25:3, 25:9, 25:20, 28:14, 29:23, 35:1, 36:16, 39:17, 40:1, 40:7, 41:20, 43:15, 44:20, 64:17
**August** [1] - 68:4
**authorities** [3] - 21:2, 29:19, 29:22
**authorization** [2] - 1:23, 78:18
**availability** [1] - 68:24
**available** [2] - 4:24,

74:10
**Avenue** [1] - 1:17
**avoid** [1] - 29:21
**award** [2] - 56:25, 60:9
**aware** [6] - 6:1, 6:11, 16:20, 45:23, 47:8, 74:2

## B

**baby** [1] - 9:18
**backdated** [2] - 23:5, 34:4
**backed** [1] - 68:11
**background** [3] - 5:12, 8:24, 47:25
**Baer** [3] - 21:11, 21:18, 23:7
**Bagram** [1] - 19:10
**Baker** [1] - 1:16
**balance** [1] - 21:1
**bank** [7] - 8:3, 20:6, 20:11, 23:7, 33:15, 33:17, 44:10
**Bank** [2] - 21:11, 23:7
**banks** [3] - 20:11, 20:25, 29:23
**Bartol** [2] - 19:5, 20:11
**base** [19] - 2:23, 49:3, 49:18, 50:6, 50:19, 51:10, 51:12, 52:3, 52:11, 52:25, 53:2, 53:4, 54:3, 55:17, 59:5, 59:14, 61:19, 69:12, 69:19
**Base** [3] - 17:23, 19:10, 28:6
**based** [12] - 11:22, 13:2, 25:2, 27:15, 43:14, 48:21, 55:14, 56:3, 56:5, 61:15, 61:17, 62:5
**basic** [3] - 9:11, 10:19, 11:13
**basis** [3] - 16:9, 66:25, 77:8
**became** [2] - 20:8, 22:10
**BEFORE** [1] - 1:7
**began** [1] - 22:7
**begin** [2] - 30:17, 32:3
**beginning** [2] - 43:4, 44:19
**behalf** [4] - 12:21, 24:9, 25:9, 25:21
**belonged** [1] - 21:3
**below** [3] - 3:18, 54:15, 78:18
**beneficial** [3] - 20:7, 21:4, 21:23

**beneficiaries** [2] - 21:15, 21:19
**best** [2] - 59:22, 78:15
**best-case** [1] - 59:22
**better** [2] - 70:14, 72:19
**between** [4] - 20:1, 25:15, 70:22, 78:1
**beyond** [3] - 12:1, 13:8, 45:5
**biases** [1] - 11:19
**bid** [1] - 18:17
**big** [1] - 61:18
**bigger** [1] - 6:2
**biggest** [1] - 49:3
**birth** [1] - 9:5
**Bishkek** [1] - 17:20
**Bishop** [2] - 2:10
**BISHOP** [1] - 1:16
**bit** [3] - 19:2, 71:25, 74:11
**block** [6] - 70:20, 70:24, 71:14, 73:2, 73:6, 73:15
**blocked** [1] - 71:3
**booked** [1] - 70:5
**born** [1] - 9:14
**bottom** [3] - 58:10, 61:16, 62:7
**briefing** [1] - 74:24
**briefs** [1] - 71:7
**bring** [2] - 3:4, 62:14
**broad** [2] - 47:15, 47:22
**brought** [2] - 6:14, 66:20
**burden** [1] - 13:8
**Bureau** [1] - 63:16
**business** [4] - 18:17, 23:16, 27:11, 28:8
**businesses** [1] - 20:17
**but..** [1] - 57:25
**button** [1] - 3:18

## C

**C.F.R** [1] - 8:5
**CAITLYN** [1] - 1:10
**calculating** [2] - 49:21, 56:22
**calculation** [2] - 50:18, 63:1
**calculations** [2] - 48:20, 62:17
**calendar** [5] - 68:22, 70:6, 70:10, 70:20, 70:24
**California** [1] - 9:15
**Canadian** [2] - 18:22,

19:14
**cannot** [1] - 13:9
**capable** [1] - 66:14
**care** [2] - 35:7, 78:5
**carries** [1] - 56:20
**carry** [1] - 56:19
**Case** [1] - 2:2
**case** [15] - 10:12, 10:15, 10:21, 11:17, 11:18, 12:1, 14:16, 14:18, 30:23, 43:21, 49:2, 53:19, 59:22, 70:12, 73:18
**cases** [3] - 31:17, 70:7
**categories** [2] - 30:11, 61:21
**Category** [5] - 53:6, 54:11, 56:10, 59:16, 59:20
**caused** [15] - 22:17, 23:3, 23:4, 23:15, 25:8, 25:19, 28:14, 29:13, 35:11, 36:12, 36:18, 39:16, 39:24, 40:7, 43:5
**causing** [4] - 33:19, 35:16, 39:11, 41:17
**Center** [1] - 18:19
**certain** [10] - 2:17, 3:24, 10:16, 13:22, 32:4, 45:22, 49:15, 52:8, 58:4, 74:14
**certainly** [4] - 11:11, 16:25, 23:19, 30:16
**CERTIFICATE** [1] - 78:13
**certificate** [1] - 78:17
**certify** [2] - 23:15, 78:14
**cetera** [2] - 3:24, 72:14
**challenge** [1] - 48:20
**change** [3] - 28:22, 48:21, 48:22
**changed** [1] - 7:4
**changes** [1] - 34:15
**charged** [1] - 5:9
**charges** [3] - 7:14, 10:6, 10:9
**check** [1] - 70:2
**children** [1] - 21:19
**chosen** [1] - 10:16
**Circuit** [1] - 31:17
**circumstances** [4] - 13:23, 34:3, 56:5, 74:21
**citizen** [2] - 17:8, 22:23
**citizens** [2] - 11:14, 17:12
**civil** [1] - 63:25

**claimed** [1] - 40:2
**claiming** [1] - 28:15
**clarification** [1] - 6:16
**clarify** [2] - 37:16, 37:17
**Clarke** [1] - 2:10
**CLARKE** [37] - 1:15, 2:9, 4:6, 4:9, 4:14, 4:17, 16:2, 16:6, 27:14, 27:19, 27:23, 27:25, 37:12, 37:18, 58:1, 66:22, 67:18, 68:5, 68:8, 71:4, 71:20, 71:24, 72:18, 72:24, 73:9, 75:7, 75:12, 75:15, 76:3, 76:5, 76:8, 76:13, 76:16, 76:21, 76:25, 77:2, 78:6
**clear** [7] - 9:20, 19:19, 27:14, 31:23, 57:7, 62:9, 65:19
**clerk** [2] - 70:2, 70:4
**close** [1] - 20:25
**closed** [1] - 21:9
**closing** [1] - 29:21
**closure** [1] - 21:16
**co** [5] - 28:22, 33:3, 36:15, 43:15, 44:20
**Co** [12] - 20:23, 21:9, 23:4, 24:7, 24:11, 24:12, 24:17, 28:8, 28:9, 33:4, 34:15
**Co-Conspirator** [12] - 20:23, 21:9, 23:4, 24:7, 24:11, 24:12, 24:17, 28:8, 28:9, 33:4, 34:15
**co-conspirators** [5] - 28:22, 33:3, 36:15, 43:15, 44:20
**codefendant** [1] - 70:7
**coerced** [1] - 64:23
**cofounded** [1] - 28:16
**collection** [1] - 29:12
**collectively** [1] - 19:25
**COLLEEN** [1] - 1:7
**college** [1] - 9:9
**COLLOQUY** [1] - 1:6
**Columbia** [1] - 11:15
**COLUMBIA** [1] - 1:1
**combat** [1] - 18:17
**combination** [2] - 46:1, 69:17
**combined** [1] - 31:14
**comfortable** [1] - 3:11
**coming** [1] - 69:13
**commission** [1] - 48:11
**commit** [1] - 45:24

**Committee** [1] - 22:5
**common** [1] - 49:23
**community** [2] - 45:22, 77:25
**companies** [4] - 3:24, 4:1, 4:5, 4:8
**company** [3] - 18:22, 19:14, 19:23
**company's** [1] - 23:14
**competent** [3] - 66:14, 66:16, 66:18
**complete** [1] - 78:15
**completed** [1] - 50:14
**completely** [1] - 10:11
**complicated** [3] - 49:2, 62:1, 68:11
**compute** [1] - 38:25
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**conceal** [2] - 29:10, 29:20, 33:13, 35:4, 42:22, 43:6, 44:22
**concealed** [1] - 28:4
**concepts** [1] - 47:22
**concludes** [1] - 78:11
**condition** [2] - 48:1, 48:2
**conditions** [2] - 45:22, 45:23
**conduct** [13] - 5:20, 32:10, 32:11, 45:6, 49:22, 49:23, 50:1, 50:4, 50:5, 61:19, 71:8, 72:7, 73:21
**confer** [3] - 37:22, 70:3, 72:11
**confront** [1] - 12:10
**Congress** [4] - 34:8, 42:21, 45:13, 48:11
**congressional** [1] - 23:22
**Connecticut** [1] - 1:17
**connection** [1] - 22:8
**connections** [1] - 18:15
**consequence** [1] - 63:23
**consequences** [5] - 5:24, 6:14, 45:11, 63:12, 66:24
**consider** [3] - 47:16, 48:4, 63:2
**consideration** [1] - 72:5
**considerations** [3] - 2:24, 6:7, 47:19
**considered** [5] - 1:22, 48:8, 49:22, 51:14, 64:5, 78:17

**considering** [1] - 12:20
**considers** [2] - 49:4, 49:25
**consist** [1] - 70:19
**conspiracy** [10] - 7:16, 8:7, 28:2, 30:12, 32:22, 34:12, 45:16, 51:23, 65:22, 67:3
**Conspirator** [12] - 20:23, 21:9, 23:4, 24:7, 24:11, 24:12, 24:17, 28:8, 28:9, 33:4, 34:15
**conspirators** [5] - 28:22, 33:3, 36:15, 43:15, 44:20
**constitutes** [2] - 44:7, 78:14
**constitutional** [3] - 5:16, 10:20, 13:2
**consult** [1] - 3:15
**consultant** [2] - 25:13, 28:18
**consulting** [4] - 25:5, 26:4, 26:23, 31:20
**contact** [2] - 28:13, 64:18
**context** [1] - 35:19
**contexts** [1] - 35:21
**continue** [2] - 9:12, 77:25
**continued** [2] - 19:8, 23:23
**contract** [2] - 18:17, 18:21
**contractors** [1] - 28:6
**contracts** [3] - 19:9, 22:8, 23:11
**contrary** [1] - 13:24
**contributed** [2] - 50:13, 50:16
**contribution** [2] - 50:14, 50:15
**control** [1] - 52:17
**controlled** [1] - 21:20
**convicted** [3] - 13:9, 13:13, 54:7
**conviction** [2] - 13:14, 13:19
**convictions** [1] - 53:7
**convinced** [1] - 24:23
**copy** [3] - 10:5, 16:7, 48:17
**Corp** [1] - 19:22
**Corporation** [1] - 19:5
**correct** [17] - 4:4, 4:5, 4:20, 15:1, 15:18, 16:1, 16:3, 16:8, 27:23, 35:25, 37:5,

51:17, 59:2, 66:21, 66:22, 69:1, 77:12
**correspond** [1] - 59:5
**corresponding** [2] - 52:3, 54:2
**corresponds** [1] - 55:17
**corroborate** [2] - 23:5, 34:7
**corruption** [1] - 22:8
**cosigned** [1] - 25:24
**cost** [2] - 14:4, 14:5
**costs** [1] - 19:7
**cough** [1] - 37:9
**counsel** [9] - 2:4, 8:19, 10:9, 11:16, 31:20, 37:22, 60:14, 62:6, 66:19
**Count** [16] - 7:16, 7:20, 7:21, 8:7, 8:8, 8:9, 32:21, 35:8, 35:9, 45:16, 65:21, 65:25, 66:3, 67:3, 67:4, 67:5
**count** [11] - 32:20, 36:8, 39:22, 43:10, 49:13, 51:23, 51:25, 57:15, 67:7, 77:18
**counts** [49] - 5:9, 5:11, 5:22, 10:16, 10:17, 10:25, 12:19, 13:6, 14:10, 14:12, 14:17, 15:15, 15:17, 15:20, 32:9, 41:24, 42:5, 44:1, 44:16, 44:24, 45:4, 45:7, 49:8, 49:12, 50:5, 54:1, 54:7, 54:18, 54:19, 54:20, 56:12, 56:18, 56:20, 57:16, 59:24, 64:16, 65:2, 65:10, 65:13, 65:14, 66:9, 67:1, 67:14, 68:20, 70:1, 70:13, 77:6, 77:12, 77:15
**Counts** [9] - 7:24, 7:25, 8:2, 8:11, 8:13, 46:13, 46:17, 50:7, 66:7
**couple** [5] - 6:13, 8:24, 31:16, 70:7, 74:23
**course** [1] - 49:23
**court** [5] - 3:23, 13:15, 19:2, 38:12, 74:20
**COURT** [219] - 1:1, 1:7, 2:8, 2:12, 2:15, 3:8, 3:13, 3:21, 4:8, 4:13, 4:15, 4:18, 5:15, 7:1, 7:8, 7:14,

