Defense Exhibit 7

# Memorandum



| Subject | Date |
|---|---|
| Sentencing Commission Questionnaire | RMO:EMV:LCandler:bgws |
| | 5  MAY 1986 |

| To | From |
|---|---|
| Randy L. Levine<br>Deputy Associate<br>Attorney General | Roger M. Olsen<br>Acting Assistant<br>Attorney General<br>Tax Division |

Thank you for the opportunity to give you our views on sentencing in criminal tax cases. Our responses to the questions are attached. In addition to these questions, we have set forth below some additional information with respect to the importance of meaningful sentences in criminal tax cases.

As you will undoubtedly gather from our reply to the questions asked, it is difficult to categorize criminal tax offenses based solely on monetary harm. For that reason, we have undertaken a brief review of the issues involved in criminal tax prosecutions.

It is the premise both of the Tax Division and the Internal Revenue Service ("Service") that sentences that include incarceration in a penal institution act as important deterrents to potential criminal tax offenders and thereby effectively foster compliance with our system of self assessment and payment of taxes. The importance of maintaining this system at its greatest efficiency is so manifest that it needs no further comment.

Since we believe that anything that tends to diminish the criminal nature of tax offenses will have an adverse effect on the compliance program, we are opposed to any policy or procedure that would reduce the consequences of a tax crime to merely a monetary risk.

### INTRODUCTION

The Tax Division has the responsibility for the control and supervision of all cases involving criminal violations of the Internal Revenue Code, Title 26 U.S.C., ("Code"). This responsibility is carried out by the Criminal Section of the Tax Division. Criminal tax cases are initially

**Defense Exhibit 7-1**

- 2 -

investigated by agents of the Criminal Investigation Division of the Service ("CID"). If CID believes that a violation of the Internal Revenue laws has occurred, a report is submitted to the appropriate District Counsel of the Service for review. If it is concluded that a violation has occurred, the matter is referred to the Tax Division's Criminal Section, where each case is analyzed and a decision made by or on behalf of the Assistant Attorney General of the Tax Division as to whether or not prosecution is warranted and on what charges.

This centralized control of criminal tax cases enables the Government to promulgate a national policy with respect to the types of cases which are prosecuted and insures that consistent legal positions are taken with respect to various complex and difficult issues that often are involved in tax cases.

Individuals from the full spectrum of occupations and social positions are prosecuted for criminal tax violations. Convictions are common against doctors, lawyers, accountants, school teachers, municipal officers, public officials, pornography dealers, and drug dealers. Nonetheless, some frauds are becoming more and more complex, with correspondingly more man hours required to identify and prosecute the individuals responsible. The proliferation of abusive and illegal tax shelters has created a severe burden on the administration of the federal tax system and resulted in significant revenue losses. In the past year, the Government obtained convictions of tax shelter promotors in several cases. These cases alone resulted in more than 25 million dollars in false deductions from schemes involving equipment leasing, government securities, Treasury bill futures straddles, and foreign trusts. Massive investigations are being conducted into the use of foreign trusts and foreign banks for tax evasion. The number of tax protest cases has increased dramatically in the past few years, and prosecution of tax protesters remains a priority.

The Tax Division and the Criminal Division work closely in criminal tax cases involving organized crime. In 1983, the President and the Attorney General formed 12 regional Organized Crime Drug Enforcement (OCDE) task forces. These OCDE task forces, which now number 13, are designed to investigate and prosecute major narcotics trafficking organizations through mult-agency participation. A Tax Division attorney is assigned as a liaison official to each of the 13 OCDE task forces, to provide guidance and expertise in developing and handling the tax investigations and prosecutions in task force cases.

