# Defense Exhibit 8

**U.S. Department of Justice**

Tax Division

---

Assistant Attorney General                    *Washington, D.C. 20530*

February 27, 1987

Honorable William W. Wilkins, Jr.
Chairman
United States Sentencing Commission
1331 Pennsylvania Avenue, N.W.
Suite 1400
Washington, D.C.    20004

Attention:  Guideline Comments

    Re:  Tax Division Comments on Revised Draft
       of Sentencing Guidelines

Dear Judge Wilkins:

  Thank you for the opportunity you gave me and my staff at
the meeting of the Commission on February 4, 1987, to express our
views concerning those sections of the proposed sentencing guide-
lines treating criminal tax offenses.

  Pursuant to your suggestion, we have set forth on the pages
which follow our concerns and suggestions which are generally
organized so as to follow the order of Part T -- Offenses Involv-
ing Taxation which begins at page 135 of the revised draft given
to us at the February 4, 1987, meeting.

        Sincerely yours,

        ROGER M. OLSEN
      Assistant Attorney General
        Tax Division

**Defense Exhibit 8-1**

PGB 00002

Part T -   Offenses Involving Taxation

The introduction in the revised draft reads as follows:

> The primary purpose of the laws that make certain tax offenses criminal is to ensure the full, prompt, and efficient collection of taxes.  Accurate reporting of information is another interest protected.  These guidelines are intended to provide for a just sentencing structure that advances the purposes of the tax laws.

We recommend that the introduction read as follows:

> The Federal Criminal Tax Program is designed to protect the public interest in preserving the integrity of this nation's self-assessment tax system through vigorous enforcement of the internal revenue laws. The purpose of a criminal tax prosecution is to both punish the wrongdoer and deter other potential tax violators.  Thus, the Government seeks to get maximum deterrent value from the limited number of cases prosecuted.  A major deterrent to would-be violators is recognition that the sentence in a tax offense will be commensurate with the gravity of the offense.

Comment.

The emphasis in the draft is on the collection of taxes and the accurate reporting of information.  Tax prosecutions do, of course, seek these goals but we believe that the emphasis in a criminal context should be on punishment and deterrence.  The suggested language is similar to that which appears in the United States Attorneys' Manual (USAM, 6-2010 (3/84)) and is therefore well known to both the defense bar and federal prosecutors.

**Defense Exhibit 8-2**

- 2 -

§T211.    Tax Evasion

The first paragraph of §T211 reads as follows:

> The base offense level is the level in the Tax Table, §T241, that corresponds to the tax deficiency. If the amount of the deficiency is not established, the base offense level is 9.

We recommend that the last sentence be eliminated, i.e.:

> If the amount of the deficiency is not established, the base amount is 9.

Comment.

While Section 7201 of the Internal Revenue Code is framed in terms of an attempt to evade or defeat any tax, an essential element of the offense that must be proved is a substantial tax due and owing or, in other words, a tax deficiency. Otherwise stated, there is no violation of Section 7201 unless a substantial tax deficiency is established. Sansone v. United States, 380 U.S. 343, 351 (1965); Lawn v. United States, 355 U.S. 339, 361 (1958).

It is our understanding that the sentence in issue is intended to set a "presumptive base level," presumably to cover a situation where the Court is unable to make a finding as to the amount of the deficiency. We believe it is not sound under controlling law to treat as a tax evasion offense a situation where the amount of the deficiency is not established. While a tax deficiency in a criminal tax case is only an approximation in

**Defense Exhibit 8-3**

- 3 -

that it is only necessary to prove a substantial tax deficiency, rather than the precise amount charged, the fact remains that there comes a point when you must land on a number.

