# Defense Exhibit 9

# UNITED STATES SENTENCING COMMISSION
# GUIDELINES MANUAL



**Defense Exhibit 9-1**

**Defense Exhibit 9-2**

**UNITED STATES SENTENCING COMMISSION**
1331 PENNSYLVANIA AVENUE, NW
SUITE 1400
WASHINGTON, D.C. 20004
(202) 662-8800



UNITED STATES SENTENCING COMMISSION

*William W. Wilkins, Jr., Chairman*

*Michael K. Block*

*Stephen G. Breyer*

*Helen G. Corrothers*

*George E. MacKinnon*

*Ilene H. Nagel*

*Paul H. Robinson*

*Benjamin F. Baer (ex officio)*

*Ronald L. Gainer (ex officio)*

**Note:  This publication contains the exact text of the October 1987 Guidelines Manual issued by the Sentencing Commission.**

Defense Exhibit 9-3

**Defense Exhibit 9-4**

## TABLE OF CONTENTS

Page

CHAPTER ONE:  Introduction and General Principles_____ 1.1

Part A - Introduction_____ 1.1
   1.  Authority_____ 1.1
   2.  The Statutory Mission_____ 1.1
   3.  The Basic Approach_____ 1.2
   4.  The Guidelines' Resolution of Major Issues_____ 1.5
   5.  A Concluding Note_____ 1.12

Part B - General Application Principles_____ 1.13

CHAPTER TWO:  Offense Conduct_____ 2.1

Part A - Offenses Against the Person_____ 2.3
   1.  Homicide_____ 2.3
   2.  Assault_____ 2.4
   3.  Criminal Sexual Abuse_____ 2.8
   4.  Kidnapping, Abduction, or Unlawful Restraint_____ 2.11
   5.  Air Piracy_____ 2.12
   6.  Threatening Communications_____ 2.13

Part B - Offenses Involving Property_____ 2.15
   1.  Theft, Embezzlement, Receipt of Stolen Property, and
       Property Destruction_____ 2.15
   2.  Burglary and Trespass_____ 2.19
   3.  Robbery, Extortion, and Blackmail_____ 2.21
   4.  Commercial Bribery and Kickbacks_____ 2.25
   5.  Counterfeiting, Forgery, and Infringement of Copyright
       or Trademark_____ 2.27
   6.  Motor Vehicle Identification Numbers_____ 2.28

Part C - Offenses Involving Public Officials_____ 2.31

Part D - Offenses Involving Drugs_____ 2.37
   1.  Unlawful Manufacturing, Importing, Exporting, Trafficking,
       or Possession;  Continuing Criminal Enterprise_____ 2.37
   2.  Unlawful Possession_____ 2.51
   3.  Regulatory Violations_____ 2.52

Part E - Offenses Involving Criminal Enterprises and Racketeering_____ 2.55
   1.  Racketeering_____ 2.55
   2.  Extortionate Extension of Credit_____ 2.57
   3.  Gambling_____ 2.59
   4.  Trafficking in Contraband Cigarettes_____ 2.60
   5.  Labor Racketeering_____ 2.60

Part F - Offenses Involving Fraud or Deceit_____ 2.67

Part G - Offenses Involving Prostitution, Sexual Exploitation of Minors,
      and Obscenity_____ 2.73
   1.  Prostitution_____ 2.73
   2.  Sexual Exploitation of a Minor_____ 2.74
   3.  Obscenity_____ 2.75

October, 1987

# Defense Exhibit 9-5

Part H - Offenses Involving Individual Rights _____ 2.77
   1.   Civil Rights _____ 2.77
   2.   Political Rights _____ 2.81
   3.   Privacy and Eavesdropping _____ 2.82
   4.   Peonage, Involuntary Servitude, and Slave Trade _____ 2.83

Part I - [Not Used]

Part J - Offenses Involving the Administration of Justice _____ 2.85

Part K - Offenses Involving Public Safety _____ 2.93
   1.   Explosives and Arson _____ 2.93
   2.   Firearms _____ 2.96
   3.   Transportation of Hazardous Materials _____ 2.100

Part L - Offenses Involving Immigration, Naturalization, and Passports _____ 2.101
   1.   Immigration _____ 2.101
   2.   Naturalization and Passports _____ 2.103

Part M - Offenses Involving National Defense _____ 2.105
   1.   Treason _____ 2.105
   2.   Sabotage _____ 2.105
   3.   Espionage and Related Offenses _____ 2.106
   4.   Evasion of Military Service _____ 2.111
   5.   Prohibited Financial Transactions and Exports _____ 2.111
   6.   Atomic Energy _____ 2.113

Part N - Offenses Involving Food, Drugs, Agricultural Products,
      and Odometer Laws _____ 2.115
   1.   Tampering with Consumer Products _____ 2.115
   2.   Food, Drugs, and Agricultural Products _____ 2.116
   3.   Odometer Laws and Regulations _____ 2.117

Part O - [Not Used]

Part P - Offenses Involving Prisons and Correctional Facilities _____ 2.119

Part Q - Offenses Involving the Environment _____ 2.123
   1.   Environment _____ 2.123
   2.   Conservation and Wildlife _____ 2.128

Part R - Antitrust Offenses _____ 2.131

Part S - Money Laundering and Monetary Transaction Reporting _____ 2.135

Part T - Offenses Involving Taxation _____ 2.139
   1.   Income Taxes _____ 2.139
   2.   Alcohol and Tobacco Taxes _____ 2.147
   3.   Customs Taxes _____ 2.148
   4.   Tax Table _____ 2.150

Part U - [Not Used]

Part V - [Not Used]

Part W - [Not Used]

October; 1987

**Defense Exhibit 9-6**

Part X - Other Offenses_____ 2.151
   1.   Conspiracies, Attempts, Solicitations_____ 2.151
   2.   Aiding and Abetting_____ 2.152
   3.   Accessory After the Fact_____ 2.153
   4.   Misprision of Felony_____ 2.153
   5.   All other Offenses_____ 2.154

Part Y - [Not Used]

Part Z - [Not Used]

CHAPTER THREE:  Adjustments_____ 3.1

Part A - Victim-Related Adjustments_____ 3.1
Part B - Role in the Offense_____ 3.3
Part C - Obstruction_____ 3.7
Part D - Multiple Counts_____ 3.9
Part E - Acceptance of Responsibility_____ 3.21

CHAPTER FOUR:  Criminal History And Criminal Livelihood_____4.1

Part A - Criminal History_____ 4.1
Part B - Career Offenders and Criminal Livelihood_____ 4.11

CHAPTER FIVE:  Determining The Sentence_____ 5.1

Part A - Sentencing Table_____ 5.2
Part B - Probation_____ 5.5
Part C - Imprisonment_____ 5.11
Part D - Supervised Release_____ 5.15
Part E - Restitution, Fines, Assessments, Forfeitures_____ 5.17
Part F - Sentencing Options_____ 5.23
Part G - Implementing the Total Sentence of Imprisonment_____ 5.27
Part H - Specific Offender Characteristics_____ 5.29
Part I - [not used]
Part J - Relief From Disability Pertaining to Certain Employment_____ 5.33
Part K - Departures_____ 5.35
   1.   Substantial Assistance to Authorities_____ 5.35
   2.   General Provisions_____ 5.36

CHAPTER SIX:  Sentencing Procedures And Plea Agreements_____ 6.1

Part A - Sentencing Procedures_____ 6.1
Part B - Plea Agreements_____ 6.5

CHAPTER SEVEN:  Violations Of Probation And Supervised Release_____ 7.1

APPENDIX A:  Statutory Index _____ A.1

APPENDIX B:  Authorizing Legislation And Related Sentencing
           Provisions _____ B.1

October, 1987

**Defense Exhibit 9-7**

**Defense Exhibit 9-8**

CHAPTER ONE - INTRODUCTION
AND GENERAL APPLICATION PRINCIPLES

PART A - INTRODUCTION

1.  **Authority**

The United States Sentencing Commission ("Commission") is an independent agency in the judicial branch composed of seven voting and two non-voting, ex officio members. Its principal purpose is to establish sentencing policies and practices for the federal criminal justice system that will assure the ends of justice by promulgating detailed guidelines prescribing the appropriate sentences for offenders convicted of federal crimes.

The guidelines and policy statements promulgated by the Commission are issued pursuant to Section 994(a) of Title 28, United States Code.

2.  **The Statutory Mission**

The Comprehensive Crime Control Act of 1984 foresees guidelines that will further the basic purposes of criminal punishment, i.e., deterring crime, incapacitating the offender, providing just punishment, and rehabilitating the offender. It delegates to the Commission broad authority to review and rationalize the federal sentencing process.

The statute contains many detailed instructions as to how this determination should be made, but the most important of them instructs the Commission to create categories of offense behavior and offender characteristics. An offense behavior category might consist, for example, of "bank robbery/committed with a gun/$2500 taken." An offender characteristic category might be "offender with one prior conviction who was not sentenced to imprisonment." The Commission is required to prescribe guideline ranges that specify an appropriate sentence for each class of convicted persons, to be determined by coordinating the offense behavior categories with the offender characteristic categories. The statute contemplates the guidelines will establish a range of sentences for every coordination of categories. Where the guidelines call for imprisonment, the range must be narrow: the maximum imprisonment cannot exceed the minimum by more than the greater of 25 percent or six months. 28 U.S.C. § 994(b)(2).

The sentencing judge must select a sentence from within the guideline range. If, however, a particular case presents atypical features, the Act allows the judge to depart from the guidelines and sentence outside the range. In that case, the judge must specify reasons for departure. 18 U.S.C. § 3553(b). If the court sentences within the guideline range, an appellate court may review the sentence to see if the guideline was correctly applied. If the judge departs from the guideline range, an appellate court may review the reasonableness of the departure. 18 U.S.C. § 3742. The Act requires the offender to serve virtually all of any prison sentence imposed, for it abolishes parole and substantially restructures good behavior adjustments.

The law requires the Commission to send its initial guidelines to Congress by April 13, 1987, and under the present statute they take effect automatically on November 1, 1987. Pub. L. No. 98-473, § 235, reprinted at 18 U.S.C. § 3551. The Commission may submit guideline amendments each year to Congress between the beginning of a regular

1.1                                                                    October, 1987

**Defense Exhibit 9-9**

session and May 1.    The amendments will take effect automatically 180 days after submission unless a law is enacted to the contrary.  28 U.S.C. § 994(p).

The Commission, with the aid of its legal and research staff, considerable public testimony, and written commentary, has developed an initial set of guidelines which it now transmits to Congress.    The Commission emphasizes, however, that it views the guideline-writing process as evolutionary.    It expects, and the governing statute anticipates, that continuing research, experience, and analysis will result in modifications and revisions to the guidelines by submission of amendments to Congress.    To this end, the Commission is established as a permanent agency to monitor sentencing practices in the federal courts throughout the nation.

### 3.    The Basic Approach (Policy Statement)

To understand these guidelines and the rationale that underlies them, one must begin with the three objectives that Congress, in enacting the new sentencing law, sought to achieve.    Its basic objective was to enhance the ability of the criminal justice system to reduce crime through an effective, fair sentencing system. To achieve this objective, Congress first sought honesty in sentencing.    It sought to avoid the confusion and implicit deception that arises out of the present sentencing system which requires a judge to impose an indeterminate sentence that is automatically reduced in most cases by "good time" credits.    In addition, the parole commission is permitted to determine how much of the remainder of any prison sentence an offender actually will serve.    This usually results in a substantial reduction in the effective length of the sentence imposed, with defendants often serving only about one-third of the sentence handed down by the court.

Second, Congress sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders. Third, Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity.

Honesty is easy to achieve:    The abolition of parole makes the sentence imposed by the court the sentence the offender will serve.    There is a tension, however, between the mandate of uniformity (treat similar cases alike) and the mandate of proportionality (treat different cases differently) which, like the historical tension between law and equity, makes it difficult to achieve both goals simultaneously.    Perfect uniformity -- sentencing every offender to five years -- destroys proportionality.    Having only a few simple categories of crimes would make the guidelines uniform and easy to administer, but might lump together offenses that are different in important respects.    For example, a single category for robbery that lumps together armed and unarmed robberies, robberies with and without injuries, robberies of a few dollars and robberies of millions, is far too broad.

At the same time, a sentencing system tailored to fit every conceivable wrinkle of each case can become unworkable and seriously compromise the certainty of punishment and its deterrent effect.    A bank robber with (or without) a gun, which the robber kept hidden (or brandished), might have frightened (or merely warned), injured seriously (or less seriously), tied up (or simply pushed) a guard, a teller or a customer, at night (or at noon), for a bad (or arguably less bad) motive, in an effort to obtain money for other crimes (or for other purposes), in the company of a few (or many) other robbers, for the first (or fourth) time that day, while sober (or under the influence of drugs or alcohol), and so forth.

October, 1987

# Defense Exhibit 9-10

The list of potentially relevant features of criminal behavior is long; the fact that they can occur in multiple combinations means that the list of possible permutations of factors is virtually endless. The appropriate relationships among these different factors are exceedingly difficult to establish, for they are often context specific. Sentencing courts do not treat the occurrence of a simple bruise identically in all cases, irrespective of whether that bruise occurred in the context of a bank robbery or in the context of a breach of peace. This is so, in part, because the risk that such a harm will occur differs depending on the underlying offense with which it is connected (and therefore may already be counted, to a different degree, in the punishment for the underlying offense); and also because, in part, the relationship between punishment and multiple harms is not simply additive. The relation varies, depending on how much other harm has occurred. (Thus, one cannot easily assign points for each kind of harm and simply add them up, irrespective of context and total amounts.)

The larger the number of subcategories, the greater the complexity that is created and the less workable the system. Moreover, the subcategories themselves, sometimes too broad and sometimes too narrow, will apply and interact in unforeseen ways to unforeseen situations, thus failing to cure the unfairness of a simple, broad category system. Finally, and perhaps most importantly, probation officers and courts, in applying a complex system of subcategories, would have to make a host of decisions about whether the underlying facts are sufficient to bring the case within a particular subcategory. The greater the number of decisions required and the greater their complexity, the greater the risk that different judges will apply the guidelines differently to situations that, in fact, are similar, thereby reintroducing the very disparity that the guidelines were designed to eliminate.

In view of the arguments, it is tempting to retreat to the simple, broad-category approach and to grant judges the discretion to select the proper point along a broad sentencing range. Obviously, however, granting such broad discretion risks correspondingly broad disparity in sentencing, for different courts may exercise their discretionary powers in different ways. That is to say, such an approach risks a return to the wide disparity that Congress established the Commission to limit.

In the end, there is no completely satisfying solution to this practical stalemate. The Commission has had to simply balance the comparative virtues and vices of broad, simple categorization and detailed, complex subcategorization, and within the constraints established by that balance, minimize the discretionary powers of the sentencing court. Any ultimate system will, to a degree, enjoy the benefits and suffer from the drawbacks of each approach.

A philosophical problem arose when the Commission attempted to reconcile the differing perceptions of the purposes of criminal punishment. Most observers of the criminal law agree that the ultimate aim of the law itself, and of punishment in particular, is the control of crime. Beyond this point, however, the consensus seems to break down. Some argue that appropriate punishment should be defined primarily on the basis of the moral principle of "just deserts." Under this principle, punishment should be scaled to the offender's culpability and the resulting harms. Thus, if a defendant is less culpable, the defendant deserves less punishment. Others argue that punishment should be imposed primarily on the basis of practical "crime control" considerations. Defendants sentenced under this scheme should receive the punishment that most effectively lessens the likelihood of future crime, either by deterring others or incapacitating the defendant.

Adherents of these points of view have urged the Commission to choose between them, to accord one primacy over the other. Such a choice would be profoundly difficult. The relevant literature is vast, the arguments deep, and each point of view has much to be said in its favor.

October, 1987

**Defense Exhibit 9-11**

A clear-cut Commission decision in favor of one of these approaches would diminish the chance that the guidelines would find the widespread acceptance they need for effective implementation. As a practical matter, in most sentencing decisions both philosophies may prove consistent with the same result.

For now, the Commission has sought to solve both the practical and philosophical problems of developing a coherent sentencing system by taking an empirical approach that uses data estimating the existing sentencing system as a starting point. It has analyzed data drawn from 10,000 presentence investigations, crimes as distinguished in substantive criminal statutes, the United States Parole Commission's guidelines and resulting statistics, and data from other relevant sources, in order to determine which distinctions are important in present practice. After examination, the Commission has accepted, modified, or rationalized the more important of these distinctions.

This empirical approach has helped the Commission resolve its practical problem by defining a list of relevant distinctions that, although of considerable length, is short enough to create a manageable set of guidelines. Existing categories are relatively broad and omit many distinctions that some may believe important, yet they include most of the major distinctions that statutes and presentence data suggest make a significant difference in sentencing decisions. Important distinctions that are ignored in existing practice probably occur rarely. A sentencing judge may take this unusual case into account by departing from the guidelines.

The Commission's empirical approach has also helped resolve its philosophical dilemma. Those who adhere to a just deserts philosophy may concede that the lack of moral consensus might make it difficult to say exactly what punishment is deserved for a particular crime, specified in minute detail. Likewise, those who subscribe to a philosophy of crime control may acknowledge that the lack of sufficient, readily available data might make it difficult to say exactly what punishment will best prevent that crime. Both groups might therefore recognize the wisdom of looking to those distinctions that judges and legislators have in fact made over the course of time. These established distinctions are ones that the community believes, or has found over time, to be important from either a moral or crime-control perspective.

The Commission has not simply copied estimates of existing practice as revealed by the data (even though establishing offense values on this basis would help eliminate disparity, for the data represent averages). Rather, it has departed from the data at different points for various important reasons. Congressional statutes, for example, may suggest or require departure, as in the case of the new drug law that imposes increased and mandatory minimum sentences. In addition, the data may reveal inconsistencies in treatment, such as punishing economic crime less severely than other apparently equivalent behavior.

Despite these policy-oriented departures from present practice, the guidelines represent an approach that begins with, and builds upon, empirical data. The guidelines will not please those who wish the Commission to adopt a single philosophical theory and then work deductively to establish a simple and perfect set of categorizations and distinctions. The guidelines may prove acceptable, however, to those who seek more modest, incremental improvements in the status quo, who believe the best is often the enemy of the good, and who recognize that these initial guidelines are but the first step in an evolutionary process. After spending considerable time and resources exploring alternative approaches, the Commission has developed these guidelines as a practical effort toward the achievement of a more honest, uniform, equitable, and therefore effective, sentencing system.

1.4

October, 1987

# Defense Exhibit 9-12

**4.    The Guidelines' Resolution of Major Issues (Policy Statement)**

The guideline-writing process has required the Commission to resolve a host of important policy questions, typically involving rather evenly balanced sets of competing considerations. As an aid to understanding the guidelines, this introduction will briefly discuss several of those issues. Commentary in the guidelines explains others.

(a)    Real Offense vs. Charge Offense Sentencing.

One of the most important questions for the Commission to decide was whether to base sentences upon the actual conduct in which the defendant engaged regardless of the charges for which he was indicted or convicted ("real offense" sentencing), or upon the conduct that constitutes the elements of the offense with which the defendant was charged and of which he was convicted ("charge offense" sentencing). A bank robber, for example, might have used a gun, frightened bystanders, taken $50,000, injured a teller, refused to stop when ordered, and raced away damaging property during escape. A pure real offense system would sentence on the basis of all identifiable conduct. A pure charge offense system would overlook some of the harms that did not constitute statutory elements of the offenses of which the defendant was convicted.

The Commission initially sought to develop a real offense system. After all, the present sentencing system is, in a sense, a real offense system. The sentencing court (and the parole commission) take account of the conduct in which the defendant actually engaged, as determined in a presentence report, at the sentencing hearing, or before a parole commission hearing officer. The Commission's initial efforts in this direction, carried out in the spring and early summer of 1986, proved unproductive mostly for practical reasons. To make such a system work, even to formalize and rationalize the status quo, would have required the Commission to decide precisely which harms to take into account, how to add them up, and what kinds of procedures the courts should use to determine the presence or absence of disputed factual elements. The Commission found no practical way to combine and account for the large number of diverse harms arising in different circumstances; nor did it find a practical way to reconcile the need for a fair adjudicatory procedure with the need for a speedy sentencing process, given the potential existence of hosts of adjudicated "real harm" facts in many typical cases. The effort proposed as a solution to these problems required the use of, for example, quadratic roots and other mathematical operations that the Commission considered too complex to be workable, and, in the Commission's view, risked return to wide disparity in practice.

The Commission therefore abandoned the effort to devise a "pure" real offense system and instead experimented with a "modified real offense system", which it published for public comment in a September 1986 preliminary draft.

This version also foundered in several major respects on the rock of practicality. It was highly complex and its mechanical rules for adding harms (e.g., bodily injury added the same punishment irrespective of context) threatened to work considerable unfairness. Ultimately, the Commission decided that it could not find a practical or fair and efficient way to implement either a pure or modified real offense system of the sort it originally wanted, and it abandoned that approach.

The Commission, in its January 1987 Revised Draft and the present guidelines, has moved closer to a "charge offense" system. The system is not, however, pure; it has a number of real elements. For one thing, the hundreds of overlapping and duplicative statutory provisions that

# Defense Exhibit 9-13

make up the federal criminal law have forced the Commission to write guidelines that are descriptive of generic conduct rather than tracking purely statutory language. For another, the guidelines, both through specific offense characteristics and adjustments, take account of a number of important, commonly occurring real offense elements such as role in the offense, the presence of a gun, or the amount of money actually taken.

Finally, it is important not to overstate the difference in practice between a real and a charge offense system. The federal criminal system, in practice, deals mostly with drug offenses, bank robberies and white collar crimes (such as fraud, embezzlement, and bribery). For the most part, the conduct that an indictment charges approximates the real and relevant conduct in which the offender actually engaged.

The Commission recognizes its system will not completely cure the problems of a real offense system. It may still be necessary, for example, for a court to determine some particular real facts that will make a difference to the sentence. Yet, the Commission believes that the instances of controversial facts will be far fewer; indeed, there will be few enough so that the court system will be able to devise fair procedures for their determination. See United States v. Fatico, 579 F.2d 707 (2d Cir.1978) (permitting introduction of hearsay evidence at sentencing hearing under certain conditions), on remand, 458 F. Supp. 388 (E.D.N.Y. 1978), aff'd, 603 F.2d 1053 (2d Cir. 1979) (holding that the government need not prove facts at sentencing hearing beyond a reasonable doubt), cert. denied, 444 U.S. 1073 (1980).

The Commission also recognizes that a charge offense system has drawbacks of its own. One of the most important is its potential to turn over to the prosecutor the power to determine the sentence by increasing or decreasing the number (or content) of the counts in an indictment. Of course, the defendant's actual conduct (that which the prosecutor can prove in court) imposes a natural limit upon the prosecutor's ability to increase a defendant's sentence. Moreover, the Commission has written its rules for the treatment of multicount convictions with an eye toward eliminating unfair treatment that might flow from count manipulation. For example, the guidelines treat a three-count indictment, each count of which charges sale of 100 grams of heroin, or theft of $10,000, the same as a single-count indictment charging sale of 300 grams of heroin or theft of $30,000. Further, a sentencing court may control any inappropriate manipulation of the indictment through use of its power to depart from the specific guideline sentence. Finally, the Commission will closely monitor problems arising out of count manipulation and will make appropriate adjustments should they become necessary.

(b) Departures.

The new sentencing statute permits a court to depart from a guideline-specified sentence only when it finds "an aggravating or mitigating circumstance. . . that was not adequately taken into consideration by the Sentencing Commission . . .". 18 U.S.C. § 3553(b). Thus, in principle, the Commission, by specifying that it had adequately considered a particular factor, could prevent a court from using it as grounds for departure. In this initial set of guidelines, however, the Commission does not so limit the courts' departure powers. The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted. Section 5H1.10 (Race, Sex, National Origin, Creed, Religion, Socio-Economic Status), the third sentence of §5H1.4, and the last sentence of §5K2.12, list a few factors that the court cannot take into account as grounds for departure. With those specific exceptions, however, the

October, 1987

# Defense Exhibit 9-14

Commission does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case.

The Commission has adopted this departure policy for two basic reasons. First is the difficulty of foreseeing and capturing a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision. The Commission also recognizes that in the initial set of guidelines it need not do so. The Commission is a permanent body, empowered by law to write and rewrite guidelines, with progressive changes, over many years. By monitoring when courts depart from the guidelines and by analyzing their stated reasons for doing so, the Commission, over time, will be able to create more accurate guidelines that specify precisely where departures should and should not be permitted.

Second, the Commission believes that despite the courts' legal freedom to depart from the guidelines, they will not do so very often. This is because the guidelines, offense by offense, seek to take account of those factors that the Commission's sentencing data indicate make a significant difference in sentencing at the present time. Thus, for example, where the presence of actual physical injury currently makes an important difference in final sentences, as in the case of robbery, assault, or arson, the guidelines specifically instruct the judge to use this factor to augment the sentence. Where the guidelines do not specify an augmentation or diminution, this is generally because the sentencing data do not permit the Commission, at this time, to conclude that the factor is empirically important in relation to the particular offense. Of course, a factor (say physical injury) may nonetheless sometimes occur in connection with a crime (such as fraud) where it does not often occur. If, however, as the data indicate, such occurrences are rare, they are precisely the type of events that the court's departure powers were designed to cover -- unusual cases outside the range of the more typical offenses for which the guidelines were designed. Of course, the Commission recognizes that even its collection and analysis of 10,000 presentence reports are an imperfect source of data sentencing estimates. Rather than rely heavily at this time upon impressionistic accounts, however, the Commission believes it wiser to wait and collect additional data from our continuing monitoring process that may demonstrate how the guidelines work in practice before further modification.

It is important to note that the guidelines refer to three different kinds of departure. The first kind, which will most frequently be used, is in effect an interpolation between two adjacent, numerically oriented guideline rules. A specific offense characteristic, for example, might require an increase of four levels for serious bodily injury but two levels for bodily injury. Rather than requiring a court to force middle instances into either the "serious" or the "simple" category, the guideline commentary suggests that the court may interpolate and select a midpoint increase of three levels. The Commission has decided to call such an interpolation a "departure" in light of the legal views that a guideline providing for a range of increases in offense levels may violate the statute's 25 percent rule (though others have presented contrary legal arguments). Since interpolations are technically departures, the courts will have to provide reasons for their selection, and it will be subject to review for "reasonableness" on appeal. The Commission believes, however, that a simple reference by the court to the "mid-category" nature of the facts will typically provide sufficient reason. It does not foresee serious practical problems arising out of the application of the appeal provisions to this form of departure.

The second kind involves instances in which the guidelines provide specific guidance for departure, by analogy or by other numerical or non-numerical suggestions. For example, the commentary to §2G1.1 (Transportation for Prostitution), recommends a downward adjustment of eight levels where commercial purpose was not involved. The Commission intends such suggestions as policy guidance for the courts. The Commission expects that most departures

1.7

# Defense Exhibit 9-15

will reflect the suggestions, and that the courts of appeals may prove more likely to find departures "unreasonable" where they fall outside suggested levels.

A third kind of departure will remain unguided. It may rest upon grounds referred to in Chapter 5, Part H, or on grounds not mentioned in the guidelines. While Chapter 5, Part H lists factors that the Commission believes may constitute grounds for departure, those suggested grounds are not exhaustive. The Commission recognizes that there may be other grounds for departure that are not mentioned; it also believes there may be cases in which a departure outside suggested levels is warranted. In its view, however, such cases will be highly unusual.

(c) Plea Agreements.

Nearly ninety percent of all federal criminal cases involve guilty pleas, and many of these cases involve some form of plea agreement. Some commentators on early Commission guideline drafts have urged the Commission not to attempt any major reforms of the agreement process, on the grounds that any set of guidelines that threatens to radically change present practice also threatens to make the federal system unmanageable. Others, starting with the same facts, have argued that guidelines which fail to control and limit plea agreements would leave untouched a "loophole" large enough to undo the good that sentencing guidelines may bring. Still other commentators make both sets of arguments.

The Commission has decided that these initial guidelines will not, in general, make significant changes in current plea agreement practices. The court will accept or reject any such agreements primarily in accordance with the rules set forth in Fed.R.Crim.P. 11(e). The Commission will collect data on the courts' plea practices and will analyze this information to determine when and why the courts accept or reject plea agreements. In light of this information and analysis, the Commission will seek to further regulate the plea agreement process as appropriate.

The Commission nonetheless expects the initial set of guidelines to have a positive, rationalizing impact upon plea agreements for two reasons. First, the guidelines create a clear, definite expectation in respect to the sentence that a court will impose if a trial takes place. Insofar as a prosecutor and defense attorney seek to agree about a likely sentence or range of sentences, they will no longer work in the dark. This fact alone should help to reduce irrationality in respect to actual sentencing outcomes. Second, the guidelines create a norm to which judges will likely refer when they decide whether, under Rule 11(e), to accept or to reject a plea agreement or recommendation. Since they will have before them the norm, the relevant factors (as disclosed in the plea agreement), and the reason for the agreement, they will find it easier than at present to determine whether there is sufficient reason to accept a plea agreement that departs from the norm.

(d) Probation and Split Sentences.

The statute provides that the guidelines are to "reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense . . ." 28 U.S.C. § 994(j). Under present sentencing practice, courts sentence to probation an inappropriately high percentage of offenders guilty of certain economic crimes, such as theft, tax evasion, antitrust offenses, insider trading, fraud, and embezzlement, that in the Commission's view are "serious." If the guidelines were to permit courts to impose probation instead of prison in many or all such cases, the present sentences would continue to be ineffective.

October, 1987

# Defense Exhibit 9-16

The Commission's solution to this problem has been to write guidelines that classify as "serious" (and therefore subject to mandatory prison sentences) many offenses for which probation is now frequently given. At the same time, the guidelines will permit the sentencing court to impose short prison terms in many such cases. The Commission's view is that the definite prospect of prison, though the term is short, will act as a significant deterrent to many of these crimes, particularly when compared with the status quo where probation, not prison, is the norm.

More specifically, the guidelines work as follows in respect to a first offender. For offense levels one through six, the sentencing court may elect to sentence the offender to probation (with or without confinement conditions) or to a prison term. For offense levels seven through ten, the court may substitute probation for a prison term, but the probation must include confinement conditions (community confinement or intermittent confinement). For offense levels eleven and twelve, the court must impose at least one half the minimum confinement sentence in the form of prison confinement, the remainder to be served on supervised release with a condition of community confinement. The Commission, of course, has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures.

(e) Multi-Count Convictions.

The Commission, like other sentencing commissions, has found it particularly difficult to develop rules for sentencing defendants convicted of multiple violations of law, each of which makes up a separate count in an indictment. The reason it is difficult is that when a defendant engages in conduct that causes several harms, each additional harm, even if it increases the extent to which punishment is warranted, does not necessarily warrant a proportionate increase in punishment. A defendant who assaults others during a fight, for example, may warrant more punishment if he injures ten people than if he injures one, but his conduct does not necessarily warrant ten times the punishment. If it did, many of the simplest offenses, for reasons that are often fortuitous, would lead to life sentences of imprisonment-- sentences that neither "just deserts" nor "crime control" theories of punishment would find justified.

Several individual guidelines provide special instructions for increasing punishment when the conduct that is the subject of that count involves multiple occurrences or has caused several harms. The guidelines also provide general rules for aggravating punishment in light of multiple harms charged separately in separate counts. These rules may produce occasional anomalies, but normally they will permit an appropriate degree of aggravation of punishment when multiple offenses that are the subjects of separate counts take place.

These rules are set out in Chapter Three, Part D. They essentially provide: (1) When the conduct involves fungible items, e.g., separate drug transactions or thefts of money, the amounts are added and the guidelines apply to the total amount. (2) When nonfungible harms are involved, the offense level for the most serious count is increased (according to a somewhat diminishing scale) to reflect the existence of other counts of conviction.

The rules have been written in order to minimize the possibility that an arbitrary casting of a single transaction into several counts will produce a longer sentence. In addition, the sentencing court will have adequate power to prevent such a result through departures where necessary to produce a mitigated sentence.

October, 1987

# Defense Exhibit 9-17

(f) Regulatory Offenses.

Regulatory statutes, though primarily civil in nature, sometimes contain criminal provisions in respect to particularly harmful activity. Such criminal provisions often describe not only substantive offenses, but also more technical, administratively-related offenses such as failure to keep accurate records or to provide requested information. These criminal statutes pose two problems. First, which criminal regulatory provisions should the Commission initially consider, and second, how should it treat technical or administratively-related criminal violations?

In respect to the first problem, the Commission found that it cannot comprehensively treat all regulatory violations in the initial set of guidelines. There are hundreds of such provisions scattered throughout the United States Code. To find all potential violations would involve examination of each individual federal regulation. Because of this practical difficulty, the Commission has sought to determine, with the assistance of the Department of Justice and several regulatory agencies, which criminal regulatory offenses are particularly important in light of the need for enforcement of the general regulatory scheme. The Commission has sought to treat these offenses in these initial guidelines. It will address the less common regulatory offenses in the future.

In respect to the second problem, the Commission has developed a system for treating technical recordkeeping and reporting offenses, dividing them into four categories.

First, in the simplest of cases, the offender may have failed to fill out a form intentionally, but without knowledge or intent that substantive harm would likely follow. He might fail, for example, to keep an accurate record of toxic substance transport, but that failure may not lead, nor be likely to lead, to the release or improper treatment of any toxic substance. Second, the same failure may be accompanied by a significant likelihood that substantive harm will occur; it may make a release of a toxic substance more likely. Third, the same failure may have led to substantive harm. Fourth, the failure may represent an effort to conceal a substantive harm that has occurred.

The structure of a typical guideline for a regulatory offense is as follows:

(1) The guideline provides a low base offense level (6) aimed at the first type of recordkeeping or reporting offense. It gives the court the legal authority to impose a punishment ranging from probation up to six months of imprisonment.

(2) Specific offense characteristics designed to reflect substantive offenses that do occur (in respect to some regulatory offenses), or that are likely to occur, increase the offense level.

(3) A specific offense characteristic also provides that a recordkeeping or reporting offense that conceals a substantive offense will be treated like the substantive offense.

The Commission views this structure as an initial effort. It may revise its approach in light of further experience and analysis of regulatory crimes.

(g) Sentencing Ranges.

In determining the appropriate sentencing ranges for each offense, the Commission began by estimating the average sentences now being served within each category. It also examined

1.10                                                                October, 1987

**Defense Exhibit 9-18**

the sentence specified in congressional statutes, in the parole guidelines, and in other relevant, analogous sources. The Commission's forthcoming detailed report will contain a comparison between estimates of existing sentencing practices and sentences under the guidelines.

While the Commission has not considered itself bound by existing sentencing practice, it has not tried to develop an entirely new system of sentencing on the basis of theory alone. Guideline sentences in many instances will approximate existing practice, but adherence to the guidelines will help to eliminate wide disparity. For example, where a high percentage of persons now receive probation, a guideline may include one or more specific offense characteristics in an effort to distinguish those types of defendants who now receive probation from those who receive more severe sentences. In some instances, short sentences of incarceration for all offenders in a category have been substituted for a current sentencing practice of very wide variability in which some defendants receive probation while others receive several years in prison for the same offense. Moreover, inasmuch as those who currently plead guilty often receive lesser sentences, the guidelines also permit the court to impose lesser sentences on those defendants who accept responsibility and those who cooperate with the government.

The Commission has also examined its sentencing ranges in light of their likely impact upon prison population. Specific legislation, such as the new drug law and the career offender provisions of the sentencing law, require the Commission to promulgate rules that will lead to substantial prison population increases. These increases will occur irrespective of any guidelines. The guidelines themselves, insofar as they reflect policy decisions made by the Commission (rather than legislated mandatory minimum, or career offender, sentences), will lead to an increase in prison population that computer models, produced by the Commission and the Bureau of Prisons, estimate at approximately 10 percent, over a period of ten years.

    (h)   The Sentencing Table.

The Commission has established a sentencing table. For technical and practical reasons it has 43 levels. Each row in the table contains levels that overlap with the levels in the preceding and succeeding rows. By overlapping the levels, the table should discourage unnecessary litigation. Both prosecutor and defendant will realize that the difference between one level and another will not necessarily make a difference in the sentence that the judge imposes. Thus, little purpose will be served in protracted litigation trying to determine, for example, whether $10,000 or $11,000 was obtained as a result of a fraud. At the same time, the rows work to increase a sentence proportionately. A change of 6 levels roughly doubles the sentence irrespective of the level at which one starts. The Commission, aware of the legal requirement that the maximum of any range cannot exceed the minimum by more than the greater of 25 percent or six months, also wishes to permit courts the greatest possible range for exercising discretion. The table overlaps offense levels meaningfully, works proportionately, and at the same time preserves the maximum degree of allowable discretion for the judge within each level.

Similarly, many of the individual guidelines refer to tables that correlate amounts of money with offense levels. These tables often have many, rather than a few levels. Again, the reason is to minimize the likelihood of unnecessary litigation. If a money table were to make only a few distinctions, each distinction would become more important and litigation as to which category an offender fell within would become more likely. Where a table has many smaller monetary distinctions, it minimizes the likelihood of litigation, for the importance of the precise amount of money involved is considerably less.

          October, 1987

**Defense Exhibit 9-19**

5.    **A Concluding Note**

The Commission emphasizes that its approach in this initial set of guidelines is one of caution. It has examined the many hundreds of criminal statutes in the United States Code. It has begun with those that are the basis for a significant number of prosecutions. It has sought to place them in a rational order. It has developed additional distinctions relevant to the application of these provisions, and it has applied sentencing ranges to each resulting category. In doing so, it has relied upon estimates of existing sentencing practices as revealed by its own statistical analyses, based on summary reports of some 40,000 convictions, a sample of 10,000 augmented presentence reports, the parole guidelines and policy judgments.

The Commission recognizes that some will criticize this approach as overly cautious, as representing too little a departure from existing practice. Yet, it will cure wide disparity. The Commission is a permanent body that can amend the guidelines each year. Although the data available to it, like all data, are imperfect, experience with these guidelines will lead to additional information and provide a firm empirical basis for revision.

Finally, the guidelines will apply to approximately 90 percent of all cases in the federal courts. Because of time constraints and the nonexistence of statistical information, some offenses that occur infrequently are not considered in this initial set of guidelines. They will, however, be addressed in the near future. Their exclusion from this initial submission does not reflect any judgment about their seriousness. The Commission has also deferred promulgation of guidelines pertaining to fines, probation and other sanctions for organizational defendants, with the exception of antitrust violations. The Commission also expects to address this area in the near future.

October, 1987

# Defense Exhibit 9-20

## PART B - GENERAL APPLICATION PRINCIPLES

**§1B1.1.    Application Instructions**

(a)    Determine the guideline section in Chapter Two most applicable to the statute of conviction.    See §1B1.2 (Applicable Guidelines).    The statutory index (Appendix A) provides a listing to assist in this determination.    If more than one guideline is referenced for the particular statute, select the guideline most appropriate for the conduct of which the defendant was convicted.

(b)    Determine the base offense level and apply any appropriate specific offense characteristics contained in the particular guideline in Chapter Two.

(c)    Apply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three.

(d)    If there are multiple counts of conviction, repeat steps one through three for each count.    Apply Part D of Chapter Three to group the various counts and adjust the offense level accordingly.

(e)    Apply the adjustment as appropriate for the defendant's acceptance of responsibility from Part E of Chapter Three.    The resulting offense level is the total offense level.

(f)    Determine the defendant's criminal history category as specified in Part A of Chapter Four.    Determine from Part B of Chapter Four any other applicable adjustments.

(g)    Determine the guideline range in Part A of Chapter Five that corresponds to the total offense level and criminal history category.

(h)    For the particular guideline range, determine from Parts B through G of Chapter Five the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution.

(i)    Refer to Parts H and K of Chapter Five, Specific Offender Characteristics and Departures, and to any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence.

*Commentary*

*Application Notes:*

1.    *The following are definitions of terms that are used frequently in the guidelines:*

(a)    *"Abducted" means that a victim was forced to accompany an offender to a different location.    For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction.*

October, 1987

# Defense Exhibit 9-21

(b)  *"Bodily injury" means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought. As used in the guidelines, the definition of this term is somewhat different than that used in various statutes.*

(c)  *"Brandished" with reference to a firearm or other dangerous weapon means that the weapon was pointed or waved about, or displayed in a threatening manner.*

(d)  *"Dangerous weapon" means an instrument capable of inflicting death or serious bodily injury.*

(e)  *"Firearm" means any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive. A weapon, commonly known as "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm.*

(f)  *"More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense.*

*"More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.*

*In an assault, for example, waiting to commit the offense when no witnesses were present would not alone constitute more than minimal planning. By contrast, luring the victim to a specific location, or wearing a ski mask to prevent identification, would constitute more than minimal planning.*

*In a commercial burglary, for example, checking the area to make sure no witnesses were present would not alone constitute more than minimal planning. By contrast, obtaining building plans to plot a particular course of entry, or disabling an alarm system, would constitute more than minimal planning.*

*In a theft, going to a secluded area of a store to conceal the stolen item in one's pocket would not alone constitute more than minimal planning. However, repeated instances of such thefts on several occasions would constitute more than minimal planning. Similarly, fashioning a special device to conceal the property, or obtaining information on delivery dates so that an especially valuable item could be obtained, would constitute more than minimal planning.*

*In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries.*

(g)  *"Otherwise used" with reference to a firearm or other dangerous weapon means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.*

1.14                                                    October, 1987

# Defense Exhibit 9-22

(h)  *"Permanent or life-threatening bodily injury" means injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent.*

(i)  *"Physically restrained" means the forcible restraint of the victim such as by being tied, bound, or locked up.*

(j)  *"Serious bodily injury" means injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. As used in the guidelines, the definition of this term is somewhat different than that used in various statutes.*

2.  *Definitions or explanations of terms may also appear within the commentary to specific guidelines. Such commentary is not of general applicability. The term "includes" is not exhaustive; the term "e.g." is merely illustrative.*

3.  *The list of "Statutory Provisions" in the Commentary to each offense guideline does not necessarily include every statute covered by that guideline. In addition, some statutes may be covered by more than one guideline.*


**§1B1.2.    Applicable Guidelines**

(a)  The court shall apply the guideline in Chapter Two (Offense Conduct) most applicable to the offense of conviction. *Provided*, however, in the case of conviction by a plea of guilty or nolo contendere containing a stipulation that specifically establishes a more serious offense than the offense of conviction, the court shall apply the guideline in such chapter most applicable to the stipulated offense.

(b)  The court shall determine any applicable specific offense characteristic, victim-related adjustment, or departure from the guidelines attributable to offense conduct, according to the principles in §1B1.3 (Relevant Conduct).


*Commentary*

*Application Notes:*

1.  *This section provides the basic rules for determining the guidelines applicable to the offense conduct under Chapter Two (Offense Conduct). As a general rule, the court is to apply the guideline covering the offense conduct most applicable to the offense of conviction. Where a particular statute proscribes a variety of conduct which might constitute the subject of different guidelines, the court will decide which guideline applies based upon the nature of the offense conduct charged.*

*However, there is a limited exception to this general rule. Where a stipulation as part of a plea of guilty or nolo contendere specifically establishes facts that prove a more serious offense or offenses than the offense or offenses of conviction, the court is to apply the guideline most applicable to the more serious offense or offenses established. The*

1.15                                                            October, 1987

# Defense Exhibit 9-23

*sentence that may be imposed is limited, however, to the maximum authorized by the statute under which the defendant is convicted. See Chapter Five, Part G (Implementing the Total Sentence of Imprisonment). For example, if the defendant pleads guilty to theft, but admits the elements of robbery as part of the plea agreement, the robbery guideline is to be applied. The sentence, however, may not exceed the maximum sentence for theft. See H. Rep. 98-1017, 98th Cong., 2d Sess. 99 (1984). Similarly, if the defendant pleads guilty to one robbery but admits the elements of two additional robberies as part of a plea agreement, the guideline applicable to three robberies is to be applied.*

*The exception to the general rule has a practical basis. In cases where the elements of an offense more serious than the offense of conviction are established by the plea, it may unduly complicate the sentencing process if the applicable guideline does not reflect the seriousness of the defendant's actual conduct. Without this exception, the court would be forced to use an artificial guideline and then depart from it to the degree the court found necessary based upon the more serious conduct established by the plea. The probation officer would first be required to calculate the guideline for the offense of conviction. However, this guideline might even contain characteristics that are difficult to establish or not very important in the context of the actual offense conduct. As a simple example, §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft), contains monetary distinctions which are more significant and more detailed than the monetary distinctions in §2B3.1 (Robbery). Then, the probation officer might need to calculate the robbery guideline to assist the court in determining the appropriate degree of departure in a case in which the defendant pled guilty to theft but admitted committing the robbery. This cumbersome, artificial procedure is avoided by using the exception rule in guilty or nolo contendere plea cases where it is applicable.*

*As with any plea agreement, the court must first determine that the agreement is acceptable, in accordance with the policies stated in Chapter Six, Part B (Plea Agreements). The limited exception provided here applies only after the court has determined that a plea, otherwise fitting the exception, is acceptable.*

2.  *Section 1B1.2(b) directs the court, once it has determined the applicable guideline (i.e., the applicable guideline section from Chapter Two) under §1B1.2(a) to determine any applicable specific offense characteristics (under that guideline), any applicable victim-related adjustment from Chapter Three, Part A, and any guideline departures attributable to the offense conduct from Chapter Five, Part K, using a "relevant conduct" standard, as that standard is defined in §1B1.3. Where there is more than one base offense level within a particular guideline, the determination of the applicable base offense level is treated in the same manner as a determination of a specific offense characteristic. Accordingly, the "relevant conduct" criteria of §1B1.3 are to be used, unless conviction under a specific statute is expressly required.*

3.  *In many instances, it will be appropriate that the court consider the actual conduct of the offender, even when such conduct does not constitute an element of the offense. As described above, this may occur when an offender stipulates certain facts in a plea agreement. It is more typically so when the court considers the applicability of specific offense characteristics within individual guidelines, when it considers various adjustments, and when it considers whether or not to depart from the guidelines for reasons relating to offense conduct. In such instances, the court should consider all conduct, circumstances, and injury relevant to the offense (as well as all relevant offender characteristics). See §1B1.3 (Relevant Conduct).*

1.16                                    October, 1987

# Defense Exhibit 9-24

## §1B1.3.    Relevant Conduct

To determine the seriousness of the offense conduct, all conduct, circumstances, and injuries relevant to the offense of conviction shall be taken into account.

(a)    Unless otherwise specified under the guidelines, conduct and circumstances relevant to the offense of conviction means:

acts or omissions committed or aided and abetted by the defendant, or by a person for whose conduct the defendant is legally accountable, that (1) are part of the same course of conduct, or a common scheme or plan, as the offense of conviction, or (2) are relevant to the defendant's state of mind or motive in committing the offense of conviction, or (3) indicate the defendant's degree of dependence upon criminal activity for a livelihood.

(b)    Injury relevant to the offense of conviction means harm which is caused intentionally, recklessly or by criminal negligence in the course of conduct relevant to the offense of conviction.

*Commentary*

*Application Note:*

1.    *In sentencing, the court should consider all relevant offense and offender characteristics. For purposes of assessing offense conduct, the relevant conduct and circumstances of the offense of conviction are as follows:*

a.    *conduct directed toward preparation for or commission of the offense of conviction, and efforts to avoid detection and responsibility for the offense of conviction;*

b.    *conduct indicating that the offense of conviction was to some degree part of a broader purpose, scheme, or plan;*

c.    *conduct that is relevant to the state of mind or motive of the defendant in committing the crime;*

d.    *conduct that is relevant to the defendant's involvement in crime as a livelihood.*

*The first three criteria are derived from two sources, Rule 8(a) of the Federal Rules of Criminal Procedure, governing joinder of similar or related offenses, and Rule 404(b) of the Federal Rules of Evidence, permitting admission of evidence of other crimes to establish motive, intent, plan, and common scheme. These rules provide standards that govern consideration at trial of crimes "of the same or similar character," and utilize concepts and terminology familiar to judges, prosecutors, and defenders. The governing standard should be liberally construed in favor of considering information generally appropriate to sentencing. When other crimes are inadmissible under the Rule 404(b) standard, such crimes may not be "relevant to the offense of conviction" under the criteria that determine this question for purposes of Chapter Two; such crimes would, however, be considered in determining the relevant offender characteristics to the extent authorized by Chapter Three (Adjustments), and Chapter Four (Criminal History and Criminal Livelihood) and Chapter Five, Part H (Specific Offender Characteristics). This*

# Defense Exhibit 9-25

*construction is consistent with the existing rule that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense . . . for the purpose of imposing an appropriate sentence," 18 U.S.C. § 3577, so long as the information "has sufficient indicia of reliability to support its probable accuracy." United States v. Marshall, 519 F. Supp. 751 (D. Wis. 1981), aff'd, 719 F.2d 887 (7th Cir. 1983).*

*The last of these criteria is intended to ensure that a judge may consider at sentencing, information that, although not specifically within other criteria of relevance, indicates that the defendant engages in crime for a living. Inclusion of this information in sentencing considerations is consistent with 28 U.S.C. § 994(d)(11).*

**§1B1.4.    Determining the Offense Level**

In determining the offense level:

(a)    determine the base offense level from Chapter Two;

(b)    make any applicable adjustments for specific offense characteristics from Chapter Two in the order listed;

(c)    make any applicable adjustments from Chapter Three;

(d)    make any applicable adjustments from Chapter Four, Part B (Career Offenders and Criminal Livelihood).

*Commentary*

*Application Notes:*

1.    *A particular guideline (in the base offense level or in a specific offense characteristic) may expressly direct that a particular factor be applied only if the defendant was convicted of a particular statute.    E.g., in §2K2.3, a base offense level of 12 is used "if convicted under 26 U.S.C. § 5861."    Unless such an express direction is included, conviction under the statute is not required.    Thus, use of a statutory reference to describe a particular set of circumstances does not require a conviction under the referenced statute.    Examples of this usage are found in §2K1.3(b)(4) ("if the defendant was a person prohibited from receiving explosives under 18 U.S.C. § 842(i), or if the defendant knowingly distributed explosives to a person prohibited from receiving explosives under 18 U.S.C. § 842(i), increase by 10 levels"); and §2A3.4(b)(2) ("if the abusive contact was accomplished as defined in 18 U.S.C. § 2242, increase by 4 levels").    In such cases, the particular circumstances described are to be evaluated under the "relevant conduct" standard of §1B1.3.*

2.    *Once the appropriate base offense level is determined, all specific offense characteristics are to be applied in the order listed.*

3.    *The offense level adjustments from more than one specific offense characteristic within an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used.    Within each specific offense characteristic subsection, however, the offense level adjustments are alternative; only the one that best*

October, 1987

**Defense Exhibit 9-26**

*describes the conduct is to be used. E.g., in §2A2.2(b)(3), pertaining to degree of bodily injury, the subsection that best describes the level of bodily injury is used; the adjustments from different degrees of bodily injury (subsections (A), (B) and (C)) are not added together).*

4. *The adjustments in Chapter Three that may apply include Part A (Victim-Related Adjustments), Part B (Role in the Offense), Part C (Obstruction), Part D (Multiple Counts), and Part E (Acceptance of Responsibility).*

### §1B1.5.   Interpretation of References to Other Offense Guidelines

Unless otherwise expressly indicated, a reference to another guideline, or an instruction to apply another guideline, refers to the entire guideline, i.e., the base offense level plus all applicable adjustments for specific offense characteristics.

*Commentary*

*Application Note:*

1. *References to other offense guidelines are most frequently designated "Cross References," but may also appear in the portions of the guideline entitled "Base Offense Level" (e.g., §§2D1.2(a)(1), 2H1.2(a)(2)), or "Specific Offense Characteristics" (e.g., §§2A4.1(b)(5)(B), 2Q1.2(b)(5)). These references may be to a specific guideline, or may be more general (e.g., to the guideline for the "underlying offense"). Such references are to be construed to incorporate the specific offense characteristics as well as the base offense level. For example, if the guideline reads "2 plus the offense level from §2A2.2 (Aggravated Assault)," the user would determine the offense level from §2A2.2, including any applicable adjustments for planning, weapon use, degree of injury and motive, and then increase by 2 levels. If the victim was vulnerable, the adjustment from §3A1.1 (Vulnerable Victim) also would apply.*

### §1B1.6   Structure of the Guidelines

The guidelines are presented in numbered chapters divided into alphabetical parts. The parts are divided into subparts and individual guidelines. Each guideline is identified by three numbers and a letter corresponding to the chapter, part, subpart and individual guideline.

The first number is the chapter, the letter represents the part of the chapter, the second number is the subpart, and the final number is the guideline. Section 2B1.1, for example, is the first guideline in the first subpart in Part B of Chapter Two. Or, §3A1.2 is the second guideline in the first subpart in Part A of Chapter Three. Policy statements are similarly identified.

October, 1987

# Defense Exhibit 9-27

To illustrate:



§1B1.7.    **Significance of Commentary**

The Commentary that accompanies the guideline sections may serve a number of purposes. First, it may interpret the guideline or explain how it is to be applied. Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. See 18 U.S.C. § 3742. Second, the commentary may suggest circumstances which, in the view of the Commission, may warrant departure from the guidelines. Such commentary is to be treated as the legal equivalent of a policy statement. Finally, the commentary may provide background information, including factors considered in promulgating the guideline or reasons underlying promulgation of the guideline. As with a policy statement, such commentary may provide guidance in assessing the reasonableness of any departure from the guidelines.

*Commentary*

*Portions of this document not labeled as guidelines or commentary also express the policy of the Commission or provide guidance as to the interpretation and application of the guidelines. These are to be construed as commentary and thus have the force of policy statements.*

*In stating that failure to follow certain commentary "could constitute an incorrect application of the guidelines," the Commission simply means that in seeking to understand the meaning of the guidelines courts likely will look to the commentary for guidance as an indication of the intent of those who wrote them. In such instances, the courts will treat the commentary much like legislative history or other legal material that helps determine the intent of a drafter.*

1.20                                                                October, 1987

**Defense Exhibit 9-28**

## CHAPTER TWO - OFFENSE CONDUCT

### *Introductory Commentary*

*Chapter Two pertains to offense conduct.  The chapter is organized by offenses and divided into parts and related sections that may cover one statute or many.  Each offense has a corresponding base offense level and may have one or more specific offense characteristics that adjust the offense level upward or downward.  Certain factors relevant to the offense that are not covered in specific guidelines in Chapter Two are set forth in Chapter Three, Parts A (Victim-Related Adjustments), B (Role in the Offense), and C (Obstruction); Chapter Four, Part B (Career Offenders and Criminal Livelihood); and Chapter Five, Part K (Departures).*

October, 1987

# Defense Exhibit 9-29

*[Page intentionally blank]*

2.2                                    October, 1987

# Defense Exhibit 9-30

## PART A - OFFENSES AGAINST THE PERSON

### 1.    HOMICIDE

### §2A1.1.    First Degree Murder

(a)    Base Offense Level: **43**

#### Commentary

*Statutory Provision:* 18 U.S.C. § 1111.

*Application Note:*

1.    The Commission has concluded that in the absence of capital punishment life imprisonment is the appropriate punishment for the "willful, deliberate, malicious, and premeditated killing" to which 18 U.S.C. § 1111 applies. However, the same statute applies when death results from certain enumerated felonies -- arson, escape, murder, kidnapping, treason, espionage, sabotage, rape, burglary, or robbery. Life imprisonment is not necessarily appropriate in all such situations. For example, if in robbing a bank, the defendant merely passed a note to the teller, as a result of which she had a heart attack and died, a sentence of life imprisonment clearly would not be appropriate.

If the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted. The extent of the departure should be based upon the defendant's state of mind (*e.g.*, recklessness or negligence), the degree of risk inherent in the conduct, and the nature of the underlying offense conduct. However, the Commission does not envision that departure below that specified in §2A1.2 (Second Degree Murder) is likely to be appropriate. Also, because death obviously is an aggravating factor, it necessarily would be inappropriate to impose a sentence at a level below that which the guideline for the underlying offense requires in the absence of death.

*Background:*    The maximum penalty authorized by statute for first-degree murder is death or life imprisonment.

### §2A1.2.    Second Degree Murder

(a)    Base Offense Level: **33**

#### Commentary

*Statutory Provision:* 18 U.S.C. § 1111.

*Background:*    The maximum term of imprisonment authorized by statute for second degree murder is life.

# Defense Exhibit 9-31

§2A1.3.    **Voluntary Manslaughter**

    (a)    Base Offense Level: **25**

*Commentary*

*Statutory Provision:* 18 U.S.C. § 1112.

*Background:*    The maximum term of imprisonment authorized by statute for voluntary manslaughter is ten years.

§2A1.4.    **Involuntary Manslaughter**

    (a)    Base Offense Level:

        (1)    **10**, if the conduct was criminally negligent; or

        (2)    **14**, if the conduct was reckless.

*Commentary*

*Statutory Provision:* 18 U.S.C. § 1112.

*Application Notes:*

1.    *"Reckless" refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.    The term thus includes all, or nearly all, convictions for involuntary manslaughter under 18 U.S.C. § 1112.    A homicide resulting from driving, or similarly dangerous actions, while under the influence of alcohol or drugs ordinarily should be treated as reckless.*

2.    *"Criminally negligent" refers to conduct that involves a gross deviation from the standard of care that a reasonable person would exercise under the circumstances, but which is not reckless.    Offenses with this characteristic usually will be encountered as assimilative crimes.*

\*    \*    \*    \*    \*

2.    **ASSAULT**

§2A2.1.    **Assault With Intent to Commit Murder; Conspiracy or Solicitation to Commit Murder; Attempted Murder**

    (a)    Base Offense Level: **20**

2.4

October, 1987

# Defense Exhibit 9-32

(b)    Specific Offense Characteristics

(1)    If an assault involved more than minimal planning, increase by **2** levels.

(2)    (A) If a firearm was discharged, increase by **5** levels; (B) if a firearm or a dangerous weapon was otherwise used, increase by **4** levels; (C) if a firearm or other dangerous weapon was brandished or its use was threatened, increase by **3** levels.

(3)    If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury:

| Degree of Bodily Injury | Increase in Level |
|---|---|
| (A)  Bodily Injury | add **2** |
| (B)  Serious Bodily Injury | add **4** |
| (C)  Permanent or Life-Threatening Bodily Injury | add **6** |

Provided, however, that the cumulative adjustments from (2) and (3) shall not exceed **9** levels.

(4)    If a conspiracy or assault was motivated by a payment or offer of money or other thing of value, increase by **2** levels.

### Commentary

*Statutory Provisions:    18 U.S.C. §§ 113(a), 351(c), (d), 373, 1113, 1116(a), 1117, 1751(c), (d), 1952A(a).*

*Application Notes:*

*1.    Definitions of "more than minimal planning," "firearm," "dangerous weapon," "brandished," "otherwise used," "bodily injury," "serious bodily injury," and "permanent or life-threatening bodily injury" are found in the Commentary to §1B1.1 (Application Instructions).*

*2.    If the degree of bodily injury falls between two injury categories, use of the intervening level (i.e., interpolation) is appropriate.*

*Background:    This section applies to the offenses of assault with intent to commit murder, conspiracy to commit murder, solicitation to commit murder, and attempted murder.*

*The maximum term of imprisonment authorized by statute for conspiracy to murder is life imprisonment (18 U.S.C. § 1117).    The maximum term of imprisonment authorized by statute for solicitation to murder is twenty years (18 U.S.C. § 373).    The statutes that prohibit attempted murder, or assaults with intent to commit murder, vary widely in the maximum term of imprisonment authorized.    Assault with intent to commit murder (18 U.S.C. § 113(a)) carries a maximum authorized term of twenty years imprisonment.    An attempted assassination of certain essential government officials (18 U.S.C. § 351(c)) carries a maximum authorized term of life imprisonment.    An attempted murder of foreign officials (18 U.S.C. § 1116(a) carries a maximum authorized term of twenty years imprisonment.    An attempt to commit murder, other than an*

# Defense Exhibit 9-33

*assault with intent to commit murder covered by 18 U.S.C. § 113(a), carries a maximum term of three years imprisonment (18 U.S.C. § 1113).*

*Enhancements are provided for planning, weapon use, injury, and commission of the crime for hire. All of the factors can apply in the case of an assault; only the last can apply in the case of a conspiracy that does not include an assault; and none can apply in the case of a mere solicitation.*

### §2A2.2.    Aggravated Assault

(a)    Base Offense Level: **15**

(b)    Specific Offense Characteristics

(1)    If the assault involved more than minimal planning, increase by **2** levels.

(2)    (A) If a firearm was discharged, increase by **5** levels; (B) if a firearm or a dangerous weapon was otherwise used, increase by **4** levels; (C) if a firearm or other dangerous weapon was brandished or its use was threatened, increase by **3** levels.

(3)    If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury:

| Degree of Bodily Injury | Increase in Level |
|---|---|
| (A)  Bodily Injury | add **2** |
| (B)  Serious Bodily Injury | add **4** |
| (C)  Permanent or Life-Threatening Bodily Injury | add **6** |

Provided, however, that the cumulative adjustments from (2) and (3) shall not exceed **9** levels.

(4)    If the assault was motivated by a payment or offer of money or other thing of value, increase by **2** levels.

### Commentary

*Statutory Provisions:* 18 U.S.C. §§ 111, 112, 113(b),(c),(f), 114, 115(a), (b)(1), 351(e), 1751(e).

*Application Notes:*

1.    *"Aggravated assault" means a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (i.e., not merely to frighten), or (b) serious bodily injury, or (c) an intent to commit another felony.*

2.    *Definitions of "more than minimal planning," "firearm," "dangerous weapon," "brandished," "otherwise used," "bodily injury," "serious bodily injury," and "permanent or life-threatening bodily injury," are found in the Commentary to §1B1.1 (Application Instructions).*

October, 1987

# Defense Exhibit 9-34

3.    If the degree of bodily injury falls between two injury categories, use of the intervening level (i.e., interpolation) is appropriate.

4.    Assault with intent to commit murder is covered by §2A2.1.    Assault with intent to commit rape is covered by §2A3.1.

*Background:*    This section applies to serious (aggravated) assaults where there is no intent to kill.    Such offenses occasionally may involve planning or be committed for hire.    Consequently, the structure follows §2A2.1.

There are a number of federal provisions that address varying degrees of assault and battery.    The punishments under these statutes differ considerably, even among provisions directed to substantially similar conduct.    For example, if the assault is upon certain federal officers "while engaged in or on account of . . . official duties," the maximum term of imprisonment under 18 U.S.C. § 111 is three years.    If a dangerous weapon is used in the assault on a federal officer, the maximum term of imprisonment is ten years.    However, if the same weapon is used to assault a person not otherwise specifically protected, the maximum term of imprisonment under 18 U.S.C. § 113(c) is five years.    If the assault results in serious bodily injury, the maximum term of imprisonment under 18 U.S.C. § 113(f) is ten years, unless the injury constitutes maiming by scalding, corrosive, or caustic substances under 18 U.S.C. § 114, in which case the maximum term of imprisonment is twenty years.

## §2A2.3.    Minor Assault

(a)    Base Offense Level:

(1)    **6**, if the conduct involved striking, beating, or wounding; or

(2)    **3**, otherwise.

### Commentary

*Statutory Provisions:*  18 U.S.C. §§ 111, 112, 113(d), 113(e), 115(a), 115(b)(1), 351(e), 1751(e).

*Application Notes:*

1.    "Minor assault" means a misdemeanor assault, or a felonious assault not covered by §2A2.2.

2.    "Striking, beating, or wounding" means conduct sufficient to violate 18 U.S.C. § 113(d).

*Background:*    Minor assault and battery are covered in this section.    The distinction for striking, beating, or wounding reflects the statutory distinction found in 18 U.S.C. § 113(d) and (e).

*    *    *    *    *

# Defense Exhibit 9-35

### 3. CRIMINAL SEXUAL ABUSE

**§2A3.1.** **Criminal Sexual Abuse; Attempt or Assault with the Intent to Commit Criminal Sexual Abuse**

    (a) Base Offense Level: **27**

    (b) Specific Offense Characteristics

        (1) If the criminal sexual abuse was accomplished as defined in 18 U.S.C. § 2241 (including, but not limited to, the use or display of any dangerous weapon), increase by **4** levels.

        (2) (A) If the victim had not attained the age of twelve years, increase by **4** levels; otherwise, (B) if the victim was under the age of sixteen, increase by **2** levels.

        (3) If the victim was in the custody, care, or supervisory control of the defendant, was a corrections employee, or a person held in the custody of a correctional facility, increase by **2** levels.

        (4) (A) If the victim sustained permanent or life-threatening bodily injury, increase by **4** levels; (B) if the victim sustained serious bodily injury, increase by **2** levels.

        (5) If the victim was abducted, increase by **4** levels.

<em>Commentary</em>

*Statutory Provisions:* *18 U.S.C. §§ 2241, 2242.*

*Application Notes:*

1. *"Permanent or life-threatening bodily injury," "serious bodily injury," and "abducted" are defined in the Commentary to §1B1.1 (Application Instructions).*

2. *"Accomplished as defined in 18 U.S.C. § 2241" means accomplished by force, threat, or other means as defined in 18 U.S.C. § 2241(a) or (b) (i.e., by using force against that person; by threatening or placing that other person in fear that any person will be subject to death, serious bodily injury, or kidnapping; by rendering the victim unconscious; or by administering by force or threat of force, or without the knowledge or permission of the victim, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of the victim to appraise or control conduct).*

*Background:* *Sexual offenses addressed in this section are crimes of violence. Because of their dangerousness, attempts are treated the same as completed acts of criminal sexual abuse. The maximum term of imprisonment authorized by statute is life imprisonment. The base offense level represents sexual abuse as set forth in 18 U.S.C. § 2242. An enhancement is provided for use of force, threat of death, serious bodily injury, kidnapping, or certain other means as defined in 18 U.S.C. § 2241. This includes any use or threatened use of a dangerous weapon.*

2.8

October, 1987

# Defense Exhibit 9-36

*An enhancement is provided when the victim is less than sixteen years of age. An additional enhancement is provided where the victim is less than twelve years of age. Any criminal sexual abuse with a child less than twelve years of age, regardless of "consent," is governed by §2A3.1.*

*An enhancement for a custodial relationship between defendant and victim is also provided. Whether the custodial relationship is temporary or permanent, the defendant in such a case is a person the victim trusts or to whom the victim is entrusted. This represents the potential for greater and prolonged psychological damage. Also, an enhancement is provided where the victim was an inmate of, or a person employed in, a correctional facility. Finally, enhancements are provided for serious physical injury and abduction.*

§2A3.2.    **Criminal Sexual Abuse of a Minor (Statutory Rape) or Attempt to Commit Such Acts**

    (a)    Base Offense Level: **15**

    (b)    Specific Offense Characteristic

        (1)    If the victim was in the custody, care, or supervisory control of the defendant, increase by 1 level.

<u>Commentary</u>

<u>Statutory Provision</u>: *18 U.S.C. § 2243.*

<u>Application Note</u>:

1.    *If the defendant committed the criminal sexual act in furtherance of a commercial scheme such as pandering, transporting persons for the purpose of prostitution, or the production of pornography, an upward departure may be warranted. <u>See</u> Chapter Five, Part K (Departures).*

<u>Background</u>: *This section applies to statutory rape, i.e., sexual acts that would be lawful but for the victim's incapacity to give lawful consent. It is assumed that at least a four-year age difference exists between the victim and the defendant, as specified in 18 U.S.C. § 2243. An enhancement is provided for a defendant who victimizes a minor under his supervision or care.*

§2A3.3.    **Criminal Sexual Abuse of a Ward (Statutory Rape) or Attempt to Commit Such Acts**

    (a)    Base Offense Level: **9**

<u>Commentary</u>

<u>Statutory Provision</u>: *18 U.S.C. § 2243.*

October, 1987

# Defense Exhibit 9-37

_Application Note:_

1.   _A ward is a person in official detention under the custodial, supervisory, or disciplinary authority of the defendant._

_Background:_   _The offense covered by this section is a misdemeanor.   The maximum term of imprisonment authorized by statute is one year._

**§2A3.4.    Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact**

(a)   Base Offense Level: **6**

(b)   Specific Offense Characteristics

(1)   If the abusive sexual contact was accomplished as defined in 18 U.S.C. § 2241 (including, but not limited to, the use or display of any dangerous weapon), increase by **9** levels.

(2)   If the abusive sexual contact was accomplished as defined in 18 U.S.C. § 2242, increase by **4** levels.

_Commentary_

_Statutory Provisions:_   _18 U.S.C. §§ 2244, 2245._

_Application Notes:_

1.   _"Accomplished as defined in 18 U.S.C. § 2241" means accomplished by force, threat, or other means as defined in 18 U.S.C. § 2241(a) or (b) (i.e., by using force against that person; by threatening or placing that other person in fear that any person will be subject to death, serious bodily injury, or kidnapping; by rendering the victim unconscious; or by administering by force or threat of force, or without the knowledge or permission of the victim, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of the victim to appraise or control conduct)._

2.   _"Accomplished as defined in 18 U.S.C. § 2242" means accomplished by threatening or placing the victim in fear (other than by threatening or placing the victim in fear that any person will be subjected to death, serious bodily injury, or kidnapping); or when the victim is incapable of appraising the nature of the conduct or physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act._

_Background:_   _This section covers abusive sexual contact not amounting to criminal sexual abuse (criminal sexual abuse is covered under §2A3.1-3.3).   Enhancements are provided for the use of force or threats.   The maximum term of imprisonment authorized by statute for offenses covered in this section is five years (if accomplished as defined in 18 U.S.C. § 2241), three years (if accomplished as defined in 18 U.S.C. § 2242), and six months otherwise.   The base offense level applies to conduct that is consensual._

\*    \*    \*    \*    \*

October, 1987

**Defense Exhibit 9-38**

## 4.    KIDNAPPING, ABDUCTION, OR UNLAWFUL RESTRAINT

**§2A4.1.    Kidnapping, Abduction, Unlawful Restraint**

(a)    Base Offense Level: **24**

(b)    Specific Offense Characteristics

 (1)    If a ransom demand or a demand upon government was made, increase by **6** levels.

 (2)    (A) If the victim sustained permanent or life-threatening bodily injury, increase by **4** levels; (B) if the victim sustained serious bodily injury, increase by **2** levels.

 (3)    If a dangerous weapon was used, increase by **2** levels.

 (4)    (A) If the victim was not released before thirty days had elapsed, increase by **2** levels.

  (B)    If the victim was not released before seven days had elapsed, increase by **1** level.

  (C)    If the victim was released before twenty-four hours had elapsed, decrease by **1** level.

 (5)    If the victim was kidnapped, abducted, or unlawfully restrained to facilitate the commission of another offense: (A) increase by **4** levels; or (B) if the result of applying this guideline is less than that resulting from application of the guideline for such other offense, apply the guideline for such other offense.

### _Commentary_

_Statutory Provisions:_ _18 U.S.C. §§ 115(b)(2), 351(b), (d), 1201, 1203, 1751(b)._

_Application Notes:_

1.    _Definitions of "serious bodily injury" and "permanent or life-threatening bodily injury" are found in the Commentary to §1B1.1 (Application Instructions)._

2.    _"A dangerous weapon was used" means that a firearm was discharged, or a "firearm" or "dangerous weapon" was "otherwise used" (as defined in the Commentary to §1B1.1 (Application Instructions))._

3.    _For the purpose of subsection (b)(4)(C), "released" includes allowing the victim to escape or turning him over to law enforcement authorities without resistance._

October, 1987

# Defense Exhibit 9-39

*Background:* Federal kidnapping cases generally encompass three categories of conduct: limited duration kidnapping where the victim is released unharmed; kidnapping that occurs as part of or to facilitate the commission of another offense (often, sexual assault); and kidnapping for ransom or political demand.

The guideline contains an adjustment for the length of time that the victim was detained. The adjustment recognizes the increased suffering involved in lengthy kidnappings and provides an incentive to release the victim.

An enhancement is provided when the offense is committed for ransom or to facilitate the commission of another offense. Should the application of this guideline result in a penalty less than the result achieved by applying the guideline for the underlying offense, apply the guideline for the underlying offense (*e.g.,* §2A3.1, *Criminal Sexual Abuse*).

### §2A4.2.    Demanding or Receiving Ransom Money

    (a)    Base Offense Level: 23

*Commentary*

*Statutory Provisions:* 18 U.S.C. §§ 876, 877, 1202.

*Background:* This section specifically includes conduct prohibited by 18 U.S.C. § 1202, requiring that ransom money be received, possessed, or disposed of with knowledge of its criminal origins. The actual demand for ransom under these circumstances is reflected in §2A4.1. This section additionally includes extortionate demands through the use of the United States Postal Service, behavior proscribed by 18 U.S.C. §§ 876-877.

*        *        *        *        *

### 5.    AIR PIRACY

### §2A5.1.    Aircraft Piracy or Attempted Aircraft Piracy

    (a)    Base Offense Level: 38

    (b)    Specific Offense Characteristic

        (1)    If death resulted, increase by 5 levels.

*Commentary*

*Statutory Provision:* 49 U.S.C. § 1472(i), (n).

October, 1987

**Defense Exhibit 9-40**

*Background:*  *This section covers aircraft piracy both within the special aircraft jurisdiction of the United States, 49 U.S.C. § 1472(i), and aircraft piracy outside that jurisdiction when the defendant is later found in the United States, 49 U.S.C. § 1472(n).  Seizure of control of an aircraft may be by force or violence, or threat of force or violence, or by any other form of intimidation.  The presence of a weapon is assumed in the base offense level.*

§2A5.2.    **Interference with Flight Crew Member or Flight Attendant**

(a)    Base Offense Level  (Apply the greatest):

(1)    **30**, if the defendant intentionally endangered the safety of the aircraft and passengers; or

(2)    **18**, if the defendant recklessly endangered the safety of the aircraft and passengers; or

(3)    if an assault occurred, the offense level from the most analogous assault guideline, §§2A2.1-2A2.4; or

(4)    **9**.

*Commentary*

*Statutory Provision:*  *49 U.S.C. § 1472(c), (j).*

*Application Note:*

1.    *If an assault occurred, apply the most analogous guideline from Part A, Subpart 2 (Assault) if the offense level under that guideline is greater.*

*Background:*  *An adjustment is provided where the defendant intentionally or recklessly endangered the safety of the aircraft and passengers.  The offense of carrying a weapon aboard an aircraft, which is proscribed by 49 U.S.C. § 1472(l), is covered in §2K1.5 (Possessing Dangerous Weapons or Materials While Boarding an Aircraft).*

\*    \*    \*    \*    \*

6.    **THREATENING COMMUNICATIONS**

§2A6.1.    **Threatening Communications**

(a)    Base Offense Level: **12**

(b)    Specific Offense Characteristics

(1)    If the defendant engaged in any conduct evidencing an intent to carry out such threat, increase by 6 levels.

2.13                                                                    October, 1987

# Defense Exhibit 9-41

(2) If specific offense characteristic §2A6.1(b)(1) does not apply, and the defendant's conduct involved a single instance evidencing little or no deliberation, decrease by **4** levels.

#### Commentary

*Statutory Provisions:*  *18 U.S.C. §§ 871, 876, 877, 878(a), 879.*

*Application Note:*

1.  The Commission recognizes that this offense includes a particularly wide range of conduct and that it is not possible to include all of the potentially relevant circumstances in the offense level.    Factors not incorporated in the guideline may be considered by the court in determining whether a departure from the guidelines is warranted.    *See* Chapter Five, Part K (Departures).

*Background:*    These statutes cover a wide range of conduct, the seriousness of which depends upon the defendant's intent and the likelihood that the defendant would carry out the threat. The specific offense characteristics are intended to distinguish such cases.

October, 1987

**Defense Exhibit 9-42**

## PART B - OFFENSES INVOLVING PROPERTY

## 1. THEFT, EMBEZZLEMENT, RECEIPT OF STOLEN PROPERTY, AND PROPERTY DESTRUCTION

### *Introductory Commentary*

*These sections address the most basic forms of property offenses: theft, embezzlement, transactions in stolen goods, and simple property damage or destruction. (Arson is dealt with separately in Part K, Offenses Involving Public Order and Safety.) These guidelines apply to offenses prosecuted under a wide variety of federal statutes, as well as offenses that arise under the Assimilative Crimes Act.*

**§2B1.1.    Larceny, Embezzlement, and Other Forms of Theft**

(a)    Base Offense Level: **4**

(b)    Specific Offense Characteristics

    (1)    If the value of the property taken exceeded $100, increase the offense level as follows:

| | Loss | Increase in Level |
|---|---|---|
| (A) | $100 or less | no increase |
| (B) | $101 - $1,000 | add **1** |
| (C) | $1,001 - $2,000 | add **2** |
| (D) | $2,001 - $5,000 | add **3** |
| (E) | $5,001 - $10,000 | add **4** |
| (F) | $10,001 - $20,000 | add **5** |
| (G) | $20,001 - $50,000 | add **6** |
| (H) | $50,001 - $100,000 | add **7** |
| (I) | $100,001 - $200,000 | add **8** |
| (J) | $200,001 - $500,000 | add **9** |
| (K) | $500,001 - $1,000,000 | add **10** |
| (L) | $1,000,001 - $2,000,000 | add **11** |
| (M) | $2,000,001 - $5,000,000 | add **12** |
| (N) | over $5,000,000 | add **13** |

    (2)    If a firearm, destructive device, or controlled substance was taken, increase by **1** level; but if the resulting offense level is less than **7**, increase to level **7**.

    (3)    If the theft was from the person of another, increase by **2** levels.

    (4)    If the offense involved more than minimal planning, increase by **2** levels.

    (5)    If undelivered United States mail was taken, and the offense level as determined above is less than level **6**, increase to level **6**.

October, 1987

# Defense Exhibit 9-43

(6)    If the offense involved organized criminal activity, and the offense level as determined above is less than level **14**, increase to level **14**.

*Commentary*

*Statutory Provisions:*  18 U.S.C. §§ 641, 656, 657, 659, 1702, 1708, 2113(b), 2312, 2317.

*Application Notes:*

1.    *"More than minimal planning" and "firearm" are defined in the Commentary to §1B1.1 (Application Instructions).   "Destructive device" is defined in the Commentary to §2K1.4 (Arson; Property Damage by Use of Explosives).*

2.    *Loss is to be based upon replacement cost to the victim or market value of the property, whichever is greater.*

3.    *The loss need not be determined with precision, and may be inferred from any reasonably reliable information available, including the scope of the operation.*

4.    *The loss includes any unauthorized charges made with stolen credit cards, but in no event less than $100 per card.  See Commentary to §§2X1.1 (Attempts) and 2F1.1 (Fraud).*

5.    *Controlled substances should be valued at their estimated street value.*

6.    *"Undelivered United States mail" means mail that has not actually been received by the addressee or his agent (e.g., it includes mail that is in the addressee's mail box).*

7.    *"From the person of another" refers to property, taken without the use of force, that was being held by another person or was within arms' reach.   Examples include pick-pocketing or non-forcible purse-snatching, such as the theft of a purse from a shopping cart.*

8.    *"Organized criminal activity" refers to operations such as car theft rings or "chop shops," where the scope of the activity is clearly significant.*

*Background:*    *The value of property taken plays an important role in determining sentences for theft offenses, because it is an indicator of both the harm to the victim and the gain to the defendant.   Because of the structure of the Sentencing Table (§5A1.1), subsection (b)(1) results in an overlapping range of enhancements based on the loss from the theft.*

*The guidelines provide an enhancement for more than minimal planning, which includes most offense behavior involving affirmative acts on multiple occasions.   Planning and repeated acts are indicative of an intention and potential to do considerable harm.   Also, planning is often related to increased difficulties of detection and proof.*

*Consistent with statutory distinctions, an increased minimum offense level is provided for the theft of undelivered mail.   Theft of undelivered mail interferes with a governmental function, and the scope of the theft may be difficult to ascertain.*

*Studies show that stolen firearms are used disproportionately in the commission of crimes. The guidelines provide an enhancement for theft of a firearm to ensure that some amount of imprisonment is required.   An enhancement is also provided when controlled substances are*

October, 1987

# Defense Exhibit 9-44

*taken. Such thefts may involve a greater risk of violence, as well as a likelihood that the substance will be abused.*

*Theft from the person of another, such as pickpocketing or non-forcible purse-snatching, receives an enhanced sentence because of the increased risk of physical injury. This guideline does not include an enhancement for thefts from the person by means of force or fear; such crimes are robberies.*

*A minimum offense level of 14 is provided for organized criminal activity, i.e., operations such as car theft rings or "chop shops," where the scope of the activity is clearly significant but difficult to estimate. The guideline is structured so that if reliable information enables the court to estimate a volume of property loss that would result in a higher offense level, the higher offense level would govern.*

### §2B1.2.    Receiving Stolen Property

    (a)    Base Offense Level: **4**

    (b)    Specific Offense Characteristics

        (1)    If the value of the property taken exceeded $100, increase by the corresponding number of levels from the table in §2B1.1.

        (2)    (A)  If the offense was committed by a person in the business of selling stolen property, increase by **4** levels; or

               (B)  If the offense involved more than minimal planning, increase by **2** levels.

        (3)    If the property included a firearm, destructive device, or controlled substance, increase by **1** level; but if the resulting offense level is less than 7, increase to **7**.

        (4)    If the offense involved organized criminal activity, and the offense level as determined above is less than level **14**, increase to level **14**.

### Commentary

*Statutory Provisions:* 18 U.S.C. §§ 553(a)(1), 659, 662, 1708, 2312-2317.

*Application Notes:*

1.   *If the defendant is convicted of transporting stolen property, either §2B1.1 or this guideline would apply, depending upon whether the defendant stole the property.*

               October, 1987

## Defense Exhibit 9-45

2.  *"More than minimal planning" and "firearm" are defined in the Commentary to §1B1.1 (Application Instructions). "Destructive device" is defined in the Commentary to §2K1.4 (Arson; Property Damage by Use of Explosives).*

3.  *For consistency with §2B1.1, it is the Commission's intent that specific offense characteristic (b)(3) be applied before (b)(2).*

4.  *Valuation of property is discussed in the Commentary to §2B1.1.*

*Background:*  *The treatment accorded receiving stolen property parallels that given theft.  Persons who receive stolen property for resale receive a sentence enhancement because the amount of property is likely to underrepresent the scope of their criminality and the extent to which they encourage or facilitate other crimes.*

### §2B1.3.    Property Damage or Destruction (Other than by Arson or Explosives)

(a)    Base Offense Level: **4**

(b)    Specific Offense Characteristics

    (1)    If the amount of the property damage or destruction, or the cost of restoration, exceeded $100, increase by the corresponding number of levels from the table in §2B1.1.

    (2)    If the offense involved more than minimal planning, increase by **2** levels.

    (3)    If undelivered United States mail was destroyed, and the offense level as determined above is less than level **6**, increase to level **6**.

### Commentary

*Statutory Provisions:*    18 U.S.C. §§ 1361, 1363, 1702, 1703 (if vandalism or malicious mischief, including destruction of mail is involved).    Arson is treated separately in Part K, Offenses Involving Public Order and Safety.

*Application Notes:*

1.  *"More than minimal planning" is defined in the Commentary to §1B1.1 (Application Instructions).*

2.  *Valuation of property is discussed in the Commentary to §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft).*

3.  *"Undelivered United States mail" means mail that has not been received by the addressee or his agent (e.g., it includes mail that is in the addressee's mailbox).*

## Defense Exhibit 9-46

4.  *In some cases, the monetary value of the property damaged or destroyed may not adequately reflect the extent of the harm caused. For example, the destruction of a $500 telephone line may cause an interruption in service to thousands of people for several hours. In such instances, an upward departure would be warranted.*

\*    \*    \*    \*    \*

## 2.  BURGLARY AND TRESPASS

§2B2.1.  __Burglary of a Residence__

    (a)  Base Offense Level: **17**

    (b)  Specific Offense Characteristics

        (1)  If the offense involved more than minimal planning, increase by **2** levels.

        (2)  If the value of the property taken or destroyed exceeded $2,500, increase the offense level as follows:

| | Loss | Increase in Level |
|---|---|---|
| (A) | $2,500 or less | no increase |
| (B) | $2,501 - $10,000 | add 1 |
| (C) | $10,001 - $50,000 | add 2 |
| (D) | $50,001 - $250,000 | add 3 |
| (E) | $250,001 - $1,000,000 | add 4 |
| (F) | $1,000,001 - $5,000,000 | add 5 |
| (G) | more than $5,000,000 | add 6 |

        (3)  If obtaining a firearm, destructive device, or controlled substance was an object of the offense, increase by **1** level.

        (4)  If a firearm or other dangerous weapon was possessed, increase by **2** levels.

### Commentary

*Application Notes:*

1.  *"More than minimal planning," "firearm," and "dangerous weapon" are defined in the Commentary to §1B1.1 (Application Instructions). "Destructive device" is defined in the Commentary to §2K1.4 (Arson; Property Damage by Use of Explosives).*

2.  *Obtaining a weapon or controlled substance is to be presumed to be an object of the offense if such an item was in fact taken.*

3.  *Valuation of property is discussed in the Commentary to §2B1.1 (Larceny, Embezzlement, and other forms of Theft).*

# Defense Exhibit 9-47

4.      *Subsection (b)(4) does not apply with respect to a firearm stolen during the course of the offense.*

*Background:     The base offense level for residential burglary is higher than for other forms of burglary because of the increased risk of physical and psychological injury.    Weapon possession, but not use, is a specific offense characteristic because use of a weapon (including to threaten) ordinarily would make the offense robbery. Weapon use would be a ground for upward departure.*

### §2B2.2.    Burglary of Other Structures

(a)    Base Offense Level: **12**

(b)    Specific Offense Characteristics

(1)    If the offense involved more than minimal planning, increase by **2** levels.

(2)    If the value of the property taken or destroyed exceeded $2,500, increase by the corresponding number of levels from the table in §2B2.1.

(3)    If obtaining a firearm, destructive device, or controlled substance was an object of the offense, increase by **1** level.

(4)    If a firearm or other dangerous weapon was possessed, increase by **2** levels.

### *Commentary*

*Statutory Provisions:    18 U.S.C. §§ 2113(a), 2115, 2117, 2118(b).*

*Application Notes:*

1.     *"More than minimal planning" and "firearm" are defined in the Commentary to §1B1.1 (Application Instructions).    "Destructive device" is defined in the Commentary to §2K1.4 (Arson; Property Damage by Use of Explosives).*

2.     *Obtaining a weapon or controlled substance is to be presumed to be an object of the offense if such an item was in fact taken.*

3.     *Valuation of property is discussed in the Commentary to §2B1.1 (Larceny, Embezzlement and Other Forms of Theft).*

4.     *Subsection (b)(4) does not apply with respect to a firearm stolen during the course of the offense.*

*Background:    The offense level for burglary is significantly higher than that for theft for low losses, but is approximately the same for very high losses.    Weapon possession, but not use, is a specific offense characteristic because use of a weapon (including to threaten) ordinarily would make the offense robbery. Weapon use would be a ground for upward departure.*

October, 1987

# Defense Exhibit 9-48

## §2B2.3.    Trespass

(a)    Base Offense Level: **4**

(b)    Specific Offense Characteristic

(1)    If the trespass occurred at a secured government facility, a nuclear energy facility, or a residence, increase by **2** levels.

(2)    If a firearm or other dangerous weapon was possessed, increase by **2** levels.

### Commentary

_Statutory Provisions: 18 U.S.C. §§ 1382, 1854._

_Application Note:_

1.    _"Firearm" and "dangerous weapon" are defined in the Commentary to §1B1.1 (Application Instructions)._

_Background:    Most trespasses punishable under federal law involve federal lands or property.    The trespass section provides an enhancement for offenses involving trespass on secured government installations, such as nuclear facilities, to protect a significant federal interest.    Additionally, an enhancement is provided for trespass at a residence._

\* \* \* \* \*

## 3.    ROBBERY, EXTORTION, AND BLACKMAIL

## §2B3.1.    Robbery

(a)    Base Offense Level: **18**

(b)    Specific Offense Characteristics

(1)    If the value of the property taken or destroyed exceeded $2,500, increase the offense level as follows:

| | Loss | Increase in Level |
|---|---|---|
| (A) | $2,500 or less | no increase |
| (B) | $2,501 - $10,000 | add **1** |
| (C) | $10,001 - $50,000 | add **2** |
| (D) | $50,001 - $250,000 | add **3** |
| (E) | $250,001 - $1,000,000 | add **4** |
| (F) | $1,000,001 - $5,000,000 | add **5** |
| (G) | more than $5,000,000 | add **6** |

October, 1987

# Defense Exhibit 9-49

Treat the loss for a financial institution or post office as at least $5,000.

(2)    (A) If a firearm was discharged increase by 5 levels; (B) if a firearm or a dangerous weapon was otherwise used, increase by 4 levels; (C) if a firearm or other dangerous weapon was brandished, displayed or possessed, increase by 3 levels.

(3)    If any victim sustained bodily injury, increase the offense level according to the seriousness of the injury:

| Degree of Bodily Injury | Increase in Level |
|---|---|
| (A)  Bodily Injury | add 2 |
| (B)  Serious Bodily Injury | add 4 |
| (C)  Permanent or Life-Threatening Bodily Injury | add 6 |

Provided, however, that the cumulative adjustments from (2) and (3) shall not exceed 9 levels.

(4)    (A) If any person was abducted to facilitate commission of the offense or to facilitate escape, increase by 4 levels; or (B) if any person was physically restrained to facilitate commission of the offense or to facilitate escape, increase by 2 levels.

(5)    If obtaining a firearm, destructive device, or controlled substance was the object of the offense, increase by 1 level.

## Commentary

*Statutory Provisions:* 18 U.S.C. §§ 1951, 2113, 2114, 2118(a).

*Application Notes:*

1.    *"Firearm," "dangerous weapon," "otherwise used," "brandished," "abducted," and "physically restrained" are defined in the Commentary to §1B1.1 (Application Instructions).*

2.    *Pursuant to the last sentence of §2B3.1(b)(1), robbery of a bank or post office results in a minimum one-level enhancement. There is no special enhancement for banks and post offices if the loss exceeds $10,000, however.*

3.    *Valuation of property taken is discussed in the Commentary to §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft).*

4.    *If the degree of bodily injury falls between two injury categories, use of the intervening level (i.e., interpolation) is appropriate.*

5.    *The combined adjustments for weapon involvement and injury are limited to a maximum enhancement of 9 levels.*

6.    *Obtaining a weapon or controlled substance is to be presumed to be an object of the offense if such an item was in fact taken.*

2.22                October, 1987

## Defense Exhibit 9-50

7.  *If the defendant actually intended to murder the victim, an upward departure may be warranted; see §2A2.1 (Assault with Intent to Commit Murder).*

8.  *If the defendant was convicted under 18 U.S.C. § 2113(e) and in committing the offense or attempting to flee or escape, a participant killed any person, apply §2A1.1 (First Degree Murder). Otherwise, if death results, see Chapter Five, Part K, Departures.*

*Background:* *Possession or use of a weapon, physical injury, and unlawful restraint sometimes occur during a robbery. The guideline provides for a range of enhancements where these factors are present. Banks and post offices carry a minimum 1 level enhancement for property loss because such institutions generally have more cash readily available, and whether the defendant obtains more or less than $2,500 is largely fortuitous.*

*Obtaining drugs or other controlled substances is often the motive for robberies of a Veterans Administration Hospital, a pharmacy on a military base, or a similar facility. A specific offense characteristic is included for robberies where drugs or weapons were the object of the offense to take account of the dangers involved when such items are taken.*

*Although in current practice the amount of money taken in robbery cases affects sentence length, its importance is small compared to that of the other harm involved. Moreover, because of the relatively high base offense level for robbery, an increase of 1 or 2 levels brings about a considerable increase in sentence length in absolute terms. Accordingly, the gradations for property loss increase more slowly than for simple property offenses.*

*The guideline provides an enhancement for robberies where a victim was forced to accompany the defendant to another location, or was physically restrained by being tied, bound, or locked up.*

**§2B3.2.  Extortion by Force or Threat of Injury or Serious Damage**

    (a)    Base Offense Level: **18**

    (b)    Specific Offense Characteristics

        (1)    If the greater of the amount obtained or demanded exceeded $2,500, increase by the corresponding number of levels from the table in §2B3.1.

        (2)    (A) If a firearm was discharged increase by **5** levels; (B) if a firearm or a dangerous weapon was otherwise used, increase by **4** levels; (C) if a firearm or other dangerous weapon was brandished, displayed or possessed, increase by **3** levels.

        (3)    If any victim sustained bodily injury, increase the offense level according to the seriousness of the injury:

| Degree of Bodily Injury | Increase in Level |
|---|---|
| (A) Bodily Injury | add 2 |
| (B) Serious Bodily Injury | add 4 |
| (C) Permanent or Life-Threatening Bodily Injury | add 6 |

# Defense Exhibit 9-51

Provided, however, that the cumulative adjustments from (2) and (3) shall not exceed **9** levels.

(4)  (A) If any person was abducted to facilitate commission of the offense or to facilitate escape, increase by **4** levels; or (B) if any person was physically restrained to facilitate commission of the offense or to facilitate escape, increase by **2** levels.

<u>Commentary</u>

<u>Statutory Provisions</u>: 18 U.S.C. §§ 875(b), 876, 877, 1951.

<u>Application Notes</u>:

1.  *"Firearm," "dangerous weapon," "otherwise used," "brandished," "abducted," and "physically restrained" are defined in the Commentary to §1B1.1 (Application Instructions).*

2.  *This guideline applies if there was any threat, express or implied, that reasonably could be interpreted as one to injure a person or physically damage property, or any comparably serious threat, such as to drive an enterprise out of business. Even if the threat does not in itself imply violence, the possibility of violence or serious adverse consequences may be inferred from the circumstances of the threat or the reputation of the person making it. An ambiguous threat, such as "pay up or else," or a threat to cause labor problems, ordinarily should be treated under this section.*

3.  *Guidelines for bribery involving public officials are found in Part C, Offenses Involving Public Officials. "Extortion under color of official right," which usually is solicitation of a bribe by a public official, is covered under §2C1.1 unless there is use of force or a threat that qualifies for treatment under this section. Certain other extortion offenses are covered under the provisions of Part E, Offenses Involving Criminal Enterprises.*

4.  *If the degree of bodily injury falls between two injury categories, use of the intervening level (i.e., interpolation) is appropriate.*

5.  *The combined adjustments for weapon involvement and injury are limited to a maximum enhancement of 9 levels.*

6.  *Valuation of items taken is discussed in the Commentary to §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft).*

<u>Background</u>:  *The Hobbs Act, 18 U.S.C. § 1951, prohibits extortion, attempted extortion, and conspiracy to extort. It provides for a maximum term of imprisonment of twenty years. 18 U.S.C. §§ 875-877 prohibits communication of extortionate demands through various means. The maximum penalty under these statutes varies from two to twenty years. Violations of 18 U.S.C. § 875 involve threats or demands transmitted by interstate commerce. Violations of 18 U.S.C. § 876 involve the use of the United States mails to communicate threats, while violations of § 877 involve mailing threatening communications from foreign countries.*

October, 1987

# Defense Exhibit 9-52

§2B3.3.  **Blackmail and Similar Forms of Extortion**

    (a)  Base Offense Level:  **9**

    (b)  Specific Offense Characteristics

        (1)  If the greater of the amount obtained or demanded exceeded $2,000, increase by the corresponding number of levels from the table in §2F1.1.

*Commentary*

*Statutory Provisions:  18 U.S.C. §§ 873, 875-877, 1951.*

*Application Note:*

1.  *This section applies only to blackmail and similar forms of extortion where there clearly is no threat of violence to person or property.  "Blackmail" (18 U.S.C. § 873) is defined as a threat to disclose a violation of United States law unless money or some other item of value is given.*

*Background:  Under 18 U.S.C. § 873, the maximum term of imprisonment authorized for blackmail is one year.  Extortionate threats to injure a reputation, or other threats that are less serious than those covered by §2B3.2, may also be prosecuted under 18 U.S.C. §§ 875-877, which carry higher maximum sentences.*

\*    \*    \*    \*    \*

4.  **COMMERCIAL BRIBERY AND KICKBACKS**

§2B4.1.  **Bribery in Procurement of Bank Loan and Other Commercial Bribery**

    (a)  Base Offense Level:  **8**

    (b)  Specific Offense Characteristic

        (1)  If the greater of the value of the bribe or the improper benefit to be conferred exceeded $2,000, increase the offense level by the corresponding number of levels from the table in §2F1.1.

*Commentary*

*Statutory Provisions:  15 U.S.C. §§ 78dd-1, 78dd-2; 18 U.S.C. §§ 215, 224; 26 U.S.C., §§ 9012(e), 9042(d); 41 U.S.C. §§ 1, 53-54; 42 U.S.C. §§ 1395nn(b)(1), (2), 1396h(b)(1),(2); 49 U.S.C. §§ 11907(a), (b).*

        October, 1987

**Defense Exhibit 9-53**

*Application Notes:*

1. This guideline covers commercial bribery offenses and kickbacks that do not involve officials of federal, state, or local government. <u>See</u> Part C, Offenses Involving Public Officials, if governmental officials are involved.

2. The "value of the improper benefit to be conferred" refers to the value of the action to be taken or effected in return for the bribe. <u>See</u> Commentary to §2C1.1 (Bribery).

<u>Background:</u>    This guideline applies to violations of various federal bribery statutes that do not involve governmental officials. The base offense level is to be enhanced based upon the value of the unlawful payment or the value of the action to be taken or effected in return for the unlawful payment, whichever is greater.

One of the more commonly prosecuted offenses to which this guideline applies is offering or accepting a fee in connection with procurement of a loan from a financial institution in violation of 18 U.S.C. § 215. As is the case for most other offenses covered by this guideline, the maximum term of imprisonment authorized is five years.

As with non-commercial bribery, this guideline considers not only the amount of the bribe but also the value of the action received in return. Thus, for example, if a bank officer agreed to the offer of a $25,000 bribe to approve a $250,000 loan under terms for which the applicant would not otherwise qualify, the court, in increasing the offense level, would use the greater of the $25,000 bribe, and the savings in interest over the life of the loan compared with alternative loan terms. If a gambler paid a player $5,000 to shave points in a nationally televised basketball game, the value of the action to the gambler would be the amount that he and his confederates won or stood to gain. If that amount could not be estimated, the amount of the bribe would be used to determine the appropriate increase in offense level.

This guideline also applies to making prohibited payments to induce the award of subcontracts on federal projects for which the maximum term of imprisonment authorized was recently increased from two to ten years. 41 U.S.C. §§ 51, 53-54. Violations of 42 U.S.C. §§ 1395nn(b)(1) and (b)(2), involve the offer or acceptance of a payment to refer an individual for services or items paid for under the Medicare program. Similar provisions in 42 U.S.C. §§ 1396h(b)(1) and (b)(2) cover the offer or acceptance of a payment for referral to the Medicaid program.

This guideline also applies to violations of law involving bribes and kickbacks in expenses incurred for a presidential nominating convention or presidential election campaign. These offenses are prohibited under 26 U.S.C. §§ 9012(e) and 9042(d), which apply to candidates for President and Vice President whose campaigns are eligible for federal matching funds.

This guideline also applies to violations of the Foreign Corrupt Practices Act, 15 U.S.C. §§ 77d-1 and 77d-2, and to violations of 18 U.S.C. § 224, sports bribery, as well as certain violations of the Interstate Commerce Act.

\*    \*    \*    \*    \*

October, 1987

**Defense Exhibit 9-54**

## 5. COUNTERFEITING, FORGERY, AND INFRINGEMENT OF COPYRIGHT OR TRADEMARK

§2B5.1.    **Offenses Involving Counterfeit Obligations of the United States**

    (a)    Base Offense Level: **9**

    (b)    Specific Offense Characteristics

        (1)    If the face value of the counterfeit items exceeded $2,000, increase by the corresponding number of levels from the table at §2F1.1 (Fraud and Deceit).

        (2)    If the defendant manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting, and the offense level as determined above is less than **15**, increase to **15**.

*Commentary*

*Statutory Provisions:  18 U.S.C. §§ 471-473, 476, 477, 500, 501, 510, 1003, 2314, 2315.*

*Application Notes:*

*1.    This guideline applies to counterfeiting of United States currency and coins, food stamps, postage stamps, treasury bills, bearer bonds and other items that generally could be described as bearer obligations of the United States, i.e., that are not made out to a specific payee.*

*2.    Subsection (b)(2) does not apply to persons who merely photocopy notes, paste corners of notes on notes of a different denomination, or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny.*

*Background:    Possession of counterfeiting devices to copy obligations (including securities) of the United States is treated as an aggravated form of counterfeiting because of the sophistication and planning involved in manufacturing counterfeit obligations and the public policy interest in protecting the integrity of government obligations.    Similarly, an enhancement is provided for a defendant who produces, rather than merely passes, the counterfeit items.*

§2B5.2.    **Forgery; Offenses Involving Counterfeit Instruments Other than Obligations of the United States.** Apply §2F1.1 (Fraud and Deceit).

*Commentary*

*Statutory Provision:  18 U.S.C. § 510.*

§2B5.3.    **Criminal Infringement of Copyright**

    (a)    Base Offense Level: **6**

October, 1987

# Defense Exhibit 9-55

(b) Specific Offense Characteristic

(1) If the retail value of the infringing items exceeded $2,000, increase by the corresponding number of levels from the table in §2F1.1 (Fraud and Deceit).

*Commentary*

*Statutory Provisions:* 17 U.S.C. § 506(a); 18 U.S.C. §§ 2319, 2511.

*Background:* This guideline treats copyright violations much like fraud. Note that the enhancement is based on the value of the infringing items, which will generally exceed the loss or gain due to the offense.

The Electronic Communications Act of 1986 prohibits the interception of satellite transmission for purposes of direct or indirect commercial advantage or private financial gain. Such violations are similar to copyright offenses and are therefore covered by this guideline.

## §2B5.4.  Criminal Infringement of Trademark

(a) Base Offense Level: 6

(b) Specific Offense Characteristic

(1) If the retail value of the infringing items exceeded $2,000, increase by the corresponding number of levels from the table in §2F1.1 (Fraud and Deceit).

*Commentary*

*Statutory Provisions:* 18 U.S.C. §§ 2318, 2320.

*Background:* The Commission concluded that trademark infringement is roughly comparable to copyright infringement.

\* \* \* \* \*

## 6.  MOTOR VEHICLE IDENTIFICATION NUMBERS

## §2B6.1.  Altering or Removing Motor Vehicle Identification Numbers, or Trafficking in Motor Vehicles or Parts with Altered or Obliterated Identification Numbers

(a) Base Offense Level: 8

October, 1987

**Defense Exhibit 9-56**

(b)    Specific Offense Characteristic

(1)    If the retail value of the motor vehicles or parts involved exceeded $2,000, increase the offense level by the corresponding number of levels from the table in §2F1.1 (Fraud and Deceit).

(2)    If the offense involved organized criminal activity, and the offense level as determined above is less than level **14**, increase to level **14**.

## Commentary

*Statutory Provisions:*  *18 U.S.C. §§ 511, 553(a)(2), 2320.*

*Application Note:*

1.    *See Commentary to §2B1.1 (Larceny, Embezzlement, and other Forms of Theft) regarding the adjustment in subsection (b)(2) for organized criminal activity, such as car theft rings and "chop shop" operations.*

*Background:*    *The statutes covered in this guideline prohibit altering or removing motor vehicle identification numbers, importing or exporting, or trafficking in motor vehicles or parts knowing that the identification numbers have been removed, altered, tampered with, or obliterated.  Violations of 18 U.S.C. §§ 511 and 553(a)(2) carry a maximum of five years imprisonment.  Violations of 18 U.S.C. § 2320 carry a maximum of ten years imprisonment.*

October, 1987

# Defense Exhibit 9-57

*[Page intentionally blank]*

October, 1987

**Defense Exhibit 9-58**

## PART C - OFFENSES INVOLVING PUBLIC OFFICIALS

### Introductory Commentary

The Commission believes that current sentencing practices do not adequately reflect the seriousness of public corruption offenses. Therefore, these guidelines provide for sentences that are considerably higher than average current practice.

§2C1.1.   **Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right**

(a)   Base Offense Level: **10**

(b)   Specific Offense Characteristics

Apply the greater:

(1)   If the value of the bribe or the action received in return for the bribe exceeded $2,000, increase by the corresponding number of levels from the table in §2F1.1 (Fraud and Deceit).

(2)   If the offense involved a bribe for the purpose of influencing an elected official or any official holding a high level decision-making or sensitive position, increase by **8** levels.

(c)   Cross References

(1)   If the bribe was for the purpose of concealing or facilitating another criminal offense, or for obstructing justice in respect to another criminal offense, apply §2X3.1 (Accessory After the Fact) in respect to such other criminal offense if the resulting offense level is greater than that determined above.

(2)   If the offense involved a threat of physical injury or property destruction, apply §2B3.2 (Extortion by Force or Threat of Injury or Serious Damage) if the resulting offense level is greater than that determined above.

### Commentary

_Statutory Provisions:_ 18 U.S.C. §§ 201(b)(1), (2), 872, 1951.

_Application Notes:_

1.   "Official holding a high level decision-making or sensitive position" includes, for example, prosecuting attorneys, judges, agency administrators, supervisory law enforcement officers, and other governmental officials with similar levels of responsibility.

2.   "Value of the bribe or the action received in return for the bribe" means the greater of the value of the bribe or the value of the action (i.e., benefit or favor) received, or to be

October, 1987

## Defense Exhibit 9-59

*received, in return for the bribe. The "value of the action received in return" means the net value of such action. For example, if a $150,000 contract on which $20,000 profit was made was awarded in return for a bribe, the value of the action received in return is $20,000.*

3.    *Do not apply §3B1.3 (Abuse of Position of Trust or Use of Special Skill) except where the offense level is determined under §3C1.1(c)(1) or (2).*

4.    *In some cases the monetary value of the bribe may not be known or may not adequately reflect the seriousness of the offense. For example, a small payment may be made in exchange for the falsification of inspection records for a shipment of defective parachutes or the destruction of evidence in a major narcotics case. In part, this issue is addressed by the adjustments in §2C1.1(b)(2), and §2C1.1(c)(1) and (2). However, in cases in which the seriousness of the offense is still not adequately reflected, an upward departure is warranted. See Chapter Five, Part K (Departures).*

5.    *Where the court finds that the defendant's conduct was part of a systematic or pervasive corruption of a governmental function, process, or office that may cause loss of public confidence in government, an upward departure may be warranted. See Chapter Five, Part K (Departures).*

6.    *When multiple counts are involved, each bribe is to be treated as a separate, unrelated offense not subject to §3D1.2(d) or §3D1.3(b). Instead, apply §3D1.4. However, if a defendant makes several payments as part of a single bribe, that is to be treated as a single bribery offense involving the total amount of the bribe.*

*Background:    This section applies to a person who offers or gives a bribe for a corrupt purpose, such as inducing a public official to participate in a fraud or to influence his official actions, or to a public official who solicits or accepts such a bribe. The maximum term of imprisonment authorized by statute for these offenses is fifteen years under 18 U.S.C. § 201(b) and (c), twenty years under 18 U.S.C. § 1951, and three years under 18 U.S.C. § 872.*

*The object and nature of a bribe may vary widely from case to case. In some cases, the object may be commercial advantage (e.g., preferential treatment in the award of a government contract). In others, the object may be issuance of a license to which the recipient is not entitled. In still others, the object may be the obstruction of justice. Consequently, a guideline for the offense must be designed to cover diverse situations.*

*The amount of the bribe is used as a factor in the guideline not because it directly measures harm to society, but because it is improbable that a large bribe would be given for a favor of little consequence. Moreover, for deterrence purposes, the punishment should be commensurate with the gain.*

*Under §2C1.1(b)(2), if the bribe is for the purpose of influencing an official act by certain officials, the offense level is increased by 8 levels if this increase is greater than that provided under §2C1.1(b)(1).*

*Under §2C1.1(c)(1), if the purpose of the bribe involved the facilitation of another criminal offense or the obstruction of justice in respect to another criminal offense, the guideline for §2X3.1 (Accessory After the Fact) in respect to that criminal offense will be applied, if the result is greater than that determined above. For example, if a bribe was given*

2.32                                October, 1987

# Defense Exhibit 9-60

*for the purpose of facilitating or covering up the offense of espionage, the guideline for accessory after the fact to espionage would be applied.*

*Under §2C1.1(c)(2), if the offense involved forcible extortion, the guideline from §2B3.2 (Extortion by Force or Threat of Injury or Serious Damage) will apply if the result is greater than that determined above.*

*Note that, when applying 2C1.1(c)(1) or (2), an adjustment from Chapter Three, Part B (Role in the Offense) will also apply. This normally will result in an increase of at least 2 levels.*

*Section 2C1.1 also applies to extortion by officers or employees of the United States in violation of 18 U.S.C. § 872, and Hobbs Act extortions, conspiracies, and attempts under color of official right, in violation of 18 U.S.C. § 1951. The Hobbs Act, 18 U.S.C. § 1951(b)(2), applies in part to any person who acts "under color of official right." This statute applies to extortionate conduct by, among others, officials and employees of state and local governments. The panoply of conduct that may be prosecuted under the Hobbs Act varies from a city building inspector who demands a small amount of money from the owner of an apartment building to ignore code violations to a state court judge who extracts substantial interest-free loans from attorneys who have cases pending in his court.*

*Offenses involving attempted bribery are frequently not completed because the victim reports the offense to authorities or is acting in an undercover capacity. Failure to complete the offense does not lessen the defendant's culpability in attempting to use public position for personal gain. Therefore, solicitations and attempts are treated as equivalent to the underlying offense.*

**§2C1.2.    Offering, Giving, Soliciting, or Receiving a Gratuity**

(a)    Base Offense Level: **7**

(b)    Specific Offense Characteristics

Apply the greater:

(1)    If the value of the gratuity exceeded $2,000, increase by the corresponding number of levels from the table in §2F1.1 (Fraud and Deceit).

(2)    If the gratuity was given, or to be given, to an elected official or any official holding a high level decision-making or sensitive position, increase by **8** levels.

*Commentary*

*Statutory Provision:*  *18 U.S.C. § 201(c)(1).*

October, 1987

**Defense Exhibit 9-61**

*Application Notes:*

1. *"Official holding a high level decision-making or sensitive position" includes, for example, prosecuting attorneys, judges, agency administrators, supervisory law enforcement officers, and other governmental officials with similar levels of responsibility.*

2. *Do not apply the adjustment in §3B1.3 (Abuse of Position or Trust or Use of Special Skill).*

3. *In some cases, the public official is the instigator of the offense. In others, a private citizen who is attempting to ingratiate himself or his business with the public official may be the initiator. This factor may appropriately be considered in determining the placement of the sentence within the applicable guideline range.*

4. *When multiple counts of receiving a gratuity are involved, each count is to be treated as a separate, unrelated offense not subject to §3D1.2(d) or §3D1.3(b). Instead, apply §3D1.4.*

*Background: This section applies to the offering, giving, soliciting, or receiving of a gratuity to a public official in respect to an official act. A corrupt purpose is not an element of this offense. The maximum term of imprisonment authorized by statute for these offenses is two years. An adjustment is provided where the value of the gratuity exceeded $2,000, or where the public official was an elected official or held a high level decision-making or sensitive position.*

### §2C1.3.  Conflict of Interest

    (a)  Base Offense Level: **6**

    (b)  Specific Offense Characteristic

        (1)  If the offense involved actual or planned harm to the government, increase by **4** levels.

*Commentary*

*Statutory Provisions: 18 U.S.C. §§ 203, 205, 207-208.*

*Application Note:*

1. *Do not apply the adjustment in §3B1.3 (Abuse of Position of Trust or Use of Special Skill).*

*Background: This section applies to financial and non-financial conflicts of interest by present and former federal officers and employees. The maximum term of imprisonment authorized by statute is two years.*

### §2C1.4.  Payment or Receipt of Unauthorized Compensation

    (a)  Base Offense Level: **6**

2.34

October, 1987

# Defense Exhibit 9-62

*Commentary*

*Statutory Provisions:* *18 U.S.C. §§ 209, 1909.*

*Application Note:*

1.  *Do not apply the adjustment in §3B1.3 (Abuse of Position of Trust or Use of Special Skill).*

*Background:* *Violations of 18 U.S.C. § 209 involve the unlawful supplementation of salary of various federal employees. 18 U.S.C. § 1909 prohibits bank examiners from performing any service for compensation for banks or bank officials. Both offenses are misdemeanors for which the maximum term of imprisonment authorized by statute is one year.*

**§2C1.5.    Payments to Obtain Public Office**

    (a)    Base Offense Level: **8**

*Commentary*

*Statutory Provisions:* *18 U.S.C. §§ 210, 211.*

*Application Note:*

1.  *Do not apply the adjustment in §3B1.3 (Abuse of Position of Trust or Use of Special Skill).*

*Background:* *Under 18 U.S.C. § 210, it is unlawful to pay, offer, or promise anything of value to a person, firm, or corporation in consideration of procuring appointive office. Under 18 U.S.C. § 211, it is unlawful to solicit or accept anything of value in consideration of a promise of the use of influence in obtaining appointive federal office. Both offenses are misdemeanors for which the maximum term of imprisonment authorized by statute is one year.*

**§2C1.6.    Loan or Gratuity to Bank Examiner, or Gratuity for Adjustment of Farm Indebtedness, or Procuring Bank Loan, or Discount of Commercial Paper**

    (a)    Base Offense Level: **7**

    (b)    Specific Offense Characteristic

        (1)    If the value of the gratuity exceeded $2,000, increase by the corresponding number of levels from the table in §2F1.1 (Fraud and Deceit).

*Commentary*

*Statutory Provisions:* *18 U.S.C. §§ 212-214, 217.*

October, 1987

**Defense Exhibit 9-63**

*Application Note:*

1.  Do not apply the adjustment in §3B1.3 *(Abuse of Position of Trust or Use of Special Skill).*

*Background:*  Violations of 18 U.S.C. §§ 212 and 213 involve the offer to, or acceptance by, a bank examiner of a loan or gratuity.  Violations of 18 U.S.C. § 214 involve the offer or receipt of anything of value for procuring a loan or discount of commercial paper from a Federal Reserve bank.  Violations of 18 U.S.C. § 217 involve the acceptance of a fee or other consideration by a federal employee for adjusting or cancelling a farm debt.  These offenses are misdemeanors for which the maximum term of imprisonment authorized by statute is one year.

2.36

October, 1987

**Defense Exhibit 9-64**

PART D - OFFENSES INVOLVING DRUGS

1. **UNLAWFUL MANUFACTURING, IMPORTING, EXPORTING, TRAFFICKING, OR POSSESSION; CONTINUING CRIMINAL ENTERPRISE**

§2D1.1.    Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses)

    (a)    Base Offense Level:

        (1)    **43**, for an offense that results in death or serious bodily injury with a prior conviction for a similar drug offense; or

        (2)    **38**, for an offense that results in death or serious bodily injury and involved controlled substances (except Schedule III, IV, and V controlled substances and less than: (A) fifty kilograms of marihuana, (B) ten kilograms of hashish, and (C) one kilogram of hashish oil); or

        (3)    For any other offense, the base offense level is the level specified in the Drug Quantity Table below.

    (b)    Specific Offense Characteristic

        (1)    If a firearm or other dangerous weapon was possessed during commission of the offense, increase by 2 levels.

2.37                                                October, 1987

## Defense Exhibit 9-65

## DRUG QUANTITY TABLE

| Controlled Substances and Quantity* | Base Offense Level |
|---|---|
| 10 KG Heroin or equivalent Schedule I or II Opiates, 50 KG Cocaine or equivalent Schedule I or II Stimulants, 500 G Cocaine Base, 10 KG PCP or 1 KG Pure PCP, 100 G LSD or equivalent Schedule I or II Hallucinogens, 4 KG Fentanyl or 1 KG Fentanyl Analogue, 10,000 KG Marihuana, 100,000 Marihuana Plants, 2000 KG Hashish, 200 KG Hashish Oil (or more of any of the above) | Level 36 |
| 3-9.9 KG Heroin or equivalent Schedule I or II Opiates, 15-49.9 KG Cocaine or equivalent Schedule I or II Stimulants, 150-499 G Cocaine Base, 3-9.9 KG PCP or 300-999 G Pure PCP, 30-99 G LSD or equivalent Schedule I or II Hallucinogens, 1.2-3.9 KG Fentanyl or 300-999 G Fentanyl Analogue, 3000-9999 KG Marihuana, 30,000-99,999 Marihuana Plants, 600-1999 KG Hashish, 60-199 KG Hashish Oil | Level 34 |
| 1-2.9 KG Heroin or equivalent Schedule I or II Opiates, 5-14.9 KG Cocaine or equivalent Schedule I or II Stimulants, 50-149 G Cocaine Base, 1-2.9 KG PCP or 100-299 G Pure PCP, 10-29 G LSD or equivalent Schedule I or II Hallucinogens, .4-1.1 KG Fentanyl or 100-299 G Fentanyl Analogue, 1000-2999 KG Marihuana, 10,000-29,999 Marihuana Plants, 200-599 KG Hashish, 20-59.9 KG Hashish Oil | Level 32** |
| 700-999 G Heroin or equivalent Schedule I or II Opiates, 3.5-4.9 KG Cocaine or equivalent Schedule I or II Stimulants, 35-49 G Cocaine Base, 700-999 G PCP or 70-99 G Pure PCP, 7-9.9 G LSD or equivalent Schedule I or II Hallucinogens, 280-399 G Fentanyl or 70-99 G Fentanyl Analogue, 700-999 KG Marihuana, 7000-9999 Marihuana Plants, 140-199 KG Hashish, 14-19.9 KG Hashish Oil | Level 30 |
| 400-699 G Heroin or equivalent Schedule I or II Opiates, 2-3.4 KG Cocaine or equivalent Schedule I or II Stimulants, 20-34.9 G Cocaine Base, 400-699 G PCP or 40-69 G Pure PCP, 4-6.9 G LSD or equivalent Schedule I or II Hallucinogens, 160-279 G Fentanyl or 40-69 G Fentanyl Analogue, 400-699 KG Marihuana, 4000-6999 Marihuana Plants, 80-139 KG Hashish, 8.0-13.9 KG Hashish Oil | Level 28 |
| 100-399 G Heroin or equivalent Schedule I or II Opiates, .5-1.9 KG Cocaine or equivalent Schedule I or II Stimulants, 5-19 G Cocaine Base, 100-399 G PCP or 10-39 G Pure PCP, 1-3.9 G LSD or equivalent Schedule I or II Hallucinogens, 40-159 G Fentanyl or 10-39 G Fentanyl Analogue, 100-399 KG Marihuana, 1000-3999 Marihuana Plants, 20-79 KG Hashish, 2.0-7.9 KG Hashish Oil | Level 26** |
| 80-99 G Heroin or equivalent Schedule I or II Opiates, 400-499 G Cocaine or equivalent Schedule I or II Stimulants, 4-4.9 G Cocaine Base, 80-99 G PCP or 8-9.9 G Pure PCP, 800-999 MG LSD or equivalent Schedule I or II Hallucinogens, 32-39 G Fentanyl or 8-9.9 G Fentanyl Analogue, 80-99 KG Marihuana, 800-999 Marihuana Plants, 16-19.9 KG Hashish, 1.6-1.9 KG Hashish Oil | Level 24 |
| 60-79 G Heroin or equivalent Schedule I or II Opiates, 300-399 G Cocaine or equivalent Schedule I or II Stimulants, 3-3.9 G Cocaine Base, 60-79 G PCP or 6-7.9 G Pure PCP, 600-799 MG LSD or equivalent Schedule I or II Hallucinogens, 24-31.9 G Fentanyl or 6-7.9 G Fentanyl Analogue, 60-79 KG Marihuana, 600-799 Marihuana Plants, 12-15.9 KG Hashish, 1.2-1.5 KG Hashish Oil | Level 22 |
| 40-59 G Heroin or equivalent Schedule I or II Opiates, 200-299 G Cocaine or equivalent Schedule I or II Stimulants, 2-2.9 G Cocaine Base, 40-59 G PCP or 4-5.9 G Pure PCP, 400-599 MG LSD or equivalent Schedule I or II Hallucinogens, 16-23.9 G Fentanyl or 4-5.9 G Fentanyl Analogue, 40-59 KG Marihuana, 400-599 Marihuana Plants, 8-11.9 KG Hashish, .8-1.1 KG Hashish Oil, 20 KG+ Schedule III or other Schedule I or II controlled substances | Level 20 |

## Defense Exhibit 9-66

20-39 G Heroin or equivalent Schedule I or II Opiates, 100-199 G Cocaine or equivalent Schedule I or II Stimulants, 1-1.9 G Cocaine Base, 20-39 G PCP or 2-3.9 G Pure PCP, 200-399 MG LSD or equivalent Schedule I or II Hallucinogens, 8-15.9 G Fentanyl or 2-3.9 G Fentanyl Analogue, 20-39 KG Marihuana, 200-399 Marihuana Plants, 5-7.9 KG Hashish, 500-799 G Hashish Oil, 10-19 KG Schedule III or other Schedule I or II controlled substances                    Level 18

10-19 G Heroin or equivalent Schedule I or II Opiates, 50-99 G Cocaine or equivalent Schedule I or II Stimulants, 500-999 MG Cocaine Base, 10-19.9 G PCP or 1-1.9 G Pure PCP, 100-199 MG LSD or equivalent Schedule I or II Hallucinogens, 4-7.9 G Fentanyl or 1-1.9 G Fentanyl Analogue, 10-19 KG Marihuana, 100-199 Marihuana Plants, 2-4.9 KG Hashish, 200-499 G Hashish Oil, 5-9.9 KG Schedule III or other Schedule I or II controlled substances                    Level 16

5-9.9 G Heroin or equivalent Schedule I or II Opiates, 25-49 G Cocaine or equivalent Schedule I or II Stimulants, 250-499 MG Cocaine Base, 5-9.9 G PCP or 500-999 MG Pure PCP, 50-99 MG LSD or equivalent Schedule I or II Hallucinogens, 2-3.9 G Fentanyl or .5-.9 G Fentanyl Analogue, 5-9.9 KG Marihuana, 50-99 Marihuana Plants, 1-1.9 KG Hashish, 100-199 G Hashish Oil, 2.5-4.9 KG Schedule III or other Schedule I or II controlled substances                    Level 14

Less than the following: 5 G Heroin or equivalent Schedule I or II Opiates, 25 G Cocaine or equivalent Schedule I or II Stimulants, 250 MG Cocaine Base, 5 G PCP or 500 MG Pure PCP, 50 MG LSD or equivalent Schedule I or II Hallucinogens, 2 G Fentanyl or 500 MG Fentanyl Analogue; 2.5-4.9 KG Marihuana, 25-49 Marihuana Plants, 500-999 G Hashish, 50-99 G Hashish Oil, 1.25-2.4 KG Schedule III or other Schedule I or II controlled substances, 20 KG+ Schedule IV                    Level 12

1-2.4 KG Marihuana, 10-24 Marihuana Plants, 200-499 G Hashish, 20-49 G Hashish Oil, .50-1.24 KG Schedule III or other Schedule I or II controlled substances, 8-19 KG Schedule IV                    Level 10

250-999 G Marihuana, 3-9 Marihuana Plants, 50-199 G Hashish, 10-19 G Hashish Oil, 125-449 G Schedule III or other Schedule I or II controlled substances, 2-7.9 KG Schedule IV, 20 KG+ Schedule V                    Level 8

Less than the following: 250 G Marihuana, 3 Marihuana Plants, 50 G Hashish, 10 G Hashish Oil, 125 G Schedule III or other Schedule I or II controlled substances, 2 KG Schedule IV, 20 KG Schedule V                    Level 6

---

\*    The scale amounts for all controlled substances refer to the total weight of the controlled substance. Consistent with the provisions of the Anti-Drug Abuse Act, if any mixture of a compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity. If a mixture or compound contains a detectable amount of more than one controlled substance, the most serious controlled substance shall determine the categorization of the entire quantity.

\*\*   Statute specifies a mandatory minimum sentence.

*Commentary*

*Statutory Provisions:* *21 U.S.C. §§ 841, 960.*

*Application Notes:*

1.    *"Similar drug offense" as used in §2D1.1(a)(1) means a prior conviction as described in 21 U.S.C. §§ 841(b) or 962(b).*

**Defense Exhibit 9-67**

2.    The statute and guideline also apply to "counterfeit" substances, which are defined in 21 U.S.C. § 802 to mean controlled substances that are falsely labeled so as to appear to have been legitimately manufactured or distributed.

3.    Definitions of "firearm" and "dangerous weapon" are found in the Commentary to §1B1.1 (Application Instructions). The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet. The enhancement also applies to offenses that reference §2D1.1, i.e., §§2D1.2-2D1.4. The adjustment is to be applied even if several counts are involved and the weapon was present in any of them.

4.    Distribution of "a small amount of marihuana for no remuneration", 21 U.S.C. §§ 841(b)(4), is treated as simple possession, to which §2D2.1 applies.

5.    Any reference to a particular controlled substance in these guidelines includes all salts, isomers, and all salts of isomers. Any reference to cocaine includes ecgonine and coca leaves, except extracts of coca leaves from which cocaine and ecgonine have been removed.

6.    Where there are multiple transactions or multiple drug types, the quantities of drugs are to be added. Tables for making the necessary conversions are provided below.

7.    Where a mandatory (statutory) minimum sentence applies, this mandatory minimum sentence may be "waived" and a lower sentence imposed (including a sentence below the applicable guideline range), as provided in 28 U.S.C. § 994(n), by reason of a defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense". See §5K1.1 (Substantial Assistance to Authorities).

8.    A defendant who used special skills in the commission of the offense may be subject to an enhancement under §3B1.3 (Abuse of Position of Trust or Use of Special Skill). Certain professionals often occupy essential positions in drug trafficking schemes. These professionals include doctors, pilots, boat captains, financiers, bankers, attorneys, chemists, accountants, and others whose special skill, trade, profession, or position may be used to significantly facilitate the commission of a drug offense.

9.    Trafficking in controlled substances, compounds, or mixtures of unusually high purity may warrant an upward departure. The purity of the controlled substance, particularly in the case of heroin, may be relevant in the sentencing process because it is probative of the defendant's role or position in the chain of distribution. Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs. As large quantities are normally associated with high purities, this factor is particularly relevant where smaller quantities are involved.

Congress provided an exception to purity considerations in the case of phencyclidine (PCP). 21 U.S.C. § 841(b)(1)(A). The legislation designates amounts of pure PCP and mixtures in establishing mandatory sentences. The first row of the table illustrates this

2.40                                                            October, 1987

# Defense Exhibit 9-68

*distinction as one kilogram of PCP or 100 grams of pure PCP. Allowance for higher sentences based on purity is not appropriate for PCP.*

10.   *The Commission has used the sentences provided in, and equivalences derived from, the statute (21 U.S.C. § 841(b)(1)), as the primary basis for the guideline sentences. The statute, however, provides direction only for the more common controlled substances, i.e., heroin, cocaine, PCP, LSD and marihuana. The Drug Equivalency Tables set forth below provide conversion factors for other substances, which the Drug Quantity Table refers to as "equivalents" of these drugs. For example, one gram of a substance containing methamphetamine, a Schedule I stimulant, is to be treated as the equivalent of two grams of a substance containing cocaine in applying the Drug Quantity Table.*

*The Drug Equivalency Tables also provide a means for combining differing controlled substances to obtain a single offense level. If all the drugs are "equivalents" of the same drug, e.g., stimulants that are grouped with cocaine, convert them to that drug. In other cases, convert each of the drugs to either the heroin or marihuana equivalents, add the quantities, and look up the total in the Drug Quantity Table to obtain the combined offense level. Use the marihuana equivalents when the only substances involved are "Schedule I Marihuana," "Schedule III Substances," "Schedule IV Substances," "Schedule V Substances" or "Other Schedule I or II Substances." Otherwise, use the heroin equivalents.*

*Note: Because of the statutory equivalences, the ratios in the Drug Equivalency Tables do not necessarily reflect dosages based on pharmacological equivalents.*

*Examples:*

a.   *The defendant is convicted of selling seventy grams of a substance containing PCP (Level 22) and 250 milligrams of a substance containing LSD (Level 18). Both PCP and LSD are grouped together in the Drug Equivalency Tables under the heading "LSD, PCP and Other Schedule I and II Hallucinogens," which provide PCP equivalencies. The 250 milligrams of LSD is equivalent to twenty-five grams of PCP. The total is therefore ninety-five grams of PCP, for which the Drug Quantity Table provides an offense level of 24.*

b.   *The defendant is convicted of selling 500 grams of marihuana (Level 8) and five kilograms of diazepam (Level 8). The diazepam, a Schedule IV drug, is equivalent to 625 grams of marihuana. The total, 1.125 kilograms of marihuana, has an offense level of 10 in the Drug Quantity Table.*

c.   *The defendant is convicted of selling eighty grams of cocaine (Level 16) and five kilograms of marihuana (Level 14). The cocaine is equivalent to sixteen grams of heroin; the marihuana, to five grams of heroin. The total equivalent is twenty-one grams of heroin, which has an offense level of 18 in the Drug Quantity Table.*

**Defense Exhibit 9-69**

## *DRUG EQUIVALENCY TABLES*

### Schedule I or II Opiates

| | |
|---|---|
| 1 gm of Alpha-Methylfentanyl = | 100 gm of heroin |
| 1 gm of Dextromoramide – | 0.67 gm of heroin |
| 1 gm of Dipipanone = | 0.25 gm of heroin |
| 1 gm of 3-Methylfentanyl = | 125 gm of heroin |
| 1 gm of 1-Methyl-4-phenyl-4-propionoxypiperidine/MPPP = | 0.7 gm of heroin |
| 1 gm of 1-(2-Phenylethyl)-4-phenyl-4-acetyloxypiperidine/PEPAP = 0.7 gm of heroin | |
| 1 gm of Alphaprodine = | 0.1 gm of heroin |
| 1 gm of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide) = | 31.25 gm of heroin |
| 1 gm of Hydromorphone/Dihydromorphinone = | 2.5 gm of heroin |
| 1 gm of Levorphanol = | 2.5 gm of heroin |
| 1 gm of Meperidine/Pethidine = | 0.05 gm of heroin |
| 1 gm of Methadone = | 0.5 gm of heroin |
| 1 gm of 6-Monoacetylmorphine = | 1 gm of heroin |
| 1 gm of Morphine = | 0.5 gm of heroin |
| 1 gm of Oxycodone = | 0.5 gm of heroin |
| 1 gm of Oxymorphone = | 5 gm of heroin |
| 1 gm of Racemorphan = | 0.8 gm of heroin |
| 1 gm of Codeine = | 0.08 gm of heroin |
| 1 gm of Dextropropoxyphene/Propoxyphene-Bulk = | 0.05 gm of heroin |
| 1 gm of Ethylmorphine = | 0.165 gm of heroin |
| 1 gm of Hydrocodone/Dihydrocodeinone = | 0.5 gm of heroin |
| 1 gm of Mixed Alkaloids of Opium/Papaveretum = | 0.25 gm of heroin |
| 1 gm of Opium = | 0.05 gm of heroin |

### Cocaine and Other Schedule I and II Stimulants

| | |
|---|---|
| 1 gm of Cocaine = | 0.2 gm of heroin |
| 1 gm of N-Ethylamphetamine = | 0.4 gm of cocaine/0.08 gm of heroin |
| 1 gm of Fenethylline = | 0.2 gm of cocaine/0.04 gm of heroin |
| 1 gm of Amphetamine = | 1.0 gm of cocaine/0.2 gm of heroin |
| 1 gm of Dextroamphetamine = | 1.0 gm of cocaine/0.2 gm of heroin |
| 1 gm of Methamphetamine = | 2.0 gm of cocaine/0.4 gm of heroin |
| 1 gm of L-Methamphetamine/Levo-methamphetamine/ L-Desoxyephedrine = | 0.2 gm of cocaine/0.04 gm of heroin |
| 1 gm of Phenmetrazine | 0.4 gm of cocaine/0.08 gm of heroin |
| 1 gm of Phenylacetone/$P_2P$ (amphetamine precursor) = | 0.375 gm of cocaine/0.075 gm of heroin |
| 1 gm of Phenylacebone/$P_2P$ (methamphetamine precursor) = | 0.833 gm of cocaine/0.167 gm of heroin |
| 1 gm of Cocaine Base ("Crack") = | 100 gm of cocaine/20 gm of heroin |

October, 1987

# Defense Exhibit 9-70

LSD, PCP, and Other Schedule I and II Hallucinogens

| | |
|---|---|
| 1 gm of Bufotenine = | 0.07 gm of heroin or PCP |
| 1 gm of D-Lysergic Acid Diethylamide/Lysergide/LSD = | 100 gm of heroin or PCP |
| 1 gm of Diethyltryptamine/DET = | 0.08 gm of heroin or PCP |
| 1 gm of Dimethyltryptamine/DMT = | 0.1 gm of heroin or PCP |
| 1 gm of Mescaline = | 0.01 gm of heroin or PCP |
| 1 gm of Mushrooms containing Psilocin and/or Psilocybin (Dry) = | 0.001 gm of heroin or PCP |
| 1 gm of Mushrooms containing Psilocin and/or Psilocybin (Wet) = | 0.0001 gm of heroin or PCP |
| 1 gm of Peyote (Dry) = | 0.0005 gm of heroin or PCP |
| 1 gm of Peyote (Wet) = | 0.00005 gm of heroin or PCP |
| 1 gm of Phencyclidine/PCP | 1 gm of heroin |
| 1 gm of Phencyclidine (Pure PCP) = | 10 gm of heroin or PCP |
| 1 gm of Liquid Phencyclidine = | 0.1 gm of heroin or PCP |
| 1 gm of Psilocin = | 0.5 gm of heroin or PCP |
| 1 gm of Psilocybin | 0.5 gm of heroin or PCP |
| 1 gm of Pyrrolidine Analog of Phencyclidine/PHP = | 1 gm of heroin or PCP |
| 1 gm of Thiophene Analog of Phencyclidine/TCP = | 1 gm of heroin or PCP |
| 1 gm of 4-Bromo-2,5-Dimethoxyamphetamine/DOB = | 2.5 gm of heroin or PCP |
| 1 gm of 2,5-Dimethoxy-4-methylamphetamine/DOM = | 1.67 gm of heroin or PCP |
| 1 gm of 3,4-Methylenedioxyamphetamine/MDA = | 0.05 gm of heroin or PCP |
| 1 gm of 3,4-Methylenedioxymethamphetamine/MDMA = | 0.035 gm of heroin or PCP |
| 1 gm of 1-Piperidinocyclohexanecarbonitrile/PCC = | 0.68 gm of heroin or PCP |

Schedule I Marihuana

| | |
|---|---|
| 1 gm of Marihuana/Cannabis = | 1 mg of heroin |
| 1 Marihuana/Cannabis Plant = | 0.1 gm of heroin/100 gm of marihuana |
| 1 gm of Marihuana/Cannabis, granulated, powdered, etc. = | 1 mg of heroin/1 gm of marihuana |
| 1 gm of Hashish Oil = | 0.05 gm of heroin/50 gm of marihuana |
| 1 gm of Cannabis Resin or Hashish – | 5 mg of heroin/5 gm of marihuana |
| 1 gm of Tetrahydrocannabinol, Organic = | 0.167 gm of heroin/167 gm of marihuana |
| 1 gm of Tetrahydrocannabinol, Synthetic = | 0.167 gm of heroin/167 gm of marihuana |

Other Schedule I or II Substances

| | |
|---|---|
| 1 gm of Methaqualone = | 0.7 mg of heroin/700 mg of marihuana |
| 1 gm of Amobarbital | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Pentobarbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Secobarbital = | 2 mg of heroin/2 gm of marihuana |

October, 1987

# Defense Exhibit 9-71

Schedule III Substances

| | |
|---|---|
| 1 gm of Allobarbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Aprobarbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Barbiturate = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Butabarbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Butalbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Butobarbital/butethal = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Cyclobarbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Cyclopentobarbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Glutethimide = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Heptabarbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Hexethal = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Hexobarbital | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Metharbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Talbutal = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Thialbarbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Thiamylal = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Thiobarbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Thiohexethal = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Thiopental = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Vinbarbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Vinylbital = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Phendimetrazine = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Paregoric = | 2 mg of heroin/2 gm of marihuana |
| 1 gm of Hydrocodone Cough Syrups = | 2 mg of heroin/2 gm of marihuana |

Schedule IV Substances

| | |
|---|---|
| 1 gm of Phentermine = | 0.125 mg of heroin/0.125 gm of marihuana |
| 1 gm of Pentazocine = | 0.125 mg of heroin/0.125 gm of marihuana |
| 1 gm of Barbital | 0.125 mg of heroin/0.125 gm of marihuana |
| 1 gm of Diazepam = | 0.125 mg of heroin/0.125 gm of marihuana |
| 1 gm of Phenobarbital = | 0.125 mg of heroin/0.125 gm of marihuana |
| 1 gm of Mephobarbital – | 0.125 mg of heroin/0.125 gm of marihuana |
| 1 gm of Methohexital = | 0.125 mg of heroin/0.125 gm of marihuana |
| 1 gm of Methylphenobarbital/Mephobarbital = | 0.125 mg of heroin/0.125 gm of marihuana |
| 1 gm of Nitrazepam = | 0.125 mg of heroin/0.125 gm of marihuana |

Schedule V Substances

| | |
|---|---|
| 1 gm of codeine cough syrup = | 0.0125 mg of heroin/12.5 mg of marihuana |

*To facilitate conversions to drug equivalencies, the following table is provided:*

2.44                                                              October, 1987

# Defense Exhibit 9-72

## MEASUREMENT CONVERSION TABLE

1 oz = 28.35 gm
1 lb = 453.6 gm
1 lb = .45 kg
1 kg = 2.2 lbs
1 gal = 3.8 liters
1 qt = .95 liters
1 gm = 1 ml (liquid)
1 liter = 1,000 ml
1 kg = 1,000 gm
1 gm = 1,000 mg
1 grain = 64.8 mg

The following dosage equivalents for certain common drugs are provided by the Drug Enforcement Administration to facilitate the application of §2D1.1 of the guidelines in cases where the number of doses, but not the weight of the controlled substances, are known. The dosage equivalents provided in these tables reflect the amount of the pure drug contained in an average dose.

### DOSAGE EQUIVALENCY TABLE

#### Hallucinogens

| | |
|---|---|
| Anhalamine | 300 mg |
| Anhalonide | 300 mg |
| Anhalonine | 300 mg |
| Bufotenine | 1 mg |
| Diethyltryptamine | 60 mg |
| Dimethyltryptamine | 50 mg |
| Lophophorine | 300 mg |
| LSD (Lysergic acid diethylamide) | .1 mg |
| LSD tartrate | .05 mg |
| MDA | 100 mg |
| Mescaline | 500 mg |
| PCP | 5 mg |
| Pellotine | 300 mg |
| Peyote | 12 mg |
| Psilocin | 10 mg |
| Psilocybin | 10 mg |
| STP (DOM) Dimethoxyamphetamine | 3 mg |

#### Depressants

| | |
|---|---|
| Barbiturates | 100 mg |
| Brallobarbital | 30 mg |
| Eldoral | 100 mg |
| Eunarcon | 100 mg |
| Hexethel | 100 mg |
| Methaqualone | 300 mg |
| Thiobarbital | 50 mg |
| Thiohexethal | 60 mg |

October, 1987

## Defense Exhibit 9-73

*Stimulants*

| | |
|---|---|
| *Amphetamines* | *10 mg* |
| *Ethylamphetamine HCl* | *12 mg* |
| *Ethylamphetamine SO$_4$* | *12 mg* |
| *Methamphetamine combinations* | *5 mg* |
| *Methamphetamines* | *5 mg* |
| *Preludin* | *25 mg* |

11.   *If it is uncertain whether the quantity of drugs involved falls into one category in the table or an adjacent category, the court may use the intermediate level for sentencing purposes.   For example, sale of 700-999 grams of heroin is at level 30, while sale of 400-699 grams is at level 28.   If the exact quantity is uncertain, but near 700 grams, use of level 29 would be permissible.*

<u>Background</u>:   *Offenses under 21 U.S.C. §§ 841 and 960 receive identical punishment based upon the quantity of the controlled substance involved, the defendant's criminal history, and whether death or serious bodily injury resulted from the offense.*

*The base offense levels in §2D1.1 are either provided directly by the Anti-Drug Abuse Act of 1986 or are proportional to the levels established by statute, and apply to all unlawful trafficking.   Levels 32 and 26 in the Drug Quantity Table are the distinctions provided by the Anti-Drug Abuse Act; however, further refinement of drug amounts is essential to provide a logical sentencing structure for drug offenses.   To determine these finer distinctions, the Commission consulted numerous experts and practitioners, including authorities at the Drug Enforcement Administration, chemists, attorneys, probation officers, and members of the Organized Crime Drug Enforcement Task Forces, who also advocate the necessity of these distinctions.*

*The base offense levels with two asterisks represent mandatory minimum sentences established by the Anti-Drug Abuse Act of 1986.   These levels reflect sentences with a lower limit as close to the statutory requirement as possible; e.g., level 32 ranges from 121 to 151 months, where the statutory minimum is ten years or 120 months.*

*Frequently, a term of supervised release to follow imprisonment is required by statute for offenses covered by this guideline.   Guidelines for the imposition, duration, and conditions of supervised release are set forth in Chapter Five, §§5D3.1-5D3.3.*

**§2D1.2.   Involving Juveniles in the Trafficking of Controlled Substances**

(a)   Base Offense Level:

(1)   Level from §2D1.1, corresponding to triple the drug amount involved, but in no event less than level **13**, for involving an individual less than fourteen years of age; or

(2)   Level from §2D1.1, corresponding to double the drug amount involved, for involving an individual at least fourteen years of age and less than eighteen years of age.

October, 1987

**Defense Exhibit 9-74**

<u>*Commentary*</u>

<u>*Statutory Provision:*</u> *21 U.S.C. § 845(b).*

<u>*Application Notes:*</u>

1.  *If multiple drugs or offenses occur and all or some of them involve juveniles, double or triple the drug amounts for those offenses involving juveniles before totalling the amounts. For example, if there are three drug offenses of conviction and only one involves juveniles in trafficking, add the amount from the first and second offense, double the amount for the offense involving juveniles, and total. Use that total to determine the base offense level.*

2.  *The reference to the level from §2D1.1 includes the base offense level plus the specific offense characteristic dealing with a weapon. Under §2D1.1(b)(1) there is a 2-level increase for possession of a firearm or other dangerous weapon during commission of the offense.*

<u>*Background:*</u>    *The statute addressed by this section punishes any person eighteen years of age or older who knowingly employs or uses any person younger than eighteen to violate or to conceal any violation of any provision of Title 21. Section 845b provides a minimum mandatory period of imprisonment of one year (provided for by the minimum base offense level of 13) in addition to the punishment imposed for the applicable crime in which the defendant involved a juvenile. An increased penalty for the employment or use of persons under age fourteen is statutorily directed by 21 U.S.C. § 845b(d).*

**§2D1.3.    Distributing Controlled Substances to Individuals Younger than Twenty-One Years, To Pregnant Women, or Within 1000 Feet of a School or College**

(a)    Base Offense Level:

(1)    Level from §2D1.1, corresponding to double the drug amount involved, but in no event less than level **13**, for distributing a controlled substance to a pregnant woman;

(2)  (A)  Level from §2D1.1, corresponding to double the drug amount involved, but in no event less than level **13**, for distributing a controlled substance other than five grams or less of marihuana to an individual under the age of twenty-one years; or

(B)  Level from §2D1.1, corresponding to double the drug amount involved, but in no event less than level **13**, for distributing or manufacturing a controlled substance other than five grams or less of marihuana within 1000 feet of a schoolyard.

<u>*Commentary*</u>

<u>*Statutory Provisions:*</u> *21 U.S.C. §§ 845, 845a.*

2.47                                      October, 1987

# Defense Exhibit 9-75

*Application Notes:*

1. *The provisions addressed by this section contain a mandatory minimum period of imprisonment of one year. The base offense level is determined as in §2D1.2. If more than one enhancement provision is applicable in a particular case, the punishment imposed under the separate enhancement provisions should be added together in calculating the appropriate guideline sentence. However, only one of the enhancements in §2D1.3(a)(2) shall apply in a given case.*

2. *If multiple drugs or offenses occur, determine the offense level as described in the Commentary to §2D1.2.*

3. *The reference to the level from §2D1.1 includes the base offense level plus the specific offense characteristic dealing with a weapon. Under §2D1.1(b)(1) there is a 2-level increase for possession of a firearm, or other dangerous weapon during the commission of the offense.*

*Background:    The guideline sentences for distribution of controlled substances to individuals under twenty-one years of age or within 1000 feet of a school or college treat the distribution of less than five grams of marihuana less harshly than other controlled substances. This distinction is based on the statutory provisions that specifically exempt convictions for the distribution of less than five grams of marihuana from the mandatory minimum one-year imprisonment requirement.*

## §2D1.4.    Attempts and Conspiracies

(a)    Base Offense Level:    If a defendant is convicted of participating in an incomplete conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.

*Commentary*

*Statutory Provisions:  21 U.S.C. §§ 846, 963.*

*Application Notes:*

1. *If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale. If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. Where the defendant was not reasonably capable of producing the negotiated amount the court may depart and impose a sentence lower than the sentence that would otherwise result. If the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable.*

October, 1987

**Defense Exhibit 9-76**

2. *Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.*

3. *See Commentary to §2D1.1 regarding weapon possession.*

**§2D1.5.    Continuing Criminal Enterprise**

      (a)    Base Offense Level:

          (1)    **32**, for the first conviction of engaging in a continuing criminal enterprise; or

          (2)    **38**, for the second or any subsequent conviction of engaging in a continuing criminal enterprise; or

          (3)    **43**, for engaging in a continuing criminal enterprise as the principal administrator, leader, or organizer, if either the amount of drugs involved was 30 times the minimum in the first paragraph (i.e., the text corresponding to Level 36) of the Drug Quantity Table or 300 times the minimum in the third paragraph (i.e., the text corresponding to Level 32), or the principal received $10 millon in gross receipts for any twelve-month period.

*Commentary*

*Statutory Provision: 21 U.S.C. § 848.*

*Application Note:*

1. *Do not apply any adjustment from Chapter Three, Part B (Role in the Offense).*

*Background:    The base offense levels for continuing criminal enterprises are mandatory minimum sentences provided by the statute that mandate imprisonment for leaders of large scale drug enterprises. A conviction establishes that the defendant controlled and exercised decision-making authority over one of the most serious forms of ongoing criminal activity. Therefore, an adjustment for role in the offense in Chapter Three, Part B, is not applicable.*

**§2D1.6.    Use of Communication Facility in Committing Drug Offense**

      (a)    Base Offense Level:  **12**

*Commentary*

*Statutory Provision: 21 U.S.C. § 843(b).*

# Defense Exhibit 9-77

*Background:* This section covers the use of a communications facility in committing a drug offense. A communications facility includes any public or private instrument used in the transmission of writing, signs, signals, pictures, and sound; *e.g.,* telephone, wire, radio.

**§2D1.7. Unlawful Interstate Sale and Transporting of Drug Paraphernalia**

      (a)   Base Offense Level:  **12**

*Commentary*

*Statutory Provision:* 21 U.S.C. § 857.

**§2D1.8. Renting or Managing a Drug Establishment**

      (a)   Base Offense Level: **16**

      (b)   Specific Offense Characteristic

          (1)   If a firearm or other dangerous weapon was possessed during commission of the offense, increase by **2** levels.

*Commentary*

*Statutory Provision:* 21 U.S.C. § 856.

*Application Note:*

1.   Definitions of *"firearm"* and *"dangerous weapon"* are found in the *Commentary* to *§1B1.1 (Application Instructions).*

*Background:* This section covers the offense of knowingly opening, maintaining, managing, or controlling any building, room, or enclosure for the purpose of manufacturing, distributing, storing, or using a controlled substance contrary to law (*e.g.,* a *"crack house"*).

**§2D1.9. Placing or Maintaining Dangerous Devices on Federal Property to Protect the Unlawful Production of Controlled Substances**

      (a)   Base Offense Level: **23**

*Commentary*

*Statutory Provision:* 21 U.S.C. § 841(e)(1).

*Background:* This section covers the offense of assembling, placing, or causing to be placed, or maintaining a *"booby-trap"* on federal property where a controlled substance is being manufactured or distributed.

October, 1987

# Defense Exhibit 9-78

\*    \*    \*    \*    \*

2.    UNLAWFUL POSSESSION

§2D2.1.    **Unlawful Possession**

    (a)    Base Offense Level:

        (1)    **8**, if the substance is heroin or any Schedule I or II opiate, or LSD, or an analogue of these; or

        (2)    **6**, if the substance is cocaine or PCP; or

        (3)    **4**, if the substance is any other controlled substance.

*Commentary*

*Statutory Provision:*  *21 U.S.C. § 844(a).*

*Background:*    *Absent a prior drug related conviction, the maximum term of imprisonment authorized by statute is one year.   With a single prior drug related conviction, a mandatory minimum term of imprisonment of fifteen days is required by statute and the maximum term of imprisonment authorized is increased to two years.   With two or more prior drug related convictions, a mandatory minimum term of imprisonment of ninety days is required by statute and the maximum term of imprisonment authorized is increased to three years.*

§2D2.2.    **Acquiring a Controlled Substance by Forgery, Fraud, Deception, or Subterfuge**

    (a)    Base Offense Level:  **8**

*Commentary*

*Statutory Provision:*  *21 U.S.C. § 843(a)(3).*

§2D2.3.    **Operating or Directing the Operation of a Common Carrier Under the Influence of Alcohol or Drugs**

    (a)    Base Offense Level:  **8**

*Commentary*

*Statutory Provision:*  *21 U.S.C. § 342.*

\*    \*    \*    \*    \*

October, 1987

**Defense Exhibit 9-79**

3.   **REGULATORY VIOLATIONS**

**§2D3.1.   Illegal Use of Registration Number to Manufacture, Distribute, Acquire, or Dispense a Controlled Substance**

(a)   Base Offense Level: **6**

*Commentary*

*Statutory Provision:* *21 U.S.C. § 843(a).*

*Background:*   *The maximum term of imprisonment authorized by statute is four years, except in a case with a prior drug related felony where the maximum term of imprisonment authorized by statute is eight years.*

**§2D3.2.   Manufacture of Controlled Substance in Excess of or Unauthorized by Registration Quota**

(a)   Base Offense Level: **4**

*Commentary*

*Statutory Provision:* *21 U.S.C. § 842.*

*Background:*   *This offense is a misdemeanor.   The maximum term of imprisonment authorized by statute is one year.*

**§2D3.3.   Illegal Use of Registration Number to Distribute or Dispense a Controlled Substance to Another Registrant or Authorized Person**

(a)   Base Offense Level: **4**

*Commentary*

*Statutory Provision:* *21 U.S.C. § 842.*

*Background:*   *This offense is a misdemeanor.   The maximum term of imprisonment authorized by statute is one year.*

**§2D3.4.   Illegal Transfer or Transshipment of a Controlled Substance**

(a)   Base Offense Level: **4**

2.52                                                        October, 1987

# Defense Exhibit 9-80

<u>Commentary</u>

<u>Statutory Provision</u>:  *21 U.S.C. § 842.*

<u>Background</u>:   *This offense is a misdemeanor.  The maximum term of imprisonment authorized by statute is one year.*

2.53

October, 1987

**Defense Exhibit 9-81**

*[Page intentionally blank]*

# Defense Exhibit 9-82

## PART E - OFFENSES INVOLVING CRIMINAL ENTERPRISES AND RACKETEERING

### 1.    RACKETEERING

#### *Introductory Commentary*

*Because of the jurisdictional nature of the offenses included, this subpart covers a wide variety of criminal conduct.  The offense level usually will be determined by the offense level of the underlying conduct.*

§2E1.1.    **Unlawful Conduct Relating to Racketeer Influenced and Corrupt Organizations**

(a)    Base Offense Level (Apply the greater):

(1)    19; or

(2)    the offense level applicable to the underlying racketeering activity.

#### *Commentary*

*Statutory Provisions:  18 U.S.C. §§ 1962, 1963.*

*Application Notes:*

1.    *For purposes of subsection (a)(2), determine the offense level for each underlying offense. Use the provisions of Chapter Three, Part D (Multiple Counts), to determine the offense level, treating each underlying offense as if contained in a separate count of conviction.*

2.    *If the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used.*

3.    *If the offense level for the underlying racketeering activity is less than the alternative minimum level specified (i.e., 19), the alternative minimum base offense level is to be used.*

§2E1.2.    **Interstate or Foreign Travel or Transportation in Aid of a Racketeering Enterprise**

(a)    Base Offense Level (Apply the greater):

(1)    6; or

(2)    the offense level applicable to the underlying crime of violence or other unlawful activity in respect to which the travel or transportation was undertaken.

October, 1987

## Defense Exhibit 9-83

*Commentary*

*Statutory Provision:* 18 U.S.C. § 1952.

*Application Notes:*

1. For purposes of subsection (a)(2), determine the offense level for each underlying offense. Use the provisions of Chapter Three, Part D (Multiple Counts), to determine the offense level, treating each underlying offense as if contained in a separate count of conviction.

2. If the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used.

3. If the offense level for the underlying conduct is less than the alternative minimum base offense level specified (i.e., 6), the alternative minimum base offense level is to be used.

### §2E1.3.   Violent Crimes in Aid of Racketeering Activity

    (a)   Base Offense Level (Apply the greater):

        (1)   **12**; or

        (2)   the offense level applicable to the underlying crime or racketeering activity.

*Commentary*

*Statutory Provision:* 18 U.S.C. § 1952B.

*Application Notes:*

1. If the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used.

2. If the offense level for the underlying conduct is less than the alternative minimum base offense level specified (i.e., 12), the alternative minimum base offense level is to be used.

*Background:* The conduct covered under this section ranges from threats to murder. The maximum term of imprisonment authorized by statute ranges from three years to life imprisonment.

### §2E1.4.   Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire

    (a)   Base Offense Level (Apply the greater):

        (1)   **23**; or

        (2)   the offense level applicable to the underlying unlawful conduct.

## Defense Exhibit 9-84

*Commentary*

*Statutory Provision:* 18 U.S.C. § 1952A.

*Application Notes:*

1.  If the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used.

2.  If the offense level for the underlying conduct is less than the alternative minimum base offense level specified (i.e., 23), the alternative minimum base offense level is to be used.

*Background:*    The statute does not require that a murder covered by this section has been committed.    The maximum term of imprisonment authorized by statute ranges from five years to life imprisonment.

## §2E1.5.    Hobbs Act Extortion or Robbery

Apply the guideline provision for extortion or robbery, as applicable.

*Commentary*

*Statutory Provision:* 18 U.S.C. § 1951.

*Application Note:*

1.  Apply the guideline most applicable to the underlying conduct, which may include §2B3.1(Robbery), §2B3.2 (Extortion by Force or Threat of Injury or Serious Damage), §2B3.3 (Blackmail and Similar Forms of Extortion), or §2C1.1 (Offering, Giving, Soliciting, or Receiving a Bribe).

\*    \*    \*    \*    \*

## 2.    EXTORTIONATE EXTENSION OF CREDIT

## §2E2.1.    Making, Financing, or Collecting an Extortionate Extension of Credit

(a)    Base Offense Level: **20**

(b)    Specific Offense Characteristics

(1)    (A)    If a firearm was discharged increase by **5** levels; or

(B)    if a firearm or a dangerous weapon was otherwise used, increase by **4** levels; or

October, 1987

# Defense Exhibit 9-85

(C)    if a firearm or other dangerous weapon was brandished, displayed or possessed, increase by 3 levels.

(2)    If any victim sustained bodily injury, increase the offense level according to the seriousness of the injury:

| Degree of Bodily Injury | Increase in Level |
|---|---|
| (A)    Bodily Injury | add 2 |
| (B)    Serious Bodily Injury | add 4 |
| (C)    Permanent or Life-Threatening Bodily Injury | add 6 |

Provided, however, that the combined increase from (1) and (2) shall not exceed 9 levels.

(3)    (A)    If any person was abducted to facilitate the commission of the offense or an escape from the scene of the crime, increase by 4 levels;

(B)    if any person was physically restrained to facilitate commission of the offense or to facilitate escape, increase by 2 levels.

#### Commentary

*Statutory Provisions: 18 U.S.C. §§ 892-894.*

*Application Notes:*

1.    *Definitions of "firearm," "dangerous weapon," "otherwise used," "brandished," "bodily injury," "serious bodily injury," "permanent or life-threatening bodily injury," "abducted," and "physically restrained" are found in the Commentary to §1B1.1 (Application Instructions).*

2.    *See also Commentary to §2B3.2 (Extortion by Force or Threat of Injury or Serious Damage) regarding the interpretation of the specific offense characteristics.*

*Background:    This section refers to offenses involving the making or financing of extortionate extensions of credit, or the collection of loans by extortionate means.    These "loan-sharking" offenses typically involve threats of violence and provide economic support for organized crime. The base offense level for these offenses is higher than the offense level for extortion because loan sharking is in most cases a continuing activity.    In addition, the guideline does not include the amount of money involved because the amount of money in such cases is often difficult to determine.    Other enhancements parallel those in §2B3.2 (Extortion by Force or Threat of Injury or Serious Damage).*

\*    \*    \*    \*    \*

October, 1987

# Defense Exhibit 9-86

3.    GAMBLING

### Introductory Commentary

This subpart covers a variety of proscribed conduct. The adjustments in Chapter Three, Part B (Role in the Offense) are particularly relevant in providing a measure of the scope of the offense and the defendant's participation.

**§2E3.1.    Engaging in a Gambling Business**

(a)    Base Offense Level: **12**

### Commentary

*Statutory Provision:* 18 U.S.C. § 1955.

**§2E3.2.    Transmission of Wagering Information**

(a)    Base Offense Level: **12**

### Commentary

*Statutory Provision:* 18 U.S.C. § 1084.

**§2E3.3.    Other Gambling Offenses**

(a)    Base Offense Level: **6**

(b)    Specific Offense Characteristic

(1)    If the offense is committed as part of, or to facilitate, a commercial gambling operation, increase by **6** levels.

### Commentary

*Statutory Provisions:* 15 U.S.C. §§ 1172-1175; 18 U.S.C. §§ 1082, 1301-1304, 1306, 1511, 1953.

*Background:* This section includes a wide variety of conduct. A specific offense characteristic has been included to distinguish commercial from other gambling offenses.

\*      \*      \*      \*      \*

October, 1987

# Defense Exhibit 9-87

## 4.    TRAFFICKING IN CONTRABAND CIGARETTES

### §2E4.1.    Unlawful Conduct Relating to Contraband Cigarettes

    (a)    Base Offense Level (Apply the greater):

        (1)    9; or

        (2)    the offense level from the table in §2T4.1 (Tax Table) corresponding to the amount of the tax evaded.

### Commentary

*Statutory Provisions:  18 U.S.C. §§ 2342(a), 2344(a).*

*Application Note:*

*1.    "Tax evaded" refers to state excise tax.*

*Background:    The conduct covered by this section generally involves evasion of state excise taxes.   At least 60,000 cigarettes must be involved.   Because this offense is basically a tax matter, it is graded by use of the tax table in §2T4.1.*

\*    \*    \*    \*    \*

## 5.    LABOR RACKETEERING

### Introductory Commentary

*The statutes included in this subpart protect the rights of employees under the Taft-Hartley Act, members of labor organizations under the Labor-Management Reporting and Disclosure Act of 1959, and participants of employee pension and welfare benefit plans covered under the Employee Retirement Income Security Act.*

*The base offense levels for many of the offenses in this subpart have been determined by reference to analogous sections of the guidelines.   Thus, the base offense levels for bribery, theft, and fraud in this subpart generally correspond to similar conduct under other parts of the guidelines.   The base offense levels for bribery and graft have been set higher than the level for commercial bribery due to the particular vulnerability to exploitation of the organizations covered by this subpart.*

October, 1987

## Defense Exhibit 9-88

**§2E5.1.** **Bribery or Gratuity Affecting the Operation of an Employee Welfare or Pension Benefit Plan**

    (a)    Base Offense Level:

        (1)    **10**, if a bribe; or

        (2)    **6**, if a gratuity.

    (b)    Specific Offense Characteristics

        (1)    If the defendant was a fiduciary of the benefit plan, increase by **2** levels.

        (2)    Increase by the number of levels from the table in §2F1.1 (Fraud and Deceit) corresponding to the value of the prohibited payment or the value of the improper benefit to the payer, whichever is greater.

*Commentary*

*Statutory Provision:* 18 U.S.C. § 1954.

*Application Notes:*

1.    *"Bribe" refers to the offer or acceptance of an unlawful payment with the specific understanding that it will corruptly affect an official action of the recipient.*

2.    *"Gratuity" refers to the offer or acceptance of an unlawful payment other than a bribe.*

3.    *"Fiduciary of the benefit plan" is defined in 29 U.S.C. § 1002(21)(A) to mean a person who exercises any discretionary authority or control in respect to the management of such plan or exercises authority or control in respect to management or disposition of its assets, or who renders investment advice for a fee or other direct or indirect compensation with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or who has any discretionary authority or responsibility in the administration of such plan.*

4.    *"Value of the improper benefit to the payer" is explained in the Commentary to §2C1.1 (Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right).*

5.    *If the adjustment for a fiduciary at §2E5.1(b)(1) applies, do not apply the adjustment at §3B1.3 (Abuse of Position of Trust or Use of Special Skill).*

*Background:* *This section covers the giving or receipt of bribes and other unlawful gratuities involving employee welfare or pension benefit plans. The seriousness of the offense is determined by several factors, including the value of the bribe or gratuity and the magnitude of the loss resulting from the transaction. A more severe penalty is warranted in a bribery where the payment is the primary motivation for an action to be taken, as opposed to graft, where the prohibited payment is given because of a person's actions, duties, or decisions without a prior understanding that the recipient's performance will be directly influenced by the gift.*

        October, 1987

## Defense Exhibit 9-89

**§2E5.2.    Theft or Embezzlement from Employee Pension and Welfare Benefit Plans**

    (a)    Base Offense Level: **4**

    (b)    Specific Offense Characteristics

        (1)    If the offense involved more than minimal planning, increase by **2** levels.

        (2)    If the defendant had a fiduciary obligation under the Employee Retirement Income Security Act, increase by **2** levels.

        (3)    Increase by corresponding number of levels from the table in §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft) according to the value of the property stolen.

<u>Commentary</u>

*Statutory Provision: 18 U.S.C. § 664.*

*Application Notes:*

*1.    "More than minimal planning" is defined in the Commentary to §1B1.1 (Application Instructions).*

*2.    "Fiduciary of the benefit plan" is defined in 29 U.S.C. § 1002(21)(A) to mean a person who exercises any discretionary authority or control in respect to the management of such plan or exercises authority or control in respect to management or disposition of its assets, or who renders investment advice for a fee or other direct or indirect compensation with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or who has any discretionary authority or responsibility in the administration of such plan.*

*3.    If the adjustment for a fiduciary obligation at §2E5.2(b)(2) is applied, do not apply the adjustment at §3B1.3 (Abuse of a Position of Trust or Use of a Special Skill).*

*Background:    This section covers theft or conversion from employee benefit plans by fiduciaries, or by any person, including borrowers to whom loans are disbursed based upon materially defective loan applications, service providers who are paid on inflated billings, and beneficiaries paid as the result of fraudulent claims. The base offense level corresponds to the base offense level for other forms of theft. Specific offense characteristics address whether a defendant has a fiduciary relationship to the benefit plan, the sophistication of the offense, and the scale of the offense.*

October, 1987

# Defense Exhibit 9-90

**§2E5.3.    False Statements and Concealment of Facts in Relation to Documents Required by the Employee Retirement Income Security Act**

(a)    Base Offense Level (Apply the greater):

(1)    6; or

(2)    If false records were used for criminal conversion of plan funds or a scheme involving a bribe or a gratuity relating to the operation of an employee benefit plan, apply §2E5.2 or §2E5.1, as applicable.

*Commentary*

*Statutory Provision:* 18 U.S.C. § 1027.

*Application Note:*

1.    *"Criminal conversion" means embezzlement.*

*Background:*    *This section covers the falsification of documents or records relating to a benefit plan covered by ERISA.    Such violations sometimes occur in connection with the criminal conversion of plan funds or schemes involving bribery or graft.    Where a violation under this section occurs in connection with another offense, the offense level is determined by reference to the offense facilitated by the false statements or documents.*

**§2E5.4.    Embezzlement or Theft from Labor Unions in the Private Sector**

(a)    Base Offense Level:  **4**

(b)    Specific Offense Characteristics

(1)    If the offense involved more than minimal planning, increase by **2** levels.

(2)    If the defendant was a union officer or occupied a position of trust in the union, as set forth in 29 U.S.C. § 501(a), increase by **2** levels.

(3)    Increase by the number of levels from the table in §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft) corresponding to the value of the property stolen.

*Commentary*

*Statutory Provision:* 29 U.S.C. § 501(c).

*Application Notes:*

1.    *"More than minimal planning" is defined in the Commentary to §1B1.1 (Applicable Instructions).*

2.63                                                                                 October, 1987

# Defense Exhibit 9-91

2.  *If the adjustment for being a union officer or occupying a position of trust in a union at §2E5.4(b)(2) is applied, do not apply the adjustment at §3B1.3 (Abuse of a Position of Trust or Use of a Special Skill).*

*Background:    This section includes embezzlement or theft from a labor organization.    It is directed at union officers and persons employed by a union.    The seriousness of this offense is determined by the amount of money taken, the sophistication of the offense, and the nature of the defendant's position in the union.*

§2E5.5.    **Failure to Maintain and Falsification of Records Required by the Labor Management Reporting and Disclosure Act**

    (a)    Base Offense Level (Apply the greater):

        (1)    6; or

        (2)    If false records were used for criminal conversion of funds or a scheme involving a bribe or gratuity, apply §2E5.4 or §2E5.6, as applicable.

*Commentary*

*Statutory Provisions:  29 U.S.C. §§ 439, 461.*

*Background:    This section covers failure to maintain proper documents required by the LMRDA or falsification of such documents.  This offense is a misdemeanor.*

§2E5.6.    **Prohibited Payments or Lending of Money by Employer or Agent to Employees, Representatives, or Labor Organizations**

    (a)    Base Offense Level:

        (1)    10, if a bribe; or

        (2)    6, if a gratuity.

    (b)    Specific Offense Characteristic

        (1)    Increase by the number of levels from the table in §2F1.1 (Fraud and Deceit) corresponding to the value of the prohibited payment or the value of the improper benefit to the payer, whichever is greater.

*Commentary*

*Statutory Provision:  29 U.S.C. § 186.*

2.64

October, 1987

# Defense Exhibit 9-92

_Application Notes:_

1.  *"Bribe" refers to the offer or acceptance of an unlawful payment with the specific understanding that it will corruptly affect an official action of the recipient.*

2.  *"Gratuity" refers to the offer or acceptance of an unlawful payment other than a bribe.*

3.  *"Value of the improper benefit to the payer" is explained in the Commentary to §2C1.1 (Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right).*

2.65                                             October, 1987

# Defense Exhibit 9-93

*[Page intentionally blank]*

2.66                                                                October, 1987

# Defense Exhibit 9-94

## PART F - OFFENSES INVOLVING FRAUD OR DECEIT

§2F1.1.    **Fraud and Deceit**

(a)    Base Offense Level: **6**

(b)    Specific Offense Characteristics

(1)    If the estimated, probable or intended loss exceeded $2,000, increase the offense level as follows:

|  | Loss | Increase in Level |
|---|---|---|
| (A) | $2,000 or less | no increase |
| (B) | $2,001 - $5,000 | add **1** |
| (C) | $5,001 - $10,000 | add **2** |
| (D) | $10,001 - $20,000 | add **3** |
| (E) | $20,001 - $50,000 | add **4** |
| (F) | $50,001 - $100,000 | add **5** |
| (G) | $100,001 - $200,000 | add **6** |
| (H) | $200,001 - $500,000 | add **7** |
| (I) | $500,001 - $1,000,000 | add **8** |
| (J) | $1,000,001 - $2,000,000 | add **9** |
| (K) | $2,000,001 - $5,000,000 | add **10** |
| (L) | over $5,000,000 | add **11** |

(2)    If the offense involved (A) more than minimal planning; (B) a scheme to defraud more than one victim; (C) a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious or political organization, or a government agency; or (D) violation of any judicial or administrative order, injunction, decree or process; increase by **2** levels, but if the result is less than level **10**, increase to level **10**.

(3)    If the offense involved the use of foreign bank accounts or transactions to conceal the true nature or extent of the fraudulent conduct, and the offense level as determined above is less than level **12**, increase to level **12**.

### Commentary

*Statutory Provisions:*   *7 U.S.C. §§ 6, 6b, 6c, 6h, 6o, 13, 23; 15 U.S.C. §§ 50, 77e, 77q, 77x, 78d, 78j, 78ff, 80b-6, 1644; 18 U.S.C. §§ 285-291, 659, 1001-1008, 1010-1014, 1016-1022, 1025-1026, 1028-1029, 1341 - 1344.*

*Application Notes:*

1.    *The adjustments in §2F1.1(b)(2) are alternative rather than cumulative.   If in a particular case, however, several of the enumerated factors applied, upward departure might be warranted.*

October, 1987

# Defense Exhibit 9-95

2.  *"More than minimal planning" (subsection (b)(2)(A)) is defined in the Commentary to §1B1.1 (Application Instructions).*

3.  *"Scheme to defraud more than one victim," as used in subsection (b)(2)(B), refers to a design or plan to obtain something of value from more than one person. In this context, "victim" refers to the person or entity from which the funds are to come directly. Thus, a wire fraud in which a single telephone call was made to three distinct individuals to get each of them to invest in a pyramid scheme would involve a scheme to defraud more than one victim, but passing a fraudulently endorsed check would not, even though the maker, payee and/or payor all might be considered victims for other purposes, such as restitution.*

4.  *Subsection (b)(2)(C) provides an adjustment for a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious or political organization, or a government agency. Examples of conduct to which this factor applies would include a group of defendants who solicit contributions to a non-existent famine relief organization by mail, a defendant who diverts donations for a religiously-affiliated school by telephone solicitations to church members in which the defendant falsely claims to be a fund-raiser for the school, or a defendant who poses as a federal collection agent in order to collect a delinquent student loan.*

5.  *Subsection (b)(2)(D) provides an adjustment for violation of any judicial or administrative order, injunction, decree or process. If it is established that an entity the defendant controlled was a party to the prior proceeding, and the defendant had knowledge of the prior decree or order, this provision applies even if the defendant was not a specifically-named party in that prior case. For example, a defendant whose business was previously enjoined from selling a dangerous product, but who nonetheless engaged in fraudulent conduct to sell the product, would be subject to this provision.*

6.  *Some fraudulent schemes may result in multiple-count indictments, depending on the technical elements of the offense. The cumulative loss produced by a common scheme or course of conduct should be used in determining the offense level, regardless of the number of counts of conviction. See Chapter Three, Part D (Multiple Counts).*

7.  *In keeping with the Commission's policy on attempts, if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss. For example, if the fraud consisted of attempting to sell $40,000 in worthless securities, or representing that a forged check for $40,000 was genuine, the "loss" would be treated as $40,000 for purposes of this guideline.*

8.  *The amount of loss need not be precise. The court is not expected to identify each victim and the loss he suffered to arrive at an exact figure. The court need only make a reasonable estimate of the range of loss, given the available information. The estimate may be based on the approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as the nature and duration of the fraud and the revenues generated by similar operations. Estimates based upon aggregate "market loss" (e.g., the aggregate decline in market value of a stock resulting from disclosure of information that was wrongfully withheld or misrepresented) are especially appropriate for securities cases. The offender's gross gain from committing the fraud is an alternative estimate that ordinarily will understate the loss.*

October, 1987

# Defense Exhibit 9-96

9.  *Dollar loss often does not fully capture the harmfulness and seriousness of the conduct. In such instances, an upward departure may be warranted. Examples may include the following:*

    (a)  *the primary objective of the fraud was non-monetary;*

    (b)  *false statements were made for the purpose of facilitating some other crime;*

    (c)  *the offense caused or risked physical or psychological harm;*

    (d)  *the offense endangered national security or military readiness;*

    (e)  *the offense caused a loss of confidence in an important institution;*

    (f)  *completion of the offense was prevented, or the offense was interrupted before it caused serious harm.*

10. *The adjustments for loss do not distinguish frauds involving losses greater than $5,000,000. Departure above the applicable guideline may be warranted if the loss substantially exceeds that amount.*

11. *In a few instances, the total dollar loss that results from the offense may overstate its seriousness. Such situations typically occur when a misrepresentation is of limited materiality or is not the sole cause of the loss. Examples would include understating debts to a limited degree in order to obtain a substantial loan which the defendant genuinely expected to repay; attempting to negotiate an instrument that was so obviously fraudulent that no one would seriously consider honoring it; and making a misrepresentation in a securities offering that enabled the securities to be sold at inflated prices, but where the value of the securities subsequently declined in substantial part for other reasons. In such instances, a downward departure may be warranted.*

12. *Offenses involving fraudulent identification documents and access devices, in violation of 18 U.S.C. §§ 1028 and 1029, are also covered by this guideline. The statutes provide for increased maximum terms of imprisonment for the use or possession of device-making equipment and the production or transfer of more than five identification documents or fifteen access devices. The court may find it appropriate to enhance the sentence for violations of these statutes in a manner similar to the treatment of analogous counterfeiting offenses under Part B.*

13. *If the fraud exploited vulnerable victims, an enhancement will apply. See §3A1.1 (Vulnerable Victim).*

14. *Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, or a similarly general statute, although the offense is also covered by a more specific statute. Examples include false entries regarding currency transactions, for which §2S1.3 would be more apt, and false statements to a customs officer, in which §2T3.1 likely would be more apt. In such instances, although §2F1.1 applies, a departure may be warranted.*

15. *In certain other cases, the mail or wire fraud statutes, or other relatively broad statutes, are used primarily as jurisdictional bases for the prosecution of other offenses. For example, a state law arson where a fraudulent insurance claim was mailed might be*

October, 1987

# Defense Exhibit 9-97

*prosecuted as mail fraud.  In such cases the most analogous guideline (in the above case, §2K1.4) is to be applied.*

*Background:  This guideline is designed to apply to a wide variety of fraud cases.  The statutory maximum term of imprisonment for most such offenses is five years.  The guideline does not link offense characteristics to specific code sections.  Because federal fraud statutes are so broadly written, a single pattern of offense conduct usually can be prosecuted under several code sections, as a result of which the offense of conviction may be somewhat arbitrary.  Furthermore, most fraud statutes cover a broad range of conduct with extreme variation in severity.*

*Empirical analyses of current practices show that the most important factors that determine sentence length are the amount of loss and whether the offense is an isolated crime of opportunity or is sophisticated or repeated.  Accordingly, although they are imperfect, these are the primary factors upon which the guideline has been based.*

*The extent to which an offense is planned or sophisticated is important in assessing its potential harmfulness and the dangerousness of the offender, independent of the actual harm.  A complex scheme or repeated incidents of fraud is indicative of an intention and potential to do considerable harm.  In current practice, this factor has a significant impact, especially in frauds involving small losses.  Accordingly, the guideline not only specifies a 2-level enhancement when this factor is present, but also specifies that the minimum offense level in such cases shall be 10.  A number of special cases are specifically broken out under subdivision (b)(2) to ensure that defendants in such cases are adequately punished.*

*Use of false pretenses involving charitable causes and government agencies enhances the sentences of defendants who take advantage of victims' trust in government or law enforcement agencies or their generosity and charitable motives.  Taking advantage of a victim's self-interest does not mitigate the seriousness of fraudulent conduct.  However, defendants who exploit victims' charitable impulses or trust in government create particular social harm.  A defendant who has been subject to civil or administrative proceedings for the same or similar fraudulent conduct demonstrates aggravated criminal intent and is deserving of additional punishment for not conforming with the requirements of judicial process or orders issued by federal, state, or local administrative agencies.*

*Offenses that involve the use of transactions or accounts outside the United States in an effort to conceal illicit profits and criminal conduct involve a particularly high level of sophistication and complexity.  These offenses are difficult to detect and require costly investigations and prosecutions.  Diplomatic processes often must be used to secure testimony and evidence beyond the jurisdiction of United States courts.  Consequently, a minimum level of 12 is provided for these offenses.*

**§2F1.2.    Insider Trading**

    (a)    Base Offense Level: **8**

    (b)    Specific Offense Characteristic

        (1)    Increase by the number of levels from the table in §2F1.1 corresponding to the gain resulting from the offense.

October, 1987

**Defense Exhibit 9-98**

<u>Commentary</u>

<u>Statutory Provisions</u>:  15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5.

<u>Application Note</u>:

1.    Section 3B1.3 (Abuse of Position of Trust or Use of Special Skill) should be applied only if the defendant occupied and abused a position of special trust.  Examples might include a corporate president or an attorney who misused information regarding a planned but unannounced takeover attempt.  It typically would not apply to an ordinary "tippee."

<u>Background</u>:    This guideline applies to certain violations of Rule 10b-5 that are commonly referred to as "insider trading."    Insider trading is treated essentially as a sophisticated fraud.  Because the victims and their losses are difficult if not impossible to identify, the gain, <u>i.e.</u>, the total increase in value realized through trading in securities by the defendant and persons acting in concert with him or to whom he provided inside information, is employed instead of the victims' losses.

Certain other offenses, <u>e.g.</u>, 7 U.S.C. § 13(e), that involve misuse of inside information for personal gain also may appropriately be covered by this guideline.

2.71                                                    October, 1987

**Defense Exhibit 9-99**

*[Page intentionally blank]*

2.72                                                                October, 1987

**Defense Exhibit 9-100**

## PART G - OFFENSES INVOLVING PROSTITUTION, SEXUAL EXPLOITATION OF MINORS, AND OBSCENITY

### 1.     PROSTITUTION

**§2G1.1.     Transportation for the Purpose of Prostitution or Prohibited Sexual Conduct**

(a)     Base Offense Level: **14**

(b)     Specific Offense Characteristic

(1)     If the defendant used physical force, or coercion by drugs or otherwise, increase by **4** levels.

### Commentary

*Statutory Provisions: 8 U.S.C. § 1328; 18 U.S.C. §§ 2421, 2422.*

*Application Notes:*

1.     *The base offense level assumes that the offense was committed for profit.   In the infrequent case where the defendant did not commit the offense for profit and the offense did not involve physical force or coercion, the Commission recommends a downward departure of 8 levels.*

2.     *The enhancement for physical force, or coercion by drugs or otherwise, anticipates no bodily injury.   If bodily injury results, an upward departure may be warranted.   See Chapter Five, Part K (Departures).*

3.     *"Coercion," as used in this guideline, includes any form of conduct that negates the voluntariness of the behavior of the person transported.*

4.     *For the purposes of §3B1.1 (Aggravating Role), the persons transported are considered participants only if they assisted in the unlawful transportation of others.*

5.     *For the purposes of Chapter Three, Part D (Multiple Counts), each person transported is to be treated as a separate, distinct offense, even if several persons are transported in a single act.*

**§2G1.2.     Transportation of a Minor for the Purpose of Prostitution or Prohibited Sexual Conduct**

(a)     Base Offense Level: **16**

(b)     Specific Offense Characteristics

(1)     If the offense involved the use of physical force, or coercion by drugs or otherwise, increase by **4** levels.

## Defense Exhibit 9-101

(2)    If the conduct involved the transportation of a minor under the age of twelve years, increase by **4** levels.

(3)    If the conduct involved the transportation of a minor at least twelve years of age but under the age of sixteen years, increase by **2** levels.

*Commentary*

*Statutory Provisions:* *8 U.S.C. § 1328; 18 U.S.C. § 2423.*

*Application Note:*

1.    *For the purposes of Chapter Three, Part D (Multiple Counts), each person transported is to be treated as a separate, distinct offense, even if several persons are transported in a single act.*

2.    *The enhancement for physical force, or coercion by drugs or otherwise, anticipates no bodily injury.    If bodily injury results, an upward departure may be warranted.    See Chapter Five, Part K (Departures).*

3.    *"Coercion," as used in this guideline, includes any form of conduct that negates the voluntariness of the behavior of the person transported.*

\*    \*    \*    \*    \*

## 2.    SEXUAL EXPLOITATION OF A MINOR

**§2G2.1.    Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material**

(a)    Base Offense Level:  **25**

(b)    Specific Offense Characteristic

(1)    If the minor was under the age of twelve years, increase by **2** levels.

*Commentary*

*Statutory Provisions:* *8 U.S.C. § 1328; 18 U.S.C. § 2251.*

*Application Note:*

1.    *For the purposes of Chapter Three, Part D (Multiple Counts), each minor exploited is to be treated as a separate, distinct offense, even if several are exploited simultaneously.*

October, 1987

**Defense Exhibit 9-102**

*Background:*    *This offense commonly involves the production source of a child pornography enterprise.    Because the offense directly involves the exploitation of minors, the base offense level is higher than for the distribution of the sexually explicit material after production.    An enhancement is provided when the conduct involves the exploitation of a minor under age twelve to reflect the more serious nature of exploiting young children.*

**§2G2.2.    Transporting, Receiving, or Trafficking in Material Involving the Sexual Exploitation of a Minor**

(a)    Base Offense Level:  **13**

(b)    Specific Offense Characteristics

(1)    If the material involved a minor under the age of twelve years, increase by **2** levels.

(2)    If the offense involved distribution, increase by the number of levels from the table in §2F1.1 corresponding to the retail value of the material, but in no event less than **5** levels.

*Commentary*

*Statutory Provision:*  *18 U.S.C. § 2252.*

*Application Note:*

1.    *"Distribution," as used in this guideline, includes any act related to distribution for pecuniary gain, including production, transportation, and possession with intent to distribute.*

\*    \*    \*    \*    \*

**3.    OBSCENITY**

**§2G3.1.    Importing, Mailing, or Transporting Obscene Matter**

(a)    Base Offense Level:  **6**

(b)    Specific Offense Characteristics

(1)    If the offense involved an act related to distribution for pecuniary gain, increase by the number of levels from the table in §2F1.1 corresponding to the retail value of the material, but in no event by less than **5** levels.

(2)    If the offense involved material that portrays sadomasochistic conduct or other depictions of violence, increase by **4** levels.

**Defense Exhibit 9-103**

    (c)    Cross Reference

        (1)    If the offense involved a criminal enterprise, apply the appropriate guideline from Chapter Two, Part E (Offenses Involving Criminal Enterprises and Racketeering) if the resulting offense level is greater than that determined above.

<u>Commentary</u>

<u>Statutory Provisions</u>: *18 U.S.C. §§ 1461-1465.*

<u>Application Note</u>:

1.    *"Act related to distribution" as used in this guideline is to be construed broadly and includes production, transportation, and possession with intent to distribute.*

<u>Background</u>:  *Most federal prosecutions for offenses covered in this guideline are directed to offenses involving distribution for pecuniary gain. Consequently, the offense level under this section generally will be at least 11.*

**§2G3.2.**    <u>**Obscene or Indecent Telephone Communications**</u>

    (a)    Base Offense Level:  **6**

<u>Commentary</u>

<u>Statutory Provision</u>: *47 U.S.C. § 223.*

<u>Background</u>:  *This offense is a misdemeanor for which the maximum term of imprisonment authorized by statute is six months.*

    October, 1987

**Defense Exhibit 9-104**

## PART H - OFFENSES INVOLVING INDIVIDUAL RIGHTS

### 1.    CIVIL RIGHTS

#### *Introductory Commentary*

*This subpart covers violations of civil rights statutes that typically penalize conduct involving death or bodily injury more severely than discriminatory or intimidating conduct not involving such injury.*

*The addition of two levels to the offense level applicable to the underlying offense in this subpart reflects the fact that the harm involved both the underlying conduct and activity intended to deprive a person of his civil rights. An added penalty is imposed on an offender who was a public official at the time of the offense to reflect the likely damage to public confidence in the integrity and fairness of government, and the added likely force of the threat because of the official's involvement.*

**§2H1.1.    Going in Disguise to Deprive of Rights**

    (a)    Base Offense Level (Apply the greater):

        (1)    **15**; or

        (2)    **2** plus the offense level applicable to any underlying offense.

    (b)    Specific Offense Characteristic

        (1)    **If the defendant was a public official at the time of the offense, increase by 4 levels.**

#### *Commentary*

*Statutory Provision: 18 U.S.C. § 241.*

*Application Notes:*

1.    *"2 plus the offense level applicable to any underlying offense" means 2 levels above the offense level (base offense level plus any applicable specific offense characteristics contained in the particular guideline in Chapter Two) for any underlying criminal conduct. For example, if the underlying offense was second-degree murder, which under §2A1.2 has an offense level of 33, "2 plus the offense level applicable to any underlying offense" would be 33 + 2 = 35. If the underlying offense was assault, criminal sexual conduct, kidnapping, abduction or unlawful restraint, the offense level from the guideline for the most comparable offense in §§2A2.1-2A4.2 (Assault, Criminal Sexual Abuse, and Kidnapping, Abduction, or Unlawful Restraint) would first be determined, and 2 levels then would be added. If the underlying offense was damage to property by means of arson or an explosive device, the offense level from §2K1.4 (Arson; Property Damage By Use of Explosives) would first be determined and 2 levels would be added. If the offense was property damage by other means, the offense level from §2B1.3 (Property Damage or*

October, 1987

## Defense Exhibit 9-105

*Destruction (Other than by Arson or Explosives)) would first be determined and 2 levels would be added. If the offense was a conspiracy or attempt to commit an offense, "2 plus the offense level for any underlying offense" would be the offense level from the guideline applicable to a conspiracy or attempt to commit that offense plus 2 levels.*

2. *Where the adjustment in §2H1.1(b)(1) is applied, do not apply §3B1.3 (Abuse of Position of Trust or Use of Special Skill).*

*Background:    This section applies to intimidating activity by various groups, including formally and informally organized groups as well as hate groups. The maximum term of imprisonment authorized by statute is ten years, except where death results the maximum term of imprisonment authorized by statute is life imprisonment. The base offense level for this guideline assumes threatening or otherwise serious conduct.*

### §2H1.2.    Conspiracy to Interfere with Civil Rights

    (a)    Base Offense Level (Apply the greater):

        (1)    13; or

        (2)    **2** plus the offense level applicable to any underlying offense.

    (b)    Specific Offense Characteristic

        (1)    **If** the defendant was a public official at the time of the offense, increase by **4** levels.

#### *Commentary*

*Statutory Provision: 18 U.S.C. § 241.*

*Application Notes:*

1. *"2 plus the offense level applicable to any underlying offense" is explained in the Commentary to §2H1.1.*

2. *Where the adjustment in §2H1.2(b)(1) is applied, do not apply §3B1.3 (Abuse of Position of Trust or Use of Special Skill).*

*Background:    This section applies to conspiracies to interfere with civil rights. The maximum term of imprisonment authorized by statute is ten years, except where death results, in which case the maximum term of imprisonment authorized by statute is life imprisonment. The base offense level for this guideline assumes threatening or otherwise serious conduct.*

October, 1987

# Defense Exhibit 9-106

**§2H1.3.**  **Use of Force or Threat of Force to Deny Benefits or Rights in Furtherance of Discrimination**

    (a)   Base Offense Level (Apply the greatest):

        (1)   **10**, if no injury occurred; or

        (2)   **15**, if injury occurred; or

        (3)   **2** plus the offense level applicable to any underlying offense.

    (b)   Specific Offense Characteristic

        (1)   If the defendant was a public official at the time of the offense, increase by **4** levels.

*Commentary*

*Statutory Provisions:  18 U.S.C. § 245; 42 U.S.C. § 3631.*

*Application Notes:*

1.    *"2 plus the offense level applicable to any underlying offense" is defined in the Commentary to §2H1.1.*

2.    *"Injury" means "bodily injury," "serious bodily injury," or "permanent or life threatening bodily injury" as defined in the Commentary to §1B1.1 (Application Instructions).*

3.    *Where the adjustment in §2H1.3(b)(1) is applied, do not apply the adjustment at §3B1.3 (Abuse of Position of Trust or Use of Special Skill).*

4.    *In the case of a violation of 42 U.S.C. § 3631, apply this guideline where the offense involved the threat or use of force. Otherwise, apply §2H1.5.*

*Background:  The statutes covered by this guideline provide federal protection for the exercise of civil rights in a variety of contexts (e.g., voting, employment, public accommodations, etc.). The base offense level in §2H1.3(a) reflects that the threat or use of force is inherent in the offense. The maximum term of imprisonment authorized by statute is one year if no injury occurs, ten years if injury occurs, and life imprisonment if death results.*

**§2H1.4.**  **Interference with Civil Rights Under Color of Law**

    (a)   Base Offense Level (Apply the greater):

        (1)   **10**; or

        (2)   **2** plus the offense level applicable to any underlying offense.

           October, 1987

**Defense Exhibit 9-107**

*Commentary*

*Statutory Provision:* *18 U.S.C. § 242.*

*Application Notes:*

1.  *"2 plus the offense level applicable to any underlying offense" is defined in the Commentary to §2H1.1.*

2.  *Do not apply the adjustment from §3B1.3 (Abuse of Position of Trust or Use of Special Skill).*

*Background:    This maximum term of imprisonment authorized by 18 U.S.C. § 242 is one year, except where death results, in which case the maximum term of imprisonment authorized is life imprisonment.    Given this one-year statutory maximum, a base offense level of 10 is prescribed at §2H1.4(a)(1) providing a guideline sentence near the statutory maximum for cases not resulting in death because of the compelling public interest in deterring and adequately punishing those who violate civil rights under color of law.    The Commission intends to recommend that this one year statutory maximum penalty be increased.    An alternative base offense level is provided at §2H1.4(a)(2).*

*Enhancement under §3B1.3 (Abuse of Position of Trust or Use of Special Skill) is inappropriate because the base offense level in §2H1.4(a) reflects that the abuse of actual or purported legal authority is inherent in the offense.*

## §2H1.5.    Other Deprivations of Rights or Benefits in Furtherance of Discrimination

(a)    Base Offense Level (Apply the greater):

(1)    6; or

(2)    **2** plus the offense level applicable to any underlying offense.

(b)    Specific Offense Characteristic

(1)    If the defendant was a public official at the time of the offense, increase by **4** levels.

*Commentary*

*Statutory Provisions:* *18 U.S.C. § 246; 42 U.S.C. § 3631.*

*Application Notes:*

1.  *"2 plus the offense level applicable to any underlying offense" is explained in the Commentary to §2H1.1.*

2.  *Where the adjustment in §2H1.4(b)(1) is applied, do not apply the adjustment at §3B1.3 (Abuse of Position of Trust or Use of Special Skill).*

October, 1987

# Defense Exhibit 9-108

3. *In the case of a violation of 42 U.S.C. § 3631, apply this guideline where the offense did not involve the threat or use of force. If the offense involved the threat or use of force, apply §2H1.3.*

*Background: Violations of the statutes covered by this provision do not necessarily involve the use of force or threatening conduct or violations by public officials. Accordingly, the minimum base offense level (level 6) provided is lower than that of the other guidelines in this subpart.*

\*    \*    \*    \*    \*

## 2.    POLITICAL RIGHTS

### §2H2.1.    Obstructing an Election or Registration

(a)    Base Offense Level (Apply the greatest):

(1)    **18**, if the obstruction occurred by use of force or threat of force against persons or property; or

(2)    **12**, if the obstruction occurred by forgery, fraud, theft, bribery, deceit, or other means, except as provided in (3) below; or

(3)    **6**, if the defendant (A) solicited, demanded, accepted, or agreed to accept anything of value to vote, refrain from voting, vote for or against a particular candidate, or register to vote, (B) gave false information to establish eligibility to vote, or (C) voted more than once in a federal election.

*Commentary*

*Statutory Provisions:  18 U.S.C. §§ 241, 242, 245(b)(1)(A), 592, 593, 594, 597; 42 U.S.C. §§ 1973i, 1973j.*

*Application Note:*

1. *If the offense resulted in bodily injury or significant property damage, or involved corrupting a public official, an upward departure may be warranted. See Chapter Five, Part K (Departures).*

*Background:  Specific offense characteristics cover three major ways of obstructing an election: by force, by deceptive or dishonest conduct, or by bribery. A defendant who is a public official or who directs others to engage in criminal conduct is subject to an enhancement from Chapter Three, Part B (Role in the Offense).*

\*    \*    \*    \*    \*

October, 1987

## Defense Exhibit 9-109

### 3. PRIVACY AND EAVESDROPPING

**§2H3.1.    Interception of Communications or Eavesdropping**

    (a)    Base Offense Level (Apply the greater):

        (1)    **9**; or

        (2)    If the purpose of the conduct was to facilitate another offense, apply the guideline applicable to an attempt to commit that offense.

    (b)    Specific Offense Characteristic

        (1)    If the purpose of the conduct was to obtain direct or indirect commercial advantage or economic gain not covered by §2H3.1(a)(2) above, increase by 3 levels.

*Commentary*

*Statutory Provisions:  18 U.S.C. § 2511; 47 U.S.C. § 605.*

*Application Note:*

*1.    If the offense involved interception of satellite cable transmissions for purposes of commercial advantage or private financial gain (including avoiding payment of fees), apply §2B5.3 (Criminal Infringement of Copyright) rather than this guideline.*

*Background:    This section refers to conduct proscribed by 47 U.S.C. § 605 and the Electronic Communications Privacy Act of 1986, which amends 18 U.S.C. § 2511 and other sections of Title 18 dealing with unlawful interception and disclosure of communications.    These statutes proscribe the interception and divulging of wire, oral, radio, and electronic communications. The Electronic Communications Privacy Act of 1986 provides for a maximum term of imprisonment of five years for violations involving most types of communication.*

**§2H3.2.    Manufacturing, Distributing, Advertising, or Possessing an Eavesdropping Device**

    (a)    Base Offense Level: **6**

    (b)    Specific Offense Characteristic

        (1)    If the offense was committed for pecuniary gain, increase by **3** levels.

*Commentary*

*Statutory Provision:  18 U.S.C. § 2512.*

2.82                                                                October, 1987

## Defense Exhibit 9-110

**§2H3.3.**    **Obstructing Correspondence**

 (a) Base Offense Level:

  (1) 6; or

  (2) if the conduct was theft of mail, apply §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft);

  (3) if the conduct was destruction of mail, apply §2B1.3 (Property Damage or Destruction (Other than by Arson or Explosives))

<u>*Commentary*</u>

<u>*Statutory Provision:*</u> *18 U.S.C. § 1702.*

<u>*Background:*</u> *The statutory provision covered by this guideline is sometimes used to prosecute offenses more accurately described as theft or destruction of mail. In such cases, §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft) or §2B1.3 (Property Damage or Destruction (Other than by Arson or Explosives)) is to be applied.*

\*  \*  \*  \*  \*

**4. PEONAGE, INVOLUNTARY SERVITUDE, AND SLAVE TRADE**

**§2H4.1.** **Peonage, Involuntary Servitude, and Slave Trade**

 (a) Base Offense Level (Apply the greater):

  (1) 15; or

  (2) 2 plus the offense level applicable to any underlying offense.

<u>*Commentary*</u>

<u>*Statutory Provisions:*</u> *18 U.S.C. §§ 1581-1588.*

<u>*Application Note:*</u>

1. *"2 plus the offense level applicable to the underlying offense" is explained in the Commentary to §2H1.1.*

<u>*Background:*</u> *This section covers statutes that prohibit peonage, involuntary servitude, and slave trade. For purposes of deterrence and just punishment, the minimum base offense level is 15. However, these offenses frequently involve other serious offenses. In such cases, the offense level will be increased under §2H4.1(a)(2).*

    October, 1987

**Defense Exhibit 9-111**

*[Page intentionally blank]*

October, 1987

**Defense Exhibit 9-112**

**PART J - OFFENSES INVOLVING THE ADMINISTRATION OF JUSTICE**

**§2J1.1.**    **Contempt**

> If the defendant was adjudged guilty of contempt, the court shall impose a sentence based on stated reasons and the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

*Commentary*

*Statutory Provisions:* *18 U.S.C. §§ 401, 402.*

*Application Note:*

1.    *Because misconduct constituting contempt varies significantly and the nature of the contemptuous conduct, the circumstances under which the contempt was committed, the effect the misconduct had on the administration of justice, and the need to vindicate the authority of the court are highly context-dependent, the Commission has not provided a specific guideline for this offense. See, however, §2X5.1 (Other Offenses).*

**§2J1.2.**    **Obstruction of Justice**

    (a)    Base Offense Level: **12**

    (b)    Specific Offense Characteristics

        (1)    If the defendant obstructed or attempted to obstruct the administration of justice by causing or threatening to cause physical injury to a person or property, increase by **8** levels.

        (2)    If the defendant substantially interfered with the administration of justice, increase by **3** levels.

    (c)    Cross Reference

        (1)    If the conduct was obstructing the investigation or prosecution of a criminal offense, apply §2X3.1 (Accessory After the Fact) in respect to such criminal offense, if the resulting offense level is greater than that determined above.

*Commentary*

*Statutory Provisions:* *18 U.S.C. §§ 1503-1513.*

# Defense Exhibit 9-113

*Application Notes:*

1. *"Substantially interfered with the administration of justice" includes offense conduct resulting in a premature or improper termination of a felony investigation, an indictment or verdict based upon perjury, false testimony, or other false evidence, or the unnecessary expenditure of substantial governmental or court resources.*

2. *For offenses covered under this section, Chapter Three, Part C (Obstruction) does not apply, unless the defendant obstructed the investigation or trial of the obstruction of justice count.*

3. *In the event that the defendant is convicted under this section as well as for the underlying offense (i.e., the offense that is the object of the obstruction), see the Commentary to Chapter Three, Part C (Obstruction), and to §3D1.2(c) (Groups of Closely Related Counts).*

4. *If a weapon was used, or bodily injury or significant property damage resulted, a departure may be warranted. See Chapter Five, Part K (Departures).*

*Background:     This section addresses offenses involving the obstruction of justice generally prosecuted under the above-referenced statutory provisions.     Numerous offenses of varying seriousness may constitute obstruction of justice:     using threats or force to intimidate or influence a juror or federal officer; obstructing a civil or administrative proceeding; stealing or altering court records; unlawfully intercepting grand jury deliberations; obstructing a criminal investigation; obstructing a state or local investigation of illegal gambling; using intimidation or force to influence testimony, alter evidence, evade legal process, or obstruct the communication of a judge or law enforcement officer; or causing a witness bodily injury or property damage in retaliation for providing testimony, information or evidence in a federal proceeding.     The conduct that gives rise to the violation may, therefore, range from a mere threat to an act of extreme violence.*

*The specific offense characteristics reflect the more serious forms of obstruction.     Because the conduct covered by this guideline is frequently part of an effort to assist another person to escape punishment for a crime he has committed, an alternative reference to the guideline for accessory after the fact is made.*

§2J1.3.     **Perjury**

    (a)     Base Offense Level: **12**

    (b)     Specific Offense Characteristics

        (1)     If the defendant suborned perjury by causing or threatening to cause physical injury to a person or property, increase by **8** levels.

        (2)     If the defendant's perjury or subornation of perjury substantially interfered with the administration of justice, increase by **3** levels.

**Defense Exhibit 9-114**

(c)    Cross Reference

(1)    If the conduct was perjury in respect to a criminal offense, apply §2X3.1 (Accessory After the Fact) in respect to such criminal offense, if the resulting offense level is greater than that determined above.

## *Commentary*

*Statutory Provisions:* *18 U.S.C. §§ 1621-1623.*

*Application Notes:*

1.    *"Substantially interfered with the administration of justice" includes offense conduct resulting in a premature or improper termination of a felony investigation, an indictment or verdict based upon perjury, false testimony, or other false evidence, or the unnecessary expenditure of substantial governmental or court resources.*

2.    *For offenses covered under this section, Chapter Three, Part C (Obstruction) does not apply, unless the defendant obstructed the investigation or trial of the perjury count.*

3.    *In the event that the defendant is convicted under this section as well as for the underlying offense (i.e., the offense with respect to which he committed perjury), see the Commentary to Chapter Three, Part C (Obstruction), and to §3D1.2(c) (Groups of Closely Related Counts).*

4.    *If a weapon was used, or bodily injury or significant property damage resulted, an upward departure may be warranted. See Chapter Five, Part K (Departures).*

*Background:    This section applies to perjury and subornation of perjury, generally prosecuted under the referenced statutes.    The guidelines provide a higher penalty for perjury than the current practice estimate of ten months imprisonment.    The Commission believes that perjury should be treated similarly to obstruction of justice.    Therefore, the same considerations for enhancing a sentence are applied in the specific offense characteristics, and an alternative reference to the guideline for accessory after the fact is made.*

## §2J1.4.    Impersonation

(a)    Base Offense Level: 6

(b)    Specific Offense Characteristic

(1)    If the defendant falsely represented himself as a federal officer, agent or employee to demand or obtain any money, paper, document, or other thing of value or to conduct an unlawful arrest or search, increase by 6 levels.

## *Commentary*

*Statutory Provisions:* *18 U.S.C. §§ 912, 913.*

# Defense Exhibit 9-115

*Background:*  *This section applies to impersonation of a federal officer, agent, or employee; and impersonation to conduct an unlawful search or arrest.*

§2J1.5.    **Failure to Appear by Material Witness**

(a)    Base Offense Level:

(1)    **6**, if in respect to a felony; or

(2)    **4**, if in respect to a misdemeanor.

(b)    Specific Offense Characteristic

(1)    If the offense substantially interfered with the administration of justice, increase by **3** levels.

*Commentary*

*Statutory Provision:*  *18 U.S.C. § 3146(b)(2).*

*Application Note:*

1.    *"Substantially interfered with the administration of justice" includes offense conduct resulting in a premature or improper termination of a felony investigation, an indictment or verdict based upon perjury, false testimony, or other false evidence, or the unnecessary expenditure of substantial governmental or court resources.*

2.    *By statute, a term of imprisonment imposed for this offense runs consecutively to any other term of imprisonment imposed.  18 U.S.C. § 3146(b)(2).*

*Background:*  *This section applies to a failure to appear by a material witness.  The base offense level incorporates a distinction as to whether the failure to appear was in respect to a felony or misdemeanor prosecution.  This offense covered by this section is a misdemeanor for which the maximum period of imprisonment authorized by statute is one year.*

§2J1.6.    **Failure to Appear by Defendant**

(a)    Base Offense Level:  **6**

(b)    Specific Offense Characteristics

(1)    If the underlying offense is punishable by death or imprisonment for a term of fifteen years or more, increase by **9** levels.

(2)    If the underlying offense is punishable by a term of imprisonment of five or more years, but less than fifteen years, increase by **6** levels.

(3)    If the underlying offense is a felony punishable by a maximum term of less than five years, increase by **3** levels.

# Defense Exhibit 9-116

<u>Commentary</u>

<u>Statutory Provision</u>: *18 U.S.C. § 3146(b)(1).*

<u>Application Note</u>:

*1.    "Underlying offense" means the offense in respect to which the defendant failed to appear.*

*2.    By statute, a term of imprisonment imposed for this offense runs consecutively to any other term of imprisonment imposed. 18 U.S.C. § 3146(b)(1).*

*3.    For offenses covered under this section, Chapter Three, Part C (Obstruction) does not apply, unless the defendant obstructed the investigation or trial of the failure to appear count.*

<u>Background</u>:    *This section applies to a failure to appear by a defendant who was released pending trial, sentencing, appeal, or surrender for service of sentence.    The offense level for this offense increases in relation to the statutory maximum of the underlying offense.*

### §2J1.7.    <u>Commission of Offense While on Release</u>

(a)    Base Offense Level: **6**

(b)    Specific Offense Characteristics

(1)    If the offense committed while on release is punishable by death or imprisonment for a term of fifteen years or more, increase by **6** levels.

(2)    If the offense committed while on release is punishable by a term of imprisonment of five or more years, but less than fifteen years, increase by **4** levels.

(3)    If the offense committed while on release is a felony punishable by a maximum term of less than five years, increase by **2** levels.

<u>Commentary</u>

<u>Statutory Provision</u>: *18 U.S.C. § 3147.*

<u>Application Notes</u>:

*1.    By statute, a term of imprisonment imposed for this offense runs consecutively to any other term of imprisonment. 18 U.S.C. § 3147.*

*2.    This guideline assumes that the sentence imposed for the offense committed while on release, which may have been imposed by a state court, is reasonably consistent with that which the guidelines would provide for a similar federal offense.    If this is not the case, a departure may be warranted. <u>See</u> Chapter Five, Part K (Departures).*

# Defense Exhibit 9-117

3.    If the defendant was convicted in state court for the offense committed while on release, the term of imprisonment referred to in subdivision (b) is the maximum term of imprisonment authorized under state law.

*Background:*   Because defendants convicted under this section will necessarily have a prior criminal history, the guideline sentences provided are greater than they otherwise might appear.

### §2J1.8.   Bribery of Witness

(a)   Base Offense Level: **12**

(b)   Specific Offense Characteristic

   (1)   If the offense substantially interfered with the administration of justice, increase by 3 levels.

(c)   Cross Reference

   (1)   If the conduct was perjury in respect to a criminal offense, apply §2X3.1 (Accessory After the Fact) in respect to such criminal offense, if the resulting offense level is greater than that determined above.

### *Commentary*

*Statutory Provisions:*   18 U.S.C. §§ 201(b)(3), (4).

*Application Notes:*

1.    "Substantially interfered with the administration of justice" includes offense conduct resulting in a premature or improper termination of a felony investigation, an indictment or verdict based upon perjury, false testimony, or other false evidence, or the unnecessary expenditure of substantial governmental or court resources.

2.    This section applies only in the case of a conviction for the above referenced (or equivalent) statute.   For offenses covered under this section, Chapter Three, Part C (Obstruction) does not apply, unless the defendant obstructed the investigation or trial of the witness bribery count.

3.    In the event that the defendant is convicted under this section as well as for the underlying offense (i.e., the offense with respect to which the bribery occurred), see the Commentary to Chapter Three, Part C (Obstruction), and to §3D1.2(c) (Groups of Closely Related Counts).

4.    Subsection (c) refers to bribing a witness regarding his testimony in respect to a criminal offense.

*Background:*   This section applies to witness bribery.   The offense levels correspond to those for perjury (§2J1.3).

October, 1987

# Defense Exhibit 9-118

**§2J1.9.**    **Payment to Witness**

    (a)   Base Offense Level: **6**

    (b)   Specific Offense Characteristic

        (1)   If the payment was for refusing to testify, increase by 4 levels.

*Commentary*

*Statutory Provisions:*  *18 U.S.C. §§ 201(c)(2), (3).*

*Application Notes:*

1.    *"Refusing to testify" includes absenting oneself for the purpose of avoiding testifying.*

2.    *This section applies only in the case of a conviction under the above-referenced (or equivalent) statute.  For offenses covered under this section, Chapter Three, Part C (Obstruction) does not apply unless the defendant obstructed the investigation or trial of the payment to witness count.*

3.    *In the event that the defendant is convicted under this section as well as for the underlying offense (i.e., the offense with respect to which the payment was made), see the Commentary to Chapter Three, Part C (Obstruction), and to §3D1.2(c) (Groups of Closely Related Counts).*

*Background:  This section applies to witness gratuities in federal proceedings.*

October, 1987

**Defense Exhibit 9-119**

*[Page intentionally blank]*

2.92                                                October, 1987

# Defense Exhibit 9-120

## PART K - OFFENSES INVOLVING PUBLIC SAFETY

### 1.    EXPLOSIVES AND ARSON

**§2K1.1.    Failure to Report Theft of Explosives**

(a)    Base Offense Level:  **6**

*Commentary*

*Statutory Provisions:  18 U.S.C. §§ 842(k), 844(b).*

*Background:    The above-referenced provisions are misdemeanors.    The maximum term of imprisonment authorized by statute is one year.*

**§2K1.2.    Improper Storage of Explosives**

(a)    Base Offense Level:  **6**

*Commentary*

*Statutory Provision:  18 U.S.C. § 842(j).*

*Background:    The above-referenced provision is a misdemeanor.    The maximum term of imprisonment authorized by statute is one year.*

**§2K1.3.    Unlawfully Trafficking In, Receiving, or Transporting Explosives**

(a)    Base Offense Level:  **6**

(b)    Specific Offense Characteristics

If any of the following applies, use the greatest:

(1)    If the defendant's conduct involved any written or oral false or fictitious statement, false record, or misrepresented identification, increase by **4** levels.

(2)    If the offense involved explosives that the defendant knew or had reason to believe were stolen, increase by **6** levels.

(3)    If the defendant knowingly distributed explosives to a person under twenty-one years of age, to a person prohibited by state law or ordinance from receiving such explosives at the place of distribution, or to a person the defendant had reason to believe intended to transport such materials into a state in violation of the law of that state, increase by **4** levels.

October, 1987

## Defense Exhibit 9-121

(4) If the defendant was a person prohibited from receiving explosives under 18 U.S.C. § 842(i), or if the defendant knowingly distributed explosives to a person prohibited from receiving explosives under 18 U.S.C. § 842(i), increase by **10** levels.

(5) If a recordkeeping offense reflected an effort to conceal a substantive firearm offense, apply the guideline for the substantive offense.

*Commentary*

*Statutory Provisions:*  *18 U.S.C. §§ 842(a), (h), (i), 844(b).*

*Application Notes:*

*1.*   *"A person prohibited from receiving explosives under 18 U.S.C. § 842(i)" is anyone who is under indictment for or has been convicted of a crime punishable by imprisonment for more than one year; who is a fugitive from justice; who is an unlawful user of or addicted to marihuana, any depressant or stimulant or narcotic drug; or who has been adjudicated as a mental defective or has been committed to a mental institution.*

*Background:*   *This section applies to conduct ranging from violations of a regulatory nature pertaining to licensees or persons otherwise lawfully involved in explosives commerce to more serious violations that involve substantial danger to public safety.*

### §2K1.4.    Arson; Property Damage By Use of Explosives

(a)   Base Offense Level: **6**

(b)   Specific Offense Characteristics

If any of the following applies, use the greatest:

(1) If the defendant knowingly created a substantial risk of death or serious bodily injury, increase by **18** levels.

(2) If the defendant recklessly endangered the safety of another, increase by **14** levels.

(3) If the offense involved destruction or attempted destruction of a residence, increase by **12** levels.

(4) If the defendant used fire or an explosive to commit another offense that is a felony under federal law, or carried explosives during the commission of any offense that is a felony under federal law (i.e., the defendant is convicted under 18 U.S.C. § 844(h)), increase by **7** levels.

(5) If the defendant endangered the safety of another person, increase by **4** levels.

(6) If a destructive device was used, increase by **2** levels.

October, 1987

**Defense Exhibit 9-122**

(c)     Cross References

   (1)   If the defendant caused death, or intended to cause bodily injury, apply the most analogous guideline from Chapter Two, Part A, Offenses Against the Person, if the resulting offense level is higher than that determined above.

   (2)   Apply §2B1.3 (Property Damage or Destruction) if the resulting offense level is higher than that determined above.

*Commentary*

*Statutory Provisions:*  *18 U.S.C. §§ 32, 33, 81, 844(f), (h), (i), 1153, 1855, 2275.*

*Application Notes:*

1.    *"Destructive device" means any article described in 18 U.S.C. § 921(a)(4) (for example, explosive, incendiary, or poison gas bombs, grenades, mines, and similar devices and certain rockets, missiles, and large bore weapons).*

2.    *If bodily injury resulted, an upward departure may be warranted.  See Chapter Five, Part K (Departures).*

*Background:*    *Review of presentence reports indicates that many arson cases involve "malicious mischief," i.e., minor property damage under circumstances that do not present an appreciable danger.   A low base offense level is provided for these cases.   However, aggravating factors are provided for instances where a defendant knowingly or recklessly endangered others, destroyed or attempted to destroy a residence, used fire or an explosive in the commission of a felony, used a destructive device, or otherwise endangered others.*

**§2K1.5.     Possessing Dangerous Weapons or Materials While Boarding or Aboard an Aircraft**

   (a)    Base Offense Level:  **9**

   (b)    Specific Offense Characteristics

   If any of the following applies, use the greatest:

   (1)   If the defendant acted willfully and without regard for the safety of human life, or with reckless disregard for the safety of human life (i.e., the defendant is convicted under 49 U.S.C. § 1472(*l*)(2)), increase by **15** levels.

   (2)   If the defendant was prohibited by another federal law from possessing the weapon or material, increase by **2** levels.

   (3)   If the defendant's possession of the weapon or material would have been lawful but for 49 U.S.C. § 1472(*l*) and he acted with mere negligence, decrease by **3** levels.

2.95                                                          October, 1987

# Defense Exhibit 9-123

(c)    Cross Reference

    (1)    If the defendant used the weapon or material in committing or attempting another offense, apply the guideline for such other offense, or §2X1.1 (Attempt or Conspiracy) if the resulting offense level is higher than that determined above.

*Commentary*

*Statutory Provision: 49 U.S.C. § 1472(l).*

*Background:    Except under the circumstances specified in 49 U.S.C. § 1472(l)(2), the offense covered by this section is a misdemeanor for which the maximum term of imprisonment authorized by statute is one year.    An enhancement is provided where the defendant was a person prohibited by federal law from possession of the weapon or material.    A decrease is provided in a case of mere negligence where the defendant was otherwise authorized to possess the weapon or material.*

**§2K1.6.    Shipping, Transporting, or Receiving Explosives with Felonious Intent or Knowledge; Using or Carrying Explosives in Certain Crimes**

    (a)    Base Offense Level (Apply the greater):

        (1)    18; or

        (2)    If the defendant committed the offense with intent to commit another offense against a person or property, apply §2X1.1 (Attempt or Conspiracy) in respect to such other offense.

*Commentary*

*Statutory Provisions: 18 U.S.C. § 844(d); 26 U.S.C. § 5685.*

*       *       *       *       *

2.    FIREARMS

**§2K2.1.    Receipt, Possession, or Transportation of Firearms and Other Weapons by Prohibited Persons**

    (a)    Base Offense Level:  **9**

    (b)    Specific Offense Characteristics

        (1)    If the firearm was stolen or had an altered or obliterated serial number, increase by **1** level.

**Defense Exhibit 9-124**

(2)    If the defendant obtained or possessed the firearm solely for sport or recreation, decrease by 4 levels.

(c)    Cross Reference

(1)    If the defendant used the firearm in committing or attempting another offense, apply the guideline in respect to such other offense, or §2X1.1 (Attempt or Conspiracy) if the resulting offense level is higher than that determined above.

*Commentary*

*Statutory Provisions:*  *18 U.S.C. §§ 922(a)(6), (g), (h).*

*Application Note:*

1.    *Under §2K2.1(b)(2), intended lawful use, as determined by the surrounding circumstances, provides a decrease in offense level.  Relevant circumstances include, among others, the number and type of firearms (sawed-off shotguns, for example, have few legitimate uses) and ammunition, the location and circumstances of possession, the nature of the defendant's criminal history (e.g., whether involving firearms), and the extent to which possession is restricted by local law.*

*Background:  Under current sentencing practices, there is substantial sentencing variation for these crimes.  From the Commission's investigations, it appears that the variation is attributable primarily to the wide variety of circumstances under which these offenses occur. Apart from the nature of the defendant's criminal history, his actual or intended use of the firearm is probably the most important factor in determining the sentence.*

*Statistics show that sentences average two to three months lower if the firearm involved is a rifle or an unaltered shotgun.  This may reflect the fact that these weapons tend to be more suitable than others for recreational activities.  However, some rifles or shotguns may be possessed for criminal purposes, while some handguns may be suitable primarily for recreation. Therefore, the guideline is not based upon the type of firearm.  Intended lawful use, as determined by the surrounding circumstances, is a mitigating factor.*

*Available data are not sufficient to determine the effect a stolen firearm has on the average sentence.  However, reviews of actual cases suggest that this is a factor that tends to result in more severe sentences.  Independent studies show that stolen firearms are used disproportionately in the commission of crimes.*

*The firearm statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law.  For example, a convicted felon may be prosecuted for possessing a firearm if he used the firearm to rob a gasoline station.  Such prosecutions result in high sentences because of the true nature of the underlying conduct. The cross reference at §2K2.1(c) deals with such cases.*

October, 1987

**Defense Exhibit 9-125**

**§2K2.2.    Receipt, Possession, or Transportation of Firearms and Other Weapons in Violation of National Firearms Act**

    (a)    Base Offense Level: **12**

    (b)    Specific Offense Characteristics

        (1)    If the firearm was stolen or had an altered or obliterated serial number, increase by **1** level.

        (2)    If the firearm was a silencer, increase by **4** levels.

        (3)    If the defendant obtained or possessed the firearm solely for sport, recreation or collection, decrease by **6** levels.

    (c)    Cross Reference

        (1)    If the defendant used the firearm in committing or attempting another offense, apply the guideline for such other offense or §2X1.1 (Attempt or Conspiracy), if the resulting offense level is higher than that determined above.

*Commentary*

*Statutory Provisions: 26 U.S.C. §§ 5861(b) through (l).*

*Application Note:*

1.    *Under §2K2.2(b)(3), intended lawful use, as determined by the surrounding circumstances, provides a decrease in offense level. Relevant circumstances include, among others, the number and type of firearms (sawed-off shotguns, for example, have few legitimate uses) and ammunition, the location and circumstances of possession, the nature of the defendant's criminal history (e.g., whether involving firearms), and the extent to which possession is restricted by local law.*

*Background: 26 U.S.C. § 5861 prohibits the unlicensed receipt, possession, transportation, or manufacture of certain firearms, such as machine guns, silencers, rifles and shotguns with shortened barrels, and destructive devices. As with §2K2.1, there is considerable variation in the conduct included under this statutory provision and some violations may be relatively technical.*

**§2K2.3.    Prohibited Transactions in or Shipment of Firearms and Other Weapons**

    (a)    Base Offense Level:

        (1)    **12**, if convicted under 26 U.S.C. § 5861; or

        (2)    **6**, otherwise.

October, 1987

**Defense Exhibit 9-126**

(b)    Specific Offense Characteristics

    (1)    If the number of firearms unlawfully dealt in exceeded 5, increase as follows:

| | Number of Firearms | Increase in Level |
|---|---|---|
| (A) | 6 - 10 | add 1 |
| (B) | 11 - 20 | add 2 |
| (C) | 21 - 50 | add 3 |
| (D) | 51 - 100 | add 4 |
| (E) | 101 - 200 | add 5 |
| (F) | more than 200 | add 6 |

    (2)    If any of the following applies, use the greatest:

        (A)    If the defendant knew or had reason to believe that a purchaser was a person prohibited by federal law from owning the firearm, increase by 2 levels.

        (B)    If the defendant knew or had reason to believe that a purchaser resided in another state in which he was prohibited from owning the firearm, increase by 1 level.

        (C)    If the defendant knew or had reason to believe that a firearm was stolen or had an altered or obliterated serial number, increase by 1 level.

(c)    Cross Reference

    (1)    If the defendant provided the firearm to another for the purpose of committing another offense, or knowing that he planned to use it in committing another offense, apply §2X1.1 (Attempt or Conspiracy) in respect to such other offense, if the resulting offense level is higher.

*Commentary*

*Statutory Provisions:*    *18 U.S.C. § 922 (a)(1), (a)(5), (b)(2), (b)(3), (d), (i), (j), (k), (l); 26 U.S.C. § 5861(a).*

*Background:*    *This section applies to a variety of offenses involving prohibited transactions in or transportation of firearms and certain other weapons.*

**§2K2.4.    Use of Firearms or Armor-Piercing Ammunition During or in Relation to Certain Crimes**

If the defendant, whether or not convicted of another crime, was convicted under 18 U.S.C. § 924(c) or § 929(a), the penalties are those required by statute.

**Defense Exhibit 9-127**

<u>Commentary</u>

<u>Statutory Provisions:</u>  18 U.S.C. §§ 924(c), 929(a).

<u>Application Notes:</u>

1.  In each case, the statute requires a term of imprisonment imposed under this section to run consecutively to any other term of imprisonment.

2.  Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of a firearm (<u>e.g.</u>, §2B3.1(b)(2) (Robbery)), is not to be applied in respect to the guideline for the underlying offense.

<u>Background:</u>    18 U.S.C. §§ 924(c) and 929(a) provide mandatory minimum penalties for the conduct proscribed.   To avoid double counting, when a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for firearm discharge, use, or possession is not applied in respect to such underlying offense.

\*    \*    \*    \*    \*

## 3.    TRANSPORTATION OF HAZARDOUS MATERIALS

**§2K3.1.    <u>Unlawfully Transporting Hazardous Materials in Commerce</u>**

Apply the guideline provision for §2Q1.2 (Mishandling of Hazardous or Toxic Substances or Pesticides; Recordkeeping, Tampering, and Falsification).

<u>Commentary</u>

<u>Statutory Provision:</u>  49 U.S.C. § 1809(b).

<u>Background:</u>    This conduct involves the same risks as the conduct covered under §2Q1.2 (Mishandling of Hazardous or Toxic Substances or Pesticides; Recordkeeping, Tampering, and Falsification). Accordingly, that guideline applies.

October, 1987

**Defense Exhibit 9-128**

## PART L - OFFENSES INVOLVING IMMIGRATION, NATURALIZATION, AND PASSPORTS

### 1.    IMMIGRATION

**§2L1.1    Smuggling, Transporting, or Harboring an Unlawful Alien**

(a)    Base Offense Level: **6**

(b)    Specific Offense Characteristics

(1)    If the defendant committed the offense for profit or with knowledge that the alien was excludable under 8 U.S.C. §§ 1182(a)(27), (28), (29), increase by 3 levels.

(2)    If the defendant previously has been convicted of bringing illegal aliens into the United States, increase by 2 levels.

*Commentary*

*Statutory Provisions: 8 U.S.C. §§ 1324(a), 1327.*

*Application Notes:*

1.    *"For profit" means for financial gain or commercial advantage, but this definition does not include a defendant who commits the offense solely in return for his own entry or transportation.*

2.    *"Convicted of bringing illegal aliens into the United States" includes any conviction for smuggling, transporting, or harboring an unlawful alien, and any conviction for aiding and abetting, conspiring or attempting to commit such offense.*

3.    *If the defendant was convicted under 8 U.S.C. § 1328, apply the applicable guideline from Part G (see Statutory Index) rather than this guideline.*

4.    *The adjustment under §2L1.1(b)(2) for a previous conviction is in addition to any points added to the criminal history score for such conviction in Chapter Four, Part A (Criminal History). This adjustment is to be applied only if the previous conviction occurred prior to the last overt act of the instant offense.*

5.    *For the purposes of §3B1.1 (Aggravating Role), the aliens smuggled, transported, or harbored are not considered participants unless they actively assisted in the smuggling, transporting, or harboring of others.*

6.    *For the purposes of §3B1.2 (Mitigating Role), a defendant who commits the offense solely in return for his own entry or transportation is not entitled to a reduction for a minor or minimal role. This is because the enhancement at §2L1.1(b)(1) does not apply to such a defendant.*

## Defense Exhibit 9-129

7.    *8 U.S.C. §§ 1182(a)(27), (a)(28), and (a)(29) concern certain aliens who are excludable because they are subversives.*

*Background:    This section includes the most serious immigration offenses covered under the Immigration Reform and Control Act of 1986.    A specific offense characteristic provides an enhancement if the defendant committed the offense for profit or with knowledge that the alien was excludable as a subversive.    A second specific offense characteristic provides an enhancement if the defendant was previously convicted of a similar offense.*

§2L1.2.    **Unlawfully Entering or Remaining in the United States**

(a) Base Offense Level: **6**

(b)    Specific Offense Characteristic

(1)    If the defendant previously has unlawfully entered or remained in the United States, increase by **2** levels.

*Commentary*

*Statutory Provisions: 8 U.S.C. §§ 1325, 1326.*

*Application Notes:*

1.    *The adjustment at §2L1.2(b)(1) is to be applied where the previous entry resulted in deportation (voluntary or involuntary), with or without a criminal conviction.    If the previous entry resulted in a conviction, this adjustment is to be applied in addition to any points added to the criminal history score for such conviction in Chapter Four, Part A (Criminal History).*

2.    *In the case of a defendant with repeated prior instances of deportation without criminal conviction, a sentence at or near the maximum of the applicable guideline range may be warranted.*

§2L1.3.    **Engaging in a Pattern of Unlawful Employment of Aliens**

(a)    Base Offense Level: **6**

*Commentary*

*Statutory Provision: 8 U.S.C. § 1324a(f)(1).*

*Background:    The offense covered under this section is a misdemeanor for which the maximum term of imprisonment authorized by statute is six months.*

\*    \*    \*    \*    \*

# Defense Exhibit 9-130

## 2.    NATURALIZATION AND PASSPORTS

**§2L2.1.    Trafficking in Evidence of Citizenship or Documents Authorizing Entry**

    (a)    Base Offense Level: **6**

    (b)    Specific Offense Characteristic

        (1)    If the defendant committed the offense for profit, increase by 3 levels.

### Commentary

*Statutory Provisions:*  *18 U.S.C. §§ 1425-1427, 1546.*

*Application Note:*

1.    *"For profit" means for financial gain or commercial advantage.*

**§2L2.2.    Fraudulently Acquiring Evidence of Citizenship or Documents Authorizing Entry for Own Use**

    (a)    Base Offense Level: **6**

### Commentary

*Statutory Provisions:*  *18 U.S.C. §§ 1423, 1425, 1546.*

*Application Notes:*

1.    *In the case of a defendant who is an unlawful alien and has been deported (voluntarily or involuntarily) on one or more occasions prior to the instant offense, the Commission recommends an upward departure of 2 levels in order to provide an enhancement equivalent to that at §2L1.2(b)(1),*

2.    *For the purposes of Chapter Three, Part D (Multiple Counts), a conviction for unlawfully entering or remaining in the United States (§2L1.2) arising from the same course of conduct is treated as a closely related count, and is therefore grouped with an offense covered by this guideline.*

**§2L2.3.    Trafficking in a United States Passport**

    (a)    Base Offense Level: **6**

    (b)    Specific Offense Characteristic

        (1)    If the defendant committed the offense for profit, increase by 3 levels.

October, 1987

## Defense Exhibit 9-131

*Commentary*

*Statutory Provisions:* *18 U.S.C. §§ 1542, 1544.*

*Application Note:*

1. *"For profit" means for financial gain or commercial advantage.*

**§2L2.4.    Fraudulently Acquiring or Improperly Using a United States Passport**

      (a)    Base Offense Level: **6**

*Commentary*

*Statutory Provisions:* *18 U.S.C. §§ 1543, 1544.*

*Application Notes:*

1. *In the case of a defendant who is an unlawful alien and has been deported (voluntarily or involuntarily) on one or more occasions prior to the instant offense, the Commission recommends an upward departure of 2 levels in order to provide an enhancement equivalent to that at §2L1.2(b)(1),*

2. *For the purposes of Chapter Three, Part D (Multiple Counts), a conviction for unlawfully entering or remaining in the United States (§2L1.2) arising from the same course of conduct is treated as a closely related count, and is therefore grouped with an offense covered by this guideline.*

**§2L2.5.    Failure to Surrender Canceled Naturalization Certificate**

      (a)    Base Offense Level: **6**

*Commentary*

*Statutory Provision:* *18 U.S.C. § 1428.*

October, 1987

**Defense Exhibit 9-132**

## PART M - OFFENSES INVOLVING NATIONAL DEFENSE

### 1.   TREASON

**§2M1.1.   Treason**

    (a)   Base Offense Level

        (1)   43, if the conduct is tantamount to waging war against the United States;

        (2)   the offense level applicable to the most analogous offense, otherwise.

*Commentary*

*Statutory Provision:  18 U.S.C. § 2381.*

*Background:*   *Treason is a rarely-prosecuted offense that could encompass a relatively broad range of conduct, including many of the more specific offenses in this Part.   The guideline contemplates imposition of the maximum penalty in the most serious cases, with reference made to the most analogous offense guideline in lesser cases.*

\*   \*   \*   \*   \*

### 2.   SABOTAGE

**§2M2.1.   Destruction of War Material, Premises, or Utilities**

    (a)   Base Offense Level: 32

*Commentary*

*Statutory Provisions:  18 U.S.C. § 2153; 42 U.S.C. § 2284.*

*Application Note:*

1.   *Violations of 42 U.S.C. § 2284 are included in this section where the defendant was convicted of acting with intent to injure the United States or aid a foreign nation.*

**§2M2.2.   Production of Defective War Material, Premises, or Utilities**

    (a)   Base Offense Level: 32

    October, 1987

## Defense Exhibit 9-133

*Commentary*

*Statutory Provision:* *18 U.S.C. § 2154.*

**§2M2.3.     Destruction of National Defense Material, Premises, or Utilities**

    (a)   Base Offense Level: **26**

*Commentary*

*Statutory Provision:* *18 U.S.C. § 2155; 42 U.S.C. § 2284.*

*Application Note:*

1.     *Violations of 42 U.S.C. § 2284 not included in §2M2.1 are included in this section.*

**§2M2.4.     Production of Defective National Defense Material, Premises, or Utilities**

    (a)   Base Offense Level: **26**

*Commentary*

*Statutory Provision:* *18 U.S.C. § 2156.*

\* \* \* \* \*

**3.     ESPIONAGE AND RELATED OFFENSES**

**§2M3.1.     Gathering or Transmitting National Defense Information to Aid a Foreign Government**

    (a)   Base Offense Level:

        (1)   **42**, if top secret information was gathered or transmitted; or

        (2)   **37**, otherwise.

*Commentary*

*Statutory Provisions:* *18 U.S.C. § 794; 42 U.S.C. §§ 2274(a), (b), 2275.*

*Application Notes:*

1.     *"Top secret information" is information that, if disclosed, "reasonably could be expected to cause exceptionally grave damage to the national security." Executive Order 12356.*

# Defense Exhibit 9-134

2.   The Commission has set the base offense level in this subpart on the assumption that the information at issue bears a significant relation to the nation's security, and that the revelation will significantly and adversely affect security interests.   When revelation is likely to cause little or no harm, a downward departure may be warranted.   *See* Chapter Five, Part K (Departures).

3.   The court may depart from the guidelines upon representation by the President or his duly authorized designee that the imposition of a sanction other than authorized by the guideline is necessary to protect national security or further the objectives of the nation's foreign policy.

*Background:*   Offense level distinctions in this subpart are generally based on the classification of the information gathered or transmitted.   This classification, in turn, reflects the importance of the information to the national security.

## §2M3.2.    Gathering National Defense Information

      (a)   Base Offense Level:

           (1)   **35**, if top secret information was gathered; or

           (2)   **30**, otherwise.

### Commentary

*Statutory Provisions:*   18 U.S.C. §§ 793(a), (b), (c), (d), (e), (g).

*Application Notes:*

1.   *See* Commentary to §2M3.1.

2.   If the defendant is convicted under 18 U.S.C. §793(d) or (e), §2M3.3 may apply.   *See* Commentary to §2M3.3

*Background:*   The statutes covered in this section proscribe diverse forms of obtaining and transmitting national defense information with intent or reason to believe the information would injure the United States or be used to the advantage of a foreign government.

## §2M3.3.    Transmitting National Defense Information

      (a)   Base Offense Level:

           (1)   **29**, if top secret information was transmitted; or

           (2)   **24**, otherwise.

# Defense Exhibit 9-135

*Commentary*

*Statutory Provisions: 18 U.S.C. §§ 793(d), (e), (g).*

*Application Notes:*

1.  *See Commentary to §2M3.1.*

2.  *If the defendant was convicted of 18 U.S.C. § 793(d) or (e) for the willful transmission or communication of intangible information with reason to believe that it could be used to the injury of the United States or the advantage of a foreign nation, apply §2M3.2.*

*Background:    The statutes covered in this section proscribe willfully transmitting or communicating to a person not entitled to receive it a document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense. Proof that the item was communicated with reason to believe that it could be used to the injury of the United States or the advantage of a foreign nation is required only where intangible information is communicated under 18 U.S.C. § 793(d) or (e).*

## §2M3.4.    Losing National Defense Information

    (a)   Base Offense Level:

        (1)   **18**, if top secret information was lost; or

        (2)   **13**, otherwise.

*Commentary*

*Statutory Provision: 18 U.S.C. § 793(f).*

*Application Note:*

1.  *See Commentary to §2M3.1.*

*Background:    Offenses prosecuted under this statute generally do not involve subversive conduct on behalf of a foreign power, but rather the loss of classified information by the gross negligence of an employee of the federal government or a federal contractor.*

## §2M3.5.    Tampering with Restricted Data Concerning Atomic Energy

    (a)   Base Offense Level: **24**

*Commentary*

*Statutory Provision: 42 U.S.C. § 2276.*

October, 1987

# Defense Exhibit 9-136

*Application Note:*

1.    *See* Commentary to §2M3.1.

§2M3.6.    **Disclosure of Classified Cryptographic Information**

    (a)    Base Offense Level:

        (1)    **29**, if top secret information was disclosed; or

        (2)    **24**, otherwise.

*Commentary*

*Statutory Provision:* 18 U.S.C. § 798.

*Application Note:*

1.    *See* Commentary to §2M3.1.

*Background:*    The statute covered in this section proscribes the disclosure of classified information concerning cryptographic or communication intelligence to the detriment of the United States or for the benefit of a foreign government.

§2M3.7.    **Unauthorized Disclosure to Foreign Government or a Communist Organization of Classified Information by Government Employee**

    (a)    Base Offense Level:

        (1)    **29**, if top secret information was disclosed; or

        (2)    **24**, otherwise.

*Commentary*

*Statutory Provision:* 50 U.S.C. § 783(b).

*Application Note:*

1.    *See* Commentary to §2M3.1.

October, 1987

**Defense Exhibit 9-137**

**§2M3.8.    Receipt of Classified Information**

    (a)   Base Offense Level:

        (1)   **29**, if top secret information was received; or

        (2)   **24**, otherwise.

*Commentary*

*Statutory Provision:* 50 U.S.C. § 783(c).

*Application Note:*

1.   *See* Commentary to §2M3.1.

**§2M3.9.    Disclosure of Information Identifying a Covert Agent**

    (a)   Base Offense Level:

        (1)   **30**, if the information was disclosed by a person with, or who had authorized access to classified information identifying a covert agent; or

        (2)   **25**, if the information was disclosed by a person with authorized access only to other classified information.

*Commentary*

*Statutory Provision:* 50 U.S.C. § 421.

*Application Notes:*

1.   *See* Commentary to §2M3.1.

2.   *This guideline applies only to violations of 50 U.S.C. § 421 by persons who have or previously had authorized access to classified information. This guideline does not apply to violations of 50 U.S.C. § 421 by defendants, including journalists, who disclosed such information without having or having had authorized access to classified information. Violations of 50 U.S.C. § 421 not covered by this guideline may vary in the degree of harm they inflict, and the court should impose a sentence that reflects such harm.  See §2X5.1 (Other Offenses).*

*Background:  The alternative base offense levels reflect a statutory distinction by providing a greater base offense level for a violation of 50 U.S.C. § 421 by an official who has or had authorized access to classified information identifying a covert agent than for a violation by an official with authorized access only to other classified information. This guideline does not apply to violations of 50 U.S.C. § 421 by defendants who disclosed such information without having, or having had, authorized access to classified information.*

                    October, 1987

**Defense Exhibit 9-138**

\*   \*   \*   \*   \*

### 4. EVASION OF MILITARY SERVICE

**§2M4.1.**   <u>**Failure to Register and Evasion of Military Service**</u>

    (a)   Base Offense Level: **6**

    (b)   Specific Offense Characteristic

        (1)   If the offense occurred while persons were being inducted into the armed services, other than in time of war or armed conflict, increase by 6 levels.

<u>*Commentary*</u>

<u>*Statutory Provision:*</u> *50 U.S.C. App. § 462.*

<u>*Application Notes:*</u>

*1.   "While persons were being inducted into the armed services" means at a time of compulsory military service under the Selective Service laws.*

*2.   The Commission has not considered the appropriate sanction for this offense when persons are being inducted during time of war or armed conflict.*

\*   \*   \*   \*   \*

### 5. PROHIBITED FINANCIAL TRANSACTIONS AND EXPORTS

**§2M5.1.**   <u>**Evasion of Export Controls**</u>

    (a)   Base Offense Level: (Apply the greater):

        (1)   **22**, if national security or nuclear proliferation controls were evaded; or

        (2)   **14**.

<u>*Commentary*</u>

<u>*Statutory Provisions:*</u> *50 U.S.C. App. §§ 2401-2420.*

<u>*Application Notes:*</u>

*1.   In the case of a violation during time of war or armed conflict, an upward departure may be warranted.*

    October, 1987

## Defense Exhibit 9-139

2.    *In determining the sentence within the applicable guideline range, the court may consider the degree to which the violation threatened a security interest of the United States, the volume of commerce involved, the extent of planning or sophistication, and whether there were multiple occurrences.    Where such factors are present in an extreme form, a departure from the guidelines may be warranted. See Chapter Five, Part K (Departures).*

3.    *In addition to the provisions for imprisonment, 50 U.S.C. App. § 2410 contains provisions for criminal fines and forfeiture as well as civil penalties.    The maximum fine for individual defendants is $250,000.    In the case of corporations, the maximum fine is five times the value of the exports involved or $1 million, whichever is greater.    When national security controls are violated, in addition to any other sanction, the defendant is subject to forfeiture of any interest in, security of, or claim against: any goods or tangible items that were the subject of the violation; property used to export or attempt to export that was the subject of the violation; and any proceeds obtained directly or indirectly as a result of the violation.*

### §2M5.2.    Exportation of Arms, Munitions, or Military Equipment or Services Without Required Validated Export License

(a)    Base Offense Level (Apply the greater):

    (1)    **22**, if sophisticated weaponry was involved; or

    (2)    **14**.

#### Commentary

*Statutory Provision:*  22 U.S.C. § 2778.

*Application Notes:*

1.    *In the case of a violation during time of war or armed conflict, an upward departure may be warranted. See Chapter Five, Part K (Departures).*

2.    *In determining the sentence within the applicable guideline range, the court may consider the degree to which the violation threatened a security interest of the United States, the volume of commerce involved, the extent of planning or sophistication, and whether there were multiple occurrences.    Where such factors are present in an extreme form, a departure from the guidelines may be warranted.*

\*    \*    \*    \*    \*

October, 1987

**Defense Exhibit 9-140**

6.    ATOMIC ENERGY

§2M6.1.    <u>Unlawful Acquisition, Alteration, Use, Transfer, or Possession of Nuclear Material, Weapons, or Facilities</u>

(a)    Base Offense Level: 30

(b)    Specific Offense Characteristic

(1)    If the offense was committed with intent to injure the United States or to aid a foreign nation, increase by 12 levels.

*Commentary*

*Statutory Provisions: 42 U.S.C. §§ 2077(b), 2122, 2131. Also, 18 U.S.C. § 831 (only where the conduct is similar to that proscribed by the aforementioned statutory provisions).*

§2M6.2.    <u>Violation of Other Federal Atomic Energy Agency Statutes, Rules, and Regulations</u>

(a)    Base Offense Level (Apply the greater):

(1)    30, if the offense was committed with intent to injure the United States or to aid a foreign nation; or

(2)    6.

*Commentary*

*Background:    This section applies to offenses related to nuclear energy not specifically addressed elsewhere. This provision covers, for example, violations of statutes dealing with rules and regulations, license conditions, and orders of the Nuclear Regulatory Commission and the Department of Energy.*

**Defense Exhibit 9-141**

*[Page intentionally blank]*

2.114                                                    October, 1987

**Defense Exhibit 9-142**

## PART N - OFFENSES INVOLVING FOOD, DRUGS, AGRICULTURAL PRODUCTS, AND ODOMETER LAWS

### 1.    TAMPERING WITH CONSUMER PRODUCTS

**§2N1.1.    Tampering or Attempting to Tamper Involving Risk of Death or Serious Injury**

    (a)    Base Offense Level: **25**

*Commentary*

*Statutory Provisions:*  *18 U.S.C. §§ 1365(a), (e).*

*Application Note:*

1.    *If death, bodily injury, extreme psychological injury, or substantial property damage or monetary loss resulted, an upward departure may be warranted.  See Chapter Five, Part K (Departures).*

*Background:*    *The base offense level reflects the risk of death or serious injury posed to significant numbers of people by this type of product tampering.*

**§2N1.2.    Providing False Information or Threatening to Tamper with Consumer Products**

    (a)    Base Offense Level (Apply the greater):

        (1)    **16**;

        (2)    If the offense involved extortion, apply §2B3.2.

*Commentary*

*Statutory Provisions:*  *18 U.S.C. §§ 1365(c), (d).*

*Application Notes:*

1.    *If the offense involved extortion, apply the guideline from §2B3.2 (Extortion by Force or Threat of Injury or Serious Damage) rather than the guideline from this section.*

2.    *If death or bodily injury, extreme psychological injury, or substantial property damage or monetary loss resulted, an upward departure may be warranted.  See Chapter Five, Part K (Departures).*

October, 1987

**Defense Exhibit 9-143**

**§2N1.3.    Tampering With Intent to Injure Business**

    (a)    Base Offense Level: **12**

*Commentary*

<u>*Statutory Provision:*</u>  *18 U.S.C. § 1365(b).*

<u>*Application Note:*</u>

1.    *If death or bodily injury, extreme psychological injury, or substantial property damage or monetary loss resulted, an upward departure may be warranted.  See Chapter Five, Part K (Departures).*

\*    \*    \*    \*    \*

**2.    FOOD, DRUGS, AND AGRICULTURAL PRODUCTS**

**§2N2.1.    Violations of Statutes and Regulations Dealing With Any Food, Drug, Biological Product, Device, Cosmetic, or Agricultural Product**

    (a)    Base Offense Level: **6**

*Commentary*

<u>*Statutory Provisions:*</u>    *7 U.S.C. §§ 150bb, 150gg; 21 U.S.C. §§ 115, 117, 122, 134-134e, 151-158, 331, 333, 458-461, 463, 466, 610-611, 614, 617, 619-620, 642-644, 676; 42 U.S.C. § 262.*

<u>*Application Notes:*</u>

1.    *This guideline assumes a regulatory offense that involved knowing conduct.  Where only negligence was involved, a downward departure may be warranted.  See Chapter Five, Part K (Departures).*

2.    *If the offense involved theft, fraud, bribery, revealing trade secrets, or destruction of property, apply the guideline applicable to the underlying conduct, rather than this guideline.*

3.    *If death or bodily injury, extreme psychological injury, property damage or monetary loss resulted, an upward departure may be warranted.  See Chapter Five, Part K (Departures).*

\*    \*    \*    \*    \*

October, 1987

**Defense Exhibit 9-144**

## 3.   ODOMETER LAWS AND REGULATIONS

**§2N3.1.   Odometer Laws and Regulations**

    (a)   Base Offense Level: **6**

    (b)   If more than one vehicle was involved, apply §2F1.1 (Offenses Involving Fraud or Deceit).

*Commentary*

*Statutory Provisions: 15 U.S.C. §§ 1983-1988, 1990c.*

*Background:    The base offense level takes into account the deceptive aspect of the offense assuming a single vehicle was involved.   If more than one vehicle was involved, the guideline for fraud and deception, §2F1.1, is to be applied because it is designed to deal with a pattern or scheme.*

October, 1987

**Defense Exhibit 9-145**

*[Page intentionally blank]*

October, 1987

**Defense Exhibit 9-146**

## PART P - OFFENSES INVOLVING PRISONS AND CORRECTIONAL FACILITIES

**§2P1.1.**    **Escape, Instigating or Assisting Escape**

    (a)   Base Offense Level:

        (1)   **13,** if from lawful custody resulting from a conviction or as a result of a lawful arrest for a felony;

        (2)   **8,** if from lawful custody awaiting extradition, pursuant to designation as a recalcitrant witness or as a result of a lawful arrest for a misdemeanor.

    (b)   Specific Offense Characteristics

        (1)   If the use or the threat of force against any person was involved, increase by **5** levels.

        (2)   If the defendant escaped from non-secure custody and returned voluntarily within ninety-six hours, decrease the offense level under §2P1.1(a)(1) by **7** levels or the offense level under §2P1.1(a)(2) by **4** levels.

        (3)   If the defendant committed the offense while a correctional officer or other employee of the Department of Justice, increase by **2** levels.

### _Commentary_

_Statutory Provisions:_ 18 U.S.C. §§ 751, 752, 755; 28 U.S.C. § 1826.

_Application Notes:_

1.   _"Non-secure custody" means custody with no significant physical restraint (e.g., where a defendant walked away from a work detail outside the security perimeter of an institution; where a defendant failed to return to any institution from a pass or unescorted furlough; or where a defendant escaped from an institution with no physical perimeter barrier)._

2.   _"Returned voluntarily" includes voluntarily returning to the institution or turning one's self in to a law enforcement authority as an escapee (not in connection with an arrest or other charges)._

3.   _If the adjustment in §2P1.1(b)(3) applies, no adjustment is to be made under §3B1.3 (Abuse of Position of Trust or Use of Special Skill)._

4.   _If death or bodily injury resulted, an upward departure may be warranted._   _See Chapter Five, Part K (Departures)._

        October, 1987

## Defense Exhibit 9-147

**§2P1.2.    Providing or Possessing Contraband in Prison**

(a)    Base Offense Level:

(1)    **23**, if the object was a firearm or destructive device.

(2)    **13**, if the object was a weapon (other than a firearm or a destructive device), any object that might be used as a weapon or as a means of facilitating escape, ammunition, LSD, PCP, or a narcotic drug.

(3)    **6**, if the object was an alcoholic beverage, United States or foreign currency, or a controlled substance (other than LSD, PCP, or a narcotic drug).

(4)    **4**, if the object was any other object that threatened the order, discipline, or security of the institution or the life, health, or safety of an individual.

(b)    Specific Offense Characteristic

(1)    If the defendant committed the offense while a correctional officer or other employee of the Department of Justice, increase by **2** levels.

*Commentary*

*Statutory Provision:  18 U.S.C. § 1791.*

*Application Note:*

1.    *If the adjustment in §2P1.2(b)(1) applies, no adjustment is to be made under §3B1.3 (Abuse of Position of Trust or Use of Special Skill).*

**§2P1.3.    Engaging In, Inciting or Attempting to Incite a Riot Involving Persons in a Facility for Official Detention**

(a)    Base Offense Level:

(1)    **22**, if the offense was committed under circumstances creating a substantial risk of death or serious bodily injury to any person.

(2)    **16**, if the offense involved a major disruption to the operation of an institution.

(3)    **10**, otherwise.

*Commentary*

*Statutory Provision:  18 U.S.C. § 1792.*

Defense Exhibit 9-148

*Application Note:*

1.  *If death or bodily injury resulted, an upward departure may be warranted.*  <u>*See*</u> *Chapter Five, Part K (Departures).*

**§2P1.4.    <u>Trespass on Bureau of Prisons Facilities</u>**

       (a)    Base Offense Level: **6**

<u>*Commentary*</u>

<u>*Statutory Provision*</u>*:  18 U.S.C. § 1793.*

2.121                                          October, 1987

# Defense Exhibit 9-149

[Page intentionally blank]

October, 1987

**Defense Exhibit 9-150**

## PART Q - OFFENSES INVOLVING THE ENVIRONMENT

### 1.    ENVIRONMENT

**§2Q1.1.    Knowing Endangerment Resulting From Mishandling Hazardous or Toxic Substances, Pesticides or Other Pollutants**

(a)    Base Offense Level: **24**

*Commentary*

*Statutory Provision:* 33 U.S.C. § 1319(c)(3); 42 U.S.C. § 6928(e).

*Application Note:*

1.    *If death or serious bodily injury resulted, an upward departure may be warranted.* <u>*See*</u> *Chapter Five, Part K (Departures).*

*Background:*    This section applies to offenses committed with knowledge that the violation placed another person in imminent danger of death or serious bodily injury.

**§2Q1.2.    Mishandling of Hazardous or Toxic Substances or Pesticides; Recordkeeping, Tampering, and Falsification**

(a)    Base Offense Level: **8**

(b)    Specific Offense Characteristics

(1)    (A)    If the offense resulted in an ongoing, continuous, or repetitive discharge, release, or emission of a hazardous or toxic substance or pesticide into the environment, increase by 6 levels; or

(B)    if the offense otherwise involved a discharge, release, or emission of a hazardous or toxic substance or pesticide, increase by 4 levels.

(2)    If the offense resulted in a substantial likelihood of death or serious bodily injury, increase by **9** levels.

(3)    If the offense resulted in disruption of public utilities or evacuation of a community, or if cleanup required a substantial expenditure, increase by 4 levels.

(4)    If the offense involved transportation, treatment, storage, or disposal without a permit or in violation of a permit, increase by 4 levels.

(5)    If a recordkeeping offense reflected an effort to conceal a substantive environmental offense, use the offense level for the substantive offense.

October, 1987

## Defense Exhibit 9-151

(6)    If the offense involved a simple recordkeeping or reporting violation only, decrease by 2 levels.

*Commentary*

*Statutory Provisions:*    *7 U.S.C. §§ 136j-136l; 15 U.S.C. §§ 2614 and 2615; 33 U.S.C. §§ 1319(c)(1), (2), 1517(b), 1321(b)(5); 42 U.S.C. §§ 300h-2, 6928(d), 7413, 9603(b), (c), (d); 43 U.S.C. §§ 1350, 1816(a), 1822(b).*

*Application Notes:*

1.    *"Recordkeeping offense" includes both recordkeeping and reporting offenses.    The term is to be broadly construed as including failure to report discharges, releases, or emissions where required; the giving of false information; failure to file other required reports or provide necessary information; and failure to prepare, maintain, or provide records as prescribed.*

2.    *"Simple recordkeeping or reporting violation" means a recordkeeping or reporting offense in a situation where the defendant neither knew nor had reason to believe that the recordkeeping offense would significantly increase the likelihood of any substantive environmental harm.*

3.    *This section applies to offenses involving pesticides or substances designated toxic or hazardous at the time of the offense by statute or regulation.    A listing of hazardous and toxic substances in the guidelines would be impractical.    Several federal statutes (or regulations promulgated thereunder) list toxics, hazardous wastes and substances, and pesticides.    These lists, such as those of toxic pollutants for which effluent standards are published under the Federal Water Pollution Control Act (e.g., 33 U.S.C. § 1317) as well as the designation of hazardous substances under the Comprehensive Environmental Response, Compensation and Liability Act (e.g., 42 U.S.C. § 9601(14)), are revised from time to time. "Toxic" and "hazardous" are defined differently in various statutes, but the common dictionary meanings of the words are not significantly different.*

4.    *Except when the adjustment in subsection (b)(6) for simple recordkeeping offenses applies, this section assumes knowing conduct.    In cases involving negligent conduct, a downward departure may be warranted.*

5.    *Subsection (b)(1) assumes a discharge or emission into the environment resulting in actual environmental contamination.    A wide range of conduct, involving the handling of different quantities of materials with widely differing propensities, potentially is covered. Depending upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation, a departure of up to two levels in either direction from the offense levels prescribed in these specific offense characteristics may be appropriate.*

6.    *Subsection (b)(2) applies to offenses where the public health is seriously endangered. Depending upon the nature of the risk created and the number of people placed at risk, a departure of up to three levels upward or downward may be warranted.    If death or serious bodily injury results, a departure would be called for.    See Chapter Five, Part K (Departures).*

October, 1987

**Defense Exhibit 9-152**

7.  *Subsection (b)(3) provides an enhancement where a public disruption, evacuation or cleanup at substantial expense has been required. Depending upon the nature of the contamination involved, a departure of up to two levels either upward or downward could be warranted.*

8.  *Subsection (b)(4) applies where the offense involved violation of a permit, or where there was a failure to obtain a permit when one was required. Depending upon the nature and quantity of the substance involved and the risk associated with the offense, a departure of up to two levels either upward or downward may be warranted.*

9.  *Where a defendant has previously engaged in similar misconduct established by a civil adjudication or has failed to comply with an administrative order, an upward departure may be warranted. See §4A1.3 (Adequacy of Criminal History Category).*

*Background:   This section applies both to substantive violations of the statute governing the handling of pesticides and toxic and hazardous substances and to recordkeeping offenses. The first four specific offense characteristics provide enhancements when the offense involved a substantive violation. The last two specific offense characteristics apply to recordkeeping offenses. Although other sections of the guidelines generally prescribe a base offense level of 6 for regulatory violations, §2Q1.2 prescribes a base offense level of 8 because of the inherently dangerous nature of hazardous and toxic substances and pesticides. A decrease of 2 levels is provided, however, for "simple recordkeeping or reporting violations" under §2Q1.2(b)(6).*

**§2Q1.3.    Mishandling of Other Environmental Pollutants; Recordkeeping, Tampering, and Falsification**

(a)  Base Offense Level: **6**

(b)  Specific Offense Characteristics

   (1)  (A)  If the offense resulted in an ongoing, continuous, or repetitive discharge, release, or emission of a pollutant into the environment, increase by **6** levels; or

   (B)  if the offense otherwise involved a discharge, release, or emission of a pollutant, increase by **4** levels.

   (2)  If the offense resulted in a substantial likelihood of death or serious bodily injury, increase by **11** levels.

   (3)  If the offense resulted in disruption of public utilities or evacuation of a community, or if cleanup required a substantial expenditure, increase by **4** levels.

   (4)  If the offense involved a discharge without a permit or in violation of a permit, increase by **4** levels.

   (5)  If a recordkeeping offense reflected an effort to conceal a substantive environmental offense, use the offense level for the substantive offense.

2.125                                                        October, 1987

**Defense Exhibit 9-153**

*Commentary*

*Statutory Provisions:* 33 U.S.C. §§ 403, 406, 407, 411, 1319(c)(1), (c)(2), 1415(b), 1907, 1908; 42 U.S.C. §§ 4912, 7413.

*Application Notes:*

1. "*Recordkeeping offense*" *includes both recordkeeping and reporting offenses. The term is to be broadly construed as including failure to report discharges, releases, or emissions where required; the giving of false information; failure to file other required reports or provide necessary information; and failure to prepare, maintain, or provide records as prescribed.*

2. *If the offense involved mishandling of nuclear material, apply §2M6.2 (Violation of Other Federal Atomic Energy Statutes, Rules, and Regulations) rather than this guideline.*

3. *The specific offense characteristics in this section assume knowing conduct. In cases involving negligent conduct, a downward departure may be warranted.*

4. *Subsection (b)(1) assumes a discharge or emission into the environment resulting in actual environmental contamination. A wide range of conduct, involving the handling of different quantities of materials with widely differing propensities, potentially is covered. Depending upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation a departure of up to two levels in either direction from that prescribed in these specific offense characteristics may be appropriate.*

5. *Subsection (b)(2) applies to offenses where the public health is seriously endangered. Depending upon the nature of the risk created and the number of people placed at risk, a departure of up to three levels upward or downward may be warranted. If death or serious bodily injury results, a departure would be called for.* See *Chapter Five, Part K (Departures).*

6. *Subsection (b)(3) provides an enhancement where a public disruption, evacuation or cleanup at substantial expense has been required. Depending upon the nature of the contamination involved, a departure of up to two levels in either direction could be warranted.*

7. *Subsection (b)(4) applies where the offense involved violation of a permit, or where there was a failure to obtain a permit when one was required. Depending upon the nature and quantity of the substance involved and the risk associated with the offense, a departure of up to two levels in either direction may be warranted.*

8. *Where a defendant has previously engaged in similar misconduct established by a civil adjudication or has failed to comply with an administrative order, an upward departure may be warranted.* See *§4A1.3 (Adequacy of Criminal History Category).*

*Background:* *This section parallels §2Q1.2 but applies to offenses involving substances which are not pesticides and are not designated as hazardous or toxic.*

2.126                                                                October, 1987

# Defense Exhibit 9-154

**§2Q1.4.    Tampering or Attempted Tampering with Public Water System**

    (a)    Base Offense Level:  **18**

    (b)    Specific Offense Characteristics

        (1)    If a risk of death or serious injury was created, increase by **6** levels.

        (2)    If the offense resulted in disruption of a public water system or evacuation of a community, or if cleanup required a substantial expenditure, increase by **4** levels.

        (3)    If the offense resulted in an ongoing, continuous, or repetitive release of a contaminant into a public water system or lasted for a substantial period of time, increase by **2** levels.

        (4)    If the purpose of the offense was to influence government action or to extort money, increase by **6** levels.

*Commentary*

*Statutory Provision: 42 U.S.C. § 300i-1.*

*Application Note:*

*1.    "Serious injury" means serious bodily injury as defined in the Commentary to §1B1.1 (Applicable Instructions).*

**§2Q1.5.    Threatened Tampering with Public Water System**

    (a)    Base Offense Level:  **10**

    (b)    Specific Offense Characteristics

        (1)    If the threat or attempt resulted in disruption of a public water system or evacuation of a community or a substantial public expenditure, increase by **4** levels.

        (2)    If the purpose of the offense was to influence government action or to extort money, increase by **8** levels.

*Commentary*

*Statutory Provision: 42 U.S.C. § 300i-1.*

\*    \*    \*    \*    \*

2.127                                                    October, 1987

# Defense Exhibit 9-155

2.    CONSERVATION AND WILDLIFE

§2Q2.1.    Specially Protected Fish, Wildlife, and Plants

    (a)    Base Offense Level:  **6**

    (b)    Specific Offense Characteristics

        (1)    If the offense involved a commercial purpose, increase by **2** levels.

        (2)    If the offense involved fish, wildlife, or plants that were not quarantined as required by law, increase by **2** levels.

        (3)    Apply the greater:

            (A)    If the market value of the specially protected fish, wildlife, or plants exceeded $2,000, increase the offense level by the corresponding number of levels from the table in §2F1.1 (Fraud and Deceit); or

            (B)    If the offense involved a quantity of fish, wildlife, or plants that was substantial in relation either to the overall population of the species or to a discrete subpopulation, increase by **4** levels.

*Commentary*

*Statutory Provisions:*  *16 U.S.C. §§ 668(a), 707, 1174(a), 1338(a), 1375(b), 1540(b).*

*Background:*  *This section applies to violations of the Endangered Species Act, the Bald Eagle Protection Act, the Migratory Bird Treaty, the Marine Mammal Protection Act, the Wild Free-Roaming Horses and Burros Act, and the Fur Seal Act.  These statutes provide special protection to particular species of fish, wildlife, and plants.  Enhancements are provided where the offense involved a commercial purpose, and where the fish, wildlife, or plants were not quarantined as required by law.  An additional enhancement is provided where the market value of the species exceeded $2,000 or the offense involved a quantity of fish, wildlife, or plants that was substantial in relation either to the population of the species or to a discrete subpopulation of the species.*

§2Q2.2.    Lacey Act; Smuggling and Otherwise Unlawfully Dealing in Fish, Wildlife, and Plants

    (a)    Base Offense Level:

        (1)    6, if the defendant knowingly imported or exported fish, wildlife, or plants, or knowingly engaged in conduct involving the sale or purchase of fish, wildlife, or plants with a market value greater than $350; or

        (2)    4.

2.128                                                                October, 1987

# Defense Exhibit 9-156

(b)    Specific Offense Characteristics

(1)    If the offense involved a commercial purpose, increase by **2** levels.

(2)    If the offense involved fish, wildlife, or plants that were not quarantined as required by law, increase by **2** levels.

(3)    Apply the greater:

(A)    If the market value of the fish, wildlife, or plants exceeded $2,000, increase the offense level by the corresponding number of levels from the table in §2F1.1 (Fraud and Deceit); or

(B)    If the offense involved a quantity of fish, wildlife, or plants that was substantial in relation either to the overall population of the species or to a discrete subpopulation, increase by **4** levels.

*Commentary*

*Statutory Provisions:*  *16 U.S.C. § 3773(d); 18 U.S.C. § 545.*

*Application Note:*

1.    *This section applies to violations of 18 U.S.C. § 545 where the smuggling activity involved fish, wildlife, or plants. In other cases, see §§2T3.1 and 2T3.2.*

*Background:*  *This section applies to violations of the Lacey Act Amendments of 1981, 16 U.S.C. § 3373(d), and to violations of 18 U.S.C. § 545 where the smuggling activity involved fish, wildlife, or plants.  These are the principal enforcement statutes utilized to combat interstate and foreign commerce in unlawfully taken fish, wildlife, and plants.  The adjustments for specific offense characteristics are identical to those in §2Q2.1.*

October, 1987

**Defense Exhibit 9-157**

*[Page intentionally blank]*

2.130                                                October, 1987

**Defense Exhibit 9-158**

## PART R - ANTITRUST OFFENSES

§2R1.1.   <u>Bid-Rigging, Price-Fixing or Market-Allocation Agreements Among Competitors</u>

(a)   Base Offense Level: **9**

(b)   Specific Offense Characteristics

(1)   If the conduct involved participation in an agreement to submit non-competitive bids, increase by 1 level.

(2)   If the volume of commerce attributable to the defendant was less than $1,000,000 or more than $4,000,000, adjust the offense level as follows:

| Volume of Commerce | | Adjustment to Offense Level |
|---|---|---|
| (A) | less than $1,000,000 | subtract **1** |
| (B) | $1,000,000 - $4,000,000 | no adjustment |
| (C) | $4,000,001 - $15,000,000 | add **1** |
| (D) | $15,000,001 - $50,000,000 | add **2** |
| (E) | over $50,000,000 | add **3** |

For purposes of this guideline, the volume of commerce attributable to an individual participant in a conspiracy is the volume of commerce done by him or his principal in goods or services that were affected by the violation. When multiple counts or conspiracies are involved, the volume of commerce should be treated cumulatively to determine a single, combined offense level.

(c)   Fines

A fine shall be imposed in addition to any term of imprisonment. The guideline fine range for an individual conspirator is from 4 to 10 percent of the volume of commerce, but not less than $20,000. The fine range for an organization is from 20 to 50 percent of the volume of commerce, but not less than $100,000.

<u>Commentary</u>

<u>Statutory Provision</u>: *15 U.S.C. § 1.*

<u>Application Notes</u>:

1.   *Because the guideline sentences depend on the volume of commerce done by each firm, role in the offense is implicitly taken into account. Accordingly, the provisions of §3B1.1 (Aggravating Role) are to be applied only in unusual circumstances. An increase for role under §3B1.1 might be appropriate only where a defendant actually coerced others into participating in a conspiracy -- an unusual circumstance. Conversely, a decrease for role under §3B1.2 (Mitigating Role) would not be appropriate merely because an individual defendant or his firm did not profit substantially from the violation. An individual defendant should be considered for a downward adjustment for a mitigating role in the offense only if he was responsible in some minor way for his firm's participation in the*

October, 1987

# Defense Exhibit 9-159

conspiracy. A complementary bidder who did not win a bid would not for that reason qualify for a downward adjustment, but a low-level employee who participated in only one of several agreements constituting a conspiracy would.

2. In setting the fine for individuals, the court should consider the extent of the defendant's participation in the offense, his role, and the degree to which he personally profited from the offense (including salary, bonuses, and career enhancement). If the court concludes that the defendant lacks the ability to pay the guideline fine, it should impose community service in lieu of a portion of the fine. The community service should be equally as burdensome as a fine.

3. In setting the fine for an organization, the court should consider whether the organization encouraged or took steps to prevent the violation, whether high-level management was aware of the violation, and whether the organization previously engaged in antitrust violations.

4. Another consideration in setting the fine is that the average level of mark-up due to price-fixing may tend to decline with the volume of commerce involved.

5. It is the intent of the Commission that alternatives such as community confinement not be used to avoid imprisonment of antitrust offenders.

6. Understatement of seriousness is especially likely in cases involving complementary bids. If, for example, the defendant participated in an agreement not to submit a bid, or to submit an unreasonably high bid, on one occasion, in exchange for his being allowed to win a subsequent bid that he did not in fact win, his volume of commerce would be zero, although he would have contributed to harm that possibly was quite substantial. The court should consider sentences near the top of the guideline range in such cases.

7. In the case of a defendant with previous antitrust convictions, a sentence at or even above the maximum of the applicable guideline range may be warranted. See §4A1.3 (Adequacy of Criminal History).

Background: These guidelines apply to violations of the antitrust laws. Although they are not unlawful in all countries, there is near universal agreement that restrictive agreements among competitors, such as horizontal price-fixing (including bid rigging) and horizontal market-allocation, can cause serious economic harm. There is no consensus, however, about the harmfulness of other types of antitrust offenses, which furthermore are rarely prosecuted and may involve unsettled issues of law. Consequently, only one guideline, which deals with horizontal agreements in restraint of trade, has been promulgated.

The agreements among competitors covered by this section are almost invariably covert conspiracies that are intended to and serve no purpose other than to restrict output and raise prices, and that are so plainly anticompetitive that they have been recognized as illegal per se, i.e., without any inquiry in individual cases as to their actual competitive effect. The Commission believes that the most effective method to deter individuals from committing this crime is through imposing short prison sentences coupled with large fines. The controlling consideration underlying this guideline is general deterrence.

Under the guidelines prison terms for these offenders should be much more common, and usually somewhat longer, than currently is typical. Absent adjustments, the guidelines require confinement of four months or longer in the great majority of cases that are prosecuted,

# Defense Exhibit 9-160

*including all bid-rigging cases. The court will have the discretion to impose considerably longer sentences within the guideline ranges. Adjustments from Chapter Three, Part E (Acceptance of Responsibility) and, in rare instances, Chapter Three, Part B (Role in the Offense), may decrease these minimum sentences; nonetheless, in very few cases will the guidelines not require that some confinement be imposed. Adjustments will not affect the level of fines.*

*The guideline imprisonment terms represent a substantial change from present practice. Currently, approximately 39 percent of all individuals convicted of antitrust violations are imprisoned. Considering all defendants sentenced, the average time served recently was only forty-five days. The guideline prison terms are, however, consistent with the parole guidelines. The fines specified in the guideline represent substantial increases over existing practice. The current average fine for individuals is only approximately $27,000; for corporations, it is approximately $160,000.*

*Tying the offense level to the scale or scope of the offense is important in order to ensure that the sanction is in fact punitive and that there is an incentive to desist from a violation once it has begun. The offense levels are not based directly on the damage caused or profit made by the defendant because damages are difficult and time consuming to establish. The volume of commerce is an acceptable and more readily measurable substitute. The limited empirical data currently available show that fines increase with the volume of commerce and the term of imprisonment probably does as well.*

*The Commission believes that the volume of commerce is liable to be an understated measure of seriousness in some bid-rigging cases. For this reason, and consistent with current practice, the Commission has specified a 1 level increase for bid-rigging.*

*Substantial fines are an essential part of the sanction. It is estimated that the average additional profit attributable to price fixing is 10 percent of the selling price. The Commission has specified that a fine from two to five times that amount be imposed on organizational defendants as a deterrent because of the difficulty in identifying violators. Additional monetary penalties can be provided through private treble damage actions. A lower fine is specified for individuals. The Commission believes that most antitrust defendants have the resources and earning capacity to pay these fines, at least over time. The statutory maximum fine is $250,000 for individuals and $1,000,000 for organizations, but is increased when there are convictions on multiple counts.*

October, 1987

# Defense Exhibit 9-161

*[Page intentionally blank]*

2.134                                                    October, 1987

**Defense Exhibit 9-162**

**PART S - MONEY LAUNDERING AND MONETARY TRANSACTION REPORTING**

*Introductory Commentary*

*Money laundering activities are essential to the operation of organized crime. Congress recently enacted new statutes prohibiting these activities and increased the maximum penalties.*

*The guidelines provide substantially increased punishments for these offenses. In fiscal year 1985, the time served by defendants convicted of felonies involving monetary transaction reporting under 31 U.S.C. §§ 5313, 5316, and 5322 averaged about ten months, and only a few defendants served as much as four to five years. However, courts have been imposing higher sentences as they come to appreciate the seriousness of this activity, and sentences as long as thirty-five years have been reported. Specifically, Congress made all reporting violations felonies in 1984, and enacted the Money Laundering Control Act of 1986 (18 U.S.C. §§ 1956, 1957), which creates new offenses and provides higher maximum sentences when knowledge, facilitation or concealment of serious criminal activity is proved.*

**§2S1.1.    Laundering of Monetary Instruments**

    (a)   Base Offense Level:

        (1)   **23**, if convicted under 18 U.S.C. § 1956(a)(1)(A) or (a)(2)(A);

        (2)   **20**, otherwise.

    (b)   Specific Offense Characteristics

        (1)   If the defendant knew that the funds were the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances, increase by **3** levels.

        (2)   If the value of the funds exceeded $100,000, increase the offense level as follows:

| | Value | Increase in Level |
|---|---|---|
| (A) | $100,000 or less | no increase |
| (B) | $100,001 - $200,000 | add 1 |
| (C) | $200,001 - $350,000 | add 2 |
| (D) | $350,001 - $600,000 | add 3 |
| (E) | $600,001 - $1,000,000 | add 4 |
| (F) | $1,000,001 - $2,000,000 | add 5 |
| (G) | $2,000,001 - $3,500,000 | add 6 |
| (H) | $3,500,001 - $6,000,000 | add 7 |
| (I) | $6,000,001 - $10,000,000 | add 8 |
| (J) | $10,000,001 - $20,000,000 | add 9 |
| (K) | $20,000,001 - $35,000,000 | add 10 |
| (L) | $35,000,001 - $60,000,000 | add 11 |
| (M) | $60,000,001 - $100,000,000 | add 12 |
| (N) | more than $100,000,000 | add 13 |

October, 1987

**Defense Exhibit 9-163**

*Commentary*

*Statutory Provision:* 18 U.S.C. § 1956.

*Background:*    *The statute covered by this guideline is a part of the Anti-Drug Abuse Act of 1986, and prohibits financial transactions involving funds that are the proceeds of "specified unlawful activity," if such transactions are intended to facilitate that activity, or conceal the nature of the proceeds or avoid a transaction reporting requirement.    The maximum term of imprisonment authorized is twenty years.*

*In keeping with the clear intent of the legislation, this guideline provides for substantial punishment.    The punishment is higher than that specified in §2S1.2 and §2S1.3 because of the higher statutory maximum, and the added elements as to source of funds, knowledge, and intent.*

*A higher base offense level is specified if the defendant is convicted under 18 U.S.C. § 1956(a)(1)(A) or (a)(2)(A) because those subsections apply to defendants who did not merely conceal a serious crime that had already taken place, but encouraged or facilitated the commission of further crimes.*

*The amount of money involved is included as a factor because it is an indicator of the scope of the criminal enterprise as well as the degree of the defendant's involvement. Narcotics trafficking is included as a factor because of the clearly expressed Congressional intent to adequately punish persons involved in that activity.*

**§2S1.2.    Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity**

(a)    Base Offense Level: **17**

(b)    Specific Offense Characteristics

    (1)    If the defendant knew that the funds were the proceeds of:

        (A)    an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances, increase by **5** levels;

        (B)    any other specified unlawful activity (see 18 U.S.C. § 1956(c)(7)), increase by **2** levels.

    (2)    If the value of the funds exceeded $100,000, increase the offense level as specified in §2S1.1(b)(2).

*Commentary*

*Statutory Provision:* 18 U.S.C. § 1957.

October, 1987

**Defense Exhibit 9-164**

*Application Note:*

1.  *"Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include racketeering offenses (18 U.S.C. § 1961(1)), drug offenses, and most other serious federal crimes but does not include other money-laundering offenses.*

*Background:    The statute covered by this guideline is a part of the Anti-Drug Abuse Act of 1986, and prohibits monetary transactions that exceed $10,000 and involve the proceeds of "specified unlawful activity" (as defined in 18 U.S.C. § 1956), if the defendant knows that the funds are "criminally derived property."    (Knowledge that the property is from a specified unlawful activity is not an element of the offense.)    The maximum term of imprisonment specified is ten years.*

*The statute is similar to 18 U.S.C. § 1956, but does not require that the recipient exchange or "launder" the funds, that he have knowledge that the funds were proceeds of a specified unlawful activity, nor that he have any intent to further or conceal such an activity. In keeping with the intent of the legislation, this guideline provides for substantial punishment. The offense levels are higher than in §2S1.3 because of the higher statutory maximum and the added element of knowing that the funds were criminally derived property.*

*The 2-level increase in subsection (b)(1) applies if the defendant knew that the funds were not merely criminally derived, but were in fact the proceeds of a specified unlawful activity.    Such a distinction is not made in §2S1.1, because the level of intent required in that section effectively precludes an inference that the defendant was unaware of the nature of the activity.*

§2S1.3.    **Failure to Report Monetary Transactions; Structuring Transactions to Evade Reporting Requirements**

(a)    Base Offense Level:

(1)    13, if the defendant:

(A)    structured transactions to evade reporting requirements;

(B)    made false statements to conceal or disguise the activity; or

(C)    reasonably should have believed that the funds were the proceeds of criminal activity;

(2)    5, otherwise.

(b)    Specific Offense Characteristics

(1)    If the defendant knew or believed that the funds were criminally derived, increase by 5 levels.

(2)    If the base offense level is from (a)(1) above and the value of the funds exceeded $100,000, increase the offense level as specified in §2S1.1(b)(2).

**Defense Exhibit 9-165**

*Commentary*

*Statutory Provisions:* *31 U.S.C. §§ 5313, 5314, 5316, 5322, 5324.*

*Application Note:*

1.  As used in this guideline, funds or other property are the "proceeds of criminal activity" or "criminally derived" if they are "criminally derived property," within the meaning of 18 U.S.C. § 1957.

*Background:* The offenses covered by this guideline relate to records and reports of certain transactions involving currency and monetary instruments. The maximum prison sentence for these offenses is ten years if there is any pattern of unlawful activity, and five years otherwise.

The base offense level is set at 13 for the great majority of cases. However, the base offense level is set at 5 for those cases in which these offenses may be committed with innocent motives *and* the defendant reasonably believed that the funds were from legitimate sources. The higher base offense level applies in all other cases. The offense level is increased by 5 levels if the defendant knew that the funds were criminally derived.

The dollar value of the transactions not reported is an important sentencing factor, except in rare cases. It is an indicator of several factors that are pertinent to the sentence, including the size of the criminal enterprise, and the extent to which the defendant aided the enterprise.

October, 1987

**Defense Exhibit 9-166**

## PART T - OFFENSES INVOLVING TAXATION

### 1. INCOME TAXES

#### Introductory Commentary

The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

### §2T1.1.    Tax Evasion

(a)   Base Offense Level:   Level from §2T4.1 (Tax Table) corresponding to the tax loss.

For purposes of this guideline, the "tax loss" is the greater of: (A) the total amount of tax that the taxpayer evaded or attempted to evade, including interest to the date of filing of an indictment or information; and (B) the "tax loss" defined in §2T1.3. When more than one year is involved, the tax losses are to be added.

(b)   Specific Offense Characteristics

(1)   If (A) the defendant failed to report income exceeding $10,000 per year from criminal activity, or (B) the offense concealed or furthered criminal activity from which the defendant derived a substantial portion of his income, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

(2)   If sophisticated means were used to impede discovery of the nature or extent of the offense, increase by 2 levels.

#### Commentary

*Statutory Provision:*  26 U.S.C. § 7201.

*Application Notes:*

1.   *False statements in furtherance of the evasion (see §§2T1.3, 2T1.5, and 2T1.8) are considered part of the offense for purposes of this guideline.*

2.   *For purposes of the guideline, the tax loss is the amount of tax that the taxpayer evaded or attempted to evade, plus interest to the date of the filing of an indictment or information. The tax loss does not include penalties. The court is to determine this amount as it would any other guideline factor. In some instances, such as when indirect methods of proof are used, the amount of the tax loss may be uncertain; the guidelines*

2.139                                                October, 1987

## Defense Exhibit 9-167

*contemplate that the court will simply make a reasonable estimate based on the available facts.*

3.  *Although the definition of tax loss corresponds to what is commonly called the "criminal deficiency," its amount is to be determined by the same rules applicable in determining any other sentencing factor.  In accordance with the "relevant conduct" approach adopted by the guidelines, tax losses resulting from more than one year are to be added whether or not the defendant is convicted of multiple counts.*

4.  *The guideline refers to §2T1.3 to provide an alternative minimum standard for the tax loss, which is based on a percentage of the dollar amounts of certain misstatements made in returns filed by the taxpayer.  This alternative standard may be easier to determine, and should make irrelevant the issue of whether the taxpayer was entitled to offsetting adjustments that he failed to claim.*

5.  *"Criminal activity" means any "racketeering activity" as defined in 18 U.S.C. § 1961.  If §2T1.1(b)(1) applies, do not apply §4B1.3 (Criminal Livelihood), which is substantially duplicative.*

6.  *Whether "sophisticated means" were employed (§2T1.1(b)(2)) requires a subjective determination similar to that in §2F1.1(b)(2).  An enhancement would be applied for example, where the defendant used offshore bank accounts, or transactions through corporate shells.*

*Background:  This guideline relies most heavily on the amount of tax evaded because the chief interest protected by the statute is the collection of taxes.  A greater evasion is obviously more harmful to the treasury, and more serious than a smaller one with otherwise similar characteristics.  Furthermore, as the potential benefit from tax evasion increases, the sanction necessary to deter also increases.*

*The overlapping imprisonment ranges in the Tax Table are intended to minimize the significance of disputes.  The consequence of an inexact estimate of the tax loss is never severe, even when the tax loss is near the boundary of a range.  For example, although the difference between $39,999 and $40,001 results in a change from level 10 to level 11, any sentence of eight to twelve months would be within the guidelines regardless of the offense level determination made by the court.  Indeed, any sentence between ten and twelve months would be within the guidelines for a tax loss ranging from $20,000 to $150,000.  As a consequence, for all dollar amounts, the Tax Table affords the court considerable latitude in evaluating other factors, even when the amount of the tax loss is uncertain.*

*Roughly half of all tax evaders are now sentenced to probation without imprisonment, while the other half receives sentences that require them to serve an average prison term of twelve months.  This guideline is intended to reduce disparity in sentencing for tax evasion and to somewhat increase average sentence length.  As a result, the number of purely probationary sentences will be reduced.  The Commission believes that any additional costs of imprisonment that may be incurred as a result of the increase in the average term of imprisonment for tax evasion are inconsequential in relation to the potential increase in revenue.  Current estimates are that income taxes are underpaid by approximately $90 billion annually.*

*Although currently some large-scale evaders serve as much as five years in prison, in practice the average sentence length for defendants sentenced to a term of imprisonment does not increase rapidly with the amount of tax evaded.  Thus, the average time served by those*

2.140                                                October, 1987

# Defense Exhibit 9-168

*sentenced to a term of imprisonment for evading less than $10,000 in taxes is about nine months, while the corresponding figure for those evading over $100,000 in taxes is about sixteen months. Guideline sentences should result in small increases in the average length of imprisonment for most tax cases that involve less than $100,000 in tax evaded. The increase is expected to be somewhat larger for cases involving more taxes.*

*Failure to report criminally-derived income is included as a factor for deterrence purposes. Criminally-derived income is generally difficult to establish, so that the tax loss in such cases will tend to be substantially understated. An enhancement for offenders who violate the tax laws as part of a pattern of criminal activity from which they derive a substantial portion of their income also serves to implement the mandate of 28 U.S.C. § 994(n). Current-practice estimates are that, on average, the presence of this factor increases time served by the equivalent of 2 levels.*

*Although tax evasion always involves some planning, unusually sophisticated efforts to conceal the evasion decrease the likelihood of detection and therefore warrant an additional sanction for deterrence purposes. Analyses of data for other frauds and property crimes show that careful planning or sophistication generally results in an average increase of at least 2 levels.*

*The guideline does not make a distinction for an employee who prepares fraudulent returns on behalf of his employer. The adjustments in Chapter Three, Part B (Role in the Offense) should be used to make appropriate distinctions.*

### §2T1.2.    Willful Failure To File Return, Supply Information, or Pay Tax

(a)    Base Offense Level:

    (1)    1 level less than the level from §2T4.1 (Tax Table) corresponding to the tax loss; or

    (2)    5, if there is no tax loss.

    For purposes of this guideline, "tax loss" means the total amount of tax that the taxpayer owed and did not pay, but, in the event of a failure to file in any year, not less than 10 percent of the amount by which the taxpayer's gross income for that year exceeded $20,000.

(b)    Specific Offense Characteristics

    (1)    If (A) the defendant failed to report income exceeding $10,000 per year from criminal activity, or (B) the offense concealed or furthered criminal activity from which the defendant derived a substantial portion of his income, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

    (2)    If sophisticated means were used to impede discovery of the nature or extent of the offense, increase by 2 levels.

October, 1987

# Defense Exhibit 9-169

*Commentary*

*Statutory Provision:* 26 U.S.C. § 7203.

*Application Note:*

1.  "Criminal activity" means any "racketeering activity" as defined in 18 U.S.C. § 1961. If §2T1.2(b)(1) applies, do not apply §4B1.3 (Criminal Livelihood), which is substantially duplicative.

2.  Whether "sophisticated means" were employed (§2T1.2(b)(2)) requires a determination similar to that in §2F1.1(b)(2). An enhancement would be applied, for example, where the defendant used offshore bank accounts or transactions through corporate shells.

*Background:* Violations of 26 U.S.C. § 7203 are usually serious misdemeanors that are similar to tax evasion, except that there need be no affirmative act in support of the offense. They are rarely prosecuted unless the defendant also owed taxes that he failed to pay.

Because the conduct generally is tantamount to tax evasion, the guideline is similar to §2T1.1. Because the offense is a misdemeanor, the offense level has been set at one below the level corresponding to evasion of the same amount of taxes.

An alternative measure of the tax loss, 10 percent of gross income in excess of $20,000, has been provided because of the difficulty of computing the tax loss, which may become the subject of protracted civil litigation. It is expected that the measure used will generally understate the tax due, and will not call for a sentence approaching the maximum unless very large incomes are involved. Thus, the burden will remain on the prosecution to provide a more accurate estimate of the tax loss if it seeks enhanced punishment.

The intended impact of this guideline is to increase the average time served for this offense, and to increase significantly the number of violators who receive a term of imprisonment. Currently, the average time served for this offense is approximately 2.5 months, including those who are not sentenced to prison. Considering only those who do serve a term of imprisonment, the average term is about six to seven months.

**§2T1.3.    Fraud and False Statements Under Penalty of Perjury**

      (a)   Base Offense Level:

           (1)   Level from §2T4.1 (Tax Table) corresponding to the tax loss, if the offense was committed in order to facilitate evasion of a tax; or

           (2)   6, otherwise.

           For purposes of this guideline, the "tax loss" is 28 percent of the amount by which the greater of gross income and taxable income was understated, plus 100 percent of the total amount of any false credits claimed against tax. If the taxpayer is a corporation, use 34 percent in lieu of 28 percent.

**Defense Exhibit 9-170**

(b) Specific Offense Characteristics

(1) If (A) the defendant failed to report income exceeding $10,000 per year from criminal activity, or (B) the offense concealed or furthered criminal activity from which the defendant derived a substantial portion of his income, increase by 2 levels. If the resulting offense level is less than level **12**, increase to level **12**.

(2) If sophisticated means were used to impede discovery of the nature or extent of the offense, increase by **2** levels.

*Commentary*

*Statutory Provision*: *26 U.S.C. § 7206, except § 7206(2).*

*Application Notes:*

*1.* *"Criminal activity" means any "racketeering activity" as defined in 18 U.S.C. § 1961. If §2T1.3(b)(1) applies, do not apply §4B1.3 (Criminal Livelihood), which is substantially duplicative.*

*2.* *Whether "sophisticated means" were employed (§2T1.3(b)(2)) requires a determination similar to that in §2F1.1(b)(2). An enhancement would be applied, for example, where the defendant used offshore bank accounts or transactions through corporate shells.*

*Background:* *This guideline covers conduct that usually is analogous to tax evasion, although the elements differ. Accordingly, the offense is treated much like tax evasion.*

*Existence of a tax loss is not an element of these offenses. Furthermore, in instances where the defendant is setting the groundwork for evasion of a tax that is expected to become due in the future, he may make false statements that underreport income that as of the time of conviction may not yet have resulted in a tax loss. In order to gauge the seriousness of these offenses, the guidelines establish a rule for determining a "tax loss" based on the nature and magnitude of the false statements made. Use of this approach also avoids complex problems of proof and invasion of privacy when returns of persons other than the defendant and co-defendants are involved.*

**§2T1.4.    Aiding, Assisting, Procuring, Counseling, or Advising Tax Fraud**

(a) Base Offense Level:

(1) Level from §2T4.1 (Tax Table) corresponding to the resulting tax loss, if any; or

(2) 6, otherwise.

For purposes of this guideline, the "tax loss" is the tax loss, as defined in §2T1.3, resulting from the defendant's aid, assistance, procurance or advice.

# Defense Exhibit 9-171

(b)  Specific Offense Characteristics

(1)  If the defendant committed the offense as part of a pattern or scheme from which he derived a substantial portion of his income, increase by **2** levels.

(2)  If sophisticated means were used to impede discovery of the nature or extent of the offense, increase by **2** levels.

(3)  If the defendant was in the business of preparing or assisting in the preparation of tax returns, increase by **2** levels.

*Commentary*

*Statutory Provision:*  26 U.S.C. § 7206(2).

*Application Notes:*

1.  *Subsection (b)(1) applies to persons who derive a substantial portion of their income through the promotion of tax fraud or tax evasion, e.g., through promoting fraudulent tax shelters.  If this subsection applies, do not apply §4B1.3 (Criminal Livelihood), which is substantially duplicative.*

2.  *Whether "sophisticated means" were employed (§2T1.1(b)(2)) requires a determination similar to that in §2F1.1(b)(2).  An enhancement would be applied, for example, where the defendant used offshore bank accounts or transactions through corporate shells.*

3.  *Subsection (b)(3) applies to persons who regularly act as tax preparers or advisers for profit.  Do not employ §3B1.3 (Abuse of Position of Trust or Special Skill) if this adjustment applies.  Subsection (b)(1) may also apply to such persons.*

4.  *In certain instances, such as promotion of a tax shelter scheme, the defendant may advise other persons to violate their tax obligations through filing returns that find no support in the tax laws.  If this type of conduct can be shown to have resulted in the filing of false returns (regardless of whether the principals were aware of their falsity), the misstatements in all such returns will contribute to one aggregate "tax loss."*

*Background:*  *An increased offense level is specified for tax preparers and advisers because their misconduct poses a greater risk of revenue loss and is more clearly willful.  Other considerations are similar to those in §2T1.3.*

§2T1.5.  **Fraudulent Returns, Statements, or Other Documents**

(a)  Base Offense Level:  **6**

*Commentary*

*Statutory Provision:*  26 U.S.C. § 7207.

2.144                                            October, 1987

# Defense Exhibit 9-172

*Background:*    *The offense is a misdemeanor.  It is to be distinguished from 26 U.S.C. § 7206(1) (§2T1.3), which is a felony involving a false statement under penalty of perjury.  The offense level has been set at 6 in order to give the sentencing judge considerable latitude because the conduct could be similar to tax evasion.*

**§2T1.6.    Failing to Collect or Truthfully Account for and Pay Over Tax**

> (a)    Base Offense Level:    Level from §2T4.1 (Tax Table) corresponding to the tax not collected or accounted for and paid over, plus interest.

*Commentary*

*Statutory Provision:  26 U.S.C. § 7202.*

*Application Note:*

1.    *In the event that the employer not only failed to account to the Internal Revenue Service and pay over the tax, but also collected the tax from employees and did not account to them for it, it is both tax evasion and a form of embezzlement.  In such instances, an upward departure may be warranted.*

*Background:*    *The offense is a felony that is infrequently prosecuted.  The failure to collect or truthfully account for the tax must be willful, as must the failure to pay.  Where no effort is made to defraud the employee, the offense is a form of tax evasion, and is treated as such in the guidelines.*

**§2T1.7.    Failing to Deposit Collected Taxes in Trust Account as Required After Notice**

> (a)    Base Offense Level (Apply the greater):
>
> > (1)    4; or
> >
> > (2)    5 less than the level from §2T4.1 (Tax Table) corresponding to the amount not deposited.

*Commentary*

*Statutory Provisions:  26 U.S.C. §§ 7215, 7512(b).*

*Application Notes:*

1.    *If funds are deposited and withdrawn without being paid to the Internal Revenue Service, they should be treated as never having been deposited.*

2.    *It is recommended that the fine be based on the total amount of funds not deposited.*

**Defense Exhibit 9-173**

*Background:*    *This offense is a misdemeanor that does not require any intent to evade taxes, nor even that taxes have not been paid.    The more serious offense is 26 U.S.C. § 7202 (see §2T1.6).*

*This offense should be relatively easy to detect and fines may be feasible.    Accordingly, the offense level has been set considerably lower than for tax evasion, although some effort has been made to tie the offense level to the level of taxes that were not deposited.*

**§2T1.8.    Offenses Relating to Withholding Statements**

> (a)    Base Offense Level:  **4**

*Commentary*

*Statutory Provisions:  26 U.S.C. §§ 7204, 7205.*

*Application Note:*

1.    *If the defendant was attempting to evade, rather than merely delay, payment of taxes, a sentence above the guidelines may be warranted.*

*Background:*    *The offenses are misdemeanors.  Currently, imprisonment is unusual.*

**§2T1.9.    Conspiracy to Impair, Impede or Defeat Tax**

> (a)    Base Offense Level (Apply the greater):
>
> > (1)    Offense level determined from §2T1.1 or §2T1.3, as applicable; or
> >
> > (2)    10.
>
> (b)    Specific Offense Characteristics
>
> If either of the following adjustments applies, use the greater:
>
> > (1)    If the offense involved the planned or threatened use of violence, increase by 4 levels.
> >
> > (2)    If the conduct was intended to encourage persons other than or in addition to co-conspirators to violate the internal revenue laws or impede or impair the Internal Revenue Service in the assessment and collection of revenue, increase by 2 levels.

*Commentary*

*Statutory Provision:  18 U.S.C. § 371.*

October, 1987

# Defense Exhibit 9-174

*Application Notes:*

1.  *This section applies to conspiracies to "defraud the United States by impeding, impairing, obstructing and defeating . . . the collection of revenue."  United States v. Carruth, 699 F.2d 1017, 1021 (9th Cir. 1983), cert. denied, 104 S. Ct. 698 (1984).  See also United States v. Browning, 723 F.2d 1544 (11th Cir. 1984); United States v. Klein, 247 F.2d 908, 915 (2d Cir. 1957), cert. denied, 355 U.S. 924 (1958).  It does not apply to taxpayers, such as a husband and wife, who merely evade taxes jointly or file a fraudulent return.*

2.  *The minimum base offense level is 10.  If a tax loss from the conspiracy can be established under either §2T1.1 or §2T1.3 (whichever applies to the underlying conduct), and that tax loss corresponds to a higher offense level in the Tax Table (§2T4.1), use that higher base offense level.*

3.  *The specific offense characteristics are in addition to those specified in §2T1.1 and §2T1.3.*

4.  *Because the offense is a conspiracy, adjustments from Chapter Three, Part B (Role in the Offense) usually will apply.*

*Background:    This type of conspiracy generally involves substantial sums of money.  It also typically is complex and may be far-reaching, making it quite difficult to evaluate the extent of the revenue loss caused.  Additional specific offense characteristics are included because of the potential for these tax conspiracies to subvert the revenue system and the danger to law enforcement agents and the public.*

\*    \*    \*    \*    \*

## 2.    ALCOHOL AND TOBACCO TAXES

### *Introductory Commentary*

*This section deals with offenses contained in Parts I-IV of Subchapter J of Title 26, chiefly 26 U.S.C. §§ 5601-5605, 5607, 5608, 5661, 5671, 5691, and 5762, where the essence of the conduct is tax evasion or a regulatory violation.  Because these offenses are no longer a major enforcement priority, no effort has been made to provide a section-by-section set of guidelines.  Rather, the conduct is dealt with by dividing offenses into two broad categories:    tax evasion offenses and regulatory offenses.*

**§2T2.1.    Non-Payment of Taxes**

(a)    Base Offense Level:    Level from §2T4.1 (Tax Table) corresponding to the tax loss.

For purposes of this guideline, the "tax loss" is the amount of taxes that the taxpayer failed to pay or attempted not to pay.

October, 1987

**Defense Exhibit 9-175**

*Commentary*

*Statutory Provisions:* 26 U.S.C. §§ 5601-5605, 5607, 5608, 5661, 5671, 5691, 5762, provided the conduct constitutes non-payment, evasion or attempted evasion of taxes.

*Application Notes:*

1.    The tax loss is the total amount of unpaid taxes that were due on the alcohol and/or tobacco, or that the defendant was attempting to evade.

2.    Offense conduct directed at more than tax evasion (*e.g.,* theft or fraud) may warrant an upward departure.

*Background:*    The most frequently prosecuted conduct violating this section is operating an illegal still. 26 U.S.C. § 5601(a)(1).


**§2T2.2.    Regulatory Offenses**

(a)    Base Offense Level: **4**


*Commentary*

*Statutory Provisions:*    26 U.S.C. §§ 5601-5605, 5607, 5608, 5661, 5671, 5691, 5762, provided the conduct is tantamount to a record-keeping violation rather than an effort to evade payment of taxes.

*Background:*    Prosecutions of this type are infrequent.


\*    \*    \*    \*    \*


**3.    CUSTOMS TAXES**

*Introductory Commentary*

This part deals with violations of 18 U.S.C. §§ 496, 541-545, 547, 548, 550, 551, 1915 and 19 U.S.C. §§ 283, 1436, 1464, 1465, 1586(e), 1708(b). These guidelines are primarily aimed at revenue collection or trade regulation. They are not intended to deal with the importation of contraband, such as drugs, or other items such as obscene material, firearms or pelts of endangered species, the importation of which is prohibited or restricted for non-economic reasons. Other, more specific legislation generally applies to most of these offenses. Importation of contraband or stolen goods would be a reason for referring to another, more specific guideline, or for imposing a sentence above that specified in these guidelines.


October, 1987

**Defense Exhibit 9-176**

**§2T3.1.**    **Evading Import Duties or Restrictions (Smuggling)**

    (a)   Base Offense Level:    Level from §2T4.1 (Tax Table) corresponding to the tax loss.

    For purposes of this guideline, the "tax loss" is the amount of the duty.

*Commentary*

*Statutory Provisions:    18 U.S.C. §§ 496, 541-545, 547, 548, 550, 551, 1915; 19 U.S.C. §§ 283, 1436, 1464, 1465, 1586(e), 1708(b).*

*Application Notes:*

1.    *A sentence at or near the minimum of the guideline range typically would be appropriate for cases involving tourists who bring in items for their own use.   Such conduct generally poses a lesser threat to revenue collection.*

2.    *Particular attention should be given to those items for which entry is prohibited, limited, or restricted.   Especially when such items are harmful or protective quotas are in effect, the duties evaded on such items may not adequately reflect the harm to society or protected industries resulting from their importation..   In such instances, the court should impose a sentence above the guideline.   A sentence based upon an alternative measure of the "duty" evaded, such as the increase in market value due to importation, or 25 percent of the items' fair market value in the United States, might be considered.*

**§2T3.2.**    **Receiving or Trafficking in Smuggled Property**

    (a)   Base Offense Level:    Level from §2T4.1 (Tax Table) corresponding to the tax loss.

    For purposes of this guideline, the "tax loss" is the amount of the duty.

*Commentary*

*Statutory Provision:  18 U.S.C. § 545.*

\*    \*    \*    \*    \*

October, 1987

**Defense Exhibit 9-177**

4.    TAX TABLE

§2T4.1.    Tax Table

|  | Tax Loss | Offense Level |
|---|---|---|
| (A) | less than $2,000 | 6 |
| (B) | $2,000 - $5,000 | 7 |
| (C) | $5,001 - $10,000 | 8 |
| (D) | $10,001 - $20,000 | 9 |
| (E) | $20,001 - $40,000 | 10 |
| (F) | $40,001 - $80,000 | 11 |
| (G) | $80,001 - $150,000 | 12 |
| (H) | $150,001 - $300,000 | 13 |
| (I) | $300,001 - $500,000 | 14 |
| (J) | $500,001 - $1,000,000 | 15 |
| (K) | $1,000,001 - $2,000,000 | 16 |
| (L) | $2,000,001 - $5,000,000 | 17 |
| (M) | more than $5,000,000 | 18 |

October, 1987

**Defense Exhibit 9-178**

## PART X - OTHER OFFENSES

### 1.    CONSPIRACIES, ATTEMPTS, SOLICITATIONS

**§2X1.1.    Attempt, Solicitation, or Conspiracy Not Covered by a Specific Guideline**

> (a)    Base Offense Level:    The base offense level from the guideline for the object offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.
>
> (b)    Specific Offense Characteristics
>
>> (1)    If an attempt or solicitation, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.
>>
>> (2)    If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.
>>
>> (3)    If a solicitation, and the statute treats solicitation identically with the object of the offense, do not apply §2X1.1(b)(1); i.e., the offense level for solicitation is the same as that for the object offense.

*Commentary*

*Statutory Provisions:  18 U.S.C. §§ 371, 372, 2271.*

*Application Notes:*

*1.    Certain attempts, conspiracies, and solicitations are covered by specific guidelines (e.g., §2A2.1 includes attempt, conspiracy, or solicitation to commit murder; §2A3.1 includes attempted criminal sexual abuse; and §2A4.1 includes attempts and conspiracies to commit controlled substance offenses).  Section 2X1.1 applies only in the absence of a more specific guideline.*

*2.    Under §2X1.1(a) the base offense level will be the same as that for the object offense which the defendant solicited, or conspired or attempted to commit.  But the only specific offense characteristics from the guideline for the object offense that apply are those that are determined to have been specifically intended or actually occurred.  Speculative specific offense characteristics will not be applied.  For example, if two defendants are arrested during the conspiratorial stage of planning an armed bank robbery, the offense level ordinarily would not include aggravating factors regarding possible injury to others, hostage taking, discharge of a weapon, or obtaining a large sum of money, because such*

October, 1987

## Defense Exhibit 9-179

*factors would be speculative. The offense level would simply reflect the level applicable to robbery of a financial institution, with the enhancement for possession of a weapon. If it was established that the defendants actually intended to physically restrain the teller, the specific offense characteristic for physical restraint would be added. In an attempted theft, the value of the items that the defendant intended to steal would be considered.*

3.    *If the object offense is not covered by a specific guideline, see §2X5.1 (Other Offenses).*

4.    *If the defendant was convicted of conspiracy or solicitation and also for the completed offense, the conviction for the conspiracy or solicitation shall be imposed to run concurrently with the sentence for the object offense, except in cases where it is otherwise specifically provided for by the guidelines or by law. 28 U.S.C. § 994(l)(2).*

*Background:* *In most prosecutions for conspiracies or attempts, the object offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim. In such cases, no reduction of the offense level is warranted. Sometimes, however, the arrest occurs well before the defendant or any co-conspirator has completed the necessary acts of the object offense. Under such circumstances, a reduction of 3 levels is provided under §2X1.1(b)(1) or (2).*

\*    \*    \*    \*    \*

## 2.    AIDING AND ABETTING

### §2X2.1.    Aiding and Abetting

The offense level is the same level as that for the underlying offense.

### Commentary

*Statutory Provisions:*  *18 U.S.C. §§ 2, 755-757.*

*Application Note:*

1.    *"Underlying offense" means the offense the defendant is convicted of aiding or abetting.*

*Background:* *A defendant convicted of aiding and abetting is punishable as a principal. 18 U.S.C. § 2. This section provides that aiding and abetting the commission of an offense has the same offense level as the underlying offense. An adjustment for a mitigating role (§3B1.2) may be applicable.*

\*    \*    \*    \*    \*

October, 1987

## Defense Exhibit 9-180

**3.   ACCESSORY AFTER THE FACT**

**§2X3.1.   Accessory After the Fact**

(a)   Base Offense Level:   **6** levels lower than the offense level for the underlying offense, but in no event less than **4**, or more than **30**.

*Commentary*

*Statutory Provisions: 18 U.S.C. §§ 3, 757, 1071, 1072.*

*Application Notes:*

1.   *"Underlying offense" means the offense as to which the defendant was an accessory.*

2.   *The adjustment from §3B1.2 (Mitigating Role) normally would not apply because an adjustment for reduced culpability is incorporated in the base offense level.*

\*   \*   \*   \*   \*

**4.   MISPRISION OF FELONY**

**§2X4.1.   Misprision of Felony**

(a)   Base Offense Level:   **9** levels lower than the offense level for the underlying offense, but in no event less than **4**, or more than **19**.

*Commentary*

*Statutory Provision: 18 U.S.C. § 4.*

*Application Notes:*

1.   *"Underlying offense" means the offense as to which the misprision was committed.*

2.   *The adjustment from §3B1.2 (Mitigating Role) normally would not apply because an adjustment for reduced culpability is incorporated in the base offense level.*

\*   \*   \*   \*   \*

October, 1987

**Defense Exhibit 9-181**

## 5.  ALL OTHER OFFENSES

### §2X5.1  Other Offenses  (Policy Statement)

For offenses for which no specific guideline has been promulgated:

(a)  If the offense is a felony or class A misdemeanor, the most analogous guideline should be applied.  If no sufficiently analogous guideline exists, any sentence that is reasonable and consistent with the purposes of sentencing should be imposed.  See 18 U.S.C. § 3553(b).

(b)  If the offense is a Class B or C misdemeanor or an infraction, any sentence that is reasonable and consistent with the purpose of sentencing should be imposed.  See 18 U.S.C. § 3553(b).

### *Commentary*

*Background:*  *This policy statement addresses cases in which a defendant has been convicted of an offense for which no specific guideline has been written.  For a felony or a class A misdemeanor (see 18 U.S.C. §§ 3559(a) and 3581(b)), the court is directed to apply the most analogous guideline.  If no sufficiently analogous guideline exists, the court is directed to sentence without reference to a specific guideline or guideline range, as provided in 18 U.S.C. § 3553(b).*

*For a class B or C misdemeanor or an infraction (see 18 U.S.C. §§ 3559(a) and 3581(b)) that is not covered by a specific guideline, the court is directed to sentence without reference to a specific guideline or guideline range, as provided in 18 U.S.C. § 3553(b).  An inquiry as to whether there is a sufficiently analogous guideline that might be applied is not required.  The Commission makes this distinction in treatment because for many lesser offenses (e.g., traffic infractions), generally handled under assimilative offense provisions by magistrates, there will be no sufficiently analogous guideline, and a case-by-case determination in respect to this issue for the high volume of cases processed each year would be unduly burdensome and would not significantly reduce disparity.*

October, 1987

**Defense Exhibit 9-182**

# CHAPTER THREE - ADJUSTMENTS

## PART A - VICTIM-RELATED ADJUSTMENTS

### 1.    VICTIM-RELATED ADJUSTMENTS

*Introductory Commentary*

*The following adjustments are included in this Part because they may apply to a wide variety of offenses. They are to be treated as specific offense characteristics.*

### §3A1.1.    Vulnerable Victim

If the defendant knew or should have known that the victim of the offense was unusually vulnerable due to age, physical or mental condition, or that the victim was particularly susceptible to the criminal conduct, increase by 2 levels.

*Commentary*

*Application Notes:*

1.    *This adjustment applies to any offense where the victim's vulnerability played any part in the defendant's decision to commit the offense. The adjustment would apply, for example, in a fraud case where the defendant marketed an ineffective cancer cure or in a robbery where the defendant selected a handicapped victim. But it would not apply in a case where the defendant sold fraudulent securities to the general public and one of the purchasers happened to be senile.*

2.    *Do not apply this adjustment if the offense guideline specifically incorporates this factor.*

### §3A1.2.    Official Victim

If the victim was any law-enforcement or corrections officer, any other official as defined in 18 U.S.C. § 1114, or a member of the immediate family thereof, and the crime was motivated by such status, increase by 3 levels.

*Commentary*

*Application Notes:*

1.    *"Victim" refers to an individual directly victimized by the offense. This term does not include an organization, agency, or the government itself.*

2.    *Certain high-level officials, e.g., the President and Vice President, are not expressly*

# Defense Exhibit 9-183

covered by this section.    The court should make an upward departure of at least three levels in those unusual cases in which such persons are victims.

3.    Do not apply this adjustment if the offense guideline specifically incorporates this factor.

§3A1.3.    **Restraint of Victim**

If the victim of a crime was physically restrained in the course of the offense, increase by 2 levels.

*Commentary*

*Application Notes:*

1.    "Physically restrained" is defined in the Commentary to §1B1.1 (Application Instructions).

2.    This adjustment applies to any offense in which the victim was physically restrained in the course of the offense, except where such restraint is an element of the offense, specifically incorporated into the base offense level, or listed as a specific offense characteristic.

3.2                                                    October, 1987

**Defense Exhibit 9-184**

## PART B - ROLE IN THE OFFENSE

### Introductory Commentary

*This Part provides adjustments to the offense level based upon the role the defendant played in committing the offense. When an offense is committed by more than one participant, §3B1.1 or §3B1.2 (or neither) may apply. Section 3B1.3 may apply to offenses committed by any number of participants.*

**§3B1.1.    Aggravating Role**

Based on the defendant's role in the offense, increase the offense level as follows:

(a)    If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.

(b)    If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.

(c)    If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels.

### Commentary

*Application Notes:*

1.    *A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted.*

2.    *In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.*

3.    *In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.*

*Background:   This section provides a range of adjustments to increase the offense level based upon the size of a criminal organization (i.e., the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense. This adjustment*

October, 1987

## Defense Exhibit 9-185

*is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate. The Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility.*

*In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility. This is reflected in the inclusiveness of §3B1.1(c).*

**§3B1.2.    Mitigating Role**

Based on the defendant's role in the offense, decrease the offense level as follows:

(a)    If the defendant was a minimal participant in any criminal activity, decrease by **4** levels.

(b)    If the defendant was a minor participant in any criminal activity, decrease by **2** levels.

In cases falling between (a) and (b), decrease by **3** levels.

*Commentary*

*Application Notes:*

1.    *Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.*

2.    *It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.*

3.    *For purposes of §3B1.2(b), a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal.*

*Background: This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant. The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case.*

**Defense Exhibit 9-186**

**§3B1.3.    Abuse of Position of Trust or Use of Special Skill**

If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed in addition to that provided for in §3B1.1, nor may it be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.

*Commentary*

*Application Notes:*

1.    *The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.*

2.    *"Special skill" refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts.*

*Background:    This adjustment applies to persons who abuse their positions of trust or their special skills to facilitate significantly the commission or concealment of a crime. Such persons generally are viewed as more culpable.*

**§3B1.4.    In any other case, no adjustment is made for role in the offense.**

*Commentary*

*Many offenses are committed by a single individual or by individuals of roughly equal culpability so that none of them will receive an adjustment under this Part. In addition, some participants in a criminal organization may receive increases under §3B1.1 (Role in the Offense) while others receive decreases under §3B1.2 (Role in the Offense) and still other participants receive no adjustment.*

October, 1987

**Defense Exhibit 9-187**

*[Page intentionally blank]*

**Defense Exhibit 9-188**

PART C - OBSTRUCTION

## §3C1.1.    Willfully Obstructing or Impeding Proceedings

If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level from Chapter Two by 2 levels.

### Commentary

This section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense.

Application Notes:

1.    The following conduct, while not exclusive, may provide a basis for applying this adjustment:

   (a)    destroying or concealing material evidence, or attempting to do so;

   (b)    directing or procuring another person to destroy or conceal material evidence, or attempting to do so;

   (c)    testifying untruthfully or suborning untruthful testimony concerning a material fact, or producing or attempting to produce an altered, forged, or counterfeit document or record during a preliminary or grand jury proceeding, trial, sentencing proceeding, or any other judicial proceeding;

   (d)    threatening, intimidating, or otherwise unlawfully attempting to influence a co-defendant, witness, or juror, directly or indirectly;

   (e)    furnishing material falsehoods to a probation officer in the course of a presentence or other investigation for the court.

2.    In applying this provision, suspect testimony and statements should be evaluated in a light most favorable to the defendant.

3.    This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt is not a basis for application of this provision.

4.    Where the defendant is convicted for an offense covered by §2J1.1 (Contempt), §2J1.2 (Obstruction of Justice), §2J1.3 (Perjury), §2J1.8 (Bribery of Witness), or §2J1.9 (Payment to Witness), this adjustment is not to be applied, except in determining the combined offense level as specified in Chapter Three, Part D (Multiple Counts). Under §3D1.2(e), a count for obstruction will be grouped with the count for the underlying offense. Ordinarily, the offense level for that Group of Closely Related Counts will be the offense level for the underlying offense, as increased by the 2-level adjustment specified by this

## Defense Exhibit 9-189

*section.    In some instances, however, the offense level for the obstruction offense may be higher, in which case that will be the offense level for the Group.    See §3D1.3(a).    In cases in which a significant further obstruction occurred during the investigation or prosecution of an obstruction offense itself (one of the above listed offenses), an upward departure may be warranted (e.g., where a witness to an obstruction offense is threatened during the course of the prosecution for the obstruction offense).*

**Defense Exhibit 9-190**

## PART D - MULTIPLE COUNTS

### *Introductory Commentary*

*This Part provides rules for determining a single offense level that encompasses all the counts of which the defendant is convicted. The single, "combined" offense level that results from applying these rules is used, after adjustment pursuant to the guidelines in subsequent parts, to determine the sentence. These rules have been designed primarily with the more commonly prosecuted federal offenses in mind.*

*The rules in this Part seek to provide incremental punishment for significant additional criminal conduct. The most serious offense is used as a starting point. The other counts determine how much to increase the offense level. The amount of the additional punishment declines as the number of additional offenses increases.*

*Some offenses that may be charged in multiple-count indictments are so closely intertwined with other offenses that conviction for them ordinarily would not warrant increasing the guideline range. For example, embezzling money from a bank and falsifying the related records, although legally distinct offenses, represent essentially the same type of wrongful conduct with the same ultimate harm, so that it would be more appropriate to treat them as a single offense for purposes of sentencing. Other offenses, such as an assault causing bodily injury to a teller during a bank robbery, are so closely related to the more serious offense that it would be appropriate to treat them as part of the more serious offense, leaving the sentence enhancement to result from application of a specific offense characteristic.*

*In order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct, this Part provides rules for grouping offenses together. Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines. In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines.*

*Some offense guidelines, such as those for theft, fraud and drug offenses, contain provisions that deal with repetitive or ongoing behavior. Other guidelines, such as those for assault, robbery, and bribery, are oriented more toward single episodes of criminal behavior. Accordingly, different rules are required for dealing with multiple-count convictions involving these two different general classes of offenses. More complex cases involving different types of offenses may require application of one rule to some of the counts and another rule to other counts.*

*Some offenses, e.g., racketeering and conspiracy, may be "composite" in that they involve a pattern of conduct or scheme involving multiple underlying offenses. The rules in this Part are to be used to determine the offense level for such composite offenses from the offense level for the underlying offenses.*

*Essentially, the rules in this Part can be summarized as follows: (1) If the offense guidelines in Chapter Two base the offense level primarily on the amount of money or quantity of substance involved (e.g., theft, fraud, drug trafficking, firearms dealing), or otherwise contain provisions dealing with repetitive or ongoing misconduct (e.g., many environmental offenses), add the numerical quantities and apply the pertinent offense guideline, including any specific offense characteristics for the conduct taken as a whole. (2) When offenses are*

October, 1987

## Defense Exhibit 9-191

*closely interrelated, group them together for purposes of the multiple-count rules, and use only the offense level for the most serious offense in that group. (3) As to other offenses (e.g., independent instances of assault, robbery, or bribery), start with the offense level for the most serious count and use the number and severity of additional counts to determine the amount by which to increase that offense level.*

**§3D1.1.    Procedure for Determining Offense Level on Multiple Counts**

When a defendant has been convicted of more than one count, the court shall:

(a)    Group the counts resulting in conviction into distinct Groups of Closely-Related Counts ("Groups") by applying the rules specified in §3D1.2.

(b)    Determine the offense level applicable to each Group by applying the rules specified in §3D1.3.

(c)    Determine the combined offense level applicable to all Groups taken together by applying the rules specified in §3D1.4.

*Commentary*

*Application Note:*

*1.    Certain offenses, e.g., 18 U.S.C. § 924(c) (use of a deadly or dangerous weapon in relation to a crime of violence or drug trafficking) by law carry mandatory consecutive sentences. Such offenses are exempted from the operation of these rules. See §3D1.2.*

*Background:    This section outlines the procedure to be used for determining the combined offense level. After any adjustments from Chapter 3, Part E (Acceptance of Responsibility) and Chapter 4, Part B (Career Offenders and Criminal Livelihood) are made, this combined offense level is used to determine the guideline sentence range. Chapter Five (Determining the Sentence) discusses how to determine the sentence from the (combined) offense level; §5G1.2 deals specifically with determining the sentence of imprisonment when convictions on multiple counts are involved. References in Chapter Five (Determining the Sentence) to the "offense level" should be treated as referring to the combined offense level after all subsequent adjustments have been made.*

**§3D1.2.    Groups of Closely-Related Counts**

All counts involving substantially the same harm shall be grouped together into a single Group. A count for which the statute mandates imposition of a consecutive sentence is excluded from such Groups for purposes of §§3D1.2-3D1.5. Counts involve substantially the same harm within the meaning of this rule:

(a)    When counts involve the same victim and the same act or transaction.

(b)    When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan, including, but not limited to:

October, 1987

**Defense Exhibit 9-192**

(1)   A count charging conspiracy or solicitation and a count charging any substantive offense that was the sole object of the conspiracy or solicitation. 28 U.S.C. § 994(*l*)(2).

(2)   A count charging an attempt to commit an offense and a count charging the commission of the offense. 18 U.S.C. § 3584(a).

(3)   A count charging an offense based on a general prohibition and a count charging violation of a specific prohibition encompassed in the general prohibition. 28 U.S.C. § 994(u).

(c)   When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d)   When counts involve the same general type of offense and the guidelines for that type of offense determine the offense level primarily on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm. Offenses of this kind are found in Chapter Two, Part B (except §§2B2.1-2B3.3), Part D (except §§2D1.6-2D3.4), Part E (except §§2E1.1-2E2.1), Part F, Part G (§§2G2.2-2G3.1), Part K (§2K2.3), Part N (§§2N2.1, 2N3.1), Part Q (§§2Q2.1, 2Q2.2), Part R, Part S, and Part T. This rule also applies where the guidelines deal with offenses that are continuing, *e.g.*, §§2L1.3 and 2Q1.3(b)(1)(A).

<u>Commentary</u>

<u>Application Notes:</u>

*1.   Counts for which the statute mandates imposition of a consecutive sentence are excepted from application of the multiple count rules. Convictions under such counts are excluded from the determination of the combined offense level. Convictions for 18 U.S.C. § 924(c) (use of firearm in commission of a crime of violence) provide a common example. Note that such a conviction usually does affect the offense level for other counts, however, in that in the event of such a conviction the specific offense characteristic for weapon use in the primary offense is to be disregarded. <u>See</u> Commentary to §2K2.4. Example: The defendant is convicted of one count of bank robbery in which he took $5,000 and discharged a weapon causing permanent bodily injury (18 U.S.C. § 2113), and one count of use of a firearm in the commission of a crime of violence (18 U.S.C. § 924(c)). The two counts are not grouped together, but the offense level for the bank robbery count is 25 (18 + 1 + 6) rather than 28. The mandatory five year sentence on the weapon-use count runs consecutively, as required by law.*

*2.   The term "victim" is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, i.e. to identify and group "counts involving substantially the same harm." Thus, for so-called "victimless" crimes (crimes in which society at large is the victim), the grouping decision must be based primarily upon the nature of the interest invaded by each offense.*

3.11                                               October, 1987

# Defense Exhibit 9-193

3.  Under subsection (a), counts are to be grouped together when they represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim.

    *Examples:* (1) The defendant is convicted of forging and uttering the same check. The counts are to be grouped together. (2) The defendant is convicted of kidnapping and assaulting the victim during the course of the kidnapping. The counts are to be grouped together. (3) The defendant is convicted of bid rigging (an antitrust offense) and of mail fraud for signing and mailing a false statement that the bid was competitive. The counts are to be grouped together. (4) The defendant is convicted of two counts of assault on a federal officer for shooting at the same officer twice while attempting to prevent apprehension as part of a single criminal episode. The counts are to be grouped together. (6) The defendant is convicted of three counts of unlawfully bringing aliens into the United States, all counts arising out of a single incident. The three counts are to be grouped together. *But:* (7) The defendant is convicted of two counts of assault on a federal officer for shooting at the officer on two separate days. The counts *are* *not* to be grouped together. (8) The defendant is convicted of two counts, each for unlawfully bringing one alien into the United States, but on different occasions. The counts *are* *not* to be grouped together.

4.  Subsection (b) states the principle that counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times.

    *Examples:* (1) The defendant is convicted of one count of conspiracy to commit extortion and one count of extortion for the offense he conspired to commit. The counts are to be grouped together. (2) The defendant is convicted of two counts of mail fraud and one count of wire fraud, each in furtherance of a single fraudulent scheme. The counts are to be grouped together, even if the mailings and telephone call occurred on different days. (3) The defendant is convicted of one count of auto theft and one count of altering the vehicle identification number of the car he stole. The counts are to be grouped together. *But:* (4) The defendant is convicted of two counts of rape for raping the same person on different days. The counts *are* *not* to be grouped together.

5.  Subsection (c) provides that when conduct that represents a separate count, *e.g.,* bodily injury or obstruction of justice, is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor. This provision prevents "double counting" of offense behavior. Of course, this rule applies only if the offenses are closely related. It is not, for example, the intent of this rule that (assuming they could be joined together) a bank robbery on one occasion and an assault resulting in bodily injury on another occasion be grouped together. The bodily injury (the harm from the assault) would not be a specific offense characteristic to the robbery and would represent a different harm. On the other hand, use of a firearm in a bank robbery and unlawful possession of that firearm are sufficiently related to warrant grouping of counts under this subsection. Frequently, this provision will overlap subsection (a), at least with respect to specific offense characteristics. However, a count such as obstruction of justice, which represents a Chapter Three adjustment and involves a different harm or societal interest than the underlying offense, is covered by subsection (c) even though it is not covered by subsection (a).

# Defense Exhibit 9-194

*A cross-reference to another offense guideline does not constitute "a specific offense characteristic . . . or other adjustment" within the meaning of subsection (c). For example, the guideline for bribery of a public official contains a cross-reference to the guideline for accessory after the fact for the offense that the bribe was to facilitate. Nonetheless, if the defendant were convicted of one count of securities fraud and one count of bribing a public official to facilitate the fraud, the two counts would not be grouped together by virtue of the cross-reference. If, however, the bribe was given for the purpose of hampering a criminal investigation into the offense, it would constitute obstruction and under §3C1.1 would result in a 2-level enhancement to the offense level for the fraud. Under the latter circumstances, the counts would be grouped together.*

6.     *Subsection (d) likely will be used with the greatest frequency. It provides that most property crimes (except robbery, burglary, extortion and the like), drug offenses, firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together. "The same general type of offense" is to be construed broadly, and would include, for example, larceny, embezzlement, forgery, and fraud. The list of instances in which this subsection should be applied is not exhaustive. Note, however, that certain guidelines are specifically excluded from the operation of subsection (d).*

*Examples:     (1) The defendant is convicted of five counts of embezzling money from a bank. The five counts are to be grouped together. (2) The defendant is convicted of two counts of theft of social security checks and three counts of theft from the mail, each from a different victim. All five counts are to be grouped together. (3) The defendant is convicted of five counts of mail fraud and ten counts of wire fraud. Although the counts arise from various schemes, each involves a monetary objective. All fifteen counts are to be grouped together. (4) The defendant is convicted of three counts of unlicensed dealing in firearms. All three counts are to be grouped together. (5) The defendant is convicted of one count of selling heroin, one count of selling PCP, and one count of selling cocaine. The counts are to be grouped together. The Commentary to §2D1.1 provides rules for combining (adding) quantities of different drugs to determine a single combined offense level. (6) The defendant is convicted of three counts of tax evasion. The counts are to be grouped together. (7) The defendant is convicted of three counts of discharging toxic substances from a single facility. The counts are to be grouped together. (8) The defendant is convicted on two counts of check forgery and one count of uttering the first of the forged checks. All three counts are to be grouped together. Note, however, that the uttering count is first grouped with the first forgery count under subsection (a) of this guideline, so that the monetary amount of that check counts only once when the rule in §3D1.3(b) is applied. But: (9) The defendant is convicted of three counts of bank robbery. The counts* <u>are</u> <u>not</u> *to be grouped together, nor are the amounts of money involved to be added.*

7.     *A single case may result in application of several of the rules in this section. Thus, for example, example (8) in the discussion of subsection (d) involves an application of §3D1.2(a) followed by an application of §3D1.2(d). Note also that a Group may consist of a single count; conversely, all counts may form a single Group.*

8.     *Sometimes there may be several counts, each of which could be treated as an aggravating factor to another more serious count, but the guideline for the more serious count provides an adjustment for only one occurrence of that factor. In such cases, only the count representing the most serious of those factors is to be grouped with the other count. For example, if in a robbery of a credit union on a military base the defendant is*

3.13                                                                                      October, 1987

# Defense Exhibit 9-195

*also convicted of assaulting two employees, one of whom is injured seriously, the assault with serious bodily injury would be grouped with the robbery count, while the remaining assault conviction would be treated separately.*

9.  *A defendant may be convicted of conspiring to commit several substantive offenses and also of committing one or more of the substantive offenses.   In such cases, treat the conspiracy count as if it were several counts, each charging conspiracy to commit one of the substantive offenses.   Then apply the ordinary grouping rules to determine the combined offense level based upon the substantive counts of which the defendant is convicted and the various acts cited by the conspiracy count that would constitute behavior of a substantive nature.   Example:   The defendant is convicted of two counts: conspiring to commit offenses A, B, and C, and committing offense A.   Treat this as if the defendant was convicted of (1) committing offense A; (2) conspiracy to commit offense A; (3) conspiracy to commit offense B; and (4) conspiracy to commit offense C.   Count (1) and count (2) are grouped together under §3D1.2(b).   Group the remaining counts, including the various acts cited by the conspiracy count that would constitute behavior of a substantive nature, according to the rules in this section.*

*Background:*   *Ordinarily, the first step in determining the combined offense level in a case involving multiple counts is to identify those counts that are sufficiently related to be placed in the same Group of Closely Related Counts ("Group".)   This section specifies four situations in which counts are to be grouped together.   Although it appears last for conceptual reasons, subsection (d) probably will be used most frequently.*

*A primary consideration in this section is whether the offenses involve different victims. For example, a defendant may stab three prison guards in a single escape attempt.   Some would argue that all counts arising out of a single transaction or occurrence should be grouped together even when there are distinct victims.   Although such a proposal was considered, it was rejected because it probably would require departure in many cases in order to capture adequately the criminal behavior.   Cases involving injury to distinct victims are sufficiently comparable, whether or not the injuries are inflicted in distinct transactions, so that each such count should be treated separately rather than grouped together.   In general, counts are grouped together only when they involve both the same victim (or societal harm in "victimless" offenses) and the same or contemporaneous transactions, except as provided in §3D1.2(c) or (d).*

*Even if counts involve a single victim, the decision as to whether to group them together may not always be clear cut.   For example, how contemporaneous must two assaults on the same victim be in order to warrant grouping together as constituting a single transaction or occurrence?   Existing case law may provide some guidance as to what constitutes distinct offenses, but such decisions often turn on the technical language of the statute and cannot be controlling.   In interpreting this Part and resolving ambiguities, the court should look to the underlying policy of this Part as stated in the Introductory Commentary.*

**§3D1.3.    Offense Level Applicable to Each Group of Closely-Related Counts**

Determine the offense level applicable to each of the Groups as follows:

(a)   In the case of counts grouped together pursuant to §3D1.2(a) - (c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of

## Defense Exhibit 9-196

the counts comprising the Group, i.e., the highest offense level of the counts in the Group.

(b) In the case of counts grouped together pursuant to §3D1.2(d), the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two and Parts A, B and C of Chapter Three. When the counts involve varying offenses, apply the offense guideline that produces the highest offense level.

*Commentary*

*Application Notes:*

1.  The "offense level" for a count refers to the offense level from Chapter Two after all adjustments from Parts A, B, and C of Chapter Three.

2.  When counts are grouped pursuant to §3D1.2(a)-(c), the highest offense level of the counts in the group is used. Ordinarily, it is necessary to determine the offense level for each of the counts in a Group in order to ensure that the highest is correctly identified. Sometimes, it will be clear that one count in the Group cannot have a higher offense level than another, as with a count for an attempt or conspiracy to commit the completed offense. The formal determination of the offense level for such a count may be unnecessary.

3.  When counts are grouped pursuant to §3D1.2(d), the offense guideline applicable to the aggregate behavior is used. If the counts in the Group are covered by different guidelines (e.g., theft and fraud), use the guideline that produces the highest offense level. Determine whether the specific offense characteristics or adjustments from Chapter Three, Parts A, B, and C apply based upon the combined offense behavior taken as a whole. Note that guidelines for similar property offenses have been coordinated to produce identical offense levels, at least when substantial property losses are involved. However, when small sums are involved the differing specific offense characteristics that require increasing the offense level to a certain minimum may affect the outcome. In addition, the adjustment for "more than minimal planning" frequently will apply to multiple count convictions for property offenses.

4.  Sometimes the rule specified in this section may not result in incremental punishment for additional criminal acts because of the grouping rules. For example, if the defendant commits forcible criminal sexual abuse (rape), aggravated assault, and robbery, all against the same victim on a single occasion, all of the counts are grouped together under §3D1.2. The aggravated assault will increase the guideline range for the rape. The robbery, however, will not. This is because the offense guideline for rape (§2A3.1) includes the most common aggravating factors, including injury, that data showed to be significant in actual practice. The additional factor of property loss ordinarily can be taken into account adequately within the guideline range for rape, which is fairly wide. However, an exceptionally large property loss in the course of the rape would provide grounds for a sentence above the guideline range. See §5K2.5 (Property Loss or Damage).

*Background:* This section provides rules for determining the offense level associated with each Group of Closely-Related Counts. Summary examples of the application of these rules are provided at the end of the Commentary to this Part.

3.15                                                October, 1987

# Defense Exhibit 9-197

**§3D1.4.**    **Determining the Combined Offense Level**

The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| Number of Units | Increase in Offense Level |
|---|---|
| 1 | none |
| 1 1/2 | add 1 level |
| 2 | add 2 levels |
| 3 | add 3 levels |
| 4 or 5 | add 4 levels |
| More than 5 | add 5 levels |

In determining the number of Units for purposes of this section:

(a)    Count as one Unit the Group with the highest offense level.  Count one additional Unit for each Group that is equally serious or from 1 to 4 levels less serious.

(b)    Count as one-half Unit any Group that is 5 to 8 levels less serious than the Group with the highest offense level.

(c)    Disregard any Group that is 9 or more levels less serious than the Group with the highest offense level.  Such Groups will not increase the applicable offense level but may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level.

(d)    Except when the total number of Units is 1 1/2, round up to the next largest whole number.

*Commentary*

*Application Notes:*

1.    *Application of the rules in §§ 3D1.2 and 3D1.3 may produce a single Group of Closely Related Counts.   In such cases, the combined offense level is the level corresponding to the Group determined in accordance with §3D1.3.*

2.    *The procedure for calculating the combined offense level when there is more than one Group of Closely Related Counts is as follows:   First, identify the offense level applicable to the most serious Group; assign it one Unit.   Next, determine the number of Units that the remaining Groups represent.   Finally, increase the offense level for the most serious Group by the number of levels indicated in the table corresponding to the total number of Units.*

*Background:    When Groups are of roughly comparable seriousness, each Group will represent one Unit.   When the most serious Group carries an offense level substantially higher than that applicable to the other Groups, however, counting the lesser Groups fully for purposes of the*

3.16    October, 1987

# Defense Exhibit 9-198

*table could add excessive punishment, possibly even more than those offenses would carry if prosecuted separately. To avoid this anomalous result and produce declining marginal punishment, Groups 9 or more levels less serious than the most serious Group should not be counted for purposes of the table, and that Groups 5 to 8 levels less serious should be treated as equal to one-half of a Group. Thus, if the most serious Group is at offense level 15 and if two other Groups are at level 10, there would be a total of two Units for purposes of the table (one plus one-half plus one-half) and the combined offense level would be 17. When this approach produces a fraction in the total Units, other than 1 1/2, it is rounded up to the nearest whole number. Inasmuch as the maximum increase provided in the guideline is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 Units.*

*In unusual circumstances, the approach adopted in this section could produce adjustments for the additional counts that are inadequate or excessive. If there are several groups and the most serious offense is considerably more serious than all of the others, there will be no increase in the offense level resulting from the additional counts. Ordinarily, the court will have latitude to impose added punishment by sentencing toward the upper end of the range authorized for the most serious offense. Situations in which there will be inadequate scope for ensuring appropriate additional punishment for the additional crimes are likely to be unusual and can be handled by departure from the guidelines. Conversely, it is possible that if there are several minor offenses that are not grouped together, application of the rules in this Part could result in an excessive increase in the sentence range. Again, such situations should be infrequent and can be handled through departure. An alternative method for ensuring more precise adjustments would have been to determine the appropriate offense level adjustment through a more complicated mathematical formula; that approach was not adopted because of its complexity.*

**§3D1.5.    Determining the Total Punishment**

Use the combined offense level to determine the appropriate sentence in accordance with the provisions of Chapter Five.

*Commentary*

*This section refers the court to Chapter Five (Determining the Sentence) in order to determine the total punishment to be imposed based upon the combined offense level. The combined offense level is subject to adjustments from Chapter Three, Part E (Acceptance of Responsibility) and Chapter Four, Part B (Career Offenders and Criminal Livelihood).*

\*    \*    \*    \*    \*

*Illustrations of the Operation of the Multiple-Count Rules*

*The following examples, drawn from presentence reports in the Commission's files, illustrate the operation of the guidelines for multiple counts. The examples are discussed summarily; a more thorough, step-by-step approach is recommended until the user is thoroughly familiar with the guidelines.*

**Defense Exhibit 9-199**

1.    Defendant A was convicted on four counts, each charging robbery of a different bank. Each would represent a distinct Group.  §3D1.2.    In each of the first three robberies, the offense level was 19 (18 plus a 1-level increase because a financial institution was robbed) (§2B3.1(b)).    In the fourth robbery $12,000 was taken and a gun was discharged; the offense level was therefore 25.    As the first three counts are 6 levels lower than the fourth, each of the first three represents one-half unit for purposes of §3D1.4.    Altogether there are 2 1/2 Units (rounded up to 3), and the offense level for the most serious (25) is therefore increased by 3 levels under the table.  The combined offense level is 28.

2.    Defendant B, a federal housing inspector, was convicted on four counts of bribery. Counts one and two charged receiving payments of $3,000 and $2,000 from Landlord X in return for a single action with respect to a single property.    Count three charged receipt of $1,500 from Landlord X for taking action with respect to another property, and count four charged receipt of $1,000 from Landlord Y for taking action with respect to a third property.    Counts one and two, which arise out of the same transaction, are combined into a single Group involving a $5,000 bribe and hence an offense level of 11 (§2C1.1(a)(1), §2F1.1).    Each of the two remaining counts represents a distinct Group, at offense level 10.    As there are three Count Units, the offense level for the most serious (11) is increased by 3 levels.    The combined offense level is 14.

3.    Defendant C was convicted on the following seven counts:    (1) theft of a $2,000 check; (2) uttering the same $2,000 check; (3) possession of a stolen $1,200 check; (4) forgery of a $600 check; (5) possession of a stolen $1,000 check; (6) forgery of the same $1,000 check; (7) uttering the same $1,000 check.    Counts 1, 3 and 5 involve offenses under Part B (Theft), while Counts 2, 4, 6 and 7 involve offenses under Part F (Fraud and Deceit).    For purposes of §3D1.2(d), fraud and theft are treated as offenses of the same kind, and therefore all counts are grouped into a single Group, for which the offense level depends on the aggregate harm. The total value of the checks is $4,800.    The fraud guideline is applied, because it produces an offense level that is as high as or higher than the theft guideline.    The base offense level is 6, and there is an aggravator of 1 level for property value.    However, because the conduct involved repeated acts with some planning, the offense level is raised to 10  (§2F1.1(b)(2)(B)). The combined offense level therefore is 10.

4.    Defendant D was convicted on four counts:    (1) distribution of 230 grams of cocaine; (2) distribution of 150 grams of cocaine; (3) distribution of seventy-five grams of heroin; 4) offering a DEA agent $20,000 to avoid prosecution.    The combined offense level for drug offenses is determined by the total quantity of drugs, converted to heroin equivalents.    The first count translates into forty-six grams of heroin; the second count translates into thirty grams of heroin.    The total is 151 grams of heroin.    Under §2D1.1, the combined offense level for the drug offenses is 26.    In addition, because of the attempted bribe of the DEA agent, this offense level is increased by 2 levels to 28 under §3C1.1 (Obstruction).    Because the conduct constituting the bribery offense is accounted for by §3C1.1, it becomes part of the same Group as the drug offenses pursuant to §3D1.2(c).    The combined offense level is 28 pursuant to §3D1.3(a), because the offense level for bribery (22) is less than the offense level for the drug offenses (28).

5.    Defendant E was convicted of four counts arising out of a scheme pursuant to which he received kickbacks from subcontractors.    The counts were as follows:    (1) The defendant received $27,000 from subcontractor A relating to contract X (Mail Fraud).    (2) The defendant received $12,000 from subcontractor A relating to contract X (Commercial Bribery).    (3) The defendant received $15,000 from subcontractor A relating to contract Y (Mail Fraud).    (4) The defendant received $20,000 from subcontractor B relating to contract Z (Commercial Bribery).

3.18

October, 1987

# Defense Exhibit 9-200

*The mail fraud counts are covered by §2F1.1 (Fraud and Deceit). The bribery counts are covered by §2B4.1 (Commercial Bribery), which treats the offense as a sophisticated fraud. The total money involved is $74,000, which results in an offense level of 13 under either §2B4.1 or §2F1.1. Since these two guidelines produce identical offense levels, the combined offense level is 13.*

3.19                                October, 1987

# Defense Exhibit 9-201

*[Page intentionally blank]*

3.20    October, 1987

**Defense Exhibit 9-202**

## PART E - ACCEPTANCE OF RESPONSIBILITY

§3E1.1.    Acceptance of Responsibility

(a)    If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense of conviction, reduce the offense level by 2 levels.

(b)    A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.

(c)    A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

*Commentary*

*Application Notes:*

1.    *In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, the following:*

    *(a)    voluntary termination or withdrawal from criminal conduct or associations;*

    *(b)    voluntary payment of restitution prior to adjudication of guilt;*

    *(c)    voluntary and truthful admission to authorities of involvement in the offense and related conduct;*

    *(d)    voluntary surrender to authorities promptly after commission of the offense;*

    *(e)    voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;*

    *(f)    voluntary resignation from the office or position held during the commission of the offense; and*

    *(g)    the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.*

2.    *Conviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).*

3.    *A guilty plea may provide some evidence of the defendant's acceptance of responsibility. However, it does not, by itself, entitle a defendant to a reduced sentence under this section.*

October, 1987

# Defense Exhibit 9-203

4.    *An adjustment under this section is not warranted where a defendant perjures himself, suborns perjury, or otherwise obstructs the trial or the administration of justice (<u>see</u> §3C1.1), regardless of other factors.*

5.    *The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.    For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.*

<u>*Background:*</u>    *The reduction of offense level provided by this section recognizes legitimate societal interests.    For several reasons, a defendant who clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense by taking, in a timely fashion, one or more of the actions listed above (or some equivalent action) is appropriately given a lesser sentence than a defendant who has not demonstrated sincere remorse.*

*The availability of a reduction under §3E1.1 is not controlled by whether the conviction was by trial or plea of guilty.    Although a guilty plea may show some evidence of acceptance of responsibility, it does not automatically entitle the defendant to a sentencing adjustment.*

October, 1987

**Defense Exhibit 9-204**

## CHAPTER FOUR - CRIMINAL HISTORY AND CRIMINAL LIVELIHOOD

### PART A - CRIMINAL HISTORY

#### *Introductory Commentary*

The Comprehensive Crime Control Act sets forth four purposes of sentencing. *(See 18 U.S.C. § 3553(a)(2).)* A defendant's record of past criminal conduct is directly relevant to those purposes. A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation.

The specific factors included in §4A1.1 and §4A1.3 are consistent with the extant empirical research assessing correlates of recidivism and patterns of career criminal behavior. While empirical research has shown that other factors are correlated highly with the likelihood of recidivism, *e.g.*, age and drug abuse, for policy reasons they were not included here at this time. The Commission has made no definitive judgment as to the reliability of the existing data. However, the Commission will review additional data insofar as they become available in the future.

§4A1.1.    **Criminal History Category**

The total points from items (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.

(a)    Add **3** points for each prior sentence of imprisonment exceeding one year and one month.

(b)    Add **2** points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c)    Add **1** point for each prior sentence not included in (a) or (b), up to a total of **4** points for this item.

(d)    Add **2** points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

(e)    Add **2** points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b). If **2** points are added for item (d), add only **1** point for this item.

October, 1987

# Defense Exhibit 9-205

<u>Commentary</u>

The total criminal history points from §4A1.1 determine the criminal history category (I-VI) in the Sentencing Table in Chapter Five, Part A. The definitions and instructions in §4A1.2 govern the computation of the criminal history points. Therefore, §§4A1.1 and 4A1.2 must be read together. The following notes highlight the interaction of §§4A1.1 and 4A1.2.

<u>Application Notes:</u>

1.  <u>§4A1.1(a)</u>.  Three points are added for each prior sentence of imprisonment exceeding one year and one month. There is no limit to the number of points that may be counted under this item. The term "prior sentence" is defined at §4A1.2(a). The term "sentence of imprisonment" is defined at §4A1.2(b). Where a prior sentence of imprisonment resulted from a revocation of probation, parole, or a similar form of release, <u>see</u> §4A1.2(k).

    Certain prior sentences are not counted or are counted only under certain conditions:

    > A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen year period. <u>See</u> §4A1.2(e).

    > A sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted under this item only if it resulted from an adult conviction. <u>See</u> §4A1.2(d).

    > A sentence for a foreign conviction, a conviction that has been expunged, or an invalid conviction, is not counted. <u>See</u> §4A1.2(h) and (j) and the Commentary to §4A1.2.

2.  <u>§4A1.1(b)</u>.  Two points are added for each prior sentence of imprisonment of at least sixty days not counted in §4A1.1(a). There is no limit to the number of points that may be counted under this item. The term "prior sentence" is defined at §4A1.2(a). The term "sentence of imprisonment" is defined at §4A1.2(b). Where a prior sentence of imprisonment resulted from a revocation of probation, parole, or a similar form of release, <u>see</u> §4A1.2(k).

    Certain prior sentences are not counted or are counted only under certain conditions:

    > A sentence imposed more than ten years prior to the defendant's commencement of the instant offense is not counted. <u>See</u> §4A1.2(e).

    > An adult or juvenile sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted only if confinement resulting from such sentence extended into the five year period preceding the defendant's commencement of the instant offense. <u>See</u> §4A1.2(d).

    > Sentences for certain specified non-felony offenses are never counted. <u>See</u> §4A1.2(c)(2).

    > A sentence for a foreign conviction or a tribal court conviction, an expunged conviction, or an invalid conviction, is not counted. <u>See</u> §4A1.2(h), (i), (j), and the Commentary to §4A1.2.

**Defense Exhibit 9-206**

*A military sentence is counted only if imposed by a general or special court martial. See §4A1.2(g).*

3.    §4A1.1(c).  One point is added for each prior sentence not counted under §4A1.1(a) or (b). A maximum of four points may be counted under this item. The term "prior sentence" is defined at §4A1.2(a).

*Certain prior sentences are not counted or are counted only under certain conditions:*

*A sentence imposed more than ten years prior to the defendant's commencement of the instant offense is not counted. See §4A1.2(e).*

*An adult or juvenile sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted only if imposed within five years of the defendant's commencement of the current offense. See §4A1.2(d).*

*Sentences for certain specified non-felony offenses are counted only if they meet certain requirements. See §4A1.2(c)(1).*

*Sentences for certain specified non-felony offenses are never counted. See §4A1.2(c)(2).*

*A diversionary disposition is counted only where there is a finding or admission of guilt in a judicial proceeding. See §4A1.2(f).*

*A sentence for a foreign conviction, a tribal court conviction, an expunged conviction, or an invalid conviction, is not counted. See §4A1.2(h), (i), (j), and the Commentary to §4A1.2.*

*A military sentence is counted only if imposed by a general or special court martial. See §4A1.2(g).*

4.    §4A1.1(d).  Two points are added if the defendant committed any part of the instant offense (i.e., any relevant conduct) while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

5.    §4A1.1(e).  Two points are added if the defendant committed any part of the instant offense (i.e., any relevant conduct) less than two years following release from confinement on a sentence counted under §4A1.1(a) or (b). This also applies if the defendant committed the instant offense while still in confinement on such a sentence. However, if two points are added under §4A1.1(d), only one point is added under §4A1.1(e).

*Background:  Prior convictions may represent convictions in the federal system, fifty state systems, the District of Columbia, territories, and foreign, tribal, and military courts. There are jurisdictional variations in offense definitions, sentencing structures, and manner of sentence pronouncement. To minimize problems with imperfect measures of past crime seriousness, criminal history categories are based on the maximum term imposed in previous sentences rather than on other measures, such as whether the conviction was designated a felony or misdemeanor. In recognition of the imperfection of this measure however, §4A1.3 permits information about the significance or similarity of past conduct underlying prior*

**Defense Exhibit 9-207**

*convictions to be used as a basis for imposing a sentence outside the applicable guideline range.*

*Subdivisions (a), (b), and (c) of §4A1.1 distinguish confinement sentences longer than one year and one month, shorter confinement sentences of at least sixty days, and all other sentences, such as confinement sentences of less than sixty days, probation, fines, and residency in a halfway house.*

*Section 4A1.1(d) implements one measure of recency by adding two points if the defendant was under criminal justice control during any part of the instant offense.*

*Section 4A1.1(e) implements another measure of recency by adding two points if the defendant committed any part of the instant offense less than two years immediately following his release from confinement on a sentence counted under §4A1.1(a) or (b). Because of the potential overlap of (d) and (e), their combined impact is limited to three points. However, a defendant who falls within both (d) and (e) is more likely to commit additional crimes; thus, (d) and (e) are not completely combined.*

§4A1.2.    **Definitions and Instructions for Computing Criminal History**

    (a)    **Prior Sentence Defined**

        (1)    The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.

        (2)    Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history. Use the longest sentence of imprisonment if concurrent sentences were imposed and the aggregate sentence of imprisonment imposed in the case of consecutive sentences.

        (3)    A conviction for which the imposition of sentence was totally suspended or stayed shall be counted as a prior sentence under §4A1.1(c).

    (b)    **Sentence of Imprisonment Defined**

        (1)    The term "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed.

        (2)    If part of a sentence of imprisonment was suspended, "sentence of imprisonment" refers only to the portion that was not suspended.

    (c)    **Sentences Counted and Excluded**

    Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows:

        (1)    Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was

# Defense Exhibit 9-208

a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:

> Contempt of court
> Disorderly conduct or disturbing the peace
> Driving without a license or with a revoked or suspended license
> False information to a police officer
> Fish and game violations
> Gambling
> Hindering or failure to obey a police officer
> Leaving the scene of an accident
> Local ordinance violations
> Non-support
> Prostitution
> Resisting arrest
> Trespassing

(2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:

> Hitchhiking
> Juvenile status offenses and truancy
> Loitering
> Minor traffic infractions
> Public intoxication
> Vagrancy

(d) **Offenses Committed Prior to Age Eighteen**

(1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under §4A1.1(a) for each such sentence.

(2) In any other case,

(A) add 2 points under §4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;

(B) add 1 point under §4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

(e) **Applicable Time Period**

(1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month that resulted in the defendant's incarceration during any part of such fifteen-year period.

4.5                                                          October, 1987

# Defense Exhibit 9-209

(2)    Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3)    Any prior sentence not within the time periods specified above is not counted.

(f)    **Diversionary Dispositions**

Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt in a judicial proceeding is counted as a sentence under §4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.

(g)    **Military Sentences**

Sentences resulting from military offenses are counted if imposed by a general or special court martial. Sentences imposed by a summary court martial or Article 15 proceeding are not counted.

(h)    **Foreign Sentences**

Sentences resulting from foreign convictions are not counted, but may be considered under §4A1.3 (Adequacy of Criminal History Category).

(i)    **Tribal Court Sentences**

Sentences resulting from tribal court convictions are not counted, but may be considered under §4A1.3 (Adequacy of Criminal History Category).

(j)    **Expunged Convictions**

Sentences for expunged convictions are not counted, but may be considered under §4A1.3 (Adequacy of Criminal History Category).

(k)    **Revocations of Probation, Parole, Mandatory Release, or Supervised Release**

(1)    In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for §4A1.1(a), (b), or (c), as applicable.

(2)    Revocation of probation, parole, supervised release, special parole, or mandatory release may affect the points for §4A1.1(e) in respect to the recency of last release from confinement. It may also affect the time period under which certain sentences are counted as provided in §4A1.2(e)(1).

**Defense Exhibit 9-210**

<u>Commentary</u>

<u>*Application Notes*</u>*:*

1.  <u>*Prior Sentences.*</u>  *"Prior sentence" means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense. See §4A1.2(a).  A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense.*

2.  <u>*Sentences of Imprisonment.*</u>  *To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time).  See §§4A1.2(a)(3) and (b)(2).  For the purposes of applying §4A1.1(a), (b), or (c), the length of a sentence of imprisonment is the stated maximum.  That is, criminal history points are based on the sentence pronounced, not the length of time actually served.  See §4A1.2(b)(1) and (2).  A sentence of probation is to be treated as a sentence under §4A1.1(c) unless a condition of probation requiring imprisonment of at least sixty days was imposed.*

3.  <u>*Related Cases.*</u>  *Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.  The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public.  For example, if the defendant commits a number of offenses on independent occasions separated by arrests, and the resulting criminal cases are consolidated and result in a combined sentence of eight years, counting merely three points for this factor will not adequately reflect either the seriousness of the defendant's criminal history or the frequency with which he commits crimes.  In such circumstances, the court should consider whether departure is warranted. See §4A1.3.*

4.  <u>*Sentences Imposed in the Alternative.*</u>  *A sentences which specifies a fine or other non-incarcerative disposition as an alternative to a term of imprisonment (e.g., $1,000 fine or ninety days' imprisonment) is treated as a non-imprisonment sentence.*

5.  <u>*Sentences for Driving While Intoxicated or Under the Influence.*</u>  *Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted.  Such offenses are not minor traffic infractions within the meaning of §4A1.2(c).*

6.  <u>*Invalid Convictions.*</u>  *Sentences resulting from convictions that have been reversed or vacated because of errors of law, or because of subsequently-discovered evidence exonerating the defendant, are not to be counted.  Any other sentence resulting in a valid conviction is to be counted in the criminal history score.  Convictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score.  Also, if to count an uncounseled misdemeanor conviction would result in the imposition of a sentence of imprisonment under circumstances that would violate the United States Constitution, then such conviction shall not be counted in the criminal history score.  Nonetheless, any conviction that is not counted in the criminal history score may be considered pursuant to §4A1.3 if it provides reliable evidence of past criminal activity.*

4.7

October, 1987

# Defense Exhibit 9-211

7.   *Offenses Committed Prior to Age Eighteen.*   Section 4A1.2(d) covers offenses committed prior to age eighteen.   Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records. Therefore, for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted.   To avoid disparities from jurisdiction to jurisdiction in the age at which a defendant is considered a "juvenile," this provision applies to all offenses committed prior to age eighteen.

8.   *Applicable Time Period.*   Section 4A1.2(e) establishes the time period within which prior sentences are counted.   If the government is able to show that a sentence imposed outside this time period is evidence of similar misconduct or the defendant's receipt of a substantial portion of income from criminal livelihood, the court may consider this information in determining whether to depart and sentence above the applicable guideline range.

9.   *Diversionary Dispositions.*   Section 4A1.2(f) requires counting prior adult diversionary dispositions if they involved a judicial determination of guilt or an admission of guilt in open court.   This reflects a policy that defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency.

10.   *Convictions Set Aside or Defendant Pardoned.*   A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction.   Sentences resulting from such convictions are to be counted.   However, expunged convictions are not counted.   §4A1.2(j).

11.   *Revocations to be Considered.*   Section 4A1.2(k) covers revocations of probation and other conditional sentences where the original term of imprisonment imposed, if any, did not exceed one year and one month.   Rather than count the original sentence and the resentence after revocation as separate sentences, the sentence given upon revocation should be added to the original sentence of imprisonment, if any, and the total should be counted as if it were one sentence.   By this approach, no more than three points will be assessed for a single conviction, even if probation or conditional release was subsequently revoked.   If the sentence originally imposed, the sentence imposed upon revocation, or the total of both sentences exceeded one year and one month, the maximum three points would be assigned.   If, however, at the time of revocation another sentence was imposed for a new criminal conviction, that conviction would be computed separately from the sentence imposed for the revocation.

**§4A1.3.    Adequacy of Criminal History Category  (Policy Statement)**

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.   Such information may include, but is not limited to, information concerning:

(a)   prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses);

# Defense Exhibit 9-212

(b)  prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;

(c)  prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;

(d)  whether the defendant was pending trial, sentencing, or appeal on another charge at the time of the instant offense;

(e)  prior similar adult criminal conduct not resulting in a criminal conviction.

A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes. Examples might include the case of a defendant who (1) had several previous foreign sentences for serious offenses, (2) had received a prior consolidated sentence of ten years for a series of serious assaults, (3) had a similar instance of large scale fraudulent misconduct established by an adjudication in a Securities and Exchange Commission enforcement proceeding, (4) committed the instant offense while on bail or pretrial release for another serious offense or (5) for appropriate reasons, such as cooperation in the prosecution of other defendants, had previously received an extremely lenient sentence for a serious offense. The court may, after a review of all the relevant information, conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category, and therefore consider an upward departure from the guidelines. However, a prior arrest record itself shall not be considered under §4A1.3.

There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines.

In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable. For example, if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with a Category IV criminal history, the court should look to the guideline range specified for a defendant with a Category IV criminal history to guide its departure. The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted. However, this provision is not symmetrical. The lower limit of the range for a Category I criminal history is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower

4.9                                                                October, 1987

# Defense Exhibit 9-213

limit of the guideline range for a Category I criminal history on the basis of the adequacy of criminal history cannot be appropriate.

*Commentary*

*Background:*    *This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur.    For example, a defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past might have the same criminal history category as a defendant who had a record of less serious conduct.    Yet, the first defendant's criminal history clearly may be more serious.    This may be particularly true in the case of younger defendants (e.g., defendants in their early twenties or younger) who are more likely to have received repeated lenient treatment, yet who may actually pose a greater risk of serious recidivism than older defendants.    This policy statement authorizes the consideration of a departure from the guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism, and provides guidance for the consideration of such departures.*

October, 1987

**Defense Exhibit 9-214**

## PART B - CAREER OFFENDERS AND CRIMINAL LIVELIHOOD

**§4B1.1.    Career Offender**

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense is a crime of violence or trafficking in a controlled substance, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

| Offense Statutory Maximum | | Offense Level |
|---|---|---|
| (A) | Life | 37 |
| (B) | 20 years or more | 34 |
| (C) | 10 years or more, but less than 20 years | 26 |
| (D) | 5 years or more, but less than 10 years | 19 |
| (E) | More than 1 year, but less than 5 years | 12 |
| (F) | 1 year or less | 4 |

*Commentary*

*Application Note:*

1.    *"Crime of violence," "controlled substance offense," and "felony conviction" are defined in §4B1.2.*

*Background:    28 U.S.C. § 994(h) mandates that the Commission assure that certain "career" offenders, as defined in the statute, receive a sentence of imprisonment "at or near the maximum term authorized." Section 4B1.1 implements this mandate. The legislative history of this provision suggests that the phrase "maximum term authorized" should be construed as the maximum term authorized by statute. See S. Rep. 98-225, 98th Cong., 1st Sess. 175 (1983), 128 Cong. Rec. 12792, 97th Cong., 2d Sess. (1982) ("Career Criminals" amendment No. 13 by Senator Kennedy), 12796 (explanation of amendment), and 12798 (remarks by Senator Kennedy).*

*The guideline levels for career offenders were established by using the statutory maximum for the offense of conviction to determine the class of felony provided in 18 U.S.C. § 3559. Then the maximum authorized sentence of imprisonment for each class of felony was determined as provided by 18 U.S.C. § 3581. A guideline range for each class of felony was then chosen so that the maximum of the guideline range was at or near the maximum provided in 18 U.S.C. § 3581.*

**§4B1.2.    Definitions**

(1)    The term "crime of violence" as used in this provision is defined under 18 U.S.C. § 16.

October, 1987

**Defense Exhibit 9-215**

(2) The term "controlled substance offense" as used in this provision means an offense identified in 21 U.S.C. §§ 841, 952(a), 955, 955a, 959; §§ 405B and 416 of the Controlled Substance Act as amended in 1986, and similar offenses.

(3) The term "two prior felony convictions" means (1) the defendant committed the instant offense subsequent to sustaining at least two felony convictions for either a crime of violence or a controlled substance offense (i.e., two crimes of violence, two controlled substance offenses, or one crime of violence and one controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of Part A of this Chapter. The date that a defendant sustained a conviction shall be the date the judgment of conviction was entered.

*Commentary*

*Application Notes:*

1. "Crime of violence" is defined in 18 U.S.C. § 16 to mean an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or any other offense that is a felony and that by its nature involves a substantial risk that physical force against the person or property of another may be used in committing the offense. The Commission interprets this as follows: murder, manslaughter, kidnapping, aggravated assault, extortionate extension of credit, forcible sex offenses, arson, or robbery are covered by this provision. Other offenses are covered only if the conduct for which the defendant was specifically convicted meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.

2. "Controlled substance offense" means any of the federal offenses identified in the statutes referenced in §4B1.2, or substantially equivalent state offenses. These offenses include manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance (or a counterfeit substance). This definition also includes aiding and abetting, conspiring, or attempting to commit such offenses, and other offenses that are substantially equivalent to the offenses listed.

3. "Felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed.

4. The provisions of §4A1.2(e) (Applicable Time Period), §4A1.2(h) (Foreign Sentences), and §4A1.2(j) (Expunged Convictions) are applicable to the counting of convictions under §4B1.1. Also applicable is the Commentary to §4A1.2 pertaining to invalid convictions.

**§4B1.3.    Criminal Livelihood.**

If the defendant committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income, his offense level shall be not less than 13. In no such case will the defendant be eligible for a sentence of probation.

# Defense Exhibit 9-216

<u>*Commentary*</u>

<u>*Application Note:*</u>

1.  "Pattern of criminal conduct" means planned criminal acts occurring over a substantial period of time. Such acts may involve a single course of conduct (*e.g.,* an ongoing fraudulent scheme) or may involve independent offenses (*e.g.,* a number of burglaries or robberies, or both). This guideline is not intended to apply to minor or petty offenses.

<u>*Background:*</u>    Section 4B1.3 implements 28 U.S.C. § 994(i)(2) which directs the Commission to ensure that the guidelines specify a "substantial term of imprisonment" for a defendant who committed that offense as part of a pattern of criminal conduct from which he derived a substantial proportion of his income. Under this provision, the offense level is raised to 13, if it is not already 13 or greater.

4.13

October, 1987

**Defense Exhibit 9-217**

**Defense Exhibit 9-218**

## CHAPTER FIVE - DETERMINING THE SENTENCE

### *Introductory Commentary*

*For certain categories of offenses and offenders, the guidelines permit the court to impose either imprisonment or some other sanction or combination of sanctions. In determining the type of sentence to impose, the sentencing judge should consider the nature and seriousness of the conduct, the statutory purposes of sentencing, and the pertinent offender characteristics. A sentence is within the guidelines if it complies with each applicable section of this chapter. The court should impose a sentence sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing. 18 U.S.C. § 3553(a).*

### PART A - SENTENCING TABLE

The Sentencing Table used to determine the guideline range follows:

October, 1987

# Defense Exhibit 9-219

# SENTENCING TABLE

## Criminal History Category

| Offense Level | I<br>0 or 1 | II<br>2 or 3 | III<br>4, 5, 6 | IV<br>7, 8, 9 | V<br>10, 11, 12 | VI<br>13 or more |
|---|---|---|---|---|---|---|
| 1 | 0 - 1 | 0 - 2 | 0 - 3 | 0 - 4 | 0 - 5 | 0 - 6 |
| 2 | 0 - 2 | 0 - 3 | 0 - 4 | 0 - 5 | 0 - 6 | 1 - 7 |
| 3 | 0 - 3 | 0 - 4 | 0 - 5 | 0 - 6 | 2 - 8 | 3 - 9 |
| 4 | 0 - 4 | 0 - 5 | 0 - 6 | 2 - 8 | 4 - 10 | 6 - 12 |
| 5 | 0 - 5 | 0 - 6 | 1 - 7 | 4 - 10 | 6 - 12 | 9 - 15 |
| 6 | 0 - 6 | 1 - 7 | 2 - 8 | 6 - 12 | 9 - 15 | 12 - 18 |
| 7 | 1 - 7 | 2 - 8 | 4 - 10 | 8 - 14 | 12 - 18 | 15 - 21 |
| 8 | 2 - 8 | 4 - 10 | 6 - 12 | 10 - 16 | 15 - 21 | 18 - 24 |
| 9 | 4 - 10 | 6 - 12 | 8 - 14 | 12 - 18 | 18 - 24 | 21 - 27 |
| 10 | 6 - 12 | 8 - 14 | 10 - 16 | 15 - 21 | 21 - 27 | 24 - 30 |
| 11 | 8 - 14 | 10 - 16 | 12 - 18 | 18 - 24 | 24 - 30 | 27 - 33 |
| 12 | 10 - 16 | 12 - 18 | 15 - 21 | 21 - 27 | 27 - 33 | 30 - 37 |
| 13 | 12 - 18 | 15 - 21 | 18 - 24 | 24 - 30 | 30 - 37 | 33 - 41 |
| 14 | 15 - 21 | 18 - 24 | 21 - 27 | 27 - 33 | 33 - 41 | 37 - 46 |
| 15 | 18 - 24 | 21 - 27 | 24 - 30 | 30 - 37 | 37 - 46 | 41 - 51 |
| 16 | 21 - 27 | 24 - 30 | 27 - 33 | 33 - 41 | 41 - 51 | 46 - 57 |
| 17 | 24 - 30 | 27 - 33 | 30 - 37 | 37 - 46 | 46 - 57 | 51 - 63 |
| 18 | 27 - 33 | 30 - 37 | 33 - 41 | 41 - 51 | 51 - 63 | 57 - 71 |
| 19 | 30 - 37 | 33 - 41 | 37 - 46 | 46 - 57 | 57 - 71 | 63 - 78 |
| 20 | 33 - 41 | 37 - 46 | 41 - 51 | 51 - 63 | 63 - 78 | 70 - 87 |
| 21 | 37 - 46 | 41 - 51 | 46 - 57 | 57 - 71 | 70 - 87 | 77 - 96 |
| 22 | 41 - 51 | 46 - 57 | 51 - 63 | 63 - 78 | 77 - 96 | 84 - 105 |
| 23 | 46 - 57 | 51 - 63 | 57 - 71 | 70 - 87 | 84 - 105 | 92 - 115 |
| 24 | 51 - 63 | 57 - 71 | 63 - 78 | 77 - 96 | 92 - 115 | 100 - 125 |
| 25 | 57 - 71 | 63 - 78 | 70 - 87 | 84 - 105 | 100 - 125 | 110 - 137 |
| 26 | 63 - 78 | 70 - 87 | 78 - 97 | 92 - 115 | 110 - 137 | 120 - 150 |
| 27 | 70 - 87 | 78 - 97 | 87 - 108 | 100 - 125 | 120 - 150 | 130 - 162 |
| 28 | 78 - 97 | 87 - 108 | 97 - 121 | 110 - 137 | 130 - 162 | 140 - 175 |
| 29 | 87 - 108 | 97 - 121 | 108 - 135 | 121 - 151 | 140 - 175 | 151 - 188 |
| 30 | 97 - 121 | 108 - 135 | 121 - 151 | 135 - 168 | 151 - 188 | 168 - 210 |
| 31 | 108 - 135 | 121 - 151 | 135 - 168 | 151 - 188 | 168 - 210 | 188 - 235 |
| 32 | 121 - 151 | 135 - 168 | 151 - 188 | 168 - 210 | 188 - 235 | 210 - 262 |
| 33 | 135 - 168 | 151 - 188 | 168 - 210 | 188 - 235 | 210 - 262 | 235 - 293 |
| 34 | 151 - 188 | 168 - 210 | 188 - 235 | 210 - 262 | 235 - 293 | 262 - 327 |
| 35 | 168 - 210 | 188 - 235 | 210 - 262 | 235 - 293 | 262 - 327 | 292 - 365 |
| 36 | 188 - 235 | 210 - 262 | 235 - 293 | 262 - 327 | 292 - 365 | 324 - 405 |
| 37 | 210 - 262 | 235 - 293 | 262 - 327 | 292 - 365 | 324 - 405 | 360 - life |
| 38 | 235 - 293 | 262 - 327 | 292 - 365 | 324 - 405 | 360 - life | 360 - life |
| 39 | 262 - 327 | 292 - 365 | 324 - 405 | 360 - life | 360 - life | 360 - life |
| 40 | 292 - 365 | 324 - 405 | 360 - life | 360 - life | 360 - life | 360 - life |
| 41 | 324 - 405 | 360 - life | 360 - life | 360 - life | 360 - life | 360 - life |
| 42 | 360 - life | 360 - life | 360 - life | 360 - life | 360 - life | 360 - life |
| 43 | life | life | life | life | life | life |

5.2

October, 1987

# Defense Exhibit 9-220

*Commentary to Sentencing Table*

*Application Notes:*

1.  *The Offense Level (1-43) forms the vertical axis of the Sentencing Table. The Criminal History Category (I-VI) forms the horizontal axis of the Table. The intersection of the Offense Level and Criminal History Category displays the Guideline Range in months of imprisonment. "Life" means life imprisonment. For example, the guideline range applicable to a defendant with an Offense Level of 15 and a Criminal History Category of III is 24-30 months of imprisonment.*

2.  *In rare cases, a total offense level of less than 1 or more than 43 may result from application of the guidelines. A total offense level of less than 1 is to be treated as an offense level of 1. An offense level of more than 43 is to be treated as an offense level of 43.*

3.  *The Criminal History Category is determined by the total criminal history points from Chapter Four, Part A. The total criminal history points associated with each Criminal History Category are shown under each Criminal History Category in the Sentencing Table.*

5.3                                                                          October, 1987

**Defense Exhibit 9-221**

*[Page intentionally blank]*

5.4

October, 1987

**Defense Exhibit 9-222**

## PART B - PROBATION

*Introductory Commentary*

*The Comprehensive Crime Control Act of 1984 makes probation a sentence in and of itself. 18 U.S.C. § 3561. Probation may be used as an alternative to incarceration, provided that the terms and conditions of probation can be fashioned so as to meet fully the statutory purposes of sentencing, including promoting respect for law, providing just punishment for the offense, achieving general deterrence, and protecting the public from further crimes by the defendant.*

**§5B1.1.    Imposition of a Term of Probation**

(a)    Subject to the statutory restrictions in subsection (b) below, sentence of probation is authorized:

(1)    if the minimum term of imprisonment in the range specified by the Sentencing Table in Part A, is zero months;

(2)    if the minimum term of imprisonment specified by the Sentencing Table is at least one but not more than six months, provided that the court imposes a condition or combination of conditions requiring intermittent confinement or community confinement as provided in §5C2.1(c)(2) (Imposition of a Term of Imprisonment).

(b)    A sentence of probation may not be imposed in the event:

(1)    the offense of conviction is a Class A or B felony, 18 U.S.C. § 3561(a)(1);

(2)    the offense of conviction expressly precludes probation as a sentence, 18 U.S.C. § 3561(a)(2);

(3)    the defendant is sentenced at the same time to a sentence of imprisonment for the same or a different offense, 18 U.S.C. § 3561(a)(3).

*Commentary*

*Application Notes:*

1.    *Except where prohibited by statute or by the guideline applicable to the offense in Chapter Two, the guidelines authorize, but do not require, a sentence of probation in the following circumstances:*

(a)    *Where the minimum term of imprisonment specified in the guideline range from the Sentencing Table is zero months. In such case, a condition requiring a period of community confinement or intermittent confinement may be imposed but is not required.*

(b)    *Where the minimum term of imprisonment specified in the guideline range from the Sentencing Table is at least one but not more than six months. In such cases, the*

October, 1987

# Defense Exhibit 9-223

*court may impose probation only if it imposes a condition or combination of conditions requiring a period of community confinement or intermittent confinement sufficient to satisfy the minimum term of imprisonment specified in the guideline range. For example, where the Offense Level is 8 and the Criminal History Category is I, the guideline range from the Sentencing Table is 2-8 months. In such case, the court may impose a sentence of probation only if it imposes a condition or conditions requiring at least two months of community confinement or intermittent confinement, or a combination of community confinement and intermittent confinement totalling at least two months.*

2.    *Where the minimum term of imprisonment specified in the guideline range from the Sentencing Table is more than six months, the guidelines do not authorize a sentence of probation. See §5C2.1 (Imposition of a Term of Imprisonment).*

*Background:    This section provides for the imposition of a sentence of probation. The court may sentence a defendant to a term of probation in any case unless (1) prohibited by statute, or (2) where a term of imprisonment is required under §5C2.1 (Imposition of a Term of Imprisonment). Under 18 U.S.C. § 3561(a)(3), the imposition of a sentence of probation is prohibited where the defendant is sentenced at the same time to a sentence of imprisonment for the same or a different offense. Although this provision has effectively abolished the use of "split sentences" imposable pursuant to the former 18 U.S.C. § 3651, the drafters of the Sentencing Reform Act noted that the functional equivalent of the split sentence could be "achieved by a more direct and logically consistent route" by providing that a defendant serve a term of imprisonment followed by a period of supervised release. (S. Rep. No. 225, 98th Cong., 1st Sess. 89). Subsection 5B1.1(a)(2) provides a transition between the circumstances under which a "straight" probationary term is authorized and those where probation is prohibited.*

## §5B1.2.    Term of Probation

(a)    When probation is imposed, the term shall be:

(1)    at least one year but not more than five years if the offense level is **6** or greater;

(2)    no more than three years in any other case.

### Commentary

*Background:    This section governs the length of a term of probation. Subject to statutory restrictions, the guidelines provide that a term of probation may not exceed three years if the offense level is less than 6. If a defendant has an offense level of 6 or greater, the guidelines provide that a term of probation be at least one year but not more than five years. Although some distinction in the length of a term of probation is warranted based on the circumstances of the case, a term of probation may also be used to enforce conditions such as fine or restitution payments, or attendance in a program of treatment such as drug rehabilitation. Often, it may not be possible to determine the amount of time required for the satisfaction of such payments or programs in advance. This issue has been resolved by setting forth two broad ranges for the duration of a term of probation depending upon the offense level. Within*

October, 1987

# Defense Exhibit 9-224

*the guidelines set forth in this section, the determination of the length of a term of probation is within the discretion of the sentencing judge.*

**§5B1.3.    Conditions of Probation**

(a)    If a term of probation is imposed, the court shall impose a condition that the defendant shall not commit another federal, state, or local crime during the term of probation. 18 U.S.C. § 3563(a)(1).

(b)    The court may impose other conditions that (1) are reasonably related to the nature and circumstances of the offense, the history and characteristics of the defendant, and the purposes of sentencing and (2) involve only such deprivations of liberty or property as are reasonably necessary to effect the purposes of sentencing.  18 U.S.C. § 3563(b).  Recommended conditions are set forth in §5B1.4.

(c)    If a term of probation is imposed for a felony, the court shall impose at least one of the following as a condition of probation: a fine, an order of restitution, or community service. 18 U.S.C. § 3563(a)(2).

(d)    Intermittent confinement (custody for intervals of time) may be ordered as a condition of probation during the first year of probation. 18 U.S.C. § 3563(b)(11).  Intermittent confinement shall be credited toward the guideline term of imprisonment at §5C2.1 as provided in the schedule at §5C2.1(e).

**§5B1.4.    Recommended Conditions of Probation and Supervised Release  (Policy Statement)**

(a)    The following "standard" conditions (1-13) are generally recommended for both probation and supervised release:

(1)    the defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer;

(2)    the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

(3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

(4)    the defendant shall support his dependents and meet other family responsibilities;

(5)    the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

(6)    the defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;

October, 1987

**Defense Exhibit 9-225**

(7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;

(8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court;

(9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

(10) the defendant shall permit a probation officer to visit him at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

(11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

(12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

(13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

(b) The following "special" conditions of probation and supervised release (14-24) are either recommended or required by law under the circumstances described, or may be appropriate in a particular case:

(14) Possession of Weapons

If the instant conviction is for a felony, or if the defendant was previously convicted of a felony or used a firearm or other dangerous weapon in the course of the instant offense, it is recommended that the court impose a condition prohibiting the defendant from possessing a firearm or other dangerous weapon.

(15) Restitution

If the court imposes an order of restitution, it is recommended that the court impose a condition requiring the defendant to make payment of restitution or adhere to a court ordered installment schedule for payment of restitution. See §5E4.1 (Restitution).

**Defense Exhibit 9-226**

(16) <u>Fines</u>

If the court imposes a fine, it is recommended that the court impose a condition requiring the defendant to pay the fine or adhere to a court ordered installment schedule for payment of the fine.

(17) <u>Debt Obligations</u>

If an installment schedule of payment of restitution or fines is imposed, it is recommended that the court impose a condition prohibiting the defendant from incurring new credit charges or opening additional lines of credit without approval of the probation officer unless the defendant is in compliance with the payment schedule.

(18) <u>Access to Financial Information</u>

If the court imposes an order of restitution, forfeiture, or notice to victims, or orders the defendant to pay a fine, it is recommended that the court impose a condition requiring the defendant to provide the probation officer access to any requested financial information.

(19) <u>Community Confinement</u>

Residence in a community treatment center, halfway house or similar facility may be imposed as a condition of probation or supervised release. <u>See</u> §5F5.1 (Community Confinement).

(20) <u>Home Detention</u>

Home detention may be imposed as a condition of probation or supervised release. <u>See</u> §5F5.2 (Home Detention).

(21) <u>Community Service</u>

Community service may be imposed as a condition of probation or supervised release. <u>See</u> §5F5.3 (Community Service).

(22) <u>Occupational Restrictions</u>

Occupational restrictions may be imposed as a condition of probation or supervised release. <u>See</u> §5F5.5 (Occupational Restrictions).

(23) <u>Substance Abuse Program Participation</u>

If the court has reason to believe that the defendant is an abuser of narcotics, other controlled substances or alcohol, it is recommended that the court impose a condition requiring the defendant to participate in a program approved by the United States Probation Office for substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol.

October, 1987

**Defense Exhibit 9-227**

(24) <u>Mental Health Program Participation</u>

If the court has reason to believe that the defendant is in need of psychological or psychiatric treatment, it is recommended that the court impose a condition requiring that the defendant participate in a mental health program approved by the United States Probation Office.

October, 1987

**Defense Exhibit 9-228**

PART C - IMPRISONMENT

§5C2.1.    Imposition of a Term of Imprisonment

(a)    A sentence conforms with the guidelines for imprisonment if it is within the minimum and maximum terms of the guideline range.

(b)    If the minimum term of imprisonment in the applicable guideline range in the Sentencing Table is zero months, a sentence of imprisonment is not required, unless the applicable guideline in Chapter Two expressly requires such a term.

(c)    If the minimum term of imprisonment in the applicable guideline range in the Sentencing Table is at least one but not more than six months, the minimum term may be satisfied by (1) a sentence of imprisonment; (2) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement or community confinement for imprisonment according to the schedule in §5C2.1(e); or (3) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement according to the schedule in §5C2.1(e), provided that at least one-half of the minimum term, but in no event less than one month, is satisfied by imprisonment.

(d)    If the minimum term of imprisonment in the applicable guideline range in the Sentencing Table is more than six months but not more than ten months, the minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement according to the schedule in §5C2.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment.

(e)    Schedule of Substitute Punishments:

    (1)    Thirty days of intermittent confinement in prison or jail for one month of imprisonment (each 24 hours of confinement is credited as one day of intermittent confinement, provided, however, that one day shall be credited for any calendar day during which the defendant is employed in the community and confined during all remaining hours);

    (2)    One month of community confinement (residence in a community treatment center, halfway house, or similar residential facility) for one month of imprisonment.

(f)    If the minimum term of imprisonment in the applicable guideline range in the Sentencing Table is more than ten months, the guidelines require that the minimum term be satisfied by a sentence of imprisonment.

October, 1987

**Defense Exhibit 9-229**

<u>*Commentary*</u>

<u>*Application Notes:*</u>

1.  *Subsection 5C2.1(a) provides that a sentence conforms with the guidelines for imprisonment if it is within the minimum and maximum terms of the guideline range specified in the Sentencing Table. For example, if the defendant has an Offense Level of 20 and a Criminal History Category of I, the applicable guideline range is 33-41 months of imprisonment. Therefore, a sentence of imprisonment of at least thirty-three months, but not more than forty-one months, is within the applicable guideline range.*

2.  *Subsection 5C2.1(b) provides that where the minimum term of imprisonment specified in the guideline range from the Sentencing Table is zero months, the court is not required to impose a sentence of imprisonment unless a sentence of imprisonment or its equivalent is specifically required by the guideline applicable to the offense. Where imprisonment is not required, the court may, for example, impose a sentence of probation. In some cases, a fine appropriately may be imposed as the sole sanction.*

3.  *Subsection 5C2.1(c) provides that where the minimum term of imprisonment specified in the guideline range from the Sentencing Table is at least one but not more than six months, the court has three options:*

    *It may impose a sentence of imprisonment.*

    *It may impose a sentence of probation provided that it includes a condition of probation requiring a period of intermittent confinement or community confinement, or combination of intermittent and community confinement, sufficient to satisfy the minimum period of imprisonment specified in the guideline range. For example, where the guideline range is 3-9 months, a sentence of probation with a condition requiring at least three months of intermittent or community confinement would satisfy the minimum term of imprisonment specified in the guideline range.*

    *Or, it may impose a sentence of imprisonment that includes a term of supervised release with a condition that requires community confinement. In such case, at least one-half of the minimum term specified in the guideline range from the Sentencing Table, but in no event less than one month, must be satisfied by actual imprisonment and the remainder of the minimum term specified in the guideline range must be satisfied by community confinement. For example, where the guideline range is 4-10 months, a sentence of imprisonment of two months followed by a term of supervised release with a condition requiring two months of community confinement would satisfy the minimum term of imprisonment specified in the guideline range.*

    *The preceding examples illustrate sentences that satisfy the minimum term of imprisonment required by the guideline range. The court, of course, may impose a sentence at a higher point within the applicable guideline range. For example, where the guideline range is 3-9 months, both a sentence of probation with a condition requiring six months of community confinement (under §5C2.1(c)(2)) and a sentence of two months imprisonment followed by a term of supervised release with a condition requiring four months of community confinement (under §5C2.1(c)(3) would be within the guideline range.*

# Defense Exhibit 9-230

4. *Subsection 5C2.1(d) provides that where the minimum term specified in the guideline range from the Sentencing Table is at least six but not more than ten months, the court has two options:*

> *It may impose a sentence of imprisonment.*
>
> *Or, it may impose a sentence of imprisonment that includes a term of supervised release with a condition requiring community confinement. In such case, at least one-half of the minimum term specified in the guideline range must be satisfied by imprisonment, and the remainder of the minimum term specified in the guideline range must be satisfied by community confinement. For example, where the guideline range is 6-12 months, a sentence of three months imprisonment followed by a term of supervised release with a condition requiring three months community confinement would satisfy the minimum term of imprisonment required by the guideline range.*

*The preceding example illustrates a sentence that satisfies the minimum term of imprisonment required by the guideline range. The court, of course, may impose a sentence at a higher point within the guideline range. For example, where the guideline range is 6-12 months, both a sentence of three months imprisonment followed by a term of supervised release with a condition requiring six months of community confinement (under §5C2.1(d), and a sentence of five months imprisonment followed by a term of supervised release with a condition requiring four months of community confinement (also under §5C2.1(d)) would be within the guideline range.*

5. *Subsection 5C2.1(e) sets forth a schedule of imprisonment substitutes. Home detention may not be substituted for imprisonment.*

6. *There may be cases in which a departure from the guidelines by substitution of a longer period of community confinement than otherwise authorized for an equivalent number of months of imprisonment is warranted to accomplish a specific treatment purpose (e.g., substitution of twelve months in an approved residential drug treatment program for twelve months of imprisonment). Such a substitution should be considered only in cases where the defendant's criminality is related to the treatment problem to be addressed and there is a reasonable likelihood that successful completion of the treatment program will eliminate that problem.*

7. *The use of substitutes for imprisonment as provided in §5C2.1(c) and (d) is not recommended for most defendants with a criminal history category of III or above. Generally, such defendants have failed to reform despite the use of such alternatives.*

8. *Subsection 5C2.1(f) provides that, if the minimum term of imprisonment set forth in the Sentencing Table is more than ten months, the minimum term must be satisfied by a sentence of imprisonment without the use of any of the incarceration alternatives in §5C2.1(e).*

5.13                                                                        October, 1987

**Defense Exhibit 9-231**

*[Page intentionally blank]*

October, 1987

**Defense Exhibit 9-232**

## PART D - SUPERVISED RELEASE

**§5D3.1.    Imposition of a Term of Supervised Release**

    (a)    The court shall order a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is imposed, or when required by statute.

    (b)    The court may order a term of supervised release to follow imprisonment in any other case.

### Commentary

*Application Notes:*

*1.    Subsection 5D3.1(a) requires imposition of supervised release following any sentence of imprisonment for a term of more than one year or if required by a specific statute. While there may be cases within this category that do not require post release supervision, these cases are the exception and may be handled by a departure from this guideline.*

*2.    Under §5D3.1(b), the court may impose a term of supervised release in cases involving imprisonment for a term of one year or less. The court may consider the need for a term of supervised release to facilitate the reintegration of the defendant into the community; to enforce a fine, restitution order, or other condition; or to fulfill any other purpose authorized by statute.*

**§5D3.2.    Term of Supervised Release**

    (a)    If a defendant is convicted under a statute that requires a term of supervised release, the term shall be at least three years but not more than five years, or the minimum period required by statute, whichever is greater.

    (b)    Otherwise, when a term of supervised release is ordered, the length of the term shall be:

        (1)    three years for a defendant convicted of a Class A or B felony;

        (2)    two years for a defendant convicted of a Class C or D felony;

        (3)    one year for a defendant convicted of a Class E felony or a misdemeanor.

### Commentary

*Background:*    *This section specifies the length of a term of supervised release that is to be imposed. Subsection (a) applies to statutes, such as the Anti-Drug Abuse Act of 1986, that require imposition of a specific minimum term of supervised release. Subsection (b) applies to all other statutes.*

October, 1987

# Defense Exhibit 9-233

**§5D3.3.**    <u>Conditions of Supervised Release</u>

(a)    If a term of supervised release is imposed, the court shall impose a condition that the defendant not commit another federal, state, or local crime. 18 U.S.C. § 3583(d).

(b)    In order to fulfill any authorized purposes of sentencing, the court may impose other conditions reasonably related to (1) the nature and circumstances of the offense, and (2) the history and characteristics of the defendant. 18 U.S.C. § 3583(d).

(c)    Recommended conditions of supervised release are set forth in §5B1.4.

<em>Commentary</em>

<em>Background:</em>    <em>This section applies to conditions of supervised release.    The conditions generally recommended for supervised release are those recommended for probation.   See §5B1.4.</em>

October, 1987

# Defense Exhibit 9-234

## PART E - RESTITUTION, FINES, ASSESSMENTS, FORFEITURES

**§5E4.1.    <u>Restitution</u>**

(a)  Restitution shall be ordered for convictions under Title 18 of the United States Code or under 49 U.S.C. § 1472(h), (i), (j) or (n) in accordance with 18 U.S.C. § 3663(d).

(b)  If a defendant is ordered to make restitution and to pay a fine, the court shall order that any money paid by the defendant shall first be applied to satisfy the order of restitution.

<u>Commentary</u>

<u>Background:</u>  *Section 3553(a)(7) of Title 18 requires the court, "in determining the particular sentence to be imposed," to consider "the need to provide restitution to any victims of the offense." Section 3556 of Title 18 authorizes the court to impose restitution in accordance with 18 U.S.C. §§ 3663 and 3664, which authorize restitution for violations of Title 18 and of designated subdivisions of 49 U.S.C. § 1472. For other offenses, restitution may be imposed as a condition of probation or supervised release. <u>See</u> S. Rep. No. 225, 98th Cong., 1st Sess. 95-96. An order of restitution may be appropriate in offenses not specifically referenced in 18 U.S.C. § 3663 where victims require relief more promptly than the civil justice system provides.*

*Subsection 5E4.1 requires the court to order restitution for offenses under Title 18 or 49 U.S.C. § 1472(h), (i), (j), or (n), unless "the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution... outweighs the need to provide restitution to any victims." 18 U.S.C. § 3663(d). If the court does not order restitution, or orders only partial restitution, it must state its reasons for doing so. 18 U.S.C. § 3553(c).*

*In determining whether to impose an order of restitution, and the amount of restitution, the court shall consider the amount of loss the victim suffered as a result of the offense, the financial resources of the defendant, the financial needs of the defendant and his dependents, and other factors the court deems appropriate. 18 U.S.C. § 3664(a).*

*Pursuant to Rule 32(c)(2)(D), Federal Rules of Criminal Procedure, the probation officer's presentence investigation report must contain a victim impact statement. That report must contain information about the financial impact on the victim and the defendant's financial condition. The sentencing judge may base findings on the presentence report or other testimony or evidence supported by a preponderance of the evidence. 18 U.S.C. § 3664(d).*

*A court's authority to deny restitution is limited. Even "in those unusual cases where the precise amount owed is difficult to determine, section 3579(d) authorizes the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim." S. Rep. No. 532, 97th Cong., 2d Sess. 31, reprinted in 1982 U.S. Code Cong. & Ad. News 2515, 2537.*

*Unless the court orders otherwise, restitution must be made immediately. 18 U.S.C. § 3663(f)(3). The court may permit the defendant to make restitution within a specified period or in specified installments, provided that the last installment is paid not later than the expiration of probation, five years after the end of the defendant's term of*

October, 1987

## Defense Exhibit 9-235

*imprisonment, or in any other case five years after the date of sentencing. 18 U.S.C. § 3663(f)(1) and (2). The restitution order should specify how and to whom payment is to be made.*

**§5E4.2.**    **Fines for Individual Defendants**

(a)    Except as provided in subsection (f) below, the court shall impose a fine in all cases. If the guideline for the offense in Chapter Two prescribes a different rule for imposing fines, that rule takes precedence over this subsection.

(b)    The generally applicable minimum and maximum fine for each offense level is shown in the Fine Table in subsection (c) below. Unless a statute expressly authorizes a greater amount, no fine may exceed $250,000 for a felony or a misdemeanor resulting in the loss of human life; $25,000 for any other misdemeanor; or $1,000 for an infraction. 18 U.S.C. § 3571(b)(1).

(c)    (1)    The minimum fine range is the greater of:

(A)    the amount shown in column A of the table below; or

(B)    any monetary gain to the defendant, less any restitution made or ordered.

(2)    Except as specified in (4) below, the maximum fine is the greater of:

(A)    the amount shown in column B of the table below;

(B)    twice the estimated loss caused by the offense; or

(C)    three times the estimated gain to the defendant.

(3)                          Fine Table

| Offense Level | A Minimum | B Maximum |
|---|---|---|
| 1 | $25 | $250 |
| 2-3 | $100 | $1,000 |
| 4-5 | $250 | $2,500 |
| 6-7 | $500 | $5,000 |
| 8-9 | $1,000 | $10,000 |
| 10-11 | $2,000 | $20,000 |
| 12-13 | $3,000 | $30,000 |
| 14-15 | $4,000 | $40,000 |
| 16-17 | $5,000 | $50,000 |
| 18-19 | $6,000 | $60,000 |
| 20-22 | $7,500 | $75,000 |
| 23-25 | $10,000 | $100,000 |
| 26-28 | $12,500 | $125,000 |
| 29-31 | $15,000 | $150,000 |
| 32-34 | $17,500 | $175,000 |
| 35-37 | $20,000 | $200,000 |
| 38 and above | $25,000 | $250,000 |

October, 1987

**Defense Exhibit 9-236**

(4)  Subsection (c)(2), limiting the maximum fine, does not apply if the defendant is convicted under a statute authorizing (A) a maximum fine greater than $250,000, or (B) a fine for each day of violation. In such cases, the court may impose a fine up to the maximum authorized by the statute.

(d)  In determining the amount of the fine, the court shall consider:

(1)  the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;

(2)  the ability of the defendant to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;

(3)  the burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4)  any restitution or reparation that the defendant has made or is obligated to make;

(5)  any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;

(6)  whether the defendant previously has been fined for a similar offense; and

(7)  any other pertinent equitable considerations.

(e)  The amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive.

(f)  If the defendant establishes that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the preceding provisions, or (2) imposition of a fine would unduly burden the defendant's dependents, the court may impose a lesser fine or waive the fine. In these circumstances, the court shall consider alternative sanctions in lieu of all or a portion of the fine, and must still impose a total combined sanction that is punitive. Although any additional sanction not proscribed by the guidelines is permissible, community service is the generally preferable alternative in such instances.

(g)  If the defendant establishes that payment of the fine in a lump sum would have an unduly severe impact on him or his dependents, the court should establish an installment schedule for payment of the fine. The length of the installment schedule generally should not exceed twelve months, and shall not exceed the maximum term of probation authorized for the offense. The defendant should be required to pay a substantial installment at the time of sentencing. If the court authorizes a defendant sentenced to probation or supervised release to pay a fine on an installment schedule, the court shall require as a condition of probation or supervised release that the defendant pay the fine according to the

October, 1987

# Defense Exhibit 9-237

schedule. The court also may impose a condition prohibiting the defendant from incurring new credit charges or opening additional lines of credit unless he is in compliance with the payment schedule.

(h)  If the defendant knowingly fails to pay a delinquent fine, the court shall resentence him in accordance with 18 U.S.C. § 3614.

(i)  Notwithstanding of the provisions of subsection (c) of this section, but subject to the provisions of subsection (f) herein, the court shall impose an additional fine amount that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release ordered.

<u>Commentary</u>

<u>Application Notes:</u>

1.  *A fine may be the sole sanction if the guidelines do not require a term of imprisonment. If, however, the fine is not paid in full at the time of sentencing, it is recommended that the court sentence the defendant to a term of probation, with payment of the fine as a condition of probation. If a fine is imposed in addition to a term of imprisonment, it is recommended that the court impose a term of supervised release following imprisonment as a means of enforcing payment of the fine.*

2.  *The maximum fines generally authorized by statute are restated in subsection (b). These apply to each count of conviction. Ordinarily, the maximum fines on each count are independent and cumulative. However, if the offenses "arise from a common scheme or plan" and "do not cause separable or distinguishable kinds of harm or damage," the aggregate fine may not exceed "twice the amount imposable for the most serious offense." 18 U.S.C. § 3572(b) (former 18 U.S.C. § 3623(c)(2)).*

3.  *Alternative fine limits are provided in subsection (c)(2). The term "estimated gain" is used to emphasize that the Commission does not intend precise or detailed calculation of the monetary gain (nor of the loss) in using the alternative fine limits. In many cases, circumstances will make it unnecessary to consider these standards other than in the most general terms.*

4.  *"Any restitution made or ordered" refers to restitution for the instant offense made before or at the time of sentencing, as well as any restitution ordered at the time of sentencing for the instant offense.*

5.  *Subsection (c)(4) applies to statutes that contain special provisions permitting larger fines; the guidelines do not limit maximum fines in such cases. These statutes include, among others: 21 U.S.C. §§ 841(b) and 960(b), which authorize fines up to $8 million in offenses involving the manufacture, distribution, or importation of certain controlled substances; 21 U.S.C. § 848(a), which authorizes fines up to $4 million in offenses involving the manufacture or distribution of controlled substances by a continuing criminal enterprise; 18 U.S.C. § 1956(a), which authorizes a fine equal to the greater of $500,000 or two times the value of the monetary instruments or funds involved in offenses involving money laundering of financial instruments; 18 U.S.C. § 1957(b)(2), which authorizes a fine equal to two times the amount of any criminally derived property involved in a money laundering transaction; 33 U.S.C. § 1319(c), which authorizes a fine of up to $50,000 per*

October, 1987

**Defense Exhibit 9-238**

*day for violations of the Water Pollution Control Act; 42 U.S.C. § 6928(d), which authorizes a fine of up to $50,000 per day for violations of the Resource Conservation Act; and 42 U.S.C. § 7413(c), which authorizes a fine of up to $25,000 per day for violations of the Clean Air Act.*

6.  *The existence of income or assets that the defendant failed to disclose may justify a larger fine than that which otherwise would be warranted under §5E4.2. The court may base its conclusion as to this factor on information revealing significant unexplained expenditures by the defendant or unexplained possession of assets that do not comport with the defendant's reported income. If the court concludes that the defendant willfully misrepresented all or part of his income or assets, it may increase the offense level and resulting sentence in accordance with Chapter Three, Part C (Obstruction).*

7.  *Subsection (i) provides for an additional fine sufficient to pay the costs of any imprisonment, probation, or supervised release ordered, subject to the defendant's ability to pay as prescribed in subsection (f). In making a determination as to the amount of any fine to be imposed under this provision, the court may be guided by reports published by the Bureau of Prisons and the Administrative Office of the United States Courts concerning average costs.*

*Background: These guidelines permit a relatively wide range of fines. The Commission may promulgate more detailed guidelines for the imposition of fines after analyzing practice under these initial guidelines.*

*Recent legislation provides for substantial increases in fines. 18 U.S.C. § 3571(b). With few restrictions, 42 U.S.C. § 10601(b), and (c) authorize fine payments up to $100 million to be deposited in the Crime Victims Fund in the United States Treasury. With vigorous enforcement, higher fines should be effective punitive and deterrent sanctions.*

*A larger multiple of the gain than of the loss is used in subsection (c)(2) because most offenses result in losses to society that exceed the gain to the defendant. In addition, the Commission concluded that greater latitude with a gain-based fine was justified; when the court finds it necessary to rely on the gain, rather than the loss, to set the fine, ordering restitution usually will not be feasible because of the difficulty in computing the amount. These larger fines authorized under subsection (c)(2) are, of course, subject to the absolute limits on fines that are imposed by statute.*

*The Commission has not attempted to define gain or loss precisely. It is expected that the terms will be used flexibly and consistently with their use in the criminal code, including former 18 U.S.C. § 3623(c)(1).*

§5E4.3.    **Special Assessments**

A special assessment must be imposed on a convicted defendant in the amount prescribed by statute.

*Commentary*

October, 1987

**Defense Exhibit 9-239**

*Background:*    *The Victims of Crime Act of 1984, Pub. L. No. 98-473, Title II, Chap. XIV, requires the courts to impose special assessments on convicted defendants for the purpose of funding the Crime Victims Fund established by the same legislation.    Monies deposited in the fund are awarded to the states by the Attorney General for victim assistance and compensation programs.*

*The Act requires the court to impose assessments in the following amounts:*

> *$25, if the defendant is an individual convicted of a misdemeanor;*
> *$50, if the defendant is an individual convicted of a felony;*
> *$100, if the defendant is an organization convicted of a misdemeanor; and*
> *$200, if the defendant is an organization convicted of a felony.  18 U.S.C. § 3013.*

*The Act does not authorize the court to waive imposition of the assessment.*

## §5E4.4.    Forfeiture

Forfeiture is to be imposed upon a convicted defendant as provided by statute.

### Commentary

*Background:*    *Forfeiture provisions exist in various statutes.    For example, 18 U.S.C. § 3554 requires the court imposing a sentence under 18 U.S.C. § 1962 (proscribing the use of the proceeds of racketeering activities in the operation of an enterprise engaged in interstate commerce) or Titles II and III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (proscribing the manufacture and distribution of controlled substances) to order the forfeiture of property in accordance with 18 U.S.C. § 1963  and 21 U.S.C. § 853, respectively. Those provisions require the automatic forfeiture of certain property upon conviction of their respective underlying offenses.*

*In addition, the provisions of 18 U.S.C. §§ 3681-3682 authorizes the court, in certain circumstances, to order the forfeiture of a violent criminal's proceeds from the depiction of his crime in a book, movie, or other medium.    Those sections authorize the deposit of proceeds in an escrow account in the Crime Victims Fund of the United States Treasury.    The money is to remain available in the account for five years to satisfy claims brought against the defendant by the victim(s) of his offenses.    At the end of the five-year period, the court may require that any proceeds remaining in the account be released from escrow and paid into the Fund. 18 U.S.C. § 3681(c)(2).*

**Defense Exhibit 9-240**

## PART F - SENTENCING OPTIONS

### §5F5.1.    Community Confinement

Community confinement may be imposed as a condition of probation or supervised release.

*Commentary*

*Application Notes:*

1.    *"Community confinement" means residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility; and participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during non-residential hours.*

2.    *Community confinement generally should not be imposed for a period in excess of six months.    A longer period may be imposed to accomplish the objectives of a specific rehabilitative program, such as drug rehabilitation.    The sentencing judge may impose other discretionary conditions of probation or supervised release appropriate to effectuate community confinement.*

### §5F5.2.    Home Detention

Home detention may be imposed as a condition of probation or supervised release.

*Commentary*

*Application Notes:*

1.    *"Home detention" means a program of confinement and supervision that restricts the defendant to his place of residence continuously, or during specified hours, enforced by appropriate means of surveillance by the probation office.    The judge may also impose other conditions of probation or supervised release appropriate to effectuate home detention.    If the confinement is only during specified hours, the defendant shall engage exclusively in gainful employment, community service or treatment during the non-residential hours.*

2.    *Home detention generally should not be imposed for a period in excess of six months. However, a longer term may be appropriate for disabled, elderly or extremely ill defendants who would otherwise be imprisoned.*

### §5F5.3.    Community Service

(a)    Community service may be ordered as a condition of probation or supervised release.    If the defendant was convicted of a felony, the court must order one

5.23                                                        October, 1987

# Defense Exhibit 9-241

or more of the following sanctions: a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2).

(b)   With the consent of the victim of the offense, the court may order a defendant to perform services for the benefit of the victim in lieu of monetary restitution. 18 U.S.C. § 3663(b)(4).

<u>Commentary</u>

<u>Application Note:</u>

1.   *Community service generally should not be imposed in excess of 400 hours. Longer terms of community service impose heavy administrative burdens relating to the selection of suitable placements and the monitoring of attendance.*

§5F5.4.   <u>Order of Notice to Victims</u>

The court may order the defendant to pay the cost of giving notice to victims pursuant to 18 U.S.C. § 3555.   This cost may be set off against any fine imposed if the court determines that the imposition of both sanctions would be excessive.

<u>Commentary</u>

<u>Background:</u>   *In cases where a defendant has been convicted of an offense involving fraud or "other intentionally deceptive practices," the court may order the defendant to "give reasonable notice and explanation of the conviction, in such form as the court may approve" to the victims of the offense.   18 U.S.C. § 3555.   The court may order the notice to be given by mail, by advertising in specific areas or through specific media, or by other appropriate means. In determining whether a notice is appropriate, the court must consider the generally applicable sentencing factors listed in 18 U.S.C. § 3553(a) and the cost involved in giving the notice as it relates to the loss caused by the crime.   The court may not require the defendant to pay more than $20,000 to give notice.*

*If an order of notice to victims is under consideration, the court must notify the government and the defendant. 18 U.S.C. § 3553(d).   Upon motion of either party, or on its own motion, the court must: (1) permit the parties to submit affidavits and memoranda relevant to the imposition of such an order; (2) provide counsel for both parties the opportunity to address orally, in open court, the appropriateness of such an order; and (3) if it issues such an order, state its reasons for doing so.   The court may also order any additional procedures that will not unduly complicate or prolong the sentencing process.*

*The legislative history indicates that, although the sanction was designed to provide actual notice to victims, a court might properly limit notice to only those victims who could be most readily identified, if to do otherwise would unduly prolong or complicate the sentencing process.*

October, 1987

**Defense Exhibit 9-242**

**§5F5.5.    Occupational Restrictions**

(a)    The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:

    (1)    a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction;

    (2)    there is a risk that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted; and

    (3)    imposition of such a restriction is reasonably necessary to protect the public.

(b)    If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

*Commentary*

*Background:*    *The Comprehensive Crime Control Act authorizes the imposition of occupational restrictions as a condition of probation, 18 U.S.C. § 3563(b)(6), or supervised release, 18 U.S.C. § 3583(d). Pursuant to section 3563(b)(6), a court may require a defendant to:*

> *[R]efrain, in the case of an individual, from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances.*

    *Section 3583(d) incorporates this section by reference. The Senate Judiciary Committee Report on the Comprehensive Crime Control Act explains that the provision was "intended to be used to preclude the continuation or repetition of illegal activities while avoiding a bar from employment that exceeds that needed to achieve that result." S. Rep. No. 225, 98th Cong., 1st Sess. 96-97. The condition "should only be used as reasonably necessary to protect the public. It should not be used as a means of punishing the convicted person." Id. at 96. Section 5F5.5 accordingly limits the use of the condition and, if imposed, limits its scope, to the minimum reasonably necessary to protect the public.*

    *The appellate review provisions permit a defendant to challenge the imposition of a probation condition under 18 U.S.C. § 3563(b)(6) if "the sentence includes . . . a more limiting condition of probation or supervised release under section 3563(b)(6) . . . than the maximum established in the guideline." 18 U.S.C. § 3742(a)(3)(A). The government may appeal if the sentence includes a "less limiting" condition of probation than the minimum established in the guideline. 18 U.S.C. § 3742(b)(3)(A).*

October, 1987

# Defense Exhibit 9-243

*The Comprehensive Crime Control Act expressly authorizes promulgation of policy statements regarding the appropriate use of conditions of probation and supervised release. 28 U.S.C. § 994(a)(2)(B).   The Act does not expressly grant the authority to issue guidelines on the subject.   The appellate review provisions of the Act, however, authorize appeals of occupational restrictions that deviate from the minimum and maximum limitations "established in the guideline" (emphasis added).*

5.26                                                                October, 1987

# Defense Exhibit 9-244

## PART G - IMPLEMENTING THE TOTAL SENTENCE OF IMPRISONMENT

**§5G1.1.   Sentencing on a Single Count of Conviction**

    (a)   If application of the guidelines results in a sentence above the maximum authorized by statute for the offense of conviction, the statutory maximum shall be the guideline sentence.

    (b)   If application of the guidelines results in a sentence below the minimum sentence required by statute, the statutory minimum shall be the guideline sentence.

    (c)   In any other case, the sentence imposed shall be the sentence as determined from application of the guidelines.

### Commentary

    *If the statute requires imposition of a sentence other than that required by the guidelines, the statute shall control.   The sentence imposed should be consistent with the statute but as close as possible to the guidelines.*

**§5G1.2.   Sentencing on Multiple Counts of Conviction**

    (a)   The sentence to be imposed on a count for which the statute mandates a consecutive sentence shall be determined and imposed independently.

    (b)   Except as otherwise required by law (see §5G1.1(a), (b)), the sentence imposed on each other count shall be the total punishment as determined in accordance with Part D of Chapter Three, and Part C of this Chapter.

    (c)   If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.

    (d)   If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.   In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.

### Commentary

    *This section specifies the procedure for determining the specific sentence to be formally imposed on each count in a multiple-count case.   The combined length of the sentences ("total punishment") is determined by the adjusted combined offense level.   To the extent possible, the total punishment is to be imposed on each count.   Sentences on all counts run concurrently, except as required to achieve the total sentence, or as required by law.*

October, 1987

# Defense Exhibit 9-245

*Usually, at least one of the counts will have a statutory maximum adequate to permit imposition of the total punishment as the sentence on that count. The sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum, and be made to run concurrently with all or part of the longest sentence. If no count carries an adequate statutory maximum, any combination of concurrent and consecutive sentences that produces the total punishment may be imposed.*

*Counts for which a statute mandates a consecutive sentence, such as counts charging the use of a firearm in a violent crime (18 U.S.C. § 924(c)) are treated separately. The sentence imposed on such a count is the sentence indicated for the particular offense of conviction. That sentence then runs consecutively to the sentences imposed on the other counts. <u>See</u> Commentary to §§2K2.4 and 3D1.2 regarding determination of the offense levels for related counts when a conviction under 18 U.S.C. § 924(c) is involved.*

**§5G1.3.    <u>Convictions on Counts Related to Unexpired Sentences</u>**

> If at the time of sentencing, the defendant is already serving one or more unexpired sentences, then the sentences for the instant offense(s) shall run consecutively to such unexpired sentences, unless one or more of the instant offense(s) arose out of the same transactions or occurrences as the unexpired sentences. In the latter case, such instant sentences and the unexpired sentences shall run concurrently, except to the extent otherwise required by law.

<u>*Commentary*</u>

*This section reflects the statutory presumption that sentences imposed at different times ordinarily run consecutively. <u>See</u> 18 U.S.C. § 3584(a). This presumption does not apply when the new counts arise out of the same transaction or occurrence as a prior conviction.*

*Departure would be warranted when independent prosecutions produce anomalous results that circumvent or defeat the intent of the guidelines.*

October, 1987

**Defense Exhibit 9-246**

# PART H - SPECIFIC OFFENDER CHARACTERISTICS

### *Introductory Commentary*

*Congress has directed the Commission to consider whether certain specific offender characteristics "have any relevance to the nature, extent, place of service, or other incidents of an appropriate sentence" and to take them into account only to the extent they are determined relevant by the Commission. 28 U.S.C. § 994(d).*

**§5H1.1.    Age (Policy Statement)**

Age is not ordinarily relevant in determining whether a sentence should be outside the guidelines. Neither is it ordinarily relevant in determining the type of sentence to be imposed when the guidelines provide sentencing options. Age may be a reason to go below the guidelines when the offender is elderly <u>and</u> infirm and where a form of punishment (<u>e.g.</u>, home confinement) might be equally efficient as and less costly than incarceration. If, independent of the consideration of age, a defendant is sentenced to probation or supervised release, age may be relevant in the determination of the length and conditions of supervision.

**§5H1.2.    Education and Vocational Skills (Policy Statement)**

Education and vocational skills are not ordinarily relevant in determining whether a sentence should be outside the guidelines, but the extent to which a defendant may have misused special training or education to facilitate criminal activity is an express guideline factor. <u>See</u> §3B1.3 (Abuse of Position of Trust or Use of Special Skill). Neither are education and vocational skills relevant in determining the type of sentence to be imposed when the guidelines provide sentencing options. If, independent of consideration of education and vocational skills, a defendant is sentenced to probation or supervised release, these considerations may be relevant in the determination of the length and conditions of supervision for rehabilitative purposes, for public protection by restricting activities that allow for the utilization of a certain skill, or in determining the type or length of community service.

**§5H1.3.    Mental and Emotional Conditions (Policy Statement)**

Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines, except as provided in the general provisions in Chapter Five. Mental and emotional conditions, whether mitigating or aggravating, may be relevant in determining the length and conditions of probation or supervised release.

**§5H1.4.    Physical Condition, Including Drug Dependence and Alcohol Abuse (Policy Statement)**

Physical condition is not ordinarily relevant in determining whether a sentence should be outside the guidelines or where within the guidelines a sentence should

October, 1987

# Defense Exhibit 9-247

fall.   However, an extraordinary physical impairment may be a reason to impose a sentence other than imprisonment.

Drug dependence or alcohol abuse is not a reason for imposing a sentence below the guidelines.   Substance abuse is highly correlated to an increased propensity to commit crime.   Due to this increased risk, it is highly recommended that a defendant who is incarcerated also be sentenced to supervised release with a requirement that the defendant participate in an appropriate substance abuse program.   If participation in a substance abuse program is required, the length of supervised release should take into account the length of time necessary for the supervisory body to judge the success of the program.

This provision would also apply in cases where the defendant received a sentence of probation.   The substance abuse condition is strongly recommended and the length of probation should be adjusted accordingly.   Failure to comply would normally result in revocation of probation.

§5H1.5.    Previous Employment Record (Policy Statement)

Employment record is not ordinarily relevant in determining whether a sentence should be outside the guidelines or where within the guidelines a sentence should fall.   Employment record may be relevant in determining the type of sentence to be imposed when the guidelines provide for sentencing options.   If, independent of the consideration of employment record, a defendant is sentenced to probation or supervised release, considerations of employment record may be relevant in the determination of the length and conditions of supervision.

§5H1.6.    Family Ties and Responsibilities, and Community Ties (Policy Statement)

Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the guidelines.   Family responsibilities that are complied with are relevant in determining whether to impose restitution and fines.   Where the guidelines provide probation as an option, these factors may be relevant in this determination.   If a defendant is sentenced to probation or supervised release, family ties and responsibilities that are met may be relevant in the determination of the length and conditions of supervision.

§5H1.7.    Role in the Offense (Policy Statement)

A defendant's role in the offense is relevant in determining the appropriate sentence. See Chapter Three, Part B, (Role in the Offense).

§5H1.8.    Criminal History (Policy Statement)

A defendant's criminal history is relevant in determining the appropriate sentence. See Chapter Four, (Criminal History and Criminal Livelihood).

October, 1987

**Defense Exhibit 9-248**

**§5H1.9.** <u>Dependence upon Criminal Activity for a Livelihood</u> (Policy Statement)

The degree to which a defendant depends upon criminal activity for a livelihood is relevant in determining the appropriate sentence. <u>See</u> Chapter Four, Part B (Career Offenders and Criminal Livelihood).

**§5H1.10.** <u>Race, Sex, National Origin, Creed, Religion and Socio-Economic Status</u> (Policy Statement)

These factors are not relevant in the determination of a sentence.

October, 1987

**Defense Exhibit 9-249**

[Page intentionally blank]

5.32                                                          October, 1987

**Defense Exhibit 9-250**

## PART J - RELIEF FROM DISABILITY PERTAINING TO CERTAIN EMPLOYMENT

**§5J1.1.**     <u>Relief From Disability Pertaining to Certain Employment</u> (Policy Statement)

With regard to labor racketeering offenses, a part of the punishment imposed by 29 U.S.C. §§ 504 and 511 is the prohibition of convicted persons from service in labor unions, employer associations, employee benefit plans, and as labor relations consultants.    Violations of these provisions are felony offenses.    Persons convicted after October 12, 1984, may petition the sentencing court to reduce the statutory disability (thirteen years after sentence or imprisonment, whichever is later) to a lesser period (not less than three years after entry of judgment in the trial court). After November 1, 1987, petitions for exemption from the disability that were formerly administered by the United States Parole Commission will be transferred to the courts.    Relief shall not be given in such cases to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he has been rehabilitated since commission of the crime.

October, 1987

# Defense Exhibit 9-251

[Page intentionally blank]

5.34                                                    October, 1987

**Defense Exhibit 9-252**

PART K - DEPARTURES

## 1.    SUBSTANTIAL ASSISTANCE TO AUTHORITIES

§5K1.1.    **Substantial Assistance to Authorities** (Policy Statement)

Upon motion of the government stating that the defendant has made a good faith effort to provide substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a)    The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following conduct:

(1)    the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2)    the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3)    the nature and extent of the defendant's assistance;

(4)    any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5)    the timeliness of the defendant's assistance.

### *Commentary*

*Application Notes:*

1.    *Under circumstances set forth in 18 U.S.C. § 3553(e) and 28 U.S.C. § 994(n), as amended, substantial assistance in the investigation or prosecution of another person who has committed an offense may justify a sentence below a statutorily required minimum sentence.*

2.    *The sentencing reduction for assistance to authorities shall be considered independently of any reduction for acceptance of responsibility. Substantial assistance is directed to the investigation and prosecution of criminal activities by persons other than the defendant, while acceptance of responsibility is directed to the defendant's affirmative recognition of responsibility for his own conduct.*

3.    *Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain.*

*Background:    A defendant's assistance to authorities in the investigation of criminal activities has been recognized in practice and by statute as a mitigating sentencing factor. The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be*

October, 1987

# Defense Exhibit 9-253

*evaluated by the court on an individual basis. Latitude- is, therefore, afforded the sentencing judge to reduce a sentence based upon variable relevant factors, including those listed above. The sentencing judge must, however, state the reasons for reducing a sentence under this section. 18 U.S.C. § 3553(c). The court may elect to provide its reasons to the defendant in camera and in writing under seal for the safety of the defendant or to avoid disclosure of an ongoing investigation.*

**§5K1.2.    Refusal to Assist (Policy Statement)**

A defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor.

*Commentary*

*Background:* *The Commission considered and rejected the use of a defendant's refusal to assist authorities as an aggravating sentencing factor. Refusal to assist authorities based upon continued involvement in criminal activities and association with accomplices may be considered, however, in evaluating a defendant's sincerity in claiming acceptance of responsibility.*

\* \* \* \* \*

**2.    GENERAL PROVISIONS:**

**§5K2.0. Grounds for Departure (Policy Statement)**

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing. Nonetheless, the present section seeks to aid the court by identifying some of the factors that the Commission has not been able to fully take into account in formulating precise guidelines. Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing judge. Similarly, the court may depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines (e.g., as an adjustment or specific offense characteristic), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

Where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, departure from the guideline is warranted only if the factor is present to a degree substantially in excess of that

**Defense Exhibit 9-254**

which ordinarily is involved in the offense of conviction. Thus, disruption of a governmental function, §5K2.7, would have to be quite serious to warrant departure from the guidelines when the offense of conviction is bribery or obstruction of justice. When the offense of conviction is theft, however, and when the theft caused disruption of a governmental function, departure from the applicable guideline more readily would be appropriate. Similarly, physical injury would not warrant departure from the guidelines when the offense of conviction is robbery because the robbery guideline includes a specific sentence adjustment based on the extent of any injury. However, because the robbery guideline does not deal with injury to more than one victim, departure would be warranted if several persons were injured.

Also, a factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing. For example, the use of a weapon has been listed as a specific offense characteristic under many guidelines, but not under immigration violations. Therefore, if a weapon is a relevant factor to sentencing for an immigration violation, the court may depart for this reason.

Harms identified as a possible basis for departure from the guidelines should be taken into account only when they are relevant to the offense of conviction, within the limitations set forth in §1B1.3.

**§5K2.1.    Death (Policy Statement)**

If death resulted, the court may increase the sentence above the authorized guideline range.

Loss of life does not automatically suggest a sentence at or near the statutory maximum. The sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation. Other appropriate factors are whether multiple deaths resulted, and the means by which life was taken. The extent of the increase should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction, as determined by the other Chapter Two guidelines, already reflects the risk of personal injury. For example, a substantial increase may be appropriate if the death was intended or knowingly risked or if the underlying offense was one for which base offense levels do not reflect an allowance for the risk of personal injury, such as fraud.

**§5K2.2.    Physical Injury (Policy Statement)**

If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of

October, 1987

**Defense Exhibit 9-255**

harm, a less substantial departure would be indicated.    In general, the same considerations apply as in §5K2.1.

**§5K2.3.    Extreme Psychological Injury (Policy Statement)**

If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range.    The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.

Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns.    The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct.

**§5K2.4.    Abduction or Unlawful Restraint (Policy Statement)**

If a person was abducted, taken hostage, or unlawfully restrained to facilitate commission of the offense or to facilitate the escape from the scene of the crime, the court may increase the sentence above the authorized guideline range.

**§5K2.5.    Property Damage or Loss (Policy Statement)**

If the offense caused property damage or loss not taken into account within the guidelines, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent to which the harm was intended or knowingly risked and on the extent to which the harm to property is more serious than other harm caused or risked by the conduct relevant to the offense of conviction.

**§5K2.6.    Weapons and Dangerous Instrumentalities (Policy Statement)**

If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range.    The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others.    The discharge of a firearm might warrant a substantial sentence increase.

**§5K2.7.    Disruption of Governmental Function (Policy Statement)**

If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range

# Defense Exhibit 9-256

to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.

**§5K2.8.    Extreme Conduct (Policy Statement)**

If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

**§5K2.9.    Criminal Purpose (Policy Statement)**

If the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct.

**§5K2.10.    Victim's Conduct (Policy Statement)**

If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense. In deciding the extent of a sentence reduction, the court should consider:

(a)    the size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant;

(b)    the persistence of the victim's conduct and any efforts by the defendant to prevent confrontation;

(c)    the danger reasonably perceived by the defendant, including the victim's reputation for violence;

(d)    the danger actually presented to the defendant by the victim; and

(e)    any other relevant conduct by the victim that substantially contributed to the danger presented.

Victim misconduct ordinarily would not be sufficient to warrant application of this provision in the context of offenses under Chapter Two, Part A.3 (Criminal Sexual Abuse). In addition, this provision usually would not be relevant in the context of non-violent offenses. There may, however, be unusual circumstances in which substantial victim misconduct would warrant a reduced penalty in the case of a non-violent offense. For example, an extended course of provocation and harassment might lead a defendant to steal or destroy property in retaliation.

October, 1987

**Defense Exhibit 9-257**

**§5K2.11.    Lesser Harms (Policy Statement)**

Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct, for example, in the case of a mercy killing. Where the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted. For example, providing defense secrets to a hostile power should receive no lesser punishment simply because the defendant believed that the government's policies were misdirected.

In other instances, conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue. For example, where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program, a reduced sentence might be warranted.

**§5K2.12.    Coercion and Duress (Policy Statement)**

If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. The Commission considered the relevance of economic hardship and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence.

**§5K2.13.    Diminished Capacity (Policy Statement)**

If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

**§5K2.14.    Public Welfare (Policy Statement)**

If national security, public health, or safety was significantly endangered, the court may increase the sentence above the guideline range to reflect the nature and circumstances of the offense.

October, 1987

# Defense Exhibit 9-258

## CHAPTER SIX - SENTENCING PROCEDURES
## AND PLEA AGREEMENTS

## PART A - SENTENCING PROCEDURES

### *Introductory Commentary*

*This Part addresses sentencing procedures that are applicable in all cases, including those in which guilty or nolo contendere pleas are entered with or without a plea agreement between the parties, and convictions based upon judicial findings or verdicts. It sets forth the procedures for establishing the facts upon which the sentence will be based. Reliable fact-finding is essential to procedural due process and to the accuracy and uniformity of sentencing.*

**§6A1.1.    Presentence Report**

(a)    A probation officer shall conduct a presentence investigation and report to the court before the imposition of sentence unless the court finds that there is information in the record sufficient to enable the meaningful exercise of sentencing authority pursuant to 18 U.S.C. § 3553, and the court explains this finding on the record. Rule 32(c)(1), Fed.R.Crim.P. The defendant may not waive preparation of the presentence report.

(b)    The presentence report shall be disclosed to the defendant, counsel for the defendant and the attorney for the government, to the maximum extent permitted by Rule 32(c), Fed.R.Crim.P. Disclosure shall be made at least ten days prior to the date set for sentencing, unless this minimum period is waived by the defendant. 18 U.S.C. § 3552(d).

### *Commentary*

*A thorough presentence investigation is essential in determining the facts relevant to sentencing. In order to ensure that the sentencing judge will have information sufficient to determine the appropriate sentence, Congress deleted provisions of Rule 32(c), Fed.R.Crim.P., which previously permitted the defendant to waive the presentence report. Rule 32(c)(1) permits the judge to dispense with a presentence report, but only after explaining, on the record, why sufficient information is already available.*

**§6A1.2.    Position of Parties with Respect to Sentencing Factors**

(a)    After receipt of the presentence report and within a reasonable time before sentencing, the attorney for the government and the attorney for the defendant, or the pro se defendant, shall each file with the court a written statement of the sentencing factors to be relied upon at sentencing. The parties are not precluded from asserting additional sentencing factors if notice of the intention to rely upon another factor is filed with the court within a reasonable time before sentencing.

October, 1987

# Defense Exhibit 9-259

(b)    Copies of all sentencing statements filed with the court shall be contemporaneously served upon all other parties and submitted to the probation officer assigned to the case.

(c)    In lieu of the written statement required by §6A1.2(a), any party may file:

(1)    a written statement adopting the findings of the presentence report;

(2)    a written statement adopting such findings subject to certain exceptions or additions; or

(3)    a written stipulation in which the parties agree to adopt the findings of the presentence report or to adopt such findings subject to certain exceptions or additions.

(d)    A district court may, by local rule, identify categories of cases for which the parties are authorized to make oral statements at or before sentencing, in lieu of the written statement required by this section.

(e)    Except to the extent that a party may be privileged not to disclose certain information, all statements filed with the court or made orally to the court pursuant to this section shall:

(1)    set forth, directly or by reference to the presentence report, the relevant facts and circumstances of the actual offense conduct and offender characteristics; and

(2)    not contain misleading facts.

*Commentary*

*In order to focus the issues prior to sentencing, the parties are required to respond to the presentence report and to identify any issues in dispute. The potential complexity of factors important to the sentencing determination normally requires that the position of the parties be presented in writing. However, because courts differ greatly with respect to their reliance on written plea agreements and with respect to the feasibility of written statements under guidelines, district courts are encouraged to consider the approach that is most appropriate under local conditions. The Commission intends to reexamine this issue in light of experience under the guidelines.*

**§6A1.3.    Resolution of Disputed Factors**

(a)    When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

October, 1987

**Defense Exhibit 9-260**

(b)  The court shall resolve disputed sentencing factors in accordance with Rule 32(a)(1), Fed.R.Crim.P. (effective Nov. 1, 1987), notify the parties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence.

### Commentary

In current practice, factors relevant to sentencing are often determined in an informal fashion. The informality is to some extent explained by the fact that particular offense and offender characteristics rarely have a highly specific or required sentencing consequence. This situation will no longer exist under sentencing guidelines. The court's resolution of disputed sentencing factors will usually have a measurable effect on the applicable punishment. More formality is therefore unavoidable if the sentencing process is to be accurate and fair. Although lengthy sentencing hearings should seldom be necessary, disputes about sentencing factors must be resolved with care. When a reasonable dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information. Written statements of counsel or affidavits of witnesses may be adequate under many circumstances. An evidentiary hearing may sometimes be the only reliable way to resolve disputed issues. See United States v. Fatico, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979). The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law.

In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. 18 U.S.C. § 3661. Any information may be considered, so long as it has "sufficient indicia of reliability to support its probable accuracy." United States v. Marshall, 519 F.Supp. 751 (D.C. Wis. 1981), aff'd, 719 F.2d 887 (7th Cir. 1983); United States v. Fatico, 579 F.2d 707 (2d Cir. 1978). Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means." United States v. Fatico, 579 F.2d at 713. Unreliable allegations shall not be considered. United States v. Weston, 448 F.2d 626 (9th Cir. 1971).

If sentencing factors are the subject of reasonable dispute, the court should, where appropriate, notify the parties of its tentative findings and afford an opportunity for correction of oversight or error before sentence is imposed.

6.3                                                                              October, 1987

## Defense Exhibit 9-261

*[Page intentionally blank]*

6.4

October, 1987

**Defense Exhibit 9-262**

## PART B - PLEA AGREEMENTS

### *Introductory Commentary*

*Policy statements governing the acceptance of plea agreements under Rule 11(e)(1), Fed.R.Crim.P., are intended to ensure that plea negotiation practices:*

*(1) promote the statutory purposes of sentencing prescribed in 18 U.S.C. § 3553(a); and*

*(2) do not perpetuate unwarranted sentencing disparity.*

*These policy statements are a first step toward implementing 28 U.S.C. § 994(a)(2)(E). Congress indicated that it expects judges "to examine plea agreements to make certain that prosecutors have not used plea bargaining to undermine the sentencing guidelines." S.Rep. 98-225, 98th Cong., 1st Sess. 63, 167 (1983). In pursuit of this goal, the Commission shall study plea agreement practice under the guidelines and ultimately develop standards for judges to use in determining whether to accept plea agreements. Because of the difficulty in anticipating problems in this area, and because the sentencing guidelines are themselves to some degree experimental, substantive restrictions on judicial discretion would be premature at this stage of the Commission's work.*

*The present policy statements move in the desired direction in two ways. First, the policy statements make clear that sentencing is a judicial function and that the appropriate sentence in a guilty plea case is to be determined by the judge. This is a reaffirmation of current practice. Second, the policy statements ensure that the basis for any judicial decision to depart from the guidelines will be explained on the record. Explanations will be carefully analyzed by the Commission and will pave the way for more detailed policy statements presenting substantive criteria to achieve consistency in this aspect of the sentencing process.*

**§6B1.1.    Plea Agreement Procedure (Policy Statement)**

(a)    If the parties have reached a plea agreement, the court shall, on the record, require disclosure of the agreement in open court or, on a showing of good cause, in camera.  Rule 11(e)(2), Fed.R.Crim.P.

(b)    If the plea agreement includes a nonbinding recommendation pursuant to Rule 11(e)(1)(B), the court shall advise the defendant that the court is not bound by the sentencing recommendation, and that the defendant has no right to withdraw the defendant's guilty plea if the court decides not to accept the sentencing recommendation set forth in the plea agreement.

(c)    The court shall defer its decision to accept or reject any nonbinding recommendation pursuant to Rule 11(e)(1)(B), and the court's decision to accept or reject any plea agreement pursuant to Rules 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the presentence report, unless a report is not required under §6A1.1.

October, 1987

Defense Exhibit 9-263

### Commentary

*This provision parallels the procedural requirements of Rule 11(e), Fed.R.Crim.P. Plea agreements must be fully disclosed and a defendant whose plea agreement includes a nonbinding recommendation must be advised that the court's refusal to accept the sentencing recommendation will not entitle the defendant to withdraw the plea.*

*Section 6B1.1(c) deals with the timing of the court's decision whether to accept the plea agreement. Rule 11(e)(2) gives the court discretion to accept the plea agreement immediately or defer acceptance pending consideration of the presentence report. Prior to the guidelines, an immediate decision was permissible because, under Rule 32(c), Fed.R.Crim.P., the defendant could waive preparation of the presentence report. Section 6B1.1(c) reflects the changes in practice required by §6A1.1 and amended Rule 32(c)(1). Since a presentence report normally will be prepared, the court must defer acceptance of the plea agreement until the court has had an opportunity to consider the presentence report.*

**§6B1.2.    Standards for Acceptance of Plea Agreements (Policy Statement)**

(a)    In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges [Rule 11(e)(1)(A)], the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing.

(b)    In the case of a plea agreement that includes a nonbinding recommendation [Rule 11(e)(1)(B)], the court may accept the recommendation if the court is satisfied either that:

(1)    the recommended sentence is within the applicable guideline range; or

(2)    the recommended sentence departs from the applicable guideline range for justifiable reasons.

(c)    In the case of a plea agreement that includes a specific sentence [Rule 11(e)(1)(C)], the court may accept the agreement if the court is satisfied either that:

(1)    the agreed sentence is within the applicable guideline range; or

(2)    the agreed sentence departs from the applicable guideline range for justifiable reasons.

### Commentary

*This section makes clear that a court may accept a plea agreement provided that the judge complies with the obligations imposed by Rule 11(e), Fed.R.Crim.P. A judge may accept an agreement calling for dismissal of charges or an agreement not to pursue potential charges if the remaining charges reflect the seriousness of the actual offense behavior. This requirement does not authorize judges to intrude upon the charging discretion of the*

October, 1987

# Defense Exhibit 9-264

*prosecutor. If the government's motion to dismiss charges or statement that potential charges will not be pursued is not contingent on the disposition of the remaining charges, the judge should defer to the government's position except under extraordinary circumstances. Rule 48(a), Fed.R.Crim.P. However, when the dismissal of charges or agreement not to pursue potential charges is contingent on acceptance of a plea agreement, the court's authority to adjudicate guilt and impose sentence is implicated, and the court is to determine whether or not dismissal of charges will undermine the sentencing guidelines.*

*Similarly, the court will accept a recommended sentence or a plea agreement requiring imposition of a specific sentence only if the court is satisfied either that the contemplated sentence is within the guidelines or, if not, that the recommended sentence or agreement departs from the applicable guideline range for justifiable reasons and does not undermine the basic purposes of sentencing.*

§6B1.3.    **Procedure Upon Rejection of a Plea Agreement** (Policy Statement)

If a plea agreement pursuant to Rule 11(e)(1)(A) or Rule 11(e)(1)(C) is rejected, the court shall afford the defendant an opportunity to withdraw the defendant's guilty plea. Rule 11(e)(4), Fed.R.Crim.P.

*Commentary*

*This provision implements the requirements of Rule 11(e)(4). It assures the defendant an opportunity to withdraw his plea when the court has rejected a plea agreement that would require dismissal of charges or imposition of a specific sentence.*

§6B1.4.    **Stipulations** (Policy Statement)

(a)    A plea agreement may be accompanied by a written stipulation of facts relevant to sentencing. Except to the extent that a party may be privileged not to disclose certain information, stipulations shall:

   (1)   set forth the relevant facts and circumstances of the actual offense conduct and offender characteristics;

   (2)   not contain misleading facts; and

   (3)   set forth with meaningful specificity the reasons why the sentencing range resulting from the proposed agreement is appropriate.

(b)    To the extent that the parties disagree about any facts relevant to sentencing, the stipulation shall identify the facts that are in dispute.

(c)    A district court may, by local rule, identify categories of cases for which the parties are authorized to make the required stipulation orally, on the record, at the time the plea agreement is offered.

(d)    The court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing.

October, 1987

**Defense Exhibit 9-265**

### *Commentary*

*This provision requires that when a plea agreement includes a stipulation of fact, the stipulation must fully and accurately disclose all factors relevant to the determination of sentence. This provision does not obligate the parties to reach agreement on issues that remain in dispute or to present the court with an appearance of agreement in areas where agreement does not exist. Rather, the overriding principle is full disclosure of the circumstances of the actual offense and the agreement of the parties. The stipulation should identify all areas of agreement, disagreement and uncertainty that may be relevant to the determination of sentence. Similarly, it is not appropriate for the parties to stipulate to misleading or non-existent facts, even when both parties are willing to assume the existence of such "facts" for purposes of the litigation. Rather, the parties should fully disclose the actual facts and then explain to the court the reasons why the disposition of the case should differ from that which such facts ordinarily would require under the guidelines.*

*Because of the importance of the stipulations and the potential complexity of the factors that can affect the determination of sentences, stipulations ordinarily should be in writing. However, exceptions to this practice may be allowed by local rule. The Commission intends to pay particular attention to this aspect of the plea agreement procedure as experience under the guidelines develops. See Commentary to §6A1.2.*

*Section 6B1.4(d) makes clear that the court is not obliged to accept the stipulation of the parties. Even though stipulations are expected to be accurate and complete, the court cannot rely exclusively upon stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.*

October, 1987

# Defense Exhibit 9-266

## CHAPTER SEVEN - VIOLATIONS OF PROBATION AND SUPERVISED RELEASE

**§7A1.1.    Reporting of Violations of Probation and Supervised Release** (Policy Statement)

(a)    The Probation Officer shall promptly report to the court any alleged violation of a condition of probation or supervised release that constitutes new criminal conduct, other than conduct that would constitute a petty offense.

(b)    The Probation Officer shall promptly report to the court any other alleged violation of a condition of probation or supervised release, unless the officer determines:    (1) that such violation is minor, not part of a continuing pattern of violation, and not indicative of a serious adjustment problem; and (2) that non-reporting will not present an undue risk to the public or be inconsistent with any directive of the court relative to the reporting of violations.

*Commentary*

*This policy statement addresses the reporting of violations of probation and supervised release.    It is the Commission's intent that significant violations be promptly reported to the court.    At the same time, the Commission realizes that it would neither be practical nor desirable to require such reporting for every minor violation.*

**§7A1.2.    Revocation of Probation** (Policy Statement)

(a)    Upon a finding of a violation of probation involving new criminal conduct, other than criminal conduct constituting a petty offense, the court shall revoke probation.

(b)    Upon a finding of a violation of probation involving conduct other than conduct under subsection (a), the court may:    (1) revoke probation; or (2) extend the term of probation and/or modify the conditions of probation.

*Commentary*

*This policy statement expresses a presumption that probation is to be revoked in the case of new criminal conduct other than a petty offense.    For lesser violations, the policy statements provide that the court may revoke probation, extend the term of supervision, or modify the conditions of supervision.*

**§7A1.3.    Revocation of Supervised Release** (Policy Statement)

(a)    Upon a finding of a violation of supervised release involving new criminal conduct, other than criminal conduct constituting a petty offense, the court shall revoke supervised release.

(b)    Upon a finding of a violation of supervised release involving conduct other than conduct under subsection (a), the court may:    (1) revoke supervised release; or

# Defense Exhibit 9-267

(2) extend the term of supervised release and/or modify the conditions of supervised release.

*Commentary*

*This policy statement expresses a presumption that supervised release is to be revoked in the case of new criminal conduct other than a petty offense. For lesser violations, the policy statements provide that the court may revoke supervised release, extend the term of supervision, or modify the conditions of supervision.*

§7A1.4.    **No Credit for Time Under Supervision** (Policy Statement)

(a)    Upon revocation of probation, no credit shall be given (toward any sentence of imprisonment imposed) for any portion of the term of probation served prior to revocation.

(b)    Upon revocation of supervised release, no credit shall be given (toward any term of imprisonment ordered) for time previously served on post-release supervision.

*Commentary*

*This policy statement provides that time served on probation or supervised release is not to be credited in the determination of any term of imprisonment imposed upon revocation.*

**Defense Exhibit 9-268**

APPENDIX A - STATUTORY INDEX

INTRODUCTION

This index specifies the guideline section or sections ordinarily applicable to the statute of conviction. If more than one guideline section is referenced for the particular statute, select the guideline most appropriate for the conduct of which the defendant was convicted. If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, the court is to apply the guideline section which is most applicable to the conduct for which the defendant was convicted. (See §1B1.2.)

If the offense involved a conspiracy or an attempt, refer to §2X1.1 as well as the guideline for the substantive offense.

For those offenses not listed in this index, the most analogous guideline is to be applied. (See §2X5.1.)

INDEX

| Statute | Guideline |
|---|---|
| 7 U.S.C. § 6 | 2F1.1 |
| 7 U.S.C. § 6b(A) | 2F1.1 |
| 7 U.S.C. § 6b(B) | 2F1.1 |
| 7 U.S.C. § 6b(C) | 2F1.1 |
| 7 U.S.C. § 6c | 2F1.1 |
| 7 U.S.C. § 6h | 2F1.1 |
| 7 U.S.C. § 6o | 2F1.1 |
| 7 U.S.C. § 13(a) | 2B1.1 |
| 7 U.S.C. § 13(b) | 2F1.1 |
| 7 U.S.C. § 13(c) | 2F1.1 |
| 7 U.S.C. § 13(e) | 2F1.2 |
| 7 U.S.C. § 23 | 2F1.1 |
| 7 U.S.C. § 52 | 2N2.1 |

A.1

October, 1987

**Defense Exhibit 9-269**

| Statute | Guideline |
|---------|-----------|
| 7 U.S.C. § 60 | 2N2.1 |
| 7 U.S.C. § 87b | 2N2.1 |
| 7 U.S.C. § 136j | 2Q1.2 |
| 7 U.S.C. § 136k | 2Q1.2 |
| 7 U.S.C. § 136*l* | 2Q1.2 |
| 7 U.S.C. § 149 | 2N2.1 |
| 7 U.S.C. § 150bb | 2N2.1 |
| 7 U.S.C. § 150gg | 2N2.1 |
| 7 U.S.C. § 154 | 2N2.1 |
| 7 U.S.C. § 156 | 2N2.1 |
| 7 U.S.C. § 157 | 2N2.1 |
| 7 U.S.C. § 158 | 2N2.1 |
| 7 U.S.C. § 161 | 2N2.1 |
| 7 U.S.C. § 163 | 2N2.1 |
| 7 U.S.C. § 166 | 2N2.1 |
| 7 U.S.C. § 195 | 2N2.1 |
| 7 U.S.C. § 213 | 2F1.1 |
| 7 U.S.C. § 270 | 2F1.1 |
| 7 U.S.C. § 281 | 2N2.1 |
| 7 U.S.C. § 472 | 2N2.1 |
| 7 U.S.C. § 473 | 2N2.1 |
| 7 U.S.C. § 473c-1 | 2N2.1 |
| 7 U.S.C. § 491 | 2N2.1 |
| 7 U.S.C. § 499n | 2N2.1 |
| 7 U.S.C. § 503 | 2N2.1 |

A.2

October, 1987

# Defense Exhibit 9-270

| Statute | Guideline |
|---|---|
| 7 U.S.C. § 511e | 2N2.1 |
| 7 U.S.C. § 511k | 2N2.1 |
| 7 U.S.C. § 516 | 2N2.1 |
| 7 U.S.C. § 586 | 2N2.1 |
| 7 U.S.C. § 596 | 2N2.1 |
| 7 U.S.C. § 608e-1 | 2N2.1 |
| 7 U.S.C. § 610(g) | 2C1.3 |
| 8 U.S.C. § 1185(a)(1) | 2L1.2 |
| 8 U.S.C. § 1185(a)(2) | 2L1.1 |
| 8 U.S.C. § 1185(a)(3) | 2L2.1, 2L2.2 |
| 8 U.S.C. § 1185(a)(4) | 2L2.1 |
| 8 U.S.C. § 1185(a)(5) | 2L2.2 |
| 8 U.S.C. § 1252(e) | 2L1.2 |
| 8 U.S.C. § 1324(a) | 2L1.1 |
| 8 U.S.C. § 1325 | 2L1.2 |
| 8 U.S.C. § 1326 | 2L1.2 |
| 8 U.S.C. § 1327 | 2L1.1 |
| 8 U.S.C. § 1328 | 2G1.1, 2G1.2, 2G2.1, 2G2.2 |
| 10 U.S.C. § 847 | 2J1.1, 2J1.5 |
| 12 U.S.C. § 631 | 2F1.1 |
| 15 U.S.C. § 1 | 2R1.1 |
| 15 U.S.C. § 50 | 2F1.1, 2J1.1, 2J1.5 |
| 15 U.S.C. § 77e | 2F1.1 |
| 15 U.S.C. § 77q | 2F1.1 |
| 15 U.S.C. § 77x | 2F1.1 |

A.3

October, 1987

# Defense Exhibit 9-271

| Statute | Guideline |
|---|---|
| 15 U.S.C. § 78dd-1 | 2B4.1 |
| 15 U.S.C. § 78dd-2 | 2B4.1 |
| 15 U.S.C. § 78ff | 2B4.1, 2F1.1 |
| 15 U.S.C. § 78j | 2F1.1, 2F1.2 |
| 15 U.S.C. §80b-6 | 2F1.1 |
| 15 U.S.C. § 158 | 2F1.1 |
| 15 U.S.C. § 645(a) | 2F1.1 |
| 15 U.S.C. § 645(b) | 2B1.1, 2F1.1 |
| 15 U.S.C. §645(c) | 2B1.1, 2F1.1 |
| 15 U.S.C. § 714m(a) | 2F1.1 |
| 15 U.S.C. § 714m(b) | 2B1.1, 2F1.1 |
| 15 U.S.C. § 714m(c) | 2B1.1 |
| 15 U.S.C. § 1172 | 2E3.3 |
| 15 U.S.C. § 1173 | 2E3.3 |
| 15 U.S.C. § 1174 | 2E3.3 |
| 15 U.S.C. § 1175 | 2E3.3 |
| 15 U.S.C. § 1176 | 2E3.3 |
| 15 U.S.C. § 1281 | 2B1.3 |
| 15 U.S.C. § 1644 | 2F1.1 |
| 15 U.S.C. § 1681q | 2F1.1 |
| 15 U.S.C. § 1693n(a) | 2F1.1 |
| 15 U.S.C. § 1983 | 2N3.1 |
| 15 U.S.C. § 1984 | 2N3.1 |
| 15 U.S.C. § 1985 | 2N3.1 |
| 15 U.S.C. § 1986 | 2N3.1 |

A.4                                                           October, 1987

**Defense Exhibit 9-272**

| Statute | Guideline |
|---|---|
| 15 U.S.C. § 1987 | 2N3.1 |
| 15 U.S.C. § 1988 | 2N3.1 |
| 15 U.S.C. § 1990c | 2N3.1 |
| 15 U.S.C. § 2614 | 2Q1.2 |
| 15 U.S.C. § 2615 | 2Q1.2 |
| 16 U.S.C. § 114 | 2B1.1, 2B1.3 |
| 16 U.S.C. § 117(c) | 2B1.1, 2B1.3 |
| 16 U.S.C. § 123 | 2B1.1, 2B1.3, 2B2.3 |
| 16 U.S.C. § 146 | 2B1.1, 2B1.3, 2B2.3 |
| 16 U.S.C. § 198c | 2B1.1, 2B1.3, 2B2.3 |
| 16 U.S.C. § 204c | 2B1.1, 2B1.3 |
| 16 U.S.C. § 413 | 2B1.1, 2B1.3 |
| 16 U.S.C. § 414 | 2B2.3 |
| 16 U.S.C. § 426i | 2B1.1, 2B1.3 |
| 16 U.S.C. § 428i | 2B1.1, 2B1.3 |
| 16 U.S.C. § 433 | 2B1.1, 2B1.3 |
| 16 U.S.C. § 604 | 2B1.3 |
| 16 U.S.C. § 606 | 2B1.1, 2B1.3 |
| 16 U.S.C. § 668(a) | 2Q2.1 |
| 16 U.S.C. § 668dd | 2Q2.1 |
| 16 U.S.C. § 670j(a)(1) | 2B2.3 |
| 16 U.S.C. § 676 | 2B2.3 |
| 16 U.S.C. § 682 | 2B2.3 |
| 16 U.S.C. § 683 | 2B2.3 |
| 16 U.S.C. § 685 | 2B2.3 |

A.5                                    October, 1987

# Defense Exhibit 9-273

| Statute | Guideline |
|---------|-----------|
| 16 U.S.C. § 689b | 2B2.3 |
| 16 U.S.C. § 692a | 2B2.3 |
| 16 U.S.C. § 694a | 2B2.3 |
| 16 U.S.C. § 703 | 2Q2.1 |
| 16 U.S.C. § 707 | 2Q2.1 |
| 16 U.S.C. § 831t(a) | 2B1.1 |
| 16 U.S.C. § 831t(b) | 2F1.1 |
| 16 U.S.C. § 831t(c) | 2F1.1, 2X1.1 |
| 16 U.S.C. § 1029 | 2A2.2, 2A2.3, 2Q2.1, 2Q2.2 |
| 16 U.S.C. § 1030 | 2A2.2, 2A2.3, 2Q2.1, 2Q2.2 |
| 16 U.S.C. § 1174(a) | 2Q2.1 |
| 16 U.S.C. § 1338(a) | 2Q2.1 |
| 16 U.S.C. § 1375(b) | 2Q2.1 |
| 16 U.S.C. § 1540(b) | 2Q2.1 |
| 16 U.S.C. § 1857(1)(D) | 2A2.3 |
| 16 U.S.C. § 1857(1)(E) | 2A2.2, 2A2.3 |
| 16 U.S.C. § 1857(1)(F) | 2A2.3 |
| 16 U.S.C. § 1857(1)(H) | 2A2.2, 2A2.3 |
| 16 U.S.C. §1857(2) | 2Q2.2 |
| 16 U.S.C. § 1859 | 2A2.2, 2A2.3, 2Q2.2 |
| 16 U.S.C. § 2435(4) | 2A2.3 |
| 16 U.S.C. § 2435(5) | 2A2.2, 2A2.3 |
| 16 U.S.C. § 2435(6) | 2A2.2, 2A2.3 |
| 16 U.S.C. § 2435(7) | 2A2.2, 2A2.3 |
| 16 U.S.C. § 2438 | 2A2.2, 2A2.3 |

October, 1987

# Defense Exhibit 9-274

| Statute | Guideline |
|---|---|
| 16 U.S.C. § 3373(d) | 2Q2.2 |
| 17 U.S.C. § 506(a) | 2B5.3 |
| 18 U.S.C. § 2 | 2X2.1 |
| 18 U.S.C. § 3 | 2X3.1 |
| 18 U.S.C. § 4 | 2X4.1 |
| 18 U.S.C. § 32(a)(1)-(4) | 2K1.4, 2B1.3 |
| 18 U.S.C. § 32(b) | 2A1.1-2A2.3,  2A4.1,  2A5.1-2A5.2, 2K1.4, 2B1.3 |
| 18 U.S.C. § 32(c) | 2A6.1 |
| 18 U.S.C. § 33 | 2B1.3, 2K1.4 |
| 18 U.S.C. § 81 | 2K1.4 |
| 18 U.S.C. § 111 | 2A2.2, 2A2.3 |
| 18 U.S.C. § 112(a) | 2A2.1, 2A2.2, 2A2.3 |
| 18 U.S.C. § 113(a) | 2A2.1, 2A3.1 |
| 18 U.S.C. § 113(b) | 2A2.2 |
| 18 U.S.C. § 113(c) | 2A2.2 |
| 18 U.S.C. § 113(d) | 2A2.3 |
| 18 U.S.C. § 113(e) | 2A2.3 |
| 18 U.S.C. § 113(f) | 2A2.2 |
| 18 U.S.C. § 114 | 2A2.2 |
| 18 U.S.C. § 115(a) | 2A1.1, 2A1.2, 2A1.3, 2A2.1, 2A2.2, 2A2.3,  2A4.1, 2A6.1 |
| 18 U.S.C. § 115(b)(1) | 2A2.1, 2A2.2, 2A2.3 |
| 18 U.S.C. § 115(b)(2) | 2A4.1 |
| 18 U.S.C. § 115(b)(3) | 2A1.1, 2A1.2, 2A2.1 |
| 18 U.S.C. § 115(b)(4) | 2A6.1 |

A.7                                                    October, 1987

# Defense Exhibit 9-275

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 152 | 2F1.1, 2B4.1 |
| 18 U.S.C. § 153 | 2B1.1, 2F1.1 |
| 18 U.S.C. § 155 | 2F1.1 |
| 18 U.S.C. § 201(b)(1) | 2C1.1, 2J1.3, 2J1.8, 2J1.9 |
| 18 U.S.C. § 201(b)(2) | 2C1.1 |
| 18 U.S.C. § 201(b)(3) | 2J1.8 |
| 18 U.S.C. § 201(b)(4) | 2J1.8 |
| 18 U.S.C. § 201(c)(1) | 2C1.2 |
| 18 U.S.C. § 201(c)(2) | 2J1.9 |
| 18 U.S.C. § 201(c)(3) | 2J1.9 |
| 18 U.S.C. § 203 | 2C1.3 |
| 18 U.S.C. § 204 | 2C1.3 |
| 18 U.S.C. § 205 | 2C1.3 |
| 18 U.S.C. § 207 | 2C1.3 |
| 18 U.S.C. § 208 | 2C1.3 |
| 18 U.S.C. § 209 | 2C1.4 |
| 18 U.S.C. § 210 | 2C1.5 |
| 18 U.S.C. § 211 | 2C1.5 |
| 18 U.S.C. § 212 | 2C1.6 |
| 18 U.S.C. § 213 | 2C1.6 |
| 18 U.S.C. § 214 | 2C1.6 |
| 18 U.S.C. § 215 | 2B4.1 |
| 18 U.S.C. § 217 | 2C1.6 |
| 18 U.S.C. § 224 | 2B4.1 |
| 18 U.S.C. § 241 | 2H1.1, 2H1.2, 2H2.1 |

A.8                                                                October, 1987

# Defense Exhibit 9-276

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 242 | 2H1.4, 2H2.1 |
| 18 U.S.C. § 245(b) | 2H1.3, 2H2.1 |
| 18 U.S.C. § 246 | 2H1.5 |
| 18 U.S.C. § 285 | 2B1.1, 2F1.1 |
| 18 U.S.C. § 286 | 2F1.1 |
| 18 U.S.C. § 287 | 2F1.1 |
| 18 U.S.C. § 288 | 2F1.1 |
| 18 U.S.C. § 289 | 2F1.1 |
| 18 U.S.C. § 290 | 2F1.1 |
| 18 U.S.C. § 291 | 2C1.3, 2F1.1 |
| 18 U.S.C. § 342 | 2D2.3 |
| 18 U.S.C. § 351(a) | 2A1.1, 2A1.2, 2A1.3, 2A1.4 |
| 18 U.S.C. § 351(b) | 2A1.1, 2A4.1 |
| 18 U.S.C. § 351(c) | 2A2.1, 2A4.1 |
| 18 U.S.C. § 351(d) | 2A2.1, 2A4.1 |
| 18 U.S.C. § 351(e) | 2A2.2, 2A2.3 |
| 18 U.S.C. § 371 | 2T1.9, 2X1.1 |
| 18 U.S.C. § 372 | 2X1.1 |
| 18 U.S.C. § 373 | 2A2.1, 2X1.1 |
| 18 U.S.C. § 401 | 2J1.1 |
| 18 U.S.C. § 402 | 2J1.1 |
| 18 U.S.C. § 437 | 2C1.3 |
| 18 U.S.C. § 440 | 2C1.3 |
| 18 U.S.C. § 442 | 2C1.3 |
| 18 U.S.C. § 471 | 2B5.1, 2B5.2 |

A.9

October, 1987

# Defense Exhibit 9-277

| Statute | Guideline |
|---------|-----------|
| 18 U.S.C. § 472 | 2B5.1, 2B5.2 |
| 18 U.S.C. § 473 | 2B5.1, 2B5.2 |
| 18 U.S.C. § 474 | 2B5.1 |
| 18 U.S.C. § 476 | 2B5.1 |
| 18 U.S.C. § 477 | 2B5.1 |
| 18 U.S.C. § 478 | 2B5.2 |
| 18 U.S.C. § 479 | 2B5.2 |
| 18 U.S.C. § 480 | 2B5.2 |
| 18 U.S.C. § 481 | 2B5.2 |
| 18 U.S.C. § 482 | 2B5.2 |
| 18 U.S.C. § 483 | 2B5.2 |
| 18 U.S.C. § 484 | 2B5.1, 2B5.2 |
| 18 U.S.C. § 485 | 2B5.1, 2B5.2 |
| 18 U.S.C. § 486 | 2B5.1, 2B5.2 |
| 18 U.S.C. § 487 | 2B5.1 |
| 18 U.S.C. § 488 | 2B5.2 |
| 18 U.S.C. § 490 | 2B5.1 |
| 18 U.S.C. § 491 | 2F1.1 |
| 18 U.S.C. § 493 | 2B5.1, 2B5.2 |
| 18 U.S.C. § 494 | 2B5.2 |
| 18 U.S.C. § 495 | 2F1.1 |
| 18 U.S.C. § 496 | 2T3.1 |
| 18 U.S.C. § 497 | 2B5.2 |
| 18 U.S.C. § 498 | 2B5.2 |
| 18 U.S.C. § 499 | 2B5.2 |

A.10

October, 1987

# Defense Exhibit 9-278

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 500 | 2B1.1, 2B5.1, 2B5.2 |
| 18 U.S.C. § 501 | 2B5.1, 2F1.1 |
| 18 U.S.C. § 502 | 2B5.2 |
| 18 U.S.C. § 503 | 2B5.2 |
| 18 U.S.C. § 505 | 2B5.2, 2J1.2 |
| 18 U.S.C. § 506 | 2B5.2 |
| 18 U.S.C. § 507 | 2B5.2 |
| 18 U.S.C. § 508 | 2B5.2 |
| 18 U.S.C. § 509 | 2B5.2 |
| 18 U.S.C. § 510(a) | 2B5.1 |
| 18 U.S.C. § 511 | 2B6.1 |
| 18 U.S.C. § 513 | 2B5.2 |
| 18 U.S.C. § 541 | 2T3.1 |
| 18 U.S.C. § 542 | 2T3.1 |
| 18 U.S.C. § 543 | 2T3.1 |
| 18 U.S.C. § 544 | 2T3.1 |
| 18 U.S.C. § 545 | 2Q2.2, 2T3.1, 2T3.2 |
| 18 U.S.C. § 547 | 2T3.1, 2T3.2 |
| 18 U.S.C. § 548 | 2T3.1 |
| 18 U.S.C. § 549 | 2T3.1 |
| 18 U.S.C. § 550 | 2T3.1 |
| 18 U.S.C. § 551 | 2T3.1 |
| 18 U.S.C. § 552 | 2G3.1 |
| 18 U.S.C. § 553(a)(1) | 2B1.2 |
| 18 U.S.C. § 553(a)(2) | 2B1.2, 2B6.1 |

A.11                                          October, 1987

**Defense Exhibit 9-279**

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 592 | 2H2.1 |
| 18 U.S.C. § 593 | 2H2.1 |
| 18 U.S.C. § 594 | 2H2.1 |
| 18 U.S.C. § 597 | 2H2.1 |
| 18 U.S.C. § 641 | 2B1.1, 2B1.2 |
| 18 U.S.C. § 642 | 2B5.1 |
| 18 U.S.C. § 643 | 2B1.1 |
| 18 U.S.C. § 644 | 2B1.1 |
| 18 U.S.C. § 645 | 2B1.1 |
| 18 U.S.C. § 646 | 2B1.1 |
| 18 U.S.C. § 648 | 2B1.1 |
| 18 U.S.C. § 649 | 2B1.1 |
| 18 U.S.C. § 651 | 2B1.1 |
| 18 U.S.C. § 652 | 2B1.1 |
| 18 U.S.C. § 653 | 2B1.1 |
| 18 U.S.C. § 654 | 2B1.1 |
| 18 U.S.C. § 655 | 2B1.1 |
| 18 U.S.C. § 656 | 2B1.1 |
| 18 U.S.C. § 657 | 2B1.1 |
| 18 U.S.C. § 658 | 2B1.1 |
| 18 U.S.C. § 659 | 2B1.1, 2B1.2, 2F1.1 |
| 18 U.S.C. § 660 | 2B1.1 |
| 18 U.S.C. § 661 | 2B1.1 |
| 18 U.S.C. § 662 | 2B1.2 |
| 18 U.S.C. § 663 | 2F1.1, 2B1.1 |

A.12    October, 1987

# Defense Exhibit 9-280

| Statute | Guideline |
|---------|-----------|
| 18 U.S.C. § 664 | 2E5.2 |
| 18 U.S.C. § 665(a) | 2B1.1, 2F1.1 |
| 18 U.S.C. § 665(c) | 2J1.2 |
| 18 U.S.C. § 666(a) | 2B1.1, 2C1.1, 2C1.2, 2F1.1 |
| 18 U.S.C. § 751 | 2P1.1 |
| 18 U.S.C. § 752 | 2P1.1 |
| 18 U.S.C. § 755 | 2P1.1, 2X2.1 |
| 18 U.S.C. § 756 | 2P1.1, 2X2.1 |
| 18 U.S.C. § 757 | 2P1.1, 2X2.1 |
| 18 U.S.C. § 793(a)-(c) | 2M3.2 |
| 18 U.S.C. § 793(d),(e) | 2M3.3 |
| 18 U.S.C. § 793(f) | 2M3.4 |
| 18 U.S.C. § 793(g) | 2M3.2, 2M3.3 |
| 18 U.S.C. § 794 | 2M3.1 |
| 18 U.S.C. § 798 | 2M3.3, 2M3.6 |
| 18 U.S.C. § 831 | 2M6.1 |
| 18 U.S.C. § 842(a),(h),(i) | 2K1.3 |
| 18 U.S.C. § 842(j) | 2K1.2 |
| 18 U.S.C. § 842(k) | 2K1.1 |
| 18 U.S.C. § 844(a) | 2K1.3 |
| 18 U.S.C. § 844(b) | 2K1.1, 2K1.2, 2K1.3 |
| 18 U.S.C. § 844(d) | 2K1.6 |
| 18 U.S.C. § 844(e) | 2A6.1 |
| 18 U.S.C. § 844(f) | 2K1.4 |
| 18 U.S.C. § 844(h) | 2K1.4, 2K1.6 |

A.13                                                    October, 1987

# Defense Exhibit 9-281

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 844(i) | 2K1.4 |
| 18 U.S.C. § 871 | 2A6.1 |
| 18 U.S.C. § 872 | 2C1.1 |
| 18 U.S.C. § 873 | 2B3.3 |
| 18 U.S.C. § 875(a) | 2A4.2, 2B3.2 |
| 18 U.S.C. § 875(b) | 2B3.2 |
| 18 U.S.C. § 875(c) | 2A6.1 |
| 18 U.S.C. § 875(d) | 2B3.2, 2B3.3 |
| 18 U.S.C. § 876 | 2A4.2, 2A6.1, 2B3.2, 2B3.3 |
| 18 U.S.C. § 877 | 2A4.2, 2A6.1, 2B3.2, 2B3.3 |
| 18 U.S.C. § 878(a) | 2A6.1 |
| 18 U.S.C. § 878(b) | 2B3.2 |
| 18 U.S.C. § 879 | 2A6.1 |
| 18 U.S.C. § 892 | 2E2.1 |
| 18 U.S.C. § 893 | 2E2.1 |
| 18 U.S.C. § 894 | 2E2.1 |
| 18 U.S.C. § 912 | 2J1.4 |
| 18 U.S.C. § 913 | 2J1.4 |
| 18 U.S.C. § 922(a)(1)-(5) | 2K2.3 |
| 18 U.S.C. § 922(a)(6) | 2K2.1 |
| 18 U.S.C. § 922(b)(1)-(3) | 2K2.3 |
| 18 U.S.C. § 922(d) | 2K2.3 |
| 18 U.S.C. § 922(g) | 2K2.1 |
| 18 U.S.C. § 922(h) | 2K2.1 |
| 18 U.S.C. § 922(i) | 2B1.2, 2K2.3 |

A.14

October, 1987

**Defense Exhibit 9-282**

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 922(j) | 2B1.2, 2K2.3 |
| 18 U.S.C. § 922(k) | 2K2.3 |
| 18 U.S.C. § 922(1) | 2K2.3 |
| 18 U.S.C. § 924(c) | 2K2.4 |
| 18 U.S.C. § 929(a) | 2K2.4 |
| 18 U.S.C. § 1001 | 2F1.1 |
| 18 U.S.C. § 1002 | 2F1.1 |
| 18 U.S.C. § 1003 | 2B5.1, 2B5.2, 2F1.1 |
| 18 U.S.C. § 1004 | 2F1.1 |
| 18 U.S.C. § 1005 | 2F1.1, 2S1.3 |
| 18 U.S.C. § 1006 | 2F1.1, 2S1.3 |
| 18 U.S.C. § 1007 | 2F1.1, 2S1.3 |
| 18 U.S.C. § 1008 | 2F1.1, 2S1.3 |
| 18 U.S.C. § 1010 | 2B5.2, 2F1.1 |
| 18 U.S.C. § 1011 | 2F1.1 |
| 18 U.S.C. § 1012 | 2F1.1 |
| 18 U.S.C. § 1013 | 2F1.1 |
| 18 U.S.C. § 1014 | 2F1.1 |
| 18 U.S.C. § 1016 | 2F1.1 |
| 18 U.S.C. § 1017 | 2F1.1 |
| 18 U.S.C. § 1018 | 2F1.1 |
| 18 U.S.C. § 1019 | 2F1.1 |
| 18 U.S.C. § 1020 | 2F1.1 |
| 18 U.S.C. § 1021 | 2F1.1 |
| 18 U.S.C. § 1022 | 2F1.1 |

A.15

October, 1987

# Defense Exhibit 9-283

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 1025 | 2F1.1 |
| 18 U.S.C. § 1026 | 2F1.1 |
| 18 U.S.C. § 1027 | 2E5.3 |
| 18 U.S.C. § 1028 | 2F1.1 |
| 18 U.S.C. § 1029 | 2F1.1 |
| 18 U.S.C. § 1071 | 2X3.1 |
| 18 U.S.C. § 1072 | 2X3.1 |
| 18 U.S.C. § 1082 | 2E3.3 |
| 18 U.S.C. § 1084 | 2E3.2 |
| 18 U.S.C. § 1111(a) | 2A1.1, 2A1.2 |
| 18 U.S.C. § 1112 | 2A1.3, 2A1.4 |
| 18 U.S.C. § 1113 | 2A2.1 |
| 18 U.S.C. § 1114 | 2A1.1, 2A1.2, 2A1.3, 2A1.4, 2A2.1 |
| 18 U.S.C. § 1116 | 2A1.1, 2A1.2, 2A1.3, 2A1.4, 2A2.1 |
| 18 U.S.C. § 1117 | 2A2.1 |
| 18 U.S.C. § 1153 | 2A1.1, 2A1.2, 2A1.3, 2A1.4, 2A2.1, 2A2.2, 2A3.1, 2A3.2, 2A3.3, 2A3.4, 2A4.1, 2B1.1, 2B2.1,2B2.2, 2B3.1, 2K1.4 |
| 18 U.S.C. § 1163 | 2B1.1, 2B1.2 |
| 18 U.S.C. § 1164 | 2B1.3 |
| 18 U.S.C. § 1165 | 2B2.3 |
| 18 U.S.C. § 1201(a) | 2A4.1 |
| 18 U.S.C. § 1202 | 2A4.2 |
| 18 U.S.C. § 1203 | 2A4.1 |
| 18 U.S.C. § 1301 | 2E3.3 |
| 18 U.S.C. § 1302 | 2E3.3 |

A.16                                                    October, 1987

# Defense Exhibit 9-284

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 1303 | 2E3.3 |
| 18 U.S.C. § 1304 | 2E3.3 |
| 18 U.S.C. § 1306 | 2E3.3 |
| 18 U.S.C. § 1341 | 2F1.1 |
| 18 U.S.C. § 1342 | 2F1.1 |
| 18 U.S.C. § 1343 | 2F1.1 |
| 18 U.S.C. § 1344 | 2F1.1 |
| 18 U.S.C. § 1361 | 2B1.3 |
| 18 U.S.C. § 1362 | 2B1.3 |
| 18 U.S.C. § 1363 | 2B1.3 |
| 18 U.S.C. § 1365(a) | 2N1.1 |
| 18 U.S.C. § 1365(b) | 2N1.3 |
| 18 U.S.C. § 1365(c) | 2N1.2 |
| 18 U.S.C. § 1365(d) | 2N1.2 |
| 18 U.S.C. § 1365(e) | 2N1.1 |
| 18 U.S.C. § 1366 | 2B1.3 |
| 18 U.S.C. § 1382 | 2B2.3 |
| 18 U.S.C. § 1423 | 2L2.2 |
| 18 U.S.C. § 1424 | 2L2.2 |
| 18 U.S.C. § 1425 | 2L2.1, 2L2.2 |
| 18 U.S.C. § 1426 | 2L2.1 |
| 18 U.S.C. § 1427 | 2L2.1 |
| 18 U.S.C. § 1428 | 2L2.5 |
| 18 U.S.C. § 1429 | 2J1.1 |
| 18 U.S.C. § 1461 | 2G3.1 |

A.17                                                        October, 1987

# Defense Exhibit 9-285

| Statute | Guideline |
|---------|-----------|
| 18 U.S.C. § 1462 | 2G3.1 |
| 18 U.S.C. § 1463 | 2G3.1 |
| 18 U.S.C. § 1464 | 2G3.1 |
| 18 U.S.C. § 1465 | 2G3.1 |
| 18 U.S.C. § 1503 | 2J1.2 |
| 18 U.S.C. § 1504 | 2J1.2 |
| 18 U.S.C. § 1505 | 2J1.2 |
| 18 U.S.C. § 1506 | 2J1.2 |
| 18 U.S.C. § 1507 | 2J1.2 |
| 18 U.S.C. § 1508 | 2J1.2 |
| 18 U.S.C. § 1509 | 2J1.2 |
| 18 U.S.C. § 1510 | 2J1.2 |
| 18 U.S.C. § 1511 | 2E3.3, 2J1.2 |
| 18 U.S.C. § 1512 | 2J1.2 |
| 18 U.S.C. § 1513 | 2J1.2 |
| 18 U.S.C. § 1542 | 2L2.3, 2L2.4 |
| 18 U.S.C. § 1543 | 2L2.4 |
| 18 U.S.C. § 1544 | 2L2.3, 2L2.4 |
| 18 U.S.C. § 1546 | 2L2.1, 2L2.2 |
| 18 U.S.C. § 1581 | 2H4.1 |
| 18 U.S.C. § 1582 | 2H4.1 |
| 18 U.S.C. § 1583 | 2H4.1 |
| 18 U.S.C. § 1584 | 2H4.1 |
| 18 U.S.C. § 1585 | 2H4.1 |
| 18 U.S.C. § 1586 | 2H4.1 |

A.18

October, 1987

**Defense Exhibit 9-286**

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 1587 | 2H4.1 |
| 18 U.S.C. § 1588 | 2H4.1 |
| 18 U.S.C. § 1621 | 2J1.3 |
| 18 U.S.C. § 1622 | 2J1.3 |
| 18 U.S.C. § 1623 | 2J1.3 |
| 18 U.S.C. § 1701 | 2B1.1, 2H3.3 |
| 18 U.S.C. § 1702 | 2B1.1, 2B1.3, 2H3.3 |
| 18 U.S.C. § 1703 | 2B1.1, 2B1.3, 2H3.3 |
| 18 U.S.C. § 1704 | 2B1.1, 2B5.2 |
| 18 U.S.C. § 1705 | 2B1.3 |
| 18 U.S.C. § 1706 | 2B1.3 |
| 18 U.S.C. § 1707 | 2B1.1 |
| 18 U.S.C. § 1708 | 2B1.1, 2B1.2, 2F1.1 |
| 18 U.S.C. § 1709 | 2B1.1 |
| 18 U.S.C. § 1710 | 2B1.1 |
| 18 U.S.C. § 1711 | 2B1.1 |
| 18 U.S.C. § 1712 | 2F1.1 |
| 18 U.S.C. § 1721 | 2B1.1 |
| 18 U.S.C. § 1726 | 2F1.1 |
| 18 U.S.C. § 1728 | 2F1.1 |
| 18 U.S.C. § 1735 | 2G3.1 |
| 18 U.S.C. § 1737 | 2G3.1 |
| 18 U.S.C. § 1751(a) | 2A1.1, 2A1.2, 2A1.3, 2A1.4 |
| 18 U.S.C. § 1751(b) | 2A4.1 |
| 18 U.S.C. § 1751(c) | 2A2.1, 2A4.1 |

A.19                                                October, 1987

# Defense Exhibit 9-287

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 1751(d) | 2A2.1, 2A4.1 |
| 18 U.S.C. § 1751(e) | 2A2.2, 2A2.3 |
| 18 U.S.C. § 1752 | 2B2.3 |
| 18 U.S.C. § 1791 | 2P1.2 |
| 18 U.S.C. § 1792 | 2P1.3 |
| 18 U.S.C. § 1793 | 2P1.4 |
| 18 U.S.C. § 1851 | 2B1.1 |
| 18 U.S.C. § 1852 | 2B1.1, 2B1.2, 2B1.3 |
| 18 U.S.C. § 1853 | 2B1.1, 2B1.3 |
| 18 U.S.C. § 1854 | 2B1.1, 2B1.2, 2B1.3, 2B2.3 |
| 18 U.S.C. § 1855 | 2K1.4 |
| 18 U.S.C. § 1856 | 2B1.3 |
| 18 U.S.C. § 1857 | 2B1.3, 2B2.3 |
| 18 U.S.C. § 1863 | 2B2.3 |
| 18 U.S.C. § 1901 | 2C1.3 |
| 18 U.S.C. § 1902 | 2F1.2 |
| 18 U.S.C. § 1903 | 2C1.3 |
| 18 U.S.C. § 1905 | 2H3.1 |
| 18 U.S.C. § 1909 | 2C1.4 |
| 18 U.S.C. § 1915 | 2T3.1 |
| 18 U.S.C. § 1919 | 2F1.1 |
| 18 U.S.C. § 1920 | 2F1.1 |
| 18 U.S.C. § 1923 | 2F1.1 |
| 18 U.S.C. § 1951 | 2B3.1, 2B3.2, 2C1.1, 2E1.5 |
| 18 U.S.C. § 1952 | 2E1.2 |

A.20                                                      October, 1987

# Defense Exhibit 9-288

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 1952A | 2A2.1, 2E1.4 |
| 18 U.S.C. § 1952B | 2E1.3 |
| 18 U.S.C. § 1953 | 2E3.3 |
| 18 U.S.C. § 1954 | 2E5.1 |
| 18 U.S.C. § 1955 | 2E3.1 |
| 18 U.S.C. § 1956 | 2S1.1 |
| 18 U.S.C. § 1957 | 2S1.2 |
| 18 U.S.C. § 1962 | 2E1.1 |
| 18 U.S.C. § 1963 | 2E1.1 |
| 18 U.S.C. § 2073 | 2F1.1 |
| 18 U.S.C. § 2111 | 2B3.1 |
| 18 U.S.C. § 2112 | 2B3.1 |
| 18 U.S.C. § 2113(a) | 2B1.1, 2B3.1 |
| 18 U.S.C. § 2113(b) | 2B1.1 |
| 18 U.S.C. § 2113(c) | 2B1.1, 2B1.2 |
| 18 U.S.C. § 2113(d) | 2B3.1 |
| 18 U.S.C. § 2113(e) | 2A1.1, 2B3.1 |
| 18 U.S.C. § 2114 | 2B3.1 |
| 18 U.S.C. § 2115 | 2B2.2 |
| 18 U.S.C. § 2116 | 2A2.2, 2A2.3, 2B2.2, 2B3.1 |
| 18 U.S.C. § 2117 | 2B2.2 |
| 18 U.S.C. § 2118(a) | 2B3.1 |
| 18 U.S.C. § 2118(b) | 2B2.2 |
| 18 U.S.C. § 2118(c)(1) | 2A2.1, 2A2.2, 2B3.1 |
| 18 U.S.C. § 2118(c)(2) | 2A1.1 |

A.21

October, 1987

# Defense Exhibit 9-289

| Statute | Guideline |
|---------|-----------|
| 18 U.S.C. § 2153 | 2M2.1 |
| 18 U.S.C. § 2154 | 2M2.2 |
| 18 U.S.C. § 2155 | 2M2.3 |
| 18 U.S.C. § 2156 | 2M2.4 |
| 18 U.S.C. § 2199 | 2B1.1, 2B2.3 |
| 18 U.S.C. § 2231 | 2A2.2, 2A2.3 |
| 18 U.S.C. § 2241 | 2A3.1 |
| 18 U.S.C. § 2242 | 2A3.1 |
| 18 U.S.C. § 2243(a) | 2A3.2 |
| 18 U.S.C. § 2243(b) | 2A3.3 |
| 18 U.S.C. § 2244 | 2A3.4 |
| 18 U.S.C. § 2251 | 2G2.1 |
| 18 U.S.C. § 2252 | 2G2.2 |
| 18 U.S.C. § 2271 | 2F1.1, 2X1.1 |
| 18 U.S.C. § 2275 | 2K1.4, 2B1.3 |
| 18 U.S.C. § 2312 | 2B1.1, 2B1.2 |
| 18 U.S.C. § 2313 | 2B1.1, 2B1.2 |
| 18 U.S.C. § 2314 | 2B1.1, 2B1.2, 2B5.1, 2B5.2, 2F1.1 |
| 18 U.S.C. § 2315 | 2B1.1, 2B1.2, 2B5.1, 2B5.2, 2F1.1 |
| 18 U.S.C. § 2316 | 2B1.1, 2B1.2 |
| 18 U.S.C. § 2317 | 2B1.1, 2B1.2 |
| 18 U.S.C. § 2318 | 2B5.4 |
| 18 U.S.C. § 2319 | 2B5.3 |
| 18 U.S.C. § 2320 | 2B5.4 |

October, 1987

**Defense Exhibit 9-290**

| Statute | Guideline |
|---|---|
| 18 U.S.C. § 2321 | 2B6.1 |
| 18 U.S.C. § 2342(a) | 2E4.1 |
| 18 U.S.C. § 2344(a) | 2E4.1 |
| 18 U.S.C. § 2381 | 2M1.1 |
| 18 U.S.C. § 2421 | 2G1.1 |
| 18 U.S.C. § 2422 | 2G1.1 |
| 18 U.S.C. § 2423 | 2G1.2 |
| 18 U.S.C. § 2511 | 2B5.3, 2H3.1 |
| 18 U.S.C. § 2512 | 2H3.2 |
| 18 U.S.C. § 3146(b)(1)(A) | 2J1.6 |
| 18 U.S.C. § 3146(b)(1)(B) | 2J1.5 |
| 18 U.S.C. § 3147 | 2J1.7 |
| 19 U.S.C. § 283 | 2T3.1 |
| 19 U.S.C. §1433 | 2T3.1 |
| 19 U.S.C. § 1434 | 2F1.1, 2T3.1 |
| 19 U.S.C. § 1435 | 2F1.1, 2T3.1 |
| 19 U.S.C. § 1436 | 2F1.1, 2T3.1 |
| 19 U.S.C. § 1464 | 2T3.1, 2T3.2 |
| 19 U.S.C. § 1465 | 2T3.1 |
| 19 U.S.C. § 1586(e) | 2T3.1 |
| 19 U.S.C. § 1707 | 2T3.1 |
| 19 U.S.C. § 1708(b) | 2T3.1 |
| 19 U.S.C. § 1919 | 2F1.1 |
| 19 U.S.C. § 2316 | 2F1.1 |
| 20 U.S.C. § 1097(a) | 2B1.1, 2B5.2, 2F1.1 |

A.23

October, 1987

**Defense Exhibit 9-291**

| Statute | Guideline |
|---|---|
| 20 U.S.C. § 1097(b) | 2F1.1 |
| 21 U.S.C. § 101 | 2N2.1 |
| 21 U.S.C. § 102 | 2N2.1 |
| 21 U.S.C. § 103 | 2N2.1 |
| 21 U.S.C. § 104 | 2N2.1 |
| 21 U.S.C. § 105 | 2N2.1 |
| 21 U.S.C. § 111 | 2N2.1 |
| 21 U.S.C. § 115 | 2N2.1 |
| 21 U.S.C. § 117 | 2N2.1 |
| 21 U.S.C. § 120 | 2N2.1 |
| 21 U.S.C. § 121 | 2N2.1 |
| 21 U.S.C. § 122 | 2N2.1 |
| 21 U.S.C. § 124 | 2N2.1 |
| 21 U.S.C. § 126 | 2N2.1 |
| 21 U.S.C. § 134a-e | 2N2.1 |
| 21 U.S.C. § 135a | 2N2.1 |
| 21 U.S.C. § 141 | 2N2.1 |
| 21 U.S.C. § 143 | 2N2.1 |
| 21 U.S.C. § 144 | 2N2.1 |
| 21 U.S.C. § 145 | 2N2.1 |
| 21 U.S.C. § 151 | 2N2.1 |
| 21 U.S.C. § 152 | 2N2.1 |
| 21 U.S.C. § 153 | 2N2.1 |
| 21 U.S.C. § 154 | 2N2.1 |
| 21 U.S.C. § 155 | 2N2.1 |

October, 1987

# Defense Exhibit 9-292

| Statute | Guideline |
|---------|-----------|
| 21 U.S.C. § 156 | 2N2.1 |
| 21 U.S.C. § 157 | 2N2.1 |
| 21 U.S.C. § 158 | 2N2.1 |
| 21 U.S.C. § 331 | 2N2.1 |
| 21 U.S.C. § 333 | 2N2.1 |
| 21 U.S.C. § 458 | 2N2.1 |
| 21 U.S.C. § 459 | 2N2.1 |
| 21 U.S.C. § 460 | 2N2.1 |
| 21 U.S.C. § 461 | 2N2.1 |
| 21 U.S.C. § 463 | 2N2.1 |
| 21 U.S.C. § 466 | 2N2.1 |
| 21 U.S.C. § 610 | 2N2.1 |
| 21 U.S.C. § 611 | 2N2.1 |
| 21 U.S.C. § 614 | 2N2.1 |
| 21 U.S.C. § 617 | 2N2.1 |
| 21 U.S.C. § 619 | 2N2.1 |
| 21 U.S.C. § 620 | 2N2.1 |
| 21 U.S.C. § 622 | 2C1.1 |
| 21 U.S.C. § 642 | 2N2.1 |
| 21 U.S.C. § 643 | 2N2.1 |
| 21 U.S.C. § 644 | 2N2.1 |
| 21 U.S.C. § 675 | 2A1.1, 2A1.2, 2A1.3, 2A1.4, 2A2.1, 2A2.2, 2A2.3 |
| 21 U.S.C. § 676 | 2N2.1 |
| 21 U.S.C. § 841(a) | 2D1.1 |
| 21 U.S.C. § 841(b)(1)-(3) | 2D1.1 |

A.25                                        October, 1987

# Defense Exhibit 9-293

| Statute | Guideline |
|---------|-----------|
| 21 U.S.C. § 841(b)(4) | 2D2.1 |
| 21 U.S.C. § 841(d) | 2D1.1 |
| 21 U.S.C. § 841(e) | 2D1.9 |
| 21 U.S.C. § 842(a) | 2D3.1, 2D3.2, 2D3.3 |
| 21 U.S.C. § 842(b) | 2D3.2 |
| 21 U.S.C. § 843(a)(1),(2),(4) | 2D3.1 |
| 21 U.S.C. § 843(a)(3) | 2D2.2 |
| 21 U.S.C. § 843(b) | 2D1.6 |
| 21 U.S.C. § 844(a) | 2D2.1 |
| 21 U.S.C. § 845 | 2D1.3 |
| 21 U.S.C. § 845a | 2D1.3 |
| 21 U.S.C. § 845b | 2D1.2 |
| 21 U.S.C. § 846 | 2D1.4 |
| 21 U.S.C. § 848 | 2D1.5 |
| 21 U.S.C. § 856 | 2D1.8 |
| 21 U.S.C. § 857 | 2D1.7 |
| 21 U.S.C. § 952 | 2D1.1 |
| 21 U.S.C. § 953 | 2D1.1 |
| 21 U.S.C. § 954 | 2D3.4 |
| 21 U.S.C. § 955 | 2D1.1 |
| 21 U.S.C. § 955a(a)-(d) | 2D1.1 |
| 21 U.S.C. § 957 | 2D1.1 |
| 21 U.S.C. § 959 | 2D1.1 |
| 21 U.S.C. § 960 | 2D1.1 |
| 21 U.S.C. § 961 | 2D3.4 |

A.26                                                    October, 1987

# Defense Exhibit 9-294

| Statute | Guideline |
|---------|-----------|
| 21 U.S.C. § 963 | 2D1.4 |
| 22 U.S.C. § 1980(g) | 2F1.1 |
| 22 U.S.C. § 2778 | 2M5.2 |
| 22 U.S.C. § 4217 | 2B1.1 |
| 22 U.S.C. § 4221 | 2B5.2 |
| 25 U.S.C. § 450d | 2B1.1, 2F1.1 |
| 26 U.S.C. § 5148(1) | 2T2.1 |
| 26 U.S.C. § 5214(a)(1) | 2T2.1 |
| 26 U.S.C. § 5273(b)(2) | 2T2.1 |
| 26 U.S.C. § 5273(c) | 2T2.1 |
| 26 U.S.C. § 5291(a) | 2T2.1, 2T2.2 |
| 26 U.S.C. § 5601(a) | 2T2.1, 2T2.2 |
| 26 U.S.C. § 5602 | 2T2.1 |
| 26 U.S.C. § 5603 | 2T2.1, 2T2.2 |
| 26 U.S.C. § 5604(a) | 2T2.1, 2T2.2 |
| 26 U.S.C. § 5605 | 2T2.1, 2T2.2 |
| 26 U.S.C. § 5607 | 2T2.1 |
| 26 U.S.C. § 5608 | 2T2.1 |
| 26 U.S.C. § 5661 | 2T2.1, 2T2.2 |
| 26 U.S.C. § 5662 | 2T2.2 |
| 26 U.S.C. § 5671 | 2T2.1, 2T2.2 |
| 26 U.S.C. § 5684 | 2T2.1 |
| 26 U.S.C. § 5685 | 2K1.3, 2K1.6, 2K2.2 |
| 26 U.S.C. § 5691(a) | 2T2.1 |
| 26 U.S.C. § 5751(a)(1),(2) | 2T2.1 |

October, 1987

**Defense Exhibit 9-295**

| Statute | Guideline |
|---|---|
| 26 U.S.C. § 5752 | 2T2.2 |
| 26 U.S.C. § 5762(a)(1),(2),(4)-(6) | 2T2.2 |
| 26 U.S.C. § 5762(a)(3) | 2T2.1 |
| 26 U.S.C. § 5861(a) | 2K2.3 |
| 26 U.S.C. § 5861(b)-(1) | 2K2.2 |
| 26 U.S.C. § 5871 | 2K2.2, 2K2.3 |
| 26 U.S.C. § 7201 | 2T1.1 |
| 26 U.S.C. § 7202 | 2T1.6 |
| 26 U.S.C. § 7203 | 2T1.2 |
| 26 U.S.C. § 7204 | 2T1.8 |
| 26 U.S.C. § 7205 | 2T1.8 |
| 26 U.S.C. § 7206(1),(3),(4),(5) | 2T1.3 |
| 26 U.S.C. § 7206(2) | 2T1.4 |
| 26 U.S.C. § 7207 | 2T1.5 |
| 26 U.S.C. § 7210 | 2J1.1 |
| 26 U.S.C. § 7211 | 2T1.3 |
| 26 U.S.C. § 7214 | 2C1.1, 2C1.2, 2F1.1 |
| 26 U.S.C. § 7215 | 2T1.7 |
| 26 U.S.C. § 7269 | 2T1.2 |
| 26 U.S.C. § 7512(b) | 2T1.7 |
| 26 U.S.C. § 9012(e) | 2B4.1 |
| 26 U.S.C. § 9042(d) | 2B4.1 |
| 28 U.S.C. § 1826(c) | 2P1.1 |
| 28 U.S.C. § 2902(e) | 2P1.1 |
| 29 U.S.C. § 186 | 2E5.6 |

October, 1987

**Defense Exhibit 9-296**

| Statute | Guideline |
|---|---|
| 29 U.S.C. § 431 | 2E5.5 |
| 29 U.S.C. § 432 | 2E5.5 |
| 29 U.S.C. § 433 | 2E5.5 |
| 29 U.S.C. § 439 | 2E5.5 |
| 29 U.S.C. § 461 | 2E5.5 |
| 29 U.S.C. § 501(c) | 2E5.4 |
| 29 U.S.C. § 1141 | 2B3.2, 2F1.1 |
| 31 U.S.C. § 5313 | 2S1.3 |
| 31 U.S.C. § 5314 | 2S1.3 |
| 31 U.S.C. § 5316(a) | 2S1.3 |
| 31 U.S.C. § 5322 | 2S1.3 |
| 31 U.S.C. § 5324 | 2S1.3 |
| 33 U.S.C. § 403 | 2Q1.3 |
| 33 U.S.C. § 406 | 2Q1.3 |
| 33 U.S.C. § 407 | 2Q1.3 |
| 33 U.S.C. § 411 | 2Q1.3 |
| 33 U.S.C. § 506 | 2J1.1 |
| 33 U.S.C. § 1227(b) | 2J1.1 |
| 33 U.S.C. § 1232(b)(2) | 2A2.2, 2A2.3 |
| 33 U.S.C. § 1319 | 2Q1.1, 2Q1.2, 2Q1.3 |
| 33 U.S.C. § 1321 | 2Q1.2, 2Q1.3 |
| 33 U.S.C. § 1342 | 2Q1.2, 2Q1.3 |
| 33 U.S.C. § 1415(b) | 2Q1.3 |
| 33 U.S.C. § 1517 | 2Q1.2, 2Q1.3 |
| 33 U.S.C. § 1907 | 2Q1.3 |

A.29

October, 1987

# Defense Exhibit 9-297

| Statute | Guideline |
|---------|-----------|
| 33 U.S.C. § 1908 | 2Q1.3 |
| 38 U.S.C. § 787 | 2F1.1 |
| 38 U.S.C. § 3501(a) | 2B1.1 |
| 40 U.S.C. § 193e | 2B1.1, 2B1.3 |
| 41 U.S.C. § 51 | 2B4.1 |
| 41 U.S.C. § 53 | 2B4.1 |
| 41 U.S.C. § 54 | 2B4.1 |
| 42 U.S.C. § 261(a) | 2D1.1 |
| 42 U.S.C. § 262 | 2N2.1 |
| 42 U.S.C. § 300h-2 | 2Q1.2 |
| 42 U.S.C. § 408 | 2F1.1 |
| 42 U.S.C. § 1383(d)(2) | 2F1.1 |
| 42 U.S.C. § 1383a(a) | 2F1.1 |
| 42 U.S.C. § 1383a(b) | 2F1.1 |
| 42 U.S.C. § 1395nn(a) | 2F1.1 |
| 42 U.S.C. § 1395nn(b)(1) | 2B4.1 |
| 42 U.S.C. § 1395nn(b)(2) | 2B4.1 |
| 42 U.S.C. § 1396h(a) | 2F1.1 |
| 42 U.S.C. § 1396h(b)(1) | 2B4.1 |
| 42 U.S.C. § 1396h(b)(2) | 2B4.1 |
| 42 U.S.C. § 1713 | 2F1.1 |
| 42 U.S.C. § 1760(g) | 2B1.1, 2F1.1 |
| 42 U.S.C. § 1761(o)(1) | 2F1.1 |
| 42 U.S.C. § 1761(o)(2) | 2B1.1, 2F1.1 |
| 42 U.S.C. § 1973i(c) | 2H2.1 |

October, 1987

**Defense Exhibit 9-298**

| Statute | Guideline |
|---|---|
| 42 U.S.C. § 1973i(d) | 2H2.1 |
| 42 U.S.C. § 1973i(e) | 2H2.1 |
| 42 U.S.C. § 1973j(a) | 2H2.1 |
| 42 U.S.C. § 1973j(b) | 2H2.1 |
| 42 U.S.C. § 1973aa | 2H2.1 |
| 42 U.S.C. § 1973aa-1 | 2H2.1 |
| 42 U.S.C. § 1973aa-1a | 2H2.1 |
| 42 U.S.C. § 1973aa-3 | 2H2.1 |
| 42 U.S.C. § 1973bb | 2H2.1 |
| 42 U.S.C. § 1995 | 2J1.1 |
| 42 U.S.C. § 2000e-13 | 2A1.1, 2A1.2, 2A1.3, 2A1.4, 2A2.1, 2A2.2, 2A2.3 |
| 42 U.S.C. § 2000h | 2J1.1 |
| 42 U.S.C. § 2077 | 2M6.1 |
| 42 U.S.C. § 2122 | 2M6.1 |
| 42 U.S.C. § 2131 | 2M6.1 |
| 42 U.S.C. § 2272 | 2M6.1 |
| 42 U.S.C. § 2273 | 2M6.2 |
| 42 U.S.C. § 2274(a),(b) | 2M3.1 |
| 42 U.S.C. § 2275 | 2M3.1 |
| 42 U.S.C. § 2276 | 2M3.5 |
| 42 U.S.C. § 2283(a) | 2A1.1, 2A1.2, 2A1.3, 2A1.4 |
| 42 U.S.C. § 2283(b) | 2A2.2, 2A2.3 |
| 42 U.S.C. § 2284(a) | 2M2.1, 2M2.3 |
| 42 U.S.C. § 3220(a) | 2F1.1 |

October, 1987

# Defense Exhibit 9-299

| Statute | Guideline |
|---|---|
| 42 U.S.C. § 3220(b) | 2B1.1, 2F1.1 |
| 42 U.S.C. § 3426 | 2F1.1 |
| 42 U.S.C. § 3611(f) | 2J1.1 |
| 42 U.S.C. § 3631 | 2H1.3, 2H1.5 |
| 42 U.S.C. § 3791 | 2B1.1, 2F1.1 |
| 42 U.S.C. § 3792 | 2F1.1 |
| 42 U.S.C. § 3795 | 2B1.1, 2F1.1 |
| 42 U.S.C. § 4012 | 2Q1.3 |
| 42 U.S.C. § 4912 | 2Q1.3 |
| 42 U.S.C. § 5157(a) | 2F1.1 |
| 42 U.S.C. § 6928(d) | 2Q1.2 |
| 42 U.S.C. § 6928(e) | 2Q1.1 |
| 42 U.S.C. § 7413 | 2Q1.2, 2Q1.3 |
| 42 U.S.C. § 9603(b) | 2Q1.2 |
| 42 U.S.C. § 9603(c) | 2Q1.2 |
| 42 U.S.C. § 9603(d) | 2Q1.2 |
| 43 U.S.C. § 1350 | 2Q1.2 |
| 43 U.S.C. § 1816(a) | 2Q1.2 |
| 43 U.S.C. § 1822(b) | 2Q1.2 |
| 46 U.S.C. § 1276 | 2F1.1 |
| 46 U.S.C. App. § 1903 | 2D1.1 |
| 47 U.S.C. § 223 | 2G3.2 |
| 47 U.S.C. § 605 | 2H3.1 |
| 49 U.S.C. § 121 | 2F1.1 |
| 49 U.S.C. § 1472(i)(1) | 2A5.1 |

October, 1987

# Defense Exhibit 9-300

| Statute | Guideline |
|---------|-----------|
| 49 U.S.C. § 1472(j) | 2A5.2 |
| 49 U.S.C. § 1472(1) | 2K1.5 |
| 49 U.S.C. § 1472(n)(1) | 2A5.1 |
| 49 U.S.C. § 1809(b) | 2K3.1 |
| 49 U.S.C. § 11904 | 2B4.1 |
| 49 U.S.C. § 11907(a) | 2B4.1 |
| 49 U.S.C. § 11907(b) | 2B4.1 |
| 50 U.S.C. § 421 | 2M3.9 |
| 50 U.S.C. App. § 462 | 2M4.1 |
| 50 U.S.C. § 783(b) | 2M3.7 |
| 50 U.S.C. § 783(c) | 2M3.8 |
| 50 U.S.C. § 2410 | 2M5.1 |
| 50 U.S.C. App. § 462 | 2M4.1 |
| 50 U.S.C. App. § 2410 | 2M5.1 |

A.33                                                          October, 1987

# Defense Exhibit 9-301

**Defense Exhibit 9-302**

**APPENDIX B:**

**AUTHORIZING LEGISLATION AND RELATED SENTENCING PROVISIONS**

The legal authority for the United States Sentencing Commission ("Commission") and the related authority and procedures for sentencing in federal courts have their legislative foundation in the Sentencing Reform Act of 1984 (Chapter II of the Comprehensive Crime Control Act of 1984, Public Law 98-473, October 12, 1984.)

The statutory authority of the Commission is codified in Chapter 58 of Title 28, United States Code, effective October 12, 1984. The related statutory authority for sentencing is codified in the new Chapters 227 and 229 of Title 18, United States Code, effective November 1, 1987. The Sentencing Reform Act of 1984 also added a new section 3742 at the end of Chapter 235 of Title 18, pertaining to appellate review of sentences.

These provisions subsequently were amended by Public Law 99-22 (April 15, 1985); Public Law 99-217, "The Sentencing Reform Amendments Act of 1985" (December 26, 1985); Public Law 99-363, "The Sentencing Guideline Adjustment Act of 1986" (July 11, 1986); Public Law 99-570, "The Anti-Drug Abuse Act of 1986" (October 27, 1986); and Public Law 99-646, "The Criminal Law and Procedure Technical Amendments of 1986" (November 10, 1986).

Solely for the purpose of providing a reference to the law as it currently stands, these statutory provisions, as amended, are presented in this appendix. For the sake of brevity, historical notes and certain miscellaneous provisions are omitted. The Commission makes no representations concerning the accuracy of these provisions and recommends that authoritative sources be consulted where legal reliance is necessary.

B.1

**Defense Exhibit 9-303**

[Page intentionally blank]

B.2

# Defense Exhibit 9-304

## TITLE 18--CRIMES AND CRIMINAL PROCEDURE
## CHAPTER 227
### Subchapter A--General Provisions

### § 3551. Authorized sentences

(a) **In general.**--Except as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute, other than an Act of Congress applicable exclusively in the District of Columbia or the Uniform Code of Military Justice, shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

(b) **Individuals.**--An individual found guilty of an offense shall be sentenced, in accordance with the provisions of section 3553, to--

(1) a term of probation as authorized by subchapter B;

(2) a fine as authorized by subchapter C; or

(3) a term of imprisonment as authorized by subchapter D. A sentence to pay a fine may be imposed in addition to any other sentence. A sanction authorized by section 3554, 3555, or 3556 may be imposed in addition to the sentence required by this subsection.

(c) **Organizations.**--An organization found guilty of an offense shall be sentenced, in accordance with the provisions of section 3553, to--

(1) a term of probation as authorized by subchapter B; or

(2) a fine as authorized by subchapter C.

A sentence to pay a fine may be imposed in addition to a sentence to probation. A sanction authorized by section 3554, 3555, or 3556 may be imposed in addition to the sentence required by this subsection.

### § 3552. Presentence reports

(a) **Presentence investigation and report by probation officer.**--A United States probation officer shall make a presentence investigation of a defendant that is required pursuant to the provisions of Rule 32(c) of the Federal Rules of Criminal Procedure, and shall, before the imposition of sentence, report the results of the investigation to the court.

(b) **Presentence study and report by bureau of prisons.**--If the court, before or after its receipt of a report specified in subsection (a) or (c), desires more information than is otherwise available to it as a basis for determining the sentence to be imposed on a defendant found guilty of a misdemeanor or felony, it may order a study of the defendant. The study shall be conducted in the local community by qualified consultants unless the sentencing judge finds that there is a compelling reason for the study to be done by the Bureau of Prisons or there are no adequate professional resources available in the local community to perform the study. The period of the study shall be no more than sixty days. The order shall specify the additional information that the court needs before determining the sentence to be imposed. Such an order shall be treated for administrative purposes as a provisional sentence of imprisonment for the maximum term authorized by section 3581(b) for the offense committed. The study shall inquire into such matters as are specified by the court and any other matters that the Bureau of Prisons or the professional consultants believe are pertinent to the factors set forth in section 3553(a). The period of the study may, in the discretion of the court, be extended for an additional period of not more than sixty days. By the expiration of the period of the study, or by the expiration of any extension granted by the court, the United States marshal shall, if the defendant is in custody, return the defendant to the court for final sentencing. The Bureau of Prisons or the professional consultants shall provide the court with a written report of the pertinent results of the study and make to the court whatever recommendations the Bureau or the consultants believe will be helpful to a proper resolution of the case. The report shall include recommendations of the Bureau or the consultants concerning the guidelines and policy statements, promulgated by the Sentencing Commission pursuant to 28 U.S.C. 994(a), that they believe are applicable to the defendant's case. After receiving the report and the recommendations, the court shall proceed finally to sentence the defendant in accordance with the sentencing alternatives and procedures available under this chapter.

(c) **Presentence examination and report by psychiatric or psychological examiners.**--If the court, before or after its receipt of a report specified in subsection (a) or (b) desires more information than is otherwise available to it as a basis for determining the mental condition of the defendant, the court may order the same psychiatric or psychological examination and report thereon as may be ordered under Section 4244(b) of this title.

B.3

# Defense Exhibit 9-305

**(d) Disclosure of presentence reports.**--The court shall assure that a report filed pursuant to this section is disclosed to the defendant, the counsel for the defendant, and the attorney for the Government at least ten days prior to the date set for sentencing, unless this minimum period is waived by the defendant.

## § 3553. Imposition of a sentence

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

**(b) Application of guidelines in imposing a sentence.**--The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result in a sentence different from that described. In the absence of applicable sentencing guidelines, the court shall impose an appropriate sentence, having due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, the applicable policy statements of the Sentencing Commission and the purposes of sentencing set forth in subsection (a)(2).

**(c) Statement of reasons for imposing a sentence.**--The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--

(1) is of the kind, and within the range, described in subsection (a)(4), the reason for imposing a sentence at a particular point within the range; or

(2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described. If the court does not order restitution, or orders only partial restitution, the court shall include in the statement the reason therefor. The clerk of the court shall provide a transcription of the court's statement of reasons to the Probation System, and, if the sentence includes a term of imprisonment, to the Bureau of Prisons.

**(d) Presentence procedure for an order of notice.**--Prior to imposing an order of notice pursuant to section 3555, the court shall give notice to the defendant and the Government that it is considering imposing such an order. Upon motion of the defendant or the Government, or on its own motion, the court shall--

(1) permit the defendant and the Government to submit affidavits and written memoranda addressing matters relevant to the imposition of such an order;

(2) afford counsel an opportunity in open court to address orally the appropriateness of the imposition of such an order; and

(3) include in its statement of reasons pursuant to subsection (c) specific reasons underlying its determinations regarding the nature of such an order. Upon motion of the defendant or the Government, or on its own motion, the court may in its discretion employ any additional procedures that it concludes will not unduly complicate or prolong the sentencing process.

**(e) Limited authority to impose a sentence below a statutory minimum.** --Upon motion of the government, the court shall have the authority to impose a sentence below a level established by the statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be

B.4

# Defense Exhibit 9-306

imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to Section 994 of Title 28, United States Code.

## § 3554. Order of criminal forfeiture

The court, in imposing a sentence on a defendant who has been found guilty of an offense described in section 1962 of this title or in title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 shall order, in addition to the sentence that is imposed pursuant to the provisions of section 3551, that the defendant forfeit property to the United States in accordance with the provisions of section 1963 of this title or section 413 of the Comprehensive Drug Abuse and Control Act of 1970.

## § 3555. Order of notice to victims

The court, in imposing a sentence on a defendant who has been found guilty of an offense involving fraud or other intentionally deceptive practices, may order, in addition to the sentence that is imposed pursuant to the provisions of section 3551, that the defendant give reasonable notice and explanation of the conviction, in such form as the court may approve, to the victims of the offense. The notice may be ordered to be given by mail, by advertising in designated areas or through designated media, or by other appropriate means. In determining whether to require the defendant to give such notice, the court shall consider the factors set forth in section 3553(a) to the extent that they are applicable and shall consider the cost involved in giving the notice as it relates to the loss caused by the offense, and shall not require the defendant to bear the costs of notice in excess of $20,000.

## § 3556. Order of restitution

The court, in imposing a sentence on a defendant who has been found guilty of an offense, may order restitution in accordance with the provisions of sections 3663 and 3664.

## § 3557. Review of a sentence

The review of a sentence imposed pursuant to section 3551 is governed by the provisions of section 3742.

## § 3558. Implementation of a sentence

The implementation of a sentence imposed pursuant to section 3551 is governed by the provisions of chapter 229.

## § 3559. Sentencing classification of offenses

(a) Classification.--An offense that is not specifically classified by a letter grade in the section defining it, is classified--
  (1) if the maximum term of imprisonment authorized is--
    (A) life imprisonment, or if the maximum penalty is death, as a Class A felony;
    (B) twenty years or more, as a Class B felony;
    (C) less than twenty years but ten or more years, as a Class C felony;
    (D) less than ten years but five or more years, as a Class D felony;
    (E) less than five years but more than one year, as a Class E felony;
    (F) one year or less but more than six months, as a Class A misdemeanor;
    (G) six months or less but more than thirty days, as a Class B misdemeanor;
    (H) thirty days or less but more than five days, as a Class C misdemeanor; or
    (I) five days or less, or if no imprisonment is authorized, as an infraction.

B.5

# Defense Exhibit 9-307

(b) Effect of classification.--An offense classified under subsection (a) carries all the incidents assigned to the applicable letter designation except that:

(1) the maximum fine that may be imposed is the fine authorized by the statute describing the offense, or by this chapter, whichever is the greater; and

(2) the maximum term of imprisonment is the term authorized by the statute describing the offense.


## SUBCHAPTER B --PROBATION


### § 3561. Sentence of probation

(a) **In General.**--A defendant who has been found guilty of an offense may be sentenced to a term of probation unless--

(1) the offense is a Class A or Class B felony;

(2) the offense is an offense for which probation has been expressly precluded; or

(3) the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense.

(b) **Authorized terms.**--The authorized terms of probation are--

(1) for a felony, not less than one nor more than five years;

(2) for a misdemeanor, not more than five years; and

(3) for an infraction, not more than one year.


### § 3562. Imposition of a sentence of probation

(a) **Factors to be considered in imposing a term of probation.**--The court, in determining whether to impose a term of probation, and, if a term of probation is to be imposed, in determining the length of the term and the conditions of probation, shall consider the factors set forth in section 3553(a) to the extent that they are applicable.

(b) **Effect of finality of judgment.**--Notwithstanding the fact that a sentence of probation can subsequently be--

(1) modified or revoked pursuant to the provisions of section 3564 or 3565;

(2) corrected pursuant to the provisions of rule 35 and section 3742; or

(3) appealed and modified, if outside the guideline range, pursuant to the provisions of section 3742; a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes.


### § 3563. Conditions of probation

(a) **Mandatory conditions.**--The court shall provide, as an explicit condition of a sentence of probation--

(1) for a felony, a misdemeanor, or an infraction, that the defendant not commit another Federal, State, or local crime during the term of probation; and

(2) for a felony, that the defendant also abide by at least one condition set forth in subsection (b)(2), (b)(3), or (b)(13). If the court has imposed and ordered execution of a fine and placed the defendant on probation, payment of the fine or adherence to the court-established installment schedule shall be a condition of the probation.

(b) **Discretionary conditions.**--The court may provide, as further conditions of a sentence of probation, to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2), that the defendant--

(1) support his dependents and meet other family responsibilities;

(2) pay a fine imposed pursuant to the provisions of subchapter C;

(3) make restitution to a victim of the offense pursuant to the provisions of section 3556;

(4) give to the victims of the offense the notice ordered pursuant to the provisions of section 3555;

B.6

# Defense Exhibit 9-308

(5) work conscientiously at suitable employment or pursue conscientiously a course of study or vocational training that will equip him for suitable employment;

(6) refrain, in the case of an individual, from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances;

(7) refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons;

(8) refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner;

(9) refrain from possessing a firearm, destructive device, or other dangerous weapon;

(10) undergo available medical, psychiatric, or psychological treatment, including treatment for drug or alcohol dependency, as specified by the court, and remain in a specified institution if required for that purpose;

(11) remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense during the first year of the term of probation;

(12) reside at, or participate in the program of, a community corrections facility for all or part of the term of probation;

(13) work in community service as directed by the court;

(14) reside in a specified place or area, or refrain from residing in a specified place or area;

(15) remain within the jurisdiction of the court, unless granted permission to leave by the court or a probation officer;

(16) report to a probation officer as directed by the court or the probation officer;

(17) permit a probation officer to visit him at his home or elsewhere as specified by the court;

(18) answer inquiries by a probation officer and notify the probation officer promptly of any change in address or employment;

(19) notify the probation officer promptly if arrested or questioned by a law enforcement officer; or

(20) satisfy such other conditions as the court may impose.

(c) **Modifications of conditions.**--The court may modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the revocation or modification of probation.

(d) **Written statement of conditions.**--The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the sentence is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

## § 3564. Running of a term of probation

(a) **Commencement.**--A term of probation commences on the day that the sentence of probation is imposed, unless otherwise ordered by the court.

(b) **Concurrence with other sentences.**--Multiple terms of probation, whether imposed at the same time or at different times, run concurrently with each other. A term of probation runs concurrently with any Federal, State, or local term of probation, supervised release, or parole for another offense to which the defendant is subject or becomes subject during the term of probation. A term of probation does not run while the defendant is imprisoned in connection with a conviction for a federal, state, or local crime unless the imprisonment is for a period of less than thirty consecutive days.

(c) **Early termination.**--The court, after considering the factors set forth in section 3553(a) to the extent that they are applicable, may terminate a term of probation previously ordered and discharge the defendant at any time in the case of a misdemeanor or an infraction or at any time after the expiration of one year of probation in the case of a felony, if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice.

(d) **Extension.**--The court may, after a hearing, extend a term of probation, if less than the maximum authorized term was previously imposed, at any time prior to the expiration or termination of the term of probation, pursuant to the provisions applicable to the initial setting of the term of probation.

(e) **Subject to revocation.**--A sentence of probation remains conditional and subject to revocation until its expiration or termination.

## § 3565. Revocation of probation

# Defense Exhibit 9-309

**(a) Continuation or revocation.**--If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extent that they are applicable--

(1) continue him on probation, with or without extending the term of modifying or enlarging the conditions;  or

(2) revoke the sentence of probation and impose any other sentence that was available under subchapter A at the time of the initial sentencing.

**(b) Delayed revocation.**--The power of the court to revoke a sentence of probation for violation of a condition of probation, and to impose another sentence, extends beyond the expiration of the term of probation for any period reasonably necessary for the adjudication of matters arising before its expiration if, prior to its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

## § 3566. Implementation of a sentence of probation

The implementation of a sentence of probation is governed by the provisions of subchapter A of chapter 229.

## § 3568. Effective date of sentence; credit for time in custody prior to the imposition of sentence

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence.  The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. As used in this section, the term "offense" means any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress. If any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention. No sentence shall prescribe any other method of computing the term.

## SUBCHAPTER C --FINE

## § 3571. Sentence of fine

**(a) In general.**--A defendant who has been found guilty of an offense may be sentenced to pay a fine.

**(b) Authorized fines.**--Except as otherwise provided in this chapter, the authorized fines are--

(1) if the defendant is an individual--

(A) for a felony, or for a misdemeanor resulting in the loss of human life, not more than $250,000;

(B) for any other misdemeanor, not more than $25,000;  and

(C) for an infraction, not more than $1,000;  and

(2) if the defendant is an organization--

(A) for a felony, or for a misdemeanor resulting in the loss of human life, not more than $500,000;

(B) for any other misdemeanor, not more than $100,000;  and

(C) for an infraction, not more than $10,000.

## § 3572. Imposition of a sentence of fine

**(a) Factors to be considered in imposing fine.**--The court, in determining whether to impose a fine, and, if a fine is to be imposed, in determining the amount of the fine, the time for payment, and the method of payment, shall consider--

B.8

# Defense Exhibit 9-310

(1) the factors set forth in section 3553(a), to the extent they are applicable, including, with regard to the characteristics of the defendant under section 3553(a), the ability of the defendant to pay the fine in view of the defendant's income, earning capacity, and financial resources and, if the defendant is an organization, the size of the organization;

(2) the nature of the burden that payment of the fine will impose on the defendant, and on any person who is financially dependent upon the defendant, relative to the burden which alternative punishments would impose;

(3) any restitution or reparation made by the defendant to the victim of the offense, and any obligation imposed upon the defendant to make such restitution or reparation to the victim of the offense;

(4) if the defendant is an organization, any measure taken by the organization to discipline its employees or agents responsible for the offense or to insure against a recurrence of such an offense; and

(5) any other pertinent equitable consideration.

**(b) Limit on aggregate of multiple fines.**--Except as otherwise expressly provided, the aggregate of fines that a court may impose on a defendant at the same time for different offenses that arise from a common scheme or plan, and that do not cause separable or distinguishable kinds of harm or damage, is twice the amount imposable for the most serious offense.

**(c) Effect of finality of judgment.**--Notwithstanding the fact that a sentence to pay a fine can subsequently be--

(1) modified or remitted pursuant to the provisions of section 3573;

(2) corrected pursuant to the provisions of rule 35 and section 3742; or

(3) appealed and modified, if outside the guideline range, pursuant to the provisions of section 3742; a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes.

**(d) Time and method of payment.**--Payment of a fine is due immediately unless the court, at the time of sentencing--

(1) requires payment by a date certain; or

(2) establishes an installment schedule, the specific terms of which shall be fixed by the court.

**(e) Alternative sentence precluded.**--At the time a defendant is sentenced to pay a fine, the court may not impose an alternative sentence to be served in the event that the fine is not paid.

**(f) Individual responsibility for payment.**--If a fine is imposed on an organization, it is the duty of each individual authorized to make disbursement of the assets of the organization to pay the fine from assets of the organization. If a fine is imposed on an agent or shareholder of an organization, the fine shall not be paid, directly or indirectly, out of the assets of the organization, unless the court finds that such payment is expressly permissible under applicable State law.

**(g) Responsibility to provide current address.**--At the time of imposition of the fine, the court shall order the person fined to provide the Attorney General with a current mailing address for the entire period that any part of the fine remains unpaid. Failure to provide the Attorney General with a current address or a change in address shall be punishable as a contempt of court.

**(h) Stay of fine pending appeals.**--Unless exceptional circumstances exist, if a sentence to pay a fine is stayed pending appeal, the court granting the stay shall include in such stay--

(1) a requirement that the defendant, pending appeal, to deposit the entire fine amount, or the amount due under an installment schedule, during the pendency of an appeal, in an escrow account in the registry of the district court, or to give bond for the payment thereof; or

(2) an order restraining the defendant from transferring or dissipating assets found to be sufficient, if sold, to meet the defendant's fine obligation.

**(i) Delinquent fine.**--A fine is delinquent if any portion of such fine is not paid within thirty days of when it is due, including any fines to be paid pursuant to an installment schedule.

**(j) Default.**--A fine is in default if any portion of such fine is more than ninety days delinquent. When a criminal fine is in default, the entire amount is due with thirty days of notification of the default, notwithstanding any installment schedule.


## § 3573. Modification or remission of fine

**(a) Petition for modification or remission.**--A defendant who has been sentenced to pay a fine, and who--

(1) can show a good faith effort to comply with the terms of the sentence and concerning whom the circumstances no longer exist that warranted the imposition of the fine in the amount imposed or payment by the installment schedule, may at any time petition the court for--

(A) an extension of the installment schedule, not to exceed two years except in case of incarceration or special circumstances; or

(B) a remission of all or part of the unpaid portion including interest and penalties; or

B.9

# Defense Exhibit 9-311

(2) has voluntarily made restitution or reparation to the victim of the offense, may at any time petition the court for a remission of the unpaid portion of the fine in an amount not exceeding the amount of such restitution or reparation. Any petition filed pursuant to this subsection shall be filed in the court in which sentence was originally imposed, unless that court transfers jurisdiction to another court. The petitioner shall notify the Attorney General that the petition has been filed within ten working days after filing. For the purposes of clause (1), unless exceptional circumstances exist, a person may be considered to have made a good faith effort to comply with the terms of the sentence only after payment of a reasonable portion of the fine.

**(b) Order of modification or remission.**--If, after the filing of a petition as provided in subsection (a), the court finds that the circumstances warrant relief, the court may enter an appropriate order, in which case it shall provide the Attorney General with a copy of such order.

## § 3574. Implementation of a sentence of fine

The implementation of a sentence to pay a fine is governed by the provisions of subchapter B of chapter 229.

## §§ 3575 to 3580. See Chapter 227 post.

## SUBSECTION D --IMPRISONMENT

## § 3581. Sentence of imprisonment

**(a) In general.**--A defendant who has been found guilty of an offense may be sentenced to a term of imprisonment.

**(b) Authorized terms.**--The authorized terms of imprisonment are--
(1) for a Class A felony, the duration of the defendant's life or any period of time;
(2) for a Class B felony, not more than twenty-five years;
(3) for a Class C felony, not more than twelve years;
(4) for a Class D felony, not more than six years;
(5) for a Class E felony, not more than three years;
(6) for a Class A misdemeanor, not more than one year;
(7) for a Class B misdemeanor, not more than six months;
(8) for a Class C misdemeanor, not more than thirty days; and
(9) for an infraction, not more than five days.

## § 3582. Imposition of a sentence of imprisonment

**(a) Factors to be considered in imposing a term of imprisonment.**--The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation. In determining whether to make a recommendation concerning the type of prison facility appropriate for the defendant, the court shall consider any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2).

**(b) Effect of finality of judgment.**--Notwithstanding the fact that a sentence to imprisonment can subsequently be--
(1) modified pursuant to the provisions of subsection (c);
(2) corrected pursuant to the provisions of rule 35 and section 3742; or
(3) appealed and modified, if outside the guideline range, pursuant to the provisions of section 3742; a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes.

B.10

# Defense Exhibit 9-312

**(c) Modification of an imposed term of imprisonment.**–The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(n), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

**(d) Inclusion of an order to limit criminal association of organized crime and drug offenders.**–The court, in imposing a sentence to a term of imprisonment upon a defendant convicted of a felony set forth in chapter 95 (racketeering) or 96 (racketeer influenced and corrupt organizations) of this title or in the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 801 et seq.), or at any time thereafter upon motion by the Director of the Bureau of Prisons or a United States attorney, may include as a part of the sentence an order that requires that the defendant not associate or communicate with a specified person, other than his attorney, upon a showing of probable cause to believe that association or communication with such person is for the purpose of enabling the defendant to control, manage, direct, finance, or otherwise participate in an illegal enterprise.

## § 3583. Inclusion of a term of supervised release after imprisonment

**(a) In general.**–The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, except that the court shall include as a part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute.

**(b) Authorized terms of supervised release.**–Except as otherwise provided, the authorized terms of supervised release are—

(1) for a Class A or Class B felony, not more than three years;

(2) for a Class C or Class D felony, not more than two years; and

(3) for a Class E felony, or for a misdemeanor, not more than one year.

**(c) Factors to be considered in including a term of supervised release.**--The court, in determining whether to include a term of supervised release, and, if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(D), (a)(4), (a)(5), and (a)(6).

**(d) Conditions of supervised release.**–The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision. The court may order, as a further condition of supervised release, to the extent that such condition—

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B) and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a); any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(19), and any other condition it considers to be appropriate. If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.

**(e) Modification of conditions or revocation.**–The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(D), (a)(4), (a)(5), and (a)(6)—

(1) terminate a term of supervised release and discharge the person released at any time after the expiration of one year of supervised release, if it is satisfied that such action is warranted by the conduct of the person released and the interest of justice;

(2) after a hearing, extend a term of supervised release if less than the maximum authorized term was previously imposed, and may

B.11

# Defense Exhibit 9-313

modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions applicable to the initial setting of the terms and conditions of post-release supervision;

(3) treat a violation of a condition of a term of supervised release as contempt of court pursuant to section 401(3) of this title; or

(4) revoke a term of supervised release and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and the provisions of applicable policy statements issued by the Sentencing Commission.

**(f) Written statement of conditions.**--The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

## § 3584. Multiple sentences of imprisonment

**(a) Imposition of concurrent or consecutive terms.**--If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

**(b) Factors to be considered in imposing concurrent or consecutive terms.**-- The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

**(c) Treatment of multiple sentence as an aggregate.**--Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

## § 3585. Calculation of a term of imprisonment

**(a) Commencement of sentence.**--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

**(b) Credit for prior custody.**--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

## § 3586. Implementation of a sentence of imprisonment

The implementation of a sentence of imprisonment is governed by the provisions of subchapter C of chapter 229 and, if the sentence includes a term of supervised release, by the provisions of subchapter A of chapter 229.

## CHAPTER 229 --POSTSENTENCE ADMINISTRATION

## § 3621.    Imprisonment of a convicted person

**(a) Commitment to custody of Bureau of Prisons.**--A person who has been sentenced to a term of imprisonment pursuant to the

**Defense Exhibit 9-314**

provisions of subchapter D of chapter 227 shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.

**(b) Place of imprisonment.**--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

   (1) the resources of the facility contemplated;

   (2) the nature and circumstances of the offense;

   (3) the history and characteristics of the prisoner;

   (4) any statement by the court that imposed the sentence--

      (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

      (B) recommending a type of penal or correctional facility as appropriate; and

   (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

**(c) Delivery of order of commitment.**--When a prisoner, pursuant to a court order, is placed in the custody of a person in charge of a penal or correctional facility, a copy of the order shall be delivered to such person as evidence of this authority to hold the prisoner, and the original order, with the return endorsed thereon, shall be returned to the court that issued it.

**(d) Delivery of prisoner for court appearances.**--The United States marshal shall, without charge, bring a prisoner into court or return him to a prison facility on order of a court of the United States or on written request of an attorney for the Government.

## § 3622. Temporary release of a prisoner.

The Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2), if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to--

(a) visit a designated place for a period not to exceed thirty days, and then return to the same or another facility, for the purpose of-

   (1) visiting a relative who is dying;

   (2) attending a funeral of a relative;

   (3) obtaining medical treatment not otherwise available;

   (4) contacting a prospective employer;

   (5) establishing or reestablishing family or community ties; or

   (6) engaging in any other significant activity consistent with the public interest;

      (B) participate in a training or educational program in the community while continuing in official detention at the prison facility; or

      (C) work at paid employment in the community while continuing in official detention at the penal or correctional facility if-- (1) the rates of pay and other conditions of employment will not be less than those paid or provided for work of a similar nature in the community; and

      (D) the prisoner agrees to pay to the Bureau of Prisons such costs incident to official detention as the Bureau finds appropriate and reasonable under all the circumstances, such costs to be collected by the Bureau and deposited in the Treasury to the credit of the appropriation available for such costs at the time such collections are made.

## § 3623. Transfer of a prisoner to State authority.

The Director of the Bureau of Prisons shall order that a prisoner who has been charged in an indictment or information with, or convicted of, a State felony, be transferred to an official detention facility within such State prior to his release from a Federal prison facility if--

(a) the transfer has been requested by the Governor or other executive authority of the State;

(b) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction; and

B.13

# Defense Exhibit 9-315

(c) the Director finds that the transfer would be in the public interest.

If more than one request is presented with respect to a prisoner, the Director shall determine which request should receive preference. The expenses of such transfer shall be borne by the State requesting the transfer.

## § 3624. Release of a prisoner.

**(a) Date of release.**—A prisoner shall be released by the Bureau of Prisons on the date of the expiration of his term of imprisonment, less any time credited toward the service of his sentence as provided in subsection (b). If the date for a prisoner's release falls on a Saturday, a Sunday, or a legal holiday at the place of confinement, the prisoner may be released by the Bureau on the last preceding weekday.

**(b) Credit toward service of sentence for satisfactory behavior.**—A prisoner who is serving a term of imprisonment of more than one year, other than a term of imprisonment for the duration of his life, shall receive credit toward the service of his sentence, beyond the time served, of fifty-four days at the end of each year of his term of imprisonment, beginning at the end of the first year of the term, unless the Bureau of Prisons determines that, during that year, he has not satisfactorily complied with such institutional disciplinary regulations as have been approved by the Attorney General and issued to the prisoner. If the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, he shall receive no such credit toward service of his sentence or shall receive such lesser credit as the Bureau determines to be appropriate. The Bureau's determination shall be made within fifteen days after the end of each year of the sentence. Such credit toward service of sentence vests at the time that it is received. Credit that has vested may not later be withdrawn, and credit that has not been earned may not later be granted. Credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

**(c) Pre-release custody.**—The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

**(d) Allotment of clothing, funds, and transportation.**—Upon the release of a prisoner on the expiration of his term of imprisonment, the Bureau of Prisons shall furnish him with--

  (1) suitable clothing;

  (2) an amount of money, not more than $500, determined by the Director to be consistent with the needs of the offender and the public interest, unless the Director determines that the financial position of the offender is such that no sum should be furnished; and

  (3) transportation to the place of his conviction, to his bona fide residence within the United States, or to such other place within the United States as may be authorized by the Director.

**(e) Supervision after release.**—A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is imprisoned, in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than thirty consecutive days. No prisoner shall be released on supervision unless such prisoner agrees to adhere to an installment schedule, not to exceed two years except in special circumstances, to pay for any fine imposed for the offense committed by the prisoner.

## § 3625. Inapplicability of the Administrative Procedure Act

The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter.

## CHAPTER 235 --APPEAL

B.14

# Defense Exhibit 9-316

## § 3742. Review of a sentence

**(a) Appeal by a defendant.**--A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence--

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a); or

(3) was imposed for an offense for which a sentencing guideline has been issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1), and the sentence is greater than--

(A) the sentence specified in the applicable guideline to the extent that the sentence includes a greater fine or term of imprisonment or term of supervised release than the maximum established in the guideline, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline; and

(B) the sentence specified in a plea agreement, if any, under Rule 11(e)(1)(B) or (e)(1)(C) of the Federal Rules of Criminal Procedure; or

(4) was imposed for an offense for which no sentencing guideline has been issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and is greater than the sentence specified in a plea agreement, if any, under Rule 11(e)(1)(B) or (e)(1)(C) of the Federal Rules of Criminal Procedure.

**(b) Appeal by the Government.**--The Government may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence--

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines issued by the Sentencing Commission pursuant to 28 U.S.C. 994(1);

(3) was imposed for an offense for which a sentencing guideline has been issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1), and the sentence is less than--

(A) the sentence specified in the applicable guideline to the extent that the sentence includes a lesser fine or term of imprisonment or term of supervised release than the minimum established in the guideline, or includes a less limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the minimum established in the guideline; and

(B) the sentence specified in a plea agreement, if any, under Rule 11(e)(1)(B) or (e)(1)(C) of the Federal Rules of Criminal Procedure; or

(4) was imposed for an offense for which no sentencing guideline has been issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and is less than the sentence specified in as plea agreement, if any, under Rule 11(e)(1)(B) or (e)(1)(C) of the Federal Rules of Criminal Procedure; and the Attorney General or the Solicitor General personally approves the filing of the notice of appeal.

**(c) Record on review.**--If a notice of appeal is filed in the district court pursuant to subsection (a) or (b), the clerk shall certify to the court of appeals--

(1) that portion of the record in the case that is designated as pertinent by either of the parties;

(2) the presentence report; and

(3) the information submitted during the sentencing proceeding.

**(d) Consideration.**--Upon review of the record, the court of appeals shall determine whether the sentence--

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is outside the range of the applicable sentencing guideline, and is unreasonable, having regard for--

(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c).

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous.

**(e) Decision and disposition.**--If the court of appeals determines that the sentence--

(1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate.

B.15

# Defense Exhibit 9-317

(2) is outside the range of the applicable sentencing guideline and is unreasonable, it shall state specific reasons for its conclusions and--

(A) if it determines that the sentence is too high and the appeal has been filed under subsection (a), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(B) if it determines that the sentence is too low and the appeal has been filed under subsection (b), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court deems appropriate;

(3) was not imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, and is not unreasonable, it shall affirm the sentence.

TITLE 28
UNITED STATES CODE
Chapter 58 - UNITED STATES SENTENCING COMMISSION

## § 991. United States Sentencing Commission; establishment and purposes

(a) There is established as an independent commission in the judicial branch of the United States a United States Sentencing Commission which shall consist of seven voting members and one nonvoting member. The President, after consultation with representatives of judges, prosecuting attorneys, defense attorneys, law enforcement officials, senior citizens, victims of crime, and others interested in the criminal justice process, shall appoint the voting members of the Commission, by and with the advice and consent of the Senate, one of whom shall be appointed, by and with the advice and consent of the Senate, as the Chairman. At least three of the members shall be Federal judges selected after considering a list of six judges recommended to the President by the Judicial Conference of the United States. Not more than four of the members of the Commission shall be members of the same political party. The Attorney General, or his designee, shall be an ex officio, nonvoting member of the Commission. The Chairman and members of the Commission shall be subject to removal from the Commission by the President only for neglect of duty or malfeasance in office or for other good cause shown.

(b) The purposes of the United States Sentencing Commission are to--

(1) establish sentencing policies and practices for the Federal criminal justice system that--

(A) assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code;

(B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices; and

(C) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process; and

(2) develop means of measuring the degree to which the sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code.

## § 992. Terms of office; compensation

(a) The voting members of the United States Sentencing Commission shall be appointed for six-year terms, except that the initial terms of the first members of the Commission shall be staggered so that--

(1) two members, including the Chairman, serve terms of six years;

(2) three members serve terms of four years; and

(3) two members serve terms of two years.

(b) No voting member may serve more than two full terms. A voting member appointed to fill a vacancy that occurs before the expiration of the term for which his predecessor was appointed shall be appointed only for the remainder of such term.

(c) The Chairman of the Commission shall hold a full-time position and shall be compensated during the term of office at the annual rate at which judges of the United States courts of appeals are compensated. The voting members of the Commission, other than the Chairman, shall hold full-time positions until the end of the first six years after the sentencing guidelines go into effect pursuant to

# Defense Exhibit 9-318

section 235(a)(1)(B)(ii) of the Sentencing Reform Act of 1984, and shall be compensated at the annual rate at which judges of the United States courts of appeals are compensated. Thereafter, the voting members of the Commission, other than the Chairman, shall hold part-time positions and shall be paid at the daily rate at which judges of the United States courts of appeals are compensated. A Federal judge may serve as a member of the Commission without resigning his appointment as a Federal judge.

(d) Sections 44(c) and 134(b) of this title (relating to residence of judges) do not apply to any judge holding a full-time position on the Commission under subsection (c) of this section.

## § 993. Powers and duties of Chairman

The Chairman shall--

(a) call and preside at meetings of the Commission, which shall be held for at least two weeks in each quarter after the members of the Commission hold part-time positions; and

(b) direct--

(1) the preparation of requests for appropriations for the Commission; and

(2) the use of funds made available to the Commission. "Before the appointment of the first Chairman, the Administrative Office of the United States Courts may make requests for appropriations for the Commission.

## § 994. Duties of the Commission

(a) The Commission, by affirmative vote of at least four members of the Commission, and pursuant to its rules and regulations and consistent with all pertinent provisions of this title and title 18, United States Code, shall promulgate and distribute to all courts of the United States and to the United States Probation System--

(1) guidelines, as described in this section, for use of a sentencing court in determining the sentence to be imposed in a criminal case, including--

(A) a determination whether to impose a sentence to probation, a fine, or a term of imprisonment;

(B) a determination as to the appropriate amount of a fine or the appropriate length of a term of probation or a term of imprisonment;

(C) a determination whether a sentence to a term of imprisonment should include a requirement that the defendant be placed on a term of supervised release after imprisonment, and, if so, the appropriate length of such a term; and

(D) a determination whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively;

(2) general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in section 3553(a)(2) of title 18, United States Code, including the appropriate use of--

(A) the sanctions set forth in sections 3554, 3555, and 3556 of title 18;

(B) the conditions of probation and supervised release set forth in sections 3563(b) and 3583(d) of title 18;

(C) the sentence modification provisions set forth in sections 3563(c), 3564, 3573, and 3582(c) of title 18;

(D) the fine imposition provisions set forth in section 3572 of title 18;

(E) the authority granted under rule 11(e)(2) of the Federal Rules of Criminal Procedure to accept or reject a plea agreement entered into pursuant to rule 11(e)(1); and

(F) the temporary release provisions set forth in section 3622 of title 18, and the prerelease custody provisions set forth in section 3624(c) of title 18; and

(3) guidelines or general policy statements regarding the appropriate use of the provisions for revocation of probation set forth in section 3565 of title 18, and the provisions for modification of the term or conditions of supervised release and revocation of supervised release set forth in section 3583(e) of title 18.

(b) The Commission, in the guidelines promulgated pursuant to subsection (a)(1), shall, for each category of offense involving each category of defendant, establish a sentencing range that is consistent with all pertinent provisions of title 18, United States Code. If a sentence specified by the guidelines includes a term of imprisonment, the maximum of the range established for such a term shall not exceed the minimum of that range by more than the greater of 25 percent or 6 months, except that, if the maximum term of the range is 30 years or more, the maximum may be life imprisonment.

B.17

# Defense Exhibit 9-319

(c) The Commission, in establishing categories of offenses for use in the guidelines and policy statements governing the imposition of sentences of probation, a fine, or imprisonment, governing the imposition of other authorized sanctions, governing the size of a fine or the length of a term of probation, imprisonment, or supervised release, and governing the conditions of probation, supervised release, or imprisonment, shall consider whether the following matters, among others, have any relevance to the nature, extent, place of service, or other incidents of an appropriate sentence, and shall take them into account only to the extent that they do have relevance--

(1) the grade of the offense;

(2) the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense;

(3) the nature and degree of the harm caused by the offense, including whether it involved property, irreplaceable property, a person, a number of persons, or a breach of public trust;

(4) the community view of the gravity of the offense;

(5) the public concern generated by the offense;

(6) the deterrent effect a particular sentence may have on the commission of the offense by others;  and

(7) the current incidence of the offense in the community and in the Nation as a whole.

(d) The Commission in establishing categories of defendants for use in the guidelines and policy statements governing the imposition of sentences of probation, a fine, or imprisonment, governing the imposition of other authorized sanctions, governing the size of a fine or the length of a term of probation, imprisonment, or supervised release, and governing the conditions of probation, supervised release, or imprisonment, shall consider whether the following matters, among others, with respect to a defendant, have any relevance to the nature, extent, place of service, or other incidents of an appropriate sentence, and shall take them into account only to the extent that they do have relevance--

(1) age;

(2) education;

(3) vocational skills;

(4) mental and emotional condition to the extent that such condition mitigates the defendant's culpability or to the extent that such condition is otherwise plainly relevant;

(5) physical condition, including drug dependence;

(6) previous employment record;

(7) family ties and responsibilities;

(8) community ties;

(9) role in the offense;

(10) criminal history;  and

(11) degree of dependence upon criminal activity for a livelihood. The Commission shall assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders.

(e) The Commission shall assure that the guidelines and policy statements, in recommending a term of imprisonment or length of a term of imprisonment, reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant.

(f) The Commission, in promulgating guidelines pursuant to subsection (a)(1), shall promote the purposes set forth in section 991(b)(1), with particular attention to the requirements of subsection 991(b)(1)(B) for providing certainty and fairness in sentencing and reducing unwarranted sentence disparities.

(g) The Commission, in promulgating guidelines pursuant to subsection (a)(1) to meet the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code, shall take into account the nature and capacity of the penal, correctional, and other facilities and services available, and shall make recommendations concerning any change or expansion in the nature or capacity of such facilities and services that might become necessary as a result of the guidelines promulgated pursuant to the provisions of this chapter. The sentencing guidelines prescribed under this chapter shall be formulated to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission.

(h) The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and--

(1) has been convicted of a felony that is--

(A) a crime of violence; or

(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and section 1 of the Act of September 15, 1980 (21 U.S.C. 955a); and

(2) has previously been convicted of two or more prior felonies, each of which is--

B.18

# Defense Exhibit 9-320

(A) a crime of violence; or

(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and section 1 of the Act of September 15, 1980 (21 U.S.C. 955a).

(i) The Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which the defendant--

(1) has a history of two or more prior Federal, State, or local felony convictions for offenses committed on different occasions;

(2) committed the offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income;

(3) committed the offense in furtherance of a conspiracy with three or more persons engaging in a pattern of racketeering activity in which the defendant participated in a managerial or supervisory capacity;

(4) committed a crime of violence that constitutes a felony while on release pending trial, sentence, or appeal from a Federal, State, or local felony for which he was ultimately convicted; or

(5) committed a felony that is set forth in section 401 of 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 841 and 960), and that involved trafficking in a substantial quantity of a controlled substance.

(j) The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

(k) The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.

(l) The Commission shall insure that the guidelines promulgated pursuant to subsection (a)(1) reflect--

(1) the appropriateness of imposing an incremental penalty for each offense in a case in which a defendant is convicted of--

(A) multiple offenses committed in the same course of conduct that result in the exercise of ancillary jurisdiction over one or more of the offenses; and

(B) multiple offenses committed at different times, including those cases in which the subsequent offense is a violation of section 3146 (penalty for failure to appear) or is committed while the person is released pursuant to the provisions of section 3147 (penalty for an offense committed while on release) of title 18; and

(2) the general inappropriateness of imposing consecutive terms of imprisonment for an offense of conspiring to commit an offense or soliciting commission of an offense and for an offense that was the sole object of the conspiracy or solicitation.

(m) The Commission shall insure that the guidelines reflect the fact that, in many cases, current sentences do not accurately reflect the seriousness of the offense. This will require that, as a starting point in its development of the initial sets of guidelines for particular categories of cases, the Commission ascertain the average sentences imposed in such categories of cases prior to the creation of the Commission, and in cases involving sentences to terms of imprisonment, the length of such terms actually served. The Commission shall not be bound by such average sentences, and shall independently develop a sentencing range that is consistent with the purposes of sentencing described in section 3553(a)(2) of title 18, United States Code.

(n) The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

(o) The Commission periodically shall review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section. In fulfilling its duties and in exercising its powers, the Commission shall consult with authorities on, and individual and institutional representatives of, various aspects of the Federal criminal justice system. The United States Probation System, the Bureau of Prisons, the Judicial Conference of the United States, the Criminal Division of the United States Department of Justice, and a representative of the Federal Public Defenders shall submit to the Commission any observations, comments, or questions pertinent to the work of the Commission whenever they believe such communication would be useful, and shall, at least annually, submit to the Commission a written report commenting on the operation of the Commission's guidelines, suggesting changes in the guidelines that appear to be warranted, and otherwise assessing the Commission's work.

(p) The Commission, at or after the beginning of a regular session of Congress but not later that the first day of May, shall report to the Congress any amendments of the guidelines promulgated pursuant to subsection (a)(1), and a report of the reasons therefor, and the amended guidelines shall take effect one hundred and eighty days after the Commission reports them, except to the extent the effective date is enlarged or the guidelines are disapproved or modified by Act of Congress.

B.19

# Defense Exhibit 9-321

(q) The Commission and the Bureau of Prisons shall submit to Congress an analysis and recommendations concerning maximum utilization of resources to deal effectively with the Federal prison population. Such report shall be based upon consideration of a variety of alternatives, including--

(1) modernization of existing facilities;

(2) inmate classification and periodic review of such classification for use in placing inmates in the least restrictive facility necessary to ensure adequate security; and

(3) use of existing Federal facilities, such as those currently within military jurisdiction.

(r) The Commission, not later than one year after the initial set of sentencing guidelines promulgated under Subsection (a) goes into effect, and thereafter whenever it finds it advisable, shall recommend to the Congress that it raise or lower the grades, or otherwise modify the maximum penalties, of those offenses for which such an adjustment appears appropriate.

(s) The Commission shall give due consideration to any petition filed by a defendant requesting modification of the guidelines utilized in the sentencing of such defendant, on the basis of changed circumstances unrelated to the defendant, including changes in--

(1) the community view of the gravity of the offense;

(2) the public concern generated by the offense; and

(3) the deterrent effect particular sentences may have on the commission of the offense by others. Within one hundred and eighty days of the filing of such petition the Commission shall provide written notice to the defendant whether or not it has approved the petition. If the petition is disapproved the written notice shall contain the reasons for such disapproval. The Commission shall submit to the Congress at least annually an analysis of such written notices.

(t) The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

(u) If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced.

(v) The Commission shall ensure that the general policy statements promulgated pursuant to subsection (a)(2) include a policy limiting consecutive terms of imprisonment for an offense involving a violation of a general prohibition and for an offense involving a violation of a specific prohibition encompassed within the general prohibition.

(w) The appropriate judge or officer shall submit to the Commission in connection with each sentence imposed a written report of this sentence, the offense for which it is imposed, the age, race, and sex of the offender, information regarding factors made relevant by the guidelines, and such other information as the Commission finds appropriate. The Commission shall submit to Congress at least annually an analysis of these reports and any recommendations for legislation that the Commission concludes is warranted by that analysis.

(x) The provisions of section 553 of title 5, relating to publication in the Federal Register and public hearing procedure, shall apply to the promulgation of guidelines pursuant to this section.

### § 995. Powers of the Commission

(a) The Commission, by vote of a majority of the members present and voting, shall have the power to--

(1) establish general policies and promulgate such rules and regulations for the Commission as are necessary to carry out the purposes of this chapter;

(2) appoint and fix the salary and duties of the Staff Director of the Sentencing Commission, who shall serve at the discretion of the Commission and who shall be compensated at a rate not to exceed the highest rate now or hereafter prescribed for grade 18 of the General Schedule pay rates (5 U.S.C. 5332);

(3) deny, revise, or ratify any request for regular, supplemental, or deficiency appropriations prior to any submission of such request to the Office of Management and Budget by the Chairman;

(4) procedure for the Commission temporary and intermittent services to the same extent as is authorized by section 3109(b) of title 5, United States Code;

(5) utilize, with their consent, the services, equipment, personnel, information, and facilities of other Federal, State, local, and private agencies and instrumentalities with or without reimbursement therefor;

B.20

# Defense Exhibit 9-322

(6) without regard to 31 U.S.C. 3324, enter into and perform such contracts, leases, cooperative agreements, and other transactions as may be necessary in the conduct of the functions of the Commission, with any public agency, or with any person, firm, association, corporation, educational institution, or nonprofit organization;

(7) accept and employ, in carrying out the provisions of this title, voluntary and uncompensated services, notwithstanding the provisions of 31 U.S.C. 1342, however, individuals providing such services shall not be considered Federal employees except for purposes of chapter 81 of title 5, United States Code, with respect to job-incurred disability and title 28, United States Code, with respect to tort claims;

(8) request such information, data, and reports from any Federal agency or judicial officer as the Commission may from time to time require and as may be produced consistent with other law;

(9) monitor the performance of probation officers with regard to sentencing recommendations, including application of the Sentencing Commission guidelines and policy statements;

(10) issue instructions to probation officers concerning the application of Commission guidelines and policy statements;

(11) arrange with the head of any other Federal agency for the performance by such agency of any function of the Commission, with or without reimbursement;

(12) establish a research and development program within the Commission for the purpose of--

(A) serving as a clearing house and information center for the collection, preparation, and dissemination of information on Federal sentencing practices; and

(B) assisting and serving in a consulting capacity to Federal courts, departments, and agencies in the development, maintenance, and coordination of sound sentencing practices;

(13) collect systematically the data obtained from studies, research, and the empirical experience of public and private agencies concerning the sentencing process;

(14) publish data concerning the sentencing process;

(15) collect systematically and disseminate information concerning sentences actually imposed, and the relationship of such sentences to the factors set forth in section 3553(a) of title 18, United States Code;

(16) collect systematically and disseminate information regarding effectiveness of sentences imposed;

(17) devise and conduct, in various geographical locations, seminars and workshops providing continuing studies for persons engaged in the sentencing field;

(18) devise and conduct periodic training programs of instruction in sentencing techniques for judicial and probation personnel and other persons connected with the sentencing process;

(19) study the feasibility of developing guidelines for the disposition of juvenile delinquents;

(20) make recommendations to Congress concerning modification or enactment of statutes relating to sentencing, penal, and correctional matters that the Commission finds to be necessary and advisable to carry out an effective, humane and rational sentencing policy;

(21) hold hearings and call witnesses that might assist the Commission in the exercise of its powers or duties; and

(22) perform such other functions as are required to permit Federal courts to meet their responsibilities under section 3553(a) of title 18, United States Code, and to permit others involved in the Federal criminal justice system to meet their related responsibilities.

(b) The Commission shall have such other powers and duties and shall perform such other functions as may be necessary to carry out the purposes of this chapter, and may delegate to any member or designated person such powers as may be appropriate other than the power to establish general policy statements and guidelines pursuant to section 994(a)(1) and (2), the issuance of general policies and promulgation of rules and regulations pursuant to subsection (a)(1) of this section, and the decisions as to the factors to be considered in establishment of categories of offenses and offenders pursuant to section 994(b). The Commission shall, with respect to its activities under subsections (a)(9), (a)(10), (a)(11), (a)(12), (a)(13), (a)(14), (a)(15), (a)(16), (a)(17), and (a)(18), to the extent practicable, utilize existing resources of the Administrative Office of the United States Courts and the Federal Judicial Center for the purpose of avoiding unnecessary duplication.

(c) Upon the request of the Commission, each Federal agency is authorized and directed to make its services, equipment, personnel, facilities, and information available to the greatest practicable extent to the Commission in the execution of its functions

(d) A simple majority of the membership then serving shall constitute a quorum for the conduct of business. Other than for the promulgation of guidelines and policy statements pursuant to section 994, the Commission may exercise its powers and fulfill its duties by the vote of a simple majority of the members present.

(e) Except as otherwise provided by law, the Commission shall maintain and make available for public inspection a record of the final vote of each member on any action taken by it.

B.21

# Defense Exhibit 9-323

## § 996. Director and staff

(a) The Staff Director shall supervise the activities of persons employed by the Commission and perform other duties assigned to him by the Commission.

(b) The Staff Director shall, subject to the approval of the Commission, appoint such officers and employees as are necessary in the execution of the functions of the Commission. The officers and employees of the Commission shall be exempt from the provisions of part III of title 5, United States Code, except the following chapters: 81 (Compensation for Work Injuries), 83 (Retirement), 85 (Unemployment Compensation), 87 (Life Insurance), 89 (Health Insurance), and 91 (Conflicts of Interest).

## § 997. Annual report

The Commission shall report annually to the Judicial Conference of the United States, the Congress, and the President of the United States on the activities of the Commission.

## § 998. Definitions

As used in this chapter--

(a) "Commission" means the United States Sentencing Commission;

(b) "Commissioner" means a member of the United States Sentencing Commission;

(c) "guidelines" means the guidelines promulgated by the Commission pursuant to section 994(a) of this title; and

(d) "rules and regulations" means rules and regulations promulgated by the Commission pursuant to section 995 of this title.

<br>

**PUBLIC LAW 98-473**
**COMPREHENSIVE CRIME CONTROL ACT OF 1984**
**CHAPTER II --SENTENCING REFORM**

**Effective Date**

Sec. 235(a)(1) This chapter shall take effect on the first day of the first calendar month beginning thirty-six months after the date of enactment, except that--

(A) the repeal of chapter 402 of title 18, United States Code, shall take effect on the date of enactment;

(B)(i) chapter 58 of title 28, United States Code, shall take effect on the date of enactment of this Act or October 1, 1983, whichever occurs later, and the United States Sentencing Commission shall submit the initial sentencing guidelines promulgated under section 994(a)(1) of title 28 to the Congress within thirty months of the effective date of such chapter 58; and

(ii) the sentencing guidelines promulgated pursuant to section 994(a)(1), shall not go into effect until the day after--

(I) the United States Sentencing Commission has submitted the initial set of sentencing guidelines to the Congress pursuant to subparagraph (B)(1), along with a report stating the reasons for the Commission's recommendations;

(II) the General Accounting Office has undertaken a study of the guidelines, and their potential impact in comparison with the operation of the existing sentencing and parole release system, and has, within one hundred and fifty days of submission of the guidelines; reported to the Congress the results of its study; and

(III) the day after the Congress has had six months after the date described in subclause (I) in which to examine the guidelines and consider the reports; and

(IV) section 212(a)(2) takes effect, in the case of the initial sentencing guidelines so promulgated.

(2) For the purposes of section 992(a) of title 28, the terms of the first members of the United States Sentencing Commission shall not begin to run until the sentencing guidelines go into effect pursuant to paragraph (1)(B)(ii).

# Defense Exhibit 9-324

(b)(1) The following provisions of law in effect on the day before the effective date of this Act shall remain in effect for five years after the effective date as to an individual convicted of an offense or adjudicated to be a juvenile delinquent before the effective date and as to a term of imprisonment during the period described in subsection (a)(1)(B):

(A) Chapter 311 of title,18, United States Code.

(B) Chapter 309 of title 18, United States Code.

(C) Sections 4251 through 4255 of title 18, United  States Code.

(D) Sections 5041 and 5042 of title 18, United  States  Code.

(E) Sections 5017 through 5020 of title 18, United  States  Code, as to a sentence imposed before the date of enactment.

(F) The maximum term of imprisonment in effect on the effective date for an offense committed before the effective date.

(G) Any other law relating to a violation of a condition of release or to arrest authority with regard to a person who violates a condition of release.

(2) Notwithstanding the provisions of section 4202 of title  18, United States Code, as in effect on the day before the effective date of this Act, the term of office of a Commissioner who is in office on the effective date is extended to the end of the five-year period after the effective date of this Act.

(3) The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

(4) Notwithstanding the other provisions of this subsection, all laws in effect on the day before the effective date of this Act pertaining to an individual who is--

(A) released pursuant to a provision listed in paragraph (1); and

(B)(i) subject to supervision on the day before the expiration of the five-year period following the effective date of this Act; or

(ii) released on a date set pursuant to paragraph (8); including laws pertaining to terms and conditions of release, revocation of release, provision of counsel, and payment of transportation costs, shall remain in effect as to the individual until the expiration of his sentence, except that the district court shall determine, in accord with the Federal Rules of Criminal Procedure, whether release should be revoked or the conditions of release amended for violation of a condition of release.

(5) Notwithstanding the provisions of section 991 of title 28, United States Code, and sections 4351 and 5002 of title 18, United States Code, the Chairman of the United States Parole Commission or his designee shall be a member of the National Institute of Corrections, and the Chairman of the United States Parole Commission shall be a member of the Advisory Corrections Council and a nonvoting member of the United States Sentencing Commission, ex officio, until the expiration of the five-year period following the effective date of this Act.  Notwithstanding the provisions of section 4351 of title 18, during the five-year period the National Institute of Corrections shall have seventeen members, including seven ex  officio members.  Notwithstanding the provisions of section 991 of title 28, during the five-year period the United States Sentencing Commission shall consist of nine members, including two ex officio nonvoting members.

Sec. 236(a)(1) Four years after the sentencing guidelines promulgated pursuant to section 994(a)(1), and the provisions of sections 3581, 3583, and 3624 of title 18, United States Code, go into effect, the General Accounting Office shall undertake a study of the guidelines in order to determine their impact and compare the guidelines system with the operation of the previous sentencing and parole release system, and, within six months of the undertaking of such study, report to the Congress the results of its study.

(2) Within one month of the start of the study required under subsection (a), the United States Sentencing Commission shall submit a report to the General Accounting Office, all appropriate courts, the Department of Justice, and the Congress detailing the operation of the sentencing guideline system and discussing any problems with the system or reforms needed.  The report shall include an evaluation of the impact of the sentencing guidelines on prosecutorial discretion, plea bargaining, disparities in sentencing, and the use of incarceration, and shall be issued by affirmative vote of a majority of the voting members of the Commission.

(b) The Congress shall review the study submitted pursuant to subsection (a) in order to determine--

(1) whether the sentencing guideline system has been effective;

(2) whether any changes should be made in the sentencing guideline system; and

(3) whether the parole system should be reinstated in some form and the life of the Parole Commission extended.

Sec. 237(a)(1) Except as provided in paragraph (2), for each criminal fine for which the unpaid balance exceeds $100 as of the effective date of this Act, the Attorney General shall, within one hundred and twenty days, notify the person by certified mail of his obligation, within thirty days after notification, to-- (A) pay the fine in full;

B.23

# Defense Exhibit 9-325

(A) specify, and demonstrate compliance with, an installment schedule established by a court before enactment of the amendments made by this Act, specifying the dates on which designated partial payments will be made; or

(B) establish with the concurrence of the Attorney General, a new installment schedule of duration not exceeding two years, except in special circumstances, and specifying the dates on which designated partial payments will be made.

(2) This subsection shall not apply in cases in which--

(A) the Attorney General believes the likelihood of collection is remote; or

(B) criminal fines have been stayed pending appeal.

(b) The Attorney General shall, within one hundred and eighty days after the effective date of this Act, declare all fines for which this obligation is unfulfilled to be in criminal default, subject to the civil and criminal remedies established by amendments made by this Act. No interest or monetary penalties shall be charged on any fines subject to this section.

(c) Not later than one year following the effective date of this Act, the Attorney General shall include in the annual crime report steps taken to implement this Act and the progress achieved in criminal fine collection, including collection data for each judicial district.

B.24

**Defense Exhibit 9-326**

☆U.S. GOVERNMENT PRINTING OFFICE:1987-196-234

**Defense Exhibit 9-327**

**Defense Exhibit 9-328**

Defense Exhibit 9-329

UNITED STATES SENTENCING GUIDELINES MANUAL