# Defense Exhibit 10

*00114*
*12-4-86*



**CHAIR**
John B. Jones, Jr.
Washington, D.C. (ABA2389)

**CHAIR-ELECT**
Charles W. Hall
Houston, TX (ABA5036)

**VICE CHAIRS**

*Administration*
Stephen J. Martin
San Francisco, CA (ABA2897)

*Committee Operations*
Jere D. McGaffey
Milwaukee, WI (ABA8683)

*Government Relations*
James P. Holden
Washington, DC (ABA5314)

*Professional Services*
William A. Kelley, Jr.
Philadelphia, PA (ABA2004)

*Publications*
Peter L. Faber
New York, NY (ABA2757)

**SECRETARY**
Johannes R. Krahmer
Wilmington, DE (ABA5803)

**ASSISTANT SECRETARY**
Marjorie A. O'Connell
Washington, DC (ABA5751)

**SECTION DELEGATES TO THE HOUSE OF DELEGATES**
Mac Asbill, Jr.
Washington, DC (ABA2738)

Sherwin P. Simmons
Tampa, FL (ABA1574)

**COUNCIL**
The Officers,
Section Delegates, and
Hugh Calkins
Cleveland, OH (ABA2105)
Last Retiring Chair
Ex Officio

Lorence L. Bravenec
College Station, TX

Robert R. Casey
Baton Rouge, LA (ABA3792)

N. Jerold Cohen
Atlanta, GA

Marvin J. Garbis
Baltimore, MD

Martin D. Ginsburg
Washington, DC

Ronald A. Pearlman
St. Louis, MO

Steven C. Salch
Houston, TX (ABA7403)

Theodore Tannenwald, Jr.
Washington, DC (ABA2758)

Thomas D. Terry
San Francisco, CA (ABA2712)

Alvin C. Warren, Jr.
Cambridge, MA (ABA1381)

Morton H. Zalutsky
Portland, OR (ABA8523)

**LIAISON FROM ABA BOARD OF GOVERNORS**
John L. Carey
South Bend, IN (ABA261)

**LIAISON FROM ABA YOUNG LAWYERS DIVISION**
Charles J. Moll, III
San Francisco, CA

**LIAISON FROM LAW STUDENT DIVISION**
Christopher B. Neligan
Athens, GA

**STAFF DIRECTOR**
Christine A. Brunswick
Washington, DC (ABA178)

**AMERICAN BAR ASSOCIATION**

**Section of Taxation**
1800 M Street, N.W.
2nd Floor, South Lobby
Washington, DC 20036-5886
(202) 331-2230
ABA/net: ABA179

STATEMENT OF THE

JOHN B. JONES, JR., CHAIR
SECTION OF TAXATION

ON BEHALF OF

THE SECTION OF TAXATION

OF THE

AMERICAN BAR ASSOCIATION

BEFORE THE

U. S. SENTENCING COMMISSION

ON PRELIMINARY DRAFT SENTENCING GUIDELINES

DECEMBER 3, 1986

**Defense Exhibit 10-1**

## I.   INTRODUCTION

I am John B. Jones, Jr., Washington, D.C., Chairman of the Section of Taxation of the American Bar Association.  I am accompanied by Ian M. Comisky, Chairman of a Task Force of the Section's Civil and Criminal Tax Penalties Committee which has circulated for comment the September 1986 Preliminary Draft Sentencing Guidelines (hereinafter the "Draft").  We again wish to acknowledge the enormous effort undertaken by the Commission in attempting to rationally classify federal offense.  The comments expressed below represent the views of the Section of Taxation and do not represent the position of the American Bar Association.  Our comments are limited to those sections of the Draft dealing explicitly with tax offenses, and the ABA's comments with respect to the other aspects of the Draft are being separately presented to the Commission.  We hope that these comments will be of assistance to the Commission.  They represent a consensus of opinion among those members of the Bar who have many years of collective experience in the representation of persons accused of tax offenses and who, in many cases, are former federal prosecutors.

**Defense Exhibit 10-2**

## II.  OVERVIEW OF DRAFT GUIDELINES

It is apparent that the Draft represents an attempt to control disparity and increase the predictability of criminal tax sentences.  We believe, however, that this effort has led to a level of precision which, in our opinion, undesirably restricts the discretion of the sentencing Judge under federal law.  For example, the Draft creates thirteen (13) evasion amount sentencing categories which receive separate base value offenses.  We believe that this overclassification will result in mechanical application of formulas rather than a sentencing based upon the facts of the case.  In the name of sentencing consistency, we believe this overspecification will strip the sentencing Judge of the discretion necessary to sentence fairly and justly under the tax laws.

