# Defense Exhibit 11



**U.S. Department of Justice**

Drug Enforcement Administration

---

*Washington, D.C. 20537*

## MAY - 2 1986

Mr. William W. Wilkins, Jr.
Chairman
The United States Sentencing Commission
1331 Pennsylvania Avenue, N.W.
Suite 1200-A
Washington, D.C.   20004

Dear Chairman Wilkins:

Sentencing is an important link in the Government's overall
drug control policy.  Successes by the investigative and
prosecutorial arms of the Government have too frequently
been overturned by sentencing policies.  As the lead agency
in Federal drug law enforcement, the Drug Enforcement Admin-
istration takes special interest and pleasure in making the
following recommendations to the United States Sentencing
Commission.  The Sentencing Commission, in the guidelines it
will issue, can bring the sentencing phase of the criminal
justice process in line with the efforts of the investiga-
tive agencies and prosecutors, to promote deterrence and
help accomplish the Government's drug control objectives.

The national perception is that too many drug traffickers
escape punishment.  Many go undetected.  If caught, many are
not convicted.  If convicted, many escape any real punish-
ment by paying minimal fines, being put on probation or
spending only a very short time in prison.  Traffickers and
would-be traffickers see a system where potential profits
grossly outweigh risks.  The public sees a system unable or
unwilling to punish major drug dealers.  As a result, there
is little deterrence.

# Defense Exhibit 11-1

- 2 -

## Presumptive Imprisonment

In order for the Controlled Substances Act to serve as a deterrent, presumptive imprisonment is required. The ranges of imprisonment can vary significantly. Not all imprisonment need be long. What is critical is that serious drug offenders consistently receive "hard" time. Drug trafficking, unlike crimes committed on a moment's impulse, requires organization and planning. It is the kind of crime that can be deterred by certainty of imprisonment. Certainty of imprisonment will restore public confidence in the system, will cause some convicted traffickers to think twice before repeating their crimes, and will cause some would-be traffickers to pause before getting involved.

## Fines

Fines should be imposed on virtually all drug defendants, but not as a substitute for imprisonment.

Drug traffickers are motivated by the prospect of huge profits. Fines are seen as a mere cost of doing business. Even very large fines are not a deterrent. More importantly, the public and drug enforcement professionals believe drug traffickers should not be permitted to "buy" their way out of prison by paying large fines. Imprisonment is the only true punishment for traffickers.

Nevertheless, fines can play an extremely valuable role in sentencing. Within the last decade, Congress has begun to codify a basic principle of common law: Wrongdoers should be separated from their illicit profits (21 U.S.C. §§ 853 and 855). This is not a matter of punishment; it is an ancient rule of equity. Drug traffickers should be restored to the same economic condition they were in before they began trafficking. Fines should be imposed to exact all of the trafficker's profits. The amount of fine should be measured by a defendant's illegal gains, plus any direct profits earned from ill-gotten wealth. Congress recently strengthened the courts' power to take this remedial approach:

**Defense Exhibit 11-2**

- 3 -

> In lieu of a fine otherwise authorized by...
> (the Controlled Substances Act)...a defendant
> who derives profits or other proceeds from an
> offense may be fined not more than twice the
> gross profits or other proceeds."  21 U.S.C. § 855.

In order to comply with the Congressional intent, courts must be required to routinely impose fines at least equal to a defendant's gains from drug trafficking.  To the extent that assets have already been forfeited, the judge should adjust the fine accordingly.

Probation

Probation, without any time served in prison, is generally insufficient punishment, even for first offenders.  It is especially important that probation not be granted to first offenders who:

- traffic in substantial quantities of controlled substances; or

- derive a substantial part of their income from trafficking; or

- participate as organizers, supervisors or managers in trafficking groups; or

- have and use special skills critical to the commission of drug crimes, such as vessel captains, aircraft pilots and chemists; or

- abuse a public trust to facilitate trafficking, such as public officials, bankers, lawyers, physicians, pharmacists and other licensees; or

- show a willingness to use violence during drug crimes, such as by carrying or using a deadly weapon or by assaulting a law enforcement officer.

Cooperating defendants who provide substantial assistance to the Government in investigating the drug traffic may be considered for probation.

**Defense Exhibit 11-3**

- 4 -

Probation standing alone is clearly inappropriate for all traffickers who have one or more prior Federal, state, local or foreign drug felony convictions.

