# Defense Exhibit 12

**DRAFT**

Agenda

Commission Meeting

August 6, 1986

1.   Call to Order

2.   Chapter III Adjustments

3.   Chapter II

     -   Offenses Involving Criminal Enterprise

4.   Adjournment

**Defense Exhibit 12-1**

Chairman Wilkins called the meeting to order. Before discussing the subjects on the agenda, he asked the Commission members to think about the current assumption that all sanction units are equal and that 50% of the sanction units must be satisfied by a prison term. While he believed that theory had merit, he reminded the Commission to keep in mind a case where many sanction units were accumulated, and the distribution of those units once the prison term sanction units were allocated. He mentioned the possibility that there may not be enough sanction units left over to give an individual adequate intensive probation.

Commissioner Gainer said when the crime control elements have been systematically worked into the harm values, the harm values may be increased to allow for the distribution of more sanction units for adequate intensive probation, or for another type of supervisory control. Commissioner Robinson stated if there are not enough sanction units to allocate for effective post-incarceration supervision, there may be a basic problem in generating the sanction units. If there was something in the offense or in the offender that warranted more punishment, that point should have been considered at the time of sentencing and adequate sanction units issued then. The Chairman said generation of more sanction units would push the offense over the threshold where imprisonment is required. Commissioner Robinson said the current range is 26 units or less, and that would generate a long period of intensive probation. Commissioner

2

**Defense Exhibit 12-2**

Corrothers said the Chairman was trying to avoid the Commission being in a position it may want to change later. Commissioner Robinson said there must be a proper way to stay out of that position. The Chairman said the actual number of sanction units may change, but the six month issue would still remain.

Dave Lombardero suggested a solution to the issue where for lower numbers of total sanction units, a lower percentage of sanction units could be allocated to incarceration. In situations with a large number of sanction units, a higher percentage of the sanction units would be allocated to imprisonment. This would lead to a lesser percentage of imprisonment for minor crimes and a higher percentage of imprisonment for more serious crimes. The Chairman said there was some merit to that idea. He asked the Commission to consider alternate ways of allocating sanction units, because the current system is strained at the low end of the scale.

Commissioner Robinson suggested changing the system to generate more sanction units where one sanction unit would equal one week. The Chairman said more sanction units would warrant imprisonment. Commissioner Robinson said the range is wider than the Commission was considering, and as long as the range is one year or less, there is a probation option. The Chairman said there is still the problem of sanction units generating enough post-release supervision time. Commissioner Gainer repeated that the crime control aspects of sentencing may alleviate the problem. He explained that supervisory release was implemented

3

**Defense Exhibit 12-3**

to provide mild incapacitation and special deterrence, so maybe the units would be increased for someone who is especially prone to commit crime. He felt those types of offenses warrant special crime control consideration. The Chairman said it was then necessary to identify those crime control elements. Commissioner Gainer thought that would be possible.

Judge Breyer said his impression is that the translation of sanction units was difficult to consider in the abstract, but once the offenses were listed, described, and assigned numbers, the patterns of translation will be more easily identified. The Chairman said he had looked at translation with the current numbers. Judge Breyer suspected the translation will differ with different groups of crime. The Chairman agreed.

Judge MacKinnon asked what the figures in the proposals mean. Chairman Wilkins said, for drafting purposes, one sanction unit is equivalent to one month. Judge MacKinnon said that conflicts with the harms approach, because the original offense already includes some harms, so some elements will be counted twice. The Chairman said the double count issue had been confronted and the add-ons were aggravators to the basic harms inherent in the crime. Denis said arbitrary numbers were put in the draft merely to make discussions easier. When Chapter Four and the allocation of sanction units are decided, he expected the Commission to return to the draft to examine the numbers more carefully. The Chairman said he hoped the numbers had some relation to others. Denis said that had been the aim.

4

**Defense Exhibit 12-4**

Judge MacKinnon said no number could be assigned to the basic offense because it contained some minimal harm. If some figure was assigned and aggravators were added on, there would be some double counting. Commissioner Gainer agreed there was danger. Judge MacKinnon said Denis' memorandum on modified real offense sentencing did not seem very workable since defendants rarely negotiate on charges.

Commissioner Corrothers prefaced the discussion on Chapter Three by commending Suzanne Conlon's work on that subject. She acknowledged that the Commission has a talented staff, but felt Suzanne's work was outstanding. Commissioner Gainer added that Suzanne very properly had not sided with one point of view or the other.

Suzanne introduced the threatening harms section. The first proposal was to incorporate the threat in the basic harm value of an offense since certain generic offenses always contain threats. Aggravated threats could be captured in modifiers. She noted a problem of the wide range of variables in categorizing threats. Threats are often implicit; applying the standard "victim's reasonable belief" would rely on a judge's decision and sentencing calculations would then be based on subjective judgment. She believed this left room for disparity. Another problem was the number of crimes completed once the threat is made, such as threatening the president. The proposal suggested aggravating those crimes of threat by differentiating the types of threatening behavior. One consideration is how immediate or

5

**Defense Exhibit 12-5**

remote the threat is. Another is whether the threat was physical or economic.

Commissioner Gainer agreed that these considerations were worth examining. He believed an objective standard, such as "reasonable person" would be better than a subjective standard. He noted not all violent offenses have an inherent threat. There are cases of surprise attack. Part of the reason for variable approaches is differing perceptions among the drafters. The concern should be the fear generated, not the threat. He suggested approaching the question not by what amount the offender threatened, but what amount of credible fear was generated. He believed whatever the refinements, the proper way of looking at it may be the fear generated. That situation would cover, for example, the reputation of a loan shark. Commissioner Corrothers was concerned that the victim would need to testify to that belief. Commissioner Gainer said the objective standard of "reasonable person" would eliminate that. Alan pointed out that in Commissioner Gainer's system, a potential bank robber with a gun or one just pretending to carry a gun would be treated the same, if the fear generated was equivalent in both cases.

Commissioner Robinson said there were two questions: that of the objective versus the subjective standard for threat, and the drafting issue. He said he understood that Suzanne's memorandum described a subjective standard. He asked Commissioner Corrothers if she agreed. She said she objected to the subjective view because the victim would be unduly harassed

6

**Defense Exhibit 12-6**

at sentencing.  Commissioner Robinson said the objective standard seemed better, and he supported changing to the objective standard in the current draft.  As far as structure, he suggested having threats separate seemed quite complicated.  He was concerned that each offense would have to explicitly state how much threat was incorporated, so it would not be double counted in the aggravating factors.  Having threat incorporated in some crimes and not others precluded the formulation of a rule.  He stated that was the rationale behind an element system.  If one moves to an offense-based system, there must be a much more complex way determining when threats are aggravators and when they are not.  Judge MacKinnon said this gets back to the indictment.  He said the wording of the charge was already in the indictment.  If the indictment does not say threat but intent, no threat is involved.  He suspected much of this problem will be disposed by the actual charge.  Commissioner Robinson agreed if there was a robbery charge in the current guidelines, there was no need for a threat aggravator.  He believed a threat aggravator in that case would be double counting.  He said one could have an offense-based system or an element-based system, but not both. Judge MacKinnon stated if the offender were charged with "intent" but there actually was a threat, the sentencing judge could consider it.  Commissioner Robinson said it could be considered in the 25% range or outside the guidelines.  Judge MacKinnon disagreed.  He said if the charge of "intimidation" had been dismissed, the sentencing judge could consider it.  Commissioner

7

**Defense Exhibit 12-7**

Robinson had no problem with an offense-based system, but he said such a system could not have element-based aggravators, such as "threat".

The Chairman asked how to count a threat which was not an element of the offense but occurred during the commission of another offense.   Judge MacKinnon said it could be done. Commissioner Gainer said an offense-based system must have ways to pick up threats since such a wide variety of threats could occur.   Commissioner Robinson said there would then be ten categories of robbery.  Commissioner Block said when moving to an offense-based system, there is some notion of the average amount of threat.  Commissioner Gainer said somehow that factor has to be captured.  Judge MacKinnon said if an offense does not include a threat, or if an additional threat is made, it can be added onto the base harm of that offense.  Commissioner Robinson said in such a combined system, there must be an explanation of what degree of threat is already incorporated into every offense. Judge MacKinnon said the prosecutor would know what threat is included in the offense.  Commissioner Robinson said once it was necessary to explain what degree of threat was in the crime, it has moved back to an element system.

Judge Breyer said Commissioner Robinson had described exactly what the Commission is doing.   Judge Breyer said Commissioner Robinson's second point solves the first problem: it was a question of drafting.  In his opinion, what Commissioner Robinson and Judge MacKinnon had described was that there was no

8

**Defense Exhibit 12-8**

one standard aggravator called "threat" for each offense. Offense by offense, the Commission would consider whether a threat would change the punishment. He said that would not be a problem because there would be a large volume of offenses where the threat would be so unrelated, it should have been charged separately. Another category of offenses would have threat built in, such as bank robbery. A third category is offenses where the threat is not in the offense definition, but may be needed as an add-on. He suggested waiting to see where those situations arose, but noted that those kinds of issues were on his checklist. He suggested the question of objective or subjective view should be considered then, although he believed it would never come up.

Commissioner Robinson said that could be done, for threat and every other element in Chapter Three, but the result would be so voluminous as to be unpractical. Rather, the Commission should break offenses down into elements that occur over and over. Judge Breyer disagreed. Commissioner Robinson predicted the result from such a system would be much, much longer than an element system. He felt the proposal was too complicated to be workable. Judge MacKinnon noted the latest Supreme Court ruling on Pennsylvania's sentencing guidelines in the case where the possession of a gun was not part of the charged offense, but could be considered in the sentencing system. They have also said if someone pleads to only one count, as part of the sentencing process, dismissed counts can be considered.

9

**Defense Exhibit 12-9**

Commissioner Robinson said the basic philosophy of the Supreme Court is that sentencing is appropriately based on the real facts of the case.  One may ask why, then, the Commission should consider the offense at all.  He suggested applying the system most judges do now:  analyze the situation and attribute a certain amount of seriousness to each element of the situation. Judge MacKinnon said there must be specifics to get past the ambiguity of the item.  He noted the Pennsylvania decision was based on a specific item, a gun.

Commissioner Robinson agreed, although he considered that a different issue.  He said, assuming there is an element approach that was unambiguous or objectively determinable, part of the cost of that system is that that is not what sentencing judges do now.  Judge Mackinnon said they start there.  Commissioner Robinson said they do not end there.  He used the example of gratuitous humiliation of victims.  He believed that was not an unambiguous element, and the judge was called on to make a judgement.  Having any ambiguous factors leaves room for different interpretations, but without it, one is closing one's eyes to a potentially relevant factor.  He pointed out that there were many judgment calls to be made, and it would be impossible to list them all.  He believed the situation called for including those ambiguous factors with ambiguity reduced by policy statements and commentary.  Judge MacKinnon said they must be specific factors.  Commissioner Robinson said there were ways of reducing those elements to specifics, such as providing examples.

10

**Defense Exhibit 12-10**

He stated it was a policy judgment; he believed one could do enough to reduce those ambiguous factors to try to keep them in the system.  He said if others believed that was too risky, he could accept that.  Judge MacKinnon said to completely ignore the offense was extreme.  He had no objection to using harms as they were reflected in the offense.  Commissioner Robinson said not to ignore the offense, but to take the elements of the offense apart in order to avoid the problem of different kinds of robbery being grouped together.

