

**Anna Duin | HVK Stevens Consultancy**

| | |
|---|---|
| **Van:** | Tamara Hirsch | HVK Stevens Legal |
| **Verzonden:** | vrijdag 7 oktober 2016 16:01 |
| **Aan:** | 'laurens.rinkes@athos-group.com'; 'Barry Woestenburg - Athos Group'; 'VikasChaturvedi - Athos Group'; 'Miriam Gami - Athos Group' |
| **CC:** | Jac Veeger | HVK Stevens Consultancy; Remco Polderman | HVK Stevens Consultancy; Willem Gerbers | HVK Stevens Legal; Hylke Faber | HVK Stevens Legal |
| **Onderwerp:** | RE: Comporta and Lanius - Compliance |
| **Bijlagen:** | Statement Douglas Edelman Source of Wealth.pdf |

Dear Laurens,

Referring to the meeting last Thursday between Athos and HVK Stevens, please find hereunder the information we gathered so far. Kindly note that all the below answers, information an documents have been provided to us by the client and are strictly confidential.

**Source of wealth UBO.**

1. Source of wealth of UBO; information/documentation regarding the creation of wealth by the UBO.
   The account Red Star Enterprises Limited created the wealth for the years where most of the wealth was created and accumulated. The UBO invested in the oil and logistics business, and this investment was made from a business point of view, whereas she has been the legal UBO of Red Star since the beginning of the last decade. As such her wealth was created under her beneficial ownership of Red Star and hereafter reinvested.

   Please find attached a statement from Mr Douglas Edelman regarding his source of wealth. This statement indicates that all wealth originates from his spouse, Mrs Delphine le Dain and Mr Douglas Edelman advised her when required. Mr Douglas Edelman had no equity participation in the underlying assets.

2. Source of wealth of the UBO; more specific the creation of the first million.
   Mrs Delphine Le Dain is a person of independent means, she is entitled to her share of the Le Dain's family wealth. At the start of the oil and logistics business, currently Redstar, she invested an amount of approximately USD 250,000 which money the couple used to grow the Red Star Enterprises Limited business which until today is the major source of wealth for the UBO.

**Funds; Rosbelt International Limited / Red Star.**

3. Explanation of the flow of funds in the structure; more specific the flow of funds between Rosbelt International Limited and the connection with the income from Red Star.
   Rosbelt International Limited is the treasury company of the group, with the client as the UBO. Salamander Associates Limited as Trustee of the Galactea Trust holds the shares in the capital of Rosbelt International Limited. The Beneficiary of The Galactea Trust are the same as the Oakwood Trust and The Atlas Trust being the three children of Mrs Delphine le Dain and herself until the children are adults. All profits from Red Star that are distributed end up in Rosbelt International Limited as the treasury company of the group. Profits and distributions are distributed to Rosbelt International Limited directly by companies or by trusts.

4. Global overview Red Star.
   Information regarding business activities by nature and geography will follow.

**Comporta.**

5. Explanation of the flow of funds.
   Please find below a specification of the loans and explanation regarding the flow of funds.

   1. To facilitate the investment in a plot in Portugal by Paisagem, The Oakwood Trust and Comporta entered into a loan agreement for the amount of EUR 550,000. The amount of EUR 550,000 was not sufficient for the purpose, therefore the parties agreed in to facilitate an additional amount as referred to in the addendum to loan agreement. As a result, the total loan available to Comporta amounts to EUR 592,805. For the sole reason that Comporta does not have a bank account (and still does not have one), The Oakwood Trust transferred the funds to the trusted third party account of HVK Stevens according to Section 1.2 of the loan agreement.

USPROD-02160976
USA_01086194

Comporta and Paisagem entered into a share premium contribution agreement. Comporta contributes an amount of EUR 550,000 that Comporta received as a loan from The Oakwood Trust as contribution on the shares. The amount of EUR 550,000 was not sufficient for the purpose, therefore the parties agreed to facilitate an additional amount as referred to in the addendum to share premium contribution agreement. Therefore, the contribution by Comporta is the total amount of EUR 592,805. HVK Stevens received the funds on its trusted third party account and transferred the funds in three tranches (EUR 332,805, EUR 200,000, and EUR 60,000) to the seller and to the lawyer in Portugal.

