**Government Exhibit**
25-20



Frank Van Den
Biezenbos/LUX/BSL

08/24/2017 03:48 PM

To    Benedicte Lemaire/LUX/BSL@BSL

cc

bcc

Subject  DLD

Dear Benedicte,

As per stated by the family office the wealth was created entirely from the fuel logistics business in Central Asia, which commenced in 2002.

Attached you find a financial summary which shows the exact amounts of wealth created (and distributed) from this business since inception.

Also included in the financial information is a summary of how the wealth has been distributed and invested over the entire period from 2002 to end 2016.

Also attached you find a recent copy of the overall trust structure and operating companies.

The various trusts are all set up on an identical template and in the file we have copies of the trust deeds for all the relevant trusts.

Finally attached is a copy of the latest audited financial statements for R** Sta* Ent* showing the total profits for 2016 and net assets of the business at the present time.

The BO is Delphine Le Dain, who, together with her three minor children, are the only beneficiaries of the trusts. No other family members have any interest whatsoever (past or present) in the ownership structure created in 2002.

Best,
Frank

DLD Family Trust - Hisorical information.pdf    RS - Audited report 2016.pdf

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.

161116 - Trust structure and Management - 16.11.16 - v2 (with GC comments).pptx

Jean-François Pemmers
Chief Compliance Officer



## J. SAFRA SARASIN

Sustainable Private Banking since 1841

1/1

## Declaration on the proper taxation of the assets and income

Reference number    ████ 4577

### The contracting partner

Name, Country of domicile

Bluestone International Investing Limited, British Virgin Islands

### The beneficial owner(s) of the contracting partner

Name, Surname, Country of tax residence

Delphine Le Dain, Spain

> This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.

### The Undersigned

☐ Beneficial owner(s)

☒ Director(s) of the contracting partner, in this case:

Name, Surname, Country of domicile of the Director(s)

Salamander Management Limited, British Virgin Islands

### Declaration

I/we confirm that the beneficial owner(s) fulfill(s) all tax obligations in his/her/their country of tax residence related to the assets deposited under the above mentioned reference number and the income currently and in future generated by the assets.

The original purpose of holding the account in the name of the contracting partner and not directly in the name of the beneficial owner(s) can be explained as follows:

Place/date

Geneva 15/08/2016

Signature

SIGNATURE VERIFIED | A.O.

20211

**J. SAFRA SARASIN**

Sustainable Private Banking since 1841

*Confidential*

# MEMORANDUM

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein

**From: I. Bloys van Treslong**

**To:    Compliance**

**Re:    Multi Layer structure Bluestone International Investing Ltd.**

**Date:  01 12 2016**

The shares of Bluestone International Investing Ltd., a limited liability company
incorporated under the laws of the British Virgin Islands ("BVI") and a tax resident of the
BVI, are 100% held by The Bluestone Trust, a BVI trust.

A BVI company is used for flexibility and is tax resident in the BVI, i.e. subject to
corporate income tax at a rate of 0%.

Under the terms of a discretionary trust, the trustee is generaly given wide discertionary
powers over the trust fund and decides (accordig to the beneficiaries' best interests)
whether, when and to which beneficiary a distribution of capital or income of the trust is
made, and in what proportions. Beneficiaries under a discretionary trust are regarded as
not having a specific interest in the trust property but only a right to be considered when
the trustee exercises his discretions.

A protector can be appointed to balance the wide discretionary and fiduciary powers
given to the trustee under the trust. Typically, a protector's role is to ensure the wishes of
the settlort ar carried out by the trustees. The protector is often a close friend or confidant
of the settlor.

A trust is typically and commonly used for (among others):

- the protection of assets;
- preservation of wealth;
- continuity of family businesses;
- to arrange for execution and division of the estate of the settlor in case of his/her
  death; and
- all of the above also in case of under aged children being the beneficiaries.

Banque J. Safra Sarasin (Luxembourg) SA

10A, boulevard Joseph II, L-1840 Luxembourg, P.O. Box 887, L-2018 Luxembourg

T: +352 45 47 81-1, F: +352 45 47 81-555, www.jsafrasarasin.com



Sustainable Private Banking since 1841

Confidential

In this file the ultimate beneficial owner is adviced by and the structure has been set-up/adviced by the Dutch tax law firm HvK Stevens in Amsterdam, who only advice tax compliant structures.

The beneficial owner Mrs Le Dain is tax resident of Spain and taxed there for income from the structure.

Bleustone International Investing Ltd. sole function is to act as Treasury company for all trusts of Mrs Le Dain (all trust deeds are identical in every aspect). Consequently, the company will only hold cash and protfolio investments.



This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

Annex 1      E-mail of 08/24/2017

Annex 2      General chart



TRUE COPY OF ORIGINAL
Signature :
Date : 08/03/2017.

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.

BP: ██████ 4577

DMB OK



**J. SAFRA SARASIN**

Sustainable Private Banking since 1841

Entity tax residency self-certification form INSTRUCTIONS

# CRS - E

---

**Please read these instructions before completing the form.**

Regulations based on the OECD Common Reporting Standard ("CRS") require Banque J. Safra Sarasin (Luxembourg) SA to collect and report certain information about an account holder's tax residency. If account holder's tax residence is located outside *Luxembourg*, we may be legally obliged to pass on the information in this form and other financial information with respect to your financial accounts to *the tax authorities* of Luxembourg and they may exchange this information with tax authorities of another jurisdiction or jurisdictions pursuant to intergovernmental agreements to exchange financial account information.

You can find summaries of defined terms such as an account holder, and other terms, in the Appendix.

This form will remain valid unless there is a change in circumstances relating to information, such as the acount holder's tax status or other mandatory field information, that makes this form incorrect or incomplete. In that case you must notify us and provide an updated self-certification.

This form is intended to request information consistent with local law requirements.

**Please complete this form where you need to self-certify on behalf of an entity account holder.**

If you are an individual account holder or sole trader or sole proprietor do not complete this form. Instead please complete an "*Individual tax residency self-certification form.*"

For joint or multiple account holders please complete a separate form for each account holder.

If the Account Holder is a U.S. tax resident under U.S. law, you should indicate that the account holder is a U.S. tax resident on this form and you may also need to fill in an IRS W-9 form. For more information on tax residence, please consult your tax adviser or the information at the OECD automatic exchange of information portal.

**Where the Account Holder is a Passive NFE, or an Investment Entity located in a Non-Participating Jurisdiction managed by another Financial Institution**

Please provide information on the natural person(s) who exercise control over the Account Holder (individuals referred to as "Controlling Person(s)") by completing a *"Controlling Person tax residency self-certification form"* for each Controlling Person. This information should be provided by all Investment Entities located in a Non-Participating Jurisdiction and managed by another Financial Institution.

You should indicate the capacity in which you have signed in Part 4. For example you may be the custodian or nominee of an account on behalf of the account holder, or you may be completing the form under a signatory authority or power of attorney.

**As a financial institution, we are not allowed to give tax advice.**

If you have any questions about this form, these instructions, or defining your tax residency status, please speak to your tax adviser or local tax authority.

You can also find out more, including a list of jurisdictions that have signed agreements to automatically exchange information, along with details about the information being requested, on the OECD automatic exchange of information portal.

20326          Page 1 of 11

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

**Entity tax residency self-certification FORM -** *(please complete parts 1-3 in BLOCK CAPITALS)*

### Part 1 –Identification of Account Holder

| | |
|---|---|
| **A.  Legal Name of Entity/Branch\*** | Bluestone International Investing Limited |
| **B.  Country of incorporation or organisation** | British Virgin Islands |

**C.  Current Residence Address**

| | |
|---|---|
| Line 1 *(e.g. House/Apt/Suite Name, Number, Street, if any)\** | Trinity chambers, PO BOX 4301 |
| Line 2 *(e.g. Town/City/Province/County/State)\** | Road Town, Tortola |
| Country \* | British Virgin Islands |
| Postal Code/ZIP Code (if any)\* | |

**D.  Mailing Address** *(please only complete if different to the address shown in Section C above)*

| | |
|---|---|
| Line 1 *(e.g. House/Apt/Suite Name, Number, Street)* | c/o Salamander Suisse - Rue Jean-Gabriel Eynard 8 |
| Line 2 *(e.g. Town/City/Province/County/State)* | Geneva |
| Country | Switzerland |
| Postal Code/ZIP Code | 1205 |

**Part 2 – Entity Type**    *Please provide the Account Holder's Status by ticking one of the following boxes.*

**1. (a)** Financial Institution – Investment Entity

    i. An Investment Entity located in a Non-Participating Jurisdiction and managed by another Financial Institution    ☐
    *(Note: if ticking this box please also complete Part 2(2) below)*
    **ii. Other Investment Entity**    ☒

  **(b)** Financial Institution – Depository Institution, Custodial Institution or Specified Insurance Company    ☐

If you have ticked **(a)** or **(b)** above, please provide, if held, the Account Holder's Global Intermediary Identification Number ("GIIN") obtained for FATCA purposes.

| G | S | 7 | A | W | Q | . | 0 | 0 | 0 | 0 | 0 | . | S | P | . | 0 | 9 | 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Salamander Management Limited GIIN

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein

**(c)** Active NFE – a corporation the stock of which is regularly traded on an established securities market or a ☐
corporation which is a related entity of such a corporation

*If you have ticked (c), please provide the name of the established securities market on which the corporation is regularly traded:* _____

*If you are a Related Entity of a regularly traded corporation, please provide the name of the regularly traded corporation that the Entity in (c) is a Related Entity of:* _____

**(d)** Active NFE – a Government Entity or Central Bank ☐

**(e)** Active NFE – an International Organisation ☐

**(f)** Active NFE – other than **(c)-(e)** *(for example a start-up NFE or a non-profit NFE)* ☐

**(g)** Passive NFE *(Note: if ticking this box please also complete **Part 2(2)** below)* ☐

**2.** *If* you have ticked **1(a)(i)** or **1(g)** above, then please:

    **a.** **Indicate the name** of any Controlling Person(s) of the Account Holder:*

_____

_____

_____

    **b.** **Complete** *"Controlling Person tax residency self-certification form"* for each Controlling Person.*

*Please see the definition of Controlling Person in Appendix*

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.

**Part 3 – Country/Jurisdiction of Residence for Tax Purposes and related Taxpayer Identification Number or functional equivalent\* ("TIN")** *(see Appendix)*

Please complete the following table indicating (i) where the Account Holder is tax resident and (ii) the Account Holder's TIN for each country/Reportable Jurisdiction indicated. Countires/Jurisdictions adopting the wider approach may require that the self-certification include a tax identifying number for each jurisdiction of residence (rather than for each Reportable Jurisdiction).

*If the Account Holder is not tax resident in any country/jurisdiction (e.g., because it is fiscally transparent), please indicate that on line 1 and provide its place of effective management or jurisdiction in which its principal office is located.*

*If the Account Holder is tax resident in more than three countries/jurisdictions, please use a separate sheet*

If a TIN is unavailable please provide the appropriate reason **A, B** or **C where appropriate**:

*Reason A - The country/jurisdiction where the Account Holder is resident does not issue TINs to its residents*

*Reason B – The Account Holder is otherwise unable to obtain a TIN or equivalent number (Please explain why you are unable to obtain a TIN in the below table if you have selected this reason)*

*Reason C – No TIN is required. (Note. Only select this reason if the domestic law of the relevant jurisdiction does not require the collection of the TIN issued by such jurisdiction)*

| | Country/Jurisdiction of tax residence | TIN | If no TIN available enter Reason A,B or C |
|---|---|---|---|
| 1 | British Virgin Islands | | A |
| 2 | | | |
| 3 | | | |

*Please explain in the following boxes why you are unable to obtain a TIN if you selected Reason **B** above.*

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

20326

**Part 4 – Declaration and Signature\***

I understand that the information supplied by me is covered by the full provisions of the terms and conditions governing the Account Holder's relationship with *Banque J. Safra Sarasin (Luxembourg) SA setting out how Banque J. Safra Sarasin (Luxembourg) SA* may use and share the information supplied by me.

I acknowledge that the information contained in this form and information regarding the Account Holder and any Reportable Account(s) may be reported to the tax authorities of the country/jurisdiction in which this account(s) is/are maintained and exchanged with tax authorities of another country/jurisdiction or countries/jurisdictions in which the Account Holder may be tax resident pursuant to intergovernmental agreements to exchange financial account information.

I certify that I am authorised to sign for the Account Holder in respect of all the account(s) to which this form relates.

---

I declare that all statements made in this declaration are, to the best of my knowledge and belief, correct and complete.

I undertake to advise *Banque J. Safra Sarasin (Luxembourg) SA* within *30* days of any change in circumstances which affects the tax residency status of the Account Holder identified in Part 1 of this form or causes the information contained herein to become incorrect or incomplete (including any changes to the information on controlling persons identified in Part 2 question 2a), and to provide *Banque J. Safra Sarasin (Luxembourg) SA* with a suitably updated self-certification and Declaration within *30* days of such change in circumstances.

Signature:\*

Print name:\*                   Leonard O'Brien - Vincent Deguingand

Date:\* (dd/mm/yyyy)            03.10.2016

**Note**: Please indicate the capacity in which you are signing the form (for example 'Authorised Officer').

If signing under a power of attorney please also attach a certified copy of the power of attorney.

Capacity: \*                     Director

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.

---

SIGNATURE VERIFIED | A.O.

## Appendix – Summary Descriptions of Select Defined Terms

> **Note:** These are selected summaries of defined terms provided to assist you with the completion of this form. Further details can be found within the OECD *"Common Reporting Standard for Automatic Exchange of Financial Account Information"* (the "CRS"), the associated *"Commentary"* to the CRS, and domestic guidance. This can be found at the OECD automatic exchange of information portal.
>
> If you have any questions then please contact your tax adviser or domestic tax authority.

### "Account Holder"

The "Account Holder" is the person listed or identified as the holder of a Financial Account by the Financial Institution that maintains the account. This is regardless of whether such person is a flow-through Entity. Thus, for example, if a trust or an estate is listed as the holder or owner of a Financial Account, the trust or estate is the Account Holder, rather than the trustee or the trust's owners or beneficiaries. Similarly, if a partnership is listed as the holder or owner of a Financial Account, the partnership is the Account Holder, rather than the partners in the partnership. A person, other than a Financial Institution, holding a Financial Account for the benefit or account of another person as agent, custodian, nominee, signatory, investment advisor, or intermediary, is not treated as holding the account, and such other person is treated as holding the account.

### "Active NFE"

An NFE is an Active NFE if it meets any of the criteria listed below. In summary, those criteria refer to:

- active NFEs by reason of income and assets;
- publicly traded NFEs;
- Governmental Entities, International Organisations, Central Banks, or their wholly owned Entities;
- holding NFEs that are members of a nonfinancial group;
- start-up NFEs;
- NFEs that are liquidating or emerging from bankruptcy;
- treasury centres that are members of a nonfinancial group; or
- non-profit NFEs.



This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

An entity will be classified as Active NFE if it meets any of the following criteria:

a) less than 50% of the NFE's gross income for the preceding calendar year or other appropriate reporting period is passive income and less than 50% of the assets held by the NFE during the preceding calendar year or other appropriate reporting period are assets that produce or are held for the production of passive income;

b) the stock of the NFE is regularly traded on an established securities market or the NFE is a Related Entity of an Entity the stock of which is regularly traded on an established securities market;

c) the NFE is a Governmental Entity, an International Organisation, a Central Bank, or an Entity wholly owned by one or more of the foregoing;

d) substantially all of the activities of the NFE consist of holding (in whole or in part) the outstanding stock of, or providing financing and services to, one or more subsidiaries that engage in trades or businesses other than the business of a Financial Institution, except that an Entity does not qualify for this status if the Entity functions (or holds itself out) as an investment fund, such as a private equity fund, venture capital fund, leveraged buyout fund, or any investment vehicle whose purpose is to acquire or fund companies and then hold interests in those companies as capital assets for investment purposes;

e) the NFE is not yet operating a business and has no prior operating history, (a " start-up NFE") but is investing capital into assets with the intent to operate a business other than that of a Financial Institution, provided that

the NFE does not qualify for this exception after the date that is 24 months after the date of the initial organisation of the NFE;

f)  the NFE was not a Financial Institution in the past five years, and is in the process of liquidating its assets or is reorganising with the intent to continue or recommence operations in a business other than that of a Financial Institution;

g)  the NFE primarily engages in financing and hedging transactions with, or for, Related Entities that are not Financial Institutions, and does not provide financing or hedging services to any Entity that is not a Related Entity, provided that the group of any such Related Entities is primarily engaged in a business other than that of a Financial Institution; or

h)  the NFE meets all of the following requirements (a "non-profit NFE") :

i) it is established and operated in its jurisdiction of residence exclusively for religious, charitable, scientific, artistic, cultural, athletic, or educational purposes; or it is established and operated in its jurisdiction of residence and it is a professional organisation, business league, chamber of commerce, labour organisation, agricultural or horticultural organisation, civic league or an organisation operated exclusively for the promotion of social welfare;

ii) it is exempt from income tax in its jurisdiction of residence;

iii) it has no shareholders or members who have a proprietary or beneficial interest in its income or  assets;

iv) the applicable laws of the NFE's jurisdiction of residence or the NFE's formation documents do not permit any income or assets of the NFE to be distributed to, or applied for the benefit of, a private person or non-charitable Entity other than pursuant to the conduct of the NFE's charitable activities, or as payment of reasonable compensation for services rendered, or as payment representing the fair market value of property which the NFE has purchased; and

v) the applicable laws of the NFE's jurisdiction of residence or the NFE's formation documents require that, upon the NFE's liquidation or dissolution, all of its assets be distributed to a Governmental Entity or other non-profit organisation, or escheat to the government of the NFE's jurisdiction of residence or any political subdivision.