8:17, 9:2, 9:4, 9:7, 9:10, 9:14, 9:16, 9:19, 9:22, 10:4, 10:8, 10:11, 10:14, 10:19, 11:4, 11:10, 11:13, 12:4, 12:9, 12:13, 12:18, 13:5, 13:12, 13:18, 14:4, 14:9, 14:15, 14:20, 15:8, 15:12, 15:21, 16:5, 16:10, 16:15, 17:2, 17:5, 17:15, 17:18, 18:1, 18:5, 18:7, 18:11, 18:14, 18:24, 19:1, 19:11, 19:16, 19:21, 20:3, 20:13, 20:15, 20:20, 21:6, 21:24, 22:12, 22:25, 23:8, 23:17, 23:19, 23:21, 24:4, 24:21, 25:6, 25:17, 26:13, 26:20, 27:12, 27:18, 27:21, 27:24, 28:1, 28:11, 28:19, 29:2, 29:7, 29:16, 30:2, 30:4, 30:22, 31:1, 31:5, 31:9, 31:18, 31:22, 31:24, 32:14, 32:20, 32:22, 33:7, 33:23, 34:9, 34:19, 34:21, 35:5, 35:7, 35:18, 35:23, 36:1, 36:4, 36:6, 36:10, 36:21, 36:25, 37:3, 37:7, 37:21, 37:24, 38:5, 38:10, 38:16, 38:19, 39:2, 39:9, 39:19, 40:9, 40:18, 40:20, 40:22, 40:24, 41:3, 41:14, 41:22, 42:15, 42:24, 43:7, 44:2, 44:13, 44:25, 45:2, 46:22, 47:1, 47:3, 47:5, 47:10, 47:13, 49:1, 51:4, 51:6, 53:18, 53:25, 55:2, 57:8, 57:20, 57:23, 58:3, 59:4, 59:24, 60:5, 60:16, 60:18, 60:23, 61:13, 62:10, 63:11, 64:14, 64:22, 64:25, 65:4, 65:9, 65:12, 65:16, 65:20, 65:25, 66:3, 66:7, 66:12, 66:23, 67:19, 67:21, 68:7, 68:10, 68:13, 68:15, 69:1, 70:4, 71:1, 71:12, 71:16, 71:22, 72:2, 72:21, 72:25, 73:10, 74:13,

74:17, 74:22, 75:8, 75:11, 75:14, 76:1, 76:4, 76:6, 76:10, 76:15, 76:20, 76:22, 77:1, 77:3, 77:10, 77:14, 77:18, 77:24, 78:7
**Court** [24] - 1:20, 1:21, 11:16, 11:24, 13:14, 30:20, 32:7, 33:2, 45:14, 45:20, 45:24, 47:16, 48:4, 49:25, 51:6, 59:8, 62:3, 62:19, 62:23, 62:25, 70:3, 73:16, 74:12, 78:21
**Court's** [2] - 66:18, 75:10
**courtroom** [2] - 11:15, 11:23
**COURTROOM** [5] - 2:2, 68:4, 68:9, 68:12, 68:14
**courts** [1] - 63:7
**cover** [2] - 57:9, 66:8
**covers** [3] - 28:1, 45:2, 53:18
**created** [2] - 19:22, 21:13
**creating** [2] - 29:20, 44:12
**creation** [2] - 23:5, 34:4
**creator** [7] - 24:13, 40:3, 40:6, 41:18, 41:21, 43:3, 44:18
**credit** [1] - 46:3
**Credit** [5] - 20:11, 20:22, 21:1, 21:9, 21:16
**credited** [1] - 46:6
**credits** [1] - 63:17
**crime** [1] - 45:24
**crimes** [2] - 45:13, 55:16
**Criminal** [7] - 1:2, 2:2, 53:6, 54:10, 56:9, 59:15, 59:20
**criminal** [1] - 48:1
**cross** [1] - 12:11
**cross-examine** [1] - 12:11
**cut** [1] - 76:20

# D

**D.C** [4] - 1:5, 22:18, 30:23, 31:17
**Dain** [13] - 21:14, 22:19, 22:23, 23:16,

24:13, 24:20, 25:4, 25:10, 25:24, 33:5, 33:19, 36:18, 40:2
**Dain's** [1] - 23:6
**database** [2] - 28:23, 34:16
**date** [24] - 9:5, 10:22, 11:2, 37:3, 37:13, 67:12, 68:1, 68:2, 68:3, 68:20, 69:7, 69:11, 69:23, 70:9, 70:11, 70:17, 71:3, 73:6, 76:11, 76:13, 76:18, 76:19, 77:11, 77:19
**Dated** [1] - 78:20
**dates** [9] - 10:23, 67:10, 67:22, 68:17, 69:3, 69:8, 72:7, 72:10, 75:4
**daughters** [1] - 21:14
**Davila** [2] - 1:20, 78:21
**DAVILA** [1] - 78:14
**days** [7] - 9:11, 14:1, 18:3, 63:19, 68:5, 68:9, 69:15
**DC** [1] - 1:12, 1:17
**deal** [2] - 38:5, 67:22
**deceitful** [4] - 31:4, 31:5, 31:15, 34:1
**December** [1] - 21:10
**decide** [4] - 11:25, 59:11, 59:18, 60:12
**decided** [2] - 5:10, 7:6
**deciding** [1] - 58:25
**decision** [3] - 51:19, 66:14, 74:3
**decisions** [4] - 51:2, 58:7, 65:6, 73:15
**decline** [1] - 51:19
**deduction** [5] - 52:13, 52:15, 54:5, 56:2, 56:8
**defeat** [1] - 42:3
**defect** [1] - 13:21
**defendant** [11] - 3:7, 17:8, 31:7, 32:19, 33:1, 35:11, 36:12, 39:24, 42:2, 42:18, 57:16
**Defendant** [1] - 1:5
**DEFENDANT** [122] - 1:15, 2:14, 3:12, 3:20, 5:14, 6:25, 7:7, 7:13, 8:16, 9:1, 9:3, 9:6, 9:9, 9:11, 9:15, 9:18, 9:21, 10:1, 10:7, 10:10, 10:13, 10:18, 11:3, 11:9, 11:12, 12:3, 12:8,

12:12, 12:17, 13:4, 13:11, 13:17, 14:3, 14:8, 14:14, 14:19, 17:17, 18:2, 18:6, 18:10, 18:13, 18:25, 19:12, 19:19, 20:4, 20:14, 20:19, 20:21, 21:7, 21:25, 22:3, 22:13, 23:1, 23:9, 23:18, 23:20, 24:5, 24:22, 25:7, 25:18, 26:14, 26:21, 27:13, 28:12, 28:20, 29:3, 29:8, 29:17, 30:3, 31:21, 33:8, 33:24, 34:10, 34:20, 35:6, 36:22, 37:6, 38:18, 39:3, 39:10, 39:20, 40:10, 41:4, 41:15, 41:23, 42:16, 42:25, 43:8, 44:3, 44:14, 45:1, 47:9, 47:12, 48:25, 51:3, 53:24, 55:1, 57:7, 58:2, 59:3, 59:23, 60:4, 60:15, 60:17, 60:22, 61:12, 62:8, 63:10, 64:13, 64:21, 64:24, 65:3, 65:8, 65:11, 65:15, 65:18, 65:24, 66:2, 66:6, 66:11, 77:17, 77:23
**defendants** [1] - 47:19
**Defense** [5] - 18:18, 18:19, 22:9, 23:12
**defense** [7] - 5:18, 12:16, 15:5, 15:21, 30:18, 38:8, 38:13
**defined** [1] - 49:19
**definitely** [1] - 63:4
**definition** [1] - 35:18
**defraud** [5] - 7:16, 8:8, 45:16, 65:22, 67:3
**degree** [2] - 53:4, 53:18
**deliberately** [1] - 40:7
**Delphine** [1] - 21:14, 33:5, 33:19, 40:2
**depart** [1] - 62:19
**department** [4] - 35:15, 39:5, 41:6, 47:23
**Department** [14] - 7:22, 8:10, 18:18, 22:9, 23:12, 28:14, 29:15, 39:23, 40:1, 40:7, 41:9, 42:22, 66:4, 67:6
**DEPARTMENT** [1] - 1:11

**departure** [1] - 63:6
**departures** [2] - 62:16, 63:2
**deposition** [3] - 52:16, 52:21, 74:10
**depositions** [1] - 75:4
**deprive** [2] - 63:25, 64:9
**DEPUTY** [5] - 2:2, 68:4, 68:9, 68:12, 68:14
**derived** [1] - 50:10
**DESC** [1] - 18:19
**despite** [1] - 17:11
**detained** [2] - 8:18, 8:20
**determination** [2] - 50:12, 66:18
**determinations** [1] - 50:17, 74:9
**determine** [1] - 11:21
**determined** [2] - 49:5, 49:18
**determining** [2] - 50:6, 50:8
**deterrence** [1] - 47:21
**developed** [1] - 48:10
**dictate** [1] - 50:19
**difference** [1] - 74:3
**different** [7] - 6:10, 46:24, 48:13, 57:11, 62:4, 63:7, 76:19
**differently** [1] - 50:23
**direct** [1] - 23:23
**directed** [4] - 21:17, 33:2, 34:4, 34:15
**direction** [4] - 25:10, 28:8, 28:22, 33:6
**directly** [3] - 33:22, 40:13, 41:2
**disagree** [1] - 50:23
**disassembled** [2] - 1:23, 78:17
**disclose** [2] - 21:2, 22:17
**disclosed** [2] - 29:22, 33:17
**Disclosure** [2] - 25:1, 36:19
**discovery** [1] - 11:6
**discuss** [7] - 2:22, 5:24, 10:9, 10:15, 48:1, 58:10, 72:5
**discussed** [5] - 47:7, 62:13, 62:18, 66:15, 68:19
**discussing** [2] - 3:23, 6:12
**discussion** [6] - 3:2, 3:19, 7:17, 58:24,

59:17, 60:13
**discussions** [1] - 60:18
**dishonest** [4] - 31:4, 31:6, 31:15, 34:1
**dispute** [4] - 16:21, 49:14, 50:3, 51:7
**disputes** [1] - 50:2
**disputing** [1] - 18:12
**distributed** [1] - 1:23
**distributions** [6] - 20:9, 20:12, 21:17, 23:24, 26:18, 42:9
**DISTRICT** [3] - 1:1, 1:1, 1:7
**district** [1] - 31:17
**District** [1] - 11:14
**disturbance** [1] - 9:25
**dividends** [2] - 28:9, 29:5
**Division** [1] - 1:11
**DLA** [2] - 18:20, 23:13
**document** [2] - 4:7, 37:14
**documents** [7] - 5:1, 20:6, 24:18, 29:21, 34:5, 34:7, 44:12
**dollars** [14] - 19:4, 22:15, 23:12, 25:16, 26:5, 26:10, 26:17, 26:25, 29:5, 40:15, 43:18, 43:24, 57:18, 58:21
**done** [8] - 4:22, 34:1, 40:24, 48:20, 55:20, 69:20, 69:21, 74:17
**Dorothy** [1] - 68:7
**doubt** [3] - 12:1, 13:9, 45:5
**DOUGLAS** [2] - 1:4, 3:7
**Douglas** [10] - 2:3, 25:12, 25:14, 25:22, 25:23, 26:9, 26:11, 27:9, 65:21, 67:2
**down** [5] - 3:9, 19:1, 45:8, 62:19, 70:8
**drawing** [1] - 18:15
**drink** [1] - 37:8
**drop** [2] - 7:18, 37:9
**due** [6] - 20:23, 25:1, 39:1, 42:1, 42:13, 43:23
**during** [10] - 20:10, 23:11, 26:18, 28:25, 42:10, 46:6, 50:8, 63:19, 71:16, 71:19
**Dutch** [1] - 24:7
**duty** [3] - 35:3, 35:22, 36:3