**Defense Exhibit 7-2**

- 3 -

For many of these tax violations, a tax deficiency (or tax liability) is not required for successful prosecution of tax crimes. For instance, the essence of a violation of Section 7206(1) or Section 7206(2) of the Code is a false statement, or "tax perjury." The tax owed or the amount of income that was not reported is not always in issue, and a tax may or may not be due, or the amount of omitted income or fraudulent deductions may be substantial, but the taxpayer may have other tax losses (or loss carryovers) which eliminate any tax liability. In tax evasion prosecutions, it is enough to prove that the defendant attempted to evade a substantial portion of the tax owed. Furthermore, tax evasion ordinarily is a repetitive offense occurring year after year in each case. Recidivism is rare in criminal tax cases, save for tax protestors. Nonetheless, most tax evasion cases are ended by a plea of guilty to one count, whereas the evidence might show a pattern of evasion extending over three or more years. Thus, even in tax evasion cases, we do not believe that the amount of tax for which the defendant was convicted of defrauding the Government (based on a conviction for one count) is a reliable criterion for determining the seriousness of the offense. In many instances, the amount of tax evaded bears little relationship to the culpability of the offender. For example, a defendant who evaded taxes on $30,000, one-half of his gross income, may have committed a more serious crime than one who also failed to report $30,000, which was only one-tenth of his income. On the other hand, the misdemeanor of failing to file returns could involve fairly astronomic amounts, particularly if employment taxes are involved. Moreover, in the latter cases the Government is more apt never to recover the taxes than in ordinary tax evasion cases, which are felonies.

In short, we urge that the Commission should not use the amount ommitted, falsely characterized or deducted, as a primary or controlling factor in judging the seriousness of tax crimes. Rather, as you shall see the amount in dispute in tax cases is but one of a numbers of factors.

COMMENT

We urge that the following factors should be considered in ranking the seriousness of any criminal tax offense.

FACTORS WHICH INCREASE THE
SERIOUSNESS OF THE OFFENSE

1. The character or source of income on which the tax evaded was derived from a criminal act. Often, criminal tax

**Defense Exhibit 7-3**

- 4 -

prosecutions are of individuals who are reliably believed to be heavily involved in organized crime or narcotics trafficking. Their income is derived from a form of criminal activity that is a threat to society.  The character of the income often may be ascertained from the evidence in the case showing the source or likely source of funds which were not reported as income.

2.  <u>The scope of the fraudulent scheme</u>.  Criminal tax violations may arise from schemes which defraud others as well as the Government.  Mail frauds, for example, are classic instances where tax fraud is geared to the injury of third parties.  Similarly, corporate officers who have caused a corporation to take on its return fraudulent deductions for illegal campaign contributions, kickbacks, or bribes may have injured the corporation as an entity and all of its stockholders as individuals.

3.  <u>Involvement of others</u>.  The seriousness of a criminal tax offense is increased when a defendant who personally engineered the scheme that led to the criminal tax violations received a substantial financial benefit therefrom.  Thus, an individual who initiated a conspiracy should be considered more culpable and treated more harshly than others in the conspiracy who may have actively engaged in the conspiracy, but who received substantially less financial benefit.  At least comparable in seriousness to the offenses of prime movers in tax evasion schemes that involve others are offenses of tax protesters who are also proselytizers seeking to convert ordinarily law abiding persons to their particular credos of non-compliance and non-payment.  Sentencing courts in such cases appear to be cognizant of the grave threat to the revenue and to the tax compliance program which is implicit in the actions of those protesters and have been imposing sentences of comparable severity.  In this area, particularly, lenient sentencing guidelines would frustrate the deterrent effect of substantial incarceration.  The convicted tax protester may have failed to pay a comparatively modest amount of taxes and, measured on a monetary scale, it could seem to be a crime of small dimensions.  Factually, of course, the crime is an aggravated one and even the monetary damage to the Government could be ten or twenty or a hundred times greater than the taxes involved in the charge or charges for which such a person was convicted.

4.  <u>Perjury</u>.  Income tax laws place the burden upon the individual to fairly state all of his income and expenses.  The Government must necessarily rely upon the honesty and



**Defense Exhibit 7-4**

- 5 -

good faith of the taxpayers.  When false statements are made on tax returns or to IRS agents, the entire tax audit function of the IRS is fraustrated and impeded.  Thus, the entire system for collecting federal tax revenue is jeopardized. These crimes are of grave import, and if unchecked breed disrespect and disruption of the entire "self assessment" tax system.

5.  The flagrancy of the offense.  Flagrancy may be measured by the number of counts charged in the indictment, the number of tax years involved, the ability of the taxpayer to pay the taxes involved, the lengths to which the defendant went to conceal the fraud, his cooperation or lack thereof with Internal Revenue Service, and the amount of income tax evaded particularly as a percentage of the defendant's income.

6.  Repeat offenders.  Criminal tax offenders are rarely recidivists.  When they are, however, they should be considered much more culpable than one-time offenders.