**Defense Exhibit 8-4**

- 4 -

§T211.    <u>Tax Evasion</u>

The second paragraph of this section reads as follows:

> For purposes of this guideline, "deficiency"
> means the total amount of tax that the tax-
> payer evaded or attempted to evade, but not
> less than 25 percent of the amount any
> misstatements or omissions decreased reported
> net income.  When more than one year or more
> than one taxpayer is involved, the amounts are
> to be added.  The deficiency does not include
> any interest or penalties.

We recommend that this paragraph be revised so as to give effect

to the following changes:

1.    The term "deficiency" should include
<u>interest to the date of the filing of an information
or indictment</u> as an addition to the amount of tax
involved; the phrase "any interest or" should be
eliminated from the last sentence.

2.    The floor or minimum should be increased
from 25 percent to <u>30 percent</u> of the amount of any
misstatements or omissions and the amount of mis-
statements or omissions should be computed on the
basis of <u>taxable income</u> and not reported net
income.

3.    The qualification as to the adding of
amounts when more than one taxpayer is involved
should be clarified or this concept eliminated
and each taxpayer treated separately.  If a
deficiency, or part of a deficiency, is due to
the actions of two or more individuals this sec-
tion could specify that the entire amount of the
deficiency is to be used in computing the sentence
of each individual.

<u>Comment</u>.

1.    <u>Interest</u>.  It is important to include in the term

deficiency any interest that may have accrued on the taxpayer's

**Defense Exhibit 8-5**

- 5 -

obligation.  This is not a small item.  Tax investigations are long and complex.  In recognition of this fact Congress has provided for a six-year statute of limitations on many tax offenses as opposed to the usual five-year statute of limitations on Title 18 violations.  26 U.S.C., Sec. 6531; 18 U.S.C., Sec. 3282.  Because of the nature of tax offenses charges are not usually brought until several years after the commission of a tax offense.  It is not unusual for a tax indictment to be returned in which the six-year statute of limitations is about to expire on the earliest year.

In a similar vein, Congress also recognized that a number of taxpayers were delaying the payment of their taxes because the interest rates charged on delinquent taxes were such that a taxpayer could profit or suffer little harm by delaying the payment of taxes and investing the unpaid tax monies at the market rate.  To meet this problem Congress adopted a formula adjusting the rate of interest on unpaid taxes which sharply increased the interest owed on delinquent taxes.  26 U.S.C., Sec. 6621.  For example, the rate of interest was set at 20 percent for the period from February 1, 1982, to December 31, 1982, and 16 percent from January 1, 1983, to June 30, 1983.

Note, also, that in recognition of the consequences of an evasion scheme, Congress has provided that there is no civil statute of limitations on the collection of income taxes due

**Defense Exhibit 8-6**

- 6 -

as the result of an attempted evasion, 26 U.S.C., Sec. 6501(c). This means that the taxes remain due and owing until paid. Since the taxes remain due and owing, an attempted evasion can take place at any time until the taxes are paid. The criminal statute of limitations would not expire until six years from the attempted evasion. For example, an attempted evasion in 1985 of 1976 taxes would be well within the statute of limitations which would not run until six years from the attempted evasion in 1985 or until 1991. United States v. Beacon Brass Co., 344 U.S. 43 (1952). It is self-evident that in such a case the interest due, which is part of the crime, would be highly significant.

Unpaid interest can obviously be a substantial amount and since the essence of evasion is money owed to the Government we believe the guidelines should reflect this harm to the Government in setting a sentence.

We have suggested the filing of an information or indictment as a measuring point. This has the convenience of predictability as to the amount involved, permits time for the computation of interest prior to sentencing, and does not punish the taxpayer for any court or appellate delays.

2. <u>Minimum Floor</u>. We believe that the minimum should be 30 percent rather than 25 percent of the amount of any mis-statements or omissions so as to maintain a higher sentencing level in those instances where the deficiency falls below this

**Defense Exhibit 8-7**

- 7 -

floor.  The computation of the floor should also be on the basis of the decrease in taxable income rather than the decrease in reported net income.  The Code does not contain any definition of net income and the meaning of the term is not clear and is subject to dispute.  Taxable income, on the other hand, is defined in the Code (26 U.S.C., Sec. 63) and has been litigated in numerous cases.