Moreover, the Draft clearly intended to and does increase "across the board," by a substantial margin, all criminal tax sentences.  Indeed, the Commentary to the Draft stated, at page 48, that "[i]n addition, to reducing disparity, this guideline should result in a significant increase in average sentence length for large-scale evasions . . . the most significant change is that fewer cases will result in probation or fines without any imprisonment."

-2-

**Defense Exhibit 10-3**

We have distributed, separately to the Commissioners a compilation prepared from Internal Revenue Service, Office of the Commissioner statistics for 1984 and 1985 of current sentences based upon the amount of the deficiency appearing in the Criminal Investigation Division Special Agent's Report. We believe that this figure will be higher than the actual deficiency, if any, established at trial or admitted as a result of a guilty plea. Nonetheless, as is apparent from a comparison of this schedule with the Draft sentencing guidelines, the Draft dramatically increases the minimum sentences. To our knowledge, the Commission has acted in this area to increase criminal tax sentences without empirical evidence, compilation of opinion, or other documentation suggesting that the present system either qualitatively or quantitatively has been improper or is in need of serious overhaul. We believe that without such empirical data, the Commission should use as a starting point in tax sentencing, the actual experience of judges across the country who have been and are presently imposing sentences in criminal tax cases. From this starting point, the Commission, over time, could accumulate an empirical data base to determine whether an increase or decrease in criminal tax sentencing is appropriate. We believe that this approach will provide the data essential for the Commission to determine on an appropriate basis whether modification or, indeed any change in the criminal sentences for tax offenses, is needed.

-3-

**Defense Exhibit 10-4**

We further believe that the number of guilty pleas will be reduced dramatically and the number of trials would be increased substantially as a result of the Draft. The increase in complex, lengthy trials would place an enormous drain upon the already limited resources of the Internal Revenue Service, the Department of Justice and the judicial system in an area where traditionally between 70 and 80 percent of all cases are resolved without trial. Unlike other federal offenses, tax offenses often involve lengthy trials and the presentation of numerous documents and witnesses. We believe the Commission has acted with insufficient data as to the impact of the Draft upon the parts of the Criminal Justice System. Furthermore, minimum security prison facilities where most tax offenders are recommended for incarceration already are so overcrowded that some tax offenders even now are placed in inappropriate facilities or must wait for a vacancy in a minimum security facility before beginning their sentence. Adoption of the Draft in its present form is likely to significantly worsen this present unsatisfactory situation.

We further believe that the level of precision and rigidity in the Draft will significantly reduce defendant cooperation. In many significant criminal tax cases,

-4-

**Defense Exhibit 10-5**

particularly those involving conspiratorial conduct, the government cannot prosecute the principal wrongdoer without the cooperation of one or more defendants who agree to plead guilty and testify in exchange for the promise of the government to make their cooperation known at time of sentencing.  Under present law, it is our collective experience that significant cooperation often results in the elimination or minimization of the period of incarceration.  Under the Draft while cooperation still is considered in sentencing, the maximum reduction in the sentence resulting from cooperation will no longer provide a substantial enough benefit to justify the recommendation of cooperation by counsel for the defense.  We believe the Draft should be modified to permit greater discretion to the sentencing judge when substantial cooperation can be demonstrated.

### III.  SPECIFIC ELEMENTS

In addition to this overview of criminal tax sentencing proposed in the Draft, the Section of Taxation has several specific comments and observations.  The section of the Draft involving tax offenses begins with Section C211 which creates new guidelines for the offense of tax evasion.  As noted, thirteen (13) classifications are created.  The base offense values in the Draft begin at tax evasion up to $1,000 with a value of ten (10), rises to sixteen (16) for evasion amounts over $10,000 and increases up to sixty (60) base offense value points for evasion amounts over $2,000,000.  As noted above,