## Major Factors Controlling the Length of Imprisonment

Four major factors should be considered in formulating presumptive terms of imprisonment in drug trafficking cases:

1. ### The Nature of the Drug Involved

   Different drugs pose different dangers to individuals and society. Clearly, these differences should be considered in determining the severity of drug trafficking offenses. The question is: Who is to take these differences into account -- Congress, prosecutors, juries, judges, or corrections specialists?

   Historically, much of the disparity in punishing drug traffickers can be traced to the personal beliefs of judges concerning the dangers of drugs. It is common to see relatively low-level heroin dealers imprisoned, while large-scale marijuana traffickers are placed on probation. Individuals, such as judges, are poorly equipped to research and evaluate masses of scientific and narrative evidence, and to make consistent scientific and social judgments about drugs.

   In enacting the Controlled Substances Act, Congress considered the available evidence and classified drugs of abuse according to schedules for sentencing and control purposes.

   Congress continues to consider the nature of individual drugs of abuse in determining the severity of offenses. The Crime Control Act of 1984 is the most recent instance. Sentencing guidelines must reflect these Congressional judgments and should prohibit individual jurists from interjecting their personal beliefs into the sentencing process.

**Defense Exhibit 11-4**

- 5 -

2.  The Quantity of the Drug Involved

The more drugs supplied by a trafficker, the greater the harm to society. Quantity of drugs is obviously an important factor in sentencing. Therefore, the Amended Controlled Substances Act sets maximum ranges of sentences based upon the weight of drug involved in an offense.

To establish appropriate ranges of imprisonment within these statutory maximums, we need to refine the statutory model. First, because drugs are distributed in purities too high for ingestion or injection, the mere weight of drugs involved may not accurately reflect the total number of dosage units involved. Purity, as well as weight, must be taken into consideration.

Second, the weight and purity of drugs involved in the particular offense for which a defendant is convicted may not accurately reflect the total quantity of drugs he has supplied to society. Convincing evidence that a defendant has trafficked in greater quantities of drugs must be considered in sentencing.

DEA defendants are classified by the quantity of drugs they are responsible for moving over a one-month time frame. To be rated as a Class I heroin violator, a defendant has been documented to manufacture, smuggle into the United States, or distribute within the United States two kilos of 100% pure heroin (or its equivalent in lesser purity heroin) within a one-month time frame. A Class II heroin violator smuggles at least 500 grams of pure heroin or its equivalent in a one-month time frame. These criteria, which define each class of violator for every drug, are the appropriate ones to use in understanding the significance of a trafficker's crime to the community and the sentence he should receive. (The DEA G-DEP criteria which classifies violators are attached to these proposed guidelines.)

3.  The Trafficker's Role in the Crime

Individuals who have filled significant roles in the traffic are culpable to a greater extent than people who have played a more incidental role. Traffickers who initiate, organize, lead, finance or supply drug trafficking organizations must receive punishment commensurate with their crimes. Public officials who betray the trust placed in them must also be held to a high level of accountability. A distinct series of presumptive ranges is, therefore, appropriate for these roles.

**Defense Exhibit 11-5**

- 11 -

Thank you for the opportunity to make these recommendations.
We look forward to working with you on the final sentencing
guidelines.  Should you or your staff have any questions
regarding any of the above, please contact Bill Alden
(633-1181) who will be our official representative to the
Sentencing Commission.

Sincerely,

John C. Lawn
Administrator

Attachment

**Defense Exhibit 11-6**

G-DEP Quantitative Classifications

The quantity of drugs a trafficker has been distributing or manufacturing over a one-month time frame is a measure of his significance to the drug traffic.  G-DEP ratings of the quantity of drugs moved in a one month time frame follow:

|  | G-DEP III Quantity | G-DEP II Quantity | G-DEP I Quantity |
|---|---|---|---|
| Heroin (100% pure or equivalent) | 125 grams | 500 grams | 2 kilos |
| Cocaine (100% pure or equivalent) | 250 grams | 1 kilo | 4 kilos |
| Morphine Base | 125 grams | 500 grams | 2 kilos |
| Opium | 1 kilo | 5 kilos | 20 kilos |
| Any combination of Schedule I, II, III, IV or V controlled drugs. | 10,000 d.u.* | 50,000 d.u. | 200,000 d.u. |
| Marijuana | 500 kilos | 1,000 kilos | 2,000 kilos |
| Hashish | 25 kilos | 50 kilos | 100 kilos |
| Hashish Oil | 500 cc | 1 liter | 2 liters |