In response to Commissioner Gainer's concern about psychological damage, Suzanne noted that any case where serious psychological damage resulted would be cross-referenced to the psychological harms table.  Judge MacKinnon objected to that if there was an objective measure of harms.  Commissioner Gainer said if there was an objective approach, in circumstances where lasting damage occurred, that would be considered.  Commissioner Robinson saw a contradiction in not taking a subjective view of the victim's fear, but considering psychological harm.  The problem with the objective view that the particular experience of the individual victim does not matter.  Part of the effect of evaluating psychological harm is saying to an offender that the harm suffered by the individual is real and was part of the risk of undertaking the crime.  Commissioner Gainer said a situation where psychological damage is apparent occurs with enough frequency to be incorporated in an objective standard system.  He suggested if permanent psychological injury occurred, it may be

11

**Defense Exhibit 12-11**

worthwhile to review the individual case. He wanted to avoid the victim being subjected to the sentencing hearing. Commissioner Corrothers agreed. Judge Breyer suggested that where a threat is actually a crime, the threat be dealt with differently. Commissioner Gainer said terminology was causing some difficulty, because something called "communicating a threat to the President" is actually an offense, and could not be lumped with threats, which is objectively instilling fear in victims by words or conduct. Judge Breyer stated there are certain statutes incorporating the word threat. He wanted to review caselaw resulting from those statutes and decide the judicial standard for those cases. He believed it may be applicable in other cases, as well as solve the objective/subjective argument. Commissioner Corrothers thought that was a good idea.

Chairman Wilkins asked how many statutes actually used the word "threat." Suzanne said a brief overview had resulted in seven or eight statutes where "threat" is a part of the statute. Denis added each statute covers individual types of threats. Judge Breyer said the Criminal Code Revision must have decided that question. He stated if there was no separate threat chapter, the definitions from the statutes or the Criminal Code Revision could be applied. Commissioner Robinson said he believed such a system would be unworkable, and also that it would not cover all threats or gradations of threats. Judge Breyer said he had misunderstood. Commissioner Robinson said, for the record, as to matters of structure, elements and

12

**Defense Exhibit 12-12**

segregating general principles, his view was the July 10 draft was the only process by which a sophisticated, just sentencing system can be accomplished. Although the July 10 draft had many unresolved policy questions, the draft was, in his opinion, the only reasonable way to design the system.

Chairman Wilkins said if the current approach were to be continued, the Commission must decide whether threats and specific statutory offenses that are threats should be dealt with separately. Commissioner Gainer said there should be a system for distinguishing a small or major amount of fear. Chairman Wilkins said the problem with the July 10 draft was that offenses that are threats must be separated from threats as aggravators. As a policy matter, it would be outlined that threat was not incorporated in the crime of robbery because it was not an essential element in every case, although most of the time it would be a factor and therefore would be an aggravator. Commissioner Robinson said he understood the Chairman's point, but thought the idea unworkable because the degree to which threat was incorporated in the base harm value must be explained in every offense. The Chairman said none would be incorporated because it was not an essential element of every offense. Commissioner Gainer said the suggestion was to segregate the statutes incorporating the word threat, plus have a generalized threat section. Judge Breyer said the case of the water hyacinth importation by threat would receive aggravated harm value. Chairman Wilkins said yes. Judge Breyer said many lawyers would

13

**Defense Exhibit 12-13**

say a basic flaw in the proposed approach is that many elements beyond the charge would have to be proved only by preponderance of the evidence as opposed to beyond a reasonable doubt. The only way that becomes acceptable, if at all, is to limit the elements that might be considered aggravators but are not part of the charged offense. Judge Breyer said in cases where there was an egregious threat related to the crime, lawyers may agree. If the Commission says an unrelated threat, such as threatening a border guard while importing a water hyacinth, which is neither charged nor proven beyond a reasonable doubt, would aggravate the sentence, the legal community would object. Judge Breyer believed the elements added on must be carefully considered, case by case, and for threat there will be very few. Most were built into the crime. Judge MacKinnon said the limitation is the statutory maximum. Judge Breyer agreed, but in the case of a bank robber who was unarmed and only stole $15 but committed a rape, the prosecutor could prove the unrelated rape by a preponderance of the evidence and aggravate the sentence. He thought that would be an unacceptable aggravating factor.

Commissioner Gainer said he finally understood that Judge Breyer's problems with the harms approach was really an objection to real offense sentencing. Judge Breyer denied that he did not like real offense sentencing generally, but was unsure of certain aspects of the process. Commissioner Gainer stated Judge Breyer believed real offense sentencing can be tolerated only where the add-on factors of the sentence can be controlled up front. Judge

14

**Defense Exhibit 12-14**

Breyer said in light of the problem he just raised, that was true.

Commissioner Corrothers suggested moving forward on the proposal from the Chairman.  Chairman Wilkins said he could understand the problems that the threat section posed, especially where the system now does not incorporate all threats into all offenses.  Commissioner Robinson asked which draft and which offense the Chairman was referring to.  The Chairman answered that the July 10 draft does not adequately consider the offense of threatening the president.  Commissioner Robinson said Commissioner Gainer had stated the relevance of that offense is not the threat but the disruption of government.

Commissioner Gainer suggested applying the current approach and also attempt a general add-on called "threat."  Commissioner Robinson said he prefers the general add-on so that in a month when the Commission realizes an offense-based sentencing will not work, it will have something to fall back on, i.e., elements of offenses.  He believed the proposal to have both approaches brought the worst of both worlds.  He said it would be complicating the Chapter Two definitions of harms by adding variation, plus it would have a general harm section to which people will always have to refer.  Commissioner Corrothers said if the process were not workable, it would be thrown out later, but for now it seemed to be the consensus of the Commission to work toward that particular goal.

Judge Breyer agreed with Commissioner Robinson that this

**Defense Exhibit 12-15**

idea was the worst of both worlds. He believed he was trying to make the July 10 draft more practical and it was not more practical to obligate the judge to determine the degree of threat, not to mention the fact that the issue would only have to be proven by preponderance of the evidence. He believes if the guidelines were loaded up with these types of things, the guidelines would be difficult to administer and unpopular politically. Commissioner Block said if Commissioner Robinson was right, the Commission would eventually discover that an elements approach was necessary. He believed the Commission should proceed on an offense by offense examination. Commissioner Robinson agreed. The Chairman asked where the threat is not a natural element of the offense but did occur, did the Commission want a separate charge. Judge Breyer said no, that if the offenses were examined individually, the need for a built-in threat modifier would be obvious. If the threat is unrelated, the threat offense would need a separate charge. He believed the real offense sentencing label was an inaccurate description. The Commission's modification to real offense sentencing is providing a roadmap, which will pick out real elements that can accompany the offense. When an offense contained some totally unrelated conduct, the unrelated conduct would need separate attention. He believed this was the correct way to proceed in terms of overall justice.

The Chairman asked if the seven specific threat statutes could not be broken out from all other offenses and treated

16

**Defense Exhibit 12-16**

individually.   He said someone, when writing the statute, must have thought to give those matters special attention, otherwise they would not be separate statutes.   The threat could be added to appropriate offenses in all other cases.   Commissioner Robinson said that was keeping an element based system, but taking some special category and customizing that category, in this case, threat.   The Chairman thought that might be necessary. He did not think those seven offenses would upset the system greatly.   Commissioner Robinson said it could be done, but then page-turning and arithmetic would remain a part of the system and a part of the complexity problem.   He stated he had never had problems with that idea, but other people had objected.   The Chairman said there was too much arithmetic required in the July 10 draft.   Commissioner Robinson said the current proposal would not eliminate page turning or arithmetic.   Chairman Wilkins disagreed.   He expected turning to one page to get to the seven specific threat offenses and to have a general threat table for all other offenses where threat would be an add-on.   Judge Breyer said the Chairman's idea was reasonable.   Commissioner Gainer said while that proposal was not the purest approach, it would suffice for now.

Judge Breyer said one drawback to that proposal is that there will be all kinds of ill-defined behavior, and it is quite possible that the idea of treating threat different from area to area would be the best approach.   He noted the problem of the uncharged offenses, preponderance of the evidence, and unrelated

17

**Defense Exhibit 12-17**

harm would be flagged for each offense. Those items could be accounted for on an offense by offense basis.

Commissioner Robinson clarified that the proposal was that seven offenses get special treatment, but all others receive a general add-on for threat. Judge Breyer said there were too many unrelated harms in the offense to proceed that way. Commissioner Robinson said Judge Breyer was concerned with the general definition of modified real offense sentencing. Commissioner Robinson suggested a definition could solve that by saying "...all harms typically associated with..." the crime of conviction. He said the July 10 draft had such a provision. Denis said one can define what related harms can be considered when the conduct is defined. He thought Commissioner Robinson was on a different subject, that of modified real offense sentencing. Judge Breyer was worried that the guidelines would instruct a judge, regardless of the charged offense, to always check if there was a threat and if so, increase the penalty. Denis said the general instructions would include directing the judge to consider only threats related to the offense. Chairman Wilkins said the definition may include a method to sanction more for an unrelated threat. Judge Breyer said he thought that if an offense was committed, one would provide a list of the kinds of things that could be considered, and put the list in the roadmap. He expected threats to be included in the roadmap. Denis said the roadmap would not be perfect, and if it were, it would be enormous. Commissioner Robinson said one could never predict

18

**Defense Exhibit 12-18**

beforehand what should or should not be included. Judge Breyer said some factors may be dropped, and that would not affect the guidelines very much. Judge MacKinnon thought one should apply the elements of the offense to the stated harms. In other words, the harms that resulted from the offense be considered elements of the offense. He noted the preponderance of evidence problem was moot because prior record, character, and other elements are things that can be considered at sentencing and are not part of the charged crime.

Judge Breyer thought the proposal was not to have the threat table apply across the board, but to have a separate section of threat applied in the seven threat crimes, and cross-reference that table in other applicable offense sections. Suzanne said that was close. Judge Breyer said harms included in the base harm value left an option to break out the special offenses or leave them grouped with other offenses. Suzanne said according to this proposal, the violence inherent in the crime was included in the base harm value. A number of methods could be used to incorporate threatening behavior into other offenses, such as the immediacy or remoteness of the threat, among others. Commissioner Block said that meant eliminating the threatening harm section from Chapter Three. Commissioner Corrothers said there was no reason not to try this method. Commissioner Nagel thought it would be eliminated as a Chapter Three adjustment but incorporated in another section. Commissioner Block said it must be included in the roadmap to do that. Commissioner Nagel said

19

**Defense Exhibit 12-19**

she thought the point could be considered later. Judge MacKinnon said the threat of harm in use of a gun could be acknowledged by Supreme Court rulings on the subject. Judge Breyer said a five year aggravation could be added if the offense was not charged originally. Chairman Wilkins said the differentiation was made if the weapon, or other harm, was done to further the commission of the charged offense or not. In the case with the gun, it was. He noted there must be some limitation with this. Commissioner Robinson said a decision must be a made on how to enforce that standard. One way is to decide beforehand on every case. He did not think that was possible.

Commissioner Robinson said there may be a general statement for the judge so he can make a distinction between an additional choate or inchoate harm committed during an offense. Commissioner Gainer said if that suggestion was taken, could the commission at least differentiate between property and personal harms. Chairman Wilkins agreed that the differentiation must be made.