2. To facilitate the investment in a plot in Ibiza, Spain by Connecting Bridges, Rosbelt International Limited and Comporta entered into a loan agreement for the maximum amount of EUR 1,200,000. For the sole reason that Comporta does not have a bank account, Rosbelt International Limited transferred EUR 855,000 to the trusted third party account of HVK Stevens according to Section 1.2 of the loan agreement.
Until now only EUR 855,000 was needed for the investment in the plot in Ibiza, Spain.
Comporta and SIGO Capital entered into a loan agreement for the maximum amount of EUR 1,200,000. Since Connecting Bridges did not yet had a bank account at that time, the funds had to be transferred to SIGO Capital, to transfer the funds on behalf of Connecting Bridges. HVK Stevens received and transferred EUR 855,000 out of its trusted third party account.

6. Explanation Comporta VAT issue.
As discussed during our meeting, we are currently in discussion with the tax authorities regarding the Comporta VAT issue and we will inform you as soon as we have received feedback from the tax authorities.

**Lanius.**

7. Explanation of the flow of funds.
Please find hereunder a specification of the loans and explanation regarding the flow of funds.

1. To facilitate the purchase of the Sirius shares by Lanius, Rosbelt International Limited and Lanius entered into a loan facility agreement for the maximum amount of USD 25,000,000. HVK Stevens was not involved in the flow of funds. HVK Stevens is in the process of retrieving more details on the flow of funds.

We hope that the above will be to your satisfaction.

Looking forward hearing from you.

Best regards,
HVK Stevens

---

**Van:** Tamara Hirsch | HVK Stevens Legal
**Verzonden:** maandag 26 september 2016 19:38
**Aan:** 'laurens.rinkes@athos-group.com'; 'Barry Woestenburg - Athos Group'; 'VikasChaturvedi - Athos Group'; Miriam Gami - Athos Group
**CC:** Jac Veeger | HVK Stevens Consultancy; Remco Polderman | HVK Stevens Consultancy; Willem Gerbers | HVK Stevens Legal; Hylke Faber | HVK Stevens Legal
**Onderwerp:** RE: Comporta and Lanius - Compliance

Dear Laurens,

Jac Veeger asked me to reply to your e-mail below.

Thank you for your e-mail and the overview of the missing documentation.

Referring to your e-mail we will try our utmost to provide you with a comprehensive response to your information requests. Kindly note that all the below answers, information an documents have been provided to us by the client and are strictly confidential.

The annexes will be send to you in separate e-mails, due to the large amount of information.

**UBO**

1. **CV (financial) in detail including supporting documentation.**
A CV (financial) (attached to this e-mail) assembled by a UK based chartered accountant has been provided to Athos Malta on May 17, 2016 (aforementioned e-mail correspondence is attached to this e-mail) and to Athos Netherlands on May 20, 2016 (aforementioned e-mail correspondence is attached to this e-mail), as well as an additional CV (attached to this e-mail)

2

provided to you on July 15, 2016 (aforementioned e-mail correspondence is attached to this e-mail). The UK based chartered accountant, Mr Graham Collet, also acting in his capacity as director of Widmore Business Solutions Ltd., has known the client for over a decade and is acting as the trusted family office and advisor for the client and her structure for more than ten years. For completeness, please find attached to this e-mail a scan of the true copy of the passport of Mr Graham Collet and an overview of the officers of Widmore Business Solutions Ltd. (more information regarding Widmore Business Solutions Ltd. can be found on the website of the Companies House).

Unfortunately we do not have transcripts with details of the several calls regarding the (financial) CV of the client between Athos and HVK Stevens. Referring to attached e-mails dated, July 7, 2016 (all issues cleared regarding Comporta), July 19, 2016 and July 26, 2016 (all issues cleared regarding all BVs), HVK Stevens perceived the issue regarding the financial CV / source of wealth of the client to be fully taken care of.