Note: Certain entities (such as U.S. Territory NFFEs) may qualify for Active NFFE status under FATCA but not Active NFE status under the CRS.

**"Control"**

"Control" over an Entity is generally exercised by the natural person(s) who ultimately has a controlling ownership interest (typically on the basis of a certain percentage (e.g. 25%)) in the Entity. Where no natural person(s) exercises control through ownership interests, the Controlling Person(s) of the Entity will be the natural person(s) who exercises control of the Entity through other means. Where no natural person(s) is/are identified as exercising control of the Entity through ownership interests, then under the CRS the Reportable Person is deemed to be the natural person who hold the position of senior managing official.

**"Controlling Person(s)"**

"Controlling Persons" are the natural person(s) who exercise control over an entity. Where that entity is treated as a Passive Non-Financial Entity ("Passive NFE") then a Financial Institution is required to determine whether or not these Controlling Persons are Reportable Persons. This definition corresponds to the term "beneficial owner" described in Recommendation 10 and the Interpretative Note on Recommendation 10 of the Financial Action Task Force Recommendations (as adopted in February 2012).

In the case of a trust, the Controlling Person(s) are the settlor(s), the trustee(s), the protector(s) (if any), the beneficiary(ies) or class(es) of beneficiaries, or any other natural person(s) exercising ultimate effective control over the trust (including through a chain of control or ownership). Under the CRS the settlor(s), the trustee(s), the protector(s) (if any), and the beneficiary(ies) or class(es) of beneficiaries, are always treated as Controlling Persons of a trust, regardless of whether or not any of them exercises control over the activities of the trust.

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

Where the settlor(s) of a trust is an Entity then the CRS requires Financial Institutions to also identify the Controlling Persons of the settlor(s) and when required report them as Controlling Persons of the trust.

In the case of a legal arrangement other than a trust, "Controlling Person(s) means persons in equivalent or similar positions.

### "Custodial Institution"

The term "Custodial Institution" means any Entity that holds, as a substantial portion of its business, Financial Assets for the account of others.  This is where the Entity's gross income attributable to the holding of Financial Assets and related financial services equals or exceeds 20% of the Entity's gross income during the shorter of: (i) the three-year period that ends on 31 December (or the final day of a non-calendar year accounting period) prior to the year in which the determination is being made; or (ii) the period during which the Entity has been in existence.

### "Depository Institution"

The term "Depository Institution" means any Entity that accepts deposits in the ordinary course of a banking or similar business.

### "FATCA"

FATCA stands for the U.S. provisions commonly known as the Foreign Account Tax Compliance Act, which were enacted into U.S. law as part of the Hiring Incentives to Restore Employment (HIRE) Act on March 18, 2010. FATCA creates a new information reporting and withholding regime for payments made to certain non-U.S. financial institutions and other non-U.S. entities.

### "Entity"

The term "Entity" means a legal person or a legal arrangement, such as a corporation, organisation, partnership, trust or foundation. This term covers any person other than an individual (i.e. a natural person).

### "Financial Institution"

The term "Financial Institution" means a "Custodial Institution", a "Depository Institution", an "Investment Entity", or a "Specified Insurance Company". Please see the relevant domestic guidance and the CRS for further classification definitions that apply to Financial Institutions.

### "Investment Entity"

The term "Investment Entity" includes two types of Entities:

(i) an Entity that primarily conducts as a business one or more of the following activities or operations for or on behalf of a customer:
- Trading in money market instruments (cheques, bills, certificates of deposit, derivatives, etc.); foreign exchange; exchange, interest rate and index instruments; transferable securities; or commodity futures trading;
- Individual and collective portfolio management; or
- Otherwise investing, administering, or managing Financial Assets or money on behalf of other persons.

Such activities or operations do not include rendering non-binding investment advice to a customer.

(ii) "The second type of "Investment Entity" ("Investment Entity managed by another Financial Institution") is any Entity the gross income of which is primarily attributable to investing, reinvesting, or trading in Financial Assets where the Entity is managed by another Entity that is a Depository Institution, a Custodial Institution, a Specified Insurance Company, or the first type of Investment Entity.

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

**"Investment Entity located in a Non-Participating Jurisdiction and managed by another Financial Institution"**

The term "Investment Entity located in a Non-Participating Jurisdiction and managed by another Financial Institution" means any Entity the gross income of which is primarily attributable to investing, reinvesting, or trading in Financial Assets if the Entity is (i) managed by a Financial Institution and (ii) not a Participating Jurisdiction Financial Institution.

**"Investment Entity managed by another Financial Institution"**

"An Entity is "managed by" another Entity if the managing Entity performs, either directly or through another service provider on behalf of the managed Entity, any of the activities or operations described in clause (i) above in the definition of 'Investment Entity'.

An Entity only manages another Entity if it has discretionary authority to manage the other Entity's assets (either in whole or part). Where an Entity is managed by a mix of Financial Institutions, NFEs or individuals, the Entity is considered to be managed by another Entity that is a Depository Institution, a Custodial Institution, a Specified Insurance Company, or the first type of Investment Entity, if any of the managing Entities is such another Entity.



**"NFE"**

An "NFE" is any Entity that is not a Financial Institution.

**"Non-Reporting Financial Institution"**

A Non-Reporting Financial Institution" means any Financial Institution that is:
- a Governmental Entity, International Organisation or Central Bank, other than with respect to a payment that is derived from an obligation held in connection with a commercial financial activity of a type engaged in by a Specified Insurance Company, Custodial Institution, or Depository Institution;
- a Broad Participation Retirement Fund; a Narrow Participation Retirement Fund; a Pension Fund of a Governmental Entity, International Organisation or Central Bank; or a Qualified Credit Card Issuer;
- an Exempt Collective Investment Vehicle; or
- a Trustee-Documented Trust: a trust where the trustee of the trust is a Reporting Financial Institution and reports all information required to be reported with respect to all Reportable Accounts of the trust;
- any other defined in a countries domestic law as a Non-Reporting Financial Institution.

**"Participating Jurisdiction"**



A "Participating Jurisdiction" means a jurisdiction with which an agreement is in place pursuant to which it will provide the information set out in the CRS and that is identified in a published list.

**"Participating Jurisdiction Financial Institution"**

The term "Participating Jurisdiction Financial Institution means (i) any Financial Institution that is tax resident in a Participating Jurisdiction, but excludes any branch of that Financial Institution that is located outside of that jurisdiction, and (ii) any branch of a Financial Institution that is not tax resident in a Participating Jurisdiction, if that branch is located in such Participating Jurisdiction.

**"Passive NFE"**

Under the CRS a "Passive NFE" means any: (i) NFE that is not an Active NFE; and (ii) Investment Entity located in a Non-Participating Jurisdiction and managed by another Financial Institution.

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

**"Related Entity"**

An Entity is a "Related Entity" of another Entity if either Entity controls the other Entity, or the two Entities are under common control. For this purpose control includes direct or indirect ownership of more than 50% of the vote and value in an Entity.

**"Reportable Account"**

The term "Reportable Account" means an account held by one or more Reportable Persons or by a Passive NFE with one or more Controlling Persons that is a Reportable Person.

**"Reportable Jurisdiction"**

A Reportable Jurisdiction is a jurisdiction with which an obligation to provide financial account information is in place and that is identified in a published list.

**"Reportable Jurisdiction Person"**



A Reportable Jurisdiction Person is an Entity that is tax resident in a Reportable Jurisdiction(s) under the tax laws of such Jurisdiction(s) - by reference to local laws in the country where the Entity is established, incorporated or managed. An Entity such as a partnership, limited liability partnership or similar legal arrangement that has no residence for tax purposes shall be treated as resident in the jurisdiction in which its place of effective management is situated. As such if an Entity certifies that it has no residence for tax purposes it should complete the form stating the address of its principal office.

Dual resident Entities may rely on the tiebreaker rules contained in tax conventions (if applicable) to determine their residence for tax purposes.

**"Reportable Person"**

A "Reportable Person" is defined as a "Reportable Jurisdiction Person", other than:
- a corporation the stock of which is regularly traded on one or more established securities markets;
- any corporation that is a Related Entity of a corporation described in clause (i);
- a Governmental Entity;
- an International Organisation;
- a Central Bank; *or*
- a Financial Institution (except for an Investment Entity described in Sub Paragraph A(6) b) of the CRS that are not Participating Jurisdiction Financial Institutions. Instead, such Investment Entities are treated as Passive NFE's.)



**"Resident for tax purposes"**

Each jurisdiction has its own rules for defining tax residence, and jurisdictions have provided information on how to determine whether an entity is tax resident in the jurisdiction on the <u>OECD automatic exchange of information portal.</u> Generally, an Entity will be resident for tax purposes in a jurisdiction if, under the laws of that jurisdiction (including tax conventions), it pays or should be paying tax therein by reason of his domicile, residence, place of management or incorporation, or any other criterion of a similar nature, and not only from sources in that jurisdiction. Dual resident Entities may rely on the tiebreaker rules contained in tax conventions (if applicable) to solve cases of double residence for determining their residence for tax purposes. An Entity such as a partnership, limited liability partnership or similar legal arrangement that has no residence for tax purposes shall be treated as resident in the jurisdiction in which its place of effective management is situated. For additional information on tax residence, please talk to your tax adviser or see the <u>OECD automatic exchange of information portal.</u>

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein

**"Specified Insurance Company"**

The term "Specified Insurance Company" means any Entity that is an insurance company (or the holding company of an insurance company) that issues, or is obligated to make payments with respect to, a Cash Value Insurance Contract or an Annuity Contract.

**"TIN" (including "functional equivalent")**

The term "TIN" means Taxpayer Identification Number or a functional equivalent in the absence of a TIN. A TIN is a unique combination of letters or numbers assigned by a jurisdiction to an individual or an Entity and used to identify the individual or Entity for the purposes of administering the tax laws of such jurisdiction. Further details of acceptable TINs can be found at the OECD automatic exchange of information portal.

Some jurisdictions do not issue a TIN. However, these jurisdictions often utilise some other high integrity number with an equivalent level of identification (a "functional equivalent"). Examples of that type of number include, for Entities, a Business/company registration code/number.

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein



**J. SAFRA SARASIN**

1/7

US Tax Status Self-Certification / corporations, complex trusts and other "non-flow-through" entities

Do **NOT** use this Declaration if you are a "flow-through entity", are acting as an intermediary or are not the beneficial owner of the account under US tax law.

# Declaration of Status for US Tax Withholding & Reporting

Reference no. (the "Account" – for internal use only): [redacted] 4 577

## Account Holder (to be filled-in and signed by authorized person(s) on behalf of the entity)

**Name**
Bluebird International Investing Limited

**Registered address / Domicile: (no P.O. Box or "in-care-of" address)**
Street/house no.
Trinity Chambers Tortola
Post code/town
Road Town
Country
British Virgin Islands

*This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein*

In this Declaration the singular includes the plural and the masculine includes the feminine and vice-versa, as appropriate.

In order to allow the correct determination of the status of the holder of the Account (the "Account Holder") for the purpose of United States of America ("United States" or "US") withholding tax regulations (QI and FATCA[1]) and relief therefrom under an applicable Double Tax Treaty, if any, between the United States and the country of residence of the Account Holder, I, the "Undersigned", acting for or on behalf of the Account Holder that I represent and am empowered to sign for, hereby make the following declarations and certifications to Banque J. Safra Sarasin (Luxembourg) SA (the "Bank").

## 1. Nature and Status of the Entity

The Account Holder is a (type of entity)

☑ Corporation    ☐ Complex trust    ☐ Other; please, specify:

organized under the laws of (country of organization)
British Virgin Islands

and a **"non-flow-through entity"** for US income tax purposes (i.e. a corporation, a complex trust or an entity that has made a "check-the-box" election according to US tax law to be treated as a corporation) and it is NOT organized or incorporated within the United States or one of its territories (American Samoa, Federated States of Micronesia, Guam, Midway Islands, Northern Mariana Islands, Puerto Rico, Republic of Palau, US Virgin Islands).

## 2. "Income not Effectively Connected"[2] Declaration

Is the income from the Account effectively connected with the conduct of a trade or business in the United States?

☑ **No**    The income from the Account is not effectively connected with the conduct of a trade or business in the United States.

☐ **Yes**    Please, STOP and complete an IRS form W-8ECI and form W-8BEN-E instead of this Declaration.

## 3. Beneficial Ownership Declaration

The Account Holder is, according to US tax principles, the beneficial owner of all assets and income deposited in the Account. Furthermore, the Account Holder is in compliance with all applicable laws and is not deemed to be a "sham" or an "alter ego" of its interest holder(s) under any such laws.

---

[1] A full Overview of Key FATCA Terms is available upon request.
[2] A definition can be found at https://www.irs.gov/individuals/international-taxpayers/effectively-connected-income-eci
69-e-17.03



2/7

## 4. Application of Relief under a Double Tax Treaty ("DTT") with the United States

Does the Account Holder wish to claim the benefits of any applicable DTT with the US?

- ☑ **No** The Account Holder does not wish to claim the benefits of any applicable DTT; continue with the next section.
- ☐ **Yes** The Account Holder wishes to claim the benefits of the applicable DTT between the US and (specify country[3]):

If the answer to the preceding question is 'Yes', the Undersigned declares that the Account Holder:
- is a resident of the above-named country within the meaning of its DTT with the United States; and
- meets all provisions of the applicable DTT necessary to claim a reduced rate of withholding, including any Limitation of Benefits ("LoB") provisions, and derives the income as the beneficial owner within the meaning of Section 894 of the US Internal Revenue Code and the regulations thereunder.

Furthermore, the Undersigned certifies that the applicable LoB provisions[4] under the DTT between the United States and the country mentioned above are the following (please, check only one box):

- ☐ Government
- ☐ Tax exempt pension trust or pension fund
- ☐ Other tax exempt organization
- ☐ Publicly traded corporation
- ☐ Subsidiary of a publicly traded corporation
- ☐ Company that meets the ownership and base erosion test
- ☐ Company that meets the derivative benefits test
- ☐ Company with an item of income that meets active trade or business test
- ☐ Favorable discretionary determination by the US competent authority received
- ☐ Other (specify article and paragraph):

## 5. Status for FATCA purposes

A. Is the Account Holder registered with the US tax authorities, the Internal Revenue Service ("IRS") for FATCA purposes?

- ☐ **Yes** The Account Holder is a:
  - ☐ Participating FFI organized or domiciled in a country without an Intergovernmental Agreement ("IGA")[5]
  - ☐ Reporting Model 1 FFI
  - ☐ Reporting Model 2 FFI
  - ☐ Registered deemed-compliant FFI (other than Reporting Model 1 FFI, sponsored FFI or Nonreporting IGA FFI)

  with the Global Intermediary Identification Number ("GIIN"):

  Please, continue with section "6. Release of banking secrecy" hereafter.

- ☑ **No** Please, continue with the next question.

B. Did more than 50% of the Account Holder's gross income over the last 3 years arise from any of the following activities conducted for or on behalf of customers?
  - Trading[6]
  - Individual or collective portfolio management
  - Otherwise investing, administering or managing funds, money or financial assets on behalf of third parties
- ☐ **Yes** The Account Holder is an FFI. Please, go to question G hereafter.
- ☑ **No** Please, continue with the next question.