**E**

**early** [5] - 17:19, 19:3, 19:7, 44:19, 68:23
**earned** [5] - 22:16, 22:24, 26:18, 29:4, 42:10
**easier** [1] - 74:12
**easily** [2] - 73:23, 74:20
**East** [1] - 17:22
**Eastern** [1] - 24:1
**EDELMAN** [2] - 1:4, 3:7
**Edelman** [103] - 2:3, 2:10, 2:11, 2:13, 3:5, 3:8, 4:3, 5:5, 15:23, 16:16, 17:8, 17:10, 17:16, 17:19, 18:15, 18:16, 18:21, 19:3, 19:6, 19:22, 19:24, 20:1, 20:6, 20:9, 20:10, 20:15, 20:25, 21:9, 21:13, 21:17, 21:19, 22:14, 22:17, 23:4, 23:15, 23:23, 24:6, 24:9, 24:23, 25:3, 25:4, 25:8, 25:10, 25:12, 25:15, 25:19, 25:22, 25:23, 26:1, 26:2, 26:10, 26:11, 26:16, 26:22, 27:10, 28:14, 28:17, 28:24, 29:4, 29:9, 29:13, 29:18, 31:19, 33:12, 33:13, 34:1, 34:4, 34:13, 34:14, 34:17, 34:23, 34:25, 36:13, 36:15, 37:1, 38:22, 39:6, 39:12, 39:14, 39:25, 40:4, 40:5, 40:19, 41:7, 41:18, 42:5, 42:7, 42:19, 43:2, 43:11, 43:13, 43:22, 44:6, 44:8, 44:16, 44:18, 45:6, 50:14, 58:4, 65:21, 66:13, 67:3, 77:15
**Edelman's** [19] - 20:23, 21:4, 21:22, 24:8, 24:16, 25:20, 26:15, 28:4, 28:7, 28:8, 28:10, 28:21, 28:22, 33:2, 38:24, 43:25, 50:4, 50:11, 78:1
**edited** [1] - 1:22
**education** [2] - 9:8, 48:2

**either** [8] - 20:25, 30:13, 48:19, 52:3, 52:24, 62:13, 70:8, 76:23
**element** [18] - 30:19, 31:3, 31:7, 32:18, 32:24, 33:25, 34:11, 36:11, 38:20, 40:11, 41:5, 41:16, 42:11, 42:17, 44:1, 44:4, 44:15, 44:23
**elements** [18] - 2:21, 5:21, 15:17, 15:20, 15:24, 30:7, 30:9, 30:11, 30:13, 30:20, 30:25, 32:9, 32:11, 35:11, 39:22, 42:1, 45:4, 45:6
**Elizabeth** [2] - 1:20, 78:21
**ELIZABETH** [1] - 78:14
**emailed** [1] - 30:20
**emotional** [1] - 9:25
**emphasize** [1] - 63:4
**employed** [1] - 35:1
**encompassing** [1] - 51:24
**end** [10] - 58:12, 61:15, 61:16, 62:7, 71:20, 71:22, 71:23, 71:24
**Energy** [1] - 18:19
**enforcement** [3] - 20:24, 41:8, 41:11
**engaged** [1] - 29:10
**engagement** [1] - 17:22
**England** [1] - 18:4
**enhancements** [7] - 51:7, 52:9, 54:4, 55:19, 59:8, 59:19, 61:20
**entered** [3] - 31:7, 33:1, 49:9
**entering** [7] - 5:6, 31:12, 49:9, 50:5, 64:23, 65:9, 65:12
**Enterprises** [1] - 18:22
**entities** [7] - 19:4, 19:25, 25:13, 28:25, 33:15, 34:17, 44:10
**entitled** [3] - 52:13, 54:5, 59:11
**entity** [2] - 19:24, 21:13
**entity's** [1] - 21:14
**entry** [1] - 78:9
**establish** [1] - 69:19

**established** [1] - 48:11
**et** [2] - 3:24, 72:14
**Europe** [2] - 20:18, 24:1
**evade** [2] - 42:3, 42:18
**evaded** [1] - 29:18
**evaluation** [1] - 29:12
**evasion** [20] - 7:24, 8:1, 8:11, 20:25, 30:11, 41:25, 42:5, 43:10, 44:5, 44:7, 44:8, 44:23, 46:17, 46:24, 49:17, 51:23, 54:19, 57:15, 66:8, 67:7
**eventually** [2] - 2:24, 34:5
**evidence** [17] - 11:22, 11:25, 12:21, 12:23, 12:24, 14:23, 15:15, 16:19, 30:5, 30:15, 32:8, 32:16, 33:12, 45:3, 50:9, 72:14, 73:13
**evidently** [1] - 5:18
**exactly** [3] - 27:25, 58:18, 61:14
**examination** [1] - 66:16
**examine** [1] - 12:11
**exceed** [2] - 56:15, 60:2
**exceeding** [1] - 60:5
**except** [1] - 10:1
**exceptions** [1] - 62:17
**exclude** [2] - 77:5, 77:8
**excluded** [1] - 77:7
**excused** [2] - 78:4, 78:10
**executed** [1] - 20:6
**exigent** [1] - 48:22
**expect** [1] - 72:11
**expected** [1] - 53:21
**expecting** [2] - 55:18, 56:25
**explain** [1] - 6:20
**explained** [2] - 14:12, 14:17
**explore** [1] - 11:18
**exposure** [3] - 55:12, 56:6, 58:4
**extent** [2] - 4:11, 52:18
**extra** [1] - 52:18
**EZRA** [1] - 1:10
**Ezra** [1] - 2:7
**ezra.k.spiro@usdoj. gov** [1] - 1:14

**F**

**face** [1] - 58:13
**facing** [1] - 58:9
**fact** [5] - 35:1, 36:24, 42:22, 43:6, 73:25
**factors** [1] - 47:16
**facts** [3] - 15:23, 30:6, 56:5
**factual** [2] - 27:20, 66:25
**factually** [2] - 16:8, 73:14
**failed** [2] - 24:25, 58:20
**fairly** [3] - 62:1, 69:20, 73:23
**fairness** [1] - 11:20
**fall** [1] - 73:23
**false** [54] - 7:11, 7:20, 7:22, 8:9, 8:10, 22:19, 23:3, 23:5, 24:13, 24:18, 24:19, 25:23, 25:24, 28:16, 29:13, 29:19, 29:20, 29:23, 30:1, 30:12, 33:19, 34:4, 34:5, 34:6, 34:7, 35:2, 35:10, 35:12, 36:12, 36:16, 36:17, 36:19, 38:9, 38:15, 38:23, 39:21, 39:25, 40:8, 41:19, 42:19, 43:14, 44:5, 44:11, 44:12, 44:21, 46:13, 51:25, 54:18, 54:20, 65:25, 66:3, 67:4, 67:6
**falsely** [5] - 23:15, 25:11, 26:3, 28:23, 40:2
**familiar** [1] - 4:10
**family** [1] - 20:16
**far** [4] - 50:21, 56:15, 57:4, 60:2
**farm** [1] - 24:2
**fast** [1] - 76:9
**FCRR** [3] - 1:20, 78:14, 78:21
**features** [1] - 6:3
**federal** [3] - 28:15, 40:16, 64:3
**fees** [1] - 25:5
**felony** [2] - 56:20, 63:23
**few** [3] - 5:12, 10:1, 24:16
**fictitious** [1] - 35:12
**figure** [4] - 69:10, 70:20, 72:12
**figures** [1] - 60:24

**file** [9] - 10:24, 14:5, 17:10, 42:7, 72:5, 72:6, 75:21, 76:2, 76:23
**filed** [9] - 2:20, 11:6, 13:25, 22:14, 24:9, 26:22, 43:12, 44:6, 73:12
**filing** [6] - 8:19, 30:1, 36:20, 54:20, 75:16, 76:4
**filling** [1] - 73:7
**final** [1] - 37:15
**finally** [1] - 60:10
**finance** [1] - 19:7
**financial** [3] - 24:25, 29:24, 48:1
**financing** [1] - 19:6
**fine** [21] - 4:17, 11:9, 18:8; 19:17, 19:19, 45:18, 46:14, 46:18, 46:24, 54:16, 54:21, 56:17, 56:24, 57:15, 57:17, 60:7, 61:5, 72:2, 72:19, 75:5, 77:23
**fines** [1] - 54:17
**finishes** [1] - 75:17
**firearm** [3] - 64:2, 64:4, 64:7
**first** [15] - 7:17, 7:19, 31:6, 32:18, 32:24, 35:11, 36:7, 36:11, 39:24, 42:1, 42:11, 43:25, 50:25, 77:7
**fit** [1] - 23:25
**five** [7] - 29:22, 45:17, 46:14, 46:18, 54:13, 60:1, 71:14
**five-week** [1] - 71:14
**flag** [2] - 30:17, 74:7
**flagged** [1] - 30:18
**flip** [1] - 76:9
**following** [4] - 17:20, 21:16, 26:3, 26:24
**FOR** [3] - 1:1, 1:9, 1:15
**forced** [2] - 12:24, 64:22
**foregoing** [1] - 78:14
**Foreign** [1] - 22:6
**foreign** [4] - 8:3, 24:25, 25:13, 50:11
**form** [4] - 30:9, 30:13, 30:15, 61:11
**formed** [1] - 18:17
**Forms** [2] - 25:21, 25:22
**forms** [2] - 25:24, 32:1
**forward** [4] - 12:4,

13:13, 48:24, 56:4
**Foundation** [2] - 21:12, 23:7
**founded** [1] - 22:19
**founder** [2] - 40:3, 40:6
**founding** [1] - 20:5
**four** [2] - 29:21, 52:11
**fourth** [4] - 31:2, 35:16, 39:11, 41:16
**franchise** [1] - 24:1
**frankly** [4] - 48:14, 55:8, 61:19, 63:7
**fraud** [1] - 56:18
**fraudulent** [1] - 35:12
**free** [3] - 8:22, 65:10, 66:25
**French** [2] - 21:13, 22:23
**Friday** [4] - 75:16, 75:17, 75:21, 75:22
**fuel** [2] - 17:25, 18:20, 19:9
**full** [5] - 25:20, 48:4, 51:24, 59:11, 78:15
**fully** [3] - 10:9, 66:13, 70:5
**fulsome** [1] - 15:6
**function** [2] - 31:13, 33:10
**functionally** [1] - 49:12
**fund** [1] - 21:21
**fundamental** [1] - 13:20
**funds** [4] - 21:10, 21:20, 29:21, 33:16
**furtherance** [1] - 34:12

### G

**gain** [5] - 47:5, 54:18, 56:21, 57:16, 57:18
**general** [2] - 13:19, 64:6
**General** [1] - 41:13
**generally** [5] - 13:25, 52:17, 70:19, 72:13, 74:24
**George** [1] - 2:10
**GEORGE** [1] - 1:15
**george.clarke@ bakermckenzie. com** [1] - 1:18
**Gibraltar** [5] - 19:23, 19:24, 28:23, 34:16, 34:18
**gift** [1] - 50:14
**gifts** [3] - 25:4, 26:4,

26:23
**given** [4] - 13:21, 54:11, 63:13, 74:20
**goal** [1] - 48:11
**govern** [1] - 49:17
**Government** [1] - 22:5
**government** [60] - 2:5, 5:18, 5:23, 6:9, 11:16, 12:1, 14:22, 15:3, 15:14, 16:11, 31:13, 32:8, 32:14, 32:15, 33:10, 33:11, 34:2, 34:13, 34:24, 36:13, 38:22, 39:7, 39:13, 40:4, 40:21, 40:25, 41:10, 42:6, 42:13, 43:2, 43:22, 44:9, 44:12, 44:17, 44:22, 45:3, 48:18, 51:24, 52:6, 52:15, 53:13, 54:2, 55:6, 55:8, 55:9, 55:18, 57:1, 57:9, 58:17, 59:7, 60:8, 61:5, 61:8, 62:5, 67:19, 68:20, 74:6, 75:17, 75:19
**government's** [11] - 13:8, 30:5, 31:25, 32:7, 33:12, 51:19, 52:23, 53:16, 55:14, 59:18, 74:8
**governs** [1] - 50:12
**great** [1] - 76:25
**greatly** [1] - 17:25
**green** [1] - 3:17
**grew** [1] - 19:8
**grouped** [1] - 49:12
**grouping** [1] - 49:17
**guarantee** [1] - 61:14
**guaranteed** [1] - 64:20
**guarantees** [1] - 55:7
**guess** [1] - 71:4
**guideline** [7] - 49:13, 49:17, 50:7, 56:15, 59:21, 60:2, 62:20
**guidelines** [20] - 3:2, 6:2, 6:19, 15:10, 46:2, 48:9, 48:10, 49:1, 49:15, 49:24, 50:1, 50:19, 51:11, 52:4, 54:14, 62:12, 62:15, 62:22, 63:2, 63:6
**guilt** [4] - 11:21, 12:25, 13:2, 13:8
**guilty** [60] - 5:5, 5:10, 5:11, 5:17, 5:21, 5:25, 7:2, 8:7, 8:13, 10:16, 10:17, 10:20, 10:25, 13:6, 13:19,