This is not an attempt to describe all the possible factors that could be considered in evaluating the seriousness of criminal tax offenses.  Nor are our comments cast in terms of categories of seriousness, because we believe that each criminal tax violation should be considered independently. Any attempt to treat all criminal tax violations, somehow, as monetary or property offenses would ignore reality and the distinction between violations and preclude consideration of the factors discussed above.  In an attempt to define the seriousness of the offense or the culpability of the offender, the scheme or fraud from which the criminal tax violation arose should be considered as well.  It is also important to remember that honest taxpayers are the true victims, because nonpayment of taxes by some results in higher taxes for others.

## CONCLUSION

More than one-third of the defendants convicted of criminal tax violations do not receive prison sentences.  An individual convicted of a criminal tax violation often receives a suspended sentence.  Those who receive a sentence of incarceration may serve only six months or less.  A sentence of incarceration is usually imposed only when other illegal activity is involved, or where the factors discussed above have been considered by the judge.  It is the Government's position that incarceration should be sought for all defendants

**Defense Exhibit 7-5**

- 6 -

who are convicted of a criminal tax violation in order to insure respect for the voluntary system for collecting revenue.  We would oppose any action or changes that would decrease the amount of time served by criminal tax offenders.

**Defense Exhibit 7-6**

QUESTIONS AND RESPONSES BY JUSTICE DEPARTMENT
TAX DIVISION

1. What types of cases involving criminal offenses does your Division investigate and/or prepare for prosecution? For each type, identify the criminal code sections under which prosecutions are generally instituted.

ANSWER: Criminal Tax cases encompass the following: tax evasion (26 U.S.C. Section 7201); signing a false or fraudulent tax return under penalty of perjury (26 U.S.C. Section 7206(1)); aiding and assisting in the preparation of a false return or other tax-related document (26 U.S.C. Section 7206(2)); executing fraudulent bonds (26 U.S.C. Section 7206(3)); removing or concealing goods with intent to defraud (26 U.S.C. Section 7206(4)); concealing property or falsifying or destroying records (26 U.S.C. Section 7206(5)); failure to file a tax return, supply information, or pay a tax (26 U.S.C. Section 7203); filing a false or fraudulent withholding exemption certificate or failure to supply information (26 U.S.C. Section 7205); failure to correct, account for, and pay over a tax (26 U.S.C. Section 7202); furnishing a fraudulent statement or failure to make a statement to employees (26 U.S.C. Section 7204); supplying fraudulent or false information to the Internal Revenue Service (26 U.S.C. Section 7207); failure to obey an Internal Revenue Service summons (26 U.S.C. Section 7210); and failure after notice to deposit withheld employment taxes (26 U.S.C. Section 7215).

In addition to Title 26 offenses, criminal tax prosecutions may also involve charges under the following statutes: 18 U.S.C. Section 2--Principals; 18 U.S.C. Section 286--conspiracy to defraud the Government with respect to claims; 18 U.S.C. Section 287--false, fictitious or fraudulent claims; 18 U.S.C. Section 371--conspiracy to commit offense or to defraud the United States; 18 U.S.C. Section 1001-- statements or entries generally; 18 U.S.C. Section 1341--frauds and swindles; 18 U.S.C. Section 1343--fraud by wire, radio or television; 18 U.S.C. Section 1510--obstruction of criminal investigations; 18 U.S.C. Section 1512--tampering with a witness, victim, or an informant; 18 U.S.C. Section 1513--retaliating against a witness, victim, or an informant; 18 U.S.C. Section 1623--false declarations before grand jury or court; 18 U.S.C. Section 2314--transportation of stolen goods, securities, moneys, fraudulent state tax stamps, or articles used in counterfeiting; and Title 31 offenses with respect to money laundering.

**Defense Exhibit 7-7**

- 2 -

2. For each of these crime types, estimate their annual incidence and total monetary harm produced in the United States as a whole.