3.    More than One Taxpayer.  We understand and agree with the concept of adding the amounts when more than one year is involved but do not understand the treatment of a situation where more than one taxpayer is involved.  There may well be a sound reason for specifically including a situation where more than one taxpayer is involved but if this concept is to be left in the guidelines it should be clarified.

**Defense Exhibit 8-8**

- 8 -

§T211(a). <u>Specific Offense Characteristic</u>

Subsection(a)(1) of §T211 reads as follows:

> If the offense was committed in furtherance of
> or in conjunction with a movement to encourage
> others to violate the internal revenue laws,
> increase by 2 to 4 levels, depending upon the
> nature of the conduct and its potential to
> subvert the tax system.

We recommend that this subsection read as follows:

> If the offense was committed in furtherance of
> a scheme or arose out of conduct intended to
> encourage others to violate the internal revenue
> laws, or to impede and impair the Internal Revenue
> Service in the assessment and collection of the
> revenue, then the offense level is as follows:

> (A)  Increase by 2 levels if the offense
> was committed by a single individual not act-
> ing in concert with others and was aimed at
> influencing only business associates, friends,
> or family members.

> (B)  Increase by 3 levels if the offense
> was committed by a single individual not act-
> ing in concert with others but was aimed at
> influencing the general public.

> (C)  Increase by 4 levels if:  (i)  the
> offense was committed by an individual acting
> in concert with others; (ii)  the offense
> involved the use, attempt to use, or planned
> or threatened use of violence.

<u>Comment.</u>

The word "movement" seems vague and it is more traditional
in tax cases to speak in terms of a scheme or conduct, the effect
of which is to encourage others to violate the internal revenue
laws.  Similarly, any such conduct or scheme has a potential to

**Defense Exhibit 8-9**

- 9 -

subvert the tax system but the usual treatment is to relate such a scheme or conduct to influencing others and impeding and impairing the Internal Revenue Service which is charged with the assessment and collection of income taxes. See, e.g., United States v. Klein, 247 F. 2d 908, 915 (2d Cir. 1957), cert. denied, 355 U.S. 924 (1958); United States v. Browning, 723 F. 2d 1544 (11th Cir. 1984); United States v. Carruth, 699 F. 2d 1017, 1021 (9th Cir. 1983), cert. denied, 104 S. Ct. 698 (1984).

We have an even more basic concern with the proposed subsection. The revised draft provides for the use of a range on the offense table rather than specifying a particular offense level. We believe that the statutory mandate is to provide precise guidance subject to only a 25 percent range. The proposed language adopts this approach and sets a precise offense level reflecting the nature of the offense.

If you agree, the suggested paragraph should also be substituted for the paragraphs presently in §T212(a), §T213(a)(2) and §T214(a)(3), which also speak in terms of a movement and subverting the tax system, with a range set forth rather than a specific offense level.

**Defense Exhibit 8-10**

- 10 -

§T212.    Willful Failure to File Return, Supply Information, or Pay Tax

This section reads as follows in the draft:

> The base offense level is one level lower than the level in the Tax Table, §T241, corresponding to the deficiency as defined below. If there is no deficiency, or its amount is not established, the base offense level is 6.

> For purposes of this guideline, "deficiency" means the total amount of tax that the taxpayer owed and did not pay, but not less than 10 percent of the amount by which the taxpayer's total income exceeded $20,000.

>> (a)  Specific Offense Characteristic

>> (1)  If the offense was committed in furtherance of or in conjunction with a movement to violate the internal revenue laws, increase by 2 to 4 levels, depending upon the nature of the conduct and its potential to subvert the tax system.