**Defense Exhibit 10-6**

this represents a dramatic increase in the criminal tax sentences and imposes what will be mandatory incarceration in criminal tax cases. The Department of Justice has a Law Enforcement Manual which creates criminal tax prosecution guidelines (hereinafter "Lem Guidelines"). Under the Lem Guidelines, for a specific item case, a three (3) year case is preferred and an average tax of at least $2,500 per year is required. For an indirect method case, a total tax of $10,000 is required and a three year period is preferred. In our collective experience, it is rare that a case will be brought with a total tax deficiency of less than $10,000 for a three (3) year period. Thus, the base offense value points based for a tax case for a three (3) year period rarely will be less than sixteen (16). As we understand the Draft, this would create a mandatory minimum term of imprisonment absent exceptional circumstances. We believe mandatory jail terms in all tax cases is an unwarranted and undesirable result.

Moreover, the government is required to plead in an indictment and at trial only a substantial understatement and not a specific amount of tax evaded. If the taxpayer pleads guilty, the taxpayer rarely, if ever, admits to an evasion amount. Therefore, as proposed, the Draft would mandate in every case a mini-trial at the time of sentencing to determine the evasion amount. We believe these mini-trials would further delay the sentencing process and lead to a new issue to be raised in every case on appeal.

-6-

**Defense Exhibit 10-7**

Several of the specific offense classification provisions are especially troubling.  The base offense schedule not only increases minimum sentences in criminal tax cases but we believe "double counts" deficiencies by the amount of unlawfully obtained income.  This section also creates a presumption of unlawful activity.  The Draft proposes to add to the deficiency the total amount of all unlawfully obtained income.  As is apparent from the Draft, this results not only in a doubling but perhaps a tripling or quadrupling of the base offense score based upon the taxpayers bracket.  Paradoxically, this provision penalizes the poor rather than the rich taxpayer for the unreported income is more likely to "bump" the poor taxpayer up one or more sentencing categories than it is the taxpayer who begins in a higher sentencing bracket.  We believe this also is an unwarranted departure from current law.  Moreover, we believe the creation of presumption as to unlawful income is of questionable constitutionality.

The standard of unlawfully obtained income is vague and may be impossible to apply.  For example, commercial bribery may be legal under the laws of one state, while illegal in another.  A sentence under the draft should not be required to follow and be made determinative upon the various laws of the 50 states.

The modified real time proposal in the Draft is also troubling in the tax area.  The Draft permits the judge to

**Defense Exhibit 10-8**

sentence based upon the conduct "importantly bound up with the conduct that constitutes the crime charged."  In the tax area, we believe it will always be argued that other tax years charged and uncharged are in furtherance of the tax offense charged in the case.  For example, in a case involving the overstatement of travel and entertainment expenses for a three (3) year period, even if there is a one (1) Count plea or a one (1) Count conviction, we believe that the Government always will contend that the other years were importantly bound up with the conduct that had been charged in the count for which a conviction or a plea occurred.  Under these circumstances, as we understand the modified real time system, the amount of the deficiency for the years not pleaded to and/or not convicted would be added to the counts upon which a conviction or a plea occurred for purposes of sentencing.  Moreover, if there is a plea to multiple counts or there is a conviction upon multiple counts, we believe that the Draft will result in adding the mount of the deficiency for all years to each count pled to or convicted for purposes of sentencing.

The Draft also minimizes sentencing for offenses involving false statements or tax perjury.  This offense often is charged when it is either difficult to prove evasion because of the minimal amount of additional tax involved or in addition to evasion as a lesser included or additional charge to present to the jury.  The tax perjury cases can be more or less serious than those involving tax evasion.  For example, a false statement about the nature of certain corporate expenses

**Defense Exhibit 10-9**

classified as commissions when, in fact, they represented a bribe paid to an IRS agent could be considered much more serious than the evasion of a small amount of tax. The tax perjury grading demonstrates the difficulty of attempting in a rigid fashion, based solely on the amounts of evasion or other factors, to create narrowly defined sentencing guidelines for tax crimes.

We again believe that the Commission should adopt a list of categories of aggravating and mitigating factors that we had earlier proposed to be applied for criminal tax offenses. Factors which increase the seriousness of the offense could include:

1.      Amount of tax. While the Section of Taxation does not believe that the amount of tax should be determinative in tax sentencing, we believe that the amount of tax, resulting from line item of income or deduction should be considered in some general fashion as a factor in sentencing. On most occasions, there will be general agreement that an individual who evades $1,000,000 of taxes and/or makes a false statement involving $1,000,000 should be sentenced more severely than an individual who evades $100 or makes a false statement involving that amount.