*dosage units

**Defense Exhibit 11-7**

PRESUMPTIVE PRISON RANGES - VIOLATORS OF SECTION 841 (ALL TRAFFICKING CHARGES)*

| | FIRST OFFENSE ** | | | SECOND OFFENSE ** | | | THIRD OFFENSE ** | | |
|---|---|---|---|---|---|---|---|---|---|
| | G-DEP III--IV QTY | G-DEP II QTY | G-DEP I QTY | G-DEP III--IV QTY | G-DEP II QTY | G-DEP I QTY | G-DEP III--IV QTY | G-DEP II QTY | G-DEP I QTY |
| LSD | 20-25 MOS | 28-35 MOS | 4-5 YEARS | 5-6 YEARS | 6-7 1/2YRS | 8-10 YEARS | 8-10 YEARS | 12-15 YRS | 20-25 YRS |
| PCP | 20-25 MOS | 28-35 MOS | 4-5 YEARS | 5-6 YEARS | 6-7 1/2YRS | 8-10 YEARS | 8-10 YEARS | 12-15 YRS | 20-25 YRS |
| HEROIN | 20-25 MOS | 28-35 MOS | 4-5 YEARS | 5-6 YEARS | 6-7 1/2YRS | 8-10 YEARS | 8-10 YEARS | 12-15 YRS | 20-25 YRS |
| COCAINE | 20-25 MOS | 28-35 MOS | 4-5 YEARS | 5-6 YEARS | 6-7 1/2YRS | 8-10 YEARS | 8-10 YEARS | 12-15 YRS | 20-25 YRS |
| MARIJUANA | 20-25 MOS | 28-35 MOS | 4-5 YEARS | 4-5 YEARS | 5-6 YEARS | 6-7 1/2YRS | 6-7 1/2YRS | 7-8 YEARS | 8-10 YRS |
| HASH OIL | 20-25 MOS | 28-35 MOS | 4-5 YEARS | 4-5 YEARS | 5-6 YEARS | 6-7 1/2YRS | 6-7 1/2YRS | 7-8 YEARS | 8-10 YRS |
| HASHISH | 20-25 MOS | 28-35 MOS | 4-5 YEARS | 4-5 YEARS | 5-6 YEARS | 6-7 1/2YRS | 6-7 1/2YRS | 7-8 YEARS | 8-10 YRS |
| OTHER | 20-25 MOS | 28-35 MOS | 4-5 YEARS | 4-5 YEARS | 5-6 YEARS | 6-7 1/2YRS | 6-7 1/2YRS | 7-8 YEARS | 8-10 YRS |
| SCHEDULE III | 20-25 MOS | 1 3/4-2YRS | 2-2 1/2YRS | 3-3 3/4YRS | 3 3/4-4YRS | 4 1/2-5YRS | 5-6 YEARS | 5-6 YEARS | 5-6 YEARS |
| SCHEDULE IV | 20-25 MOS | 1 3/4-2YRS | 2-2 1/2YRS | 3-3 3/4YRS | 33/4-41/2Y | 4 1/2-5YRS | 5-6 YEARS | 5-6 YEARS | 5-6 YEARS |
| SCHEDULE V | 6-8 MOS | 8-10 MOS | 10-12 MOS | 12-18 MOS | 12-18 MOS | 12-18 MOS | 18-24 MOS | 18-24 MOS | 18-24 MOS |

(PAGE 1 OF 2)

**Defense Exhibit 11-8**

## FINES *

WITHSTANDING THE PRISON SENTENCE, FINES EQUAL TO OR UP TO TWICE THE ILLEGAL PROFITS SHALL BE LEVIED AGAINST ALL TRAFFICKERS

## AGGRAVATING FACTORS **

YEAR SHOULD BE ADDED TO THE FINAL SENTENCE FOR EACH AGGRAVATING FACTOR. AGGRAVATING FACTORS ARE:

1) THE WILLINGNESS TO USE VIOLENCE.
2) CRIME COMMITTED WHILE ON BAIL, PROBATION, OR IN CUSTODY.
3) VIOLATION OF PUBLIC TRUST.
4) LARGE AMOUNTS OF UNEXPLAINED ASSETS OR CASH.