Judge Breyer asked if Chairman Wilkins agreed or disagreed with the proposal. The Chairman suggested starting with segregating offenses completed by threat, and refine in various degrees from there. Judge Breyer asked if the threat add-on applies to all crimes. The Chairman said for now, yes. Denis said another way was to always apply a threat add-on if it's in the roadmap, and propose a general rule to cover that. Commissioner Robinson said if there was a general statement, why

20

**Defense Exhibit 12-20**

have the roadmap at all?  Chairman Wilkins said it would help the probation officers immensely.  Commissioner Robinson said the July 10 draft had one, but the question was whether the guidelines should be structured on one.  He asked Suzanne what type of threats, from the continuum of threat, was incorporated into the base harm values in the proposal.  Commissioner Gainer stated major threats, such as terrorizing or disrupting the government, would be handled separately.  Commissioner Robinson asked what level of threat is incorporated.  Suzanne said the level of threat that was inherent in the severity of the offense. Commissioner Robinson said it would be different for every offense.  Suzanne said one must look at the offense to see how severe it is or could be.  Commissioner Robinson said some may have minor threats built into the harm value, while others may have major threats built in.  Suzanne said the fractional value of the threat had not yet been decided.  Her understanding was that the empirical work being done now would allow for an educated value judgement about the offense severity and the risk involved in the conduct.

Commissioner Robinson said it complicates the matter to have a standard threat incorporated in the base harm value, and decide how much additional harm must be added to account for the unusual circumstances of the individual case.  He said now there were two problems:  a) there must be directions stating if threat was incorporated into the base harm value, and b) how much of a threat is in each crime.  He noted a robber putting a gun to a

21

# Defense Exhibit 12-21

teller's head needed an add-on for threat, but in hijacking that threat may already be included. The Chairman agreed with that point, asking about the same scenario, if the use of a gun were accounted for by the five-year rule (i.e., possession of a weapon equals five years). Suzanne said use of gun would be an aggravator in the bank robbery. The Chairman asked how, then, does one distinguish the degree of threat in the offense. Suzanne said the conduct of the offense must be examined. The Chairman said one could include threats in those crimes where threat is inherent. He asked how it was handled when the threat is not inherent in the offense. Commissioner Block said the guidelines could be comprehensive enough to get it; or the judge should go outside the guidelines. Judge Breyer said the prosecutor could charge it. Judge MacKinnon said in statutes such as bank robbery, it is in the offense, or it is not charged and may be added on, to either all or some offenses.

Commissioner Robinson said the Commission first needs to know where, exactly, the threat is implicit in the offense. Commissioner Corrothers said through the Chairman's proposal, the Commission should know that. Commissioner Robinson said a separate problem is where there is an egregious threat, the offender should be punished more. Judge MacKinnon asked how the July 10 draft handles the threat issue. Commissioner Robinson said for all offenses, the draft provides a scale of degrees of threat. Judge MacKinnon said that should be enough.

Judge Breyer asked Judge MacKinnon how to handle an

22

**Defense Exhibit 12-22**

unrelated threat.  Judge Breyer suggested if threat occurs, add it on.  Commissioner Robinson said he was not sure how closely the threat and the harm had to be related.  He thought if the threat were typically related to the crime, that may be the best standard.  Commissioner Robinson said there was a structural problem on how to incorporate the elements of the offense.  Judge Breyer said prosecutors should be consulted and any element that occurs infrequently should be eliminated.  Judge MacKinnon said the judge could consider it as an aggravating factor. Commissioner Robinson said Suzanne's proposal was not needed to get to that point.

Commissioner Gainer noted the basic difficulty of add-ons came in whether to list every add-on in every offense.  He noted the Brown Commission and the drafters of the Model Penal Code had the same problem.  Their conclusion was to have a generalized provision for aggravating factors, because they were common. Commissioner Gainer said the offense by offense method was decided upon by the Commission, but it will be a lengthy process. Judge Breyer said he agreed with the idea for attempts, conspiracy and solicitation, but not threat.  Commissioner Robinson said that was Judge Breyer's way of avoiding the real offense sentencing issue.  He pointed out that the power that comes from a generalized provision is applicable to threats.  He noted the generalized versus specific approach had historic roots in western civilization.  Every western civilization except the United States and England has had such a generalized system since

23

**Defense Exhibit 12-23**

the 1850's.  The United States looked into it into the 1950's, and the Model Penal Code drafters adopted such a system.  Since 1962, two thirds of the American states have also adopted such a system.  He noted it required turning pages, but that is outweighed by the power, consistency and logic that comes from having a general set of principles.  He believed this was the most fundamental decision the Commission must make, and if it did not make the correct decision, he did not have much hope for the guidelines.  He said sentencing guidelines must pick up where statutes leave off.  They should be more sophisticated than statutes, which provide only general distinctions.

Commissioner Gainer noted all attorneys at the Commission come from states that have not adopted the Model Penal Code approach.  Commissioner Nagel asked why the Model Penal Code was not adopted by all states or by the federal system.  Commissioner Robinson said the Proposed Federal Criminal Code Revision passed the Senate almost unanimously, and it had the Model Penal Code format.  Judge Breyer said it was a good approach, but he did not think that was relevant to this issue.  Commissioner Robinson disagreed.  He noted the July 10 draft, although it had problems, made distinctions between general principles and elements of harm rather than offenses of conviction.  The Chairman asked if a differentiation should be made between harms inherent in the crime and harms done to aid in the commission of the crime.  Commissioner Robinson said there is a harm of threat, and in more violent offenses, the offender will accumulate more sanction

24

**Defense Exhibit 12-24**

units for the threat due to the seriousness of the offense. He said the burden is on drafters to explain why threats are different in different crimes. Absent some special explanation, the number should be the same. He expected cases where there would be differences, but believed they should be explained separately. He noted in the July 10 draft, threat is an add-on. The add-on was a multiple of the threatened harm, for instance, threat of death is .1 times the base harm value of death.

Judge Breyer said Suzanne must draft something on threats, and should write it, assign it a number, read it, and have people note on other proposals if they want to add on the value for threats. If most drafts require the add-on for threat, it should be put in across the board. If not, it will only be used in situations where it is required. Commissioner Corrothers said she had suggested that before. Judge Breyer said it was a good idea. Commissioner Corrothers said it appeared everyone agreed with the Chairman. Commissioner Gainer agreed the Corrothers-Wilkins proposal was good because it can be dropped in situations where it was not applicable. Commissioner Robinson said he expected the Commission to move ahead in its present direction (with which he disagreed), but wanted to share his views since he believed a personal, thorough understanding of the issues only comes from working through the problems.

The Chairman asked Denis and Suzanne for comments. Denis said drafting should be easy now that the decision had been made to cross-reference or have basic principles set forth in separate

25

**Defense Exhibit 12-25**

tables.  His suspicion was that it would not be necessary to have a huge directory of every cross-referenced issue.  The Chairman asked if it was the consensus to 1) identify all statutory crimes dealing with threats, and 2) define threats in terms of definitions across the board.  He suggested there may be times where the threat table should be included with the harm, in cases such as armed robbery.  Denis said the threat through attempt continuum will probably run three single spaced pages, making replication anywhere awkward.  Commissioner Nagel asked about proposal number one.  She thought the generic threat table was to be preserved, but at the same time follow proposal number one, i.e., incorporate threat in base harm values.  The Chairman said the proposal was to use general threat levels, and see how much those levels are incorporated into the violent crime section.  He noted this had been discussed when reviewing psychological harms.

Commissioner Block said that sounded innocuous but assumes that all threats are equal in all instances.  Judge Breyer said that is not being decided now; it is being applied in context. Commissioner Block said he wanted a proposal that considered the incremental values for threat, and he thought number one covered that.  Chairman Wilkins said that left no room for differentiation between major and minor threats, which is what he proposed.  Commissioner Block wanted that too, he just wanted to review the categories of threats and have the option. Commissioner Robinson asked for an example of two levels of threats.  Commissioner Block said brandishing a weapon during a

26

**Defense Exhibit 12-26**

bank robbery was a more direct threat than in other situations. Commissioner Robinson said that was another issue. The Chairman said that was another offense with a separate sanction. Commissioner Robinson said there was another element to the crime, such as "for pecuniary gain," an element included in the July 10 draft. Commissioner Block said there may be other elements, and it is important to find out if people rate them the same.

Dave Tevelin agreed with Commissioner Gainer's point that what is being measured is the level of fear instilled. He believed it was that fear the Commission was trying to capture, and by calling it fear, the Commission may get around the problem. Judge Breyer said it could be called risk. Commissioner Gainer said it had nothing to do with risk, it was a matter of scaring someone regardless of the actual risk. Judge Breyer said this was a policy disagreement and he did not think an increase in punishment should apply when the risk is not considered and the crime not charged.

The Chairman said the issue at hand was whether or not to include a risk or fear value in each offense. Judge Breyer said there should be a general definition and a reference to that definition. The Chairman asked what that general page would look like. Judge Breyer expected a list of specific threat statutes and three levels of threat. Suzanne said one point that needs clarification was how many different threats are to be included. She mentioned, for example, threat of property damage, although

27

**Defense Exhibit 12-27**

there are others.  Denis said there were at least five kinds of threats:  against person, against property, against reputation, and others, and different values could be given to each.  Judge Breyer thought these were just personal threats.  Commissioner Block said the others had to be dealt with in context.

Dave Lombardero said the crime control group was having difficulty dealing with the idea that the harm value added up is equivalent to the punishment, and suggested there is no reason to assume that.   Threats would differ according to context. Chairman Wilkins asked for an alternative.  Dave said an offense by offense analysis was necessary.  Judge Breyer said something needed to be drafted, at least for the statutory threat offenses. The Chairman said Dave had a point, but not in every case.  There may be cases where a generalized threat table would be used. Dave said that was not a problem if it was a minor aggravator, but if it swamps the offense, it would prove problematic.  The Chairman said he was not discussing numbers but format. Commissioner Gainer said he could see only that crime control factors had not yet been worked into the format.  He asked if, for crime control purposes, someone threatening great damage may deserve a larger sanction.  Commissioner Nagel said it could only be discovered by an offense by offense examination.  Commissioner Robinson said that was not enough just to say it, but to say what is different in the two comparable crimes and articulate the standard of differentiation.  Dave said if that were done, there would be a long list of elements.  Commissioner Gainer said for

28

**Defense Exhibit 12-28**

crime control purposes, there should be an add-on for violent crimes. He said the difficulty is that the July 10 draft does not consider the crime control aspects. Commissioner Robinson said the crime control elements could be articulated and put into the document. He felt there would be philosophic differences in those beliefs, but the structure did not limit the crime control elements applicability.

Judge Breyer said if all threat, such as threats against property, were added in across the board, the problem with labor unions arises. In some cases, a strike can be construed a threat to get money by force. He warned it was a tricky area and did not think it could be done across the board. He suggested drafting and cross-referencing.

Commissioner Gainer said an even more fundamental issue had not been decided. Should the Commission determine sentences on the just deserts theory and adjust by adding on crime control factors, or should sentences be determined by just deserts and crime control factors added and subtracted in order to get efficient crime control? Or is it a blending of the two, or is it a crime control model modified by just deserts? He believed the answer to this question would suggest, even dictate, a structure, and therefore provide solutions to many of these issues. The Chairman disagreed that a decision about sentencing philosophy would make a difference in format. Commissioner Gainer said a theory would suggest an answer. The Chairman said much individual thought had gone into the issue of sentencing

29

**Defense Exhibit 12-29**

philosophy and he would rather not discuss it now.