2. **More information about source of wealth of UBO that adds up to present wealth.**
Please find attached the audited accounts of Red Star Enterprises Limited for the years 2012, 2014 and 2015. Information about the year 2011 can be found in the audited accounts for the year 2012, and information about the year 2013 can be found in the audited accounts for the year 2014. The account of Red Star Enterprises Limited created the wealth for the years where most of the wealth was created and accumulated. The source of wealth of the client is basically originating from Red Star Enterprises Limited, not Mina. Mina is in particular an oil terminal in Oman, of which the profit is approximately 7,000,000 a year. The whole oil logistics business is usually referred to in the press and the web as Mina, whereas the wealth creating entity is Red Star as the accounts clearly show.

3. **Information about the companies, Red Star and Mina where the UBO is mentioned in various articles as the owner. Are the new structures in any way related to Mina and Red Star?**
Refer to answer under 2. The common nominator is that Red Star and Mina have created and accumulated the main funds for the whole structure of the client. All groups belonging to the structure have the same UBO, being the client. The new structures are not related to Red Star and Mina, other than that the main funds are created and accumulated under these accounts.

4. **Why was the business of Mina and Red Star all in the name of the client and not on her husband?**
The client, being Mrs Delphine le Dain, has been the UBO of all the groups in the structure for sixteen years plus. Although Mr Douglas Edelman might have had a certain impact on the value creation because he acted as advisor to the client, at least during this period (the last past sixteen years plus) Mr Douglas Edelman had no active equity participation in the underlying assets. The original investments were done by the client, who has always been the owner of the structure and assets from a economical and legal perspective.

5. **Why is it that in both structures that will be beneficially owned by the client, Mr Edelman is also not in the picture.**
Refer to answer under 4. Mr Douglas Edelman as a US citizen was never interested in being a beneficiary, and the client has decided their three children to be the beneficiaries and herself until the children are adults.

6. **Comporta BV / Lanius Holding BV / Lanius BV.**

    A. **Source of funds of the trust (The Oakwood Trust and The Atlas Trust).**
    Refer to answer under 2 and 3. The primary source of funds of all group structures are the shareholdings in Red Star and Mina. The Oakwood Trust and The Atlas Trust were merely set up to hold different asset classes, like Comporta that holds real estate, and Lanius that through a Mexican company holds a stake in a Mexican harbor development.

    B. **Information about the assets in the trust. It says EUR 100 presently.**
    The assets should compare to the assets Comporta, estimated value low as all is financed, assets valued at approximately EUR 1,500,000, and Lanius also funded, but a higher value of the assets, approximately USD 25,000,000.

    C. **All corporate documents of all companies as listed and emailed to Tamara Hirsch 06-06-2016.**
    See below completed overview for Comporta, Lanius Holding and Lanius, referring to attached e-mail dated June 6, 2016.

    1. **Deed of Incorporation & Articles of Association** – Athos has this on file.
    2. **Shareholders Register** – Athos has this on file.
    3. **Share Transfer Agreements and Deeds** – Athos has this on file (Deed of transfer of one share in the capital of Lanius, by Lanius Limited to Lanius Holding).
    4. **Registration Forms with the Chamber of Commerce** – Please find hereunder an overview of attached registration forms:
        a. Registration form with the trade register of the Chamber of Commerce for the incorporation of Comporta.
        b. Registration form with the trade register of the Chamber of Commerce for the incorporation of Lanius.
        c. Registration form with the trade register of the Chamber of Commerce for the incorporation of Lanius Holding.
    5. **Extracts of the Chamber of Commerce** – Athos has this on file.
    6. **Publication of Accounts with the Chamber of Commerce & History** – Not available yet.