C. Does more than 50% of the Account Holder's gross income arise from investing, reinvesting or trading in financial assets?
- ☑ **Yes** Please, continue with the next question.
- ☐ **No** Please, go to question E hereafter

D. Does the Bank or another FFI perform any of the following activities for the Account Holder? (see important footnote [7])
  - Trading[6]
  - Individual or collective portfolio management
  - Otherwise investing, administering or managing funds, money or financial assets
- ☑ **Yes** The Account Holder is an FFI. Please, go to question G hereafter.
- ☐ **No** Please, go to question F hereafter.

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.

---

[3] Please, refer to http://edit.swissbanking.ch/en/csbpdkt-import?sourcepath=countryiist.htm for a current list of DTT countries.
[4] Please, refer to Annex I of this Declaration
[5] Please, refer to https://www.treasury.gov/resource-center/tax-policy/treaties/Pages/FATCA.aspx for a current list of IGA countries.
[6] In particular, but not limited to, trading in money market instruments (checks, bills certificates of deposit, derivatives, etc.); foreign exchange; interest rates; index instruments, transferable securities; or commodity futures
[7] If you have a mandate for asset management services with the Bank or another FFI, please, select "Yes". If the Bank or another FFI merely executes trades on your behalf, please, select "No".

69-e-17.03

E. Did less than 50% of the Account Holder's assets produce or was held to produce passive income (interests, dividends, rents, royalties, etc.) during the preceding year?

☐ **Yes**   The Account Holder is an "Active NFFE" (Non-Financial Foreign Entity). Please, continue with section "6. Release of banking secrecy" hereafter.

☐ **No**   Please, continue with the next question.

F. Is the Account Holder an Active/Excepted NFFE?

☐ **Yes**   The Account Holder is an Active/Excepted NFFE with the following status (please, check only one box):

☐ **Non-profit organization**

The Undersigned certifies that the Account Holder is a non-profit organization that meets the following requirements:
- The Account Holder is established and maintained in its country of residence exclusively for religious, charitable, scientific, artistic, cultural or educational purposes;
- The Account Holder is exempt from income tax in its country of residence;
- The Account Holder has no shareholders or members who have a proprietary or beneficial interest in its income or assets;
- Neither the applicable laws of the Account Holder's country of residence nor the Account Holder's formation documents permit any income or assets of the Account Holder to be distributed to, or applied for the benefit of, a private person or non-charitable entity other than pursuant to the conduct of the Account Holder's charitable activities or as payment of reasonable compensation for services rendered or payment representing the fair market value of property which the entity has purchased; and
- The applicable laws of the Account Holder's country of residence or the Account Holder's formation documents require that, upon the Account Holder's liquidation or dissolution, all of its assets be distributed to an entity that is a foreign government, an integral part of a foreign government, a controlled entity of a foreign government, or another organization that is described under above requirements or escheats to the government of the entity's country of residence or any political subdivision thereof.

Please, continue with section "6. Release of banking secrecy" hereafter.

☐ **Other Active/Excepted NFFE:** please, STOP and complete an IRS form W-8BEN-E instead of this Declaration.

☐ **No**   The Account Holder is a Passive NFFE. Please, continue with section **"Passive NFFE"** on page 4.

G. Is the Account Holder a Nonreporting FFI in an IGA country?

☑ **Yes**   The Account Holder meets the requirements to be considered as a Nonreporting IGA FFI pursuant to an applicable IGA between the United States and the following country:

British Virgin Islands

The applicable IGA is a ☑ Model 1 IGA or a ☐ Model 2 IGA; the Account Holder is treated under the provisions of the applicable IGA or Treasury regulations as a

Sponsored Entity

(please, specify chapter 4 - FATCA - status)

If you are a trustee-documented trust or a sponsored entity, please, provide the:
- name of the trustee or sponsoring entity: Salamander Management Limited
- GIIN of the trustee or sponsoring entity: GS7AWQ-00000-SP-092
- GIIN of the Account Holder (if any):

Please, continue with section "6. Release of banking secrecy" hereafter.

*This information is furnished and/or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein*

☐ **No**   Please, continue with the next question.

H. Is the Account Holder a **Sponsored, Closely Held Investment Vehicle in a non-IGA country**?

☐ **Yes**   The Account Holder is a Sponsored Closely Held Investment Vehicle because it:
- is an FFI solely because it is an Investment Entity;
- is not a Qualified Intermediary (QI), a Withholding Foreign Partnership (WP) or a Withholding Foreign Trust (WT);
- has agreed with the sponsoring entity identified below that the latter agrees to fulfil all due diligence, withholding and reporting responsibilities of a participating FFI on behalf of the Closely Held Investment Vehicle;
- does not hold itself out as an investment vehicle for unrelated parties; and
- has twenty or fewer individuals owning all of the debt and equity interests in the entity.

Name of the sponsoring entity:

GIIN of the sponsoring entity:

Please, continue with section "6. Release of banking secrecy" hereafter.

☐ **No**   Please, continue with the next question.

4/7

I.  **Is the Account Holder a Sponsored FFI in a non-IGA country?**

☐  **Yes**   The Account Holder is a Sponsored FFI because it:
- is an FFI solely because it is an Investment Entity;
- is not a Qualified Intermediary (QI), a Withholding Foreign Partnership (WP) or a Withholding Foreign Trust (WT); and
- has agreed with the sponsoring entity identified below that the latter agrees to sponsor the Investment Entity and to fulfil all due diligence, withholding and reporting responsibilities of a participating FFI on behalf of the Investment Entity.

Name of the sponsoring entity:

GIIN of the sponsoring entity:

GIIN of the Account Holder:

Please, continue with section "6. Release of banking secrecy" hereafter.

☐  **No**   Please, continue with the next question.

J.  **Is the Account Holder an Investment Advisor and/or an Investment Manager in a non-IGA country?**

☐  **Yes**   The Account Holder is an Investment Advisor and/or an Investment Manager because it:
- renders investment advice to, and
- does not hold financial accounts for, and
- manages portfolios for, and
- acts on behalf of,

customers for the purposes of investing or administering funds deposited in the customer's name with the Bank.

Please, continue with section "6. Release of banking secrecy" hereafter.

☐  **No**   Please, continue with the next question.

K.  **Is the Account Holder an Owner-Documented FFI?**

☐  **Yes**   The Account Holder is an Owner-Documented FFI. Please, continue with section "6. Release of banking secrecy" hereafter and complete a **Self-Certification for Owner-Documented FFIs (Form 20238)**.

☐  **No**   Please, **STOP** and complete a form W-8BEN-E instead of this Declaration.

## Passive NFFE

For purposes of this section, a "US Owner" or "US Controlling Person" is an Owner[8] or Controlling Person[9] of the Account Holder that meets the definition of US Person[10]. Please, choose one of the following two boxes.

☐  The Undersigned certifies that the Account Holder has **NO** US Owners and/or US Controlling Persons.

☐  The Undersigned certifies that the Account Holder has **US Owners and/or US Controlling Persons.** The Undersigned and all US Owners and US Controlling Persons irrevocably agree to submit to the Bank valid IRS W-9 forms and any required waivers, and that the Bank forward the W-9 forms and report all required information, directly or indirectly, through the Luxembourg tax authorities and/or any domestic or foreign paying agent, to the IRS and/or to any other US authorities.

Please, complete the table in the next page and provide a duly completed IRS W-9 form for each US Owner and/or US Controlling Person.

*This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein*

---

[8] The term "Owner" includes shareholders, beneficial owners, partners and members. Please, consult a tax advisor if you are unsure as to whether you have included all Owners for FATCA purposes.

[9] A Controlling Person is a natural person who exercises control over the Account Holder.

[10] A US Person is an entity organised in the US or an individual that is a US citizen or national (including individuals with dual nationality), a lawful permanent resident in the US (e.g. a green card holder or a person that has resided in the US for an extended period this year and the two preceding years under the "substantial physical presence" test), a person born in the US (unless the individual renounced the US nationality), or a person that is liable to US income tax for any other reason (e.g. dual residence, joint tax declaration as a married couple, ongoing process of renunciation of US citizenship or of green card).

| | Name | Address | US TIN |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein. | |
| 4 | | | |
| 5 | | | |

If the Account Holder has additional US Owners and/or US Controlling Persons, please, use a second table.

## 6. Release of banking secrecy

The Undersigned acknowledges that the assets booked under the above reference number as well as the investment income on these assets or certain transactions in connection with them are or may become subject to tax or other levy in the US.

The Undersigned has understood that the Bank, pursuant to the Qualified Intermediary Agreement ("QIA") between the Bank and the IRS and/or pursuant to FATCA, may be obliged under certain circumstances to provide the IRS and US paying agents, directly or indirectly, through the Luxembourg tax authorities and/or any domestic or foreign paying agent, information about the current and/or custody Account held under the above reference number, the respective Account Holder and/or the Owners and/or Controlling Persons of the current and custody Account held under the above reference number (the "Information").

The Undersigned hereby authorises the Bank to report to the IRS, and/or to any other US authorities, the Information, e.g. through Form 8966 "FATCA Report". The Information may include in particular (i) all information concerning the Account Holder's relationship with the Bank ("the Banking Relationship"), including but not limited to the Account Holder's name and address of domicile, information about persons treated as Owners or Controlling Persons of the Account Holder (in case of a legal entity), date and place of birth, nationality(ies) and, if available, the US Tax Identification Number of the Account Holder, Owners and Controlling Persons (for legal entities and associations: registered office, date of incorporation and legal type under which it was established); and (ii) information about assets booked under the Account, e.g. investment income and sales proceeds, a copy of any IRS forms, including Form W-9 "Request for Taxpayer Identification Number and Certification" submitted by the Account Holder, any Owners and/or Controlling Persons to the Bank and/or some or all of the data contained in such forms and in account statements, the amount of assets held in aggregate at the Bank, the revenues and income received on any account held by the Account Holder with the Bank and any other information regarding the Banking Relationship which may be requested by the IRS.

The Undersigned hereby explicitly authorises the Bank to provide the Information in connection with the Account directly or indirectly, through the Luxembourg tax authorities or any paying agents, to the IRS and/or other US authorities and/ or US or non-US paying agents. The Undersigned explicitly waives any protection or right under the Luxembourg bank-client confidentiality and other Luxembourg data protection laws to the extent necessary for the reporting of any data as outlined above.

The Undersigned acknowledges and accepts that any data and information disclosed by the Bank to the IRS and/or other US authorities and/ or US paying agents will be subject to the laws of the United States and will no longer be subject to Luxembourg laws. US laws and regulations may follow different principles regarding bank-client confidentiality and/or data protection than those applicable under Luxembourg law.

This declaration shall remain in effect as long as the Bank is required to disclose Information pursuant to the QIA and/or FATCA. This declaration shall remain in effect even in the event of the death, incapacity or bankruptcy of the Account Holder or termination of the Banking Relationship. This Authorisation will not expire unless and until explicitly revoked by the Account Holder in writing. The Undersigned accepts that this Declaration is a prerequisite for establishing and maintaining the Banking Relationship. If the Account Holder revokes this Declaration at any later point in time, the Banking Relationship will automatically cease.

All data and Information disclosed to the IRS and/or other US authorities are disclosed irrevocably and will remain in the control of the United States even following revocation of this Declaration and/or the termination of the Banking Relationship.

All legal relations between the Account Holder and the Bank are governed by **Luxembourg substantive law**. The place of performance and debt collection for clients domiciled abroad and the **place of jurisdiction for all legal proceedings is the City of Luxembourg.** The Bank is entitled to take legal action against the Account Holder before the competent court at his place of residence or business, or before any other competent court or any other competent entity or authority in Luxembourg or abroad. Here too, Luxembourg substantive law shall continue to apply.

## 7. Obligations of the Bank

The Undersigned acknowledges that by accepting this Declaration the Bank undertakes to report, directly or through the Luxembourg tax authorities, to the IRS all the information required by the FATCA regulations with respect to any and all specified US Owners and US Controlling Persons that are identified above.

## 8. Change in Circumstances

During the contractual relationship with the Bank the Undersigned hereby undertakes to notify the Bank immediately and at his own initiative of any change in the status and/or ownership declared above, and agrees to provide the Bank with an updated Declaration no later than 30 days after such change occurred.

If the statements made in this Declaration become invalid after its filing with the Bank due to either a change in the status of the Account Holder, Owners and/or Controlling Persons and/or a late discovery of the fact that, notwithstanding this Declaration, the status of the Account Holder, Owners and/or Controlling Persons have been misrepresented and if the Account Holder, any Owners and/or any Controlling Persons are determined to be US Persons and fail to submit valid IRS Forms W-9 and any required waivers to the Bank, the Account Holder hereby irrevocably agrees that the Bank has the right, without prior notice, to sell all US investments held in the Account and to deduct and pay to the IRS a withholding tax of 30% (or the then applicable rate) on the income and the gross sale proceeds of such investments. The Account Holder further agrees that the Bank may not make new US investments on the Account Holder's behalf.

The Undersigned hereby expressly releases the Bank from any liability in respect of the sale of US investments and/or of the Bank ceasing further US investments pursuant to the application of this provision and undertakes to indemnify the Bank for any liability incurred under US tax rules or any agreement (QI/FFI) that the Bank has in place with the IRS in connection with the Bank's discovery of the US status of the Account Holder, any of its Owners and/or any of its Controlling Persons.

The Undersigned certifies being aware that if he fails to submit the documentation required to determine whether the Account is a US or non-US account (i.e. an account with or without any US Owners and/or US Controlling Persons) and any required IRS Forms W-9 and waivers, the relationship with the Bank will be treated as a "Non-Participating FFI" or non-consenting account pursuant to the terms of the Agreement between the United States and Luxembourg for Cooperation to Facilitate the Implementation of FATCA (the "Luxembourg IGA"). In such case the account will be reported on an aggregate basis, directly or through the Luxembourg tax authorities, to the IRS. The provision of this aggregate information may give rise to a group request by the IRS for specific information about the Account Holder, the Owners, the Controlling Persons and/or the Account. The Bank reserves the right to terminate the Account relationship shall this occur.

The Undersigned hereby certifies having read and understood the content of this section "*8. Change in Circumstances*".

> The Undersigned hereby certifies that he has obtained the explicit consent of each Owner and Controlling Person to execute this Declaration to the consequences described herein and to disclose the information.

To the best of my knowledge and belief the information contained herein is true, correct and complete.

Date                                             Signature(s)

**Date Received**
02.11.12

*This Declaration is intended solely for use within the Bank. It is an integral part of the account-opening documentation of Banque J. Safra Sarasin (Luxembourg) SA.*

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

SIGNATURE VERIFIED        A.O.

ANNEX I

## Limitation on benefits (LoB) treaty provisions

- **Government** — this test is met if the entity is the Contracting State, political subdivision, or local authority.

- **Tax-exempt pension trust or pension fund** — this test generally requires that more than half the beneficiaries or participants in the trust or fund be residents of the country of residence of the trust or fund itself.

- **Other tax-exempt organization** — this test generally requires that more than half the beneficiaries, members, or participants of religious, charitable, scientific, artistic, cultural, or educational organizations be residents of the country of residence of the organization.

- **Publicly-traded corporation** — this test generally requires the corporation's principal class of shares to be primarily and regularly traded on a recognized stock exchange in its country of residence, while other treaties may permit trading in either the US or the treaty country, or in certain third countries if the primary place of management is the country of residence.

- **Subsidiary of publicly-traded corporation** — this test generally requires that more than 50% of the vote and value of the company's shares be owned, directly or indirectly, by five or fewer companies that are publicly-traded corporations and that themselves meet the publicly-traded corporation test, as long as all companies in the chain of ownership are resident in either the US or the same country of residence as the subsidiary.

- **Company that meets the ownership and base erosion test** — this test generally requires that more than 50% of the vote and value of the company's shares be owned, directly or indirectly, by individuals, governments, tax-exempt entities, and publicly-traded corporations resident in the same country as the company, as long as all companies in the chain of ownership are resident in the same country of residence, and less than 50% of the company's gross income is accrued or paid, directly or indirectly, to persons who would not be good shareholders for purposes of the ownership test.

- **Company that meets the derivative benefits test** — this test is generally limited to NAFTA, EU, and EEA country treaties, and may apply to all benefits or only to certain items of income (interest, dividends, and royalties). It generally requires that more than 95% of the aggregate vote and value of the company's shares be owned, directly or indirectly, by seven or fewer equivalent beneficiaries (ultimate owners who are resident in an EU, EEA, or NAFTA country and are entitled to identical benefits under their own treaty with the US under one of the ownership tests included within the LoB article (other than the stock ownership and base erosion test)). In addition, this test requires that less than 50% of the company's gross income be paid or accrued, directly or indirectly, to persons who would not be equivalent beneficiaries.