14:10, 14:11, 14:15, 15:17, 15:25, 27:19, 30:7, 43:11, 45:5, 45:7, 50:6, 51:22, 55:4, 55:5, 55:12, 55:17, 56:6, 56:13, 56:19, 58:16, 63:23, 63:24, 64:16, 64:20, 64:23, 65:1, 65:10, 65:13, 65:22, 65:23, 65:24, 66:1, 66:2, 66:4, 66:5, 66:6, 66:9, 66:10, 66:11, 67:3, 67:5, 67:7, 67:14

### H

**half** [3] - 20:8, 57:18, 58:11
**happy** [1] - 16:13
**head** [1] - 73:17
**health** [1] - 48:3
**hear** [5] - 3:18, 3:19, 6:23, 16:14, 58:23
**heard** [1] - 65:5
**hearing** [23] - 38:11, 51:18, 55:3, 61:23, 68:2, 69:7, 69:9, 69:14, 69:18, 69:23, 70:9, 70:17, 72:9, 73:10, 73:16, 73:21, 74:1, 74:18, 75:1, 75:6, 76:23, 77:20
**held** [4] - 22:21, 67:15, 70:24, 71:15
**help** [1] - 13:15
**hereby** [1] - 78:14
**hiding** [1] - 32:4
**higher** [4] - 13:15, 48:15, 60:2
**highest** [1] - 9:7
**highlight** [1] - 31:15
**historical** [1] - 29:25
**History** [5] - 53:6, 54:10, 56:9, 59:15, 59:20
**history** [2] - 48:1, 48:2
**hold** [6] - 13:1, 64:1, 67:21, 68:22, 70:11, 76:1
**holding** [1] - 68:17
**home** [2] - 20:18, 24:3
**Honor** [102] - 2:6, 2:9, 4:6, 4:17, 7:7, 7:13, 8:16, 10:7, 10:10, 10:18, 11:3, 11:9, 12:3, 12:8, 12:17, 13:4, 14:3, 14:8, 14:19, 15:18, 16:2,

16:14, 16:25, 20:21, 21:7, 22:1, 22:13, 23:1, 23:9, 23:18, 23:20, 24:5, 24:22, 25:18, 26:14, 26:21, 27:13, 27:14, 28:12, 28:20, 29:3, 29:8, 29:17, 30:3, 30:16, 31:21, 32:13, 32:17, 32:21, 33:24, 34:10, 34:23, 35:6, 35:9, 35:20, 35:25, 36:22, 37:10, 37:19, 37:23, 38:7, 38:14, 38:18, 39:3, 39:10, 39:20, 40:10, 41:4, 41:15, 41:23, 41:24, 42:16, 42:25, 43:8, 44:3, 44:14, 45:1, 46:21, 47:2, 51:5, 53:17, 53:24, 55:1, 57:14, 57:22, 61:12, 63:10, 64:13, 64:21, 65:3, 65:15, 66:11, 66:22, 67:18, 67:20, 68:16, 70:23, 75:10, 75:13, 75:23, 77:4, 77:17
**Honor's** [1] - 68:24
**HONORABLE** [1] - 1:7
**hours** [1] - 9:16
**House** [1] - 22:4
**hundreds** [2] - 19:4, 23:12

### I

**Ibiza** [1] - 20:18
**idea** [3] - 9:13, 67:13, 73:13
**identified** [2] - 4:4, 4:19
**identify** [2] - 2:4, 17:3
**identifying** [1] - 3:23
**identity** [2] - 22:10, 23:13
**Ifone** [2] - 28:4, 28:9
**Ifone-Neda** [2] - 28:4, 28:9
**Ill** [1] - 1:15
**illegal** [1] - 13:24
**illness** [1] - 9:25
**impede** [1] - 29:11
**important** [1] - 46:2
**importantly** [1] - 48:7
**impose** [7] - 45:14, 45:25, 51:8, 55:10, 65:1, 65:5
**imposed** [1] - 61:5
**imposing** [1] - 56:17
**imprisonment** [4] -

45:17, 46:18, 53:10, 59:25

**inaccuracies** [1] - 48:19

**include** [2] - 5:25, 26:16

**included** [1] - 53:5

**includes** [2] - 10:22, 51:10

**including** [12] - 19:10, 20:18, 23:25, 24:17, 25:21, 27:21, 33:14, 34:5, 40:16, 42:21, 44:10, 64:17

**income** [27] - 17:11, 17:13, 17:14, 22:17, 22:24, 24:10, 25:16, 26:1, 26:5, 26:23, 27:1, 27:10, 27:16, 28:17, 29:10, 29:13, 29:20, 29:24, 33:13, 35:4, 38:24, 39:15, 40:15, 43:13, 50:10, 50:11

**Income** [1] - 25:21

**incorporated** [2] - 19:24, 28:25

**increased** [2] - 17:21, 17:25

**incriminate** [1] - 12:24

**indicate** [8] - 7:17, 16:18, 16:19, 16:21, 18:12, 30:14, 32:15, 69:16

**indicated** [3] - 3:21, 53:14, 60:8

**indictment** [6] - 5:9, 7:15, 10:5, 51:25, 54:1, 77:13

**Individual** [8] - 18:16, 18:21, 18:23, 19:6, 20:2, 22:20, 23:16, 25:21

**individual** [1] - 17:10

**individuals** [1] - 3:24

**indulgence** [1] - 75:10

**infer** [1] - 13:1

**inform** [1] - 69:19

**information** [12] - 16:22, 19:17, 25:2, 29:23, 33:21, 35:2, 36:16, 39:25, 41:20, 43:14, 47:25, 56:4

**innocence** [1] - 11:22

**innocent** [1] - 13:7

**inquire** [1] - 15:22

**inquiry** [1] - 22:9

**insight** [1] - 66:17

**Inspector** [1] - 41:13

**instance** [2] - 13:23,

46:5

**instant** [1] - 4:22

**instead** [3] - 3:16, 57:20, 69:14

**instructions** [1] - 11:23

**intend** [1] - 55:16

**intending** [1] - 55:5

**intentional** [1] - 35:22

**intentionally** [5] - 35:3, 39:16, 41:19, 43:5, 44:20

**interest** [2] - 25:14, 28:4, 77:25

**interested** [1] - 22:10

**interests** [1] - 22:7

**Internal** [5] - 17:13, 33:14, 34:6, 40:17, 41:12

**international** [1] - 9:13

**internet** [1] - 28:5

**interrupting** [1] - 47:4

**interview** [1] - 10:2

**invest** [1] - 20:17

**investigating** [1] - 22:7

**investigation** [3] - 23:23, 40:16, 41:2

**investing** [1] - 23:25

**investments** [1] - 21:21

**involuntary** [1] - 13:20

**involved** [3] - 2:24, 33:5, 47:8

**IRS** [18] - 7:21, 8:9, 17:14, 25:9, 29:11, 29:15, 33:22, 35:4, 35:10, 36:20, 38:9, 38:15, 39:7, 39:18, 42:21, 66:1, 67:5

**IRS's** [2] - 29:11, 38:25

**issue** [12] - 9:22, 13:6, 14:10, 30:8, 49:3, 49:4, 51:2, 51:25, 65:13, 66:15, 66:20, 67:1

**issued** [1] - 28:10

**issues** [5] - 45:11, 48:3, 50:9, 69:13, 77:21

**itself** [3] - 5:3, 33:22, 73:10

## J

**jail** [6] - 45:21, 46:4, 46:7, 46:14, 63:13, 63:14

January [2] - 21:10, 70:5

**jet** [1] - 17:25

**job** [1] - 48:2

**joint** [2] - 28:5, 75:3

**JUDGE** [1] - 1:7

**Judge** [1] - 7:4

**judges** [1] - 48:12

**judgment** [1] - 14:1

**Julius** [3] - 21:11, 21:18, 23:7

**July** [1] - 24:6

**juncture** [1] - 40:15

**June** [5] - 75:24, 75:25, 76:10, 76:14, 76:18

**jurisdiction** [4] - 29:1, 35:15, 39:5, 41:6

**jury** [7] - 10:21, 11:14, 11:20, 11:23, 12:2, 12:25, 64:2

**justice** [4] - 52:10, 55:21, 59:10, 77:25

**Justice** [11] - 7:23, 8:10, 28:14, 29:15, 39:23, 40:2, 40:8, 41:9, 42:22, 66:4, 67:6

**JUSTICE** [1] - 1:11

## K

**Kandahar** [1] - 28:6

**Kenya** [1] - 24:2

**key** [2] - 6:3, 74:9

**kind** [4] - 9:17, 11:7, 47:20, 64:2

**kinds** [2] - 47:22, 48:3

**knowing** [2] - 31:9, 34:21

**knowingly** [3] - 5:7, 29:9, 29:13

**knowledge** [1] - 17:12

**known** [7] - 18:11, 18:19, 19:25, 21:12, 22:6, 25:1, 35:22

**knows** [2] - 35:23, 36:2

**KOLLAR** [1] - 1:7

**KOLLAR-KOTELLY** [1] - 1:7

**KOTELLY** [1] - 1:7

**Kyrgyz** [1] - 18:16

**Kyrgyzstan** [3] - 17:20, 17:23, 18:3

## L

**land** [1] - 24:1

**language** [1] - 69:2

**last** [7] - 9:16, 34:11, 51:18, 64:14, 70:12, 72:16, 77:4

**late** [2] - 23:10, 23:23

**law** [11] - 13:7, 13:24, 20:24, 30:23, 41:8, 41:11, 50:11, 57:2, 60:11, 70:2, 70:4

**lawful** [2] - 31:13, 33:10

**laws** [1] - 49:22

**lawyer** [9] - 3:14, 6:21, 12:6, 13:15, 19:16, 57:4, 58:5, 58:18, 65:17

**lawyers** [2] - 58:14, 65:6

**Le** [14] - 21:14, 22:19, 22:23, 23:5, 23:16, 24:13, 24:20, 25:4, 25:10, 25:24, 33:5, 33:19, 36:18, 40:2

**leadership** [5] - 52:10, 53:1, 54:10, 55:21, 59:10

**learned** [1] - 16:20

**least** [8] - 7:1, 17:9, 34:11, 59:1, 68:22, 69:11, 70:9, 70:11

**leave** [3] - 3:14, 73:6

**legal** [4] - 35:22, 36:2, 73:12, 73:15

**less** [3] - 25:25, 28:17, 58:16

**lesser** [1] - 48:16

**letter** [2] - 25:9, 25:23

**level** [19] - 9:7, 47:25, 49:18, 50:6, 50:19, 52:3, 52:24, 52:25, 53:3, 53:8, 54:3, 54:8, 54:11, 55:18, 56:7, 59:5, 59:13, 59:19, 61:1

**licensing** [1] - 64:4

**lifestyle** [1] - 21:21

**light** [1] - 3:17

**likely** [6] - 55:12, 56:2, 58:3, 58:10, 58:13, 61:2

**Limited** [3] - 18:22, 19:5, 19:23

**live** [2] - 64:9, 64:11

**lived** [1] - 17:9

**living** [2] - 17:12, 17:20

**LLP** [1] - 1:16

**loans** [1] - 19:13

**location** [1] - 17:23

**locked** [2] - 46:5, 46:8

**Logistics** [1] - 18:20

**London** [1] - 24:3

**look** [9] - 69:4, 69:23, 70:10, 70:14, 72:15, 72:25, 75:23, 76:22, 78:7

**looking** [4] - 5:3, 30:23, 53:23, 55:4

**loss** [29] - 2:23, 6:3, 47:6, 49:3, 49:19, 49:21, 50:18, 51:10, 51:12, 51:24, 52:3, 52:6, 53:5, 53:14, 54:2, 54:17, 55:16, 56:21, 57:16, 57:19, 58:15, 58:25, 59:4, 69:12, 69:19, 71:8, 73:22, 74:1