ANSWER: It is impossible to determine the annual incidence and total monetary harm resulting from tax offenses because a great many of these offenses go undetected. The "tax gap" is estimated at $90-100 billion dollars. This means that the Government is losing that amount of money each year in tax revenues due to noncompliance. It is common knowledge that only one percent of all tax returns are audited. In addition, only a small percentage of tax cases which are detected result in criminal prosecutions. Thus, the total monetary harm cannot be estimated. Of the cases which are prosecuted, the amount of tax liability ranges from zero to millions of dollars. However, for many of these tax violations, a tax deficiency is not required for successful prosecution. For instance, the essence of a violation of Code Section 7206(1) or Code Section 7206(2) is a false statement, or "tax perjury." The tax owed or the amount of income that was not reported is not always in issue, and a tax may or may not be due. In tax evasion prosecutions, the exact amount of tax owed does not have to be proved. It is enough to prove that the defendant attempted to evade a substantial portion of the tax owed. Furthermore, tax evasion ordinarily is a repetitive offense occurring year after year. Nonetheless, most tax evasion cases are ended by a plea of guilty to one count, whereas the evidence might show a pattern of evasion extending over three or more years. Thus, even in tax evasion cases, where a tax deficiency must be proved, the tax due figures are incomplete. Criminal tax cases are not collection actions. They are brought for their deterrent value. Civil proceedings to collect lost tax revenues usually take place after the criminal investigation is complete, and the amount of tax ultimately assessed is likely to differ from the tax figures used in the indictment.

3. For each type of crime that your Division investigates, what is the average and range of monetary harm per offense?

ANSWER: With the exception of grand jury investigations, all criminal tax cases are investigated by the Internal Revenue Service's Criminal Investigation Division. Of the cases prosecuted by the Tax Division or United States Attorney's offices, the amount of tax liability can range from zero to millions of dollars. However, as stated above, monetary harm encompasses much more than lost tax revenues. It also includes the costs of collection, investigation, and prosecution -- costs which the taxpaying public ultimately has to bear. Overall, the average criminal tax deficiency in cases authorized for prosecution is approximately $100,000 per case. However, the norm for the majority of cases ranges between $10,000 and $25,000.

**Defense Exhibit 7-8**

- 3 -

4.    What is the average and range of monetary gain to the offender for committing the typical offense.

ANSWER:    Obviously, the amount of monetary gain will include the amount of unpaid taxes.  In addition, tax shelter promoters can earn millions of dollars by promoting fraudulent tax shelters.  Thus, their monetary gain is much greater than the amount of taxes they owe the Government; it also includes the amounts of money swindled from third parties. Similarly, tax protesters can earn large sums of money through the sale of tax protest promotional materials and by conducting tax protest seminars.

5.    How many cases, by type, does your Division consider for possible criminal prosecution each year?  How many cases, by type, does your Division prosecute, or refer for prosecution each year?

ANSWER:    The IRS refers approximately three thousand cases for possible criminal prosecution to this office each year.  In 1985, 3,234 cases were referred for criminal prosecution.  The Department of Justice declined 174 of these cases upon initial consideration.  The remaining cases were referred to the local United States Attorney's Offices for prosecution.  Of the 3,234 cases referred to the Tax Division, the breakdown by Code Section was as follows: Section 7201--918; Section 7203--480; Section 7206(1)--509; Section 7206(2)--167; Section 7215--3; Title 18 offenses--932; Title 31 offenses--120; Other offenses--105.

6.    What civil sanctions and private remedies (e.g., treble damage suits in antitrust) are available for each crime type for which your Division has responsibility? Currently what is their role in preventing and punishing violations?

ANSWER:    The federal revenue laws are supported by a bifurcated sanction system.  Initially, the IRS determines whether a case should be treated civilly, or referred to the Department of Justice for criminal prosecution.  If the case is referred for prosecution, civil action is usually suspended. A prosecutor should not consider non-criminal alternatives to prosecution "unless, in his/her judgment, prosecution should be declined because: (1) no substantial interest would be served by prosecution; (2) the person is subject to effective prosecution in another jurisdiction; or (3) there exists an adequate non-criminal alternative to prosecution." United States Attorneys' Manual, Title 9-27.220.  In determining whether an adequate non-criminal alternative to prosecution exists, the prosecutor must consider "the effect of such a non-criminal disposition on federal law enforcement interests." United States Attorneys' Manual, Title 9-27.250.  Because criminal tax prosecutions are undertaken for their deterrence



**Defense Exhibit 7-9**

- 4 -

value as well as to punish the offender, civil disposition
would have a negative impact on federal law enforcement
interests, and it is rarely considered as an option to
criminal prosecution.

The civil sanctions available to the IRS include the
five percent negligence penalty (Code Section 6653(a)); the
fifty percent fraud penalty (Code Section 6653)(b)); return
preparer penalties for negligence and fraud (Code 6694(a)
and (b)); and injunctions against the promoters of abusive
tax shelters (Code Section 7408).