We recommend the following changes:

1.    The term "deficiency" needs to be defined differently for willful failure to pay cases.

2.    The 10 percent minimum should be related to the amount of gross income rather than to total income.

3.    Subsection (a)(1) should be changed so as to correspond to the language we have suggested for §T211(a)(1).

Comment.

1.    Meaning of Deficiency.  The definition of "deficiency" for §T212 may have an anomalous result in that an individual who properly reports his income but is found guilty of willful

**Defense Exhibit 8-11**

- 11 -

failure to pay a modest tax due will be punished more severely than an individual who does not file a return and owes comparatively more in tax.

For example, assume that individual (A) timely files an income tax return, reports $200,000 in gross income, and owes but does not pay $2,000 in taxes.  The computation provides that the "deficiency" will be $18,000 (i.e., 10 percent of ($200,000 - $20,000)) and thereby is at offense level 8.

In contrast, compare individual (B) who earns $60,000 in gross income but files no return and owes $5,000 in tax.  In this instance, the deficiency would be $5,000 and the offense level is 6 because the amount of tax owed is greater than the alternative computation, i.e., $4,000 or 10 percent of ($60,000 - $20,000).

Thus, an individual who properly files a return with a large reported income but a modest amount in taxes owed and not paid could be in a higher offense level than an individual who files no return and owes comparatively more in taxes.

One solution might be to treat a willful failure to pay separately but the guideline should, in any event, cover this possibility.

2.    "Total Income."  The minimum or floor should be 10 per-cent of gross income rather than 10 percent of total income. This change should eliminate any ambiguity since gross income is

**Defense Exhibit 8-12**

- 12 -

a term that is expressly defined in the Code (26 U.S.C., Sec. 61) and it is a concept that has been the subject of a host of cases.

    3.    <u>Specific Offense Characteristics, §T212(a)(1)</u>.  This paragraph is the same as that appearing in §T211(a)(1).  We have suggested substitute language for this paragraph in our discussion of §T211(a)(1).

**Defense Exhibit 8-13**

- 13 -

§T213.    Fraud and False Statements (Under Penalty of Perjury).

The first paragraph of §T213 reads as follows:

> If the offense was committed in order to facili-
> tate evasion of a tax, including a future tax,
> the base offense level is the level in the Tax
> Table, §T241, corresponding to a deficiency of
> 25 percent of the amount by which income was
> understated.  Otherwise, the base offense level
> is 6.

We recommend that this paragraph read as follows:

> If the offense was committed in order to facili-
> tate evasion of a tax, including a tax due in a
> future year, the base offense level is the level
> in the Tax Table, §T241, corresponding to a
> deficiency of 30 percent of the total amount by
> which gross income or taxable income, whichever
> is greater, was understated.  In the case of
> claimed false tax credits or payments, the base
> level is the level in Tax Table §T241, correspond-
> ing to a deficiency of 100 percent of the total
> amount of the false tax credit claimed.  Otherwise
> the base level is 6.

Comment.

1.    "Future Tax."  The phrase future tax is ambiguous and can be read as a reference to a tax not yet adopted.  The proposed amendment clarifies this by referring to a tax due in a future year which we believe is what is intended, i.e., an evasion scheme intended to affect subsequent tax years as well as the charged tax years.

2.    Gross income or taxable income.  The word "income" could lead to at least a surface ambiguity in a case involving false deductions.  Thus, a return could include all properly

**Defense Exhibit 8-14**

- 14 -

reportable income but be false because of claimed false deductions which reduce gross income or taxable income. By relating this alternative to gross income or taxable income it fixes the point at which the standard is applied. We have also suggested a measurement of 30 percent rather than 25 percent.

3.    Tax Credits.   There are instances where the false return item is a claimed tax credit which, unlike tax deductions, will result in a dollar-for-dollar tax reduction. We believe that in such situations the amount of the deficiency for Tax Table §T241 purposes should be 100 percent of the claimed false tax credit.