-9-

**Defense Exhibit 10-10**

2.   Percentage of understatement.  We believe that in certain circumstances this factor should be weighed as heavily as the gross amount of income evaded.  We believe it may be appropriate to sentence an individual who reports $5,000 of income but fails to report $100,000 of income more severely than an individual who fails to report $100,000 but who reported $6,000,000 of income on his return.

3.   Character or source of income.  While there is no agreement on this factor, we believe that the guidelines might take into consideration whether the false statement or the item evaded involved or arose from narcotics, gambling or other criminal activities independent of the taxes which were not reported.  On certain occasions, it will be acknowledged that evasion of income which results from independently illegal activities should be treated more severely than failure to report income from a legitimate source.  It is important to note, however, that we believe this factor should not be used to punish individuals under the modified real time system for unproven offenses. Moreover, large scale diversions of corporate funds for personal use might, under certain circumstances, be considered as serious an offense or almost as serious an offense as evasion of certain illegal income such as that derived from gambling.

**Defense Exhibit 10-11**

4.  Isolated or conspiratorial action. We believe that the Commission should appropriately take into account whether the events which lead to the evasion or false statement charges involved an individual acting alone or, instead, involved a group of individuals. Merely because a tax conspiracy is charged should not mandate automatically imposition of this factor. Rather, the facts of the given case should be examined.

5.  Concealment of offense. We believe the guidelines should take into account the effort made to conceal the scheme. For example, the use of foreign trusts and offshore corporate accounts for the concealment of money should, on most occasions, be treated more severely than the failure to report similar amounts of income through an omitted W-2.

6.  Obstruction activities. We believe that individuals who engage in obstruction type activities, such as attempted witness tampering or the creation of false documents, should be treated more severely than individuals who did not engage in these types of activities. It is again important to note that this factor should not be used to punish individuals for unproven offenses.

-11-

**Defense Exhibit 10-12**

7.      Principal or agent.  The Section of Taxation believes the character and central, as opposed to peripheral nature, of the activity of the individual who is to be sentenced should always be a consideration in sentencing.  We believe the principal, as opposed to an aider and abetter, should be sentenced in a more severe fashion in a tax related scheme.

We also believe that the Commission should consider and incorporate into the guidelines factors which decrease the seriousness of the offense, as follows:

1.      Attempted remedial measures.  We believe the guidelines should incorporate and take into account attempted remedial measures including the filing of amended tax returns.  While the weight of the measures may depend on whether they were undertaken before or after the commencement of an investigation, most would generally agree that the filing and payment of taxes should be a significant mitigating factor.

2.      Cooperation.  We believe that significant cooperation should enable the defendant to avoid or substantially reduce the exposure to incarceration.

-12-

**Defense Exhibit 10-13**

3.    Wrongful activity not motivated by avarice.  We believe that the guidelines should take a less serious sentencing view where the taxpayer, while engaged in wrongful conduct, was not motivated by personal greed. For example, the acquisition of funds through illegal means and their use for charitable endeavors and other "robin hood syndrome" type activities should be treated in a less severe fashion.

4.    Medical illness/diminished capacity/duress.  We believe that traditional mitigating factors including illness, diminished capacity and duress of the individual taxpayer should be incorporated into the Guidelines. For example, evasion of taxes to generate money to pay medical bills for a sick relative, while not a defense under current law, should be considered a mitigating factor.

5.    Principal or agent.  This is the converse side of the same category discussed as a factor in increasing offense seriousness.  The guidelines should reflect that the conduct of an agent should be punished in a less severe fashion than that of a principal.

While these factors are neither exclusive nor exhaustive, we believe the Commission should consider these

-13-
**Defense Exhibit 10-14**

factors as part of its final Guidelines. Alternatively, if the Commission is committed to the retention of an evasion schedule, we believe that the schedule of evasion amounts should be reduced to grades of low, moderate or high severity based upon the amount of evasion and the factors outlined above rather than a rigid limitation of sentencing based upon the evasion amount alone. We also believe that false statement offenses must be modified and graded in such a fashion as to incorporate a wider range of sentencing factors. We hope this Statement is of assistance to the Commission in its work.

-14-

**Defense Exhibit 10-15**