## MITIGATING FACTORS

YEAR SHOULD BE SUBTRACTED FROM THE FINAL SENTENCE FOR A PERIPHERAL ROLE.

## SPECIAL CONSIDERATION

CIAL CONSIDERATION BELOW THE PRESUMPTIVE RANGE SHOULD BE AVAILABLE FOR JUVENILE OFFENDERS AND COOPERATING INDIVIDUALS.

TE: RANGES HAVE BEEN CONSTRUCTED SO THAT THE HIGHER END OF EACH RANGE EXCEEDS THE LOWER END BY NO MORE THAN 25% AS STATED IN LAW.

(PAGE 2 OF 2)

**Defense Exhibit 11-9**

PRESUMPTIVE PRISON RANGES - VIOLATORS OF SECTION 841-(LAB OPERATORS,HEADS OF ORGANIZATIONS, FINANCIERS,CORRUPT PUBLIC OFFICIALS & SOURCES OF SUPPLY) *

| | FIRST OFFENSE ** | | SECOND OFFENSE ** | | THIRD OFFENSE ** | |
|---|---|---|---|---|---|---|
| | G-DEP II | G-DEP I | G-DEP II | G-DEP I | G-DEP II | G-DEP I |
| LSD | 3 1/4-4 YEARS | 5--6 YEARS | 7-8 1/2 YEARS | 9-11 YEARS | 13-16 YEARS | 21-26 YEARS |
| PCP | 3 1/4-4 YEARS | 5--6 YEARS | 7-8 1/2 YEARS | 9-11 YEARS | 13-16 YEARS | 21-26 YEARS |
| HEROIN | 3 1/4-4 YEARS | 5--6 YEARS | 7-8 1/2 YEARS | 9-11 YEARS | 13-16 YEARS | 21-26 YEARS |
| COCAINE | 3 1/4-4 YEARS | 5--6 YEARS | 7-8 1/2 YEARS | 9-11 YEARS | 13-16 YEARS | 21-26 YEARS |
| MARIJUANA | 3 1/4-4 YEARS | 5--6 YEARS | 6-7 1/2 YEARS | 7-8 1/2 YEARS | 8-9 YEARS | 9-11 YEARS |
| HASH OIL | 3 1/4-4 YEARS | 5--6 YEARS | 6-7 1/2 YEARS | 7-8 1/2 YEARS | 8-9 YEARS | 9-11 YEARS |
| HASHISH | 3 1/4-4 YEARS | 5--6 YEARS | 6-7 1/2 YEARS | 7-8 1/2 YEARS | 8-9 YEARS | 9-11 YEARS |
| OTHER | 3 1/4-4 YEARS | 5--6 YEARS | 6-7 1/2 YEARS | 7-8 1/2 YEARS | 8-9 YEARS | 9-11 YEARS |
| SCHEDULE III | 3 1/4-4 YEARS | 5--6 YEARS | 4-5 YEARS | 6-7 YEARS | 6-7 YEARS | 6-7 YEARS |
| SCHEDULE IV | 24-28 MOS | 25-30 MOS | 3 3/4-4 YEARS | 4-5 YEARS | 4-5 YEARS | 4-5 YEARS |
| SCHEDULE V | 8-10 MOS | 10-12 MOS | 18-24 MOS | 18-24 MOS | 18-24 MOS | 18-24 MOS |

(PAGE 1 OF 2)

**Defense Exhibit 11-10**

## *FINES

VITHSTANDING THE PRISON SENTENCE, FINES EQUAL TO OR UP TO TWICE THE ILLEGAL PROFITS SHALL BE LEVIED AGAINST ALL TRAFFICKERS.

## ** AGGRAVATING FACTORS

YEAR SHOULD BE ADDED TO THE FINAL SENTENCE FOR EACH AGGRAVATING FACTOR. AGGRAVATING FACTORS ARE:

1) MORE THAN ONE ROLE AS LAB OPERATOR, HEAD OF ORGANIZATION, FINANCIER, CORRUPT OFFICIAL OR SOURCE OF SUPPLY.
2) THE WILLINGNESS TO USE VIOLENCE.
3) CRIME COMMITTED WHILE ON BAIL, PROBATION, OR IN CUSTODY.
4) VIOLATION OF PUBLIC TRUST.
5) LARGE AMOUNTS OF UNEXPLAINED ASSETS OR CASH.