He asked if the Commission had reached a consensus on the threat issue. Commissioner Block said with the modification that the threat, where ever possible, be considered an aggravator, he agreed with the proposal. The Chairman said it was an option, but there would be more than one level of threat regardless of the final decision. Commissioner Nagel said as she understood it the Wilkins-Corrothers proposal and the proposal in Suzanne's memo were on the table, and since the Wilkins-Corrothers proposal was a modification of the original proposal, both could be accomplished. Commissioner Nagel said she understood that there was a consensus to preserve the notion of a general threat for offenses. For all offenses it would be generally incorporated into the offense, as presented in Suzanne's memo under point 1; for all other offenses, where threat was not included, the issue was covered in point 2. The Chairman suggested Commissioner Nagel make that a separate motion because it conflicted with the two proposals at hand. He said her idea presupposes only one level of fear or threat in any violent crime. Commissioner Nagel said she understood that an attempt to differentiate the different levels of fear was in the current proposal. Denis said if multiple level of threats were included for every offense, there would be an additional 80 or 90 pages in the guidelines. If the Commission would incorporate base level threats and cross-reference, that proposal would be much shorter and easier to draft. Commissioner Nagel proposed doing the latter. The

30

**Defense Exhibit 12-30**

Chairman said the extra wrinkle was that statutory offenses completed by threat would be segregated. Commissioner Block reiterated that the proposal was to present a base level of threat in the base harm value of the crime, and to present a section dealing with threats as completed offenses, in addition to a general threat adjustment. The Chairman noted this was a temporary measure. Judge MacKinnon noted in cases where it was not applied, a judge could sentence outside the guidelines.

Bill Rhodes said there are two possible ways of conceptualizing the draft guidelines. The first way is to allow the judge choices between serious risk of harm, moderate risk of harm, or minor risk of harm. A second way is to give facts as criteria, such as brandishing a machine gun, brandishing a pistol, possessing a pistol, or discharging a weapon. Bill said the first way was simpler, but the second way relied on objective standards. Commissioner Robinson said if objective standards were applied, more consistency results, but the document becomes much longer. Also, a philosophical question arises regarding the judge's role. Does the Commission want the judge to simply determine facts, or does the Commission want to allow judges to assess all circumstances. He believed each approach had advantages, but until now, most drafting let the judge have more authority.

Bill said he saw the situation differently, but the decision would affect how the guidelines looked. On one hand, objective categories would lead to very structured guidelines, where the

31

**Defense Exhibit 12-31**

alternative led to more judicial discretion. Chairman Wilkins said there would be wide discretion in fact-finding. Commissioner Robinson said the more complex the judgment, the more discretion the judge has. The Commission had presented this idea to judges, and they believed the bottom line had not been the objective criteria but the implications of those criteria. The judges had preferred wider discretion, but more consistency results when there are strict categories. Bill said while he was not advocating either point, he observed that the issue was dividing the Commission. He noted that a fundamental drafting issue was that a more subjective criteria could be applied across the board, but strict, offense-specific categories needed to be modified for each offense. Commissioner Gainer said the objective criteria, such as brandishing a gun, ignored the fundamental issue of fear instilled. In fact, he believed objectiveness should be noted.

Bill referred to Mark Cohen's memo. In that memo, he compared the objective probability of harm resulting from pulling a gun in a bank and pulling a gun in an assault. The two would have different weights in each case. He said objective reality would be considered in the guidelines. He suggested the drafters should know how the Commission wanted this issue handled in the drafting process.

Denis noted that Bill raised an issue the resolution of which would be helpful in drafting. Commissioner Corrothers asked Denis if he understood what the Commission wanted. Denis

32

**Defense Exhibit 12-32**

said he was unclear on how the Commission wanted its criteria drafted. The Chairman asked Denis and Suzanne the problems with segregating threat offenses, and allowing the judge to aggravate for egregious threat cases. Denis said he thought the first part unnecessary. Peter suggested where the objective categories cover the offense, apply those criteria, and where not, apply more subjective criteria. He said if the goal is to structure the courts, it is attained more easily if objective criteria is used as much as possible. Commissioner Gainer said that would result in 10,000 pages. What he and Commissioner Corrothers had in mind was a "reasonable person" standard for the objective criteria. The Chairman said that would probably result in three levels, and thought that was about right. He noted the aggravating factor of the gun was handled by another statute. Commissioner Gainer said the gun would not always get a separate charge but should be considered in sentencing, whether it was actually discharged or just scared someone. Dave said if a person used a gun, that indicated they were dangerous and should be incapacitated. Commissioner Gainer said that was a consequence of the harm, and he noted the deterrent factors have not yet been factored into any draft. Dave stated that two different weapons could instill the same amount of fear, and therefore the harm value should be the same. Commissioner Gainer said it would be better not to differentiate between the weapons, but to bring in the crime control elements later. Chairman Wilkins said the gun should be covered by another federal

33

**Defense Exhibit 12-33**

statute.    Dave said the gun was illustrative of many other factors.

Commissioner Robinson said if the Commission agreed with the basic philosophy of crime control, a chapter could be added listing those elements and adding sanction units for them.  Dave said Commissioner Robinson was assuming then that punishment would always be an additive value.   The Chairman agreed. Commissioner Gainer said the list distributed to the U.S. Attorney's was a good checklist of crime control factors. Commissioner Block stated the problem is that crime control is difficult to deal with out of context.  Commissioner Robinson said the implication of that statement is to have the crime control chapter list many offense-specific descriptions. Commissioner Block said the offense by offense examination which listed each possible scenario would force the drafters to consider difficulty of detection and other crime control factors. Commissioner Gainer stated the complexity of thinking about each factor is fine, but the result must be a document that is easy to use.   Commissioner Robinson said that was an expensive way to draft--listing all elements just to get the drafters to think about crime control.  He believed the selection of format should not be made on the basis of how much it would teach the Commission about crime control.  Commissioner Block said once all the factors were listed, the Commission could learn about all offenses.   Commissioner Robinson thought it a useful exercise, but that it was not drafting guidelines.   Dave Lombardero said

34

**Defense Exhibit 12-34**

putting in a crime control chapter as lengthy as the just deserts chapters would make the system too complex. He thought such an approach would write out crime control. Commissioner Robinson said because the crime control factors could not be articulated in a simple fashion that chapter must be more lengthy. Dave said crime control is not simplistic as just deserts.

The Chairman asked if there needed to be a decision now on how to handle the just deserts and crime control models. Dave said a mixed model is necessary and the Commission had a much better chance of achieving the mixed model by proceeding on an offense by offense basis. Commissioner Gainer disagreed. Although he is an advocate of strong crime control factors, he believed everything could be put in generalized form with basic principles and it was better to do it that way. Commissioner Robinson said the power of the deterrent idea lies in its communication to the public. He believed that deterrent aspect would be much more effective in a generalized form.

The Chairman suggested setting a time in which a policy statement will be adopted on the philosophical approach the Commission is would use. He asked the crime control group if that was reasonable. Commissioner Nagel said yes. Chairman Wilkins said Commissioner Nagel had submitted a policy statement earlier that had not been voted on. He presented the policy statement and asked if Dave (author of the statement) was suggesting that efficient crime control be the basis of fixing sentences and modify later for just deserts, or use just

35

**Defense Exhibit 12-35**

sentencing as a basis and modify for crime control.  Judge Breyer said that decision does not need to be made now.  Commissioner Gainer argued that the crime control is not being factored into the offense by offense procedure.  Judge Breyer said neither Commissioners Block nor Nagel had objected until the threat subject was broached.  Commissioner Gainer said restraint has been curtailed.  Judge Breyer said they could have added in factors as the Commission was examining offenses.  Judge Breyer said a philosophical position could be adopted now but the statement would be so general, it would not provide much more direction than the drafters have now.  He thought a sentencing policy mattered only when the numbers were assigned.

The Chairman said that had been his feeling all along, but the staff needed direction now.  Commissioner Gainer said he had presumed to speak for the crime control people, but maybe he had spoken too soon.  Dave pointed out that adding in a level of fear across the board commits one to a just deserts strategy, although his interpretation of just deserts was not punishment proportional to the harm, but proportional to the seriousness of the crime.  He was not sure the current model was even a desert-based system because the seriousness of the crime may not be captured in the harm values.  The Chairman asked what to do. Dave said follow Suzanne's proposal and have threat be context-specific.

Judge Breyer suggested having Suzanne's draft be context-specific and modify the offenses generally if possible.  Bill

36

**Defense Exhibit 12-36**

said she must then draft subjective criteria. Judge MacKinnon said crime control can be accomplished by punishment, so why not wait until numbers are assigned to discuss punishment issues. Dave said an across-the-board punishment for threat represents a punishment in the current system, and that ignores the crime control perspective. Judge Breyer noted some states have an across-the-board multiplier for things like solicitation, some have it for specific crimes, or treat it the same. He said there would be some variation on these in different offenses. The Chairman said the criteria would have to be subjective. Judge Breyer agreed. Commissioner Gainer said use the "reasonable person" standard. Judge Breyer said yes, that would be the objective element of the subjective criteria. Peter suggested presenting specific examples.

Commissioner Robinson said one concern was that Dave feels the crime control factors must go into the calculation of sanction units. Commissioner Robinson believed the future dangerousness of the offender and other crime control elements are more relevant to the second part of the system, where the decision of whether to use prison, probation, or fine was made. He felt generating sanction units could be done on a desert basis, but allocation of sanction units would be a crime control consideration. Dave said the crime control people do not agree, since there may need to be adjustments in sanction units for crime control considerations. He used the example of an assault where one is a family member and the other is a bank robbery.

37

**Defense Exhibit 12-37**

The sanction units should not be equivalent because one was for pecuniary gain. Commissioner Gainer said the assault value could remain the same and an aggravator would be given to the pecuniary gain motive. He thought, generally, the crimes could have standard values, and crime control modifiers could be added on. He did believe the crime control factors should affect the number of sanction units. Dave said that would mean reexamining the harm included in the original calculation and doing another level of calculation for crime control. Commissioner Gainer said there is a greater need for deterrence when the motive is pecuniary gain because people are more likely to commit offenses for pecuniary gain. He believed this was a general principle that could be applied. If the crime control elements were context-specific, they would be missing too much. The Chairman asked for comments. Denis said once he sat down to draft, the questions would then arise.

The Chairman asked if the risk of harm was included in threat of harm. Commissioner Gainer said not necessarily, because a threat can be made without actual risk. Denis said the risk issue was on the threat continuum and did not think risk could be drafted without some relation to threat. He thought the drafting for risk could proceed the same way as for threat. The Chairman asked if there were any pure risk offenses. Denis said there are many, such as transporting explosives. The Chairman said those were being covered in firearms and explosives, but was there a risk category? Denis answered no. Commissioner Block

38

**Defense Exhibit 12-38**

asked how general the risk category was.  Chairman Wilkins said too many categories of risk would make the document unworkable. Suzanne said depending on the definitions of risk, the mathematical variables are from 21 to 35 different combinations. She said the staff perceived the same problem in this area as in threats.  She said trying to quantify the risk is the problem and the solution is to draft it not as an add-on, but as a part of the underlying offense.  She noted there are different risks and different sentencing considerations in different offenses.  The Chairman asked if a risk should be listed in every offense where it may apply.  Suzanne said no.  Judge Breyer said he did not think she wanted to do that with threat either.

Judge Breyer said the way to keep things simple is to write a definition for completed crimes that are threats and risks, and just include threat and risk in other offenses.  He said there may be a third set where it is not done automatically but there is a cross-reference to that section.  He stated that could be done, and he would judge it on its merit in each crime.  Another fourth set is where risks and threats should not be considered at all, although he knows others disagree.  Denis said his understanding is that the staff will draft some sort of threat provision which may be generically applied; in offenses where threat is inherent, the threat will be included in the base harm value at the lowest level, and a cross-reference made to where threats can go higher.  After drafting, the Commission will give comments.  Judge Breyer asked if that was to be done with risk.

39

# Defense Exhibit 12-39

Denis said yes.