3

7. **Attribution of Fiscal Number** – The fiscal numbers are mentioned on the extracts of the Chamber of Commerce. For completeness, please find hereunder the fiscal numbers:
    d. RSIN Comporta: ████4918
    e. RSIN Lanius: ████9437
    f. RSIN Lanius Holding: ████9635

8. **Powers of Attorney** – Athos has this on file.
9. **Decisions / Resolutions of Board of Directors** – Athos has this on file.
10. **Decisions / Resolutions of Shareholders** – Athos has this on file.
11. **Loan Agreements and Other Contracts** – Please find hereunder an overview of attached agreements:
    a. Loan agreement Comporta – The Oakwood Trust:
        1. Loan agreement EUR 550,000 between Comporta (signed by Mr Matthijs van Kranenburg as proxy-holder) and The Oakwood Trust (signed by Salamander Associates Limited). Funds were transferred to HVK Stevens' trusted third party account.
        Please also find attached the power of attorney from Mr Remco Polderman to Mr Matthijs van Kranenburg.
        2. Addendum to Loan agreement (total amount of EUR 592,805) between Comporta (signed by Mr Remco Polderman) and The Oakwood Trust (signed by Salamander Associates Limited). Funds were transferred to HVK Stevens' trusted third party account.
    b. (Share premium) Contribution agreement Comporta – Paisagem:
        3. (Share premium) Contribution agreement EUR 550,000 between Comporta (signed by Mr Remco Polderman) and Paisagem (signed by Mr Remco Polderman). Funds were transferred out of HVK Stevens' trusted third party account.
        4. Addendum to (Share premium) Contribution agreement (total amount of EUR 592,805) between Comporta (signed by Mr Remco Polderman) and Paisagem (signed by Mr Remco Polderman). Funds were transferred out of HVK Stevens' trusted third party account.
    c. Loan Agreement Comporta – Rosbelt International Limited:
        5. Loan agreement EUR 1,200,000 between Comporta (signed by Mr Remco Polderman) and Rosbelt International Limited (signed by Leonard O'Brien representing Salamander Management Limited). EUR 855,000 were transferred to HVK Stevens' trusted third party account.
        6. Loan agreement EUR 1,200,000 between Comporta (signed by Mr Remco Polderman) and SIGO Capital SL (signed by Mr R.J.P. Sijmonsbergen). EUR 855,000 were transferred out of HVK Stevens' trusted third party account.
        Until now only EUR 855,000 was needed for the investment in the plot in Ibiza, via the Connecting Bridges SL. The funds were transferred to the bank account of SIGO Capital SL, since Connecting Bridges SL did not yet had a bank account at that time.
    d. Loan Agreement Lanius – Rosbelt International Limited:
        7. Loan agreement USD 25,000,000 between Lanius and Rosbelt International Limited.

12. **Information Regarding Participations / Affiliated Companies** – Please find hereunder an overview of attached documents:
    a. Shareholders' agreement regarding Sirius Energy, S.A. de C.V. (Lanius: 50% interest).
    b. Power of attorney from Remco Polderman as director of Lanius to Graham Collet.
    c. Extract in the English language of Paisagem (Comporta: 100% interest).
    d. Extract in the English language of Connecting Bridges (Comporta: 50% interest).
13. **Company Correspondence** – Athos has this on file.

14. **Financial file** – For completeness, please note that the first financial year of Comporta / Lanius Holding / Lanius runs up to and including 31st of December 2016:
    a. **Bank statements** – Not available.
    b. **Purchase & Sales Invoices** – Not available.
    c. **Balance Sheets** – Not available.
    d. **Annual Accounts** – Not available.
    e. **Audit Reports** – Not available.
    f. **CIT Returns and correspondence** – Not available.
    g. **VAT Returns and correspondence** – Please find attached the following documents we received from Athos:
        1. Q1 VAT 'nahefffingsaanslag' for Comporta, dated May 28, 2016.
        2. Q1 VAT return for Comporta, dated June 3, 2016.
        3. Q1 VAT 'dwangbevel' for Comporta, dated July 15, 2016.
        4. Q2 VAT 'nahefffingsaanslag' for Comporta, dated August 15, 2016.
    h. **Wage Tax Returns and correspondence** – Not available (there are no employees).
    i. **Dividend Withholding Tax Returns** – Not available (no dividend payments are made).
    j. **Tax & Legal Advice to Management** – Athos has the tax report for the Comporta (Portugal and Spain) and Lanius (Mexico) structures on file.