- **Company with an item of income that meets the active trade or business test** — this test generally requires that the company be engaged in an active trade or business in its country of residence, that its activities in that country be substantial in relation to its US activities, if the payer is a related party, and the income be derived in connection to or incidental to that trade or business.

- **Favorable discretionary determination received** — this test requires that the company obtain a favorable determination granting benefits from the US competent authority that, despite the company's failure to meet a specific objective LoB test in the applicable treaty, it may nonetheless claim the requested benefits. Note: Unless a treaty or technical explanation specifically provides otherwise, you may not claim discretionary benefits while your claim for discretionary benefits is pending.

- **Other** — for other LoB tests that are not listed above (e.g., a headquarters test). Identify the other test relied upon, or enter N/A if the treaty has no LoB article. For example, if you meet the headquarters test under the US-Netherlands income tax treaty, you should write "Headquarters test, Article 26(5)" in the space provided.

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.

**J. SAFRA SARASIN**

Sustainable Private Banking since 1841

Declaration about US-Withholding Taxes / partnerships, trusts and foundations

# Withholding Statement/Written Agreement/Owner Reporting Statement

Reference number (for internal use only): ▮▮▮ 4577

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

## Account Holder

Name    BLUESTONE INTERNATIONAL INVESTING LIMITED

Permanent residence address (no "P.O. Box" or "in care" of address)
Street/house no.    TRINITY CHAMBERS   PO BOX 4301,   ROAD TOWN

Postal code/place    TORTOLA VG1110

Country    BRITISH VIRGIN ISLANDS.

In this Declaration the singular shall include the plural and vice-versa, as appropriate.

I, the undersigned, acting for or on behalf of the Account Holder that I represent and am empowered to sign for (the "Undersigned"), hereby declare the following:

## 1. Owners[1] (please fill in the list below and complete a W-9 Form for each US owner listed)

| | Name | Address | US TIN (if any) | Document provided[2] | Type of owner[3] | Intermediary/ flow-through entity? (Y/N) | Status[4] | Owner-ship %[5] |
|---|---|---|---|---|---|---|---|---|
| 1 | DELPHINE ANNE LE BAIN | STA GERTRUDIS 1812A 07814 SPAIN | N/A | W-8 BEN | 01 | Y | ☐ US ☒ Non-US | 100% |
| 2 | | | | | | | ☐ US ☐ Non-US | |
| 3 | | | | | | | ☐ US ☐ Non-US | |
| 4 | | | | | | | ☐ US ☐ Non-US | |
| 5 | | | | | | | ☐ US ☐ Non-US | |
| 6 | | | | | | | ☐ US ☐ Non-US | |

## 2. Applicable withholding rates

With respect to non-US partnerships/trusts/foundations, Banque J. Safra Sarasin (Luxembourg) SA (the "Bank") does not support any claims for benefits under applicable Double Tax Treaties. The Undersigned agrees be withheld at the full applicable withholding rate of 30%, or the then applicable rate.

Please note that the Bank does not provide any support in connection with a claim for refunds of US withholding tax including the provision of separate reports.

## 3. Production of documentation

The partnership/trust/foundation, upon request, agrees to make available to the Bank's auditors records that establish that the partnership/trust/foundation has provided the Bank with documentation of all its owners. In the case of failure to supply the

---

[1] The term "owner" includes individuals that hold a direct or indirect equity or debt interest in the entity (e.g. shareholders, partners, members) or, in the case or trusts or similar structures, the settlor or founder, or in some cases, for instance simple trusts, the beneficiaries. Please consult a tax adviser if you are unsure as to whether you have included all your owners for FATCA purposes. A full Overview of Key FATCA Terms is available upon request.
[2] W-8BEN, documentary evidence, W-9.
[3] Use codes of IRS Form 1042-S: Individual=01, Corporation=02, Trust=05 (for a full list of codes, please, refer to http://www.irs.gov/pub/irs-pdf/i1042s.pdf)
[4] Status "US" includes all persons considered US Persons for US tax purposes. This includes US citizens (including persons born in the US), US nationals (including persons with dual nationality), permanent US residents, temporary US residents ("substantial presence test"), including US green card holders.
[5] Enter your ownership allocation. If you have equal ownership or final ownership is not yet known, please, divide the ownership equally among all Owners.

201210   2015 01

necessary documentation within 90 days of the initial request the partnership/trust/foundation expressly consents, and represents that it has obtained the express consent of each individual owner, to the Bank applying 30% withholding on all US source income and filing corrected forms 1042 and 1042-S disclosing the identity of each partner to the US tax authorities (the Internal Revenue Service - "IRS") and/or the Luxembourg authorities.

## 4. Release from Banking Secrecy – Applicable where US owners exist

**The Undersigned hereby confirms that the Undersigned and all US owners, if any, irrevocably agree that the Bank may: a) forward the submitted W-9 forms to the Bank's custodians to report all required information to the IRS, and/or b) report all required information to the Luxembourg authorities, including but not limited to the name, address, account number, account balance, payments made with respect to the account and income earned on the account.**

**The Undersigned is aware that the Account Holder's identity (and that of any US owners) will be disclosed to the IRS and/or the Luxembourg authorities. With this declaration the Undersigned and the US owners irrevocably waive any protection under Luxembourg banking secrecy and data protection laws and release the Bank from the provisions of such laws. The Undersigned also acknowledges that the Bank cannot be held liable for any consequences affecting the Undersigned or the US owners that may arise from disclosing the above data to the IRS and/or the Luxembourg authorities.**

This authorization expressly applies to any forms the Undersigned has submitted which contain information about third parties or which were signed by third parties (e.g. owners). The Undersigned accepts and acknowledges that this waiver is a condition of the account to be opened and/or maintained by the Bank. The Bank reserves the right to terminate the account shall this condition not be respected.

## 5. Obligations of the Bank

This information is furnished and / or requested under the terms of disclosure must be governed by the provisions contained there..

**The Undersigned acknowledges that by accepting this Declaration the Bank agrees to report to the IRS and/or to the Luxembourg authorities all of the information required by the FATCA regulations with respect to any specified US persons that are identified above.**

## 6. Change in Circumstances

During the contractual relationship with the Bank the Undersigned hereby undertakes to notify the Bank immediately and at his own initiative of any change in status or ownership as declared above, and agrees to provide the Bank with an updated Declaration no later than 30 days after such change.

**If the declarations made above become invalid** after the filing of this Declaration with the Bank due to either a change in the Account Holder's status, and/or a late discovery of the fact that, notwithstanding this Declaration, the Account Holder's status has been misrepresented and if the Account Holder or its owners are determined to be US persons and fail to submit valid IRS Forms W-9 to the Bank, the Account Holder **hereby irrevocably agrees that the Bank has the right, without prior notice, to sell all US investments held in the account and to deduct and pay to the IRS a Withholding Tax of 30% (or the then applicable rate) on the income and the gross sale proceeds of such investments, and the Account Holder agrees that the Bank may not invest in US investments on the Account Holder's behalf.**

**The Undersigned hereby expressly releases the Bank from any liability in respect of the sale of US investments and of the Bank ceasing further US investments pursuant to the application of this provision and undertakes to indemnify the Bank for any liability incurred under US tax rules or any agreement (QI/FFI) that the Bank has in place with the IRS in connection with the Bank's late discovery of the status as US of the Account Holder or its owners.**

The Undersigned confirms being aware that if the Undersigned fails to submit the documentation required to determine whether the account is a US or non-US account the above mentioned relationship with the Bank will be treated as a "NPFFI" or recalcitrant account pursuant to the terms of the "Agreement between the Government of the Grand Duchy of Luxembourg and the Government of the United States of America to Improve International Tax Compliance and with respect to The United States information reporting provisions commonly known as the Foreign Account Tax Compliance Act" (the "Luxembourg IGA"). **In such case the account will be reported on an aggregated basis to the IRS and/or the Luxembourg authorities. The provision of this aggregate information may give rise to a group request by the IRS for specific information about the Account Holder and the account.** The Bank reserves the right to terminate the account shall this occur.

I have read and understood the content of this Section 'Change in Circumstances'.

*To the best of my/our knowledge and belief the information contained herein is true, correct and complete.*

*This Declaration will be kept in the records of the Bank and forms an integral part of the account opening documentation.*

| |
|---|
| **The partnership confirms that it is in possession of the explicit consent to this declaration and the procedures/ consequences described herein of each individual partner.** |

**Place/Date**

GENEVA, 18ᵃ March 2016

**Signature**

Form **W-8BEN-E**

(Rev. April 2016)
Department of the Treasury
Internal Revenue Service

**Certificate of Status of Beneficial Owner for United States Tax Withholding and Reporting (Entities)**

▶ For use by entities. Individuals must use Form W-8BEN. ▶ Section references are to the Internal Revenue Code.
▶ Information about Form W-8BEN-E and its separate instructions is at *www.irs.gov/formw8bene.*
▶ Give this form to the withholding agent or payer. Do not send to the IRS.

OMB No. 1545-1621

| Do NOT use this form for: | Instead use Form: |
|---|---|
| • U.S. entity or U.S. citizen or resident . . . . . . . . . . . . . . . . . . . . . . . . . . . . | . . W-9 |
| • A foreign individual . . . . . . . . . . . . . . . . . . . . . . . . . . | W-8BEN (Individual) or Form 8233 |
| • A foreign individual or entity claiming that income is effectively connected with the conduct of trade or business within the U.S. (unless claiming treaty benefits) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | . . W-8ECI |
| • A foreign partnership, a foreign simple trust, or a foreign grantor trust (unless claiming treaty benefits) (see instructions for exceptions) . . | . W-8IMY |
| • A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a U.S. possession claiming that income is effectively connected U.S. income or that is claiming the applicability of section(s) 115(2), 501(c), 892, 895, or 1443(b) (unless claiming treaty benefits) (see instructions for other exceptions) . . . . . . . . . . . | W-8ECI or W-8EXP |
| • Any person acting as an intermediary . . . . . . . . . . . . . . . . . . . . . . . . . . . . | . . W-8IMY |

| **Part I** | **Identification of Beneficial Owner** |
|---|---|

| 1 | Name of organization that is the beneficial owner | 2 | Country of incorporation or organization |
|---|---|---|---|

**Bluestone International Investing Limited** | **British Virgin Islands**

**3** Name of disregarded entity receiving the payment (if applicable, see instructions)

**4** Chapter 3 Status (entity type) (Must check one box only): ☑ Corporation ☐ Disregarded entity ☐ Partnership

☐ Simple trust ☐ Grantor trust ☐ Complex trust ☐ Estate ☐ Government

☐ Central Bank of Issue ☐ Tax-exempt organization ☐ Private foundation ☐ International organization

If you entered disregarded entity, partnership, simple trust, or grantor trust above, is the entity a hybrid making a treaty claim? If "Yes" complete Part III. ☐ Yes ☐ No

**5** Chapter 4 Status (FATCA status) (See instructions for details and complete the certification below for the entity's applicable status).

☐ Nonparticipating FFI (including a limited FFI or an FFI related to a Reporting IGA FFI other than a deemed-compliant FFI, participating FFI, or exempt beneficial owner).

☐ Participating FFI.

☐ Reporting Model 1 FFI.

☐ Reporting Model 2 FFI.

☐ Registered deemed-compliant FFI (other than a reporting Model 1 FFI, sponsored FFI, or nonreporting IGA FFI covered in Part XII). See instructions.

☑ Sponsored FFI. Complete Part IV.

☐ Certified deemed-compliant nonregistering local bank. Complete Part V.

☐ Certified deemed-compliant FFI with only low-value accounts. Complete Part VI.

☐ Certified deemed-compliant sponsored, closely held investment vehicle. Complete Part VII.

☐ Certified deemed-compliant limited life debt investment entity. Complete Part VIII.

☐ Certified deemed-compliant investment advisors and investment managers. Complete Part IX.

☐ Owner-documented FFI. Complete Part X.

☐ Restricted distributor. Complete Part XI.

☐ Nonreporting IGA FFI. Complete Part XII.

☐ Foreign government, government of a U.S. possession, or foreign central bank of issue. Complete Part XIII.

☐ International organization. Complete Part XIV.

☐ Exempt retirement plans. Complete Part XV.

☐ Entity wholly owned by exempt beneficial owners. Complete Part XVI.

☐ Territory financial institution. Complete Part XVII.

☐ Nonfinancial group entity. Complete Part XVIII.

☐ Excepted nonfinancial start-up company. Complete Part XIX.

☐ Excepted nonfinancial entity in liquidation or bankruptcy. Complete Part XX.

☐ 501(c) organization. Complete Part XXI.

☐ Nonprofit organization. Complete Part XXII.

☐ Publicly traded NFFE or NFFE affiliate of a publicly traded corporation. Complete Part XXIII.

☐ Excepted territory NFFE. Complete Part XXIV.

☐ Active NFFE. Complete Part XXV.

☐ Passive NFFE. Complete Part XXVI.

☐ Excepted inter-affiliate FFI. Complete Part XXVII.

☐ Direct reporting NFFE.

☐ Sponsored direct reporting NFFE. Complete Part XXVIII.

☐ Account that is not a financial account.

**6** Permanent residence address (street, apt. or suite no., or rural route). **Do not use a P.O. box or in-care-of address** (other than a registered address).

**Trinity chambers**

City or town, state or province. Include postal code where appropriate. | Country

**Road Town, Tortola** | **British Virgin Islands**

**7** Mailing address (if different from above)

**c/o Salamander Suisse - Rue Jean-Gabriel Eynard 8**

City or town, state or province. Include postal code where appropriate. | Country

**1205 Geneva** | **Switzerland**

*This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein*

**8** U.S. taxpayer identification number (TIN), if required | **9a** GIIN | Foreign TIN

**10** Reference number(s) (see instructions)

**Note:** Please complete remainder of the form including signing the form in Part XXX.

For Paperwork Reduction Act Notice, see separate instructions. | Cat. No. 59689N | Form **W-8BEN-E** (Rev. 4-2016)

Form W-8BEN-E (Rev. 4-2016)    Page **2**

| **Part II** | **Disregarded Entity or Branch Receiving Payment.** (Complete only if a disregarded entity with a GIIN or a branch of an FFI in a country other than the FFI's country of residence. See instructions.) |

**11** Chapter 4 Status (FATCA status) of disregarded entity or branch receiving payment

☐ Limited Branch (see instructions).        ☐ Reporting Model 1 FFI.        ☐ U.S. Branch.

☐ Participating FFI.        ☐ Reporting Model 2 FFI.

**12** Address of disregarded entity or branch (street, apt. or suite no., or rural route). **Do not use a P.O. box or in-care-of address** (other than a registered address).

City or town, state or province. Include postal code where appropriate.

Country

**13** GIIN (if any)

| **Part III** | **Claim of Tax Treaty Benefits** (if applicable). (For chapter 3 purposes only.) |

**14** I certify that (check all that apply):

**a** ☐ The beneficial owner is a resident of _____ within the meaning of the income tax treaty between the United States and that country.

**b** ☐ The beneficial owner derives the item (or items) of income for which the treaty benefits are claimed, and, if applicable, meets the requirements of the treaty provision dealing with limitation on benefits. The following are types of limitation on benefits provisions that may be included in an applicable tax treaty (check only one; see instructions):

☐ Government        ☐ Company that meets the ownership and base erosion test

☐ Tax exempt pension trust or pension fund        ☐ Company that meets the derivative benefits test

☐ Other tax exempt organization        ☐ Company with an item of income that meets active trade or business test

☐ Publicly traded corporation        ☐ Favorable discretionary determination by the U.S. competent authority received

☐ Subsidiary of a publicly traded corporation        ☐ Other (specify Article and paragraph):

**c** ☐ The beneficial owner is claiming treaty benefits for U.S. source dividends received from a foreign corporation or interest from a U.S. trade or business of a foreign corporation and meets qualified resident status (see instructions).

**15** Special rates and conditions (if applicable—see instructions):

The beneficial owner is claiming the provisions of Article and paragraph _____ of the treaty identified on line 14a above to claim a _____ % rate of withholding on (specify type of income): _____

Explain the additional conditions in the Article the beneficial owner meets to be eligible for the rate of withholding:

| **Part IV** | **Sponsored FFI** |

**16** Name of sponsoring entity: **Salamander Management Limited**

GIIN of sponsoring entity: **GS7AWQ.00000.SP.092**

**17** Check whichever box applies.

☑ I certify that the entity identified in Part I:

• Is an investment entity;

• Is not a QI, WP, or WT; **and**

• Has agreed with the entity identified above (that is not a nonparticipating FFI) to act as the sponsoring entity for this entity.