**lower** [3] - 48:15, 58:11, 58:12

**lubricate** [1] - 38:1

**luxury** [1] - 24:2

## M

**machine** [1] - 1:24

**Manas** [1] - 17:22

**mandatory** [1] - 62:22

**manner** [2] - 1:23, 78:18

**March** [9] - 25:8, 25:23, 35:10, 36:20, 36:23, 37:4, 37:13, 37:15, 38:6

**mask** [2] - 3:9, 3:10

**material** [6] - 35:14, 38:21, 40:12, 46:13, 74:25, 75:1

**materially** [10] - 7:20, 7:22, 8:8, 8:10, 29:13, 30:12, 65:25, 66:3, 67:4, 67:5

**matter** [2] - 41:2, 48:14

**max** [1] - 46:24

**maximum** [24] - 45:13, 45:15, 45:17, 45:18, 46:14, 46:15, 46:18, 46:19, 53:10, 54:14, 54:15, 54:21, 55:12, 56:6, 56:14, 57:15, 57:17, 58:6, 58:8, 61:4, 62:24

**maximums** [2] - 56:16, 56:19

**Mckenzie** [1] - 1:16

**mean** [3] - 4:15, 18:7, 32:2

**meaning** [1] - 26:16

**means** [9] - 31:4, 31:6, 31:16, 33:14, 34:1,

52:9, 53:1, 55:21, 59:9
**medication** [1] - 9:17
**meet** [4] - 15:23, 24:8, 32:8, 32:11
**meets** [6] - 5:21, 15:19, 30:6, 32:16, 45:4, 45:6
**members** [2] - 20:17, 28:6
**memos** [2] - 69:8, 73:12
**mental** [2] - 9:25, 48:3
**mention** [1] - 62:12
**Mexico** [1] - 24:2
**microphone** [1] - 3:17
**mid-1980s** [1] - 17:10
**Middle** [1] - 17:22
**might** [6] - 37:13, 47:19, 72:20, 74:11, 74:15, 74:19
**military** [3] - 17:21, 17:24, 28:5
**million** [17] - 25:15, 28:17, 42:9, 52:7, 53:14, 54:20, 54:22, 54:24, 55:17, 57:18, 57:20, 58:16, 59:1, 59:5, 60:8, 61:6, 61:9
**million-plus** [1] - 60:8
**millions** [8] - 22:15, 23:12, 26:10, 29:5, 40:14, 43:18, 43:24, 58:21
**Mina** [1] - 19:22
**Mina/Red** [43] - 19:25, 20:5, 20:8, 20:10, 20:15, 21:17, 22:8, 22:10, 22:16, 22:19, 22:21, 23:13, 23:15, 23:24, 24:10, 24:14, 24:19, 25:5, 26:2, 26:12, 26:18, 27:10, 28:16, 28:24, 29:6, 29:25, 33:20, 34:17, 36:17, 39:15, 40:3, 40:6, 40:14, 41:19, 41:21, 42:9, 42:20, 42:23, 43:4, 43:19, 44:19, 50:10
**mind** [3] - 7:4, 9:20, 74:8
**minimum** [1] - 61:1
**minus** [2] - 53:1, 59:14
**minute** [3] - 37:17, 37:20, 78:9
**misleading** [1] - 24:18
**misrepresentations**

[2] - 39:16, 43:5
**mitigation** [1] - 48:5
**moment** [2] - 37:7, 70:24
**Monday** [2] - 73:1, 76:8
**money** [2] - 19:13, 20:16
**months** [11] - 7:3, 24:16, 53:8, 53:9, 53:11, 54:12, 56:10, 56:11, 56:14, 59:16, 59:21
**most** [3] - 6:17, 51:19, 61:3
**motion** [3] - 8:19, 75:16, 75:21
**motions** [4] - 10:24, 11:5, 11:7
**move** [10] - 18:14, 27:22, 36:8, 45:9, 45:10, 55:2, 75:25, 76:16, 77:5, 77:21
**moved** [1] - 21:10
**moving** [5] - 29:21, 33:16, 52:21, 61:20, 70:6
**MR** [38] - 2:9, 4:6, 4:9, 4:14, 4:17, 16:2, 16:6, 27:14, 27:19, 27:23, 27:25, 37:12, 37:18, 57:14, 57:22, 58:1, 66:22, 67:18, 68:5, 68:8, 71:4, 71:20, 71:24, 72:18, 72:24, 73:9, 75:7, 75:12, 75:15, 76:3, 76:5, 76:8, 76:13, 76:16, 76:21, 76:25, 77:2, 78:6
**MS** [97] - 2:6, 15:3, 15:9, 15:18, 16:13, 16:25, 17:4, 17:7, 17:19, 18:15, 19:3, 19:22, 20:5, 20:22, 21:8, 22:2, 22:4, 22:14, 23:2, 23:10, 23:22, 24:6, 24:23, 25:8, 25:19, 26:15, 26:22, 28:3, 28:13, 28:21, 29:4, 29:9, 29:18, 30:16, 30:23, 31:3, 31:6, 31:11, 31:23, 32:13, 32:17, 32:21, 32:24, 33:9, 33:25, 34:11, 34:23, 35:9, 35:20, 35:25, 36:2, 36:5, 36:9, 36:11, 36:23, 37:1, 37:9, 37:17, 37:19,

37:23, 38:2, 38:7, 38:13, 38:20, 39:4, 39:11, 39:21, 40:11, 40:19, 40:21, 40:23, 40:25, 41:5, 41:16, 41:24, 42:17, 43:1, 43:9, 44:4, 44:15, 46:21, 46:23, 47:2, 47:4, 51:5, 53:17, 67:20, 68:16, 70:23, 71:14, 72:1, 74:7, 74:14, 74:19, 75:10, 77:4, 77:12
**multiple** [3] - 34:3, 35:1, 40:16
**music** [1] - 23:25
**mutes** [1] - 3:18

## N

**name** [7] - 18:22, 21:4, 21:22, 23:6, 29:22, 33:15, 33:18
**named** [2] - 21:14, 33:3
**narrow** [1] - 62:16
**National** [1] - 22:6
**national** [2] - 18:16, 24:7
**nature** [1] - 66:23
**Neda** [2] - 28:4, 28:9
**need** [29] - 4:13, 5:6, 5:20, 6:14, 6:16, 13:25, 19:1, 32:15, 37:1, 37:16, 38:10, 51:2, 51:13, 61:23, 63:1, 64:5, 65:7, 67:9, 69:4, 69:9, 70:14, 70:21, 73:5, 73:11, 73:12, 73:17, 74:5, 75:5, 75:23
**needed** [1] - 75:19
**needs** [5] - 19:9, 32:7, 47:18, 48:6, 78:8
**never** [5] - 10:3, 25:13, 64:10
**New** [1] - 1:16
**new** [3] - 19:24, 45:24, 45:25
**next** [6] - 3:14, 24:16, 41:24, 45:10, 47:13, 75:22
**nobody** [1] - 62:17
**nominally** [1] - 21:19
**nominee** [3] - 33:15, 33:19, 44:10
**nominees** [1] - 29:20
**none** [2] - 59:18, 61:3
**Note** [1] - 49:24
**notes** [1] - 78:15

**notice** [1] - 13:25
**notified** [1] - 20:23
**notion** [1] - 33:9
**November** [14] - 20:22, 71:18, 71:23, 72:1, 72:16, 72:18, 72:22, 73:1, 73:11, 73:23, 77:9, 77:10, 77:20, 78:2
**null** [2] - 1:22, 78:17
**number** [2] - 33:14, 48:15, 48:16
**numbers** [2] - 27:15, 48:14
**NW** [2] - 1:12, 1:17

## O

**oath** [1] - 7:9
**object** [2] - 48:19, 49:20
**objections** [3] - 48:21, 48:23, 48:24
**obligation** [1] - 17:12
**obligations** [1] - 22:24
**obstruct** [2] - 29:11, 33:10
**obstructing** [1] - 31:13
**obstruction** [4] - 52:10, 53:1, 55:21, 59:10
**obvious** [1] - 70:16
**obviously** [10] - 5:25, 27:15, 30:8, 46:6, 48:13, 50:25, 55:6, 60:20, 62:23, 69:24
**occur** [1] - 63:8
**October** [15] - 25:19, 36:24, 37:4, 37:13, 37:15, 38:6, 38:8, 38:14, 69:25, 70:24, 71:2, 71:3, 71:17, 71:22, 72:16
**odd** [1] - 16:3
**OF** [4] - 1:1, 1:2, 1:6, 1:11
**offense** [40] - 2:19, 2:23, 4:24, 5:17, 14:21, 15:4, 15:6, 15:19, 15:24, 33:4, 47:18, 47:24, 48:13, 49:3, 49:18, 49:20, 50:6, 50:19, 51:10, 51:12, 52:3, 52:11, 52:24, 52:25, 53:2, 53:5, 54:3, 54:8, 54:11, 55:18, 56:7, 58:19, 59:5, 59:14, 59:19, 61:1, 61:19,

69:12, 69:17, 69:20
**offenses** [4] - 32:11, 48:13, 58:15, 63:24
**offer** [3] - 51:20, 51:22
**offered** [1] - 52:15
**Office** [1] - 1:16
**office** [1] - 64:1
**official** [2] - 48:8, 78:21
**Official** [1] - 1:21
**Offshore** [2] - 25:1, 36:19
**old** [1] - 8:25
**once** [5] - 69:18, 72:10, 73:4, 73:22, 76:23
**one** [25] - 6:3, 7:19, 12:6, 20:19, 20:25, 22:19, 23:18, 27:15, 28:21, 29:19, 31:16, 34:12, 36:7, 36:8, 49:12, 49:14, 51:23, 51:25, 55:23, 63:22, 74:8, 75:12, 77:4
**ones** [3] - 4:20, 15:24, 30:7
**open** [2] - 3:23, 73:6
**opened** [1] - 21:11
**operations** [1] - 19:8
**opportunity** [2] - 10:8, 11:11
**options** [7] - 6:11, 16:24, 60:16, 60:20, 61:11, 62:3, 62:6
**orally** [1] - 47:10
**order** [12] - 5:5, 30:7, 32:9, 35:4, 60:10, 62:25, 67:11, 68:18, 69:22, 72:11, 75:5, 77:20
**otherwise** [3] - 19:15, 50:24, 74:15
**outside** [3] - 17:9, 22:24, 74:20
**OVDP** [5] - 25:2, 25:9, 25:20, 26:15, 38:24
**Oversight** [1] - 22:5
**overt** [2] - 31:16, 34:12
**owing** [4] - 39:1, 42:2, 42:13, 43:23
**own** [8] - 12:14, 12:21, 12:25, 43:10, 63:16, 64:4, 65:10, 66:25
**owned** [7] - 18:23, 19:5, 20:1, 22:20, 23:16, 24:19, 36:18
**owner** [13] - 20:7, 21:4, 21:23, 24:14, 26:2, 28:24, 34:17,

39:14, 42:20, 42:23, 43:3, 43:6, 44:18
**owners** [2] - 22:11, 23:14
**ownership** [13] - 22:17, 23:6, 25:14, 26:12, 28:4, 28:10, 29:25, 33:16, 33:20, 40:13, 43:19, 43:25, 44:22

**P**

**p.m** [2] - 1:4, 78:11
**page** [1] - 37:20
**paid** [2] - 19:14, 22:16
**Panamanian** [1] - 21:12
**paperwork** [1] - 23:5
**paragraph** [3] - 16:16, 17:5, 32:3
**paragraphs** [3] - 30:8, 30:14, 32:2
**pardon** [1] - 36:9
**parity** [1] - 47:19
**parole** [1] - 63:14
**part** [7] - 22:9, 27:24, 46:2, 49:23, 50:25, 61:23, 72:12
**partially** [1] - 18:2
**participants** [1] - 11:18
**participate** [1] - 24:24
**participation** [2] - 31:10, 34:22
**particular** [6] - 5:22, 15:15, 15:22, 48:5, 49:13, 53:19
**particularly** [1] - 62:18
**parties** [9] - 8:22, 33:21, 49:11, 49:15, 50:3, 58:19, 62:13, 78:4, 78:10
**partnership** [1] - 20:1
**party** [2] - 1:23, 78:18
**passed** [1] - 33:21
**pauses** [1] - 37:11
**pay** [14] - 14:4, 17:11, 17:14, 24:25, 26:10, 26:17, 27:10, 42:8, 42:12, 43:18, 53:12, 54:16, 58:20, 60:10
**payments** [2] - 26:4, 26:24
**pecuniary** [6] - 47:1, 47:5, 54:17, 56:21, 57:16, 57:18
**penalties** [4] - 6:1, 45:12, 45:13, 47:8
**penalty** [1] - 25:11,