In addition, there is the private litigation, such as
private lawsuits by investors against the promoters of
fraudulent tax shelters and civil RICO actions.  These civil
sanctions and private remedies may be imposed in addition to
criminal prosecution, therefore their role in preventing and
punishing violations is likely to be minimal.

7.  Generally, why do you choose to proceed criminally
rather than civilly?  Do you sometimes choose to proceed
both civilly and criminally for the same violations?  If so,
when and why?

ANSWER:  The Internal Revenue Service, is initially
responsible for investigating and selecting the cases recommended
for criminal resolution.  A CID recommendation for prosecution
is initially reviewed by IRS District Counsel.  A District
Counsel attorney reviews the Special Agent's Report (SAR)
and related exhibits and, if prosecution is considered to be
warranted, that attorney prepares a Criminal Reference
Letter (CRL) which contains an analysis of the evidence and
the applicable law.  After review by that attorney's supervisor,
the CRL is forwarded to the Tax Division.  At the Department
of Justice, each case is carefully reviewed by a trial
attorney in the Criminal Section of the Tax Division.  The
recommendation of the Tax Division trial attorney is reviewed
by one or more senior attorneys, depending upon the complexity
of the case.

Tax Division attorneys employ a general standard applicable
to all cases reviewed.  Basically, two requirements must be
satisfied before prosecution is authorized:  (1)  There must
be a prima facie case; and (2) there must be a reasonable
probability of obtaining a conviction.  Other factors may
produce variations in the application of general prosecution
standards.  For example, an area where deviations from the
general standard may be encountered includes the administration
of Justice Department policies concerning "dual" and "successive"
prosecution issues.  The application of any one of the
Department policies established in the interest of justice
can and sometimes does result in the declining of prosecution
where the Government might otherwise have a reasonable
probability of securing a conviction.

**Defense Exhibit 7-10**

- 5 -



There are a number of factors which the Tax Division considers important in making a determination whether there is a reasonable probability of conviction.  Some of the important ones are:

1.   Lack of Willfulness

The Supreme Court in the Holland case, (348 U.S. 121 (1954)) stated that willfulness cannot be inferred from the mere understatement of income, but a "consistent pattern of underreporting large amounts of income" can support an inference of willfulness.  In situations where the evidence establishes something more than a mere understatement of income but less than a flagrant understatement, it may be argued with success that a jury is not likely to convict. Generally, a consistent pattern of underreporting established by proof of underreporting of income for a number of consecutive years is sufficient to meet at least the threshold requirement of willfulness.  While one-year prosecutions have been undertaken successfully by the Government, the fact that only one year is involved may constitute the basis for an argument that there is lack of criminal intent.  One-year cases are not usually effective prosecution vehicles in failure to file cases, except in the so-called "tax protestor" situations, where deliberate disregard of the statutory filing requirements is readily provable, even in most one-year situations, because of the manner in which the offense is committed.

2.   Accounting and Trial Problems:

In some instances, the problems incident to an anticipated trial of a taxpayer are so overwhelming that it may be argued that a jury will be confused by the very complexity of the issues and that there is no likelihood, indeed no possibility, of a conviction.  It may well be that a particular case is not considered of sufficient importance to warrant the expenditure of time and effort required to present such a case, particularly where there is a strong basis for believing that the very presentation of such a case will prove too confusing to a jury.  Sometimes the principal problems inherent in the trial of a case may be caused not only by the volume of proof required in its presentation, but by the complexity of the issues.

It follows that, in some situations, anticipated litigation problems may be of considerable importance in determining whether there is a reasonable probability of conviction or the ability to obtain an affirmance on appeal.  On the other hand, there have, in recent years, been an increasing number of abusive areas in which the flagrancy of the fraud perpetrated was considered to be so significant that an initiation of criminal proceedings was undertaken in spite of the complexity

**Defense Exhibit 7-11**

- 6 -

of the issues to be litigated, e.g., Multi-national corporate cases, tax shelter cases and tax protester prosecutions involving mail-order ministries.

3.    Conflicting Testimony of Witnesses:

During the course of some investigations, witnesses give conflicting testimony; i.e., a witness may present one version of the transaction to the investigating agent and a completely different and exculpatory version to defense counsel, and perhaps, to Government attorneys as well. Conflicting testimony in the case may so impair the witness' trial testimony that there would be no likelihood of a conviction, particularly where the witness is a key witness such as a bookkeeper, accountant, or return preparer.