4.    Specific Offense Characteristic, §T213(a)(2).   This paragraph is the same as that appearing in §T211(a)(1). We have suggested substitute language for this paragraph in our discussion of §T211(a)(1).

**Defense Exhibit 8-15**

- 15 -

§T214.    Aiding, Assisting, Procuring, Counseling, or Advising
Tax Fraud.

The first paragraph of this section reads as follows:

> The base offense level is the level in the Tax
> Table, §T241, corresponding to a deficiency of
> 25 percent of the total amount by which income
> was understated pursuant to the defendant's
> advice or instructions.  If there is no defi-
> ciency, or its amount is not established, the
> base offense level is 6.

We recommend that this paragraph read as follows:

> The base offense level is the level in the Tax
> Table, §T241, corresponding to a deficiency of
> 30 percent of the total amount by which gross
> income or taxable income, whichever is greater,
> was understated as a result of the defendant's
> aid, assistance, procurance, or advice.  In the
> case of claimed false tax credits or payments,
> the base level is the level in Tax Table §T241,
> corresponding to a deficiency of 100 percent of
> the total amount of the false tax credit claimed
> as a result of the defendant's aid, assistance,
> procurance or advice.  If there is no defi-
> ciency, or its amount is not established, the
> base offense level is 6.

Comment.

1.    Deficiency.  In accordance with our prior recommenda-
tion as to a measuring point we have increased the measuring
point from 25 percent to 30 percent of the deficiency.

2.    Income.  We recommend that the phrase "gross income or
taxable income" be used instead of "income" for the same reasons
set forth in our comment 2 on §T213.

3.    Advice or Instructions.  We believe that a more appro-
priate phrase here is "aid, assistance, procurance or advice."

**Defense Exhibit 8-16**

- 16 -

The suggested phrase is meant to make it clear that this section covers the offender who may be totally removed from the direct preparation of a return but sets in motion material which causes a return to be false.  See, for example, United States v. Maius, 378 F. 2d 716 (6th Cir. 1967), cert. denied, 389 U.S. 905 (1967); United States v. Crum, 529 F. 2d 1380 (9th Cir. 1976).

    4.    Tax Credits.  See comment 3 in our discussion of §T213.

    5.    Specific Offense Characteristics, §T214(a)(3).
This paragraph is the same as that appearing in §T211(a)(1).
We have suggested substitute language for this paragraph in our discussion of §T211(a)(1).

**Defense Exhibit 8-17**

- 17 -

§T241.     Tax Table, Revised Draft (p. 138)

Revised Draft.  The tax table provides that the offense level is "17 or above" for offenses where the deficiency is over one million dollars.

Comment.

We understand that this category is meant to give the Court discretion to go above offense level 17 if the Court sees fit to do so but that, in any event, the offense level must be at least 17 on a tax table basis.  If this is correct, we believe that this alternative should be explained in the draft -- it is too cryptic in its present form.  More important, we suggest that you designate the levels for offenses where the deficiency exceeds one million dollars.  Tax cases can involve millions of dollars and if you do not set levels for the gradations, you may well have a disparity in sentences which, of course, is the very thing you are attempting to avoid.  This is particularly important in large dollar cases which generate a lot of publicity and are the subject of public scrutiny and comment.

**Defense Exhibit 8-18**

- 18 -

§T211.    <u>Commentary</u>

In the commentary relating to §T211, the Commission did not utilize the failure to report illegally obtained income as a specific factor for sentencing in tax cases.

The commentary provides as follows:

> Factor 2 (whether the income was lawfully or unlawfully obtained): Inclusion of this factor for deterrence purposes would appear justified because unlawfully obtained income is generally unreported or otherwise difficult to establish. In practice, it appears to have an effect that is significant but difficult to measure. Because its impact is difficult to quantify, and it is substantially equivalent to §Y216, Criminal Purpose, the Commission has elected not to include this factor explicitly in the tax guidelines. Instead, the court is encouraged to rely upon the General Provisions and make the appropriate upward adjustment if faced with this type of conduct.