## SPECIAL CONSIDERATION

CIAL CONSIDERATION BELOW THE PRESUMPTIVE RANGE SHOULD BE AVAILABLE FOR JUVENILE OFFENDERS AND COOPERATING INDIVIDUALS.

(PAGE 2 OF 2)

**Defense Exhibit 11-11**

PRESUMPTIVE PRISON RANGES - VIOLATION OF SECTION 842

| DRUG SCHEDULE | FIRST OFFENSE | | SECOND OFFENSE | |
|---|---|---|---|---|
| | G-DEP QTY III - IV | G-DEP QTY I - II | G-DEP QTY III - IVS | G-DEP QTY I - II |
| SCHEDULE I - II | *8 MONTHS- 9 MONTHS | 9 MONTHS- 1 YEAR | *16 MONTHS- 20 MONTHS | 20 MONTHS- 1 YEAR |
| SCHEDULE III - IV | 6 MONTHS- 7 MONTHS | 7 MONTHS- 8 MONTHS | 1 YEAR | 12 MONTHS- 16 MONTHS |
| SCHEDULE V | 3 MONTHS- 4 MONTHS | 4 MONTHS- 5 MONTHS | 1 YEAR | 1 YEAR |

ADDITIONAL *

F THE CONVICTION OF 842 STATUTE DOES NOT INVOLVE DOCUMENTED QUANTITIES OF CONTROLLED SUBSTANCES, THE SENTENCE SHOULD BE THE
:ANT ASD THAT FOR A G-DEP III OR IV (UNDER SCHEDULE II) IN ADDITION TO ANY FINES.

**Defense Exhibit 11-12**

VIOLATIONS ARE PRIMARILY RECORD KEEPING. PENALTIES DESCRIBED IN 842(c) (1) ARE CIVIL. THE CRIMINAL PENALTIES ARE FOUND IN AGRAPHS (2) (A) AND (B). ITEMS TO BE CONSIDERED ARE:

(1) AMOUNTS OF CONTROLLED SUBSTANCES INVOLVED,

(2) PRIOR CONVICTIONS, AND

(3) ANY ADDITIONAL FELONIES COMMITTED UNDER THE CONTROLLED SUBSTANCES ACT, OR OTHER LAW OF THE UNITED STATES.

(PAGE 2 OF 2)

**Defense Exhibit 11-13**

PRESUMPTIVE PRISON RANGES - VIOLATORS OF SECTION 843 *

| | FIRST OFFENSE ** | | | | SECOND OFFENSE ** | | | |
|---|---|---|---|---|---|---|---|---|
| | G-DEP III--IV QTY | G-DEP II QTY | G-DEP I QTY | REGISTRANT | G-DEP III--IV QTY | G-DEP II QTY | G-DEP I QTY | REGISTRANT |
| SCHEDULE I AND II | 20-25 MOS | 3- 3 1/2 YRS | 3 1/2-4 YRS | 4 YRS | 5-6 YRS | 6-7 YRS | 7-8 YRS | 8 YRS |
| SCHEDULE III | 20-25 MOS | 1 3/4 - 2 YRS | 3-3 1/2 YRS | 4 YRS | 3 1/2-4 YRS | 4-5 YRS | 5-6 YRS | 6 YRS |
| SCHEDULE IV | 20-25 MOS | 1 3/4 - 2 YRS | 2 1/2-3 YRS | 3 1/2 YRS | 3 1/2-4 YRS | 4-4 1/2 YRS | 4 1/2-5 YRS | 5 YRS |
| SCHEDULE V | 4-5 MOS | 6-7 1/2 MOS | 10-12 MOS | 2 YRS | 12-18 MOS | 12-18 MOS | 12-18 MOS | 3 YRS |

(PAGE 1 OF 2)

**Defense Exhibit 11-14**

## FINES *

ITHSTANDING THE PRISON SENTENCE, FINES EQUAL TO OR UP TO TWICE THE ILLEGAL PROFITS SHALL BE LEVIED AGAINST ALL TRAFFICKERS

## ADDITIONAL FACTORS **

PERSON FOUND GUILTY OF USC 843, INCLUDING MULTIPLE SCHEDULE VIOLATIONS, SHOULD RECEIVE THE MAXIMUM AMOUNT ALLOWABLE FOR THE
ER SCHEDULE, e.g., COMBINATIONS OF SCHEDULE II AND SCHEDULE IV SHOULD RECEIVE SENTENCE UNDER SCHEDULE II.