Conspiracy, attempt, and solicitation were grouped together in the current draft. Suzanne noted while most of these can be given a downward adjustment, in some conspiracies the adjustment was offense specific. A notable example was civil rights violations, where conspiracy to commit the offense was viewed, at least by Congress, as much worse than committing the offense. She stated the current draft does not adequately consider the fact that law enforcement intervention or insider information may prevent the completed crime, and the offender was given a 50% downward adjustment for the interrupted offense. Commissioner Robinson said that was not true; the definition is that the renunciation must be thwarted by something other than law enforcement. Chairman Wilkins said Suzanne was suggesting if the crime were stopped by law enforcement officials, that it not be treated like a completed crime. Commissioner Robinson said there were two issues: 1) should there be a distinction if the hijacking were planned and never carried out due to law enforcement intervention, and 2) should there be a distinction between law enforcement personnel intervening and a conspirator stopping the crime. He believed they were all different and Suzanne's proposal did not make those distinctions. In the case where the offense occurred, there were risks and harms. In the second case, there were less harms, and in the third case, the conspirator acted on his own. He thought those factors should be considered at sentencing. The Chairman said the completed crime

40

**Defense Exhibit 12-40**

issue is not a problem.

Commissioner Robinson said Suzanne's memo states the statutory maximum for the attempt and completed crime were the same and suggested ignoring whether or not the crime was completed. Commissioner Robinson said there are peculiarities in the statutory maxima but he felt that a complete crime was worse than an incomplete crime and should be treated as such. Commissioner Gainer said he was sure everyone, in their own way wanted to distinguish between completed and incompleted offenses based on how close the crime came to being completed and why the offense did not succeed. He agreed with Commissioner Robinson's view that this could be done generically, but also could be done in a fashion that meets Suzanne's concerns. He reiterated that crime control aspects have not been factored in. He noted in a case where the president was shot at and the bullet was deflected, for desert purposes that was not much different than if the president died. For crime control, however, there was a great difference and those aspects of the crime could eliminate the current problems.

Commissioner Corrothers said if the fact that the offender did not succeed is no true credit to him, there was no reason to reward him. Commissioner Block said there should always be an incentive not to complete the offense from an efficient crime control perspective. Commissioner Gainer disagreed. The Chairman said the kingpin could only be charged with conspiracy and would not get an adequate sentence if the distinctions

41

**Defense Exhibit 12-41**

between completed and incompleted offenses were not made. Commissioner Robinson said he would get more under the attempt statute, which is much greater than the actual crime. Commissioner Block said he was unsure that a 50% reduction was correct. Commissioner Gainer said the penalty should be the same if the offender had nothing to do with the act not being completed. Commissioner Block said only in that extreme case. He stated where ever there is a doubt, it should be discounted. Judge Breyer said the Parole Guidelines allow for this issue in allowing the judge to consider why the conspiracy failed as a mitigating factor. Commissioner Robinson said that was in the July 10 draft. Judge Breyer said July 10 also proposes reducing the penalty. Commissioner Robinson asked if that was not what Judge Breyer wanted to do. Judge Breyer said no, the mechanism to reduce the penalty is a mitigating factor, rather than aggravating for it.

Commissioner Robinson said the fundamental question was whether the statute directed the Commission to write guidelines for typical cases, list aggravating and mitigating factors and when to deviate from the guidelines, or did the legislature intend the guidelines to be more comprehensive and specify to judges how much to deviate from the guidelines. He said that was a basic difference the Commission had not resolved. Judge Breyer said if the Commissioners did not know the answer, they should do what they think is right. Commissioner Robinson said he thought he knew the answer. Chairman Wilkins said if the Coast Guard

42

**Defense Exhibit 12-42**

stops a drug trafficking boat and the offenders are charged with conspiracy, he did not think a 50% discount should apply. Commissioner Robinson said there will be certain situations where an attempt may be punished as much. The easy way to do that was to define the crime as attempt. He felt there were a limited number of cases where this was true. He noted in the case where the president was shot at, if the president died, he believed the death penalty should be imposed. He said the punishment would be severe for an attempt, but to impose the death penalty for an attempt would be immoral and unconstitutional. Chairman Wilkins was Suzanne was suggesting that certain areas be identified where the attempt is equal to the completed crime. One area, as Commissioner Gainer pointed out, was where law enforcement intervened. There may be others, such as narcotics violations, to get the kingpin. Commissioner Robinson said this was not an offense of conviction system. He noted the probation report would show a history of drug trafficking for the kingpin. Commissioner Corrothers and Chairman Wilkins said that information may not be available. Commissioner Robinson said that was the same evidence that led one to believe the offender was, in fact, the drug kingpin.

Commissioner Gainer asked if the areas where the completed offense was sentenced could be noted. Chairman Wilkins said a kingpin is usually caught by wiretap and would not contain all the information on the suspect, but enough to get a conviction on something. Commissioner Robinson said it should not be left to

43

**Defense Exhibit 12-43**

staff discussion as to which attempts were to be treated as completed offenses. He felt it was a central policy issue. The Chairman said he asked the staff to identify them. Commissioner Robinson said he could not think of any others. Chairman Wilkins stated solicitation of a bribe is another. Judge MacKinnon added obstruction of justice. Commissioner Corrothers said the point was there are more. Commissioner Robinson said many offenses were already drafted that way in the July 10 draft. He believed the idea of not having a discount for attempt or solicitation is incredible.

Chairman Wilkins asked Suzanne if she wanted to eliminate all attempt or solicitation discounts. She said to eliminate them as a general chapter 2 or chapter 3 adjustment for stylistic purposes. Commissioner Robinson said it went beyond style. He disagreed with the notion of not having a general principle of reduction for incomplete crimes. Judge Breyer said it could be there some times but not all of the time. The Chairman said there needed to be a base value for conspiracy since one could never know what harms would have arisen if the crime had been completed. Commissioner Robinson said the base harm value was based on what the offender agreed to do. The Chairman said a base harm value was needed. Commissioner Robinson agreed.

Commissioner Gainer said the two issues were how to sentence for attempts and how to draft the attempt section. Commissioner Gainer said a general section on attempts was desirable. The same problem had been confronted by the Model Penal Code drafters

44

**Defense Exhibit 12-44**

and everyone then believed it better to apply the attempt, conspiracy, and solicitation provisions across the board. Exactly how it is applied can be controlled by a general description. Chairman Wilkins asked if the attempt would be 50% of the base harm value of the completed crime. Commissioner Gainer said that was an example, but the offense must always be considered because attempts will be different for different crimes. Whether the multiple is 95% or 5% was immaterial. The Chairman asked how the judge would know, in a bank robbery, how much money was meant to be stolen or level of fear instilled. Denis said a judge would know the actual amount of money, the minimum amount of money possible, or have no idea. Denis said it could be drafted by the actual amount, the minimum amount, or the base harm value to give some level of precision. The Chairman said there was no way to know. Commissioner Robinson said it was a problem, but not to change the format of the guidelines to get around it, but rather, to put in a floor. The Chairman asked what the floor was--attempt, threat of fear, or what. Commissioner Gainer said Denis' suggestion of a floor was good because it allowed for some sophistication if the amount was known. The Chairman agreed.

Chairman Wilkins proposed identifying areas of conspiracy, attempt, and solicitation where they will be treated as the completed crime. Then for all others, treat them as a multiplier of the base harm value of the crime. Judge Breyer said there must be an escape hatch for aggravating or mitigating factors.

45

## Defense Exhibit 12-45

The Chairman said that would be an outside the guidelines situation. All Commissioners agreed that attempt or conspiracy could be treated like the completed crime in some circumstances. Commissioner Robinson asked where the conspiracy was treated more harshly than the crime. Commissioner Gainer said in civil rights, there was only a conspiracy statute, no substantive statute. Suzanne said that indicated a more serious level of crime. Commissioner Gainer said she was crediting the draftsmen with more than they credited themselves with.

Commissioner Robinson said civil rights conspiracies should be punished more if they are successful. The Chairman said Suzanne was suggesting a floor for the conspiracy and to build on that if necessary. Commissioner Robinson said he never had problems with the notion of a floor, and the natural effect of the elements in the July 10 draft is a floor. Dave Lombardero said bank robbery is a synthetic offense in the July 10 draft and there is no floor. Commissioner Robinson said the floor is the result of the elements of the offense. He noted, for the record, that the July 10 draft had a floor for bank robbery, because it had threats, property and pecuniary gain. Chairman Wilkins said you add up the lowest levels. Commissioner Robinson said there was a natural floor. Peter said unless otherwise specified, the floor is a multiple of the base harm. He noted in the attempt section, the first part is 1) where attempt did not come about after offender lost control, the base harm value is used, and 2) everywhere else, the attempt is a multiplier of the harm.

46

**Defense Exhibit 12-46**

Commissioner Robinson said that was Commissioner Gainer's suggestion.

Commissioner Corrothers said the Commission needed to go back to discussing the current proposal. Peter said the suggestion seemed consistent with that proposal. Commissioner Corrothers said the Commission was analyzing something else, and did not see why the presence or absence of a floor in the July 10 draft needed to be discussed further at this meeting. Commissioner Robinson said, for the record, that there was a time when the Commission, and Commissioner Corrothers included, adopted the July 10 draft as a working commission document. He said that should entitle it to be a basis of all discussion. This proposal was a revision of the July 10 document and that meant the July 10 draft should be reviewed and compared to the current draft proposals. Commissioner Corrothers said that had been done for a number of hours. Commissioner Robinson said the process would be slowed down further by reminding the Commission of her concern with the July 10 document. Commissioner Corrothers said she was not using as much time as Commissioner Robinson. She said a replay of the tape would show that. She said she was sorry for offending Commissioner Robinson by suggesting they look at the proposal at hand. Commissioner Robinson said there were many, many more issues to be dealt with, and this meeting merely scratched the surface. He did, for the record, object to her protesting the discussion of the July 10 draft, since it was still considered a working Commission

47

**Defense Exhibit 12-47**

document.

Judge Breyer said there was no disagreement on the proposal. Commissioner Corrothers said that was what she was pointing out. Commissioner Robinson asked if the Commission were proceeding as stated in Suzanne's memo or as discussed. Judge Breyer said he did not see disagreement, because the next practical step would be to go back and draft something along the lines of this proposal. Commissioner Robinson said he had not found anyone to stand up for the current proposal. Judge Breyer said he did. He said he interpreted it as general rules, and Suzanne would try to flag places where attempts, conspiracies, and solicitation be treated as completed crimes. Commissioner Robinson said Peter's proposal was fine, but that is not what is on the table. Commissioner Nagel said Judge Breyer supported the proposal and she did as well.

Chairman Wilkins asked Suzanne if she had an idea of what the Commission wanted. She said "from time to time." Denis said the drafters were pretty clear. The Chairman asked the Commission if the drafters should flag the areas of attempt, conspiracy, and solicitation to be treated as completed harms. The next step would be to approach each other attempt, conspiracy, or solicitation as a base harm value, and add on for any aggravating factor. All Commissioners agreed. Judge Breyer said the drafters had some discretion. The meeting was temporarily adjourned.

The meeting reconvened. Suzanne introduced the subject of

48

**Defense Exhibit 12-48**

renunciation.   The policy question presented was whether or not the Commission wanted to give a downward adjustment for an offender who did not meet the legal standard for renunciation. The July 10 draft calculated renunciation as 70% of the base harm value for the offender who does not go to law enforcement authorities or take action to prevent a crime, but does not participate.  Commissioner Robinson said the adjustment reflected the moral ideas about an attempted offense, but the numbers did not matter to him.   His idea was to differentiate attempts interrupted by law enforcement and an offender who decided not to participate because it was not a right thing to do.   Although they satisfied the requirements for the inchoate offense, due to the offender's own moral struggle, he did not complete it, they should be treated differently.   The blameworthiness factor was much different.   Judge MacKinnon cited the Mardian case in the Watergate conspiracy as an example.   He was mixed up with other conspirators and then decided not to participate, but he was indicted and convicted, although it was set aside.   The Chairman said that was a legal defense.   Judge MacKinnon said you could call it what you want.   The Chairman said he called it legal. Judge MacKinnon said other reasons were found.