USPROD-02160979
USA_01086194

   D. **Flow of Funds via loans and contribution. Which accounts were monies paid into?**
The monies were paid into the sellers accounts that sold the real estate and land for the harbor project.

*Lanius Holding B.V.*

1. **Fully signed SHA and power of attorney granted to Graham Collett** – See attached SHA under 6. C. 12. a. above (with Lanius, not with Lanius Holding), and the power of attorney from Remco Polderman as director of Lanius to Graham Collet under 6. C. 12. b. above.
2. **Exhibit 3 under 2 (e) in the SHA mentions that balance sheets that were to be provided when the 4mio payment was made. Please send us the mentioned balance sheet** – Not available.
3. **Proof of payment that the amounts have been transferred on behalf of Lanius BV** – Not available.
4. **Details of Rosbelt International limited including UBO of the entity** – This is the treasury company of the group, with the client as UBO.
Please find attached an e-mail dated June 24, 2016 also explaining Rosbelt International Limited is the treasury company of the group.
For completeness, please also find attached the certificate for incorporation of Rosbelt International Limited, as well as the trust deed of The Galactea Trust.
5. **Proof/documentation that the shares of Sirius has been acquired by Lanius B.V.** – Not available.
6. **Any other asset or liability that is in the name of Lanius B.V.** – N/A.

*Comporta VAT* – For completeness, please note that the first financial year of Comporta / Lanius Holding / Lanius runs up to and including 31st of December 2016.

7. **Corrected VAT- Q1** – Not available yet.
8. **VAT Q2** – Not available yet.
9. **Invoices issued to and from Comporta** – Not available yet.
10. **Any other transactions** - Only wrongly issued to Comporta and corrected. They are to be reissued to the asset companies in Portugal and Spain.

We hope that the above will be to your satisfaction.

Looking forward meeting you Thursday.

Best regards,
HVK Stevens


**Van:** Laurens Rinkes | Athos Group [mailto:laurens.rinkes@athos-group.com]
**Verzonden:** dinsdag 6 september 2016 18:38
**Aan:** Remco Polderman | HVK Stevens Consultancy <r.polderman@hvkstevens.com>; Barry Woestenburg - Athos Group <barry.woestenburg@athos-group.com>; 'Vikas Chaturvedi - Athos Group' <vikas.chaturvedi@athos-group.com>
**CC:** Miriam Gami | Athos Group <miriam.gami@athos-group.com>
**Onderwerp:** Comporta and Lanius- Compliance

Dear Remco,

Today we had a long internal discussion on below mentioned entities and your recent request of transfering the shares (Comporta) Up to now and after several attempts we did not receive the required KYC – for your convenience, see the list summarized once more.
Until receiving the full documentation we will not perform any action, others than given by the law in order to keep the company in good standing.
In case we do not receive the full documentation by 1.10.2016 we will terminate the relation.

Please find the overview:

**Compliance**

UBO
1. CV (financial) in detail including supporting documentation
This has already been provided to you; the UK based chartered accountant that has known the client for over a decade has issued the cv. We have been very comfortable with that fact.
2. More information about source of wealth of UBO that adds up to present wealth

5

We will provide audited accounts of the company that created the wealth for the years where most of the wealth was created and distributed. These are the accounts of Mina/Red Star

3. Information about the companies, Red star and Mina where the UBO is mentioned in various articles as the owner. Are the new structures in any way related to Mina and Red Star?
See above, furthermore the new structures are not related to Red Star and Mina, other than that the UBO is Mrs Ledain

4. Why was the business of Mina and Red Star all in the name of the client and not on her husband?
The original investments in the logistics business were done by Mrs Ledain. From an economical perspective always, and from a legal perspective for over 16 years Mrs Ledain has been the owner of the whole structure and assets. Moreover, in the period that serious wealth was created, Mrs Ledain was the UBO and had been for years.