☐ I certify that the entity identified in Part I:

• Is a controlled foreign corporation as defined in section 957(a);

• Is not a QI, WP, or WT;

• Is wholly owned, directly or indirectly, by the U.S. financial institution identified above that agrees to act as the sponsoring entity for this entity; **and**

• Shares a common electronic account system with the sponsoring entity (identified above) that enables the sponsoring entity to identify all account holders and payees of the entity and to access all account and customer information maintained by the entity including, but not limited to, customer identification information, customer documentation, account balance, and all payments made to account holders or payees.

*This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein*

Form **W-8BEN-E** (Rev. 4-2016)

Form W-8BEN-E (Rev. 4-2016)                                                                                      Page **3**

| **Part V** | **Certified Deemed-Compliant Nonregistering Local Bank** |
|---|---|

**18**  ☐ I certify that the FFI identified in Part I:

• Operates and is licensed solely as a bank or credit union (or similar cooperative credit organization operated without profit) in its country of incorporation or organization;

• Engages primarily in the business of receiving deposits from and making loans to, with respect to a bank, retail customers unrelated to such bank and, with respect to a credit union or similar cooperative credit organization, members, provided that no member has a greater than five percent interest in such credit union or cooperative credit organization;

• Does not solicit account holders outside its country of organization;

• Has no fixed place of business outside such country (for this purpose, a fixed place of business does not include a location that is not advertised to the public and from which the FFI performs solely administrative support functions);

• Has no more than $175 million in assets on its balance sheet and, if it is a member of an expanded affiliated group, the group has no more than $500 million in total assets on its consolidated or combined balance sheets; **and**

• Does not have any member of its expanded affiliated group that is a foreign financial institution, other than a foreign financial institution that is incorporated or organized in the same country as the FFI identified in Part I and that meets the requirements set forth in this Part V.

| **Part VI** | **Certified Deemed-Compliant FFI with Only Low-Value Accounts** |
|---|---|

**19**  ☐ I certify that the FFI identified in Part I:

• Is not engaged primarily in the business of investing, reinvesting, or trading in securities, partnership interests, commodities, notional principal contracts, insurance or annuity contracts, or any interest (including a futures or forward contract or option) in such security, partnership interest, commodity, notional principal contract, insurance contract or annuity contract;

• No financial account maintained by the FFI or any member of its expanded affiliated group, if any, has a balance or value in excess of $50,000 (as determined after applying applicable account aggregation rules); **and**

• Neither the FFI nor the entire expanded affiliated group, if any, of the FFI, have more than $50 million in assets on its consolidated or combined balance sheet as of the end of its most recent accounting year.

| **Part VII** | **Certified Deemed-Compliant Sponsored, Closely Held Investment Vehicle** |
|---|---|

**20**  Name of sponsoring entity: _____

**21**  ☐ I certify that the entity identified in Part I:

• Is an FFI solely because it is an investment entity described in §1.1471-5(e)(4);

• Is not a QI, WP, or WT;

• Will have all of its due diligence, withholding, and reporting responsibilities (determined as if the FFI were a participating FFI) fulfilled by the sponsoring entity identified on line 20; **and**

*This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein*

• Twenty or fewer individuals own all of the debt and equity interests in the entity (disregarding debt interests owned by U.S. financial institutions, participating FFIs, registered deemed-compliant FFIs, and certified deemed-compliant FFIs and equity interests owned by an entity if that entity owns 100 percent of the equity interests in the FFI and is itself a sponsored FFI).

| **Part VIII** | **Certified Deemed-Compliant Limited Life Debt Investment Entity** |
|---|---|

**22**  ☐ I certify that the entity identified in Part I:

• Was in existence as of January 17, 2013;

• Issued all classes of its debt or equity interests to investors on or before January 17, 2013, pursuant to a trust indenture or similar agreement; **and**
• Is certified deemed-compliant because it satisfies the requirements to be treated as a limited life debt investment entity (such as the restrictions with respect to its assets and other requirements under § 1.1471-5(f)(2)(iv)).

| **Part IX** | **Certified Deemed-Compliant Investment Advisors and Investment Managers** |
|---|---|

**23**  ☐ I certify that the entity identified in Part I:

• Is a financial institution solely because it is an investment entity described in §1.1471-5(e)(4)(i)(A), **and**

• Does not maintain financial accounts.

| **Part X** | **Owner-Documented FFI** |
|---|---|

**Note:** This status only applies if the U.S. financial institution, participating FFI, or reporting Model 1 FFI to which this form is given has agreed that it will treat the FFI as an owner-documented FFI (see instructions for eligibility requirements). In addition, the FFI must make the certifications below.

**24a**  ☐ (All owner-documented FFIs check here) I certify that the FFI identified in Part I:

• Does not act as an intermediary;

• Does not accept deposits in the ordinary course of a banking or similar business;

• Does not hold, as a substantial portion of its business, financial assets for the account of others;

• Is not an insurance company (or the holding company of an insurance company) that issues or is obligated to make payments with respect to a financial account;

• Is not owned by or in an expanded affiliated group with an entity that accepts deposits in the ordinary course of a banking or similar business, holds, as a substantial portion of its business, financial assets for the account of others, or is an insurance company (or the holding company of an insurance company) that issues or is obligated to make payments with respect to a financial account;

• Does not maintain a financial account for any nonparticipating FFI; **and**

• Does not have any specified U.S. persons that own an equity interest or debt interest (other than a debt interest that is not a financial account or that has a balance or value not exceeding $50,000) in the FFI other than those identified on the FFI owner reporting statement.

Form **W-8BEN-E** (Rev. 4-2016)

Form W-8BEN-E (Rev. 4-2016)

Page **4**

| **Part X** | **Owner-Documented FFI** *(continued)* |

**Check box 24b or 24c, whichever applies.**

   **b** ☐ I certify that the FFI identified in Part I:

     • Has provided, or will provide, an FFI owner reporting statement that contains:

       • The name, address, TIN (if any), chapter 4 status, and type of documentation provided (if required) of every individual and specified U.S. person that owns a direct or indirect equity interest in the owner-documented FFI (looking through all entities other than specified U.S. persons);

       • The name, address, TIN (if any), and chapter 4 status of every individual and specified U.S. person that owns a debt interest in the owner-documented FFI (including any indirect debt interest, which includes debt interests in any entity that directly or indirectly owns the payee or any direct or indirect equity interest in a debt holder of the payee) that constitutes a financial account in excess of $50,000 (disregarding all such debt interests owned by participating FFIs, registered deemed-compliant FFIs, certified deemed-compliant FFIs, excepted NFFEs, exempt beneficial owners, or U.S. persons other than specified U.S. persons); **and**

       • Any additional information the withholding agent requests in order to fulfill its obligations with respect to the entity.

     • Has provided, or will provide, valid documentation meeting the requirements of §1.1471-3(d)(6)(iii) for each person identified in the FFI owner reporting statement.

   **c** ☐ I certify that the FFI identified in Part I has provided, or will provide, an auditor's letter, signed within four years of the date of payment, from an independent accounting firm or legal representative with a location in the United States stating that the firm or representative has reviewed the FFI's documentation with respect to all of its owners and debt holders identified in §1.1471-3(d)(6)(iv)(A)(2), and that the FFI meets all the requirements to be an owner-documented FFI. The FFI identified in Part I has also provided, or will provide, an FFI owner reporting statement of its owners that are specified U.S. persons and Form(s) W-9, with applicable waivers.

**Check box 24d if applicable** (optional, see instructions).

   **d** ☐ I certify that the entity identified on line 1 is a trust that does not have any contingent beneficiaries or designated classes with unidentified beneficiaries.

| **Part XI** | **Restricted Distributor** |

  **25a** ☐ (All restricted distributors check here) I certify that the entity identified in Part I:

     • Operates as a distributor with respect to debt or equity interests of the restricted fund with respect to which this form is furnished;

     • Provides investment services to at least 30 customers unrelated to each other and less than half of its customers are related to each other;

     • Is required to perform AML due diligence procedures under the anti-money laundering laws of its country of organization (which is an FATF-compliant jurisdiction);

     • Operates solely in its country of incorporation or organization, has no fixed place of business outside of that country, and has the same country of incorporation or organization as all members of its affiliated group, if any;

     • Does not solicit customers outside its country of incorporation or organization;

     • Has no more than $175 million in total assets under management and no more than $7 million in gross revenue on its income statement for the most recent accounting year;

     • Is not a member of an expanded affiliated group that has more than $500 million in total assets under management or more than $20 million in gross revenue for its most recent accounting year on a combined or consolidated income statement; **and**

     • Does not distribute any debt or securities of the restricted fund to specified U.S. persons, passive NFFEs with one or more substantial U.S. owners, or nonparticipating FFIs.

**Check box 25b or 25c, whichever applies.**

I further certify that with respect to all sales of debt or equity interests in the restricted fund with respect to which this form is furnished that are made after December 31, 2011, the entity identified in Part I:

   **b** ☐ Has been bound by a distribution agreement that contained a general prohibition on the sale of debt or securities to U.S. entities and U.S. resident individuals and is currently bound by a distribution agreement that contains a prohibition of the sale of debt or securities to any specified U.S. person, passive NFFE with one or more substantial U.S. owners, or nonparticipating FFI.

   **c** ☐ Is currently bound by a distribution agreement that contains a prohibition on the sale of debt or securities to any specified U.S. person, passive NFFE with one or more substantial U.S. owners, or nonparticipating FFI and, for all sales made prior to the time that such a restriction was included in its distribution agreement, has reviewed all accounts related to such sales in accordance with the procedures identified in §1.1471-4(c) applicable to preexisting accounts and has redeemed or retired any, or caused the restricted fund to transfer the securities to a distributor that is a participating FFI or reporting Model 1 FFI securities which were sold to specified U.S. persons, passive NFFEs with one or more substantial U.S. owners, or nonparticipating FFIs.

Form **W-8BEN-E** (Rev. 4-2016)

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein

Form W-8BEN-E (Rev. 4-2016)                                                                                              Page **5**

## Part XII    Nonreporting IGA FFI

**26**  ☐ I certify that the entity identified in Part I:

• Meets the requirements to be considered a nonreporting financial institution pursuant to an applicable IGA between the United States and
_____. The applicable IGA is a ☐ Model 1 IGA or a ☐ Model 2 IGA; and

is treated as a _____ under the provisions of the applicable IGA or Treasury regulations

(if applicable, see instructions);

• If you are a trustee documented trust or a sponsored entity, provide the name of the trustee or sponsor whose GIIN is provided on

line 9a (if any) _____; and your GIIN (if issued to you) _____ .

## Part XIII    Foreign Government, Government of a U.S. Possession, or Foreign Central Bank of Issue

**27**  ☐ I certify that the entity identified in Part I is the beneficial owner of the payment and is not engaged in commercial financial activities of a type engaged in by an insurance company, custodial institution, or depository institution with respect to the payments, accounts, or obligations for which this form is submitted (except as permitted in §1.1471-6(h)(2)).

## Part XIV    International Organization

**Check box 28a or 28b, whichever applies.**

**28a**  ☐ I certify that the entity identified in Part I is an international organization described in section 7701(a)(18).

**b**  ☐ I certify that the entity identified in Part I:

• Is comprised primarily of foreign governments;

• Is recognized as an intergovernmental or supranational organization under a foreign law similar to the International Organizations Immunities Act or that has in effect a headquarters agreement with a foreign government;

• The benefit of the entity's income does not inure to any private person;

• Is the beneficial owner of the payment and is not engaged in commercial financial activities of a type engaged in by an insurance company, custodial institution, or depository institution with respect to the payments, accounts, or obligations for which the form is submitted (except as permitted in §1.1471-6(h)(2)).

## Part XV    Exempt Retirement Plans

**Check box 29a, b, c, d, e, or f, whichever applies.**

**29a**  ☐ I certify that the entity identified in Part I:

• Is established in a country with which the United States has an income tax treaty in force (see Part III if claiming treaty benefits);

• Is operated principally to administer or provide pension or retirement benefits; **and**

• Is entitled to treaty benefits on income that the fund derives from U.S. sources (or would be entitled to benefits if it derived any such income) as a resident of the other country which satisfies any applicable limitation on benefits requirement.

**b**  ☐ I certify that the entity identified in Part I:

• Is organized for the provision of retirement, disability, or death benefits (or any combination thereof) to beneficiaries that are former employees of one or more employers in consideration for services rendered;

• No single beneficiary has a right to more than 5% of the FFI's assets;

• Is subject to government regulation and provides annual information reporting about its beneficiaries to the relevant tax authorities in the country in which the fund is established or operated; **and**

• Is generally exempt from tax on investment income under the laws of the country in which it is established or operates due to its status as a retirement or pension plan;

• Receives at least 50% of its total contributions from sponsoring employers (disregarding transfers of assets from other plans described in this part, retirement and pension accounts described in an applicable Model 1 or Model 2 IGA, other retirement funds described in an applicable Model 1 or Model 2 IGA, or accounts described in §1.1471-5(b)(2)(i)(A));

• Either does not permit or penalizes distributions or withdrawals made before the occurrence of specified events related to retirement, disability, or death (except rollover distributions to accounts described in §1.1471-5(b)(2)(i)(A) (referring to retirement and pension accounts), to retirement and pension accounts described in an applicable Model 1 or Model 2 IGA, or to other retirement funds described in this part or in an applicable Model 1 or Model 2 IGA); **or**

• Limits contributions by employees to the fund by reference to earned income of the employee or may not exceed $50,000 annually.

**c**  ☐ I certify that the entity identified in Part I:

• Is organized for the provision of retirement, disability, or death benefits (or any combination thereof) to beneficiaries that are former employees of one or more employers in consideration for services rendered;

• Has fewer than 50 participants;

• Is sponsored by one or more employers each of which is not an investment entity or passive NFFE;

• Employee and employer contributions to the fund (disregarding transfers of assets from other plans described in this part, retirement and pension accounts described in an applicable Model 1 or Model 2 IGA, or accounts described in §1.1471-5(b)(2)(i)(A)) are limited by reference to earned income and compensation of the employee, respectively;

• Participants that are not residents of the country in which the fund is established or operated are not entitled to more than 20 percent of the fund's assets; **and**

• Is subject to government regulation and provides annual information reporting about its beneficiaries to the relevant tax authorities in the country in which the fund is established or operates.

Form **W-8BEN-E** (Rev. 4-2016)

*[Handwritten annotation across Part XIV text: "this information is furnished ... of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein"]*

Form W-8BEN-E (Rev. 4-2016)                                                                                                      Page **6**

| **Part XV** | **Exempt Retirement Plans** *(continued)* |
|---|---|

**d**  ☐ I certify that the entity identified in Part I is formed pursuant to a pension plan that would meet the requirements of section 401(a), other than the requirement that the plan be funded by a trust created or organized in the United States.

**e**  ☐ I certify that the entity identified in Part I is established exclusively to earn income for the benefit of one or more retirement funds described in this part or in an applicable Model 1 or Model 2 IGA, accounts described in §1.1471-5(b)(2)(i)(A) (referring to retirement and pension accounts), or retirement and pension accounts described in an applicable Model 1 or Model 2 IGA.

**f**  ☐ I certify that the entity identified in Part I:

• Is established and sponsored by a foreign government, international organization, central bank of issue, or government of a U.S. possession (each as defined in §1.1471-6) or an exempt beneficial owner described in an applicable Model 1 or Model 2 IGA to provide retirement, disability, or death benefits to beneficiaries or participants that are current or former employees of the sponsor (or persons designated by such employees); **or**

• Is established and sponsored by a foreign government, international organization, central bank of issue, or government of a U.S. possession (each as defined in §1.1471-6) or an exempt beneficial owner described in an applicable Model 1 or Model 2 IGA to provide retirement, disability, or death benefits to beneficiaries or participants that are not current or former employees of such sponsor, but are in consideration of personal services performed for the sponsor.

| **Part XVI** | **Entity Wholly Owned by Exempt Beneficial Owners** |
|---|---|

**30**  ☐ I certify that the entity identified in Part I:

• Is an FFI solely because it is an investment entity;

• Each direct holder of an equity interest in the investment entity is an exempt beneficial owner described in §1.1471-6 or in an applicable Model 1 or Model 2 IGA;

• Each direct holder of a debt interest in the investment entity is either a depository institution (with respect to a loan made to such entity) or an exempt beneficial owner described in §1.1471-6 or an applicable Model 1 or Model 2 IGA.