45:14, 60:1
**people** [2] - 4:1, 4:5
**people's** [1] - 51:16
**per** [1] - 26:3
**percent** [6] - 22:20, 24:14, 26:2, 26:11, 43:19, 43:25
**perfect** [1] - 72:24
**period** [13] - 20:10, 23:22, 28:25, 45:17, 45:18, 46:5, 46:6, 63:13, 63:19, 64:10, 68:24, 71:19, 71:24
**periods** [1] - 46:3
**perjury** [2] - 7:11, 25:11
**permutations** [2] - 57:5, 57:10
**person** [1] - 21:3
**personal** [1] - 47:25
**persons** [1] - 32:25
**perspective** [3] - 31:25, 32:6, 32:7
**phase** [1] - 50:8
**photocopied** [1] - 78:17
**physical** [1] - 48:2
**pick** [1] - 70:22
**picking** [1] - 72:22
**picture** [1] - 48:4
**place** [2] - 33:18, 73:23
**placing** [1] - 33:18
**Plaintiff** [1] - 1:3
**plan** [8] - 2:22, 6:4, 49:6, 49:23, 51:9, 58:14, 67:17, 67:18
**planning** [1] - 75:16
**plea** [29] - 2:19, 5:6, 6:15, 13:6, 13:19, 14:11, 16:4, 32:9, 32:12, 49:9, 50:6, 51:19, 52:19, 52:20, 56:3, 56:6, 56:23, 57:17, 59:1, 60:25, 63:24, 64:15, 64:23, 65:1, 65:9, 65:12, 67:1, 67:2
**PLEA** [1] - 1:6
**plead** [11] - 10:16, 10:17, 10:20, 14:9, 14:15, 55:5, 55:12, 55:17, 56:19, 65:21, 66:9
**pleading** [23] - 5:10, 5:11, 5:16, 5:21, 5:25, 7:2, 8:7, 8:13, 10:25, 12:20, 15:17, 15:25, 27:19, 43:11, 45:5, 45:7, 55:4,

56:13, 58:16, 63:23, 64:16, 64:20, 67:14
**pled** [1] - 51:22
**plus** [7] - 53:3, 54:9, 59:14, 60:8, 61:6, 73:12
**podium** [1] - 3:16
**point** [28] - 8:20, 10:22, 14:20, 15:10, 22:14, 24:9, 33:1, 33:11, 46:23, 49:4, 50:3, 51:1, 52:14, 52:17, 54:5, 55:23, 55:24, 56:2, 61:6, 61:8, 61:13, 62:5, 67:9, 67:10, 67:23, 70:5, 70:13
**points** [18] - 51:13, 52:9, 52:10, 52:11, 52:13, 52:22, 52:25, 53:1, 53:3, 53:7, 54:9, 54:10, 56:8, 56:10, 59:9, 59:10, 59:14
**portions** [1] - 74:14
**position** [3] - 51:21, 53:16, 55:22
**positions** [2] - 51:16, 71:8
**possess** [1] - 64:2
**possibilities** [2] - 57:11, 62:2
**possibility** [1] - 56:17
**possible** [1] - 57:10
**potential** [1] - 54:21
**potentially** [2] - 11:5, 68:21
**practically** [1] - 71:10
**preclear** [1] - 37:14
**prefer** [1] - 4:16
**prepare** [5] - 13:15, 47:23, 48:7, 75:6, 77:21
**prepared** [16] - 6:13, 34:2, 34:14, 34:24, 36:14, 38:23, 39:8, 39:13, 40:5, 41:1, 41:10, 42:6, 42:13, 43:3, 44:9, 44:17
**preparers** [9] - 24:8, 24:12, 25:3, 29:24, 35:1, 36:16, 39:17, 43:15, 44:21
**preparing** [3] - 39:17, 52:19, 52:21
**preponderance** [1] - 50:9
**present** [7] - 8:18, 12:14, 12:21, 12:22, 12:24, 55:8, 67:22

**presentation** [2] - 28:15, 40:1
**presented** [1] - 11:23
**presentence** [12] - 6:12, 47:24, 48:17, 67:11, 67:25, 68:3, 69:5, 69:10, 69:22, 73:20, 73:24, 73:25
**presenting** [1] - 73:13
**presumably** [4] - 34:21, 57:24, 69:19, 71:7
**presumed** [1] - 13:7
**pretrial** [1] - 68:17
**pretty** [2] - 65:18
**previously** [1] - 75:24
**primarily** [1] - 20:11
**printed** [1] - 1:22
**Prisons** [1] - 63:16
**probation** [2] - 47:23, 65:6
**problem** [4] - 36:10, 56:16, 60:5, 74:18
**proceed** [6] - 6:5, 38:19, 54:1, 67:10, 67:16, 69:16
**proceeded** [1] - 43:21
**proceeding** [6] - 3:1, 37:11, 49:8, 49:10, 50:25, 78:11
**proceedings** [3] - 13:21, 78:9, 78:15
**Proceedings** [1] - 1:24
**produced** [1] - 1:25
**product** [1] - 1:22
**profit** [4] - 20:9, 23:24, 26:18, 42:9
**profitable** [1] - 20:9
**profits** [2] - 20:15, 28:7
**program** [1] - 24:24
**Program** [2] - 25:2, 36:19
**promised** [1] - 64:19
**promises** [1] - 64:25
**property** [1] - 20:17
**proportion** [1] - 28:10
**proposed** [5] - 52:23, 56:23, 58:20, 59:1, 59:18
**proposing** [3] - 56:19, 57:17, 59:25
**prosecuted** [1] - 7:11
**prosecutor** [1] - 64:18
**prosecutors** [2] - 28:15, 41:9
**prove** [16] - 13:8, 34:3, 34:14, 34:25, 36:14, 38:23, 39:8, 39:14,

40:5, 41:1, 41:10, 42:7, 42:14, 43:3, 44:10, 44:17
**proved** [1] - 12:1
**provide** [3] - 18:20, 36:16, 48:7
**provided** [9] - 24:17, 25:2, 35:2, 39:25, 41:19, 43:14, 66:17, 74:25, 75:2
**provides** [1] - 49:18
**providing** [1] - 29:23
**provisions** [1] - 7:18
**pseudonyms** [1] - 4:20
**PSR** [1] - 71:6
**PSRs** [1] - 68:5
**public** [3] - 28:23, 34:16, 64:1
**punishable** [2] - 56:13, 59:25
**purchase** [2] - 17:25, 20:17
**purchasing** [1] - 24:2
**purported** [1] - 23:6
**purporting** [1] - 33:18
**purposes** [4] - 15:9, 38:8, 38:14, 58:24
**push** [1] - 3:18
**put** [15] - 4:19, 4:21, 24:14, 43:16, 49:5, 60:20, 67:15, 69:2, 69:25, 70:9, 72:10, 72:14, 73:2, 73:3, 73:25
**putting** [1] - 33:15

**Q**

**questions** [12] - 2:18, 3:11, 4:12, 5:8, 5:12, 6:22, 7:10, 8:24, 11:17, 64:15, 68:24
**quick** [1] - 37:10
**quickly** [1] - 19:8
**quote** [2] - 49:21, 58:21

**R**

**ramification** [1] - 63:22
**range** [5] - 52:2, 56:15, 58:13, 60:2, 62:20
**RANNEY** [98] - 1:10, 2:6, 15:3, 15:9, 15:18, 16:13, 16:25, 17:4, 17:7, 17:19, 18:15, 19:3, 19:22,

20:5, 20:22, 21:8, 22:2, 22:4, 22:14, 23:2, 23:10, 23:22, 24:6, 24:23, 25:8, 25:19, 26:15, 26:22, 28:3, 28:13, 28:21, 29:4, 29:9, 29:18, 30:16, 30:23, 31:3, 31:6, 31:11, 31:23, 32:13, 32:17, 32:21, 32:24, 33:9, 33:25, 34:11, 34:23, 35:9, 35:20, 35:25, 36:2, 36:5, 36:9, 36:11, 36:23, 37:1, 37:9, 37:17, 37:19, 37:23, 38:2, 38:7, 38:13, 38:20, 39:4, 39:11, 39:21, 40:11, 40:19, 40:21, 40:23, 40:25, 41:5, 41:16, 41:24, 42:17, 43:1, 43:9, 44:4, 44:15, 46:21, 46:23, 47:2, 47:4, 51:5, 53:17, 67:20, 68:16, 70:23, 71:14, 72:1, 74:7, 74:14, 74:19, 75:10, 77:4, 77:12
**Ranney** [1] - 2:7
**rare** [1] - 63:7
**rather** [2] - 22:17, 52:14
**read** [6] - 5:4, 15:12, 16:10, 16:13, 17:1, 30:25
**ready** [1] - 74:4
**realize** [2] - 38:10, 62:1
**really** [4] - 32:1, 37:10, 49:3, 73:14
**reasonable** [4] - 12:1, 13:8, 45:5, 47:21
**reasons** [1] - 63:5
**receive** [4] - 20:12, 48:17, 48:23, 56:2
**received** [5] - 9:24, 25:15, 26:1, 26:4, 28:17
**recent** [1] - 51:19
**recently** [1] - 21:11
**recipient** [1] - 40:14
**recommend** [2] - 8:22, 55:9
**recommendations** [1] - 8:21
**reconsidered** [1] - 8:20
**Reconstruction** [1] - 41:13

**record** [7] - 2:5, 3:13, 3:25, 4:21, 17:1, 47:11, 51:18
**recounting** [1] - 30:24
**Red** [5] - 18:22, 19:7, 19:8, 19:23, 19:24
**redacted** [2] - 17:1, 17:2
**reduce** [2] - 46:11, 63:18
**reduced** [1] - 46:7
**reducing** [1] - 63:15
**reduction** [2] - 15:10, 55:24, 59:12
**referred** [1] - 19:13
**reflect** [1] - 28:24
**reflected** [1] - 34:16
**Reform** [1] - 22:5
**refute** [1] - 16:22
**regarding** [2] - 20:24, 29:24
**region** [3] - 17:24, 18:16, 19:9
**registration** [2] - 28:23, 34:16
**rehabilitation** [2] - 47:18, 48:5
**relate** [1] - 64:15
**related** [5] - 2:23, 11:6, 38:24, 38:25, 71:8
**relates** [3] - 15:16, 39:22, 49:24
**relating** [1] - 78:9
**relations** [1] - 9:13
**relative** [1] - 71:8
**release** [9] - 45:18, 45:20, 45:25, 46:9, 46:12, 46:15, 46:19, 75:16, 75:21
**relevant** [12] - 17:6, 17:7, 49:25, 50:4, 51:7, 53:14, 57:2, 60:11, 61:9, 61:19, 72:7, 73:21
**rely** [1] - 74:15
**remaining** [4] - 68:20, 77:6, 77:12, 77:15
**remember** [2] - 76:11, 77:16
**reminding** [1] - 70:4
**remove** [1] - 23:6
**report** [27] - 6:12, 17:13, 22:15, 24:10, 24:25, 25:4, 26:9, 26:16, 27:9, 27:16, 42:8, 43:18, 47:24, 48:17, 48:19, 48:21, 67:11, 68:1, 69:5, 69:10, 69:22, 73:20,

73:24, 74:1, 75:3, 75:24, 76:13
**reported** [7] - 1:24, 25:25, 26:3, 26:5, 26:23, 27:1, 43:14
**reporter** [2] - 19:2, 38:12
**Reporter** [3] - 1:20, 1:21, 78:21
**reporting** [3] - 8:4, 32:4, 43:12
**represent** [1] - 41:20
**representation** [9] - 23:3, 35:13, 35:17, 38:21, 39:12, 39:23, 40:12, 40:13, 41:17
**representations** [3] - 29:14, 41:1, 44:21
**Representatives** [1] - 22:4
**represented** [1] - 12:5
**represents** [1] - 58:12
**request** [3] - 14:5, 73:25, 74:14
**requested** [1] - 28:9
**requesting** [1] - 53:19
**requests** [1] - 27:16
**require** [1] - 12:15
**required** [2] - 53:12, 54:16
**requirements** [2] - 9:12, 64:5
**resolve** [4] - 48:24, 73:17, 77:21
**resolved** [1] - 11:5
**resolving** [1] - 50:2
**respond** [4] - 75:20, 75:21, 76:7, 76:8
**response** [1] - 76:9
**responsibility** [10] - 15:7, 52:14, 53:2, 54:6, 55:23, 56:3, 56:9, 59:12, 59:15, 61:21
**rest** [8] - 6:8, 64:8, 67:13, 69:20, 69:21, 69:25, 70:10, 73:22
**restitution** [10] - 52:5, 53:12, 54:3, 54:23, 56:25, 57:1, 60:9, 60:11, 61:7, 61:9
**result** [1] - 17:24, 50:17
**resulting** [1] - 17:14
**return** [5] - 26:16, 29:24, 42:8, 43:12, 44:5
**Returns** [1] - 25:22
**returns** [11] - 17:11, 22:15, 24:10, 26:9,