4.    Nominal Amount of Tax Involved:

It is generally accepted that juries will not convict where the tax deficiency is small and the deterrent to the revenue arising from the tax fraud is insignificant. For example, in failure to file situations, which involve violations of 7203 where all the elements of the crime are well established (i.e., a failure to file; receipt of gross income in the amounts requiring filing; and willfulness), prosecution will usually be declined where there is no tax due and owing or where the tax dificiency is considered to be de minimis.

A de minimis tax deficiency is a relative concept and must be evaluated in light of all the circumstances in the case. For instance, whether a tax deficiency is de minimis requires consideration of the total tax reported. An understatement of tax of $5,000 may be considered significant in relation to a reported tax of a $1,000, but insignificant and de minimis in relation to a reported tax of $50,000 other factors indicating willfullness is also lacking.

There are, of course, cases in which the taxpayer's actions are considered to be so significant that recommendations of prosecutions are made by the Internal Revenue Service in spite of the small amounts of the underlying tax involved. One such type of case is where the taxpayer, having been called upon to substantiate the deductions taken on his tax returns, submits altered checks to the Internal Revenue Service in an attempt to support those deductions.

Ordinarily, the small amount of tax deficiency, in the context of all the circumstances of the case, is a significant factor in determining that there is no reasonable probability of conviction. As a result, certain monetary guidelines have been promulgated by the Internal Revenue Service, in collaboration with the Tax Division, in order to eliminate unusually small cases from the criminal arena based on the

**Defense Exhibit 7-12**

- 7 -

principle of <u>de minimis non curat lex</u>. Thus, criminal prosecution generally will not be authorized in attempted evasion, false subscription and failure to file cases, unless the average yearly additional tax for criminal purposes is $2,500 or more. Also, in complex attempted evasion cases involving indirect methods of proof, prosecution usually will not be authorized unless the total additional tax for criminal purposes is at least $10,000 for the entire prosecution period and the additional tax for a single year is at least $3,000. For prosecution to be recommended in altered documents cases involving 26 U.S.C. 7207, the additional tax for criminal purposes should be $500 or more for the year in question.

In summary, the standard for recommending criminal proceedings for tax offenses is obviously not a mechanical test, but, rather, an excercise of judgment involving the use of discretion. There must be a consideration of all facts and circumstances, including those factors discussed above, and a determination that there is <u>prima facie</u> case and a reasonable probability of conviction.

In most tax cases, both criminal and civil sanctions are sought; however, the civil action is usually suspended until the criminal case is concluded.

8. Of the cases that you consider but reject for Federal prosecution, what percentage would you estimate are declined or rejected because:

    a.   there is insufficient evidence that a crime occurred;

    b.   conviction would be unlikely;

    c.   other remedies (e.g., civil suit, administrative proceeding, deportation) are available and less costly or more effective;

    d.   the expected sentence is too low to justify the effort;

    e.   the case is deferred for prosecution by state authorities;

    f.   other reason (please give examples).

ANSWER: The <u>Principles of Federal Prosecution</u> states that "as a matter of fundamental fairness and in the interest of the efficient administration of justice, no prosecution sould be initiated against any person unless the government believes that the person probably will be found guilty by an unbiased trier of fact." <u>United States Attorneys' Manual</u>, 9-27.210. Because of the thorough review given to each case by the IRS prior to referral to the Department of Justice, the percentage of declinations by the Tax Division in criminal

**Defense Exhibit 7-13**

- 8 -

tax cases is currently very low--less than ten percent during the past fiscal year.  The cases which are declined are usually declined for (a) lack of evidence or (b) no reasonable probability of conviction due to lack of willfulness. As discussed in our response to Question 7, supra, in determining whether there is a reasonable probability of conviction, the following factors factors are considered:  complexity of the law; conflicting testmony of witness; a de minimis tax liability; and possible defenses, such as reliance on the advice of counsel.