We recommend that this factor be considered specifically in tax cases and that the commentary be amended to read as follows:

> Factor 2 (whether the income was lawfully or unlawfully obtained): Inclusion of this factor for deterrence purposes is justified because unlawfully obtained income is generally unreported or otherwise difficult to establish. In practice, tax convictions involving illegally obtained income are generally proven by indirect methods of proof, e.g., the net worth method where often the violators resort to the use of nominees and where proof as to source of income is required. In these instances the offense level is to be raised 3 or 6 levels as specified, and in accordance with the criteria set forth in §Y216.

<u>Comment</u>.

**Defense Exhibit 8-19**

- 19 -

The present guidelines are not specific enough on how the Court should react in situations where the unreported income is illegally obtained. Presently, the Court is directed to the General Provisions of the guidelines which state the Court is required "to increase the offense level to reflect the true nature and seriousness of the defendant's conduct." The amount of the increase appears discretionary. We believe that there should be more certainty to the level of punishment for such violators and that the punishment required should be significant.

The tax violations committed by individuals earning income from illegal sources are generally the most significant in terms of unreported income. Establishing these violations is extremely difficult and time consuming. Proof of the tax crime is generally accomplished through the use of the net worth method of proof where the violator very often uses nominees in acquiring assets with the illegal income. As part of a net worth case, the Government must prove a source of income with reasonable certainty and the illegal activity is frequently established as a source of income.

In these instances the punishment after conviction should be significant and predictable to the violator. An offense level increase of 3 to 6 levels will allow the Court to significantly increase the punishment where, as in these instances, the severity of the conduct warrants such punishment.

**Defense Exhibit 8-20**

- 20 -

<u>Commentary, §T211 Factors, Rev. Draft (p. 139)</u>.

The guideline commentary on §T211 does not weigh a violator's use of accounts or transactions outside of the United States as a specific factor in sentencing.  Moreover, the Commission has not, in the guidelines, encouraged the Court to rely upon the General Provisions to make an appropriate upward adjustment of the offense level where such conduct is present.

We believe a specific factor should be added directing an upward adjustment of the offense level in such situations.  We recommend that a "Factor 8" be added as follows:

> Factor 8 (the use of accounts or transactions outside the United States):  Inclusion of this factor for deterrence purposes is justified because the use of offshore tax havens and the structuring of transactions utilizing foreign accounts and transactions are very difficult to detect, investigate and prosecute.  In tax offenses, such conduct is engaged in solely and specifically to accomplish the nonpayment of taxes.  In these instances, the offense level is to be raised 3 to 6 levels.

<u>Comment</u>.

The present guidelines do not address the circumstances where the violator utilizes offshore tax havens with their secrecy provisions to accomplish the tax fraud.  An increasing number of tax offenses involve the use of tax havens where accounts and transactions are structured which utilize the secrecy laws of the tax haven jurisdiction.  These cases are much more difficult to

**Defense Exhibit 8-21**

- 21 -

detect, investigate and prosecute.  They present complex issues of foreign evidence creating investigative and evidentiary problems. Such cases require the expenditure of an enormous amount of time and resources.

We believe that an increase in the offense level is warranted when offshore tax havens are used as part of the scheme to evade taxes or to file false and fraudulent income tax returns.  Such conduct by the violator justifies an increase in the offense level of from 3 to 6 levels.

In the absence of providing for a specific factor offense level increase, the Commission should amend the guidelines and encourage the Court to utilize the General Provisions to make an appropriate upward adjustment in the offense level where offshore tax havens are used to accomplish the violation.

**Defense Exhibit 8-22**

THE ATTACHED PUBLIC COMMENT IS
DESIGNATED "GENERAL INTEREST."
ALL COMMISSIONERS AND STAFF
HAVE RECEIVED COPIES.

**Defense Exhibit 8-23**