**Defense Exhibit 11-15**

PRESUMPTIVE PRISON RANGES - VIOLATORS OF SECTION 843c

(USE OF A COMMUNICATION FACILITY)

|  | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|
| ANY CONTROLLED SUBSTANCE | 18 - 22 MONTHS | 2 - 2 1/2 YEARS | 3 - 3 1/2 YEARS |

(PAGE 1 OF 1)

**Defense Exhibit 11-16**

PRESUMPTIVE PRISON RANGES – VIOLATION OF SECTION 844 (SIMPLE POSSESSION)

|  | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE |
|---|---|---|---|
| LSD | 0-6 MOS | 10-12 MOS | 15-18 MOS |
| PCP | 0-6 MOS | 10-12 MOS | 15-18 MOS |
| HEROIN | 0-6 MOS | 10-12 MOS | 15-18 MOS |
| COCAINE | 0-6 MOS | 10-12 MOS | 15-18 MOS |
| MARIJUANA | 0-6 MOS | 7-8 MOS | 15-18 MOS |
| HASH OIL | 0-6 MOS | 7-8 MOS | 15-18 MOS |
| HASHISH | 0-6 MOS | 7-8 MOS | 15-18 MOS |
| OTHER | 0-6 MOS | 7-8 MOS | 15-18 MOS |
| SCHEDULE III | 0-6 MOS | 7-8 MOS | 10-12 MOS |
| SCHEDULE IV | 0-6 MOS | 7-8 MOS | 10-12 MOS |
| SCHEDULE V | 0-6 MOS | 7-8 MOS | 10-12 MOS |

NOTE: FIRST OFFENSE PRESUMPTIVE RANGE EXCEEDS THE 25% LIMITATION TO ALLOW THE COURT SUFFICIENT DISCRETION EXPECTED IN THIS SECTION.

**Defense Exhibit 11-17**

PRESUMPTIVE PRISON RANGES - VIOLATORS OF SECTION 848 (CONTINUING CRIMINAL ENTERPRISE) *

|  | FIRST OFFENSE ** | SECOND OFFENSE ** |
|---|---|---|
| LSD | 25-30 YEARS | 35-40 YEARS |
| PCP | 25-30 YEARS | 35-40 YEARS |
| HEROIN | 25-30 YEARS | 35-40 YEARS |
| COCAINE | 25-30 YEARS | 35-40 YEARS |
| MARIJUANA | 25-30 YEARS | 35-40 YEARS |
| HASH OIL | 25-30 YEARS | 35-40 YEARS |
| HASHISH | 25-30 YEARS | 35-40 YEARS |
| OTHER | 25-30 YEARS | 35-40 YEARS |
| SCHEDULE III | 20-25 YEARS | 30-35 YEARS |
| SCHEDULE IV | 15-18 YEARS | 20-25 YEARS |
| SCHEDULE V | 12-15 YEARS | 18-22 YEARS |

(PAGE 1 OF 2)

**Defense Exhibit 11-18**

## *FINES

NITHSTANDING THE PRISON SENTENCE, FINES EQUAL TO OR UP TO TWICE THE ILLEGAL PROFITS SHALL BE LEVIED AGAINST ALL  TRAFFICKERS.

## ** AGGRAVATING FACTORS

F YEARS SHOULD BE ADDED TO THE FINAL SENTENCE FOR EACH AGGRAVATING FACTOR. AGGRAVATING FACTORS ARE:

      1) LAB OPERATORS

      2) HEADS OF ORGANIZATIONS

      3) FINANCIERS

      4) CORRUPT OFFICIALS

      5) SOURCES OF SUPPLY

      6) THE WILLINGNESS TO USE VIOLENCE.

      7) CRIME COMMITTED WHILE ON BAIL, PROBATION, OR IN CUSTODY.

      8) VIOLATION OF PUBLIC TRUST AND LARGE AMOUNTS OF UNEXPLAINED ASSETS OR CASH.