The Chairman said this person did not go to the police, he just stopped.   Suzanne said he did not go to the police or take steps to prevent the crime.   She noted that often at sentencing the offender will say he did not intend to complete the crime. Commissioner Corrothers said it was a matter of believing if he

**Defense Exhibit 12-49**

meant that or not. The Chairman asked how it was treated if the offender goes to the police. The conspiracy is complete, but the offender does not complete the crime. Suzanne said that could be figured into the cooperation section.

Commissioner Block asked where this would be applied in anti-trust offenses, such as conspiracy to fix prices. Judge Breyer said if the offender admitted to it before it happened, he was not guilty. Commissioner Block asked when a person was guilty. Dave said the person who conspires to fix prices is guilty of conspiracy to restrain trade. Judge MacKinnon said there must be some overt act. Judge Breyer said in conspiracy or attempt, regardless of the number picked, an aggravating or mitigating factor could be given as to why the crime was not completed. The Chairman asked if the Commission had said that. Judge Breyer said he had said it and no one objected. He felt if there was that basic loophole to take care of unusual cases, including the defense, the attempt/conspiracy provision, or go outside the guidelines, the proposal could work well.

Commissioner Robinson addressed the idea of sentencing outside the guidelines. He noted that idea is incorporated in a number of proposals on the agenda. He said it is not a solution to current problems. Judge MacKinnon said that was a result of putting some, but not all, factors in. Commissioner Robinson said it was not an acceptable or permitted solution for several reasons. The first was that the legislation does not authorize the Commission to give policy statements directing the sentencing

**Defense Exhibit 12-50**

judge outside the guidelines. The legislation states the one instance where a judge could go outside the guidelines was if the Commission had not adequately taken some factor into account. Judge MacKinnon said if a factor was put in for some offenses and not put in for other offenses, the judge can go outside the guidelines. He said he was not advocating that. Commissioner Robinson said he expected the court of appeals to rule exactly the opposite. If the Commission put it in some places, it showed the Commission did consider it. The fact that the Commission put the factor in some places would be conclusive proof it was considered and the sentencing judge could not overrule the Commission. Judge MacKinnon disagreed. The Chairman said the Commission could list those factors it considered and say, for example, renunciation that was not at a level of a complete defense was considered and rejected as an appropriate consideration in sentencing. Commissioner Robinson said that was to say that factor was inappropriate, and he disagreed. Those are situations a the judge would want to distinguish. Judge Breyer asked if Commissioner Robinson did not want a judge to take an unusual situation into account, even if that meant going outside the guidelines? The Chairman said he would rather lose a few on that end than leave the other end wide open. Judge Breyer said the judge would have to write his reasons down and they would be subject to appellate review which is unlikely to allow subjective reasoning. The Chairman said it is most unlikely that an appellate court, held to the clearly erroneous standard, could

51

**Defense Exhibit 12-51**

do that.    Judge Breyer said one could make a statement that renunciation can not be a cause for going outside the guidelines. The Chairman said he wanted to encourage the offender to stay home but also to pick up the phone.    Once this happens, the offender would get a discount in the cooperation section of the guidelines.    Judge Breyer said there may be a case where renunciation is appropriate.  Commissioner Robinson said the memo is misleading because there is a renunciation for conspiracy but not for attempt.    If they take Judge Breyer's approach to sentence outside the guidelines, there is no restraint on the judge.    Judge Breyer said the judge must explain his reasons and have an appellate court review.  Commissioner Robinson said there would be no effective constraint on how much the judge deviates from the guidelines.    Judge Breyer said that could be constrained.

Chairman Wilkins agreed there must be constraints on judges when sentencing outside the guidelines, but in every conspiracy case, the defense must raise the renunciation issue or otherwise be liable for ineffective counsel.  Commissioner Robinson asked why the standard would be any different at sentencing than during trial.    In trial, it was not incompetent counsel not to raise renunciation or withdrawal in conspiracy cases.  Chairman Wilkins said one must raise and prove it, but must admit he was a part. He noted that all mitigating factors in the guidelines would not be a big discount, but the defense will go after them because they may reduce sentences.    Commissioner Robinson said that was

52

**Defense Exhibit 12-52**

true of every factor. The Chairman said that was true of every mitigating factor. Commissioner Robinson said one would have to raise every one. The Chairman said he did not think this was a legitimate defense.

Commissioner Robinson said he would think a judge would want to distinguish between someone who tells the police and someone who did not participate. The Chairman said that was one reason for the 25% range. Commissioner Robinson said the 25% range was going to be used to consider many other things. He said the trade-off was to add a renunciation factor, where the Commission can control the criteria and the amount of adjustment that should be allowed. The Chairman asked how much adjustment should be allowed. Commissioner Robinson said he did not know, but the advantages of putting it in included limiting when it is used and limiting the adjustment. The disadvantage of putting it in, the way he understood the Commission's viewpoint, was the 'red flag' argument. He noted this argument would arise again regarding other issues. He stated if the only countervailing argument was the 'red flag' argument, the burden of showing why renunciation should not be included is on those who do not want it. To make the red flag argument work, one must assume the defense will be applied in guilty plea cases and will only be an issue where the prosecutor did not agree to the stipulation. His view was that in a case where stipulations were absent, the offender would argue for every mitigating factor anyway. Dave Lombardero said someone who abandoned a crime would not be caught much and would

53

**Defense Exhibit 12-53**

not be prosecuted very often. He noted if the offender is being sentenced for conspiracy, renunciation failed as a defense. Commissioner Robinson said it is not a complete defense in all districts. As to how often it was used, he noted one had to look at how many statutes and cases address this issue. Judge MacKinnon said there were no federal statutes, and that is what the Commission was analyzing. Commissioner Robinson said that made it more important for the Commission, because the federal system did not address the issue. He said two thirds of the states have such statutes. Judge MacKinnon said when renunciation is an issue, he did not pull out in time not to be guilty.

Commissioner Robinson said the renunciating offender was different than a conspirator caught by the police. The Chairman asked if it was not enough to have the judge use his 25% discretion. Commissioner Robinson said that was used in many instances, and if the standard could be articulated, it should be. The Chairman wanted to limit it to 5% downgrade. Commissioner Robinson said Suzanne's memo was misleading the Commission because renunciation was not a defense to attempt and not a legal defense in all Circuits. It should not be assumed that the law will provide this person a defense. Part of the federal sentencing system was to provide uniformity, but the Circuits have varying rules. Part of the Commission's charter was to straighten that out. Suzanne stated if someone withdraws from a crime early on, it will be reflected in the offender's

54

**Defense Exhibit 12-54**

role in the crime. Commissioner Corrothers said she assumed all Commissioners had thought about the offenders' role as an aggravating or mitigating factor. Commissioner Robinson expected more guilty pleas if the prosecutor could stipulate renunciation and get a discount. The degree of involvement was only significant in completed crimes; it can not be determined in attempts. Chairman Wilkins said there could be levels of involvement in a conspiracy. Commissioner Robinson said that was true, but renunciation was still relevant. The Chairman asked if the person would always plead guilty. Commissioner Robinson said most likely if the guidelines provided for it.

Judge Breyer suggested while the renouncing offender was less morally culpable, Commissioner Robinson seemed to think that fact is not adequately taken care of in the court. He said the Chairman believed writing in a special discount was not necessary. He agreed with the Chairman, but said to 1) go with the proposal, and 2) leave it to Commissioner Robinson to flag the issue for public response. The Chairman said the same had been done for fines; describing the two general approaches and requesting comment. Judge Breyer said he did not want to make a solid decision right now. He said he would prefer not to publish it, but leave it to Commissioner Robinson to write the question for publication.

Commissioner Robinson said he would most likely have a minority view on many issues. He wanted to voice those views on issues he believed important so at the end of the process, his

55

**Defense Exhibit 12-55**

views were stated. He thought he had that moral obligation. Chairman Wilkins said if the public agreed with him, he would feel better about his present position. If he heard otherwise, he was willing to reconsider. Commissioner Robinson said he did not expect the public to generate the sophisticated arguments discussed now, because they are many-sided issues that require much thought. The Chairman said his contact with U.S. Attorneys and judges had indicated otherwise. Commissioner Robinson said he thought the President had appointed the Commission to decide the complicated issues. He believed Commissioners should be leaders, not followers in the issues. His vision of guidelines should consider all factors the legislature has deemed relevant. His personal view was that the legislature wanted the Commission to go beyond that, but if the Commission had different ideas, he was willing to let them execute it.

Judge Breyer said the opposition on renunciation was divided. The first group said to never consider it. His view is to consider it by going outside the guidelines. Commissioner Robinson said there was Judge Wilkins' view that minor injustice could be tolerated or accounted for in the 25%, or having an unconstrained judge give whatever sentence he wanted. The Chairman said there were three positions and he did not want to make a final decision when someone may decide later to change how they feel about the issue. He proposed leaving it for public comment.

Judge MacKinnon said we were talking about renunciation as

56

**Defense Exhibit 12-56**

an incomplete defense, so it must be graded by degrees. Commissioner Robinson said it must be defined for Circuits that do not recognize it. The Chairman asked if that was the Commission's duty--rewriting federal law. Commissioner Robinson said the Commission's duty was to provide uniform sentencing for similar offenses and offenders. To the extent present case law provides inconsistency, at least in the sentencing phase, there should be uniformity. Judge MacKinnon said all Circuits would recognize withdrawal. Chairman Wilkins said this was different than withdrawal; no one was notified.

Commissioner Block asked for the standard. Commissioner Robinson said in general, two views were held in the U.S., and both require good faith and that the offender was not caught. The difference was whether one could just stop, or do something more, like call the police. The federal position, the minority opinion, is that just stopping was not enough. He said he would not mind adopting that standard. The Chairman said that meant an objective standard, which was different. Commissioner Robinson said the larger concern is whether or not to put it in the guidelines. Judge Breyer said the Commission could debate this and similar issues forever, and they are not that important. He said in life, the person would not be prosecuted or they would get a sentence outside the guidelines. Commissioner Robinson said why not use as a standard the pattern of current criminalization decisions. Judge Breyer said no guidelines consider this. Commissioner Robinson agreed, but said there are

57

**Defense Exhibit 12-57**

many decisions using this factor.  He said all mitigations are reduced to eight chapters.  Judge Breyer said leave it out of the proposal and leave the burden on Commissioner Robinson to prove it was an issue.  Commissioner Robinson said his burden was fulfilled by voicing his opinion.  Then he would be free to say what he felt about the guidelines with a clear conscience.  He said it was unfair to take a public view without voicing the opposition.  Judge MacKinnon agreed to circulate the renunciation proposal but not with the 70%.  Judge Wilkins said to put it as a question in the draft.  Judge Breyer said to ask should it be left out, put in the 25% range, or be sent outside the guidelines.  The Chairman said that was a good idea for many issues.  Alan said focused comments would help.  Judge Breyer said to accept the proposal, and flag the issue in publication phrased as above.  The Chairman asked if Suzanne would draft the question for the public comment.  The Chairman asked Judge Breyer to clarify his proposal.  Judge Breyer said to reserve judgment on the question until the public can comment on it, but adopt the proposal for now.  The Chairman said there was no need to adopt it now.  Judge Breyer said Suzanne should not write a proposal on renunciation.

The topic of multiple related harms was scattered throughout the July 10 draft and the question was when or when not to use multiple related harms.  The definition of that phrase was a problem.  A possible solution had been reached with Chapter Two, alien smuggling was given a chart for number of aliens smuggled.