5. Why is it that in both structures that will be beneficially owned by the client, Mr Edelman is also not in the picture.
Please see under 4. Mr Edelman as a US citizen was never interested in being a beneficiary and Mrs Ledain has decided their 3 children be the beneficiaries and herself until the children are adults.

Comporta BV /Lanius Holding BV/ Lanius BV

1. Source of funds of the trust (Oakwood and Atlas Trust)
Originally the source of funds are all the same. These trusts mentioned were merely set up tp hold different asset classes, like Comporta that holds real estate, and Lanius that through a Mexican company holds a state in a Mexican harbour development.

2. Information about the assets in the trust. It says €100 presently.
The assets should compare to the assets Comporta, estimated value low as all is financed, assets valued at approximately 1,5 million, and Lanius also funded, but a higher value of the assets, approximately 25 million.

3. All corporate documents of all companies as listed and emailed to Tamara
I believe you have had these already.

4. Flow of Funds via loans and contribution. Which accounts were monies paid into?
The monies were paid into the sellors accounts that sold the real estate and land for the harbor project.

- *Lanius Holding B.V.*

- Fully signed SHA and power of attorney granted to Graham Collett
? Legal?
- Exhibit 3 under 2 (e) in the SHA mentions that balance sheets that were to be provided when the 4mio payment was made. Please send us the mentioned balance sheet
- Proof of payment that the amounts have been transferred on behalf of Lanius BV
- Details of Rosbelt International limited including UBO of the entity
This is the treasury company of the group, Mrs Ledain UBO
- Proof/documentation that the shares of Sirius has been acquired by Lanius B.V.
Legal
- Any other asset or liability that is in the name of Lanius B.V.

- *Comporta VAT*

- Corrected VAT- 1Q
- VAT 2Q
- Invoices issued to and from Comporta
- Any other transactions
Only wrongly issued to Comporta and corrected. They are to be reissued to the asset companies in Portugal and Spain
Best regards,
Laurens Rinkes

USPROD-02160981
USA_01086194

e undesigned, Douglas Phillipp Edelman, holder of Passport number ▮▮▮▮ born on the ▮▮▮▮ 1952 in California, United States of America, hereby solemnly declare the following to elucidate rther on my personal situation:

(i) The source of wealth originates in my marriage to my spouse Delphine Edelman. She owns a very successfull oil logistics and trade business, is involved in telecommunications, media&entertainment, real estate and other activities where I have advised her over the years.

(ii) The majority of the wealth was created in the period after 2002 in the above mentioned business lines. In the first period the counterparty in the business line was mainly the US governement and its departments. Even though there has been one instance (a US congressional hearing which is quite a common and normal occurance, especially considering once there are govemement relations involved) in which some publicity has been raised (mainly as it turned out on instigation of a copetitor) and for which there is ample documentation that this was fully clarified and no open issues remained, there has never been any other instance of issues surrounding my spouse or myself. In fact in my more than 35 years of activities, I have never had any doubts about my professional integrity and good standing for which I can get ample support if and where required.

(iii) I am currently retired and still as her huspand act as her advisor when required. The oil and logistics business has become a minor part of the current business activities that are conducted and where I am involved as an advisor. The focus is currently more in real estate devellopment, media and entertainment, agriculture and third party private equity investments.

(iv) As such, I hold no assets in my own name as everything is held in my spouse's name as the ultimate beneficial owner. The relationship (s) with banks are therefore through her structure that was set up for asset protection and succession purposes, as well as of business drivers. Therefore I have not had any need for a bank account in recent times. How ever if required, I have no problem in obtaining a bank account or receiving recommendations from financial professionals, international business people or other individuals that might be required.

(v) As I did not have the need for a bank account, our utility bills are therefore on my spouse's name and account for practical reasons. It would not be a problem however to transfer any utility bill to my name or provide other documented proof or support on my current address and main residency.

(vi) A bank reference can be provided by my wife if required;

(vii) My wife hereunder coutersigns my stement above.

Douglas P. Edelman

*[signature]*

*[signature]*