• Has provided an owner reporting statement that contains the name, address, TIN (if any), chapter 4 status, and a description of the type of documentation provided to the withholding agent for every person that owns a debt interest constituting a financial account or direct equity interest in the entity; **and**

• Has provided documentation establishing that every owner of the entity is an entity described in §1.1471-6(b), (c), (d), (e), (f) and/or (g) without regard to whether such owners are beneficial owners.

| **Part XVII** | **Territory Financial Institution** |
|---|---|

**31**  ☐ I certify that the entity identified in Part I is a financial institution (other than an investment entity) that is incorporated or organized under the laws of a possession of the United States.

| **Part XVIII** | **Excepted Nonfinancial Group Entity** |
|---|---|

**32**  ☐ I certify that the entity identified in Part I:

• Is a holding company, treasury center, or captive finance company and substantially all of the entity's activities are functions described in §1.1471-5(e)(5)(i)(C) through (E);

• Is a member of a nonfinancial group described in §1.1471-5(e)(5)(i)(B);

• Is not a depository or custodial institution (other than for members of the entity's expanded affiliated group); and

• Does not function (or hold itself out) as an investment fund, such as a private equity fund, venture capital fund, leveraged buyout fund, or any investment vehicle with an investment strategy to acquire or fund companies and then hold interests in those companies as capital assets for investment purposes.

| **Part XIX** | **Excepted Nonfinancial Start-Up Company** |
|---|---|

**33**  ☐ I certify that the entity identified in Part I:

• Was formed on (or, in the case of a new line of business, the date of board resolution approving the new line of business) _____

(date must be less than 24 months prior to date of payment);

• Is not yet operating a business and has no prior operating history or is investing capital in assets with the intent to operate a new line of business other than that of a financial institution or passive NFFE;

• Is investing capital into assets with the intent to operate a business other than that of a financial institution; **and**

• Does not function (or hold itself out) as an investment fund, such as a private equity fund, venture capital fund, leveraged buyout fund, or any investment vehicle whose purpose is to acquire or fund companies and then hold interests in those companies as capital assets for investment purposes.

| **Part XX** | **Excepted Nonfinancial Entity in Liquidation or Bankruptcy** |
|---|---|

**34**  ☐ I certify that the entity identified in Part I:

• Filed a plan of liquidation, filed a plan of reorganization, or filed for bankruptcy on _____ ;

• During the past 5 years has not been engaged in business as a financial institution or acted as a passive NFFE;

• Is either liquidating or emerging from a reorganization or bankruptcy with the intent to continue or recommence operations as a nonfinancial entity; **and**

• Has, or will provide, documentary evidence such as a bankruptcy filing or other public documentation that supports its claim if it remains in bankruptcy or liquidation for more than three years.

Form **W-8BEN-E** (Rev. 4-2016)

Form W-8BEN-E (Rev. 4-2016)                                                                                              Page **7**

| **Part XXI** | **501(c) Organization** |
| --- | --- |

**35** ☐ I certify that the entity identified in Part I is a 501(c) organization that:

• Has been issued a determination letter from the IRS that is currently in effect concluding that the payee is a section 501(c) organization that is dated _____ ; **or**

• Has provided a copy of an opinion from U.S. counsel certifying that the payee is a section 501(c) organization (without regard to whether the payee is a foreign private foundation).

| **Part XXII** | **Non-Profit Organization** |
| --- | --- |

**36** ☐ I certify that the entity identified in Part I is a non-profit organization that meets the following requirements:

• The entity is established and maintained in its country of residence exclusively for religious, charitable, scientific, artistic, cultural or educational purposes;

• The entity is exempt from income tax in its country of residence;

• The entity has no shareholders or members who have a proprietary or beneficial interest in its income or assets;

• Neither the applicable laws of the entity's country of residence nor the entity's formation documents permit any income or assets of the entity to be distributed to, or applied for the benefit of, a private person or non-charitable entity other than pursuant to the conduct of the entity's charitable activities or as payment of reasonable compensation for services rendered or payment representing the fair market value of property which the entity has purchased; **and**

• The applicable laws of the entity's country of residence or the entity's formation documents require that, upon the entity's liquidation or dissolution, all of its assets be distributed to an entity that is a foreign government, an integral part of a foreign government, a controlled entity of a foreign government, or another organization that is described in this Part XXII or escheats to the government of the entity's country of residence or any political subdivision thereof.

| **Part XXIII** | **Publicly Traded NFFE or NFFE Affiliate of a Publicly Traded Corporation** |
| --- | --- |

**Check box 37a or 37b, whichever applies.**

**37a** ☐ I certify that:

• The entity identified in Part I is a foreign corporation that is not a financial institution; **and**

• The stock of such corporation is regularly traded on one or more established securities markets, including _____ (name one securities exchange upon which the stock is regularly traded).

**b** ☐ I certify that:

• The entity identified in Part I is a foreign corporation that is not a financial institution;

• The entity identified in Part I is a member of the same expanded affiliated group as an entity the stock of which is regularly traded on an established securities market;

• The name of the entity, the stock of which is regularly traded on an established securities market, is _____ ; **and**

• The name of the securities market on which the stock is regularly traded is _____ .his information is furnished

| **Part XXIV** | **Excepted Territory NFFE** |
| --- | --- |

**38** ☐ I certify that:

• The entity identified in Part I is an entity that is organized in a possession of the United States; or

• The entity identified in Part I:

• Does not accept deposits in the ordinary course of a banking or similar business,

• Does not hold, as a substantial portion of its business, financial assets for the account of others, or

• Is not an insurance company (or the holding company of an insurance company) that issues or is obligated to make payments with respect to a financial account; **and**

• All of the owners of the entity identified in Part I are bona fide residents of the possession in which the NFFE is organized or incorporated.

| **Part XXV** | **Active NFFE** |
| --- | --- |

**39** ☐ I certify that:

• The entity identified in Part I is a foreign entity that is not a financial institution;

• Less than 50% of such entity's gross income for the preceding calendar year is passive income; **and**

• Less than 50% of the assets held by such entity are assets that produce or are held for the production of passive income (calculated as a weighted average of the percentage of passive assets measured quarterly) (see instructions for the definition of passive income).

| **Part XXVI** | **Passive NFFE** |
| --- | --- |

**40a** ☐ I certify that the entity identified in Part I is a foreign entity that is not a financial institution (other than an investment entity organized in a possession of the United States) and is not certifying its status as a publicly traded NFFE (or affiliate), excepted territory NFFE, active NFFE, direct reporting NFFE, or sponsored direct reporting NFFE.

**Check box 40b or 40c, whichever applies.**

**b** ☐ I further certify that the entity identified in Part I has no substantial U.S. owners (or, if applicable, no controlling U.S. persons), **or**

**c** ☐ I further certify that the entity identified in Part I has provided the name, address, and TIN of each substantial U.S. owner (or, if applicable, controlling U.S. person) of the NFFE in Part XXIX.

Form **W-8BEN-E** (Rev. 4-2016)

Form W-8BEN-E (Rev. 4-2016)                                                                                                    Page **8**

| Part XXVII | Excepted Inter-Affiliate FFI |
|---|---|

**41** ☐ I certify that the entity identified in Part I:

• Is a member of an expanded affiliated group;

• Does not maintain financial accounts (other than accounts maintained for members of its expanded affiliated group);

• Does not make withholdable payments to any person other than to members of its expanded affiliated group that are not limited FFIs or limited branches;

• Does not hold an account (other than a depository account in the country in which the entity is operating to pay for expenses) with or receive payments from any withholding agent other than a member of its expanded affiliated group; **and**

• Has not agreed to report under §1.1471-4(d)(2)(ii)(C) or otherwise act as an agent for chapter 4 purposes on behalf of any financial institution, including a member of its expanded affiliated group.

| Part XXVIII | Sponsored Direct Reporting NFFE (see instructions for when this is permitted) |
|---|---|

**42** Name of sponsoring entity: _____

GIIN of sponsoring entity: _____

**43** ☐ I certify that the entity identified in Part I is a direct reporting NFFE that is sponsored by the entity identified on line 42.

| Part XXIX | Substantial U.S. Owners of Passive NFFE |
|---|---|

As required by Part XXVI, provide the name, address, and TIN of each substantial U.S. owner of the NFFE. Please see instructions for definition of substantial U.S. owner. If providing the form to an FFI treated as a reporting Model 1 FFI or reporting Model 2 FFI, an NFFE may also use this Part for reporting its controlling U.S. persons under an applicable IGA.

| Name | Address | TIN |
|---|---|---|
| | | |
| | | |
| | | |
| | This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein | |
| | | |

| Part XXX | Certification |
|---|---|

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:

• The entity identified on line 1 of this form is the beneficial owner of all the income to which this form relates, is using this form to certify its status for chapter 4 purposes, or is a merchant submitting this form for purposes of section 6050W,

• The entity identified on line 1 of this form is not a U.S. person,

• The income to which this form relates is: (a) not effectively connected with the conduct of a trade or business in the United States, (b) effectively connected but is not subject to tax under an income tax treaty, or (c) the partner's share of a partnership's effectively connected income, **and**

• For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.

Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which the entity on line 1 is the beneficial owner or any withholding agent that can disburse or make payments of the income of which the entity on line 1 is the beneficial owner.

I agree that I will submit a new form within 30 days if any certification on this form becomes incorrect.

**Sign Here** ▶

_____    VINCENT DEGUSLEAND
Signature of individual authorized to sign for beneficial owner    LEONARD O'BRIEN          10-12-2016
                                                                    Print Name          Date (MM-DD-YYYY)

☑ I certify that I have the capacity to sign for the entity identified on line 1 of this form.

Form **W-8BEN-E** (Rev. 4-2016)

| SIGNATURE VERIFIED | A.O. |

**Bluestone International Investing Limited**
**Trinity Chambers P O Box 4301**
**Road Town, Tortola**
**British Virgin islands**

Banque J Safra Sarasin (Luxembourg) S A
17 – 21, Boulevard Joseph II
L.-1840 Luxembourg

25 April 2017

Dear Sirs

## BLUESTONE INTERNATIONAL INVESTING LIMITED 55 704 577

We shall be grateful if you will kindly arrange for the following instruction:

➤ Cancelation of the existing pledge between the accounts ████ 6 630 and ██ ██ 4 577
  as per today.

We thank you for your kind cooperation.

Yours faithfully
**For and on behalf of Bluestone International Investing Limited**

Authorised representitive

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.

25 ai. 2017 : 16h15

## J. SAFRA SARASIN

Sustainable Private Banking since 1841

# PLEDGE AGREEMENT

Between
the undersigned, holder of the account ▌ 4 577 _____ (hereinafter referred to as the "Pledgor")
and
Banque J. Safra Sarasin (Luxembourg) SA , 10A, boulevard Joseph II, L-1840 Luxembourg (hereinafter referred to as the «Bank»)

Please tick one of the following boxes:

☐ The Pledgor provides security for his own obligations vis-à-vis the Bank

■ The Pledgor provides security for the obligations of **Delphine Le Daino**

(hereinafter referred to as the "Debtor"), holder of the account n° ▌ 6 630

Where the Pledgor provides security for the obligations of the Debtor, the Pledgor:

*This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.*

■ does not limit the assets subject to realization under the present pledge ;

☐ limits the assets subject to realization under the present pledge to an aggregate value of USD _____

1. The Pledged assets

    1.1 The Pledgor hereby grants to the Bank who accepts, a pledge (hereinafter referred to as the «Pledge»), over the pledged assets:

       (i) all present and future money claims, irrespective of their currency, that the Pledgor may have in relation to any account opened from time to time in the books of the Bank, whether now or in the future (hereinafter collectively referred to as the "Account") or that he may have against the Bank for any other reason, and

       (ii) securities, precious metals and more generally financial instruments which the Pledgor has deposited or may deposit in the future in the Account or that have been or may be deposited on his behalf in the future in the Account with the Bank or that have been or will be deposited with any third party in the Bank's name on behalf of the Pledgor (hereinafter referred to as the "Pledged assets")

The Pledge shall extend to the income and revenues of the Pledged assets, and to assets acquired by way of replacement of the Pledged assets.

The Pledgor expressly and specifically declares that all assets held or which will be held by the Bank for whatever reason, will form part of the Pledged assets.

    1.2 The Bank may in all cases notify third-party debtors, holders and others of its Pledge. It has a specific mandate to carry out all formalities necessary to render the Pledge valid with respect to third parties in the Pledgor's name and at his expense. The Pledgor undertakes to fulfil all formalities required so that the Bank may exercise all its rights and claims arising from this Pledge in an effective way.

    1.3 The Bank shall not be under any obligation to take any steps necessary to preserve any rights in the assets deposited in the Account and the Pledged assets against any other parties but may do so at its option.

    1.4 All expenses incurred by the Bank in connection with the exercise of its rights under this provision shall be part of the Claims as defined hereunder.

2. The secured claims

The Pledge shall serve as a collateral for all present and future claims, whether matured or not, whether conditional or definitive, irrespective of their legal cause (including but not limited to loans, guarantees and overdrafts), that the Bank may have against the Pledgor or the Debtor, regardless whether they are principal claims, interest or accessory claims (the "Claims").

The Bank does not have any obligation to inform the Pledgor of the value of the Claims that the Bank may have against the Debtor. The Pledgor hereby confirms that he has made arrangements with the Debtor pursuant to which the latter should inform the Pledgor, on a regular basis, about the Claims that the Bank may have against the Debtor and which are secured by the Pledge. Therefore, the Pledgor discharges the Bank of any obligation to inform him of the value of the Claims that the Bank may have against the Debtor.

Client's Initial

3. Realisation of the Pledged assets

   3.1 Upon the Pledgor's or Debtor's default to honour generally any of the secured Claims, or the Pledgor's failure to comply with any obligation resulting from this Agreement, the Bank shall be entitled to realise the Pledge in accordance with applicable law and the provisions of the Pledge Agreement.

   3.2 The Bank may enforce this Pledge without prior notice and in the most favourable manner provided for by Luxembourg law and in particular:

a.  realise and/or appropriate the Pledged assets at a price determined in accordance with a valuation method agreed by the Pledgor and the Bank;

b.  assign or cause to be assigned the Pledged assets by private sale in a commercially reasonable manner, by sale over a stock exchange or by public auction;

c.  cause a judgment to be issued ordering that it retains the Pledged assets as payment up to the amount of its Claims, in accordance with an expert valuation;

d.  proceed with netting;

e.  if the Pledged Assets are financial instruments, appropriate these financial instruments at the market price, if such instruments are listed on an official Luxembourg or foreign stock market or traded on a recognized regulated market open to the public, or at the price of the latest published net asset value, if they are units or shares of an undertaking for collective investment which determines and publishes on a regular basis a net asset value.

   3.3 If the parties have agreed on a public auction, unless provided otherwise, the auction shall be effected at and by the Bourse de Luxembourg at a date and time published by the Bourse de Luxembourg.

   3.4 The Bank is further entitled to collect the income of the Pledged assets when due and to apply the income of such Pledged assets as the Bank deems it fit.

   3.5 The Bank is entitled to set-off the Claims it may have against the Pledgor or the Debtor against the Pledged Assets, including financial instruments, the value of which shall be determined pursuant to their market value at the date of the set-off.

   3.6 The Bank is authorized at any time to make a currency conversion for the purposes of the enforcement of the Pledge and the satisfaction of the Claims it may have against the Pledgor or the Debtor.

4. Additional collateral

Without prejudice to any other security it may have been granted and those resulting from the above, the Bank shall, at its absolute discretion, be entitled, at any time, to require the constitution of additional collateral or an increase of the collateral already provided, in order to protect itself against all risks to which it may be exposed to, in connection with the transactions it carries out with the Pledgor or the Debtor, whether the latter are matured or not, unconditional or subject to a condition precedent or subsequent.

In case the Pledgor/Debtor does not furnish additional collateral as required by the Bank, the Bank is entitled without further notice to accelerate all of its Claims against the Pledgor/Debtor and to realise the Pledge as described above.

5. Events without effect on the pledge

The obligations of the Pledgor under the Agreement shall not be affected or discharged upon the occurrence of any of the following events:

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

-   there are temporarily no secured Claims owed to the Bank ;
-   any indulgence, forbearance, waiver, prolongation given to the Pledgor or the Debtor ;
-   any amendment of the terms and conditions of the secured Claims ;
-   any unenforceability, invalidity or termination of or any irregularity in the secured Claims ;
-   any deficiency in the power of the Pledgor to enter into and perform its obligations under the Pledge.