26:22, 27:9, 28:3, 30:1, 34:5, 37:15, 43:16
**Revenue** [5] - 17:13, 33:14, 34:6, 40:17, 41:12
**review** [1] - 48:18
**reviewed** [1] - 51:18
**revoke** [1] - 45:24
**revoked** [1] - 46:9
**rights** [10] - 5:16, 10:20, 14:11, 14:16, 14:17, 63:25, 64:8, 64:10, 77:16, 78:1
**role** [4] - 52:10, 54:10, 55:21, 59:10
**Room** [1] - 1:12
**roughly** [5] - 50:24, 63:19, 71:18
**routinely** [1] - 20:6
**RPR** [3] - 1:20, 78:14, 78:21
**rubric** [1] - 62:15
**Rule** [1] - 52:15
**rush** [1] - 4:15

**S**

**sake** [1] - 59:17
**SARAH** [1] - 1:10
**Sarah** [1] - 2:7
**sarah.c.ranney@ usdoj.gov** [1] - 1:13
**satisfied** [2] - 10:12, 66:13
**satisfy** [1] - 44:23
**satisfying** [1] - 43:25
**saw** [1] - 23:25
**scenario** [2] - 58:5, 59:22
**schedule** [1] - 74:24
**scheduling** [1] - 68:18
**scheme** [2] - 29:10, 49:23
**screenshot** [1] - 1:23
**seal** [1] - 2:20
**seated** [1] - 3:14
**second** [13] - 20:19, 23:18, 31:7, 35:13, 38:20, 39:21, 40:11, 42:2, 42:17, 44:4, 68:19, 68:21, 72:1
**Section** [6] - 7:20, 7:23, 7:25, 8:2, 49:16, 50:20
**Sections** [2] - 8:4, 8:5
**secured** [1] - 19:6
**Security** [1] - 22:6
**see** [3] - 37:9, 69:4, 78:7

**seeking** [1] - 58:17
**seem** [1] - 71:25
**select** [1] - 11:20
**send** [1] - 20:16
**SENIOR** [1] - 1:7
**sense** [4] - 15:11, 69:16, 70:18, 71:25
**sent** [3] - 24:6, 36:15, 44:20
**sentence** [19] - 13:23, 45:15, 45:21, 45:25, 46:7, 46:11, 47:21, 48:12, 48:15, 48:16, 51:8, 55:9, 56:14, 62:23, 63:6, 63:18, 64:20, 65:1, 65:5
**sentenced** [2] - 45:21, 47:20
**sentences** [1] - 46:4
**sentencing** [28] - 6:2, 8:22, 27:24, 45:11, 46:1, 47:14, 47:17, 48:8, 48:10, 48:24, 49:1, 49:10, 49:11, 50:2, 50:8, 52:4, 52:8, 54:4, 55:8, 58:12, 60:23, 61:24, 62:12, 62:15, 67:16, 69:7, 77:20, 77:22
**September** [7] - 17:21, 68:12, 68:13, 68:14, 69:6, 71:6, 73:20
**series** [2] - 10:23, 24:18
**seriousness** [1] - 47:17
**serve** [3] - 46:11, 63:14, 64:2
**served** [1] - 46:10
**service** [2] - 19:9, 28:6
**Service** [5] - 17:13, 33:14, 34:6, 40:17, 41:12
**services** [2] - 10:12, 28:5
**set** [27] - 2:25, 3:23, 5:8, 10:22, 30:9, 31:24, 32:6, 45:13, 47:24, 49:8, 49:14, 50:1, 53:23, 64:14, 67:9, 67:12, 68:1, 69:4, 69:5, 69:7, 72:3, 72:6, 73:1, 76:11, 76:23
**sets** [5] - 10:5, 47:15, 51:9, 51:12, 51:21
**setting** [2] - 53:15, 68:19
**seven** [2] - 42:5, 56:18
**several** [2] - 33:3, 50:9

**shall** [2] - 1:22, 78:17
**share** [2] - 28:7, 28:10
**shirked** [1] - 35:3
**short** [1] - 76:20
**shorter** [1] - 74:18
**shorthand** [1] - 1:24
**show** [5] - 30:14, 33:12, 34:25, 43:22, 47:11
**showing** [2] - 20:7, 35:2
**sic]** [1] - 37:16
**side** [1] - 75:12
**sides** [2] - 11:20, 14:24
**SIGAR** [1] - 41:12
**sign** [1] - 4:13
**signatory** [2] - 1:23, 78:18
**signed** [5] - 4:6, 4:16, 15:3, 16:6, 25:10
**significantly** [1] - 25:25
**signing** [1] - 4:3
**simply** [1] - 69:20
**Singapore** [1] - 21:11
**sister** [1] - 19:23
**sit** [2] - 3:9, 45:8
**six** [1] - 30:1
**slow** [1] - 19:1
**sold** [1] - 28:5
**solicitation** [1] - 23:11
**someone** [1] - 37:9
**sometimes** [3] - 31:14, 64:5
**somewhat** [1] - 49:2
**SONYA** [1] - 1:16
**Sonya** [1] - 2:10
**sonya.bishop@bakermckenzie.com** [1] - 1:19
**sophisticated** [4] - 52:9, 52:25, 55:20, 59:9
**sorry** [6] - 9:2, 31:17, 40:20, 40:22, 40:23, 68:13
**sort** [6] - 16:3, 51:9, 55:24, 58:8, 61:10, 75:2
**sought** [1] - 54:23
**sound** [1] - 16:11
**sounds** [5] - 72:24, 73:9, 75:7, 76:25, 77:2
**source** [1] - 24:11
**Spain** [1] - 20:18
**speaking** [2] - 38:11, 75:18

**Special** [1] - 41:12
**special** [3] - 45:19, 46:16, 46:20
**specific** [6] - 43:13, 50:1, 63:4, 63:5, 64:20, 67:1
**specifically** [3] - 26:2, 32:18, 49:16
**speedy** [2] - 77:16, 78:1
**spend** [1] - 23:25
**spent** [1] - 46:3
**spirit** [1] - 15:11
**SPIRO** [1] - 1:10, 57:14, 57:22
**Spiro** [2] - 2:7, 38:3
**staff** [1] - 70:3
**stand** [1] - 3:6
**Star** [45] - 18:22, 19:8, 19:23, 19:24, 20:1, 20:5, 20:8, 20:10, 20:16, 21:17, 22:16, 22:20, 22:21, 23:13, 23:15, 23:24, 24:10, 24:14, 24:19, 25:5, 26:2, 26:12, 26:18, 27:10, 28:16, 28:24, 29:6, 29:25, 33:20, 34:17, 36:17, 39:15, 40:3, 40:6, 40:14, 41:19, 41:21, 42:9, 42:20, 42:23, 43:4, 43:20, 44:19, 50:10
**Star's** [1] - 19:7, 22:8, 22:11
**start** [10] - 17:5, 19:7, 32:2, 45:12, 51:12, 52:11, 60:24, 61:20, 73:7, 73:17
**start-up** [1] - 19:7
**started** [1] - 30:18
**starting** [4] - 2:5, 19:3, 32:21, 56:7
**statement** [35] - 2:19, 4:24, 5:17, 7:11, 14:21, 14:25, 15:4, 15:5, 15:19, 33:4, 33:11, 35:13, 35:14, 35:16, 36:13, 38:9, 38:15, 38:21, 38:23, 39:4, 39:7, 39:12, 39:17, 39:21, 39:25, 40:12, 41:1, 41:6, 41:8, 41:11, 41:17, 54:19, 58:19
**statements** [19] - 7:20, 7:22, 8:9, 8:10, 29:14, 29:19, 30:12, 33:20, 35:10, 42:20, 42:21, 44:11, 46:14,

52:1, 54:20, 66:1, 66:4, 67:4, 67:6
**states** [2] - 58:20, 64:4
**STATES** [4] - 1:1, 1:2, 1:7, 1:9
**States** [17] - 1:11, 2:3, 2:7, 7:17, 8:8, 17:8, 17:9, 17:21, 22:24, 24:7, 33:17, 35:15, 36:15, 39:6, 41:7, 65:22, 67:4
**stating** [1] - 25:11
**status** [3] - 75:3, 75:24, 76:13
**statute** [4] - 46:1, 46:25, 47:15, 64:3
**statutory** [14] - 6:1, 7:18, 13:22, 45:12, 45:15, 47:7, 53:10, 54:14, 54:15, 56:14, 56:16, 60:1, 61:4, 62:24
**stenographic** [1] - 78:15
**steps** [1] - 33:13
**still** [5] - 24:9, 48:22, 54:23, 69:14, 76:18
**stipulated** [2] - 15:1, 52:2
**Stockton** [1] - 9:15
**stop** [1] - 16:16
**story** [7] - 22:19, 24:13, 24:19, 28:16, 34:7, 36:17, 40:8
**strategic** [1] - 17:23
**Street** [1] - 1:12
**study** [1] - 9:10
**studying** [1] - 9:12
**sub** [1] - 38:4
**subcommittee** [1] - 34:8
**Subcommittee** [6] - 22:5, 22:7, 22:10, 22:18, 23:3, 29:15
**subject** [2] - 56:24, 60:7
**submission** [6] - 25:20, 26:15, 36:19, 38:9, 38:15, 38:25
**submit** [1] - 25:9
**submitted** [1] - 34:6
**subpoena** [1] - 12:15
**substance** [1] - 48:2
**substantial** [1] - 42:1
**suggested** [1] - 64:19
**suggestion** [2] - 74:22, 76:22
**Suisse** [5] - 20:12, 20:22, 21:1, 21:9, 21:16

**summary** [6] - 30:9, 30:13, 30:14, 32:1, 60:25, 61:10
**summoned** [1] - 11:15
**Sunage** [8] - 21:12, 21:18, 21:19, 21:20, 22:22, 23:7, 23:24
**super** [1] - 76:9
**supervised** [8] - 45:18, 45:20, 45:22, 45:25, 46:9, 46:12, 46:15, 46:19
**supplying** [1] - 17:23
**support** [3] - 16:8, 18:18, 24:18
**Support** [1] - 18:19
**suppress** [1] - 11:7
**Swiss** [3] - 20:11, 20:24, 33:17
**sworn** [3] - 3:5, 3:7, 7:8
**system** [1] - 63:16

**T**

**table** [1] - 50:20
**tax** [73] - 7:24, 8:1, 8:11, 17:11, 20:25, 22:15, 22:23, 24:8, 24:10, 24:12, 25:3, 25:14, 26:9, 26:16, 26:22, 27:9, 28:3, 29:23, 30:1, 30:11, 34:5, 35:1, 36:16, 39:1, 39:17, 41:25, 42:1, 42:3, 42:5, 42:8, 42:12, 43:10, 43:12, 43:15, 43:16, 43:23, 44:5, 44:21, 44:23, 46:17, 46:24, 49:16, 49:19, 49:22, 50:4, 50:18, 50:20, 51:23, 51:24, 52:2, 52:5, 53:14, 54:2, 54:19, 55:16, 56:18, 57:2, 57:15, 58:15, 58:22, 58:25, 59:4, 60:11, 66:8, 67:7, 67:8, 69:12, 71:8
**Tax** [2] - 1:11, 25:21
**taxes** [13] - 17:11, 17:14, 22:16, 25:1, 26:10, 26:17, 27:10, 29:13, 29:18, 42:8, 42:12, 43:18, 58:20
**taxpayers** [1] - 24:24
**television** [1] - 24:1
**template** [1] - 10:23
**ten** [4] - 49:11, 56:12, 57:16, 59:24

**tens** [6] - 26:10, 29:5, 40:14, 43:18, 43:24, 58:21
**tentatively** [3] - 10:22, 68:1, 70:11
**term** [3] - 53:10, 56:13, 60:1
**terms** [33] - 2:16, 2:18, 4:21, 6:4, 6:9, 7:1, 8:21, 10:19, 11:13, 12:25, 13:19, 30:5, 31:25, 47:14, 49:1, 51:8, 51:11, 52:18, 52:20, 53:25, 56:1, 58:6, 58:11, 61:19, 62:11, 63:13, 64:3, 64:8, 66:15, 69:2, 71:13, 74:3, 78:9
**testify** [3] - 12:16, 12:21, 12:22
**testimony** [1] - 74:16
**Thanksgiving** [1] - 72:23
**THE** [347] - 1:1, 1:7, 1:9, 1:15, 2:2, 2:8, 2:12, 2:14, 2:15, 3:8, 3:12, 3:13, 3:20, 3:21, 4:8, 4:13, 4:15, 4:18, 5:14, 5:15, 6:25, 7:1, 7:7, 7:8, 7:13, 7:14, 8:16, 8:17, 9:1, 9:2, 9:3, 9:4, 9:6, 9:7, 9:9, 9:10, 9:11, 9:14, 9:15, 9:16, 9:18, 9:19, 9:21, 9:22, 10:1, 10:4, 10:7, 10:8, 10:10, 10:11, 10:13, 10:14, 10:18, 10:19, 11:3, 11:4, 11:9, 11:10, 11:12, 11:13, 12:3, 12:4, 12:8, 12:9, 12:12, 12:13, 12:17, 12:18, 13:4, 13:5, 13:11, 13:12, 13:17, 13:18, 14:3, 14:4, 14:8, 14:9, 14:14, 14:15, 14:19, 14:20, 15:8, 15:12, 15:21, 16:5, 16:10, 16:15, 17:2, 17:5, 17:15, 17:17, 17:18, 18:1, 18:2, 18:5, 18:6, 18:7, 18:10, 18:11, 18:13, 18:14, 18:24, 18:25, 19:1, 19:11, 19:12, 19:16, 19:19, 19:21, 20:3, 20:4, 20:13, 20:14, 20:15, 20:19,