Federal prosecutors should also consider, inter alia, the nature and seriousness of the offense involved; the actual or potential impact of the offense on the community and on the victim; and the deterrent effect of prosecution. United States Attorneys' Manual, 9-27.230.  In this regard, it should again be emphasized that tax crimes are serious offenses because of their impact on our self-assessment system of taxation.  This is expecially true when the perpetrator encourages others to commit tax offenses.  As stated, honest taxpayers are the real victims because their taxes must be higher to compensate for the lost revenue due to noncompliance; thus, the impact on the community is severe.  Other reasons for declination are the Department's policies against dual or successive prosecutions, or the likelihood that the defendant would not receive an additional jail sentence because he has already been sentenced to a lengthy prison term for another offense, e.g., narcotics.

9.  Approximately how much does it cost your division to investigate the average criminal case?  If possible, please estimate the investigative costs incurred by other agencies on the same cases?

ANSWER:  Most of investigative work in tax cases is done by the IRS.  In the fiscal year 1985, the overall Criminal Section budget was $5,164,764.  Of this total, $521,950 was spent on attorney travel to conduct grand jury investigations and trials; and $3,180,903 was spent on attorneys' salaries.  These figures do not include amounts budgeted by the Internal Revenue Service or other components of the Department of Justice which have a significant role in federal tax enforcement.  The IRS employs more than 4000 Special Agents, at an average annual salary of $30,000-35,000, all of whom devote full-time to criminal tax investigations. The United States Attorneys' offices prosecute 80% of the criminal tax cases; thus, the salaries and overhead costs for Assistant United States Attorneys working on criminal tax cases represents a significant portion of the investigative costs.  In fiscal year 1985, twenty new specialized criminal tax attorney positions were created at select United States Attorneys' offices.  The total annual salaries for these twenty attorneys alone likely exceeds $700,000 annually.  As

**Defense Exhibit 7-14**

- 9 -

an example of the average cost incurred by the Tax Division in investigating a case, during the past year, one attorney spent $9,334.49 on travel to conduct a grand jury investigation and prepare for trial in a nationwide tax shelter case. This figure does not include the cost of the trial or the cost of the two IRS agents working full-time on the case.

10.  How much does it cost to prepare a criminal case if:

a.   it goes to trial?

b.   it is settled by negotiated plea before trial?

ANSWER:  Since, most of the investigative work is done by the Internal Revenue Service prior to referral to the Department of Justice for prosecution, the cost, if the case is settled by plea, is nearly the same as if it went to trial.  The cost savings would be the cost of the trial.

11.  What percentage of your criminal cases, by crime type, result in:

a.   conviction through trial?

b.   conviction through plea of guilty to indictment charge(s)?

c.   conviction through negotiated plea agreement?

d.   dismissal?

e.   acquittal?

f.   other?

ANSWER:  The conviction rate for all criminal tax cases is approximately ninety-five percent.  The breakdown is as follows:

a.   The conviction rate for trials is approximately eighty percent.

b.   Seventy percent of criminal tax cases are settled by plea.

c.   The majority of these cases are settled through a negotiated plea agreement.  It is Tax Division policy to allow the taxpayer to plead guilty to the designated "major count(s)".  This "major count" policy encourages defendants inclined to plead guilty to negotiate the plea early in the case, before substantial time has been invested in preparing the case for trial.  Prosecutors are encouraged to negotiate a plea to the major count as soon as they receive a case, and they are permitted to "up the ante" if the defendant refuses this initial offer, and later wants to plead to one count the morning of trial.

**Defense Exhibit 7-15**

- 10 -



    d.    Very few cases are dismissed after indictment--approximately two-percent.

    e.    Of the thirty percent of the cases which do go to trial, the acquittal rate is about twelve percent.  Overall, less than five percent of the cases approved for prosecution actually result in acquittals.

    f.    Tax cases are not disposed of under the pretrial diversion program, thus there generally is no other disposition.

In summary, there is a 94.5% conviction rate (including pleas); less than 2% of these cases are dismissed; and less than five percent result in acquittals.

12.  For the criminal cases for which your Division has responsibility, how long does the average trial of each type last?

ANSWER:  Tax cases are complex cases, often involving hundreds or thousands of documents.  A criminal tax trial may last as long as six months, however, they generally vary in length from a few days to several weeks.  The average trial takes two to three weeks.

In conclusion, please note that our responses to these questions should be considered in conjunction with the discussion set forth in the attached memorandum dated April 25, 1986, to Randy L. Levine, Deputy Associate Attorney General, from Roger M. Olsen, Acting Assistant Attorney General.

**Defense Exhibit 7-16**