## SPECIAL CONSIDERATION

IAL CONSIDERATION BELOW THE PRESUMPTIVE RANGE SHOULD BE AVAILABLE FOR JUVENILE OFFENDERS AND COOPERATING INDIVIDUALS.

(PAGE 2 OF 2)

**Defense Exhibit 11-19**

- 6 -

Mid- and lower-level decision makers and those with specialized skills -- such as chemists, captains and pilots -- are not as culpable or as dangerous as leaders or financiers, but they deserve more punishment than workers without specialized skills who play only peripheral roles. These levels of involvement must be considered in selecting the appropriate table of presumptive ranges.

Conversely, we do not draw any distinctions between importers, manufacturers or distributors. Each activity is an equally culpable link in the chain of drug distribution. We would not punish importers or manufacturers differently than distributors, assuming similar quantities of drugs are involved.

4.  **A Record of Prior Drug Felony Convictions**

Traffickers with one or more prior Federal, state, local or foreign drug felony convictions must be sentenced to increased terms of imprisonment.

Repeat offenders are likely to be career drug traffickers. They have developed experience in dealing in drugs and evading detection and seem likely to traffic in drugs again. Therefore, they must be incapacitated by a substantial term of imprisonment.

Incorrigibles with two or more prior drug felony convictions should be sentenced to a term of imprisonment at or near the maximum term allowed by law.

Because drug traffickers operate in an interstate and international arena, because the Federal Government and the states share concurrent jurisdiction over traffickers, and because the United States is entering into stronger treaties and international agreements on drug trafficking, prior state and foreign drug felony convictions should be considered in sentencing repeat and incorrigible offenders.

**Aggravating Factors**

The following four factors are not essential elements in assessing the severity of drug offenses. Yet, their relationship to drug trafficking is strong enough to warrant increasing by one year the presumptive range of imprisonment for a drug offense.

**Defense Exhibit 11-20**

- 7 -

1.  **Willingness to Use Violence**

Major drug traffickers are often armed.  Weapons have become accepted tools in the drug trade and a trafficker's willingness to resort to violence puts law enforcement officials and the public at serious risk of physical injury and death.  This risk, which is distinct from the physical and psychological harm drugs inflict on society, justifies enhancing a convicted trafficker's sentence.

2.  **Crimes Committed While on Bail, Probation or in Custody**

The commission of a drug crime while on bail, probation or in custody demonstrates an indifference to the laws of society.  Individuals who commit drug crimes under these conditions deserve longer incarceration.

3.  **Violations of Public Trust**

Law enforcement officers, public officials, bankers, lawyers, physicians, pharmacists, licensees and all others in positions of public trust who abuse their powers to traffic in drugs should receive enhanced prison terms.

The misuse of special powers facilitates drug offenses. It shortens the time needed to complete the crimes.  It makes the violations harder to detect and more difficult to prove at trial.  Physicians and pharmacists, for example, by abusing their prescription powers, can pump large quantities of controlled drugs into the community much more quickly than normally is required to import and distribute these drugs from foreign sources.  Moreover, they can push drugs behind the veil of licenses, making detection and prosecution more difficult.  Once convicted, they deserve enhanced punishment.

4.  **The Extent of Illegal Profits**

Possession of large sums of unexplained cash is highly relevant evidence of drug trafficking.  Drug traffickers possess large sums of cash for several reasons:  the money was received in exchange for large quantities of drugs, or is intended for exchange for a large quantity of drugs, or is a reserve intended for exchange for drugs that might suddenly become available, or is pure profit.

**Defense Exhibit 11-21**

- 8 -

Large sums of cash in the hands of traffickers should be equated with an equivalent quantity of drugs. Cash hoards are a good measure of the quantity of drugs a trafficker is supplying to society. Large sums of cash or unexplained wealth are strong circumstantial evidence that a trafficker occupies a high-level role in his criminal organization and that he is a professional criminal who earns his living dealing in drugs. The connection between large sums of cash and the other major sentencing factors is so strong that unexplained possession of cash or wealth by a trafficker must, by itself, be considered a major factor in determining imprisonment beyond the presumptive range.

Mitigating Factors

1.  Juvenile Offenders

We rarely encounter significant drug traffickers below eighteen years of age. Obviously, juvenile drug traffickers need not be treated consistent with adult offenders. We defer to the Sentencing Commission to determine the appropriate sentencing of juvenile drug offenders.