**Defense Exhibit 12-58**

In tax, there were aggravators for the amounts of money. Multi-count indictments may use this solution. There would be a discount for the second, third, and fourth factor of the crime, so there are not two consecutive sentences for the same instance of smuggling. The Chairman asked about counts that are not related. Would they be consecutive terms? Suzanne said they had not dealt with the consecutive-concurrent argument, although probation officers will have to do that in a merger or aggregation of harms section. At present they were not aggregated. Peter said that would be clearer as the draft progresses, because the Commission would not want more punishment for two robberies and a burglary than for three robberies. He envisioned a summary table addressing both issues; related and unrelated counts.

Judge Breyer said there were five separate ways of handling the matter. He said he would give Suzanne his list, because he was not sure which would be best. The Chairman said the decision of concurrent or consecutive issue could be decided later. Judge Breyer said choate will merge with inchoate and separate transactions would be easy to deal with. Judge Breyer said one way to do it is that everything else is concurrent. Another way was the July 10 way i.e., non-consecutive if it was not physical and consecutive if it was physical. He said a simple way to do that is one, two, and many. Judge MacKinnon said in the District one can not say it is consecutive. Commissioner Block said what about the fourth person, in for example, a shooting. Judge

59

**Defense Exhibit 12-59**

Breyer said they would be the same as three.  Commissioner Block said not for the fourth person.  Judge MacKinnon said a Supreme Court case was ruled that two shootings equalled one.  The Chairman said a rule for violent or personal crime could be that the scores be added together.  Judge Breyer said that brings up the 'bus' problem with forty or fifty victims and a sentence of hundreds of years.  The Chairman said property could then be handled by the value of property.  He was most concerned about seventeen counts of bribery.  Judge Breyer said there were other factors to determine scope of the offense.

Commissioner Robinson said two issues may need to be separated.  One was multiple incidents of the same crime, such as seventeen counts of bribery.  That was a merger overlap problem, which was only a problem when the elements of harm overlap.  For example, robbery and assault have the same element of threat, etc., so there must be a way to take out the assault elements from robbery.  He noted this problem was avoided in an element system.  Even with the element approach, the multiple related harm idea was still there.  He noted the July 10 draft counted everything, but the values were decreased, and that was complicated.  Commissioner Nagel said for deterrence, property value should increase the penalty.  The Chairman said one may add up the value of all property involved and then determine the penalty.  Commissioner Nagel said it then made a difference if you continued to add up property value or had to stop at a certain point.  Chairman Wilkins said there was merit in the idea

**Defense Exhibit 12-60**

of calculating scope, although it had always been discussed as an add-on.

Judge Breyer said the more scope was addressed, the less need there was to get this section exactly right. Commissioner Nagel asked why. Judge Breyer said in a case where an offender took two checks across state lines and completed a fraud of $50,000, the value would be $50,000 so it would not matter if there were two checks as much. The Chairman said they were all in favor of doing something, but were not in the position to make that decision. Judge Breyer said one way was to take it into account by the substantive definition--some statutes will tell one to take the whole amount in. The problem arose when something happens outside the offense definition. Commissioner Gainer said the Commission must find a way to make everything count for something. Commissioner Robinson said the July 10 draft looked at the amount, and had some multiplier for number of occasions. He agreed it was complicated and would be pleased if someone could find a simpler way of doing it while still keeping the principle that everything counts for something. The Chairman said his idea was best so far, but it was still complicated. Judge Breyer said there were many areas where only the main things that have been proved should count. Judge MacKinnon said if it's in the presentence report, it does not need to be proved. Chairman Wilkins said if that factor kicks the sentence up, the judge would have to explain it. Judge Breyer said if a judge could never deviate from that, the "Al Capone" factor could never

61

**Defense Exhibit 12-61**

be resolved.   The fact that crime X was done to commit crime Y could never be considered.   He said that road needed to be limited so it could not be abused.

The question of reckless, negligent, blameless conduct or mistake factors was raised.   The proposal was to move the modifiers from Chapter Three to where they were applicable, namely homicide and regulatory offenses.   Commissioner Gainer said most federal offenses use the interpretive definition of the Model Penal Code definition of recklessness.   Commissioner Robinson said the Proposed Federal Criminal Code stated where there was no other measure of culpability, recklessness was the standard for the crime.   The Chairman asked if that should be the base harm value.   Commissioner Robinson said yes, and where one wanted to distinguish reckless from intentional action, there must be some mechanism to do that.   He said Suzanne's proposal probably suggested that level of distinction in each offense, but that caused complication.   The degree of risk or threat must be considered, as well as state of mind and other things.   The number of variations would increase up exponentially. Commissioner Gainer noted there were very few offenses that went below the Model Penal Code definition of reckless or knowingly. Negligent homicide was the only one.   There could be two levels of culpability, but those would go to different elements of the offense.   He noted that one may pull a trigger knowingly and have strict liability for the fact that the individual was a federal officer, and require specific intent to another _factor, but

62

**Defense Exhibit 12-62**

culpability needed to be measured.

The Chairman asked if, in strict liability offenses, the base harm element was the 'reckless' standard. Suzanne said there would be a low base harm value aggravated by intent even if the intent provision was required in the statute. Commissioner Robinson asked about the mechanism for aggravation. He asked if there was a general provision or offense-specific provisions. Suzanne said there was an attempt to group regulatory offenses generically with some upward adjustment for intent. Commissioner Robinson disagreed with the process of listing the culpable state of mind and having to include a mechanism to aggravate for intent. He said the principles would be different for strict liability and others. The Chairman said he thought the strict liability offense would have the base harm value and other offenses would be aggravated for intent. Commissioner Robinson agreed, but said even if all strict liability offenses were grouped together, all other offenses still needed attention. The Chairman said specific intent must be proved in most cases so there would not be many cases not covered. Commissioner Robinson said in most federal offenses, the courts interpret phrases such as 'willfully' as modern American criminal law defines 'recklessly,' i.e., one only has to be aware that there was a risk of the harm. Commissioner Robinson said he wanted to distinguish between someone who was reckless in, for example, deceiving the public, and the con man who makes a living by deception. The Chairman thought that was a good idea, but wanted

63

**Defense Exhibit 12-63**

real life examples of where this factor comes into play. Chairman Wilkins said since the U.S. Code defines "willfully" to encompass "recklessly," that was all he needed. Commissioner Robinson said the federal system was behind other systems in that even states which have not adopted the Model Penal Code format recognize reckless, negligent, knowing, and intentional culpability levels. He said the difference between reckless and intentional states of mind made a big difference to him, and in 95% of jurisdictions in the U.S. that difference was recognized. The Chairman asked for an example of a case where someone is guilty by the reckless standard that is not tantamount to willful conduct. Commissioner Robinson said homicide. Chairman Wilkins said strict liability and homicide were the only two. Commissioner Gainer said illegal dumping of waste into a river could be one. Chairman Wilkins said that was a violation of a separate law. Commissioner Gainer said an offender could just know that he is dumping the chemical, and be unaware of the results. He stated if that is the minimum standard of proof, to satisfy the statute, the courts get a finding of knowing since it includes willful blindness, yet reckless is the least standard of what needs to be proved. Commissioner Gainer said Commissioner Robinson's point was that in many cases, something more than 'reckless' is proved. In the case where intentional killing occurred, that should be more. Chairman Wilkins said it should be murder if it was intentional killing. Commissioner Robinson asked about killing wildlife birds. He said all most

64

## Defense Exhibit 12-64

Case 1:24-cr-00239-CKK-MAU    Document 119-20    Filed 03/02/26    Page 66 of 78

jurisdictions distinguish more than federal law: blameless, negligence, knowing. Assuming the Commission recognized these three, it would be difficult to assume which standard is incorporated in the base harm value, and adjust upward. It requires an offense-specific writing with many variables, or a general principle for groups of offenses. He preferred the latter, yet once that is done, what is gained over a system which has one general statement for all offenses. He said the July 10 draft contained such a general statement. He stated the base harm value is determined by state of mind. While he felt nothing was wrong with discussing adjustments at a later time, the proposal is not much different than the July 10 draft. Judge Breyer said the Code distinguishes between the states of mind, the question is how to bring it into the guidelines. He said the July 10 method of putting it in across the board was one good way. Another way is not to have a distinct reference to it but a policy statement pointing out the differences and stating that some are ignored for many offenses. He said where the statutory offense does not provide for the difference, the judge can go up or down.

Commissioner Robinson noted that raises the problem of identifying the standard for each offense. Judge Breyer said that could be litigated. Commissioner Robinson said once the judge must decide level of culpability, what level the offense normally incorporates, and the appropriate sentence, there is not much left to the guidelines.

65

**Defense Exhibit 12-65**

Judge Breyer said this is a recurring problem--Commissioner Robinson wanted minor decisions made now, and he did not. Commissioner Robinson said the percentage of cases where people could raise this argument is up to 100% because state of mind is a factor in every offense. The Chairman said a majority of crimes require proof of intentional or willful conduct. The crimes discussed are regulatory offenses and homicide. Commissioner Robinson said Commissioner Gainer's point was federal distinctions of willful are interpreted as conscious risk-taking. To the extent the Commission would want to punish for an egregious offense, it needs an aggravating factor for those states of mind. Commissioner Gainer said while some offenses do require proving state of mind, statutes that require a specific result (such as "if death occurs") do not always require states of mind to be proven. He agreed most criminal conduct would be intentional, but the result may not be intentional.

Judge MacKinnon read the statute for tampering with consumer products, which says, in part "..whoever with reckless disregard to the risk.." Commissioner Gainer said that was a very nice example of a modern attempt to build culpability states into federal statutes. He noted that particular statute was drafted by someone on leave from Tylenol. Commissioner Robinson said that statute seemed to try to differentiate someone who met the bare requirement for recklessness and some manufacturer or distributor who intentionally created a risk. He noted there is

**Defense Exhibit 12-66**

a difference between someone who turns off his refrigerator to save money and is aware of the risks and someone who wants to cause some disruption in the delivery area. Judge Breyer agreed one may want to distinguish those cases, but he was doubtful that those distinctions could be written in a generalized way. His solution, which Commissioner Robinson does not like, is to leave the determination to judges in aggravating/mitigating circumstances. He said another solution is to key it to individual offenses. Commissioner Gainer asked which he favored. Judge Breyer was interested in seeing if there was a set worth doing explicitly, such as the statute Judge MacKinnon just read. Distinguishing between knowing and reckless did not seem worthwhile to him, but the difference between negligence and intentional was worth distinguishing.

Commissioner Robinson said strict liability cases do not require any degree of culpability. He noted, in the case of product safety, he would like to distinguish between a manufacturer who was helpless to prevent the problem and the manufacturer who was unaware of a specific risk but did not have the quality control procedures to adequately protect the public. Judge Breyer said he was tempted in both directions because he could see the distinction but hated the complexity of having too many modifiers. Judge Breyer agreed with Commissioner Gainer that it must be done with the substantive law, but said sentence modifiers were there for a different objective. Commissioner Robinson asked why the sentence would be less sophisticated than

67

**Defense Exhibit 12-67**

what the legislature has deemed important.  Judge Breyer said one must then identify substantive crimes where state of mind should be differentiated.  He said if the result is death, he did not think it mattered.  Commissioner Robinson suggested the converse approach:  state that reckless is always worse than blameless, and so on, unless it does not apply.  Judge Breyer said there will be many areas it does not apply.  He noted the classic case of knowing versus intentional was blowing up the arch duke where you did not want to kill his retainer.  One was killed intentionally, the other knowingly.