The surety, constituted by this Agreement is a continuing surety and will not be affected (and the Pledgor will not be released of its obligations under the Agreement) by any intermediate payment or settlement of account or otherwise of the Claims, but will remain in force until the Claims have been discharged in full and that there is no possibility of any further Claims coming into existence, and the Bank has notified the Pledgor accordingly, and also for as long as the Bank remains under any obligation to make banking or other facilities available to the Pledgor or the Debtor.

6. Pledgor's rights

   6.1 The management of the Pledged assets shall be the exclusive responsibility of the Pledgor until formal notice has been given in the form provided in this Agreement under Article 11. Notwithstanding the preceding provision, the Bank shall be entitled to, but shall not be obliged to, take any management measures it may consider in its interest; it may inter alia oppose any measures decided on by the Pledgor if it believes that those measures may conflict with the Bank's interests.

Client's Initial

6.2  Unless otherwise directed by the Bank, the Pledgor shall be entitled to exercise all voting rights attached to the Pledged assets, provided that the Pledgor shall exercise such rights in a manner consistent with the interests of the Bank. In particular, and unless agreed otherwise by the Bank, the Pledgor shall cast its votes against any proposal which is liable to result in a dilution of the rights attaching to the Pledged assets.

The Bank may at its sole discretion and after having given notice to the Pledgor, declare that it will, up from such notice, exercise the voting rights in the Pledged assets and that the Pledgor shall be precluded from doing so.

7. Costs

All costs, fees and charges due in connection with the notification, formal notice and realisation of the present Pledge are borne by the Pledgor. In relation hereto, the Pledgor hereby irrevocably authorizes and empowers the Bank to debit such amounts from the Account, even if the debit of such amounts will trigger a negative balance of said Account and the accrual of debit interest as a consequence thereof.

**8. Liability of the Bank**

**The Bank will only be liable for gross negligence or wilful misconduct under this Agreement.**

9. Waiver

The Pledgor waives, to the extent applicable, (i) the benefit of being relieved from his obligations by a remission of debt or a discharge granted to another guarantor by the Bank (Art. 1285 of the Luxembourg Civil Code) and (ii) the right to require the Bank to divide its Claims amongst the guarantors (Article 2026 of the Luxembourg Civil Code).

The Pledgor may not require the Bank to enforce its Claims primarily against the Debtor and waives the benefit of being discharged towards the Bank where the latter acts in such a way that a subrogation by the Pledgor into the Bank's rights against the Debtor is no longer possible. The Pledgor undertakes not to take any action against the Debtor, whether in contract or in tort, until the Claims of the Bank against the Debtor have been discharged in full. In addition, as long as the Claims have not been repaid in full, the Pledgor waives any right of subrogation in the rights of the Bank, pursuant to any payments made by the Pledgor in discharge of the obligations of the Debtor.

10. Notification and election of domicile

a)  All notifications, announcements and communications from the Bank to the Pledgor with respect to this Agreement or with respect to the relation between the Bank and the Pledgor generated by this Agreement, shall be considered as valid when addressed in writing, by fax or by ordinary letter, to the last address indicated by the Pledgor.

In case the mail is held by the Bank on demand of the Pledgor, the Pledgor expressly elects domicile at the registered office of the Bank where all notifications, announcements and communications shall be validly made. In such a case, the Bank may, without being obliged thereto, send the notifications, announcements and communications, to the last address indicated by the Pledgor.

b)  All notifications, announcements and communications from the Pledgor to the Bank with respect to this Agreement or with respect to the relation between the Pledgor and the Bank generated by this Agreement, shall be considered as valid when addressed in writing, by fax or by ordinary letter, to the address of the Bank. They will be deemed to have been effected at the date of their delivery to the Bank.

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

Client's Initial

11. Miscellaneous

The Agreement shall be binding upon and shall inure to the benefit of the Pledgor and of the Bank and their respective successors and permitted assigns and references in this Agreement to any of them shall be construed accordingly.

The present Pledge is independent from, and does not invalidate or affect in any form whatsoever any other pledge, or more generally, surety granted or to be granted by the Pledgor or the Debtor in favour of the Bank. The Bank is furthermore free to determine the order in which it will exercise its rights under the various sureties granted to it, including the present Pledge.

**This Pledge Agreement shall be governed exclusively by the law of the Grand Duchy of Luxembourg.**

**It is expressly agreed that agreements concluded between the Bank and the Pledgor, in particular agreements on the opening of accounts, including the General Terms and Conditions, powers of attorney, etc., shall be fully applicable to the present Agreement unless they are incompatible with this Agreement or the Agreement provides express derogations there from.**

**Any dispute arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the competent Luxembourg court, Grand Duchy of Luxembourg, in the place of the office of the Bank at which the account of the Pledgor has been opened. Nevertheless, the Bank reserves the right to take action in the jurisdiction of the Pledgor's domicile or in any other court which would have been competent in the absence of the preceding election of jurisdiction.**

Signature of the Pledgor

Place & date:  Geneva  15/02/2017

Signature of the Bank

SIGNATURE VERIFIED   A.O.

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.

Account Opening Application (Legal Entity) - 2016



Delphine Le Dain
____5630

Delfinity Trust
Light Air Capital
____6797

Bluestone Trust
Bluestone Int Inv
____4577

Galactea Trust
Rosbelt Int
____4560

Ithaque Trust
Atlas Resources
Holding Ltd

Atlas Trust
Lanius Malta Ltd

Rivoli trust
Dewitt Art SA

50%     50%

General Business
Partners Ltd

TRUE COPY OF ORIGINAL
Signature :
Date    : 08/03/2017.

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.

## DLD Family Trust

**Index**

Summary information

Mina Group - Financial Summary

Mina Group - Audited financial statements - 2016

Summary of trust investments and estimated current values

Trust Structure

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.

The attached information is strictly confidential and must not be disclosed to any third party without the prior written consent of the trustee or their authorised representatives

DLD Family Trust

History of wealth creation, income and investments

Introduction

The wealth of the DLD family trust structure is derived almost entirely from a seed investment in Central Asia, from which the Mina Group of companies grew. The Mina business in Central Asia is described in more detail in separate notes

The purpose of this note is to summarise the source of wealth and indicate how it has been invested and distributed in the period from 2003.

Summary of wealth creation

The attached summary of financial results of the Mina Group indicate the following:

| | |
|---|---|
| Total profits generated from commencement to 31-Dec-16 | 694.21 |
| Total distributions to shareholders in above period | 569.28 |
| Family trust share of those distributions (50%) | 284.64 |

Minimal amounts of income have been generated from other investments, but they are immaterial in the context of this summary.

Use of wealth

The trust share of the wealth creation has been invested (and spent) as follows:

| | |
|---|---|
| Main investments as detailed in the attached schedule | 207.64 |
| Purchase of Spanish residence (and improvements) | 5.20 |
| Other indirect investments (including Spain) | 5.25 |
| Personal living expenses in period, including tax payments and family distributions | 41.00 |
| Family office, administration, legal and advisory costs | 23.05 |
| Liquid assets | 3.50 |
| **Total as above** | 285.64 |

The family office costs include remuneration of trustees, advisors, and other administrative personnel. Also included are all legal costs, bank fees etc.

Important note

It should be noted that the above summary is an indicative summary and does not represent a detailed consolidation of all transactions over the period from 2003. Individual investments can be substantiated by reference to the detailed Trust structure, financial statements and other operations information.

The main purposes is to clearly indicate the source of wealth and how it have been appropriated over the period referred to above

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

**Investment values and other assets**
**(all figures in USD unless otherwise stated)**

| Business | | USD Million | Investment to to date | Trust interest | Estimated current value (USD) | Notes |
|---|---|---|---|---|---|---|
| Logistics and fuel storage | Net equity in company - Dec-16 - see audited financial statements | 119.7 | | | | |
| | Goodwill and market value of assets - say 50% of net equity | 59.85 | Seed capital only - see detailed notes and historical summary | | | |
| | | 179.55 | 0.10 | 50% | 89.78 | |
| Mexico logistics and storage | Investment to date | | 27.80 | | 40.00 | Subject to next round of funding. |
| Kenya Farms | Total investment to date at cost | | 16.80 | 100% | 16.80 | includes property at valuation - approximately $7M |
| Mexico land | Total investment to date | | 59.60 | 40% | | |
| | Our 40% cost times 4 = | 95.36 | | | | |
| | Remaining 60% of cost to be recovered | 35.76 | | | | |
| | | 131.12 | | | 131.12 | Probably worth considerably more |
| Little Ajax | Investment plus improvements (100% funded) | | 2.79 | 50% . | 2.75 | Current value approximately $4M in total. Loans to be recovered |
| London residence | Cost | 39.40 | 39.40 | | | |
| | Improvements and costs | 2.50 | 2.50 | | | |
| | Value appreciation (to £35M) | 2.90 | | | | |
| | | 44.80 | 41.90 | 100% | 44.80 | (calculated at 1.28 to £) |

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein



| | | USD Million | Investment to to date | Trust interest | Estimated current value (USD) | Notes |
|---|---|---|---|---|---|---|
| London Flat | Cost | 1.17 | 1.17 | | | |
| | Value appreciation to £950K | 0.04 | | | | |
| | | 1.21 | 1.17 | 100% | 1.21 | (calculated at 1.28 to £) |
| US properties | | | 1.26 | 100% | 2.25 | Currently on market at $2,400,000 |
| Canadian Quantum and related businesses | | | 4.90 | | - | exploration results and future prospects of Tech JV business |
| Atlantic Screen Group | Total costs to date (including assets from StoryFirst Group) | | 18.58 | | 30.00 | Includes China investments |
| | MTV | | 13.20 | | 2.00 | |
| | TerraNeo | | 1.70 | | - | |
| | SF Productions | | 9.34 | | 2.20 | |
| | | | 42.82 | 100% | 34.20 | |
| NEDA Group/Advertising businesses | | | 2.25 | 100% | 4.00 | value) |
| Other investments | | | 6.25 | | 4.00 | |
| **Total investment and estimated current value** | | | **207.64** | | **370.91** | |

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

Red Star Enterprises Limited
Summary of trading results and distributions
All years to 2016

| | Net trading profit | Distributions | Equity |
|---|---|---|---|
| | | | 3,988,240 |
| 2003 | 3,949,122 | | |
| 2004 | 3,035,791 | 1,760,000 | 5,264,031 |
| 2005 | 16,575,539 | 2,125,000 | 18,982,175 |
| 2006 | 37,510,205 | 13,080,572 | 43,411,868 |
| 2007 | 74,956,942 | 32,250,000 | 86,118,810 |
| 2008 | 68,763,265 | 55,900,000 | 98,984,075 |
| 2009 | 108,887,250 | 81,400,000 | 126,469,325 |
| 2010 | 90,504,338 | 26,250,000 | 186,192,027 |
| 2011 | 87,562,917 | 29,976,269 | 243,778,675 |
| 2012 | 37,754,866 | 112,002,921 | 169,530,620 |
| 2013 * | 58,402,257 | 29,968,364 | 197,964,513 |
| 2014 ** | 66,406,511 | 103,015,304 | 161,355,720 |
| 2015 | 19,441,059 | 36,546,952 | 144,249,827 |
| 2016 | 20,464,216 | 45,000,000 | 119,714,043 |

The distributions for 2013, 2014 and 2015 include loan repayments (following change of jurisdiction on 1 January 2013)

| 2013* | S/h Loan | 139,562,256 |
|---|---|---|
| | Equity | 58,402,257 |
| | | 197,964,513 |

| 2014** | S/h Loan | 36,546,952 |
|---|---|---|
| | Equity | 124,808,768 |
| | | 161,355,720 |

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein

# Trust structure and Management

## Overall Structure and Responsibilities

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.

**Click on the structure to access the details**



Trustee:                                          **Salamander Associates BVI Licensed**
                                                  **Trustee (director Leonard O'Brien)**
Protector and Finance:                            **Graham Collett (GC)**
Legal and Compliance:                             **Tom Ehr (TE)**
Operational:                                      **James Cecil (JC)**
Administration:                                   **Iryna Tsenzharyk (IT)**
Legal, Compliance and Tax advice:                 **Remco Polderman(HVK)**

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.



ck to the main page

## GALACTEA TRUST
Trustees: Salamander Associates Limited

### Mina Group

Graham Collett and Francis Rojas (as the General Partners) with liaise with the operational directors (Francis Rojas and Chris Slabowsewicz) and also directly with the shareholders

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.





**GALACTEA TRUST**
Trustees: Salamander Associates Limited

Trust: Discretionary, Revocable, Grantor Trust
Settlor: Delphine le Dain
Protector: Graham Collett
Beneficiaries: Delphine and her 3 children

Mirabaud Dubai

Graham Collett
100%

**Sokol Limited**
Dubai
100%

**General Business Partner Limited**
Midocean Chambers, 9 Columbus Centre, Pelican Drive, Road Town, Tortola, BVI
Registered Number: 1561266
Director: Graham Collet, Francis Rojas

GP

Rosbelt International Limited

Mirabaud Dubai

J. Safra Sarasin Luxembourg

50% LP

**Global Resources Worldwide LP**
BVI
Director: General Business Partner Limited

50% LP

**Dewitt Art SA**
BVI

100%

**Yellowstone Resources Management Limited**
BVI (15474023)
Director: General Business Partner Limited

Mina Group investment in Mina petroleum -see detailed structure

**First Overseas Properties Corporation**
BVI (1547305)
Director: General Business Partner Limited

**Intercontinental Capital Enterprises Limited**
BVI (1547300)

100%

**Red Star Enterprises Ltd**
Hong Kong
Directors:Stephen Myers Bucher, Christopher Slaboszewicz, James Richard Cecil, Jerome Schurink

100%

4 Commodity traders - Geneva

**Northink Energy**

**Mina Petroleum FZE**
- Dubai free zone enterprise
- Operational company

20%

80%

**Petra Energy**

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions of the ...

Galactea Trust P 1-2



**Back to the main page**



**BIG VALLEY TRUST**
Trustees: Salamander Associates Limited

**DELFINITY TRUST**

TRUSTEES: SAL

## Real Estate

**Cottesmore Gardens**
**Iverna Gardens**
**Miami**
**London Office Lease**
**Potential New investments**

IT (in conjunction with GC) will be responsible for all administrative matters relating to London properties, including paying all bills and monitoring costs, insurances etc. IT will also be responsible for recharging London office costs to group entities and outsiders as appropriate. IT will also liaise with GC and JC in researching potential property investments.

 

Big Valley Trust P 2-2

 

Delfinity Trust P 2-2

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein



**Back to the main page**

Trust: Discretionary, Revocable, Grantor Trust
Settlor: Delphine le Dain
Protector: Graham Collet
Beneficiaries: Delphine and her 3 children



**BIG VALLEY TRUST**
Trustees: Salamander Associates Limited

100%

100%

**Cottesmore Gardens direct – London property GBP 40M**
14 Cottesmore Gardens and land lying to the south of Cottesmore Gardens, London W8 5PR

**Hursey Development Limited**
Director: Salamander Management Limited

**Appartment in Kensington**

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.



**Big Valley Trust P 1-2**



**Back to the main page**

**IVERNA TRUST**
Trustees: Salamander Associates Limited

Trust: Discretionary, Revocable, Grantor Trust
Settlor: Delphine le Dain
Protector: Graham Collett
Beneficiaries: Delphine and her 3 children

100%

**Taruki Management Limited**
Directors: SML     BVI

**Mountain Pass Trading Limited**
Directors: SML     BVI

**Newco**
BVI

**Atlantic Screen Holdings Limited**
Directors: SML     BVI

**SF Productions** (BVI), 100%

**Newco2**
BVI

**CFS Equities International Limited**
Directors: SML, 100%

**Beijing Cable**

**China New Media (BVI)**

**Atlantic Screen Music Limited**
Ireland

**Atlantic Screen Productions Limited**
Directors: SML     BVI

**Atlantic Screen Capital Limited**
Directors: SML     BVI

**Copyright Administration Services Limited**
England

**Atlantic Screen Composers Limited**
UK EIS Co.

**Atlantic Screen International Limited**
UK EIS Co.

**MTV Adria (3 entities), 100%**

**Terraneo Festival (Croatia)**

25%     20%     100%     100%     100%

**Iverna Trust P 1-2**

his information is furnished and / or requested under the terms f an income tax treaty. Its use disclosure must be governed he provisions contained therein.



**Back to the main page**

**IVERNA TRUST**
Trustees: Salamander Associates Limited

**Media Interests**

ASM Group
Empyre Film Fund
MTV
IBZ Entertainment
China New Media

Tom Ehr will be responsible for all media interests, working with Simon Fawcett, Larry Mortorff, Martin Shiel as appropriate.