20:20, 20:21, 21:6, 21:7, 21:24, 21:25, 22:3, 22:12, 22:13, 22:25, 23:1, 23:8, 23:9, 23:17, 23:18, 23:19, 23:20, 23:21, 24:4, 24:5, 24:21, 24:22, 25:6, 25:7, 25:17, 25:18, 26:13, 26:14, 26:20, 26:21, 27:12, 27:13, 27:18, 27:21, 27:24, 28:1, 28:11, 28:12, 28:19, 28:20, 29:2, 29:3, 29:7, 29:8, 29:16, 29:17, 30:2, 30:3, 30:4, 30:22, 31:1, 31:5, 31:9, 31:18, 31:21, 31:22, 31:24, 32:14, 32:20, 32:22, 33:7, 33:8, 33:23, 33:24, 34:9, 34:10, 34:19, 34:20, 34:21, 35:5, 35:6, 35:7, 35:18, 35:23, 36:1, 36:4, 36:6, 36:10, 36:21, 36:22, 36:25, 37:3, 37:6, 37:7, 37:21, 37:24, 38:5, 38:10, 38:16, 38:18, 38:19, 39:2, 39:3, 39:9, 39:10, 39:19, 39:20, 40:9, 40:10, 40:18, 40:20, 40:22, 40:24, 41:3, 41:4, 41:14, 41:15, 41:22, 41:23, 42:15, 42:16, 42:24, 42:25, 43:7, 43:8, 44:2, 44:3, 44:13, 44:14, 44:25, 45:1, 45:2, 46:22, 47:1, 47:3, 47:5, 47:9, 47:10, 47:12, 47:13, 48:25, 49:1, 51:3, 51:4, 51:6, 53:18, 53:24, 53:25, 55:1, 55:2, 57:7, 57:8, 57:20, 57:23, 58:2, 58:3, 59:3, 59:4, 59:23, 59:24, 60:4, 60:5, 60:15, 60:16, 60:17, 60:18, 60:22, 60:23, 61:12, 61:13, 62:8, 62:10, 63:10, 63:11, 64:13, 64:14, 64:21, 64:22, 64:24, 64:25, 65:3, 65:4, 65:8, 65:9, 65:11, 65:12, 65:15, 65:16, 65:18, 65:20, 65:24, 65:25, 66:2,

66:3, 66:6, 66:7, 66:11, 66:12, 66:23, 67:19, 67:21, 68:4, 68:7, 68:9, 68:10, 68:12, 68:13, 68:14, 68:15, 69:1, 70:4, 71:1, 71:12, 71:16, 71:22, 72:2, 72:21, 72:25, 73:10, 74:13, 74:17, 74:22, 75:8, 75:11, 75:14, 76:1, 76:4, 76:6, 76:10, 76:15, 76:20, 76:22, 77:1, 77:3, 77:10, 77:14, 77:17, 77:18, 77:23, 77:24, 78:7
**themselves** [1] - 51:11
**thereafter** [2] - 41:4
**therefore** [2] - 52:22, 67:2
**thinking** [2] - 70:25, 71:10
**thinks** [1] - 72:20
**third** [10] - 33:21, 33:25, 35:14, 39:4, 41:5, 42:3, 43:1, 44:15, 52:17, 55:24
**thousands** [1] - 19:4
**threatened** [1] - 64:22
**three** [10] - 22:21, 29:20, 30:11, 31:1, 41:25, 45:19, 46:15, 46:19, 52:14, 56:20
**three-point** [1] - 52:14
**throat** [1] - 38:1
**thrown** [1] - 68:23
**times..** [1] - 17:6
**timing** [2] - 52:19, 75:15
**today** [5] - 56:3, 57:17, 66:14, 72:4, 74:23
**today's** [2] - 55:2, 77:19
**together** [3] - 15:4, 43:16, 64:6
**took** [2] - 20:9, 33:13
**top** [3] - 61:15, 62:6, 73:17
**total** [14] - 26:3, 49:19, 52:5, 52:24, 53:13, 54:21, 55:15, 56:6, 57:2, 58:15, 59:19, 60:11, 60:25
**towards** [2] - 9:13, 71:20
**town** [1] - 24:3
**trade** [2] - 9:13, 19:6
**transcript** [9] - 1:22, 1:22, 1:25, 74:11, 74:15, 78:15, 78:15,

78:17
**TRANSCRIPT** [1] - 1:6
**transcription** [1] - 1:25
**transfer** [1] - 21:1
**treated** [1] - 49:12
**treatment** [1] - 9:24
**trial** [43] - 10:21, 10:22, 10:23, 11:2, 11:14, 12:2, 12:5, 12:6, 12:9, 12:19, 13:10, 13:13, 14:13, 14:16, 14:18, 34:3, 34:14, 34:25, 36:14, 41:10, 42:7, 42:14, 43:21, 44:10, 44:18, 52:19, 52:21, 54:1, 54:7, 55:20, 68:19, 68:22, 69:24, 70:6, 70:12, 71:3, 71:17, 71:24, 73:6, 77:7, 77:16, 78:1
**trials** [3] - 68:2, 70:15, 70:22
**tried** [1] - 57:9
**troops** [2] - 17:24, 18:20
**trouble** [1] - 38:11
**true** [3] - 29:10, 78:14, 78:15
**trust** [3] - 24:15, 50:13, 50:15
**truthful** [1] - 36:5
**truthfully** [1] - 7:10
**try** [1] - 70:22
**trying** [3] - 57:5, 58:6, 76:11
**Tulum** [1] - 24:2
**turn** [2] - 50:18, 62:4
**twice** [3] - 46:25, 57:15, 57:18
**two** [23] - 7:3, 9:9, 15:10, 21:2, 22:20, 23:11, 29:19, 32:25, 47:1, 47:5, 52:9, 52:10, 52:13, 52:22, 54:5, 55:24, 56:2, 56:21, 57:17, 61:6, 62:11, 73:7, 75:3
**two-point** [4] - 15:10, 54:5, 55:24, 56:2
**type** [1] - 9:24
**types** [2] - 48:12, 48:14

---

**U**

**U.S** [28] - 17:10, 17:11, 17:12, 17:24, 18:18, 18:20, 19:9, 20:16,

20:24, 21:2, 21:3, 22:15, 22:16, 22:23, 23:11, 24:9, 25:15, 25:21, 26:5, 26:17, 26:24, 29:19, 29:22, 34:8, 44:12, 44:22, 50:11
**U.S.C** [7] - 7:19, 7:21, 7:23, 7:25, 8:2, 8:4, 41:25
**UBO** [1] - 20:7
**ultimate** [3] - 20:7, 21:4, 21:23
**ultimately** [2] - 6:13, 55:10
**unable** [1] - 14:4
**uncomfortable** [1] - 16:11
**under** [20] - 2:20, 7:9, 13:22, 15:10, 25:10, 32:22, 40:15, 41:2, 46:11, 46:24, 50:7, 50:19, 51:20, 51:22, 52:4, 52:23, 55:5, 56:6, 62:15, 63:1
**understood** [2] - 6:21
**unfairness** [1] - 11:19
**uniformly** [1] - 48:12
**UNITED** [4] - 1:1, 1:2, 1:7, 1:9
**United** [17] - 1:11, 2:3, 2:7, 7:17, 8:8, 17:8, 17:9, 17:21, 22:24, 24:7, 33:17, 35:15, 36:15, 39:6, 41:7, 65:22, 67:4
**unlawful** [3] - 13:20, 35:24, 45:15
**unless** [2] - 13:5, 56:3
**unredacted** [2] - 2:20, 3:22
**unreported** [2] - 25:16, 43:24
**up** [28] - 3:4, 5:16, 6:14, 11:2, 14:11, 14:16, 19:7, 46:5, 46:8, 47:11, 51:1, 54:18, 54:19, 55:25, 56:13, 56:24, 57:6, 60:1, 62:14, 62:19, 66:20, 68:11, 69:11, 69:13, 70:11, 70:12, 75:3, 77:7
**useful** [1] - 5:1
**uses** [1] - 15:5
**usual** [1] - 62:17

---

**V**

**valuable** [1] - 63:25

**value** [1] - 50:15
**variance** [3] - 62:21, 62:25, 63:3
**various** [9] - 10:24, 32:1, 44:11, 44:21, 54:9, 59:14, 60:16, 60:20, 69:8
**vary** [2] - 62:23, 63:8
**venture** [2] - 24:1, 28:5
**version** [4] - 2:20, 3:22, 17:1, 17:3
**versus** [4] - 2:3, 37:13, 38:6, 52:19
**video** [1] - 74:10
**view** [1] - 57:2, 74:12
**viewed** [1] - 53:13
**viewing** [1] - 69:3
**views** [1] - 11:19
**violate** [1] - 45:23
**violating** [2] - 36:2, 49:22
**violation** [9] - 7:19, 7:21, 7:23, 7:25, 8:2, 8:3, 8:4, 35:22, 41:25
**violations** [1] - 63:18
**voice** [1] - 16:14
**void** [2] - 1:22, 78:17
**voluntarily** [3] - 5:7, 65:10, 66:24
**voluntariness** [2] - 6:15, 64:15
**Voluntary** [1] - 36:19
**voluntary** [2] - 31:9, 34:22
**Volunteer** [1] - 25:1
**vote** [1] - 64:1
**vs** [1] - 1:3

---

**W**

**wait** [1] - 75:17
**waiting** [1] - 69:15
**walked** [1] - 4:10
**wants** [1] - 14:22
**Washington** [4] - 1:5, 1:12, 1:17, 22:18
**water** [1] - 37:25
**week** [7] - 71:14, 72:1, 72:21, 72:23, 73:7, 75:20
**weekend** [2] - 72:16, 76:9
**weeks** [2] - 10:1, 74:23
**weigh** [1] - 5:23
**WHITE** [1] - 1:10
**whittle** [1] - 70:8
**wife** [8] - 21:13, 21:18,

22:19, 28:16, 33:19,
40:8, 41:21, 50:14
**willful** [8] - 8:3, 35:17,
35:18, 39:12, 41:17,
42:4, 43:1, 51:23
**willfully** [3] - 24:25,
29:9, 29:18
**willfulness** [2] - 35:21,
44:16
**willing** [3] - 11:1, 11:4,
77:18
**win** [1] - 19:8
**wind** [1] - 70:12
**Wind** [2] - 19:5, 20:10
**wish** [2] - 3:15, 67:10
**witnesses** [6] - 12:11,
12:14, 68:21, 70:18,
73:4, 74:8
**won** [1] - 18:21
**words** [7] - 6:10,
12:15, 35:23, 46:10,
49:25, 72:8, 77:10
**works** [1] - 67:24
**worldwide** [1] - 17:13
**worry** [1] - 60:3
**worth** [1] - 23:12
**writer** [1] - 73:24

## Y

**year** [21] - 25:16, 26:3,
26:5, 26:6, 26:7,
26:11, 26:19, 26:24,
27:1, 28:18, 29:5,
38:24, 39:1, 42:10,
43:4, 43:18, 43:24,
58:21, 63:19
**years** [34] - 7:24, 8:1,
8:11, 9:9, 25:12,
25:14, 25:22, 26:23,
27:17, 27:20, 30:1,
39:15, 42:19, 43:9,
43:12, 43:16, 43:17,
44:6, 44:8, 44:19,
45:17, 45:19, 46:14,
46:16, 46:18, 46:20,
50:4, 53:11, 54:13,
56:13, 58:22, 60:1,
66:8, 67:8
**York** [1] - 1:16
**yourself** [1] - 12:24
**yourselves** [1] - 2:4