We do have one recommendation, however. If a convicted juvenile returns to drug dealing after reaching majority, and if he is subsequently convicted of trafficking, his conviction(s) as a juvenile should be considered in classifying him as a repeat adult offender. Under these circumstances, he poses the same danger to society as all other career traffickers.

2.  Cooperating Defendants

The Supreme Court has held that a defendant's willingness to cooperate with authorities, particularly in the investigation of others, is a valid consideration in sentencing. This assistance is extremely valuable, especially in drug law enforcement.

The nature of drug crimes is such that witnesses do not voluntarily come forward. Drug transactions, especially at the highest levels, take place out of public view. Whatever witnesses there are, are likely to be criminally involved in drug trafficking themselves. The cooperation of knowledgeable defendants in sharing their information is, therefore, one of the Government's best methods for gaining evidence of the drug underworld.

**Defense Exhibit 11-22**

- 9 -

Defendants are often willing to cooperate with the Government only if they will receive consideration at time of sentencing. Sentencing guidelines must continue to give the Government the opportunity to persuade defendants to cooperate. Effective drug enforcement depends on this.

If a defendant is willing to cooperate before being convicted, the prosecutor can consider the significance of that assistance in determining which charges to press. Unfortunately, a defendant might not agree to cooperate with authorities until after his conviction. In such cases, it is essential that some mechanism exist to consider a defendant's cooperation when imposing his sentence. Occasionally, a defendant will not agree to cooperate until after he has been sentenced and imprisoned. When this occurs, it is necessary for the authorities to be able to seek a reduction of his sentence under Rule 35 of the Federal Rules of Criminal Procedure.

We expect the Commission will endorse these powers in its Sentencing Guidelines. We also expect that these provisions will apply to virtually all offenses within the United States Code. Should the Commission decide to restrict the existing power of judges to mitigate or reduce the sentences of cooperating defendants, we ask that a special exception be made for cooperating drug defendants.

In any event, the Commission's Guidelines should make clear that a defendant is not entitled to receive a mitigated or reduced sentence for providing relatively minor assistance to authorities. Courts should satisfy themselves that a defendant has provided substantial assistance to the Government before any consideration in sentencing is warranted.

Once a substantial level of assistance is achieved, it becomes extremely difficult to quantify the degree of cooperation, or the degree of consideration in sentencing that is appropriate. We suggest to the Commission that this is an area requiring greater

**Defense Exhibit 11-23**

- 10 -

flexibility.  When a defendant's cooperation serves sub-
stantial public interests, the court should be free to
impose less than the minimum term of imprisonment asso-
ciated with the offense.

Minimally Relevant Considerations

Certain factors such as willingness to plead guilty and drug
dependence, may be minimally relevant in sentencing drug
traffickers.  While we would not preclude courts from con-
sidering these factors in selecting a term of imprisonment
within the presumptive range set for an offense, we object
to any consideration of these factors in selecting a term of
imprisonment less than the minimum of the presumptive range.

Consecutive Versus Concurrent Sentencing

Each count in an indictment represents a defendant's involve-
ment in a serious crime.  The investigative agency and
prosecutor invest time and effort in multiple counts because
under the law each count is considered a serious offense.
If a defendant is sentenced to concurrent terms of imprison-
ment, the message is sent that the crimes are not serious
offenses.  Sentences for a conviction on more than one count
of an indictment should be served consecutively.  The judge,
in determining the total length of sentence from within the
presumptive ranges, should take the fact of multiple convic-
tions into account and select from the lower end of the pre-
sumptive ranges.

Recommended Sentencing Guidelines for Drug Violators

The enclosed charts outline DEA's recommended sentences for
violators of Sections 841, 842, 843, 844 and 848 of the
Amended Controlled Substances Act.  The presumptive prison
ranges are based on current laws and do not exceed the maxi-
mum sentences allowable under Title 21.  The severity of the
sentences is based on three factors: 1) the number of the
offense (i.e., first, second or third); 2) the quantity and
type of the drug trafficked or possessed as distinguished by
DEA's G-DEP criteria; and 3) the role or position of the
violator in the drug traffic.  In preparing our recommenda-
tions, we also considered the information you provided to us
regarding the sentences currently imposed by the Federal
courts.

**Defense Exhibit 11-24**