Commissioner Gainer said the question was whether to aggravate for a more culpable state of mind.  He use an example of prosecuting the president of Merrill Lynch.  If the president issued a directive that encouraged executives to churn accounts, he could be prosecuted.  If he intended that to happen, he may deserve more punishment.  The Chairman asked if that "willful blindness" to the result was a federal crime.  Commissioner Gainer said it was a federal interpretation of the phrase "willful blindness" which is equivalent to the Model Penal Code's "reckless."  The Chairman said the definitions came from the courts, and the question was whether the Commission should distinguish those terms.  Judge Breyer suggested that although he saw the point of distinguishing culpability in some offenses, he felt a policy statement was in order.  Once written, it can be put into guidelines format if the Commission wished.  The Chairman said he would like to give all regulatory and strict

**Defense Exhibit 12-68**

liability offenses a base harm value of six and have one multiplier. Commissioner Block said that would result in the two levels of punishment the Commission was striving for.

Peter Hoffman suggested trying to discover how frequent this issue is for non-regulatory offenses and if it made a difference. He suggested as the Commission works through the offenses, add the factor to the offenses, and if it occurs often enough, make it a general factor. Commissioner Gainer said he would prefer it generically, but Peter's suggestion was valid. Commissioner Nagel asked if the U.S. Attorneys' advisory group could be consulted on the issue. Suzanne said the area had been discussed with the Lands Division of the Department of Justice. They said the charging decision is usually based on intent because civil damages were available for anything less than intentional conduct. Commissioner Block said two levels allows for some gradation of intent.

The Chairman asked Commissioner Gainer if someone polluted a river with reckless disregard for a person downstream, and someone died, would the state of mind be reckless or intentional? Judge Breyer said if someone died, they would not be prosecuted under that statute. Commissioner Gainer agreed, but for situations like it, the murder statutes could be cross-referenced. The Chairman said it could be cross-referenced down to involuntary manslaughter.

Commissioner Gainer said he was uncomfortable with the labelling approach to sentencing. He said, referring to the

69

**Defense Exhibit 12-69**

above case, someone died and there was intent, but that was only two elements, not murder.  Judge Breyer said each section would need a specific cross-reference, and he thought that was too complicated.  Commissioner Gainer said that is why he wanted it done generically.  Judge Breyer said that, too, is complicated and the decision should be left to the judge.

Judge Breyer said the Commission should follow Peter's suggestion.  The Chairman directed the Commission to proceed, leaving out the standard called "blameless."

The issue of extreme indifference and fortuitous injury was addressed.  Chairman Wilkins said the Commission must provide a mechanism for considering extraordinary circumstances, but not let that "tail wag the dog."  Suzanne suggested a policy statement would be in order because some of the aggravating circumstances would be captured in the harm value, but in extreme cases, more latitude should be given to judges.  The problem with the current approach is that it gives one multiplier for all aggravated cases.  She felt more latitude was needed, because the option of going over the guidelines could create appeals, and judges would not want to use that option very often.  Judge Breyer liked points 2 and 3 from Suzanne's memo because after the policy was written, the Commission could convert the suggestions into formal guidelines if the Commission felt it necessary. Commissioner Gainer said it is difficult to define when a judge should go outside the guidelines.  Commissioner Block said a standard multiplier would pre-empt the judge from ever going

70

**Defense Exhibit 12-70**

beyond the guidelines. Chairman Wilkins agreed. Commissioner Block said this was a particularly serious set of numbers to pull out of the air because the Commission could not imagine the circumstances of the most egregious cases. He thought the Commission should not prevent the judge from going outside the guidelines in those cases.

Commissioner Corrothers agreed. She said she was familiar with a burglary case where the victim was severely beaten and ultimately became a vegetable due to the injuries. She felt a provision should be available for those cases which are beyond imagination. The Chairman said that was a good example, and that a policy statement should be written expressing the Commission's view of the extreme cases.

On the subject of abnormal characteristics and conditions, Suzanne said the present draft gives downward adjustment without considering the defense of the law available to the defendant. She noted this is one area the Commission may wish to consider incapacitation since many violent offenders are not normal.

Her second concern was the case of a non-violent offender with a serious mental or physical disability who would not survive in prison. She felt there needed to be a safety valve for those cases. Possible solutions to this problem are a policy statement recommending house arrest or intensive probation, or moving all sanction units to probation.

The Chairman clarified her second proposal excluded all violent and drug offenses, and public health violations. He

71

# Defense Exhibit 12-71

asked what to do about those non-violent offenders. Commissioner Nagel predicted there would be many certifications of heart conditions. Judge Breyer said there must be a loophole for an unusual mitigation, the same as a loophole for an unusual aggravation. Commissioner Nagel said if a problem arose, it could be handled on appeal. Commissioner Block said one could know something about the bias upward, but one would not know anything about the bias downward. Judge Breyer said there may be asymmetry, but the question was still whether the Commission could think of all possible mitigating circumstances. He suggested a policy statement for unusual circumstances.

Commissioner Gainer said he, unfortunately, agreed with Judge Breyer because the Criminal Code Revision had proven that a chapter on defenses had to be written; otherwise, new defenses would be invented. He said the sociopathic and psychopathic personalities cause problems because they may warrant incapacitation. He said the crime control aspects should be worked in at this point. The Chairman said once that door is open, there will be all kinds of abnormalities used a mitigating factors. Commissioner Gainer said he was concerned that letting the judge sentence below the guidelines may be worse. The Chairman said the judge should be able to go below the guidelines in non-violent offenses. Judge Breyer said there had to be a loophole. The Chairman said Commissioner Robinson recognized this and put it in the guidelines as a small discount. Judge Breyer said one suggestion if not to limit the policy statement

72

**Defense Exhibit 12-72**

to physical and mental disabilities, but include other extraordinary factors as well. He used the example of the Dudley Stevens case which was prosecuted but the jury would not find the defendant guilty; the judge did. The defendant did little time, and the Crown prosecuted to make the point that cannibalism is not an acceptable form of behavior. He noted that while this was an unusual example, the point was that the judge must be able to account for an unusual situation or the prosecutor would not prosecute. He noted a similar situation would be prosecuting euthanasia because it is not acceptable, but a judge would not sentence as harshly as in a murder case.

The Chairman said he did not want to write the guidelines based on those extreme cases. Judge Breyer said it could be handled. Chairman Wilkins said once that provision is written down, it will be used for every case where the judge does not want the defendant imprisoned. He did not oppose Commissioner Robinson's idea to have a standard multiplier for physical and mental disability for violent offenses, but he would prefer not to have one at all. Judge Breyer said he was not talking about physical or mental disability, but other circumstances the Commission could not imagine. He agreed physical and mental disability was too limiting, as the euthanasia example illustrated.

Judge MacKinnon asked why the standard of whether the offender is capable of standing trial a factor, rather than something less? Judge Breyer said the defendant's state of mind

73

**Defense Exhibit 12-73**

was not the issue, but rather whether the District Court should be free to deviate downward for unusual mitigating circumstances. He said these were frequently referred to as degrees of provocation. He said some loophole should be there. A separate question was whether physical or mental states should be included in that loophole. He said he was not sure.

Commissioner Nagel asked why defenses like duress would not be available in these cases. Commissioner Gainer said they were available prior to conviction. Commissioner Nagel said if there was an extraordinary event, the defense would have been used successfully. Commissioner Gainer said it would have been used unsuccessfully, but the fact should still be considered at sentencing if the person was not acquitted. Commissioner Nagel said she agreed with the Chairman that the situation is so rare the loophole should not be opened. Judge Breyer argued that killing someone in a fight is not rare. Commissioner Gainer said the Commission would have to reject the consideration as unwarranted or deal with it in some fashion. He suggested going outside the guidelines with limitation for raising a sentence, and balance it with the degree of limitation for reducing a sentence.

Commissioner Block said there should be more leeway for aggravating factors since the standard of proof was so high. Judge MacKinnon said the proposal would look like allowing a judge to double the sentence for aggravation or cut it in half for mitigation. Commissioner Gainer said he would like some

74

**Defense Exhibit 12-74**

limit, although the numbers would be arbitrary.  Judge Breyer thought that could be done.  Commissioner Nagel asked about the number of cardiologists who certify heart conditions. Commissioner Gainer said the physical defect must be related to the offense.  Chairman Wilkins agreed.  Judge Breyer asked if the person with a legitimate heart condition would be sent to prison. Commissioner Corrothers said the Bureau of Prisons would be able to handle that.  Commissioner Nagel said if the disability were related to the offense, she felt better about it.  The Chairman said he thought that was implicit in the discussion, but it would also encompass the eleventh hour heart attack.  The Chairman asked if a significant reduction should be given to someone with a severe mental handicap if they committed a violent offense. Commissioner Nagel said no.  Commissioner Gainer said yes.  The Chairman said no.  Commissioner Gainer said his answer was yes because he had worked toward abolition of the insanity defense. His view is that insanity is just one handicap people labor under, while another may be growing up poor.  He felt these were not defenses from being held accountable for the crime, but they may be considered at sentencing.  Commissioner Gainer said there may be factors relevant to the sentencing process that are not relevant to the guilt-determining process.  He felt there should be some guidance so judges do not have full discretion.  What is within the parameters is a difficult decision, especially with an abnormal individual.  If that abnormality is related to the commission of offense, perhaps for punitive purposes the sentence

75

**Defense Exhibit 12-75**

should be reduced. He noted that Suzanne's point about incapacitation was also valid and perhaps these cases needed longer prison terms or long periods of post-release supervision.

The Chairman said he was interested in considering these circumstances, but if they were a reason to go outside the guidelines, there was little point in having guidelines. Judge Breyer disagreed. Judge Breyer said he thought Commissioner Gainer was suggesting a policy statement containing caps on deviation from the guidelines. He felt, as a technique, that was a good idea. Commissioner Gainer said the entire area is fraught with opportunities for abuse and that the Commission must be careful. Peter Hoffman said a policy statement could state that the sentence could deviate from the guidelines if reduced culpability existed, and the following factors are not considered reduced culpability: psychopath and sociopath. That way, the prosecutor and the court of appeals could look to that statement for guidance. The Chairman said he was still waiting for an example of mental or physical disability that warranted deviation from the guidelines. Commissioner Gainer said punitive sanctions would not work on a kleptomaniac. Peter was familiar with a case where a mentally retarded individual was caring for a dog which needed urgent veterinary care. When the bank refused to give him a loan, he robbed a bank. Since the dog had already died when the offender obtained the money, he turned himself in, but still got a prison term. Many people felt he should have gotten a lower term than the normal bank robber. Commissioner Corrothers

76

**Defense Exhibit 12-76**

said there were bizarre cases in the federal system.

Judge MacKinnon said he had written the legislation for psychopaths in the District of Columbia and Minnesota, and those persons found dangerous to themselves and others could be put away for life, unless they recovered.

The Chairman asked Commissioner Gainer if he could write out some proposal for the Commission to consider.

The final topic was trying to devise levels of involvement in criminal enterprises, since culpability could vary greatly. The Chairman said the U.S. Attorneys considered three levels: minor, intermediate and kingpin. A fourth category could be accessory after the fact. Judge Breyer said additional topics in the same category are 1) perjury at trial, 2) problem of crime being committed with a motive to help the defendant commit a different crime, and 3) the question of scope; committing the crime and in punishing it, look at the number of people involved, number of potential victims, duration, degree of planning, and degree of cover-up. He felt number 3) was different than role in the scheme. He wanted the Commission to think about them for discussion.

The Chairman noted there was a new draft on Racketeering, and that drafts on Firearms and Drugs would follow soon. The Chairman proposed to discuss those subjects the following Monday to leave some time for individual work. Judge Breyer asked to move it to Tuesday. All Commissioners agreed. The meeting was adjourned.

77

**Defense Exhibit 12-77**