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.



**Iverna Trust P 2-2**



**Back to the main page**

**ATLAS TRUST**
Trustees: SAL

Trust: Discretionary, Revocable,
Grantor Trust
Settlor: Delphine le Dain
Protector: Graham Collett
Beneficiaries: Delphine and her
3 children

100%

PEPPER MILL MANAGEMENT LIMITED

100%          100%

Lang International Limited
BVI
Directors: SML

Waterlow Management Limited
BVI
Directors: SML

100%     30%      30%          25%

Lanius Limited

Gulfport Trading
SARL
Luxembourg

Sirius Energy S.A.P.I
DE C.V
(logistics)

Isotropic Systems
limited

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.



**Atlas Trust P 1-3**



**Back to the main page**

## ATLAS TRUST
**Trustees: SAL**

### Technical and Exploration

Tech JV
Lang International (including Hammer investment)
Isotropic

Tom Ehr will take the lead in this area of investment, working with JC, as necessary (and with Steve Buscher as appropriate).

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.



**Atlas Trust P 2-3**


to the main page

## ATLAS TRUST
Trustees: SAL

### Mexico Trading and Logistics

Sirius
Lanius Group

Tom Ehr will take the lead, working with SB (as the CFO of Sirius), JC, as necessary, and also with Chris Slabosewicz and other directors appointed by Trust as appropriate.

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.



las Trust P 3-3



to the main page



**DINA MAROPA TRUST**
TRUSTEES: SAL

100%

**MAROPA LIMITED**
BVI
Director: SML

100%

**MURNEY OVERSEAS LIMITED**
BVI
Directors: SML

Investment in Mexico – Tulum,
Quintana Roo

Trust: Discretionary, Revocable,
Grantor Trust
Settlor: Delphine le Dain
Protector: Graham Collett
Beneficiaries: Delphine and her 3
children

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein

ina Maropa Trust P 1-2



**Back to the main page**



## DINA MAROPA TRUST
TRUSTEES: SAL

**Mexico Property**

Murney Overseas
All other trading entities

Tom Ehr will take the lead, working with JC, as necessary, Alejandro and other Mexican partners as appropriate.

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein



**Dina Maropa Trust P 2-2**



**Back to the main page**



**LIGHTSTAR TRUST**
TRUSTEES: SAL

**LIGHTSTAR LIMITED**
BVI

Director: SML

**ABM/AMRO**
**Portfolio –USD 4M**
Holland

Trust: Discretionary, Revocable,
Settlor: Delphine le Dain
Protector: Graham Collett
Beneficiaries:
(DE's elder children)
- Rivkah Edelman
- China Edelman
- Josef Edelman
- Michael Tassi

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.



**Lighstar Trust P 1-2**



**Back to the main page**

**LIGHTSTAR TRUST**
TRUSTEES: SAL

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.



Lighstar Trust P 2-2



**Back to the main page**

## ITHAQUE TRUST
Trustees: SAL

Trust: Discretionary, Revocable, Grantor Trust
Settlor: Delphine le Dain
Protector: Graham Collet
Beneficiaries:Delphine and her 3 children

100%

**ATLAS RESOURCES HOLDINGS LIMITED**
BVI

Directors SML

100%

**Amala Holdings Limited**
Directors: James Cecil, Graham Collett, David Saunders, Christian Benard

Property value Euro 5.5 Million (Cost 2.9 Million) – 10'000 Hectares.

100%

**EVANSHIRE FINANCE LIMITED**
BVI Operating company for land
Directors: SML

100%

**Mara (EPZ) Limited**
Directors:James Cecil, David Saunders, Christian Benard,Bart Van Kruistrum.

| | |
|---|---|
| Evanshire | 80% |
| Bart Van Kruistrum | 15% |
| James Farguharson | 5% |

100%

**Mara Farming Limited**
Directors:James Cecil, David Saunders, Christian Benard, Bart Van Kruistrum

| | |
|---|---|
| Evanshire | 80% |
| Bart Van Kruistrum | 15% |
| James Farguharson | 5% |

100%

**Mara Fresh BV**

| | |
|---|---|
| Evanshire | 80% |
| Bart Van Kruistrum | 15% |
| James Farguharson | 5% |

**Flower Business Support BV**

100%

**Songorol Limited**
(avocado project)

| | |
|---|---|
| Mara Farming | 50% |
| Woods | 50% |

100%

**Ethiopia J V**
Directors: James Cecil, Christian Bernard + partners

| | |
|---|---|
| Mara Farming | 49% |
| Partner | 51% |

100%

**Zimbabwe J V**
Directors: James Cecil, Christian Bernard + partners

| | |
|---|---|
| Mara Farming | 50% |
| Partner | 50% |

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein



**Ithaque Trust P 1-2**

*Shareholding "boxes" do not represent capital shareholding but possible future equity split proposal



to the main page



## ITHAQUE TRUST
Trustees: SAL

**Kenya**

Mara Farming
Flower Business Group
Mara EPZ and Joint Ventures

*James Cecil will take the lead in this area of investment, working with TE, as necessary (and with local management as appropriate).*

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.



Ithaque Trust P 2-2



to the main page



**BLUESTONE TRUST**
TRUSTEES: SAL

Trust: Discretionary, Revocable,
Grantor Trust
Settlor: Delphine le Dain
Protector: Graham Collet
Beneficiaries: Delphine and her 3
children

100%          100%          100%

**Eastcroft Assets Limited**
BVI
Directors: SML

**Bluestone International Investing Limited**
BVI
Directors: SML

**Satellite support System Ltd**
BVI
Directors: SML

J. Safra Sarasin
Luxembourg

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.



Bluestone Trust P 1-2



to the main page



BLUESTONE TRUST
TRUSTEES: SAL

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein



Bluestone Trust P 2-2



к to the main page



**DELFINITY TRUST**
TRUSTEES: SAL

Trust: Discretionary, Revocable,
Grantor Trust
Settlor: Delphine le Dain
Protector: Graham Collett
Beneficiaries:Delphine and her 3
children

100%

LIGHTAIR Capital
BVI
Directors SML

J. Safra Sarasin
Luxembourg

**Property 1**
Miami Beach, Value:  USD 2M
*Occupied by 1st wife - Rebecca*

**Property 2**
Stockton, Value:  USD 600K
*(NOW SOLD)*

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein



to the main page

**Remco Polderman**

100%

Option agreement signed with the Oakwood trust

**Sixth Sense S.L.**

**Spanish Company –
Director: Remco Polderman
DLD employee**

**THE OAKWOOD TRUST**
TRUSTEES: SAL

100%

**Comporta Malta Ltd (Malta)
Director: Mr Wilhelmus A. Woestenburg**

100%

**Comporta B.V (the Netherlands)**

100%          100%          100%

Investment in Real estate (Ibiza)

**Paisagem Casual – Sociedade de Investimentos Imobiliarios Unipessoal, lda (Portugal)**

Investment in Real estate (Portugal)

Trust: Discretionary, Revocable, Grantor Trust
Settlor: Delphine le Dain
Protector: Graham Collett
Beneficiaries:Delphine and her 3 children

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.



to the main page



**THE OAKWOOD TRUST**

TRUSTEES: SAL

### Spanish and Portuguese Real Estate and other projects

This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein



he Oakwood Trust P 2-2



AUGUST2016
STRICTLY CONFIDENTIAL

Diagram of Structure

Rivoli Trust

Galactea Trust

Dewitt Art SA

General Business Partner Ltd

Rosbelt International Limited

*oil & logistics business structure*

Global Resources Worldwide LP (BVI)

50%    50%

Yellowstone Resources Management Limited (BVI)

*This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.*

100%    100%

First Overseas Properties Corporation (BVI)

Intercontinental Capital Enterprises Limited (BVI)

100%

100%    100%

Mina Petroleum FZE (UAE)

Red Star Enterprises Limited (HK)

NorthLink Energy Limited (HK)

70%*

78%**

Mina Petroleum LLC (OMAN)

Petra Energy Limited (HK)

100%    100%    100%

Petra Energy SA (CH)

Bernina Shipping Ltd (CY)

Nemoil Limited (CY)

* Local Omani partner holding 30% but no economic participation.

** Geneva traders holding collectively 22%.

document number: GN00692/0001-Geneva-14867/23AUGUST2016



**J. SAFRA SARASIN**

Sustainable Private Banking since 1841

**KNOW YOUR CUSTOMER MEMORANDUM:    GROUP 1501279**

CRM:   Frank van den Biezenbos
Date:   25.07.2019

Name of the client / contracting partners : Delphine Le Dain, Bluestone Ltd, Rosbelt Ltd,
Bluestone Netherlands BV, Comporta BV, Lanius Holding BV, Lanius BV, Lightair Ltd

Name of the Beneficial Owner(s) : Delphine Le Dain

**1/ Source of Wealth; origin of the client's current total wealth**

a) Please provide a detail of how the wealth (i.e if the origin of the wealth comes from family/own
business: when company was founded, size of the business, turnover, annual profits..).

*Delphine Le Dain (DLD) is born in 1966 and married to Douglas Edelman (1952) – 3 children;
daughter (2002), son (2006) and daughter (2009). She is educated in France and went on to
further education (supported financially by her parents):*
- *Business school Esc Ceram in Nice, where she got her bachelor degree*
- *MBA from Arizona State University and American Graduate school of
  International Management in Thunderbird*
- *DESS of International Relations at Dauphine University in Paris*
- *Documentary film research at London College of Printing*

*After her studies DLD worked in a number of working environments:*
- *1990/1992 Consultant Information Systems and Organisation Management for
  Spicer Oppenheim / Calan Ramolino in Paris (Average annual pay E100k)*
- *1994/1999 Business journalist for Noah agency, publishing emerging country
  profiles for mainstream media around the world. Travelled extensively in the
  former Soviet Union, South-East Asia, western and South Africa (average annual
  pay USD 135k including country risk allowances and excluding travel expenses).*
- *1998/2001 Freelance journalist for the Times of Central Asia (Average annual pay
  USD 65k including country risk allowances and excluding travel expenses) – next
  to Noah agency work.*

*Douglas Edelman is a US Passport holder who left the US in order to live in Europe and Central
Asia more than 40 years ago. He was born in California and in the 70s he decided to move to
Europe (i.e. Ibiza and Formentera). Early 90s – when the markets in Eastern and Central Asia
were opened for foreign investors. He relocated to Bishkek (Kyrgyzstan) where he founded his
own American Pub and Grill restaurant. He got help from a Kyrgyzian Oligarch named Erkin
Bekbolotov (EB). EB suggested to help him opening an American Grill Pub in Bishkek. As EB was*

*This information is furnished
and / or requested under the terms
of our income tax treaty. Its use
or disclosure must be governed
by the provisions contained therein.*

Banque J. Safra Sarasin (Luxembourg) SA
17 - 21, Boulevard Joseph II, L-1840 Luxembourg, P.O. Box 887, L-2018 Luxembourg
T: +352 45 47 81-1, F: +352 45 47 81-555, www.jsafrasarasin.lu
Registre de Commerce B 157239

## J. SAFRA SARASIN

owner of a real estate portfolio in Bishkek he arranged the location and building for this pub. In the years after Mr DE and Mr EB became close business friends.

DLD met DE in 1993 during her work as a journalist in the former Sovjet Union / Central Asia. They fell in love in Bishkek. They got married in 1997. During these Bishkek years DLD  met DE's closest friend EB. It was DE who stimulated DLD in the late 90s to make a relatively (compared to the future gains) small seed investment in Central Asia (today Red Star). The relatively small amounts of this  seed investment added up to USD 250k to USD 300k max. The investment was made together with EB (50%) in a Central Asia Oil trading and logistic firm. The firm was operated by people around EB. The investment was used to rent office space, fuel trucks and storage capacity. DE acted as advisor for both his wife as the company. Also he acted as an advising mediator in between the deals.

In 2001 the US military arrived in Kyrgyzstan, building their biggest Central Asian air base at Bishkek's Airport, called Manas. This airbase was used for the Afghan war after 9/11. The turnover of DE's American style pub exploded as his pub became a well know place for great American food in Bishkek.

In the years from 2001 (arrival of US Air base) to 2003 the company Red Star Enterprises Ltd showed a stable growth. Trading profits were maximized to USD 1mio annually and reinvested again. From 2003 to 2004 due to the work for the Airbase profits were around USD 3,5mio. In 2004 they decided to make their first dividend distribution because of the winning contract with the US Army which exploded their business from 2005 and on. In 2009/2010 the contract was extended and they became the main supplier for fuel. After this extended contract was favoured to Redstar a Senate hearing took place in 2010 by request of the opposition and the competition. The result of the Senate hearing was positive for Redstar. This Senate hearing report is present in client's file.

From 2002 DLD got her first child. The years after she was mainly preoccupied in bringing up her children (3). She left the running of the business to a local professional team. Now the first child was born she was advised by lawyers (and advised by her husband) to set up a wealth structure in order to protect this foreign asset for her and her children.

The current structure where Red Star is part of is available in the file. Also visible is the name Mina Group which is an integrated energy services and infrastructure company that provides comprehensive solutions to defense, government, and commercial customers around the world. Mina Group specializes in commodity trading and full-cycle logistics for delivery of petroleum products to remote regions and locations anywhere in the world, for short or long term needs, through a global energy and logistics network.

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.



*Today DLD is on top of a trust structure, which is headed by professional trustees and advisors who are responsible for the management of investments and who report regularly to DLD and the trust Protector.*

b) Other main revenues received (i.e sale of real estate property, investments, dividend…). Please detail and provide approximate estimation.
*SEE Client file – several investments are made. Main revenues still come from dividends from Red Star*

c) Other asset & value (i.e art/car collection, property, boat, shareholding…)

*Real estate (book values):*

| | | |
|---|---|---|
| - | *Main residence Ibiza* | *EUR 5 million* |
| - | *2nd Residence in London* | *GBP 35 million* |
| - | *Flat in London* | *GBP 1 million* |
| - | *House in Austria (Lech)* | *USD 4 million* |

**2/ Source of Funds: origin of the funds being deposited in the account (i.e sale of a real estate property, sale of company, inheritance/gift…).**

*The BO of the "Le Dain Group" (1501279) is an entrepreneur/investor; she is BO of a corporate structure in which the substantial shareholdings are held in Oil & Gas distribution companies, Media & Entertainment companies and real estate companies.*

**Note:  SOF is the same as SOW no need to complete point 2. It is important Figures have to be consistent and justify the total wealth of the client**

**3/ Supporting documentation provided in annex to this memo**
X YES ☐ NO

Please detail:    *Trust structure; summary information*
                 *Trust structure and management information*
                 *General chart*

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.

Note: documents of SOW/SOF has to be provided for high risk clients

**4/ Purpose of the account and expected transactions in the account.**

Please indicate the purpose of the account and type of incoming/outgoing expected (i.e payment of dividends, payment of invoice, credit card expenses,,) third parties involved and link with them (i.e business partners) as well as countries or jurisdictions involved.



**J. SAFRA SARASIN**

The Bluestone Ltd account has been set up as a "Treasury" account for all companies and trusts in the name of the UBO. Bluestone pays invoices and fund requests which are covered by loans granted by Rosbelt Ltd.

The Bluestone Netherlands BV account has been set up as an onshore subsidiary Treasury account of Bluestone Ltd.

The Rosbelt Ltd account has been set up as an holding company for investments in operating entities. Robelts is the 50% joint venture partner of De Witt Art SA (third party) in the Oil & Gas business. Rosbelt Ltd receives dividends paid out by Red Star Ltd. Rosbelt also grants loans to i.e. Bluestone Ltd and other group companies.

Light Air Capital Ltd account has been set up as an holding company for investments in us real estate.

Lanius Holding BV account has been set up as a holding company of Lanius BV.

Lanius BV account has been set up as a company for investments in Mexico. It owns land and the rights for oil/gas exploration and distribution rights (mid stream activities).

Comporta BV account has been set up as a company for investments in real estate in Portugal and Spain (buy land and development of real estate).

Regarding the first funding of the account, please provide for which bank and country/jurisdiction... Note the first payment has to be done through an account in the customer's name from a credit institution subject to equivalent AML obligations.

Incoming funds for Rosbelt Ltd will come from Red Star Ltd (dividend payments).
Bluestone Ltd will always be funded by Rosbelt Ltd
The other companies will be funded by Bluestone Ltd.

This information is furnished and / or requested under the terms of our income tax treaty. Its use or disclosure must be governed by the provisions contained therein.